1   **JOHN D. CARPENTER, CA Bar No. 145154**
    john.carpenter@cph.com
2   **S. ART HASAN, CA Bar No. 167323**
    art.hasan@cph.com
3   **G. WARREN BLEEKER, CA Bar No. 210834**
    warren.bleeker@cph.com
4   **CHRISTIE, PARKER & HALE, LLP**
    **655 N. Central Avenue, Suite 2300**
5   **Glendale, California 91203-1445**
    **Telephone:  (626) 795-9900**
6   **Facsimile:   (626) 577-8800**

7   Attorneys for Plaintiff,
    Nyko Technologies, Inc.
8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12   NYKO TECHNOLOGIES, INC., a        Case No.  CV 12-3001 GAF (VBKx)
     California corporation,
13                                      **PLAINTIFF'S EX PARTE**
                  Plaintiffs,           **APPLICATION FOR (1)**
14                                      **TEMPORARY RESTRAINING**
            vs.                         **ORDER AND (2) ORDER TO**
15                                      **SHOW CAUSE WHY**
     ENERGIZER HOLDINGS, INC., a        **PRELIMINARY INJUNCTION**
16   Missouri corporation, and          **SHOULD NOT ISSUE;**
     PERFORMANCE DESIGNED               **MEMORANDUM OF POINTS**
17   PRODUCTS LLC, a California limited **AND AUTHORITIES IN**
     liability company,                 **SUPPORT THEREOF**
18
                  Defendants.
19

20                                      **Hon. Gary Allen Feess**

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Plaintiff, Nyko Technologies, Inc. ("Nyko") hereby applies, ex parte, for entry of a temporary restraining order and an order to show cause why a preliminary injunction should not issue, and, upon expiration of the TRO, a preliminary injunction against defendants Energizer Holdings, Inc. ("Energizer") and Performance Designed Products LLC ("PDP"), pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65.

The immediate relief that Nyko seeks is an order enjoining Energizer and PDP from selling or offering for sale at Walmart stores throughout the United States a line of video game accessories --charging systems for Xbox 360 and PlayStation 3 video game controllers-- that infringe Nyko's U.S. Patent No. 8,143,848 ("the '848 patent"), which issued on March 27, 2012.

In addition, Nyko seeks an order enjoining PDP from selling or offering to sell the accused products at "E3" (Electronic Entertainment Expo), the world's premier trade show for computer and video games and related accessories, scheduled to be held in Los Angeles on June 5-7, 2012.

Upon expiration of the TRO, as preliminary injunctive relief pending trial, Nyko seeks a broader order enjoining the Defendants from *all* acts of infringement under 35 U.S.C. § 271(a), namely, the unauthorized making, using, selling, or offering for sale within the United States, or importing into the United States, the accused products.

Good cause exists for these orders. Nyko is in immediate jeopardy of having its patented Charge Base products displaced by Defendants' infringing products at 3,250 Walmart stores by the end of this month. Nyko has asked Defendants to cease and desist from selling the infringing products, but Defendants have not agreed to do so. The move will cause grave and irreparable

CHRISTIE, PARKER & HALE, LLP

i

harm to Nyko and will occur unless Energizer and PDP are ordered not to sell the accused products at Walmart.  If Nyko's patented products are displaced by Defendants' infringing products at Walmart, it may take years for Nyko to regain its position at Walmart stores, if it can do so at all.  In addition, if PDP is permitted to sell or offer for sale the infringing charging systems at E3 and to sell infringing products at other stores such as Target to the exclusion of Nyko, Nyko will suffer additional injury to its reputation, its goodwill among consumers, and its market share.

The balance of hardships favors Nyko here, as Nyko's patented products are the ones scheduled to be replaced by Defendants' infringing products. Walmart has indicated that it will carry only one line of charging stations, and there is no valid reason why Nyko's products that are currently on the shelves at Walmart stores should be discarded in favor of Defendants' infringing products.

The public interest also served by the requested relief, as there is a strong public policy in favor of enforcing patents that are likely valid and infringed.

Nyko is proceeding on an *ex parte* basis pursuant to Federal Rule of Civil Procedure 65.  Temporary restraining orders are available on an *ex parte* basis when there is a threat of intervening harm before a noticed motion for preliminary injunction may be heard.  Fed. R. Civ. P. 65(b).  Energizer and PDP have not responded to Nyko's request that they refrain from continued infringement and settle this lawsuit amicably.  The requested orders are necessary to preserve the status quo ante.

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3   I.   CONTACT INFORMATION FOR DEFENDANTS' COUNSEL ................ 1

4   II.   FACTUAL BACKGROUND ........................................................... 1

5        A.   Nyko .................................................................................. 1

6        B.   The '848 Patent ................................................................. 2

7        C.   The Energizer Charging Systems ..................................... 2

8        D.   The Imminent Threat of Irreparable Harm to Nyko ......... 3

9   III.   AUTHORITY AND ANALYSIS ................................................ 6

10        A.   Nyko Has a Strong Likelihood of Success on the Merits ................. 6

11              1.   The '848 Patent is Valid ........................................... 7

12              2.   Nyko is Likely to Show that the '848 Patent is Infringed by the Energizer Charging Systems ......................... 8

13

14                   a)   Claim 1 .......................................................... 9

15                   b)   Other Claims ............................................... 14

16              3.   Nyko Will be Irreparably Harmed Unless a Preliminary Injunction is Issued .......................... 18

17        B.   The Balance of Hardships Favors Granting a Preliminary Injunction ........................................... 20

18

19        C.   The Public Interest Will be Served By Granting a Preliminary Injunction ........................................... 21

20        D.   A Bond, if Required at All, Should be Minimal ............... 21

21   IV.   CONCLUSION ..................................................................... 21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbot Labs. v. Andrx Pharms., Inc.*,
   452 F.3d 1331 (Fed. Cir. 2006) ...................................................................24

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
   725 F.2d 1350 (Fed. Cir. 1984) ...................................................................10

*Amoco Prod. Co. v. Village of Gambell*,
   480 U.S. 531 (1987) .....................................................................................22

*Anton/Bauer, Inc. v. PAG, Ltd.*,
   329 F.3d 1343 (Fed. Cir. 2003) ...................................................................24

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
   796 F.2d 443 (Fed. Cir. 1986) .....................................................................10

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
   132 F.3d 701 (Fed. Cir. 1997) .....................................................................23

*Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*,
   15 F.3d 1573 (Fed. Cir. 1993) .....................................................................10

*Checker Motors Corp. v. Chrysler Corp.*,
   405 F.2d 319 (2d. Cir. 1969), cert. denied, 394 U.S. 999 (1969).................9

*eBay Inc., v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .....................................................................................21

*Genentech, Inc. v. Novo Nordisk, A/S*,
   108 F.3d 1361 (Fed. Cir. 1997) ...................................................................10

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) ...................................................................11

*Interconnect Planning Corp. v. Feil*,
   774 F.2d 1132 (Fed. Cir. 1985) ...................................................................10

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 ............................................................................................10

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
   429 F.3d 1364 (Fed. Cir. 2005) ...........................................................9, 10, 11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...........................................11, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Robert Bosch v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir 2011) ............................................................... 21, 22

*Sanofi-Synthelabo v. Apotex, Inc.*,
   488 F. Supp. 2d 317 (S.D.N.Y. 2006), *aff'd*, 470 F.3d 1368 (Fed. Cir. 2006) ...................... 10

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................... 12

**FEDERAL STATUTES**

35 U.S.C. § 254 ............................................................... 12

35 U.S.C. § 271(a) ............................................................... 9

35 U.S.C. § 282 ............................................................... 10

35 U.S.C. § 283 ............................................................... 9

Patent Act, 35 U.S.C. § 1, et seq. ............................................................... 9

**RULES**

Federal Rule of Civil Procedure 65(b) ............................................................... 24

I.      **CONTACT INFORMATION FOR DEFENDANTS' COUNSEL**

**Counsel for Energizer Holdings, Inc.**:

Michael C. Pophal, Esq. (MichaelC.Pophal@energizer.com)
ENERGIZER HOLDINGS, INC.
25225 Detroit Road
Westlake, Ohio 44145-2536


**Counsel for Performance Designed Products LLC:**

Steven M. Hanle, Esq. (shanle@sheppardmullin.com)
Daniel N. Yannuzzi, Esq. (dyannuzzi@sheppardmullin.com)
Gray M. Buccigross, Esq. (gbuccigross@sheppardmullin.com)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626


II.     **FACTUAL BACKGROUND**[1]

A.      **Nyko**

Nyko specializes in the design and development of innovative products for the interactive entertainment, computing, consumer electronics, portable audio, as well as online and wireless technologies.  Nyko directly distributes its products through major U.S. and Canadian retailers, and also distributes its products through intermediaries worldwide.  Nyko is the owner of multiple patents in the U.S. and abroad directed to its innovative products, including U.S. Patent No. 8,143,848 ("the '848 Patent"), entitled "Video Game Controller Charging System Having a Docking Structure."  Navid Dec., Ex. A.

Nyko sells video game controller charging systems covered by the '848

---

[1]   Evidentiary support for Nyko's motion is found in the declarations of Chris Arbogast ("Arbogast Dec."), Amir Navid ("Navid Dec."), Jason Martone ("Martone Dec."), and John Carpenter ("Carpenter Dec.") filed concurrently herewith, and in the exhibits attached thereto.

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5

patent, including a line of charging systems for the hand-held chargers used with Microsoft's Xbox® 360 video game console (the "Nyko Charge Base 360s for Xbox 360") and charging systems for the hand-held chargers used with Sony's PlayStation® 3 video game console (the "PS3 - Charge Base").  Arbogast Dec., 5. Collectively, these products are referred to as the "Charge Base products."

6
7
8
9
10
11
12
13
14

The Xbox 360 and PlayStation 3 game consoles are highly successful products that enjoy tremendous popularity with consumers.  Nyko's Charge Base products are also extremely popular, as they enable a consumer to charge multiple hand-held video game controllers simultaneously, without having to remove the battery packs from the controllers, and without dangling cords and connectors. Arbogast Dec., ¶6.  Over 90% of Nyko's sales of its video game controller charging systems are at "brick & mortar" retail establishments, including Best Buy, Target, Game Stop, and Walmart.  The remainder of Nyko's sales are internet sales.  Arbogast Dec., ¶7.

15

**B.     The '848 Patent**

16
17
18
19
20
21
22
23

The '848 patent issued on March 27, 2012.  As described in the "Field of the Invention" in column 1, the '848 patent "relates to charging systems for consumer electronic devices, and more particularly to charging systems for hand-held video game controllers."'  Navid Dec., Ex. A, col. 1, lines 15-19.  The invention enables a consumer to charge two or more hand-held video game controllers, such as a controller used with Sony's PlayStation 3 game console, simultaneously.  Navid Dec., Ex. A, col. 15, lines 30-52 (claim 1); col. 9, lines 33-39 (describing use with a PlayStation 3 controller).

24
25

The '848 patent has 27 claims, and Nyko presently contends that Energizer and PDP infringe at least claims 1, 2, 5, 7, 8, and 10-12.

26

**C.     The Energizer Charging Systems**

27
28

Energizer and PDP sell charging systems for the hand-held controllers used with Xbox 360 and PlayStation 3 video game consoles under the following

trademarks: Energizer® "Power & Play®" Charging System for Xbox 360® and Energizer® "Power & Play®" Charging System for PlayStation® 3.  The products are sold in direct competition with Nyko's patented charging systems, and without Nyko's permission.  Arbogast Dec., ¶9.  Energizer and PDP have not responded to Nyko's request to voluntarily resolve this matter amicably without the need for Court intervention.  Carpenter Decl., ¶2.

### D.    The Imminent Threat of Irreparable Harm to Nyko

Sales at large retail stores such as Walmart and Target are critical to Nyko's continued success in the marketplace.  Nyko's Charge Base 360S has sold an average of 2,810 units per week at Walmart since being introduced at Walmart stores in May 2011, for a total of about 146,000 units at Walmart Stores around the country.  Arbogast Dec., ¶10.  In December 2011, however, Walmart initially notified Nyko that it would no longer carry Nyko's Charge Base products but, instead, would carry only the Energizer/PDP charging systems --for the Sony PlayStation® 3, Microsoft Xbox 360®, and Nintendo Wii® game controllers-- starting in the spring of 2012.  Arbogast Dec., ¶12.  When Walmart notified Nyko of the change in December 2011, Nyko's '848 patent had not yet issued, and Nyko could not bring suit against Energizer and PDP for patent infringement.

To date, Nyko's charging systems have already been displaced by infringing Energizer/PDP products at approximately 1,000 Target stores. Arbogast Dec., ¶13.  This happened prior to the issuance of the '848 patent, while it was still pending in the Patent Office.

The displacement of Nyko's Charge Base products for the Xbox 360® and PS3® game controllers at approximately 3,250 Walmart stores has not yet occurred but is imminent.  By the end of May 2012, Nyko's products are scheduled to be removed from the video game accessories shelves at Walmart

stores around the country, and replaced by the infringing Energizer/PDP products. Walmart will mark down the price of existing Nyko inventory by 50% and reshelf the products at undesirable locations in Walmart stores.  Arbogast Dec., ¶14.

Nyko has made numerous, substantial and ongoing efforts to get Walmart to reconsider its position, but it has been unsuccessful.  Nyko provided a copy of the '848 patent to Walmart shortly after the patent issued on March 27, 2012.  In April 2012, Nyko filed the Complaint in this suit and scheduled a meeting with Walmart's representatives to discuss the patent.  Nyko's sales representative flew to Arkansas to Walmart's headquarters and made an in person presentation to Walmart's buyer representative, which illustrated the basis for Nyko's infringement claims.  Based on these discussions, Nyko believed that Walmart would reconsider its decision to replace Nyko's products.  Although discussions continue, Walmart has not indicated whether it will change its decision.  Just yesterday, on May 9, 2012, Nyko received a message from Walmart's buyer representative that he will not make a decision himself at this time but instead will refer the matter to Walmart's legal department for further review.  He stated that Walmart would, of course, abide by any Order from the Court that affected replacement of the products.

However, because retailers like Walmart generally require their vendors to refrain from selling products that infringe the intellectual property of others, the disruption of Nyko's business can be stopped if the infringing Energizer/PDP alternatives are not available.  Arbogast Dec., ¶15.  Therefore, Nyko has applied *ex parte* for immediate relief.

If Nyko is unable to stop the unauthorized sales by Energizer and PDP, Nyko will suffer grave and irreparable harm to its reputation and position in the industry.  Once shelf space is lost at Walmart, it will be very difficult to regain it,

as Walmart tends to prefer to offer one company's product line over multiple companies' product lines.  Arbogast Dec., ¶16.  It took Nyko three years of continuous effort to position its Charge Base products on the shelves at Walmart.  Arbogast Dec., ¶17.  If Energizer and PDP are allowed to displace Nyko's products with infringing goods, then the opportunity for Nyko ever to get its products back on Walmart's shelves is extremely unlikely.

If Nyko loses its ability to sell its Charge Base products at Walmart, its goodwill among consumers, built up over a number of years, will be hurt, and its standing in the industry will suffer.  Arbogast Dec., ¶18.  In addition to actual loss of product sales, money available for product development for the next generation of products will be lost, which will not only affect Nyko's next generation of video game controller charging products, but all future Nyko products as well.  Arbogast Dec., ¶18.  Thus, the development disadvantage Nyko will suffer going forward cannot be remedied by damages paid after the fact.  PDP, having no research and development costs, will continue to erode Nyko's market share, costing Nyko greatly now and cascading into subsequent generations of products starved from present research and development resources.

If Nyko's products are not available at Walmart, Target and other large retail stores, Nyko's visibility to consumers will greatly decrease, and Nyko will face a more difficult and expensive task marketing all of its products.  Arbogast Dec., ¶19.  Competitors like PDP will be able to reap the benefit of Nyko's hard work, with a subsequent erosion of Nyko's position in the industry.  Arbogast Dec., ¶20-24.

On June 5-7, 2012, "E3," the world's premier trade show for computer and video games and related accessories, will be held at the Los Angeles Convention Center.  Nyko has invested hundreds of thousands of dollars to prepare for and

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

appear at the exposition.  PDP is also scheduled to be present in a booth located in close proximity to Nyko's booth.  Arbogast Dec., ¶25.  If PDP is permitted to sell or offer for sale the infringing Energizer/PDP charging systems at E3, Nyko will suffer additional injury to its reputation, its goodwill among consumers, and its market share.  Arbogast Dec., ¶26.

### III.   AUTHORITY AND ANALYSIS

The Patent Act, 35 U.S.C. § 1, et seq., provides that "courts . . . may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  The purpose of a preliminary injunction is to preserve the status quo ante.  *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d. Cir. 1969), cert. denied, 394 U.S. 999 (1969).  Nyko is entitled to a preliminary injunction against Energizer and PDP because (1) Nyko is likely to succeed on the merits, (2) Nyko will suffer irreparable harm if preliminary injunctive relief is not granted, (3) the balance of hardships tips in Nyko's favor, and (4) an injunction will not adversely affect the public interest.  *See Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005).

### A.   Nyko Has a Strong Likelihood of Success on the Merits

The Patent Act, 35 U.S.C. § 1, et seq., provides that "whoever, without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a).  To demonstrate that it is likely to succeed on the merits, a patent owner must establish a reasonable likelihood that it will ultimately show that a valid and enforceable patent has been infringed by the accused product.  *Pfizer*, 429 F.3d at 1372.

1

## 1.     The '848 Patent is Valid

By statute, the '848 Patent is presumed to be valid, and the burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity. 35 U.S.C. § 282.  The presumption applies to each claim, independently of the other claims in the patent. 35 U.S.C. § 282. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1581 n.8 (Fed. Cir. 1993). This statutory presumption derives in part from recognition of the technological expertise of patent examiners.  *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985)  The presumption is also based on the basic proposition that a governmental agency such as the Patent Office is presumed to do its job.  *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *see also Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 447 (Fed. Cir. 1986).

At trial, patent invalidity cannot be established unless the "accused infringer . . . show[s] by clear and convincing evidence that the patent is invalid," *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242; 180 L. Ed. 2d 131, 136 (2011).  At the preliminary injunction stage, however, Energizer and PDP have the burden of showing that there is a "substantial issue" that the '848 patent is invalid.  *See Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997).  In response, Nyko need not establish the validity of the '848 patent beyond question, but must only establish that the defendants' challenges to the validity of the patent "lack substantial merit." *Sanofi-Synthelabo v. Apotex, Inc.*, 488 F. Supp. 2d 317, 335-36 (S.D.N.Y. 2006) (granting a preliminary injunction where defendant failed to raise a substantial question of invalidity),  *aff'd*, 470 F.3d 1368 (Fed. Cir. 2006).

During prosecution of the application leading to the '848 patent, the Patent Office considered more than 30 prior art references.  This prior art is shown on the face of the '848 patent.  Navid Dec., Ex. A, pages 1 and 2.  Energizer and PDP

would need to show that either (a) the Patent Office's decision that the '848 patent is patentable over this prior art was erroneous, or (b) that other relevant, non-cumulative prior art exists and is sufficient to overcome the presumed validity of the '848 patent.  The burden of showing invalidity is more difficult, however, if the prior art was before the USPTO examiner.  *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990).  These barriers make it more than likely than not that Energizer and PDP will be unable to meet their burden of showing that the '848 patent is invalid.

### 2.   Nyko is Likely to Show that the '848 Patent is Infringed by the Energizer Charging Systems

Generally, there are two steps to an infringement analysis.  First, the court must determine the meaning and scope of the patent claims asserted to be infringed.  Second, the court must compare the properly construed claims to the accused product(s) to determine if the patent owner is likely to meet its burden to prove patent infringement by a preponderance of evidence.  *Pfizer*, 429 F.3d at 1372-73.

Claim construction relies in the first instance on "intrinsic evidence", i.e., the claim language itself, the patent specification, and the patent's file history in the Patent Office.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  If the claim language is ambiguous after a review of the intrinsic evidence, one may consider "extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."'  *Phillips*, 415 F.3d at 1317 (quoting *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 980 (Fed Cir 1995) (en banc), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384 (1996) (internal citations omitted).  However, claim construction always begins with the words of the claims themselves.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

a)   <u>Claim 1</u>

Claim 1 of the '848 patent recites:

1.  A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking [bays] each of the DC ports being on the base between a respective one of the pairs of surfaces.

Navid Dec., Ex. A, col. 15, ll. 30-52.[2]

Claim 1 is readily understandable and does not require elaborate interpretation.  In this case, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words." *Phillips,* 415 F.3d at 314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation")).  " In such circumstances, general purpose dictionaries may be helpful." *Phillips,* 415 F.3 at

---

[2]  The '848 patent issued with printing errors in claims 1 and 12.  In claim 1, at col. 15, line 50, the word "bays" was mistakenly printed as "hays".  Nyko's patent counsel discovered the errors -- which originated at the Patent Office -- and promptly filed a Request for a Certificate of Correction on April 3, 2012, pursuant to 35 U.S.C. § 254.  Martone Dec., ¶¶3 and 4 and Ex. A.

1314.

As shown in the photographs below, the Energizer Charging Systems are identical to the patented charging system recited in claim 1 of the '848 patent. The Energizer Charging System has [1] a base, [2] at least one structure on the base for providing physical support to the plurality of video game controllers, and [3] a "plurality" (i.e., two or more) of DC ports on the base:



Navid Dec., ¶20 and Ex. F.

Each of the DC ports is configured to couple to and provide DC power to a power input port of a video game controller:

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Power input port
of video controller

DC port of charger
couples to input port of
video controller

Navid Dec., ¶21, Ex. G and L.

The clear plastic structures attached to the base provide physical support to the plurality of video game controllers while the chargers are being charged, and they define docking bays "open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction":



Two docking bays, each open in a first direction and configured to receive a video game controller from the first direction.

Navid Dec., ¶22, Ex. H.

CHRISTIE, PARKER & HALE, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The clear plastic structures also comprise "a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays":



Navid Dec., ¶23, Ex. I.

Each of the DC ports is located on the base between a respective one of the pairs of surfaces:



Navid Dec., ¶24, Ex.J

The Energizer Charging System for the Xbox 360 differs slightly from the Energizer Charging System for the PlayStation 3 in two ways, neither of which alters the infringement analysis for claim 1.  First, the DC ports on the two devices are different, the PlayStation 3 port being configured to mate with a "mini" USB connector and the Xbox 360 port being configured to mate with a non-USB connector:



Energizer® charging system for Xbox 360®

Energizer® charging system for PlayStation® 3

Navid Dec., ¶25, Ex. K and L.

Second, as can be seen in the above photograph, the clear plastic structures that provide support for the video game controllers have a slightly different shape in the two charging systems.  For the Xbox 360, the structures have a lower surface that includes a pair of tines that protrude outward from the rest of the clear structure.  For the PlayStation 3,the lower surface is continuous and does not have tines.  In both charging systems, each of the clear plastic structures attached to the base has a pair of opposite surfaces that define a docking bay, with a DC

CHRISTIE, PARKER & HALE, LLP

port located between the opposing surfaces.  Navid Dec., ¶26, Ex. K.

It is evident that the Energizer Charging Systems literally infringe claim 1 of the '848 patent.  Navid Dec., ¶27.

### b)      Other Claims

Nyko is also likely to show that the Energizer Charging Systems literally infringe dependent claims 2, 5, 7, 8, and 10-12.  This is demonstrated in the following claim analysis:

**Claim 2:**

2.      The video game controller charging system of claim 1, wherein the plurality of DC ports comprises a plurality of male mini-USB connectors.

Navid Dec., Ex. A (col. 2, ll. 53-55).

The Energizer Charging System for the PlayStation 3 has two male "mini" USB ports:



Navid Dec., ¶29, Ex. K.

**Claim 5:**

5.      The video game controller charging system of claim 1,

CHRISTIE, PARKER & HALE, LLP

wherein the pairs of opposite surfaces are configured to align respective ones of the plurality of video game controllers such that the power input ports of the respective ones of the plurality of video game controllers couple to respective ones of the plurality of DC ports.

Navid Dec., Ex. A (col. 2, l. 65 - col. 3., l. 3).

The clear plastic structures in the Energizer Charging System constitute pairs of opposites structures, each pair configured to align with a video game controller so that the power input port of that particular video game controller couples to one of the DC ports on the charging system:



Pairs of opposite surfaces align respective video controllers

Navid Dec., ¶30, Ex. K, M, and D.

**Claim 7:**

7.    The video game controller charging system of claim 1, wherein the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers.

Navid Dec., Ex. A (col. 3, ll. 8-12).

The two DC ports in the Energizer Charging System are configured to couple to and provide the DC power to the two video game controllers:

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Power input port
of video controller

DC port of charger
couples to input port of
video controller

DC port couples
to video
game controller

DC port couples
to video
game controller

Navid Dec., ¶31, Ex. G and O.

### Claims 8 and 10-12:

8.      The video game controller charging system of claim 1, further comprising an AC-to-DC converter adapted to convert the externally supplied power to the DC power provided to the power input ports of the respective video game controllers.

10.    The video game controller charging system of claim 8, wherein the AC-to-DC converter is external to the base.

11.    The video game controller charging system of claim 8, wherein the AC-to-DC converter is adapted to convert an AC

1

voltage in the range of 100 V to 240 V corresponding to the externally supplied power into a DC voltage corresponding to the DC power.

2

3

12.     The video game controller charging system of claim 11, wherein the DC voltage is :DC 5 V.[3]

4

5

Navid Dec., Ex. A (col. 3, ll. 13-27).

6

The Energizer Charging Systems come with an external AC-to-DC converter that

7

can be plugged into the base of the charging system and converts externally

8

supplied 100 to 240V AC power to 5V DC power, which is then supplied to the

9

pair of DC ports and ultimately provides power to the input ports of the pair of

10

video game controllers.  Navid Dec., ¶32.  The voltage characteristics are

11

provided on the label affixed to the converter:

12

13

14

15

16



17

AC-to-DC converter included with

18

Energizer® charging
system for Xbox 360®

19

Navid Dec., ¶32, Ex. P.

20

It is evident that the Energizer Charging Systems literally infringe

21

dependent claims 2, 5, 7, 8, and 10-12 of the '848 patent.  Navid Dec., ¶28.

22

23

24

25

26

[3]  In claim 12, at col. 16, line 27, "DC 5 V" was mistakenly printed as ":DC 5 V".

27

Like the error to claim 1 (see note 1, *supra*), the error in claim 12 originated at the Patent Office, and Nyko has requested correction.  Martone Dec., ¶¶3 and 4, Ex.

28

A.

3.      **Nyko Will be Irreparably Harmed Unless a Preliminary Injunction is Issued**

The fundamental right afforded by a patent is the right to exclude others from practicing the claimed invention.  *Robert Bosch v. Pylon Mfg. Corp.*, 659 F.3d 1142, (Fed. Cir 2011) (citing *Smith Int'l, Inc. v. Hughes Tools Co.*, 718 F.2d 1573, 1581 (Fed Cir. 1983).  Historically, the Federal Circuit has applied an express presumption of irreparable harm upon finding that a plaintiff is likely to succeed on the merits of its patent infringement claim.  *Bosch*, 659 F.3d at 1148.  In *eBay Inc., v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), however, the Supreme Court held that a finding of patent infringement should not *automatically* lead to the issuance of a *permanent* injunction, and that courts are to exercise their discretions in accordance with traditional principles of equity.  *eBay,* 547 U.S. at 393-94.

After eBay, district court split on whether a presumption of irreparable harm still exists in the case where a patent owner has demonstrated a likelihood of success on the merits and seeks a *preliminary* injunction.  The Federal Circuit has not explicitly answered that question.  In dicta, it declared that "*eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injective relief."  *Bosch*, 659 F.3d at 1149.  In *Bosch*, however, the appeal arose from a district court's denial of a patentee's request for a *permanent* injunction.

Notwithstanding its view that a presumption of irreparable harm no longer applies after *eBay*, in *Bosch*, the Federal Circuit stressed that courts must still give proper recognition to the unique status of patents as property rights granting their owners the right to exclude.  "While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either."  *Id*.  This is "particularly apt in traditional cases, such as this, where the patentee and adjudged infringer both practice the patented technology."  *Id*. at 1149-1150. (quoting *eBay*, 547 U.S. at

396-97 (Kennedy, J., concurring).

Of course, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (citation omitted).  The court in *Bosch* reversed the district court's denial of a grant of a permanent injunction, in part because the patentee had provided evidence of (1) the parties' direct competition, (2) the patentee's loss in market share and access to customers; and (3) the infringer's inability to satisfy a judgment.  *Bosch*, 659 F.3d at 1150-51 (internal [in original] citation omitted).

Nyko has substantial evidence that it will suffer a loss in market share and access to a key customer (Walmart) --as well as additional, long-term injury-- if an injunction does not issue against Energizer and PDP.  The defendants directly compete with Nyko in the market for video game controller charging systems.  The facts in this case amply support Nyko's right to a preliminary injunction.

If Nyko is unable to stop the unauthorized sales by Energizer and PDP, Nyko will suffer grave and irreparable harm to its reputation and position in the industry.  Once shelf space is lost at Walmart and other stores, it will be very difficult to regain it, as Walmart tends to favor the incumbent and prefers to offer a single company's product line for a given product category.  The opportunity for Nyko ever to get its Charge Base products back on Walmart's shelves is extremely unlikely.  Arbogast Dec., ¶16.

If Nyko loses its ability to sell its products at Walmart, its goodwill among consumers, built up over a number of years, will be hurt, and its standing in the industry will suffer.  Arbogast Dec., ¶18.  Money available for product development for the next generation of products will be lost, which will not only affect Nyko's next generation of video game controller charging products, but all future Nyko products as well.  Arbogast Dec., ¶18.  Thus, the development

CHRISTIE, PARKER & HALE, LLP

disadvantage Nyko will suffer going forward cannot be remedied by damages paid after the fact.  Arbogast Dec., ¶18.  PDP, having no research and development costs, will continue to erode Nyko's market share, at great cost to Nyko.

If Nyko's products are not available at Walmart and other large retail stores, Nyko's visibility to consumers will greatly decrease, and Nyko will face a more difficult and expensive task marketing all of its products.  Arbogast Dec., ¶18.  Competitors like PDP will be able to reap the benefit of Nyko's hard work, with a subsequent erosion of Nyko's position in the industry.  Arbogast Dec., ¶20-24.

If PDP is permitted to sell or offer for sale the infringing Energizer/PDP charging systems at E3, Nyko will suffer additional injury to its reputation, its goodwill among consumers, and its market share.  Arbogast Dec., ¶26.

**B.**  **The Balance of Hardships Favors Granting a Preliminary Injunction**

In considering the balance of hardships, the magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringers if the preliminary injunction is granted in error.  Here, Nyko's showing of likelihood of success on the merits is very strong, as is its showing that it will be irreparably harmed if Energizer and PDP are allowed to continue selling the infringing Energizer Charging Systems.  Any potential harm to Energizer and PDP if they are enjoined is a harm of their own making.  *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997) (noting that harm to the defendant is not relevant because it had no right to infringe plaintiff's patent.)

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.   **The Public Interest Will be Served By Granting a Preliminary Injunction**

Public policy favors protecting patent rights over patent infringement. *Abbot Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("[A]bsent any other relevant concerns, we agree with the district court that the public is best served by enforcing patents that are likely valid and infringed."). Indeed, the public interest will almost always favor the patent owner if both a likelihood of success on the merits and irreparable injury are demonstrated. *See Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1353 (Fed. Cir. 2003).

D.   **A Bond, if Required at All, Should be Minimal**

If the Court believes that Nyko must post a bond pursuant to Federal Rule of Civil Procedure 65(b), a minimal bond will suffice.  As discussed above, Energizer and PDP have no legitimate business interest in making, selling, or importing infringing charging systems for game controllers.  Accordingly, if the Court believes a bond is necessary, Nyko proposes an amount of $10,000.

IV.   **CONCLUSION**

Energizer's and PDP's infringement of Nyko's '848 patent is ongoing and continues to cause irreparable injury to Nyko.  Nyko is entitled to a temporary restraining order and a preliminary injunction enjoining Energizer and PDP from further acts of infringement.

DATED:  May 10, 2012            Respectfully submitted,
                                CHRISTIE, PARKER & HALE, LLP


                                By ____/s/ Art Hasan_____
                                    Art Hasan

                                Attorneys for Plaintiff,
                                Nyko Technologies, Inc.