# EXHIBIT I

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 12/044,295 | NAVID, AMIR | |
| | Examiner | Art Unit | |
| | ARUN WILLIAMS | 2858 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *response filed 1/17/2012*.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-4,6-18,21-30*.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

/Arun Williams/
Primary Examiner, Art Unit 2858

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*I hereby certify that this correspondence is being electronically filed with the United States Patent and Trademark Office on January 17, 2012 at or before 11:59 p.m. Pacific Time under the Rules of 37 CFR § 1.8.*

Renne M.F. Wyzykowski

| | | |
|---|---|---|
| Appl No. | : 12/044,295 | Confirmation No. 7006 |
| Applicant | : Amir Navid | |
| Filed | : March 7, 2008 | |
| Title | : VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE | |
| TC/A.U. | : 2858 | |
| Examiner | : Arun C. Williams | |
| Docket No. | : 61070/N220 | |
| Customer No. | : 23363 | |

## AMENDMENT WITH A RCE

**Mail Stop RCE**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Post Office Box 29001
Glendale, CA 91203-1445
January 17, 2012

Commissioner:

In response to the Office action of October 17, 2011, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begin on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

## Amendments to the Claims:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## Listing of Claims:

1.      (Currently amended)  A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the base between a respective one of the pairs of surfaces.

2.      (Previously presented)  The video game controller charging system of claim 1, wherein the plurality of DC ports comprises a plurality of male mini-USB connectors.

3.      (Previously presented)  The video game controller charging system of claim 1, further comprising:

a current detector electrically coupled to the plurality of DC ports; and

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the video game controller charging system.

4.      (Original)  The video game controller charging system of claim 3, wherein the indicator comprises at least one LED.

5.      (Canceled)

6.      (Currently amended)  The video game controller charging system of claim 1, wherein the ~~at least one structure on the base comprises a plurality of~~ pairs of opposite surfaces, ~~the pairs~~ are configured to align respective ones of the plurality of video game controllers such that the power input ports of the respective ones of the plurality of video game controllers couple to respective ones of the plurality of DC ports.

7.      (Previously presented)  The video game controller charging system of claim 6, wherein the pairs of opposite surfaces comprise spring-loaded locating buttons configured to align the respective ones of the plurality of video game controllers.

8.      (Previously presented)  The video game controller charging system of claim 1, wherein the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers.

9.      (Previously presented)  The video game controller charging system of claim 1, further comprising an AC-to-DC converter adapted to convert the externally supplied power to the DC power provided to the power input ports of the respective video game controllers.

10.     (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is in the base.

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

11.    (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is external to the base.

12.    (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is adapted to convert an AC voltage in the range of 100 V to 240 V corresponding to the externally supplied power into a DC voltage corresponding to the DC power.

13.    (Original)  The video game controller charging system of claim 12, wherein the DC voltage is DC 5 V.

14.    (Currently amended)  A charging system for charging a plurality of ~~accessory devices~~ video game controllers, each having a power input port, the charging system comprising:
                a base;
                a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of ~~accessory devices~~ video game controllers;
                at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of ~~accessory devices~~ video game controllers to couple to respective ones of the plurality of male mini-USB connectors; and
                a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors,
                wherein the at least one docking structure comprises a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces.

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

15.     (Previously presented)  The charging system of claim 14, wherein the charging system further comprises an AC-to-DC converter electrically coupled between the power input and the plurality of male mini-USB connectors.

16.     (Original)  The charging system of claim 14, wherein the charging system further comprises an AC-to-DC converter external to the base and electrically coupled to the power input.

17.     (Previously presented)  The charging system of claim 14, further comprising:
        a current detector electrically coupled to the plurality of male mini-USB connectors; and
        an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

18.     (Original)  The charging system of claim 17, wherein the indicator comprises at least one LED.

19-20.  (Canceled)

21.     (Currently amended)  A charging system for charging at least one ~~accessory device~~ video game controller having a power input port, the charging system comprising:
        a base comprising at least one recess having at least one electrical contact, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the at least one electrical contact; and
        at least one external adapter comprising a connector configured to couple to the power input port of the at least one ~~accessory device~~ video game controller, the at least one external adapter further comprising at least one electrical lead;

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

   wherein the at least one external adapter is ~~mountable~~ removably attachable on the at least one ~~accessory device~~ video game controller and configured to remain attached on the at least one video game controller when the at least one video game controller is in use during operation of a video game, and

   wherein the ~~at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess~~ base further comprises at least one structure defining at least one docking bay open in a first direction and configured to receive from the first direction the at least one video game controller having the at least one external adapter attached thereon such that the at least one electrical lead contacts the at least one electrical contact, the at least one structure comprising at least one pair of substantially parallel opposite planar surfaces defining the at least one docking bay, the at least one docking bay being open on opposite sides between the at least one pair of surfaces.

  22. (Original)  The charging system of claim 21, further comprising:

   a current detector electrically coupled to the at least one electrical contact of the at least one recess; and

   an indicator electrically coupled to the current detector, the indicator adapted to indicate a status of the charging system.

  23. (Original)  The charging system of claim 22, wherein the indicator comprises at least one LED.

  24. (Original)  The charging system of claim 21, wherein:

   the at least one external adapter further comprises an angled edge; and

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

the at least one recess comprises an angled corner dimensioned to match the angled edge of the at least one external adapter and adapted to orient the at least one external adapter with respect to the at least one recess.

25.     (Original)  The charging system of claim 21, wherein:

the at least one electrical contact of the at least one recess comprises four electrical contacts; and

the at least one electrical lead of the at least one external adapter comprises four electrical leads.

26.     (Original)  The charging system of claim 21, wherein the connector of the at least one external adapter comprises a male mini-USB connector.

27.     (Original)  The charging system of claim 21, further comprising an AC/DC converter electrically coupled between the power input of the base and the at least one electrical contact of the at least one recess.

28.     (Currently amended)  A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:

a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and

an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,

wherein the adapter is ~~mountable~~ removably attachable on the video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game, and

-7-

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

wherein the base further comprises a docking structure configured to receive the video game controller having the adapter ~~mounted~~ <u>attached</u> thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base.

29.     (Previously presented)  The video game controller charging system of claim 28, wherein the plurality of electrical contacts comprises at least one spring biasing the plurality of electrical contacts toward the plurality of electrical leads.

30.     (Previously presented)  The video game controller charging system of claim 28, wherein the connector comprises a male mini-USB connector.

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

## REMARKS/ARGUMENTS

Claims 1-4, 6-18, and 21-30 are pending in the present application, of which claims 1, 14, 21, and 28 are independent. Claims 1, 14, 21, and 28 have been amended herein to include some of the matter described in the original specification and drawings (see, e.g., paragraphs [0083], [0085], and [0100], and FIGs. 11, 17, and 21). Claim 6 has been amended for reasons of clarity and antecedent basis. No new matter has been added. Applicant respectfully requests reconsideration and allowance of claims 1-4, 6-18, and 21-30 in view of the amendments and the following remarks.

## Rejection of Claims 1-4, 6-18, and 21-30 under 35 U.S.C. § 103(a)

Claims 1, 6, 9, 11, and 12 were rejected under § 103(a) as allegedly being unpatentable over U.S. Patent Application Publication No. 2006/0202660 to Chang ("Chang") in view of U.S. Patent Application Publication No. 2009/0072784 to Erickson ("Erickson"). This rejection is respectfully traversed. Further, Applicant has amended independent claim 1 herein.

Independent claim 1, as amended, recites:

A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

        <u>wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and</u>

        <u>wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the base between a respective one of the pairs of surfaces</u> (emphasis added).

Applicant submits that claim 1, as amended, is not unpatentable over the combination of Chang and Erickson under 35 U.S.C. § 103(a).  The combination of Chang and Erickson does not appear to teach or suggest "wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and <u>each of the DC ports being on the base between a respective one of the pairs of surfaces</u>," as recited in Applicant's amended claim 1.  Rather, Chang appears to disclose a wireless mouse charger including a housing 1 having a single mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3), but does not appear to teach a plurality of docking bays open in a first direction and configured to receive respective ones of a plurality of video game controllers, as recited in Applicant's claim 1.  Further, Chang appears to disclose first and second inner surfaces 11, 12 defining the mouse cavity 13, and a contact set being located on the first inner surface (see Chang, paragraphs [0032] and [0037], and Fig. 3), but does not appear to teach or suggest a DC port being on a base of the housing 1 between the first and second inner surfaces 11, 12.  Erickson disclose a system 10 for charging two portable devices 12a, 12b which are game controllers (see Erickson, paragraph [0031], and Fig. 4A).  However, Erickson does not appear to teach or suggest a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and <u>each of the DC ports being on the</u>

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

base between a respective one of the pairs of surfaces.  Rather, Erickson discloses coupling
inductors 36a, 36b in recesses 34a, 34b under a base unit shell 42 (see Erickson, paragraph
[0038], and Fig. 4A).  Further, Applicant submits that it would not have been obvious to one of
ordinary skill in the art to have modified the teachings of Chang to include a structure on the
base comprising a plurality of docking bays because a user of a wireless mouse typically does
not use more than one mouse at a time and, therefore, would not typically have a need to
simultaneously charge more than one wireless mouse.  Additionally, Chang teaches a wireless
mouse charger having a battery cavity 14 for charging a spare rechargeable battery 92 therein so
that an inside rechargeable battery of the wireless mouse and the spare rechargeable battery 92
can be charged simultaneously so that use of the wireless mouse is not interrupted due to lack of
power (see Chang, paragraphs [0041] and [0045], and Fig. 6).

At least for the reasons explained above, Applicant respectfully submits that a *prima
facie* case of obviousness has not been established with respect to claim 1, as amended, because
the combination of Chang and Erickson does not teach or suggest each and every limitation of
amended claim 1.  As such, Applicant respectfully requests that the rejection of claim 1 be
withdrawn and that this claim be allowed.

Dependent claims 6, 9, 11, and 12 depend (directly or indirectly) from claim 1.  As such,
these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other
limitations, which further patentably distinguish these claims over the cited references.  For at
least the reasons set forth above, Applicant submits that these dependent claims are patentable
over the cited references.  Applicant, therefore, respectfully requests that the rejection of claims
6, 9, 11, and 12 be withdrawn and that these claims be allowed.

Claim 2 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in
view of Erickson and further in view of U.S. Patent Application Publication No. 2007/0278999
to Hsia ("Hsia").  This rejection is respectfully traversed.

Dependent claim 2 depends directly from claim 1.  As such, claim 2 incorporates all of
the terms and limitations of claim 1 in addition to other limitations, which further patentably
distinguish claim 2 over the cited references.  Moreover, Hsia does not appear to cure the

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 2 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 2 be withdrawn and that this claim be allowed.

Claims 3 and 4 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent Application Publication No. 2004/0189250 to Nishida ("Nishida"). This rejection is respectfully traversed.

Dependent claims 3 and 4 depend (directly or indirectly) from claim 1. As such, these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claims 3 and 4 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 3 and 4 be withdrawn and that these claims be allowed.

Claim 7 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent No. 6,313,604 to Chen ("Chen"). This rejection is respectfully traversed.

Dependent claim 7 depends indirectly from claim 1. As such, claim 7 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 7 over the cited references. Moreover, Chen does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 7 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 7 be withdrawn and that this claim be allowed.

Claim 8 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Erickson and further in view of U.S. Patent Application Publication No. 2008/0180060 to Odell et al. ("Odell"). This rejection is respectfully traversed.

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

Dependent claim 8 depends directly from claim 1. As such, claim 8 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 8 over the cited references. Moreover, Odell does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 8 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 8 be withdrawn and that this claim be allowed.

Claim 10 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent No. 5,734,254 to Stephens ("Stephens"). This rejection is respectfully traversed.

Dependent claim 10 depends indirectly from claim 1. As such, claim 10 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 10 over the cited references. Moreover, Stephens does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 10 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 10 be withdrawn and that this claim be allowed.

Claim 13 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent No. 6,842,356 to Hsu ("Hsu"). This rejection is respectfully traversed.

Dependent claim 13 depends indirectly from claim 1. As such, claim 13 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 13 over the cited references. Moreover, Hsu does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 13 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 13 be withdrawn and that this claim be allowed.

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

Claims 14-16 were rejected under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent Application Publication No. 2003/0216069 to Huang ("Huang"), in view of Hsia. This rejection is respectfully traversed. Further, Applicant has amended independent claim 14 herein.

Independent claim 14, as amended, recites:

A charging system for charging a plurality of video game controllers, each having a power input port, the charging system comprising:

a base;

a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of video game controllers;

at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors,

wherein the at least one docking structure comprises a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces (emphasis added).

Applicant submits that claim 14, as amended, is not unpatentable over Huang in view of Hsia under 35 U.S.C. § 103(a). Neither Huang nor Hsia, nor the combination thereof, appears to teach or suggest a charging system for charging a plurality of video game controllers and including "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers" or "wherein the at least one docking structure comprises a

-14-

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, <u>each of the docking bays being open on opposite sides between the respective pair of surfaces</u>," as recited in Applicant's amended claim 14.   Rather, Huang appears to disclose a hub and power adapter main unit 1 having a plurality of upward insertion slots 16, 16', 16" for receiving connection boxes 2 (i.e. USB Ethernet receiving box 21, etc.) therein (see Huang, paragraphs [0014] and [0016], and Fig. 2), but does not appear to teach or suggest a charging system for charging a plurality of video game controllers, as recited in Applicant's amended claim 14.   Additionally, Huang does not appear to teach or suggest at least one docking structure comprising a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, <u>each of the docking bays being open on opposite sides between the respective pair of surfaces</u>.   Rather, Huang appears to teach the insertion slots 16, 16', 16" being closed on all sides except for a side from which one of the connection boxes 2 is inserted (see Huang, Fig. 2).   Further, Hsia does not appear to teach or suggest at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers.   Nor does Hsia appear to teach or suggest at least one docking structure comprising a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces.

   At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 14, as amended, because neither Huang nor Hsia, nor the combination thereof, appears to teach or suggest each and every limitation of the present claim 14.   As such, Applicant respectfully requests that the rejection of claim 14 be withdrawn and that this claim be allowed.

   Dependent claims 15 and 16 depend directly from claim 14.   As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references.   For at least the

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

reasons set forth above, Applicant submits that these dependent claims are not unpatentable over the cited references. Applicant, therefore, respectfully requests that the rejection of claims 15 and 16 be withdrawn and that these claims be allowed.

Claims 17 and 18 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Huang in view of Hsia and further in view of Nishida. This rejection is respectfully traversed.

Dependent claims 17 and 18 depend (directly or indirectly) from claim 14. As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Huang and Hsia with respect to claim 14 as discussed above. For at least the above reasons, Applicant submits that claims 17 and 18 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 17 and 18 be withdrawn and that these claims be allowed.

Claims 21, 24, 25, and 28 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 5,594,314 to Hagiuda et al. (hereinafter "Hagiuda"). This rejection is respectfully traversed. Further, Applicant has amended independent claims 21 and 28 herein.

Independent claim 21, as amended, recites:

A charging system for charging at least one video game controller having a power input port, the charging system comprising:

a base comprising at least one recess having at least one electrical contact, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the at least one electrical contact; and

at least one external adapter comprising a connector configured to couple to the power input port of the at least one video game controller, the at least one external adapter further comprising at least one electrical lead;

wherein the at least one external adapter is removably attachable on the at least one video game controller and configured to remain attached on the

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

at least one video game controller when the at least one video game controller is in use during operation of a video game, and

wherein the base further comprises at least one structure defining at least one docking bay open in a first direction and configured to receive from the first direction the at least one video game controller having the at least one external adapter attached thereon such that the at least one electrical lead contacts the at least one electrical contact, the at least one structure comprising at least one pair of substantially parallel opposite planar surfaces defining the at least one docking bay, the at least one docking bay being open on opposite sides between the at least one pair of surfaces (emphasis added).

Applicant submits that claim 21, as amended, is not unpatentable over Chang in view of Hagiuda under 35 U.S.C. § 103(a). Neither Chang nor Hagiuda, nor the combination thereof, appears to teach or suggest "wherein the at least one external adapter is removably attachable on the at least one video game controller and configured to remain attached on the at least one video game controller when the at least one video game controller is in use during operation of a video game," as recited in Applicant's amended claim 21. Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3). However, Chang does not appear to teach or suggest an external adapter that is removably attachable on the wireless mouse and configured to remain attached on the wireless mouse when the wireless mouse is in use during operation of a video game. Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being removably attachable on a video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game. Rather, Hagiuda appears to teach the battery discharge adaptor 4 having terminals 105, 107, and the battery 3 being received in an indentation 97 of the battery discharge adaptor 4 and having terminals 104, 106 which

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1).  However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being attachable on a video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game.  As such, neither Chang nor Hagiuda, nor the combination thereof appears to teach or suggest at least one external adapter that is removably attachable on at least one video game controller.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 21, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 21.  As such, Applicant respectfully requests that the rejection of claim 21 be withdrawn and that this claim be allowed.

Dependent claims 24 and 25 depend directly from claim 21.  As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish these claims over the cited references.  For at least the reasons set forth above, Applicant submits that these dependent claims are not unpatentable over the cited references.  Applicant, therefore, respectfully requests that the rejection of claims 24 and 25 be withdrawn and that these claims be allowed.

Independent claim 28, as amended, recites:

A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:

a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and

an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

wherein the adapter is removably attachable on the video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game, and

wherein the base further comprises a docking structure configured to receive the video game controller having the adapter attached thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base (emphasis added).

Applicant submits that claim 28, as amended, is not unpatentable over Chang in view of Hagiuda under 35 U.S.C. § 103(a). Neither Chang nor Hagiuda, nor the combination thereof, appears to teach or suggest "wherein the adapter is removably attachable on the video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game," as recited in Applicant's amended claim 28. For example, as discussed above with respect to claim 21, Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3). However, Chang does not appear to teach or suggest an adapter that is removably attachable on the wireless mouse and configured to remain attached on the wireless mouse when the wireless mouse is in use during operation of a video game. Further, Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being removably attachable on a video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game. Rather, Hagiuda appears to teach the battery discharge adaptor 4 having terminals 105, 107, and the battery 3 being received in an indentation 97 of the battery discharge adaptor 4 and having terminals 104, 106 which establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being attachable on a video game controller and configured to

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

remain attached on the video game controller when the video game controller is in use during operation of a video game.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 28, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 28. As such, Applicant respectfully requests that the rejection of claim 28 be withdrawn and that this claim be allowed.

Claims 22 and 23 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda and further in view of Nishida. This rejection is respectfully traversed.

Dependent claims 22 and 23 depend (directly or indirectly) from claim 21. As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 as discussed above. For at least the above reasons, Applicant submits that claims 22 and 23 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 22 and 23 be withdrawn and that these claims be allowed.

Claims 26 and 30 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda and further in view of Hsia. This rejection is respectfully traversed.

Dependent claim 26 depends directly from claim 21. Dependent claim 30 depends directly from claim 26. As such, claims 26 and 30 incorporate all of the terms and limitations of claims 21 and 28, respectively, in addition to other limitations, which further patentably distinguish these dependent claims over the cited references. Moreover, Hsia does not appear to cure the deficiencies in Chang and Hagiuda with respect to claims 21 and 28 as discussed above. For at least the above reasons, Applicant submits that claims 26 and 30 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 26 and 30 be withdrawn and that these claims be allowed.

**Appln No. 12/044,295**
**Amdt date January 17, 2012**
**Reply to Office action of October 17, 2011**

Claim 27 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda and further in view of Stephens.  This rejection is respectfully traversed.

Dependent claim 27 depends directly from claim 21.  As such, claim 27 incorporates all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish claim 27 over the cited references.  Moreover, Stephens does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 as discussed above.  For at least the above reasons, Applicant submits that claim 27 is not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claim 27 be withdrawn and that this claim be allowed.

Claim 29 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Hagiuda and further in view of Chen.  This rejection is respectfully traversed.

Dependent claim 29 depends directly from claim 28.  As such, claim 29 incorporates all of the terms and limitations of claim 28 in addition to other limitations, which further patentably distinguish claim 29 over the cited references.  Moreover, Chen does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 28 as discussed above.  For at least the above reasons, Applicant submits that claim 29 is not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claim 29 be withdrawn and that this claim be allowed.

**Appln No. 12/044,295**
**Amdt date January 17, 2012**
**Reply to Office action of October 17, 2011**

**<u>Concluding Remarks</u>**

  In view of the foregoing amendments and remarks, Applicant earnestly solicits timely issuance of a Notice of Allowance allowing claims 1-4, 6-18, and 21-30. If there are any remaining issues that can be addressed over the telephone, the Examiner is encouraged to call Applicant's attorney at the number listed below.

         Respectfully submitted,

         CHRISTIE, PARKER & HALE, LLP

        By _____

         Jason C. Martone
         Reg. No. 59,469
         626/795-9900

JCM/rmw

RMW PAS1145028.1-*-01/17/12 12:07 PM

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oғғɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/044,295 | 03/07/2008 | Amir Navid | 61070/N220 | 7006 |

| | |
|---|---|
| 23363       7590       10/17/2011 | EXAMINER |
| CHRISTIE, PARKER & HALE, LLP | WILLIAMS, ARUN C |
| PO BOX 7068 | |
| PASADENA, CA 91109-7068 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2858 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/17/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| | **Application No.** | **Applicant(s)** |
|---|---|---|
| **Office Action Summary** | 12/044,295 | NAVID, AMIR |
| | **Examiner** | **Art Unit** | |
| | ARUN WILLIAMS | 2858 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>08 July 2011</u>.

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-30</u> is/are pending in the application.

    4a) Of the above claim(s) <u>5,19 and 20</u> is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-4,6-18 and 21-30</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>3/7/2008</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>4/8/2011</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

Application/Control Number: 12/044,295                                Page 2

Art Unit: 2858

## DETAILED ACTION

### *Response to Amendment*

1.      This is in response to an amendment/response filed on 7/8/2011

Claims 1-3,6-9,14-15,17,21 have been amended.

Claim 5,19-20 have been cancelled.

Claims 28-30 are newly added.

Hereon, claims 1-4,6-18,21-30 are currently pending; claims 1-4,6-18,21-30  are

rejected.

### *Information Disclosure Statement*

2.      The information disclosure statement (IDS) file on 4/8/2011 has been considered

by the examiner. An initialed copy is attached herewith.

### *Claim Rejections - 35 USC § 103*

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4.      The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

Application/Control Number: 12/044,295                                    Page 3

Art Unit: 2858

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

5. **Claims 1,5,9,11, and 12 are rejected under 35 U.S.C. 102(A) as being unpatentable by Chang, (USNO.2006/0202660) in view of Erickson, (USNO.2009/0072784)**

   **As for claim 1**, Chang discloses and  shows in Fig. 4 a video game controller charging system for charging at least one video game controller using externally supplied power, the video game controller charging system comprising: a base **(1)**; at least one structure **(12)** on the base for providing physical support to the at least one video game controller **(19)** while the at least one video game controller is being charged; and at least one DC port **(31)** on the base, the at least one DC port configured to couple to and provide DC power to a power input port of the at least one video game controller **(par.[0032-0034])**.


   Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of a plurality of video game controllers, wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction.

Application/Control Number: 12/044,295                                        Page 4
Art Unit: 2858

Erickson discloses and shows in Figs. 1 & 4 a plurality of DC ports on the base **(14)**, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of a plurality of video game controllers **(12)**, wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction **(par.[0031-0042])**

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers, wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of a plurality of video game controllers from the first direction for advantages such as providing the ability to recharge without replacement of batteries **(par.[0005])**, as taught by Erickson.

**As for claim 6**, Chang in combination with Erickson discloses and shows wherein the at least one structure on the base comprises a plurality of pairs of opposite surfaces, the pairs configured to align respective ones of the plurality of video game controllers such that the power input ports of the respective ones of the plurality of video game controllers couple to respective ones of the plurality of DC ports.

Application/Control Number: 12/044,295                                           Page 5
Art Unit: 2858

   **As for claim 9**, Chang in combination with Erickson shows an AC-to- DC
converter **(within power supply adapter which element 93 is coupled to; Fig. 4 of
Chang)** adapted to convert the externally supplied power to the DC power provided to
the power input ports of the respective video game controllers.


   **As for claim 11**, Chang shows in Fig. 4 the AC-to-DC converter is external to the
base.

   **As for claim 12**, Chang shows in Fig. 4 the AC-to-DC converter is adapted to
convert an AC voltage in the range of 100 V to 240 V corresponding to the externally
supplied power into a DC voltage corresponding to the DC power.


**6.     Claim 2 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Chang, (USNO.2006/0202660) in view of Erickson and further in view of Hsia,
(USNO.2007/0278999).**

   **As for claim 2**, Chang in combination with Erickson discloses all limitations, but
differs from the claimed invention because he does not explicitly disclose a DC port
comprises a male mini-USB connector.

   Hsia discloses and shows in Fig. 5 a DC port comprises a male mini-USB
connector **(par.[0023-0025])**.

   Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention was made to have modified the combined teachings of Chang and

Application/Control Number: 12/044,295                                        Page 6
Art Unit: 2858

Erickson by using a DC port comprises a male mini-USB connector for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

Chang in combination with Erickson and Hsia discloses the claimed invention except for a plurality of DC port comprises a plurality of male mini-USB connector. It would have been obvious to one having ordinary skill in the art at the time of the invention was made to have a plurality of DC port comprises a plurality of male mini-USB connector, since it has been held that mere duplication of the essential working parts of a device involves only routine skill in the art. St. Regis Paper Co. v. Bemis Co., 193 USPQ 8.


7.     **Claims 3 and 4 are rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Erickson and further in view of Nishida, (USNO.2004/0189250)**

**As for claims 3 and 4**, Chang in combination with Erickson discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a current detector electrically coupled to the plurality DC port; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled to the plurality of DC port; and an indicator **(25)** electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Application/Control Number: 12/044,295                                      Page 7
Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention was made to have modified the combined teachings of Chang and
Erickson by using a current detector electrically coupled to the plurality DC port; and an
indicator electrically coupled to the current detector, the indicator configured to indicate
a charging status of the charging system for advantages such as providing necessary
accurate information of the charging/discharging state **(par.[0044])**, as taught by
Nishida.

8.    **Claim  7 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Chang, (USNO.2006/0202660) in view of Erickson and further in view of Chen,
(USPATNO.6,313,604)**

**As for claim 7**, Chang in combination with Erickson discloses all limitations, but
differs from the claimed invention because he does not explicitly disclose pair of
opposite surfaces comprise spring-loaded locating buttons configured to align a device
in a base.

Chen discloses and shows in Fig. 3 pair of opposite surfaces comprise spring-
loaded locating buttons **(22)** configured to align the device in a base **(col.2, lines 6-20)**.

Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention was made to have modified the combined teachings of Chen and
Erickson by having pair of opposite surfaces comprise spring-loaded locating buttons
configured to align a device in a base for advantages such as providing proper clamping
within a base **(col.2, line 19)**, as taught by Chen.

Application/Control Number: 12/044,295                                        Page 8
Art Unit: 2858

**9.     Claims 8 is rejected under 35 U.S.C. 103(a) as being anticipated by Chang in view of Erickson and further in view of Odell et al, (USNO.2008/0180060)**

**As for claim 8,** Chang in combination with Erickson discloses all limitations, but differs from the claimed invention because he does not explicitly disclose the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers.

Odell discloses and shows in Fig. 7c the plurality of DC ports **(43: Fig. 4 & 60:Fig. 9)** is configured to concurrently couple to and provide the DC power to the plurality of video game controllers **(par.[0037-0041])**

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Erickson by having the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers for advantages such as providing the ability to power and engage a wireless device **(par.[0006])**, as taught by Odell.

**10.     Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Erickson and further in view of Stephens, (USPATNO.5,734,254)**

**As for claim 10**, Chang in combination with Erickson discloses all limitations, but differs from the claimed invention because he does not explicitly disclose the AC-to-DC converter is in the base.

Application/Control Number: 12/044,295                                         Page 9
Art Unit: 2858

Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Erickson by using the AC-to-DC converter is in the base for advantages such as

providing to convert voltage into a preferred output **(col.4, lines 15-21)**, as taught by

Stephens.

**11.    Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable by**

**Chang, (USNO.2006/0202660) in view of Erickson and further in view of Hsu,**

**(USPATNO.6,842,356)**

**As for claim 13**, Chang in combination with Erickson discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose the DC

voltage is DC5V.

Hsu discloses and shows in Fig. 3 the DC voltage is DC5V **(via element  64)**.

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Erickson by having the DC voltage is DC5V for advantages such as providing stabilized

output **(col.3, line 40)**, as taught by Hsu.

**12.    Claims 14 ,15, and 16 are rejected under 35 U.S.C. 103(a) as being**

**unpatentable over Huang, (USNO.2003/0216069) in view of Hsia,**

**(USNO.2007/0278999).**

Application/Control Number: 12/044,295                                    Page 10
Art Unit: 2858

**As for claim 14**, Huang discloses and shows in Fig. 2 a charging system for charging a plurality of accessory devices, each having a power input port, the charging system comprising: a base **(1)**; a plurality of USB connectors **(161)** supported by the base and each adapted to provide DC power to a respective one of plurality of accessory devices **(21-25)**; at least one docking structure defining a plurality of docking bays **(16,16')** open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of plurality of USB connector connectors; and a power input **(11: Fig. 3)** for connecting to a power supply **(ref's city power supply)**, the power input electrically coupled to the plurality USB connectors **[par. 0021-0017])**.

Huang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a male mini-USB connector supported by the base and adapted to provide DC power to the at least one accessory device

Hsia discloses and shows in Fig. 5 at least one male mini-USB connector **(520)** supported by the base **(exterior of element 500)** and adapted to provide DC power to the at least one accessory device **(600)(par.[0023-0025])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Huang by using a male mini-USB connector supported by the base and adapted to provide DC power to the at least one accessory device for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

Application/Control Number: 12/044,295                                    Page 11
Art Unit: 2858

**As for claim 15**, Huang in combination with Hsia discloses and shows an AC-to-DC converter electrically coupled between the power input and the plurality of male mini- USB connectors.

**As for claim 16**, Huang discloses and shows in fig. 4 an AC-to-DC converter external **(obvious to be connected to 202 to receive DC)** to the base and electrically coupled to a power input **(202)**.


**13.     Claims 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Huang in view of Hsia and further in view of Nishida.**

**As for claims 17 and 18**, Huang in combination with Hsia discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a current detector electrically coupled to the plurality of connecters; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled to the plurality of connecters; and an indicator **(25)** electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Huang and Hsia by using a current detector electrically coupled to the plurality of connecters; and an indicator electrically coupled to the current detector, the indicator configured to

Application/Control Number: 12/044,295                                    Page 12
Art Unit: 2858

indicate a charging status of the charging system for advantages such as providing

necessary accurate information of the charging/discharging state **(par.[0044])**, as taught

by Nishida.

**14.     Claims 21,24, and 25 are rejected under 35 U.S.C. 103(a) as being**

**unpatentable over Chang, (USNO.2006/0202660) in view of Hagiuda et**

**al,(Hagiuda), (USPATNO.5,594,314)**

    **As for claim 21**, Chang discloses and shows in Fig. 4 a charging system for

charging at least one accessory device having a power input port, the charging system

comprising: a base **(1)** comprising at least one recess having at least one electrical

contact **(31)**, the base further comprising a power input for connection to a power

supply, the power input being electrically coupled to the at least one electrical contact

**(par.[0032-0034])**.

    Chang discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose at least one external adapter comprising a connector

configured to couple to the power input port of the at least one accessory device, the at

least one external adapter further comprising at least one electrical lead; wherein the at

least one external adapter is mountable on the at least one accessory device ; wherein

the at least one recess is dimensioned to receive the at least one external adapter, the

at least one electrical lead of the at least one external adapter contacting the at least

one electrical contact of the at least one recess when the at least one external adapter

is received by the at least one recess.

Application/Control Number: 12/044,295                                    Page 13
Art Unit: 2858

Haguida discloses and shows in Fig. 1 at least one external adapter **(4)** comprising a connector **(combination of 107 & 105)** configured to couple to the power input port **(106 &104)** of the at least one accessory device **(3)**, the at least one external adapter further comprising at least one electrical lead **(103)**; wherein the at least one external adapter is mountable on the at least one accessory device; wherein the at least one recess **(99)** is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact **(102)** of the at least one recess when the at least one external adapter is received by the at least one recess **(col.2, lines 31-57)**

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead; wherein the at least one external adapter is mountable on the at least one accessory device ; wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess for advantages such as providing the ability to accommodate charging/discharging features **(col.1, lines 51-58)**, as taught by Haguida.

**As for claim 24**, Chang in combination with Haguida discloses and shows at least one external adapter further comprises an angled edge; and the at least one

Application/Control Number: 12/044,295                                        Page 14
Art Unit: 2858

recess comprises an angled corner dimensioned to match the angled edge of the at

least one external adapter and adapted to orient the at least one external adapter with

respect to the at least one recess.

　　　　As for claim 25, Chang in combination with Haguida discloses all limitations of

the invention except for at least one recess comprises four electrical contacts and at

least one external adapter comprises four electrical leads. It would have been  an

obvious matter of design choice to make at least one recess comprise four electrical

contacts and at least one external adapter comprise four electrical leads, since

applicant has not disclosed that at least one recess comprising four electrical contacts

and at least one external adapter comprising four electrical leads solves any stated

problem or is for any particular purpose and thus would have been obvious.

**15.**　　**Claims 22 and 23 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Chang in view of Haguida and further in view of Nishida.**

　　　　As for claims 22 and 23, Chang in combination with Haguida discloses all

limitations, but differs from the claimed invention because he does not explicitly disclose

a current detector electrically coupled to the at least one electrical contact of at least

one recess; and an indicator electrically coupled to the current detector, the indicator

configured to indicate a charging status of the charging system.

　　　　Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled

to the at least one electrical contact of at least one recess; and an indicator **(25)**

electrically coupled to the current detector, the indicator configured to indicate a

Application/Control Number: 12/044,295                                    Page 15
Art Unit: 2858

charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Haguida by using a current detector electrically coupled to the at least one electrical contact of at least one recess; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system for advantages such as providing necessary accurate information of the charging/discharging state **(par.[0044])**, as taught by Nishida.

**16.     Claim 26 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang in view of Haguida and further in view of Hsia.**

**As for claim 26**, Chang in combination with Haguida discloses all limitations, but differs from the claimed invention because he does not explicitly disclose at least one external adapter comprises a male mini-USB connector.

Hsia discloses and shows in Fig. 5 at least one external adapter comprises a male mini-USB connector **(520) (par.[0023-0025])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Haguida by using at least one external adapter comprises a male mini-USB connector for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

Application/Control Number: 12/044,295                                    Page 16
Art Unit: 2858

17.     **Claim 27 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Stephens, (USPATNO.5,734,254)**

        **As for claim 27**, Chang in combination with Haguida discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose the AC-to-DC

converter is in the base

        Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

        Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings Chang and

Haguida by using the AC-to-DC converter is in the base for advantages such as

providing to convert voltage into a preferred output **(col.4, lines 15-21)**, as taught by

Stephens.

18.     **Claim 28 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Hagiuda et al,(Hagiuda),**

**(USPATNO.5,594,314)**

        **As for claim 28**, Chang discloses and shows in Fig. 4 a video game controller

charging system for charging a video game controller **(91)** having a power input port,

the video game controller charging system comprising: a base **(1)** comprising a plurality

of electrical contacts, the base further comprising a power input for connection to a

power supply, the power input being electrically coupled to the plurality of electrical

contacts and wherein the base further comprises a docking structure configured to

Application/Control Number: 12/044,295                                                    Page 17
Art Unit: 2858

receive the video game controller having contact the plurality of electrical contacts of the

base **(par.[0032-0034])**

Cheng discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose an adapter comprising a connector configured to couple to

the power input port of a device, the adapter further comprising a plurality of electrical

leads, wherein the adapter is mountable on the device, receive the device having the

adapter mounted thereon such that the plurality of electrical leads of the adapter contact

the plurality of electrical contacts of the base.

Haguida discloses and shows in Fig. 1 an adapter **(4)** comprising a connector

**(combination of 107 & 105)** configured to couple to the power input port **(34:Fig 2)**of a

device **(3)** , the adapter further comprising a plurality of electrical leads **(103 & 101)**,

wherein the adapter is mountable on the device , receive the device having the adapter

mounted thereon such that the plurality of electrical leads of the adapter contact the

plurality of electrical contacts of the base **(1) (col.2, lines 31-57)**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chang by using an

adapter comprising a connector configured to couple to the power input port of a device,

the adapter further comprising a plurality of electrical leads, wherein the adapter is

mountable on the device, receive the device having the adapter mounted thereon such

that the plurality of electrical leads of the adapter contact the plurality of electrical

contacts of the base for advantages such as providing the ability to accommodate

charging/discharging features **(col.1, lines 51-58)**, as taught by Haguida.

Application/Control Number: 12/044,295                                            Page 18
Art Unit: 2858

**19.     Claim  29 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Chang, (USNO.2006/0202660) in view of Haguida and further in view of Chen,
(USPATNO.6,313,604)**

As for claim 29, Chang in combination with Haguida discloses all limitations, but
differs from the claimed invention because he does not explicitly disclose wherein the
plurality of electrical contacts comprises at least one spring biasing the plurality of
electrical contacts toward the plurality of electrical leads.

Chen discloses and shows in Fig. 3 wherein the plurality of electrical contacts
comprises at least one spring **(22)**  biasing the plurality of electrical contacts toward the
plurality of electrical leads **(col.2, lines 6-20)**..

Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention was made to have modified the combined teachings of Chen and
Haguida by having the plurality of electrical contacts comprises at least one spring
biasing the plurality of electrical contacts toward the plurality of electrical leads for
advantages such as providing proper clamping within a base **(col.2, line 19)**, as taught
by Chen.

**20.     Claim 30 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Chang, (USNO.2006/0202660) in view of Haguida and further in view of Hsia,
(USNO.2007/0278999).**

Application/Control Number: 12/044,295                                    Page 19
Art Unit: 2858

**As for claim 30**, Chang in combination with Erickson discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a connector comprises a male mini-USB connector.

Hsia discloses and shows in Fig. 5 a connector comprises a male mini-USB connector **(par.[0023-0025])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Haguida by using a connector comprises a male mini-USB connector for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

## *Response to Arguments*

1.      Applicant's arguments filed 7/8/2011 have been fully considered but they are not persuasive.

2.      In response to applicants' argument that

I.      Chang does not appear to disclose "wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction," as recited in Applicant's amended claim 1

II.      Neither Chang nor Hsia, nor the combination thereof, appears to teach or suggest "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors,"

  III.    Chang nor Hagiuda, nor the combination thereof appears to teach or suggest at least one external adapter that is mountable on at least one accessory device.

Application/Control Number: 12/044,295                                    Page 20
Art Unit: 2858

3.      The examiner respectfully disagree and submits,

I.      As in dedicated in the new rejection above, Chang in combination with Erickson discloses  at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction ,which was necessitated by an amendment.

II.     As in dedicated in the new rejection above, Hang in combination with Hsia discloses  at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors ,which was necessitated by an amendment.

III.    Chang in combination with Hagiuda discloses at least one external adapter that is mountable on at least one accessory device **(col.2, lines 55-58)**


                                   *Conclusion*

21.     Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP § 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the

Application/Control Number: 12/044,295                                    Page 21
Art Unit: 2858

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ARUN WILLIAMS whose telephone number is (571)272-

9765.  The examiner can normally be reached on Mon - Thurs, 6:30am - 4pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Patrick Assouad can be reached on 571-272-22102210. The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Arun  Williams/                                    /Edward Tso/
Examiner, Art Unit 2858                             Primary Examiner, Art Unit 2858

Application/Control Number: 12/044,295                                        Page 22
Art Unit: 2858

| *Notice of References Cited* | Application/Control No. 12/044,295 | Applicant(s)/Patent Under Reexamination NAVID, AMIR | |
|---|---|---|---|
| | Examiner ARUN WILLIAMS | Art Unit 2858 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,594,314 A | 01-1997 | Hagiuda et al. | 320/110 |
| * | B | US-5,734,254 A | 03-1998 | Stephens, Charles S. | 320/106 |
| * | C | US-6,313,604 B1 | 11-2001 | Chen, Han-Liang | 320/114 |
| * | D | US-2003/0216069 A1 | 11-2003 | Huang, Yes Yen | 439/105 |
| * | E | US-2004/0189250 A1 | 09-2004 | Nishida, Hideyuki | 320/116 |
| * | F | US-6,842,356 B2 | 01-2005 | Hsu, Benjamin | 363/146 |
| * | G | US-2006/0202660 A1 | 09-2006 | Chang, Yuan-Jung | 320/115 |
| * | H | US-2007/0278999 A1 | 12-2007 | Hsia, Wen-Nan | 320/111 |
| * | I | US-2008/0180060 A1 | 07-2008 | Odell et al. | 320/115 |
| * | J | US-2009/0072784 A1 | 03-2009 | Erickson, Craig | 320/108 |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| FORM PTO/SB/08A/B (10-01)<br>Substitute for PTO-1449A/B<br><br>**INFORMATION DISCLOSURE**<br><br>**STATEMENT BY APPLICANT**<br><br>(use as many sheets as necessary) | **Attorney Docket Number** | 61070/N220 |
|---|---|---|
| | **Application Number** | 12/044,295 |
| | **Filing Date** | March 7, 2008 |
| | **Applicant(s)** | Amir Navid |
| | **Group Art Unit** | 2858 |
| | **Examiner Name** | Arun C. Williams |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIALS | Cite No.[1] | DOCUMENT NUMBER<br>Number - Kind Code[2] (If Known) | PUBLICATION DATE<br>MM-DD-YYYY | NAME OF PATENTEE |
|---|---|---|---|---|
| | | US 6,992,462 | 01-31-2006 | Hussaini et al. |
| | | US 2002/0115480 A1 | 08-22-2002 | Huang |
| | | US 2007/0091656 A1 | 04-26-2007 | Navid et al. |
| | | | | |
| | | | | |

### FOREIGN PATENT DOCUMENTS

| EXAMINER INITIALS | Cite No.[1] | Foreign Patent Document<br>Country Code[3] - Number[4] - Kind Code[5]<br>(If Known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or<br>Applicant of Cited Document | T[6]<br>(✓) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### OTHER DOCUMENTS

| EXAMINER INITIALS | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article, title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. |
|---|---|---|
| | | European Search Report for European Application Number 08843118.4 in the name of Nyko Technologies, Inc. European Search Report dated 22 October 2010 and mailed 29 October 2010 (6 pgs). |
| | | |
| | | |

RMW PAS952595.1-*-04/8/11 3:15 PM

| EXAMINER SIGNATURE | /Arun Williams/ | DATE CONSIDERED | 10/11/2011 |
|---|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.pto.gov or MPEP 901.4. [3]Enter Office that issued the document, by the two-letter code (WIPO standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English Language Translation is attached.

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

JCM/rmw

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /AW/

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*I hereby certify that this correspondence is being electronically filed with the United States Patent and Trademark Office on July 8, 2011 at or before 11:59 p.m. Pacific Time under the Rules of 37 CFR § 1.8.*

Stacey Dawson

| | | |
|---|---|---|
| Appl No. | : 12/044,295 | Confirmation No. 7006 |
| Applicant | : Amir Navid | |
| Filed | : March 7, 2008 | |
| Title | : VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE (as amended) | |
| TC/A.U. | : 2858 | |
| Examiner | : Arun C. Williams | |
| Docket No. | : 61070/N220 | |
| Customer No. | : 23363 | |

## AMENDMENT

**Mail Stop Amendment**

Commissioner for Patents                                        Post Office Box 7068
P.O. Box 1450                                                   Pasadena, CA  91109-7068
Alexandria, VA 22313-1450                                       July 8, 2011

Commissioner:

In response to the Office action of February 8, 2011, please amend the above-identified application as follows:

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 3 of this paper.

**Remarks/Arguments** begin on page 10 of this paper.

-1-

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**


**Amendments to the Specification:**

Please replace the title with the following amended title:

VIDEO GAME CONTROLLER CHARGING SYSTEM <u>HAVING A DOCKING STRUCTURE</u>

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**


**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.      (Currently amended)  A video game controller charging system for charging ~~at least one~~ a plurality of video game ~~controller~~ controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the ~~at least one~~ plurality of video game ~~controller~~ controllers while the ~~at least one~~ plurality of video game ~~controller is~~ controllers are being charged; and

~~at least one DC port~~ a plurality of DC ports on the base, ~~the at least one DC port~~ each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the ~~at least one~~ plurality of video game ~~controller~~ controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction.


2.      (Currently amended)  The video game controller charging system of claim 1, wherein the ~~at least one DC port~~ plurality of DC ports comprises ~~at least one~~ a plurality of male mini-USB ~~connector~~ connectors.


3.      (Currently amended)  The video game controller charging system of claim 1, further comprising:

a current detector electrically coupled to the ~~at least one DC port~~ plurality of DC ports; and

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**

an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the video game controller charging system.

4.      (Original)  The video game controller charging system of claim 3, wherein the indicator comprises at least one LED.

5.      (Canceled)

6.      (Currently amended)  The video game controller charging system of claim 1, wherein ~~each of~~ the at least one structure on the base comprises <u>a plurality of pairs of</u> opposite surfaces<u>, the pairs</u> configured to align [[one]] <u>respective ones</u> of the ~~at least one~~ <u>plurality of</u> video game ~~controller~~ <u>controllers</u> such that the power input [[port]] <u>ports</u> of the [[one]] <u>respective ones</u> of the ~~at least one~~ <u>plurality of</u> video game ~~controller couples~~ <u>controllers couple</u> to <u>respective</u> [[one]] <u>ones</u> of the ~~at least one DC port~~ <u>plurality of DC ports</u>.

7.      (Currently amended)  The video game controller charging system of claim 6, wherein the <u>pairs of</u> opposite surfaces comprise spring-loaded locating buttons configured to align the [[one]] <u>respective ones</u> of the ~~at least one~~ <u>plurality of</u> video game ~~controller~~ <u>controllers</u>.

8.      (Currently amended)  The video game controller charging system of claim 1, wherein[[:]]

~~the at least one DC port comprises a plurality of DC ports;~~

~~the at least one video game controller comprises a plurality of video game controllers; and~~

the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers.

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**

9.      (Currently amended)  The video game controller charging system of claim 1, further comprising an AC-to-DC converter adapted to convert the externally supplied power to the DC power provided to the power input [[port]] ports of the ~~at least one~~ respective video game ~~controller~~ controllers.

10.      (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is in the base.

11.      (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is external to the base.

12.      (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is adapted to convert an AC voltage in the range of 100 V to 240 V corresponding to the externally supplied power into a DC voltage corresponding to the DC power.

13.      (Original)  The video game controller charging system of claim 12, wherein the DC voltage is DC 5 V.

14.      (Currently amended)  A charging system for ~~at least one~~ charging a plurality of accessory ~~device~~ devices, each having a power input port, the charging system comprising:

a base;

~~at least one~~ a plurality of male mini-USB ~~connector~~ connectors supported by the base and each adapted to provide DC power to a respective one of the ~~at least one~~ plurality of accessory ~~device~~ devices;

at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the ~~at~~

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**

least one plurality of accessory device devices to couple to respective ones of the at least one plurality of male mini-USB connector connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the at least one plurality of male mini-USB connector connectors.

15.     (Currently amended)  The charging system of claim 14, wherein the charging system further comprises an AC-to-DC converter electrically coupled between the power input and the at least one plurality of male mini-USB connector connectors.

16.     (Original)  The charging system of claim 14, wherein the charging system further comprises an AC-to-DC converter external to the base and electrically coupled to the power input.

17.     (Currently amended)  The charging system of claim 14, further comprising:

a current detector electrically coupled to the at least one plurality of male mini-USB connector connectors; and

an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

18.     (Original)  The charging system of claim 17, wherein the indicator comprises at least one LED.

19-20.  (Canceled)

21.     (Currently amended)  A charging system for charging at least one accessory device having a power input port, the charging system comprising:

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

a base comprising at least one recess having at least one electrical contact, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the at least one electrical contact; and

at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead;

wherein the at least one external adapter is mountable on the at least one accessory device, and

wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess.

22.     (Original)  The charging system of claim 21, further comprising:

a current detector electrically coupled to the at least one electrical contact of the at least one recess; and

an indicator electrically coupled to the current detector, the indicator adapted to indicate a status of the charging system.

23.     (Original)  The charging system of claim 22, wherein the indicator comprises at least one LED.

24.     (Original)  The charging system of claim 21, wherein:

the at least one external adapter further comprises an angled edge; and

the at least one recess comprises an angled corner dimensioned to match the angled edge of the at least one external adapter and adapted to orient the at least one external adapter with respect to the at least one recess.

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**


30.     (New)  The video game controller charging system of claim 28, wherein the connector comprises a male mini-USB connector.

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

25.    (Original)  The charging system of claim 21, wherein:

the at least one electrical contact of the at least one recess comprises four electrical contacts; and

the at least one electrical lead of the at least one external adapter comprises four electrical leads.

26.    (Original)  The charging system of claim 21, wherein the connector of the at least one external adapter comprises a male mini-USB connector.

27.    (Original)  The charging system of claim 21, further comprising an AC/DC converter electrically coupled between the power input of the base and the at least one electrical contact of the at least one recess.

28.    (New)  A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:

a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and

an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,

wherein the adapter is mountable on the video game controller, and

wherein the base further comprises a docking structure configured to receive the video game controller having the adapter mounted thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base.

29.    (New)  The video game controller charging system of claim 28, wherein the plurality of electrical contacts comprises at least one spring biasing the plurality of electrical contacts toward the plurality of electrical leads.

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

## REMARKS/ARGUMENTS

Claims 1-27 were pending in the present application at the time of the Office Action. Claims 1-4, 6-18, and 21-30 are now pending, of which claims 1, 14, 21, and 28 are independent. Claims 1 and 14 have been amended herein to include some of the subject matter of previous claims 5 and 8, and to include some of the matter described in the original specification and drawings (see, e.g., paragraphs [0085], [0088], and [0102], and FIGs. 11, 14, and 21). Claim 21 has been amended to include some of the matter described in the original specification and drawings (see, e.g., paragraph [0100], and FIG. 20). Claims 2, 3, 6-9, 15, and 17 have been amended for reasons of clarity and antecedent basis. Claims 5, 19, and 20 have been canceled without prejudice. Further, new claims 28-30 have been added to include some of the matter described in the original specification and drawings (see, e.g., paragraphs [0099], [0100], and [0103], and FIGs. 16 and 17). No new matter has been added. Applicant respectfully requests reconsideration and allowance of claims 1-4, 6-18, and 21-27, as well as consideration on the merits and allowance of new claims 28-30, in view of the amendments and the following remarks.

## I. <u>Specification</u>

The title of the invention was objected to for allegedly not being descriptive. Applicants have amended the title to VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE in response to the objection. Applicants respectfully request that the amendment to the title be entered and that the objection be withdrawn.

## II. <u>Rejection of Claims 1, 6, 9, 11, and 12 under 35 U.S.C. § 102(b)</u>

Claims 1, 6, 9, 11, and 12 were rejected under § 102(b) as allegedly being anticipated by U.S. Patent Application Publication No. 2006/0202660 to Chang (hereinafter "Chang"). This rejection is respectfully traversed. Further, Applicant has amended independent claim 1 herein.

-10-

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

Independent claim 1, as amended, recites:

A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

<u>wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction</u> (emphasis added).

Applicant submits that claim 1, as amended, is not anticipated by Chang under 35 U.S.C. § 102(b). Chang does not appear to disclose "wherein the at least one structure on the base comprises <u>a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction</u>," as recited in Applicant's amended claim 1. Rather, Chang appears to disclose a wireless mouse charger including a housing 1 having a single mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3), but does not appear to teach a plurality of docking bays open in a first direction and configured to receive respective ones of a plurality of video game controllers, as recited in Applicant's amended claim 1.

Further, claim 1 has been amended to include some of the subject matter of previous claim 8, which was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang and further in view of U.S. Patent Application Publication No. 2008/0180060 to Odell et al.

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

(hereinafter "Odell").   Odell appears to disclose a charging element 12 including a ledge 62 facing a downward direction and having a pair of terminals 60 for electrically contacting terminals 34 on a wireless keyboard (see Odell, paragraph [0033], and Fig. 6).   Further, Odell discloses that the charging element 12 may include a charging platform 52 facing an upward direction and having a pair of terminals 46 and 47 for charging a second wireless device, such as a mouse 80 (see Odell, paragraphs [0037] and [0038], and Figs. 6 and 7A).   However, Odell appears to teach the ledge 62 and the charging platform 52 facing opposite directions for receiving a keyboard and a mouse from the opposite directions, but does not appear to teach or suggest a plurality of docking bays open in a first, or same, direction and configured to receive respective ones of the plurality of video game controllers from the first, or same, direction.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of anticipation has not been established with respect to claim 1, as amended, because Chang does not disclose each and every limitation of the present claim 1.   As such, Applicant respectfully requests that the rejection of claim 1 be withdrawn and that this claim be allowed.

Dependent claims 6, 9, 11, and 12 depend (directly or indirectly) from claim 1.   As such, these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish these claims over Chang.   For at least the reasons set forth above, Applicant submits that these dependent claims are not anticipated by Chang.   Applicant, therefore, respectfully requests that the rejection of claims 6, 9, 11, and 12 be withdrawn and that these claims be allowed.

III.   <u>Rejection of Claims 2-4, 7, 8, 10, 13-18, and 21-27 under 35 U.S.C. § 103(a)</u>

Claims 2 and 14-16 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent Application Publication No. 2007/0278999 to Hsia (hereinafter "Hsia").   This rejection is respectfully traversed.   Further, Applicant has amended independent claims 14 and 19 herein.

Dependent claim 2 depends directly from claim 1.   As such, claim 2 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

distinguish claim 2 over the cited references.   Moreover, Hsia does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above.   For at least the above reasons, Applicant submits that claim 2 is not unpatentable over the cited references.   Therefore, Applicant respectfully requests that the rejection of claim 2 be withdrawn and that this claim be allowed.

Independent claim 14, as amended, recites:

A charging system for charging a plurality of accessory devices, each having a power input port, the charging system comprising:

a base;

a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of accessory devices;

at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors (emphasis added).

Applicant submits that claim 14, as amended, is not unpatentable over Chang in view of Hsia under 35 U.S.C. § 103(a).   Neither Chang nor Hsia, nor the combination thereof, appears to teach or suggest "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors," as recited in Applicant's amended claim 14.   Rather, Chang appears to disclose a wireless mouse charger including a housing 1 having a single mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3), but does not

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

appear to teach or suggest a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of a plurality of accessory devices, as recited in Applicant's amended claim 14. Further, Hsia does not appear to teach or suggest at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors.

Further, claim 14 has been amended to include subject matter similar to that of previous claim 8, which was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang and further in view of Odell. As discussed above with respect to claim 1, Odell appears to disclose a charging element 12 including a ledge 62 facing a downward direction and having a pair of terminals 60 for electrically contacting terminals 34 on a wireless keyboard (see Odell, paragraph [0033], and Fig. 6). Further, Odell appears to disclose that the charging element 12 includes a charging platform 52 facing an upward direction and having a pair of terminals 46 and 47 for charging a mouse 80 (see Odell, paragraphs [0037] and [0038], and Figs. 6 and 7A). However, Odell appears to teach the ledge 62 and the charging platform 52 facing opposite directions for receiving a keyboard and a mouse from the opposite directions, but does not appear to teach or suggest a plurality of docking bays open in a first, or same, direction and configured to receive from the first, or same, direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 14, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 14. As such, Applicant respectfully requests that the rejection of claim 14 be withdrawn and that this claim be allowed.

Dependent claims 15 and 16 depend directly from claim 14. As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references. For at least the reasons set forth above, Applicant submits that these dependent claims are not unpatentable over

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

the cited references.  Applicant, therefore, respectfully requests that the rejection of claims 15 and 16 be withdrawn and that these claims be allowed.

Claims 3 and 4 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent Application Publication No. 2004/0189250 to Nishida (hereinafter "Nishida").  This rejection is respectfully traversed.

Dependent claims 3 and 4 depend (directly or indirectly) from claim 1.  As such, these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above.  For at least the above reasons, Applicant submits that claims 3 and 4 are not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claims 3 and 4 be withdrawn and that these claims be allowed.

Claim 7 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 6,313,604 to Chen (hereinafter "Chen").  This rejection is respectfully traversed.

Dependent claim 7 depends indirectly from claim 1.  As such, claim 7 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 7 over the cited references.  Moreover, Chen does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above.  For at least the above reasons, Applicant submits that claim 7 is not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claim 7 be withdrawn and that this claim be allowed.

Claim 8 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang and further in view of Odell.  This rejection is respectfully traversed.

Dependent claim 8 depends directly from claim 1.  As such, claim 8 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 8 over the cited references.  Moreover, Odell does not appear to cure the deficiencies in Chang with respect to claim 1, as discussed above.  For at least the above reasons,

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**

Applicant submits that claim 8 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 8 be withdrawn and that this claim be allowed.

Claim 10 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 5,734,254 to Stephens (hereinafter "Stephens"). This rejection is respectfully traversed.

Dependent claim 10 depends indirectly from claim 1. As such, claim 10 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 10 over the cited references. Moreover, Stephens does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above. For at least the above reasons, Applicant submits that claim 10 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 10 be withdrawn and that this claim be allowed.

Claim 13 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 6,842,356 to Hsu (hereinafter "Hsu"). This rejection is respectfully traversed.

Dependent claim 13 depends indirectly from claim 1. As such, claim 13 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 13 over the cited references. Moreover, Hsu does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above. For at least the above reasons, Applicant submits that claim 13 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 13 be withdrawn and that this claim be allowed.

Claims 17 and 18 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hsia, and further in view of Nishida. This rejection is respectfully traversed.

Dependent claims 17 and 18 depend (directly or indirectly) from claim 14. As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references.

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**

Moreover, Nishida does not appear to cure the deficiencies in Chang and Hsia with respect to claim 14 discussed above.  For at least the above reasons, Applicant submits that claims 17 and 18 are not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claims 17 and 18 be withdrawn and that these claims be allowed.

Claims 21, 24, and 25 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 5,594,314 to Hagiuda et al. (hereinafter "Hagiuda").  This rejection is respectfully traversed.  Further, Applicant has amended independent claim 21 herein.

Independent claim 21, as amended, recites:

A charging system for charging at least one accessory device having a power input port, the charging system comprising:

a base comprising at least one recess having at least one electrical contact, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the at least one electrical contact; and

at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead;

wherein the at least one external adapter is mountable on the at least one accessory device, and

wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess (emphasis added).

Applicant submits that claim 21, as amended, is not unpatentable over Chang in view of Hagiuda under 35 U.S.C. § 103(a).  Neither Chang nor Hagiuda, nor the combination thereof, appears to teach or suggest "wherein the at least one external adapter is mountable on the at least

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

one accessory device," as recited in Applicant's amended claim 21.  Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3).  However, Chang does not appear to teach or suggest an external adapter that is mountable on the wireless mouse.  Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1).  However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being mountable on an accessory device.  Rather, Hagiuda appears to merely teach the battery 3 being inserted into an indentation 97 of the battery discharge adaptor 4 and having terminals 104, 106 which establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1).  As such, neither Chang nor Hagiuda, nor the combination thereof appears to teach or suggest at least one external adapter that is mountable on at least one accessory device.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 21, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 21.  As such, Applicant respectfully requests that the rejection of claim 21 be withdrawn and that this claim be allowed.

Dependent claims 24 and 25 depend directly from claim 21.  As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish these claims over the cited references.  For at least the reasons set forth above, Applicant submits that these dependent claims are not unpatentable over the cited references.  Applicant, therefore, respectfully requests that the rejection of claims 24 and 25 be withdrawn and that these claims be allowed.

Claims 22 and 23 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda, and further in view of Nishida.  This rejection is respectfully traversed.

Dependent claims 22 and 23 depend (directly or indirectly) from claim 21.  As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 discussed above.  For at least the above reasons, Applicant submits that claims 22 and 23 are not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claims 22 and 23 be withdrawn and that these claims be allowed.

Claim 26 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda, and further in view of Hsia.  This rejection is respectfully traversed.

Dependent claim 26 depends directly from claim 21.  As such, claim 26 incorporates all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish claim 26 over the cited references.  Moreover, Hsia does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 discussed above.  For at least the above reasons, Applicant submits that claim 26 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 26 be withdrawn and that this claim be allowed.

Claim 27 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda, and further in view of Stephens.  This rejection is respectfully traversed.

Dependent claim 27 depends directly from claim 21.  As such, claim 27 incorporates all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish claim 27 over the cited references.  Moreover, Stephens does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 discussed above.  For at least the above reasons, Applicant submits that claim 27 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 27 be withdrawn and that this claim be allowed.

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

IV.     <u>New Claims 28-34</u>

New independent claim 28 recites:

A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:

a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and

an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,

<u>wherein the adapter is mountable on the video game controller</u>, and

wherein the base further comprises a docking structure configured to receive the video game controller having the adapter mounted thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base (emphasis added).

Applicant submits that new claim 28 is patentable over the cited references.  None of the cited references or any combination thereof appears to teach or suggest "wherein the adapter is mountable on the video game controller," as recited in Applicant's new claim 28.  For example, as discussed above with respect to claim 21, Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3).  However, Chang does not appear to teach or suggest an adapter that is mountable on the wireless mouse.  Further, Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1).  However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being mountable on a video game controller.  Rather, Hagiuda appears to merely teach the battery 3 being inserted into an indentation 97 of the battery discharge adaptor 4

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

and having terminals 104, 106 which establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1).  Further, none of the remaining cited references or any combination thereof appears to teach or suggest an adapter that is mountable on a video game controller.

At least for the reasons explained above, Applicant submits that the cited references do not teach or suggest each and every limitation of new claim 28, and respectfully requests that new claim 28 be allowed.

New claims 29 and 30 depend directly from new claim 28.  As such, these dependent claims incorporate all of the terms and limitations of claim 28 in addition to other limitations, which further patentably distinguish these claims over the cited references.  For at least the reasons set forth above, Applicant submits that new claims 29 and 30 are patentable over the cited references and respectfully requests that these claims be allowed.

## V.  <u>Concluding Remarks</u>

In view of the foregoing amendments and remarks, Applicant earnestly solicits timely issuance of a Notice of Allowance allowing claims 1-4, 6-18, and 21-30.  If there are any remaining issues that can be addressed over the telephone, the Examiner is encouraged to call Applicant's attorney at the number listed below.

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By _____
Jason C. Martone
Reg. No. 59,469
626/795-9900

JCM/kmg

JCM PAS944525.1-*-07/7/11 6:33 PM

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/044,295 | 03/07/2008 | Amir Navid | 61070/N220 | 7006 |

23363        7590        02/08/2011

CHRISTIE, PARKER & HALE, LLP
PO BOX 7068
PASADENA, CA 91109-7068

| EXAMINER |
|---|
| WILLIAMS, ARUN C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2858 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/08/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| **Office Action Summary** | 12/044,295 | NAVID, AMIR |  |
|  | **Examiner** | **Art Unit** |  |
|  | ARUN WILLIAMS | 2858 |  |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>12/3/2010</u>.

2a)☐ This action is **FINAL**.   2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-27</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-27</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>3/7/2008</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>1/14/2009 & 4/2/2008</u>.

4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

Application/Control Number: 12/044,295                                           Page 2

Art Unit: 2858

## DETAILED ACTION

### Election/Restrictions

1.      Applicant's election with traverse of species II in the reply filed on 12/3/2010 is

acknowledged.  The traversal is on the ground(s) that the application (see,

e.g.,paragraph [0084]) that the DC ports, in one embodiment, are mini-USB connectors

but, alternatively, may be any electrical connectors suitable for coupling to a video game

controller.  This has been found to be persuasive. The restriction has been withdrawn.

2.      This is a first action on the merits, in response to the claims received 12/19/2007.

Claims 1-27 are pending for prosecution below.

### Specification

3.      The title of the invention is not descriptive.  A new title is required that is clearly

indicative of the invention to which the claims are directed.

### Information Disclosure Statement

*4.*      The information disclosure statement (IDS) file on 4/2/2008 & 1/14/2009 has

been considered by the examiner. An initialed copy is attached herewith.

### Claim Rejections - 35 USC § 102

5.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

**6.      Claims 1,5,6,9,11, and 12 are rejected under 35 U.S.C. 102(b) as being**

**anticipated by Chang, (USNO.2006/0202660).**

Application/Control Number: 12/044,295                                                Page 3
Art Unit: 2858

**As for claim 1**, Chang discloses and  shows in Fig. 4 a video game controller charging system for charging at least one video game controller using externally supplied power, the video game controller charging system comprising: a base **(1)**; at least one structure **(12)** on the base for providing physical support to the at least one video game controller **(19)** while the at least one video game controller is being charged; and at least one DC port **(31)** on the base, the at least one DC port configured to couple to and provide DC power to a power input port of the at least one video game controller **(par.[0032-0034])**.

**As for claim 5**, Chang shows in Fig. 4 at least one structure on the base comprises at least one docking bay, each configured to receive one of the at least one video game controller

**As for claim 6**, Chang shows in Fig. 4 each of the at least one structure on the base comprises opposite surfaces configured to align one of the at least one video game controller such that the power input port of the one of the at least one video game controller couples to one of the at least one DC port.

**As for claim 9**, Chang shows in Fig. 4 an AC-to- DC converter **(within power supply adapter which element 93 is coupled to)** adapted to convert the externally supplied power to the DC power provided to the power input port of the at least one video game controller.

**As for claim 11**, Chang shows in Fig. 4 the AC-to-DC converter is external to the base.

Application/Control Number: 12/044,295                                Page 4
Art Unit: 2858

        **As for claim 12**, Chang shows in Fig. 4 the AC-to-DC converter is adapted to

convert an AC voltage in the range of 100 V to 240 V corresponding to the externally

supplied power into a DC voltage corresponding to the DC power.

### *Claim Rejections - 35 USC § 103*

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

8.      The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

    1.      Determining the scope and contents of the prior art.
    2.      Ascertaining the differences between the prior art and the claims at issue.
    3.      Resolving the level of ordinary skill in the pertinent art.
    4.      Considering objective evidence present in the application indicating obviousness or nonobviousness.


**9.      Claim 2 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Hsia, (USNO.2007/0278999).**

        **As for claim 2**, Chang discloses all limitations, but differs from the claimed

invention because he does not explicitly disclose at least one DC port comprises at

least one male mini-USB connector.

        Hsia discloses and shows in Fig. 5 at least one DC port comprises at least one

male mini-USB connector **(par.[0023-0025])**.

Application/Control Number: 12/044,295                                          Page 5

Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one DC port comprises at least one male mini-USB connector for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

**10.     Claims 3 and 4 are rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Nishida, (USNO.2004/0189250)**

**As for claims 3 and 4**, Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a current detector electrically coupled to the at least one DC port; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled to the at least one DC port; and an indicator **(25)** electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using a current detector electrically coupled to the at least one DC port; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system for advantages such as providing necessary accurate information of the charging/discharging state **(par.[0044])**, as taught by Nishida.

Application/Control Number: 12/044,295                                    Page 6
Art Unit: 2858

**11.    Claim  7 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Chen, (USPATNO.6,313,604)**

As for claim 7, Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose opposite surfaces comprise spring-loaded locating buttons configured to align a device in a base.

Chen discloses and shows in Fig. 3 opposite surfaces comprise spring-loaded locating buttons **(22)** configured to align the device in a base **(col.2, lines 6-20)**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chen by having opposite surfaces comprise spring-loaded locating buttons configured to align a device in a base for advantages such as providing proper clamping within a base **(col.2, line 19)**, as taught by Chen.

**12.    Claims 8 is rejected under 35 U.S.C. 103(a) as being anticipated by Chang and further in view of Odell et al, (USNO.2008/0180060)**

As for claim 8, Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose the at least one video game controller comprises a plurality of video game controllers; and the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers.

Odell discloses and shows in Fig. 7c the at least one video game controller comprises a plurality of video game controllers **(80 & 10)**; and the plurality of DC ports

Application/Control Number: 12/044,295                                    Page 7
Art Unit: 2858

**(43: Fig. 4 & 60:Fig. 9)** is configured to concurrently couple to and provide the DC

power to the plurality of video game controllers **(par.[0037-0041])**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chang by having at

least one video game controller comprises a plurality of video game controllers; and the

plurality of DC ports is configured to concurrently couple to and provide the DC power to

the plurality of video game controllers for advantages such as providing the ability to

power and engage a wireless device **(par.[0006])**, as taught by Odell.

13.    **Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Stephens, (USPATNO.5,734,254)**

As for claim **10**, Chang discloses all limitations, but differs from the claimed

invention because he does not explicitly disclose the AC-to-DC converter is in the base

Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chang by using the

AC-to-DC converter is in the base for advantages such as providing to convert voltage

into a preferred output **(col.4, lines 15-21)**, as taught by Stephens.

14.    **Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable by**

**Chang, (USNO.2006/0202660) in view of Hsu, (USPATNO.6,842,356)**

As for claim **13**, Chang discloses all limitations, but differs from the claimed

invention because he does not explicitly disclose the DC voltage is DC5V.

Application/Control Number: 12/044,295                                          Page 8
Art Unit: 2858

Hsu discloses and shows in Fig. 3 the DC voltage is DC5V **(via element  64)**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by having the DC voltage is DC5V for advantages such as providing stabilized output **(col.3, line 40)**, as taught by Hsu.

**15.      Claims 14 ,15,16,19, and 20 are rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Hsia, (USNO.2007/0278999).**

**As for claim 14**, Chang discloses and shows in Fig. 4 charging system for at least one accessory device having a power input port, the charging system comprising: a base **(1)**; at least one connector **(31)** supported by the base and adapted to provide DC power to the at least one accessory device **(19)**; at least one docking structure **(12)** configured to receive and align the at least one accessory device to couple to the least one connector; and a power input for connecting to a power supply, the power input electrically coupled to the at least one connector **(par.[0032-0034])**.

Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose at least one male mini-USB connector supported by the base and adapted to provide DC power to the at least one accessory device

Hsia discloses and shows in Fig. 5 at least one male mini-USB connector **(520)** supported by the base **(exterior of element 500)** and adapted to provide DC power to the at least one accessory device **(600)(par.[0023-0025])**.

Application/Control Number: 12/044,295                                        Page 9
Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one male mini-USB connector supported by the base and adapted to provide DC power to the at least one accessory device for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

**As for claim 15**, Chang in combination with Hsia discloses and shows an AC-to-DC converter electrically coupled between the power input and the at least one male mini- USB connector.

**As for claim 16**, Chang in combination with Hsia discloses and shows an AC-to-DC converter external to the base and electrically coupled to the power input.

**As for claim 19**, Chang discloses and shows in Fig. 4 a video game controller charging system for at least one video game controller having a power input port, the charging system comprising: a base **(1)**; at least one connector **(31)** supported by the base and adapted to provide DC power to the power input port of the at least one video game controller **(19)**; and at least one docking structure**(12)**  having opposite surfaces configured to receive and align the at least one video game controller to couple the power input port of the at least one video game controller to the at least one connector **(par.[0032-0034])**.

Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose at least one male mini-USB connector supported by the base and adapted to provide DC power to the power input port.

Application/Control Number: 12/044,295                                    Page 10
Art Unit: 2858

    Hsia discloses and shows in Fig. 5 at least one male mini-USB connector **(520)** supported by the base **(exterior of element 500)** and adapted to provide DC power to the power input port **(620: Fig. 6) (par.[0023-0025])**

    Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one male mini-USB connector supported by the base and adapted to provide DC power to the power input port for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

    **As for claim 20**, Chang in combination with Hsia discloses and shows an AC-to-DC converter adapted to convert an AC power received from an AC power supply to the DC power provided to the power input port of the at least one video game controller.

**16.    Claims 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Chang in view of Hsia and further in view of Nishida.**

    **As for claims 17 and 18**, Chang in combination with Hsia discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a current detector electrically coupled to the at least one connecter; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

    Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled to the at least one connector; and an indicator **(25)** electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Application/Control Number: 12/044,295                                         Page 11
Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Hsia by using a current detector electrically coupled to the at least one connector; and

an indicator electrically coupled to the current detector, the indicator configured to

indicate a charging status of the charging system for advantages such as providing

necessary accurate information of the charging/discharging state **(par.[0044])**, as taught

by Nishida.

**17.     Claims 21,24, and 25 are rejected under 35 U.S.C. 103(a) as being**

**unpatentable over Chang, (USNO.2006/0202660) in view of Hagiuda et**

**al,(Hagiuda), (USPATNO.5,594,314)**

**As for claim 21**, Chang discloses and shows in Fig. 4 a charging system for

charging at least one accessory device having a power input port, the charging system

comprising: a base **(1)** comprising at least one recess having at least one electrical

contact **(31)**, the base further comprising a power input for connection to a power

supply, the power input being electrically coupled to the at least one electrical contact

**(par.[0032-0034])**.

Chang discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose at least one external adapter comprising a connector

configured to couple to the power input port of the at least one accessory device, the at

least one external adapter further comprising at least one electrical lead; wherein the at

least one recess is dimensioned to receive the at least one external adapter, the at least

one electrical lead of the at least one external adapter contacting the at least one

Application/Control Number: 12/044,295                                    Page 12
Art Unit: 2858

electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess.

Haguida discloses and shows in Fig. 1 at least one external adapter **(4)** comprising a connector **(combination of 107 & 105)** configured to couple to the power input port **(106 &104)** of the at least one accessory device **(3)**, the at least one external adapter further comprising at least one electrical lead **(103)**; wherein the at least one recess **(99)** is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact **(102)** of the at least one recess when the at least one external adapter is received by the at least one recess **(col.2, lines 31-57)**

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead; wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess for advantages such as providing the ability to accommodate charging/discharging features **(col.1, lines 51-58)**, as taught by Haguida.

**As for claim 24**, Chang in combination with Haguida discloses and shows at least one external adapter further comprises an angled edge; and the at least one

Application/Control Number: 12/044,295                                              Page 13
Art Unit: 2858

recess comprises an angled comer dimensioned to match the angled edge of the at

least one external adapter and adapted to orient the at least one external adapter with

respect to the at least one recess.

   **As for claim 25**, Chang in combination with Haguida discloses all limitations of

the invention except for at least one recess comprises four electrical contacts and at

least one external adapter comprises four electrical leads. It would have been  an

obvious matter of design choice to make at least one recess comprise four electrical

contacts and at least one external adapter comprise four electrical leads, since

applicant has not disclosed that at least one recess comprising four electrical contacts

and at least one external adapter comprising four electrical leads solves any stated

problem or is for any particular purpose and thus would have been obvious.

**18.    Claims 22 and 23 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Chang in view of Haguida and further in view of Nishida.**

   **As for claims 22 and 23**, Chang in combination with Haguida discloses all

limitations, but differs from the claimed invention because he does not explicitly disclose

a current detector electrically coupled to the at least one electrical contact of at least

one recess; and an indicator electrically coupled to the current detector, the indicator

configured to indicate a charging status of the charging system.

   Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled

to the at least one electrical contact of at least one recess; and an indicator **(25)**

electrically coupled to the current detector, the indicator configured to indicate a

Application/Control Number: 12/044,295                                            Page 14
Art Unit: 2858

charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Haguida by using a current detector electrically coupled to the at least one electrical contact of at least one recess; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system for advantages such as providing necessary accurate information of the charging/discharging state **(par.[0044])**, as taught by Nishida.

**19.    Claim 26 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang in view of Haguida and further in view of Hsia.**

**As for claim 26**, Chang in combination with Haguida discloses all limitations, but differs from the claimed invention because he does not explicitly disclose at least one external adapter comprises a male mini-USB connector.

Hsia discloses and shows in Fig. 5 at least one external adapter comprises a male mini-USB connector **(520) (par.[0023-0025])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Haguida by using at least one external adapter comprises a male mini-USB connector for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

Application/Control Number: 12/044,295                                                Page 15
Art Unit: 2858

20.      **Claim 27 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Stephens, (USPATNO.5,734,254)**

    **As for claim 27**, Chang in combination with Haguida discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose the AC-to-DC

converter is in the base

    Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

    Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings Chang and

Haguida by using the AC-to-DC converter is in the base for advantages such as

providing to convert voltage into a preferred output **(col.4, lines 15-21)**, as taught by

Stephens.

### *Contact Information*

    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Arun Williams whose telephone number is 571-272-

9765.  The examiner can normally be reached on Mon - Thrus,6:30am - 4pm.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Patrick Assouad can be reached on 571-272-2210. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 12/044,295                                    Page 16
Art Unit: 2858

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Arun  Williams/                                    Arun  Williams
Examiner, Art Unit 2858                             Examiner
                                                    Art Unit 2858

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 12/044,295 | NAVID, AMIR |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | ARUN WILLIAMS | 2858 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,594,314 A | 01-1997 | Hagiuda et al. | 320/110 |
| * | B | US-5,734,254 A | 03-1998 | Stephens, Charles S. | 320/106 |
| * | C | US-6,313,604 B1 | 11-2001 | Chen, Han-Liang | 320/114 |
| | D | US- | | | |
| * | E | US-2004/0189250 A1 | 09-2004 | Nishida, Hideyuki | 320/116 |
| * | F | US-6,842,356 B2 | 01-2005 | Hsu, Benjamin | 363/146 |
| * | G | US-2006/0202660 A1 | 09-2006 | Chang, Yuan-Jung | 320/115 |
| * | H | US-2007/0278999 A1 | 12-2007 | Hsia, Wen-Nan | 320/111 |
| * | I | US-2008/0180060 A1 | 07-2008 | Odell et al. | 320/115 |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)   **Notice of References Cited**   Part of Paper No. 20110201