SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California  92130-2006
Telephone:    858.720.8900
Facsimile:    858.509.3691
shanle@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
Including Professional Corporations
STEVEN M. HANLE, Cal. Bar No. 168876
shanle@sheppardmullin.com
650 Town Center Drive, 4th Fl.
Costa Mesa, CA 92626
Telephone:    714.513.5100
Facsimile:    714.513.5130

Attorneys for Defendants,
Performance Designed Products LLC and
Energizer Holdings, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California Corporation,, <br><br> Plaintiff, <br><br> v. <br><br> ENERGIZER HOLDINGS, INC., a Missouri Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company, <br><br> Defendant. | Case No. CV12-03001 <br><br> **DEFENDANTS' EVIDENTIARY OBJECTIONS TO DECLARATION OF CHRIS ARBOGAST (DE 12)** <br><br> The Hon. Gary A. Feess <br><br> [Complaint Filed:  April 5, 2012] |

Defendants assert the following objections to Declaration of Chris Arbogast (DE 12) filed in support of plaintiff's Ex Parte Application for Temporary Restraining Order. Additional evidentiary and legal support for the explanations provided herein are included in Defendants' Opposition to the Ex Parte Application for TRO (DE 19).

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
| 6. | Nyko's Charge Base products are also extremely popular as an accessory to these game consoles…. | Vague, conclusory, and lacks foundation. Mr. Arbogast does not explain his basis for alleging that the Nyko products are "extremely popular," or explain what this means in terms of sales or consumer demand. |
| 8. | To date, Nyko has sold more than one million Charge Base products for Xbox 360®. By comparison, Nyko's Charge Base PS3 products have struggled, with sales of only about 100,000 units across multiple versions, due to heavy competition from Energizer/PDP's infringing products. | The testimony that Nyko's Charge Base for PS3 has struggled due to competition from PDP/Energizer is vague, conclusory, and lacks foundation. The time period is not specified. It is not clear that sales of 100,000 units means the product has "struggled" because industry-wide charger sales/demand figures are not provided. Furthermore, this statement is irrelevant to the extent that the patent-in-suit did not issue until March 2012. |
| 9. | Energizer and PDP sell charging systems for hand-held controllers used with the Xbox 360 and PlayStation 3 video game consoles under the following trademarks: Energizer® "Power & Play®" Charging System for Xbox 360® and Energizer® "Power & Play®" Charging Systems for PlayStation® 3. The products are sold in direct competition with Nyko's patented Charge Base products, and without Nyko's permission. *Recently the products have supplanted Nyko's products on shelves at* | The testimony that PDP's products have "supplanted" Nyko's products on shelves at 1,000 Target stores and are slated to replace Nyko's products at approximately 3,250 Walmart stores lacks foundation, is conclusory, speculative and relies on hearsay. As explained in PDP's Opposition, there are other chargers, including those sold at Walmart, that directly compete with both PDP's and Nyko's chargers.<br><br>The testimony that PDP's products are "causing irreparable injury to |

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
|  | *approximately 1,000 Target stores, and are slated to replace Nyko's products at approximately 3,250 Walmart stores,* causing irreparable injury to Nyko. | Nyko" lacks foundation, and is conclusory and vague. Mr. Arbogast does not explain why any lost sales are not adequately addressed by damages. |
| 10. | Sales at large retail stores such as Walmart are critical to Nyko's continued success in the marketplace. Nyko's Charge Base 360S for the Xbox 360 video game controllers was selected by Walmart during November/December meetings in 2010, and was introduced in May 2011 at about 3,250 Walmart stores. The product has sold an average of 2,810 units per week at Walmart, for a total of about 146,000 units at Walmart Stores around the country. | Vague. Mr. Arbogast does not say why the subject sales are critical to Nyko's success. Walmart, for example, sells 44 different Nyko products. |
| 11. | To manage product distribution, large retail establishments such as Walmart and Target select vendors months in advance and reserve shelf space for the products they intend to carry. For example, Walmart's merchandising department uses a modular "planogram" twice a year to select vendors and identify the products that will be carried in coming months. Thus, in October of a given year, vendors are given an opportunity to present a case why their products should be carried by Walmart in the coming Spring. By December, an initial decision is generally reached, giving the vendor four to five months to get ready for actual sales of the vendor's products at Walmart stores in the coming year. Similarly, in the last part of June or early July, vendors are given an opportunity to present their case for keeping existing items on store shelves and offering new ones for the Fall lineup, with an announcement typically being made by the end of July and actual sales beginning in roughly October of a given year. | Lacks foundation and relies upon hearsay. Mr. Arbogast does not explain the basis for his allegations. |
| 12. | In December 2011, Walmart initially | The first italicized portion of |

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
|  | notified Nyko that it would no longer carry Nyko's Charge Base 3 for PS3 and Nyko's Charge Base 360s for Xbox 360, the number one selling 3rd party video game controller charging accessory in the industry. *Instead, Walmart announced that it would carry only the Energizer/PDP charging systems --for the Sony PlayStation® 3, Microsoft Xbox 360®, and Nintendo Wii® game controllers-- starting in the spring of 2012.* Nyko has made numerous, substantial and ongoing efforts to ask Walmart to reconsider its position, but it has been unsuccessful to date. Among other things, Nyko provided a copy of the '848 patent to Walmart shortly after the patent issued on March 27, 2012. In April 2012, Nyko filed the Complaint in this suit and scheduled a meeting with Walmart's representatives to discuss the patent. Among other communications, Nyko's sales representative flew to Arkansas to Walmart's headquarters and made an in person presentation to Walmart's buyer representative that illustrated the basis for Nyko's infringement claims. Based on these discussions, Nyko believed that Walmart would reconsider its decision to replace Nyko's products. Although discussions continued, Walmart has not indicated whether it will change its decision. *Just yesterday, on May 9, 2012, Nyko received notice from Walmart's buyer representative that he will not make a decision himself at this time but instead will refer the matter to Walmart's legal department for further review. He stated, however, that Walmart would of course abide by any court order that affected replacement of the products.* | testimony is hearsay and lacks foundation. It is also vague in that it does not specify the time period that Walmart will supposedly only carry the PDP charging systems for.<br><br>The second italicized portion of testimony is hearsay. It is also vague in its use of "replacement." |
| 13. | Separate from Walmart, to date Nyko's charging systems have already been displaced by infringing Energizer/PDP products at approximately 1,000 Target stores. | Vague in its use of "displaced." The testimony also lacks foundation and is conclusory. There is no support for the claim that PDP/Energizer's products have "displaced" Nyko's |

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
| | | products, and if so, at that many Target stores. As explained in defendants' Opposition, there are other competing products in the marketplace. Furthermore, this is not tethered to the period since the patent-in-suit has issued. |
| 14. | The displacement of Nyko's charging bases for the Xbox 360® and PS3 game controllers at approximately 3,250 Walmart stores appears imminent.<br><br>[A] *By the end of this month, Walmart has informed Nyko that Nyko's products will be removed from the video game accessories shelves at Walmart stores around the country, and replaced with the infringing Energizer/PDP products.*<br><br>[B] *Walmart will mark down the price of existing Nyko inventory by 50% and reshelf the products at undesirable locations in Walmart stores.*<br><br>[C] *Nyko will presumably have another opportunity in early June to make a pitch for adding its products for the Fall lineup, but Nyko will be placed in the backup position to PDP if its products are displaced at the end of this month.*<br><br>In addition to the disruption to Nyko's business at the end of May, if Nyko unsuccessfully competes with PDP in early June for the Fall lineup, this will further seriously disrupt Nyko's business, as over half of Nyko's sales happen in the fourth quarter of the year. | Defendants incorporate the above objections regarding the claimed "displacement."<br><br>[A] Constitutes hearsay and contains a legal conclusion, namely, that defendants' products infringe. It also lacks foundation.<br><br>[B] Lacks foundation. There is no supporting evidence for these claims.<br><br>[C] This testimony is speculation and lacks foundation. There is no supporting evidence or explanation. |
| 15. | If Nyko can enjoin Energizer and PDP from selling infringing products, it can likely halt the displacement of its products at Walmart stores around the country. In general, large retail businesses like Walmart require their vendors to refrain from selling products that infringe the intellectual property of others. Walmart and similar businesses want to carry popular | This testimony consists of speculation and lacks foundation. There are numerous competing products other than the defendants'. Also, it is not established the consumers will buy Nyko products even if there are no competing products available. |

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
|  | products, but they are selective about the number of vendor product lines they carry. The disruption of Nyko's business can be stopped if the infringing Energizer/PDP alternatives are not available to replace the Nyko products. |  |
| 16. | Once shelf space is lost at a large retail establishment, it is very difficult to regain it. Walmart tends to favor the incumbent and, for a given product category, prefers to offer one company's product line over multiple companies' product lines. Their decisions in stock keeping unit (SKU) management and inventory control reflect this. If Nyko can stop the unauthorized sales of product by Energizer/PDP, Nyko may be able to arrest the continuing erosion of its goodwill and position in the industry, to the benefit of the consumers of video game accessories throughout the United States. If Nyko is unable to stop the unauthorized sales by Energizer and PDP, Nyko will suffer grave and irreparable harm to its reputation and position in the industry. | This lacks foundation and is speculative and vague. There is no supporting evidence that Walmart tends to favor an incumbent and that it prefers to offer only one company's product. In fact, Walmart currently offers multiple companies' charging stations.<br><br>Mr. Arbogast does not explain what "goodwill" Nyko has, and what its "reputation and position in the industry are," and how he is judging them. Furthermore, he does not explain why they would be harmed by PDP's post-issuance actions.<br><br>The terms "very difficult" and "grave and irreparable harm" are vague.<br><br>The use of "unauthorized sales" reflects a legal conclusion. |
| 17. | By way of example, it took Nyko three years of continuous effort to position its Charge Base products on the shelves at Walmart. If Energizer and PDP are allowed to displace Nyko's products with infringing goods, then the opportunity for Nyko to ever get its products back on Walmart's shelves is called into serious question, and Nyko may not be able to regain valuable shelf space for years, if ever. | Vague as to what "continuous effort" Nyko put in to getting charging base products into Walmart.<br><br>Contains a legal conclusion that defendants' products are infringing.<br><br>Speculative and lacks foundation as to Nyko's future opportunities, as is evidenced by the use of the terms "may" and "if ever." In fact, Walmart has changed what products it shelves in the past, and reevaluates this regularly, as admitted by Nyko. Further, if defendants' products are adjudged to infringe and PDP's products are the only available alternatives, PDP will regain sales to Walmart at that time. |

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
| 18. | If Energizer and PDP are permitted to continue selling infringing products at Walmart and elsewhere, Nyko will be irreparably harmed in a number of ways. First, if Nyko loses its ability to sell its products at Walmart or other big retail stores, the tremendous goodwill of Nyko, built up over a number of years, will be hurt, and its standing in the industry will suffer. Second, in addition to actual loss of products sales, the amount of money available for product development for the next generation of products will be lost. The loss of these additional funds for development will not only affect Nyko's next generation of video game controller charging products, but all future Nyko products as well. Without the revenue, Nyko will be behind in all categories of video game accessories, most of which are not directed to charging systems as described in the '848 patent. Thus, the development disadvantage Nyko will suffer going forward cannot be remedied by damages paid after the fact. Competitors such as PDP who have copied Nyko's products have comparatively miniscule research and development costs, and will continue to erode Nyko's market share, at great cost to Nyko. | Speculative and lacks foundation, conclusory. Mr. Arbogast does not explain what "tremendous goodwill" Nyko has or what its "standing in the industry" is. Nor does he explain what the actual loss of product sales will be, what money is available for "product development," what product development plans Nyko has, if any, and what the next generation of video game controller charging products will be.<br><br>It is not explained why Nyko will purportedly be behind "in all categories" of video game accessories, even though it sells over 40 other products to Walmart, for example.<br><br>Additionally, Mr. Arbogast conclusorily alleges without foundation that damages supposedly suffered by Nyko cannot be remedied by damages, without explaining this.<br><br>There is evidence for Mr. Arbogast's assertion that PDP has "copied" Nyko's products, or what PDP's research and development costs are. The terms "miniscule" and "great cost" are also vague.<br><br>Contains a conclusion of law that defendants' products infringe. |
| 19. | If Nyko's products are not available at large retail establishments such as Walmart, Nyko's visibility to consumers will greatly decrease. When Nyko spends its marketing dollars, the cost per product that its marketing department is forced to spend will go up. Also, the cost of carrying inventory and the impact of the cost on component goods (factories, etc.) will also increase. | This is speculative. There is no supporting evidence as to visibility or costs. |
| 20. | There are at least three distinct advantages enjoyed by companies like PDP who copy an existing | Lacks foundation that PDP copied designs/technology. |

| PAR. | TESTIMONY | OBJECTIONS |
|------|-----------|------------|
|      | design/technology instead of developing one from the ground up. These advantages relate to market viability, design conception/solving problems, and reverse engineering. | |
| 21.  | The first is determining the viability of that particular product or genre of products in the market place. Until Nyko introduced game controller chargers in the patented configuration as a category of video game accessories, there were none on the market. Nyko took a significant risk (initial investment in tooling, prototypes, design, etc.) on designing these products with the hope there would be a need for them that would spur sales at retail. Competitors, like PDP, can sit back and wait until Nyko launches its products, see which ones sell well compared to ones that need to be closed out at a loss, and then create their own versions of only the successful one, thereby avoiding any of the risk. Nyko was the first to market with controller chargers, which were a commercial success. Quickly thereafter, competing products with similar designs began to pop up everywhere, looking to take away a portion of Nyko's business. | Lacks foundation that PDP copied designs/technology, and that it specifically avoided risk by waiting for Nyko to develop its product. For instance, there is no information about the relative timing of PDP's and Nyko's product development and releases.<br><br>Vague as to what investments Nyko supposedly made. |
| 22.  | The second benefit to waiting is avoiding the costs and trial and error associated with developing the ideal method of making the product as user friendly and usable as possible. Nyko has to pay internal staff, engineers, and factories to find flaws with initial designs and develop ways to improve them in order to generate the best possible product. For example, up until Nyko created its Charge Base for Xbox 360, all the charging methods that existed, including those from first party manufacturers (Microsoft, Sony, etc.) and Nyko, were based around charging the batteries independently or using cables to charge the controllers separately. Nyko was the | Lacks foundation that PDP copied designs/technology, regarding what other products existed and how they worked, that Nyko was the first company to design a charging dock that would recharge the batteries inside a controller, that Nyko's product practices the patent-in-suit, and that the Charge Base "quickly became the bestselling 360 controller." |

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
| | first company to design a charging dock that would recharge the batteries inside the controller, using methods described in our patent, instead of needing to remove them. The Charge Base quickly became the bestselling 360 controller charger and, within months, similar designs started appearing from competitors. | |
| 23. | Another example is Nyko's Charge Base products for PS3. Our initial entry in this market was a 4-port charger. Ultimately, Nyko determined that the size of the unit and cost were not viable in the market, compared to a 2-port solution. It required substantial cost and effort in designing, tooling, packaging, shipping, and launching two separate PS3 charging SKUs (stock keeping units) to determine the most viable approach for the user. Nyko's competitors entered the market with 2-port charging solutions after Nyko, without needing to launch numerous costly variants to test the market. Nyko had unintentionally done that for them. | Lacks foundation regarding the cost of the 2-port solution and when Nyko's competitors entered the market. Irrelevant because the patent-in-suit does not claim 2-port as opposed to 4-port chargers as the point of novelty. |
| 24. | Lastly, a competitor like PDP can save not only money, but also time by reverse engineering Nyko's design and circuitry rather than developing its own. There is a great deal of time and effort that is spent in developing the design and circuitry associated with charging products. Nyko had to go through several steps of trial and error in the design development phase to determine the proper chipset to use, what type of battery to use, etc. An example of this is that the PS3 controller will only charge at a certain current. Nyko had to figure out what that was, which components can deliver that current effectively, and how to lay out a PCB board in a manner that would pass certification. All that work can be avoided if you have a sample of Nyko's product that you can send to | Lacks foundation that PDP reverse engineered and otherwise copied Nyko's charging base product. Conclusory as to what Nyko invested in launching its purportedly patented product. |

| PAR. | TESTIMONY | OBJECTIONS |
|---|---|---|
| | a factory that they can use to copy. Reverse engineering just the charging circuitry alone can save a competitor months of time. If a console launches in Q4, and Nyko takes 6-8 months to design a charger from scratch in order to launch it before the following summer, a competitor who simply copies Nyko's technology can turn around a competing product in a fraction of the time in order to be on shelves in time for the holiday season and start encroaching on Nyko's business. | |
| 25. | On June 5-7, 2012, "E3" (Electronic Entertainment Expo), the world's premier trade show for computer and video games and related accessories, will be held at the Los Angeles Convention Center.  Nyko has invested hundreds of thousands of dollars to prepare for and appear at the exposition. PDP is also scheduled to be present at E3, as is evident from the E3 Exhibitor Directory found at the E3 website, www.e3expo.com. A true and correct copy of an excerpt from the Exhibitor Directory is attached hereto as Exhibit C. | Vague is to how much money Nyko spent to prepare for the E3, and what portion of that money was directed toward the purportedly patented product. |
| 26. | If PDP is permitted to sell or offer for sale the infringing Energizer/PDP charging systems at E3, Nyko will suffer additional injury to its reputation, its goodwill among consumers, and its market share. | Lacks foundation as to what reputation and goodwill, and market share Nyko has.  Lacks foundation and is speculative as to what will happen to Nyko's supposed reputation, goodwill, and market share if PDP sells or offers to sell accused products at E3.<br><br>Contains a conclusion of law that PDP/Energizer charging systems are infringing. |

Dated: May 15, 2012

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By   /S/ Steven M. Hanle
DANIEL Y. YANNUZZI
STEVEN M. HANLE
GRAHAM M. BUCCIGROSS
Attorneys for Defendants,
Performance Designed Products LLC
and Energizer Holdings, Inc.