**JOHN D. CARPENTER, CA Bar No. 145154**
john.carpenter@cph.com
**S. ART HASAN, CA Bar No. 167323**
art.hasan@cph.com
**G. WARREN BLEEKER, CA Bar No. 210834**
warren.bleeker@cph.com
**CHRISTIE, PARKER & HALE, LLP**
655 N. Central Avenue, Suite 2300
Glendale, California 91203-1445
Telephone: (626) 795-9900
Facsimile: (626) 577-8800

Attorneys for Plaintiff,
Nyko Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ENERGIZER HOLDINGS, INC., a Missouri corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California limited liability company,<br><br>Defendants. | Case No. CV 12-3001 GAF (VBKx)<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br><br>**Hon. Gary Allen Feess** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. THE DEFENDANTS HAVE NOT RAISED A SUBSTANTIAL QUESTION OF PATENT INVALIDITY OR NONINFRINGEMENT ................................................................................ 2

    A. The Claims of Nyko's '848 Patent Are Valid........................................ 2

        1. Cole is not an Anticipatory Reference ....................................... 2

        2. Claims 8, 11, and 12 are Patentable Over Cole Taken With other References ............................................................. 5

        3. The Claims are Patentable over Erickson in combination with the Other References ..................................... 6

    B. Defendants have not Rebutted Nyko's Strong Showing of Infringement........................................................................................ 8

    C. PDP has not Rebutted Nyko's Strong Showing of Irreparable Harm................................................................................................... 10

    D. The Balance of Hardships and Public Interest Favor Nyko ............... 13

III. CONCLUSION ................................................................................................ 14

CHRISTIE, PARKER & HALE, LLP

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbtot Labs. v. Andrx Pharms., Inc.*,
   452 F.3d 1331 (Fed. Cir. 2006) ................................................................................ 13

*Atari Corp. of Am. v. Sega, Inc.*,
   869 F. Supp. 783 (N.D. Cal. 1994) ..................................................................... 11, 12

*Aurora World v. TY Inc.*,
   719 F. Supp. 2d 1115 (C. D. Cal. 2009) ................................................................. 12

*Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*,
   15 F.3d 1573 (Fed. Cir. 1993) ................................................................................... 2

*Celsias in Vitro, Inc. v. Cellzdirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012) ................................................................................. 12

*Chem-Tainer Indus., Inc. v. Wilkin*,
   No. CV97-0829 LGB, 1997 U.S. Dist. LEXIS 17241 (C.D. Cal. 1997) ............. 13

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions*,
   525 F.3d 1353 (Fed. Cir. 2008) ............................................................................... 11

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.*,
   906 F.2d 679 (Fed. Cir. 1990) ................................................................................. 13

*Impax Labs., Inc. v. Aventis Pharms. Inc.*,
   545 F.3d 1312 (Fed. Cir. 2008) ................................................................................. 6

*In re Giacomini*,
   612 F.3d 1380 (Fed. Cir. 2010) ................................................................................. 3

*Jacksonville Coalition for Voter Protection v. Hood*,
   351 F. Supp.2d 1326 (M.D. Fla. 2004) ................................................................... 11

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007) ................................................................................................... 6

*Nano-Second Tech. Co., Ltd. v. Dynaflex Int'l*,
   No. CV 10-9176 ......................................................................................................... 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011)..................................................................................12

*Southwest Software, Inc. v. Harlequin Inc.*,
   226 F.3d 1280 (Fed. Cir. 2000)..................................................................................11

*Suntiger, Inc. v. Biomedical Optics Co.*,
   189 F.3d 1327. (Fed. Cir. 1999)..................................................................................9

*Tokai Corp. v. Easton Enters., Inc.*,
   632 F.3d 1358 (Fed. Cir. 2011), reh'g denied, 2011 U.S. App. Lexis
   7625........................................................................................................................5, 7

**STATUTES**

35 U.S.C. § 102(e)......................................................................................................1, 2, 3

35 U.S.C. § 112, first paragraph .......................................................................................4

35 U.S.C. § 282 ..................................................................................................................2

**OTHER AUTHORITIES**

http://www.meriam-webster.com/dictionary/base ............................................................9

-iii-

## I. INTRODUCTION

Defendants fail to raise a substantial question of invalidity or noninfringement of the '848 patent, as they must to turn the likelihood of success on the merits factor in their favor. Regarding invalidity, Defendants rely upon the Cole and Erickson patents as the primary prior art references to support their invalidity arguments, but the Cole reference is not "prior" art to the '848 patent. Cole is effective as a reference under 35 U.S.C. § 102(e) only as of its filing date -- not the filing date of its predecessor international PCT application -- because the PCT application does not contain adequate support for the pertinent subject matter. The Erickson reference is even further removed from the '848 patent and actually teaches away from Nyko's claimed invention.

Regarding infringement, Defendants rely on a flawed construction of the claim limitation "base" that is contrary to the intrinsic evidence. The extrinsic dictionary evidence that Defendants cite also does not help Defendants, but supports a contrary construction of the term "base."

Defendants offer a lot of bluster, but a complete paucity of *evidence* to rebut Nyko's strong showing of irreparable harm. The argument that money damages will suffice to make Nyko whole ignores the measured declaration testimony of Nyko's Director of Marketing and is contrary to established precedent. The assertion that Nyko improperly delayed filing its *ex parte* application is contradicted by the facts that unfolded from the date Nyko's patent issued until the date on which it applied for injunctive relief.

The Court should grant Nyko's request for temporary, emergency relief and set a date for Defendants to show cause why a preliminary injunction should not issue.

-1-

## II. THE DEFENDANTS HAVE NOT RAISED A SUBSTANTIAL QUESTION OF PATENT INVALIDITY OR NONINFRINGEMENT

### A. The Claims of Nyko's '848 Patent Are Valid

Defendants have not raised a *substantial* question of invalidity of any, let alone all, of Nyko's asserted patent claims, each of which is presumed to be valid under 35 U.S.C. § 282, independent of the validity of the other claims. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1581 n.8 (Fed. Cir. 1993).

#### 1. Cole is not an Anticipatory Reference

Defendants argue that claims 1, 2, 5, 7, and 10 are anticipated by Cole, U.S. 7,942,747 ("Cole," Ex. K to Hanle Dec.) and, therefore, unpatentable under 35 U.S.C. § 102(e). However, Cole does not provide an unambiguous disclosure of every feature recited in the claims of the '848 patent. In particular, its discussion of USB ports 22 in the storage rack (Cole, 4:42-48) begs the question of how the ports couple to the corresponding power input ports on hand-held video game controllers. Indeed, FIG 4 of the Cole patent shows the body of the controller spaced apart from the DC port, suggesting that a wire must be used. See Demonstrative Exhibit A, FIG. 4, lodged concurrently herewith.

Further, FIG . 4 of the Cole patent shows the controllers sitting in a handle down orientation against the pegs on the rack. The power input ports on the first party Xbox360 and PS3 wireless controllers are located on the top or forward portion of the controllers opposite the handles. In the orientation shown in FIG. 4, the power input port of the Xbox or PS3 wireless controller would be disposed in an opposite direction away from the DC port on the rack. As Cole makes no disclosure as to how the ports are connected, a user would look to the cables available for the first party controllers to provide power from the port on the rack to the port on the controller. See Supplemental Declaration of Amir Navid

-2-

("Supp. Navid Decl.") ¶2, filed concurrently herewith; Demonstrative Exs. F and G, showing Xbox 360 and PS3 wireless controller input port locations, lodged concurrently herewith. Thus, the Cole patent appears to teach away from the asserted claims of the '848 patent.

Furthermore, the effective date of Cole as Section 102(e) "prior art" in the context of the claims asserted by Nyko, is at best November 1, 2007, the filing date of the Cole patent -- which is *after* the '848 patent's priority date, October 24, 2007."[1] Cole is *not* entitled to be treated as prior art as of May 3, 2006, the date on which Cole's predecessor PCT international application was filed (PCT/US2006/016944, Ex. L to Hanle Dec., hereafter "Cole PCT"), because the Cole PCT does not include an enabling written description of the pertinent subject matter. *See In re Giacomini*, 612 F.3d 1380, 1385 (Fed. Cir. 2010) ("Section 102(e) codified the 'history of treating the disclosure of a U.S. patent as prior art as of the filing date of the earliest U.S. application to which the patent is entitled, *provided the disclosure was contained in the substance in the said earliest application*.'") (citation omitted, emphasis added).

The Cole patent itself acknowledges that "Applicant [only] claims the benefit of the earlier filing dates of the PCT application and the provisional application *for so much as is common with this application*." Cole, 1:10-12 (emphasis added).

Neither the Cole patent nor the Cole PCT discloses "a plurality of DC ports

---

[1] Defendants' bald assertion, at page 6, n.4 of its Opposition, that the '848 patent is not entitled to the priority date of Nyko's provisional application (October 24, 2007) is without merit and is insufficient to raise a substantial question of invalidity. Defendants offer the Court no guidance as to why the disclosure of the preferred embodiment in the provisional application somehow precludes priority of asserted claims. For example, FIG. 3 of the provisional (Hanley Ex. J) (Ct Doc 22-7, page 21), clearly shows each and every feature of the asserted claims, which is plainly sufficient to lend priority.

-3-

on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers," as recited in combination with the other limitations of claim 1 of the '848 patent. To the contrary, the Cole PCT merely discloses a storage rack which, in one embodiment, may have a USB adaptor:

> [T]he cradle formed by the plurality of cantilever posts 11 has a universal serial bus (USB) adapter. The USB adapter connects to the game controller allowing the game controller rack 10 to recharge a wireless game controller. This embodiment also allows USB communication between a game controller and the game controller rack 10.

Cole PCT, ¶[0025] (Hanle Dec., Ex. L).

Contrary to the later-filed Cole patent, the Cole PCT provides no drawing of such a feature (compare Cole PCT, Figs. 1-7, with Cole, Figs. 4 and 4a). Nor does the PCT describe in any detail exactly where or how the USB adapter might be positioned, or that it is configured to couple directly to the power input port of a video game controller, or that no wires are used. In ¶[0027], the Cole PCT discloses that the USB adapter can be "replaced with an appropriate power plug which matches the power plug requirements of the game controller." But Cole PCT does not provide a description of how such a feature might be configured or where it might be placed. The Cole PCT does not provide an *enabling written description* of the feature of "a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers," as recited in claim 1 of the '848 patent and as required under 35 U.S.C. § 112, first paragraph, nor does it clearly and unambiguously disclose the claimed location of the DC port relative to the opposing surfaces. It is improper to rely on the later filed drawing in the Cole patent to interpret what Cole may have meant in the earlier PCT when the

-4-

drawing from the patent is nonexistent in the PCT.  Therefore, even the deficient disclosure of the Cole patent cannot be treated as prior art effective as of Cole PCT's filing date.  As such, the Cole patent is not "prior art" to Nyko's '848 patent.  See Demonstrative Exhibits A and B lodged concurrently herewith (annotated demonstrative exhibits directed to the Cole patent and Cole PCT).

### 2. **Claims 8, 11, and 12 are Patentable Over Cole Taken With other References**

Because the Cole patent is not "prior art" to Nyko's '848 patent, the Court should dismiss Defendants' arguments that claim 8 is obvious based on the combination of Cole with Brake et al. (U.S. 5,734,253, Ex. Q to Hanle Dec.), and that claims 11 and 12 are obvious over the combination of Cole with Kumar et al. (U.S. 6,018,227, Ex. P to Hanle Dec.).  In addition, neither Brake et al. nor Kumar et al. teach or suggest a video game controller charging system for charging a plurality of video game controllers, or a DC port on the base between a respective pair of surfaces and being configured to couple to and provide DC power to a power input port of a respective video game controller.  The references appear to be *cumulative* to the information considered by the Examiner during prosecution of the '848 patent, including the Huang and Shaddle references.  Defendants cannot raise a "substantial question" of invalidity by relying on cumulative references.  *See Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1378 (Fed. Cir. 2011), reh'g denied, 2011 U.S. App. Lexis 7625 (Fed. Cir. Apr. 1, 2011 (finding the newly cited reference to be cumulative to the prior art considered by the PTO, and observing that "'[w]hen an attacker simply goes over the same ground traveled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent.'" (citing *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) (abrogated on other grounds) *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed.

1  Cir. 2011)).

### 3. The Claims are Patentable over Erickson in combination with the Other References

Defendants assert that claims 1, 2, 5, and 7-8 of the '848 patent are unpatentable as being obvious over Erickson (U.S. 8,143,850 , Ex. N to Hanle Dec.) in combination with "numerous references."  Defs. Opp., pp. 18-20. Erickson was considered by the patent examiner during prosecution of the '848 patent.  (*See* '848 patent, p. 2 (listing US 2009/0072784 to Erickson).  As such, the Defendants' burden on invalidity is particularly heavy. *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008).

Erickson discloses a system 10 for charging two portable devices 12a, 12b which are game controllers.  Erickson, 4:66 - 5:4, and Fig. 4A.  Erickson discloses coupling inductors 36a, 36b in recesses 34a, 34b under a base unit shell 42. *Id.*,6:13-19, and Fig. 4A).  However, Erickson does not teach or suggest a DC port on the base between a respective opposite pair of surfaces and being configured to couple to and provide DC power to a power input port of a respective video game controller.  Rather, Erickson *teaches away* from any such DC ports on the base by using an inductive (magnetic) recharging base which interacts with a battery coupling inductor to recharge the battery, without external charging contact points and without DC power. *Id.*, 1:54-58, 2:11-20.

Defendants also cite the Brake et al., Huang , Scholder, Kaji et al., and Kumar et al. references, but leave it to the Court's imagination to understand how a skilled person would have found Nyko's patent claims to be obvious in view of the cited combination of references.  The Supreme Court has rejected this approach as inadequate. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 417-18 (2007) ("[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior

CHRISTIE, PARKER & HALE, LLP

art."). The claim charts provided in Exhibits U and V to Defendants' Opposition fail to provide a "reasoned explanation" to support the combination of references. The charts merely identify the discrete disclosures of each of the references; they do not show how or why a skilled person would have purportedly combined the references' respective teachings to arrive at Nyko's claimed invention.

The secondary references cited by Defendants are merely cumulative with the art of record, and contain other distinguishing characteristics. Huang and Shaddle were considered by the examiner during prosecution of the '848 patent. Neither reference teaches or suggests a video game controller charging system for charging a plurality of video game controllers. Nor do they teach or suggest a DC port on the base between a respective pair of surfaces and being configured to couple to and provide DC power to a power input port of a respective video game controller. Defendants cannot raise a "substantial question" of invalidity by relying on cumulative references. *Tokai Corp.*, 632 F.3d at 1378.

A review of the totality of Defendants' arguments is telling as to the inadequacy of its obviousness position. Defendants cannot locate from what it dubs the "crowded" prior art a single prior art reference (including PDP's own prototype design) that discloses each and every limitation of the claimed invention arranged in the manner set forth in the claims. .*See Celsis in Vitro, Inc. v. Cellzdirect, Inc.,* 664 F.3d 922, 927–928 (Fed. Cir. 2012) (Claims nonobvious where large body of prior art literature failed to disclose the claimed invention.) Here, even Sony and Microsoft – two of the world's largest game console manufacturers – failed to disclose or suggest the claimed invention, which is additional evidence of nonobviousness. See Demonstrative Exs. C and D, lodged concurrently herewith. PDP's original design with a moving member on a neck that comes down over the controller never materialized but instead later "evolved" into the accused products that embody the features set forth in the '848

CHRISTIE, PARKER & HALE, LLP

patent. See Demonstrative Ex. E. All of this undisputable evidence supports the nonobviousness of the asserted claims.

### B. Defendants have not Rebutted Nyko's Strong Showing of Infringement

Defendants argue that the accused products lack two elements of Nyko's claims: "(1) a plurality of DC ports <u>on the base</u>; and (2) docking bays comprised of opposite surfaces <u>on the base</u>." Defs.' Opp., p. 20 (emphasis in original). The argument is based on an erroneous construction of the claim limitation "base" as the bottom-most part of the charging station. Such a construction is belied by the intrinsic evidence --the claim language itself, the written description, and the patent drawings-- and the extrinsic evidence, including Defendants' proffered dictionary definition. When the claim limitation "base" in claim 1 is properly construed, both elements are readily seen in the accused products.

Defendants implicitly argue that the term "base" as used in Nyko's patent claims must be the lower-most component of the charging system, the component that makes contact with a supporting surface, such as a table or a wall. Defs' Opp., p. 21. However, the written description and drawings in the '848 patent do not support such a narrow construction. As described in exemplary embodiments of the '848 patent, the base is shown as a support structure and housing for various components. See, e.g., Fig. 22, which illustrates that the charger base includes, among other elements, circuitry, an LED indicator and a power supply (plug) interface. '848 patent, Fig. 22. Without reading these features into the term "base," the description illustrates the point that that the term "base" should not be construed as simply meaning the bottom piece of the charging system.

As in the '848 patent, in the accused products the arched structure houses the circuitry, the LED indicators and the plug interface, and supports the docking bays. Supp. Navid Decl, filed concurrently herewith, Ex. B. The flat, teardrop

1
2
3
4
5
6

shaped bottom-most portion of the accused products houses nothing and simply snaps onto the arched structure. *Id.*, Ex. A. With or without the flat attachment, the arched support satisfies each and every element of the "base" recited in Nyko's patent claims. Merely adding a piece to an otherwise infringing structure does not avoid infringement. *Suntiger, Inc. v. Biomedical Optics Co.*, 189 F.3d 1327, 1336. (Fed. Cir. 1999)

7
8
9
10
11
12
13

Defendants also argue that the plain meaning of "base" is "the bottom of something considered as its support." For this they cite the Merriam-Webster dictionary, http://www.meriam-webster.com/dictionary/base. Defendants neglect to mention that, at the bottom of the cited website page, there is an illustration of a base, namely, the base of a column. Opening the illustration reveals a close-up view of the bottom of a column, with features 1-6. *all* of which are considered part of the column's *base*:



base of a column: *1* upper torus, *2* scotia, *3* lower torus, *4* plinth, *5* shaft, *6* fillets

Supp. Carpenter Dec., Ex. A and B.[2]

The same is true here. The term "base" in Nyko's claims is not limited to the absolute bottom-most part of the charging system, but constitutes the supporting structure, however configured. This is consistent with the definition of base found in *Webster's Collegiate Thesaurus*": "something on which another thing is reared or built or by which it is supported or fixed in place <the *base* of a lamp>" *Id.*, Ex. C. Even Defendant PDP appears to refer to its accused PS3

---

[2] Supplemental Declaration of John Carpenter, filed concurrently herewith.

-9-

product as a "charge base."  May 10, 2012 Navid Decl., Ex. B.

Defendants do not dispute any other aspect of Nyko's infringement analysis, and have failed to raise a substantial question of noninfringement.

### C. PDP has not Rebutted Nyko's Strong Showing of Irreparable Harm

In a weak attempt to counter Nyko's strong showing of the irreparable harm it will suffer unless it is afforded immediate injunctive relief, Defendants assert that Nyko unreasonably delayed filing its *ex parte* application for a temporary restraining order.  The argument is contrary to the facts and the weight of the authorities.

The '848 patent issued on March 27, 2012.  Nyko's patent counsel proofed the patent, discovered Patent Office printing errors, and quickly filed a request for a certificate of correction.  Martone Dec., ¶¶3 and 4; Ex. A.  Two days later, on April 5, 2012, Nyko filed, but did not serve, this action.  Also on April 5, Nyko wrote to the defendants' general counsel and invited them to settle the matter amicably.  Carpenter Dec., Ex. A.  In parallel, Nyko engaged in persistent, ongoing negotiations with Walmart in an effort to persuade Walmart not to remove Nyko's Charge Base products from Walmart store shelves, and advising Walmart of the grant of the '848 patent.  Arbogast Dec. ¶12.  On April 26, 2012, having received no reply from the Defendants, Nyko served the complaint.  On May 8, the Patent Office formally issued a Certificate of Correction for the '848 patent.  Supp. Martone Dec., ¶3 Ex. A.[3]  On May 9, Walmart's buyer representative informed Nyko that it was referring the matter to Walmart's legal department.  May 10, 2012 Arbogast Decl. ¶12. On May 10, Nyko filed its *ex parte* application for a temporary retraining order and order to show cause.

Nyko's conduct was diligent, not dilatory.  No suit could be filed until the

---

[3]  Supplemental Declaration of Jason C. Martone, filed concurrently herewith.

-10-

patent issued. Thereafter, Nyko sought to correct two printing errors in the patent caused by the Patent Office. Because Nyko would be seeking an injunction against Defendants' prospective conduct, it was important for the '848 patent's certificate of correction to issue before Nyko filed its *ex parte* application. *See E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions*, 525 F.3d 1353, 1362 (Fed. Cir. 2008) (distinguishing the holding in *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1295 (Fed. Cir. 2000) that a certificate of correction is not effective for causes of action that arise before the certificate's issuance, and giving effect to a certificate that issued after commencement of the suit but before the patentee sought injunctive relief).

In addition, Nyko's efforts to convince the Defendants to settle, and to negotiate with Walmart, are to be commended, not criticized. *See, e.g., Jacksonville Coalition for Voter Protection v. Hood*, 351 F. Supp.2d 1326, 1332 (M.D. Fla. 2004) ("Plaintiffs did not file suit earlier because they were engaged in the great American tradition of negotiating . . . The Court will not punish Plaintiffs for their decision to try other governmental channels before seeking judicial redress"); *Atari Corp. of Am. v. Sega, Inc.*, 869 F. Supp. 783, 790 (N.D. Cal. 1994) (delay is excused where there is a reasonable belief negotiations may resolve the dispute).

The two cases cited by Defendants are not to the contrary, and involved delays of months or more in which the Plaintiff did relatively little or nothing to protect its rights.

Defendants' other arguments about a purported lack of irreparable injury are also specious. Defendants allege that Nyko will not suffer a loss of goodwill even in the absence of injunctive relief because it has numerous items for sale at Walmart. Defendants cite to Walmart's website www.Walmart.com , but ignore the fact that over 90% of Nyko's sales are at brick and mortar stores, rather than

over the internet. Arbogast Dec., ¶7, and that Nyko's Charge Base 360 product is Nyko's number one-selling product and the top-selling third-party charger for products in the video game accessory industry. *Id.*, at ¶8. The threat to Nyko's goodwill is real, not speculative. The loss of shelf space that may take years to recover is real, not speculative. A presence at Walmart's stores --not just its website-- is crucial to Nyko's continued viability.

There is no dispute that Defendants' accused infringing products are set to displace Nyko's patented products by the end of this month. Nyko was informed in December that its patented products would no longer be on the shelves and Defendants admit that Walmart informed them at the same time that the accused products would be placed on the shelves. Defendants also allege that there is no evidence that Walmart will change its mind if a TRO is issued, but Nyko's discussions with Walmart are to the contrary, and Walmart's business standards for its suppliers evidences a strong position in favor of respecting intellectual property rights. Supp. Carpenter Dec., Ex. D ("*Suppliers . . . must fully comply with all applicable national and/or local laws and regulations . . .*This standard is a minimum for Walmart suppliers . . . [and] also extends to other matters such as intellectual property rights . . .").

Defendants cite to *Aurora World v. TY Inc.*, 719 F. Supp. 2d 1115, 1121 (C. D. Cal. 2009), which did not involve a patent infringement claim and, therefore, did not address the court's ability to consider "the fundamental nature of patents as property rights granting the owner the right to exclude" when determining whether irreparable harm exists. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Further, the Plaintiff in Aurora failed to demonstrate that it has significant reputation or goodwill in the market. *Aurora*, 719 F. Supp. at 1169.

CHRISTIE, PARKER & HALE, LLP

The price erosion, loss of goodwill, damage to reputation and loss of business opportunities that Nyko will suffer from Defendants' continued infringement are all valid grounds for finding irreparable harm.  *See Celsias in Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (citing *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 136 (Fed. Cir. 2008); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 138-2-83 (Fed. Cir. 2006)).  Further, "the simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm."  *Celsis*, 644 F.3d at 930.  Moreover, "[i]n a highly competitive market, injury to market share can constitute irreparable harm."  *Chem-Tainer Indus., Inc. v. Wilkin*, No. CV97-0829 LGB, 1997 U.S. Dist. LEXIS 17241, at *25 (C.D. Cal. 1997) (citing *Cordis Corp. v. Medtronic, Inc.*, 2 U.S.P.Q.2d 1845, 1848 (D. Minn. 1986), *aff'd*, 835 F.2d 859 (Fed. Cir. 1987).

### D. The Balance of Hardships and Public Interest Favor Nyko

The cases cited by the Defendants recognize that, where the Plaintiff has shown a likelihood of success on the merits, "a preliminary injunction would support the public's faith in the patent system. . . .  Congress has determined that it is better for the nation in the long-run to afford the inventors of novel, useful, and non-obvious products short-term monopolies through the patent system" (quoting *Eli Lilly Co. v. Premo Pharmaceutical Labs*, 630 F.2d 120, 137 (3rd Cir. 1980))).  *Nano-Second Tech. Co., Ltd. v. Dynaflex Int'l*, No. CV 10-9176 RSWL, 2011 U.S. Dist. LEXIS 111836, at *12 (C.D. Cal. Sept. 28, 2011).  Further, in *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 684 (Fed. Cir. 1990), the court recognized "a public interest in the protection of patent rights."  Here, Plaintiff has a substantial likelihood of success on the merits, and the public interest favors protecting patent rights over patent infringement.  *Abbtot Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

CHRISTIE, PARKER & HALE, LLP

### III. CONCLUSION

Nyko requests entry of a temporary restraining order against the Defendants and an order for Defendants to show cause why a preliminary injunction should not issue.

DATED: May 17, 2012

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By /s/Art Hasan
    Art Hasan

Attorneys for Plaintiff,
Nyko Technologies, Inc.