**JOHN D. CARPENTER, CA Bar No. 145154**
**john.carpenter@cph.com**
**S. ART HASAN, CA Bar No. 167323**
**art.hasan@cph.com**
**G. WARREN BLEEKER, CA Bar No. 210834**
**warren.bleeker@cph.com**
**CHRISTIE, PARKER & HALE, LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, California 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Plaintiff,
Nyko Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ENERGIZER HOLDINGS, INC., a Missouri corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California limited liability company,<br><br>Defendants. | Case No. CV 12-3001 GAF (VBKx)<br><br>**THIRD DECLARATION OF AMIR NAVID IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR (1) TEMPORARY RESTRAINING ORDER AND (2) ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>**Hon. Gary Allen Feess** |

I, Amir Navid, declare as follows:

1. I am the Vice President of Research and Development of Plaintiff NYKO Technologies, Inc. ("NYKO"). I have personal knowledge of the contents of this declaration and, if called as a witness, could and would competently testify thereto.

2. I am familiar with the video game industry, and the design and development of video game accessories. I have 15 years of experience in

designing and developing video game accessories. I have designed various controllers and interfaces for every major video game console since 1997. I am a named inventor on several patents directed to gaming accessories. As such, I have extensive experience in the design, development and operation of video game accessories.

3. I am the named inventor on the '848 patent. I am familiar with the '848 patent, including its description of and claims to a charging system for video game controllers. I am also a named inventor on a number of other patent applications.

4. The relevant area of art for purposes of construing the '848 patent is video game accessories and their design and operation.

5. Video game controllers have been available for over 30 years. Yet, in all of my experience, I have never seen or had knowledge of a charging device that embodies my design until after Nyko launched its Charge Base product line. After Nyko's product launch, I have seen many copies that were clearly influenced by my design.

6. It is improper to read my patent as simply conforming to a cradle. Claim 1 of my patent, with numerals next to each element, reads as follows:

> 1. A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:
>
> [i] a base;
>
> [ii] at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game

controllers are being charged; and

[iii] a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

[iv] wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

[v] wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the base between a respective one of the pairs of surfaces.

7. Claim 2 adds that "the plurality of DC ports comprises a plurality of male mini-USB connectors." Claim 5 adds that the pairs of opposite surfaces are configured to align respective ones of the plurality of video game controllers such that the power input ports of the respective ones of the plurality of video game controllers couple to respective ones of the plurality of DC ports. Claim 7 further adds to the video game controller charging system of claim 1, wherein the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers.

8. The configuration of the docking bays in my invention with openings in a first direction for receiving the video game controllers from the first direction as set forth in element [iv] and the plurality of pairs of opposite surfaces, each pair of surfaces defining a docking bay with the location of the DC port set forth in element [v] results in the video game controllers being charged with their

handles projecting outwardly away from the base. This is significant because it allows a user to place and remove the controllers in one step and allows the user to grasp the individual controllers at or close to a game playing position. This is an important feature because it allows for rapid deployment and removal of the video game controllers in a position that minimally disrupts game playing. This feature of my invention is shown for example in FIGS. 3 and 6 of my provisional application, filed October 24, 2007, of which FIG. 6 shows the controllers deployed with the handles projecting outwardly and away from the charging station for ready grasping by the user.





9. Among other benefits, my invention eliminates the need for long messy charging cables, and eliminates the need for the main video game console to be powered on in order to charge the controllers. Additionally, it eliminates the need to remove battery packs and

charge them separated from controllers. Having multiple ports on the charger allows more than one player to charge controllers at the same time, and also allows a single player to have a backup controller available to use immediately, should the primary controller run out of charge. Further, the configuration of the docking bays allows the Xbox 360 and PS3 controllers to be suspended in a position whereby a user may readily grasp the handles of the controllers located opposite the charging portals. These benefits afford a convenient, cleanly organized gaming area where controllers may be concurrently charged and readily swapped in a gaming situation.

10. The system is efficient and conserves energy, as compared to others that require the main video game console to be powered on in order to charge the controllers. These other systems not only use power to power the USB ports, but also the console's processor, thus expending significantly more power than needed to complete the sole task of charging the controllers.

11. My invention has a number of features that are counterintuitive in view of the prior art in the field of video game accessories. First, my design requires that the entire video game controller be placed in the charging base, which is taught away from by the prior art. Sony and Microsoft both provided lengthy cables with the controllers for charging them. Alternatively, rechargeable battery packs are used in the prior art with chargers for the batteries only so the controller may still be used by swapping the battery packs. The prevalent thinking behind these prior art designs was to avoid disruption to game playing by allowing the user to switch to a wired configuration or to a freshly charged battery pack.

12. My invention addresses issues unique to the video game arts. By way of example, placing the entire controller for charging has the benefit that the

video game controller may be placed and removed in one step without the need for an external cable, but has the disadvantage according the prior art of not allowing the user to play with the controller while it is charging. In my invention as claimed in the '848 patent, either the user will have to stop playing the game or purchase a duplicate set of controllers to use while one set of controllers is being charged. In my invention, there is no use of a cord tethered to a video game console. Tethering a cord to a video game console may cause damage to the console if the cord is yanked or extended beyond the length of the cord. Yanking and overextending cords in the video game realm occurs often given the nature of the use of the controllers. Sony, Microsoft and others have responded to this very issue by providing and touting extra long cords that add to the mess and add to the possibility of entanglement.

13. As my invention has a pair of DC ports that couple to the power input port of the game controller, there is no need for external cables in my design. Using my invention, the cables provided with the controllers are rendered useless, which may be another perceived drawback from the point of view of the prior art. Another perceived drawback of my invention from the point of view of the prior art is that a video game user typically plays a game for an undetermined period of time such that it would be desirable to play the game with a charging cable connected to the console.

14. I came up with different designs before I settled on my invention as disclosed and claimed in the '848 patent. The design of the device is not dictated by the device. By way of example, as I pointed out, the first parties Microsoft and Sony, who developed the controllers chose to initially use wires and rechargeable battery packs to charge the devices. After expending large amounts of research and development effort by its own admission, PDP came up with a clamshell design that was cumbersome and included a movable arm that came

down on the controller to charge it (see illustration below from Exhibit C to the Roberts Declaration). This involved a multi-step process whereby the user would have to move the arm, insert the controller, and move the arm back down again to charge the controller.



15. The timing of PDP's product launch indicates its movement to the present infringing device is not an evolution. By way of example, PDP states that it expended a significant amount of research and development effort to come up with numerous designs including its initial multistep clamshell approach. Nyko introduced the Charge Base product at the Consumer Electronics Show in Las Vegas to great fanfare in January 2007 (see Exhibit A attached hereto). At some point, PDP abandoned its original design and moved to the design in June 2007 that it is now selling that includes each and every element of a number of claims of the '848 patent. This is further evidence of nonobviousess, given that PDP moved from numerous designs including a cumbersome clamshell design to the design claimed in the '848 patent.

16. The two primary prior art references – Cole and Erickson – that Defendants are relying upon are not prior art to my invention. Cole, U.S. Patent 7,942,747 ("the Cole patent"), Exhibit K to the Hanle Declaration, is not prior art

to my invention as my October 24, 2007 priority date predates Cole's filing date of November 1, 2007. Cole's disclosure also teaches away from my invention because, as shown in FIG. 4, the handles are disposed downwardly onto the rack, thereby requiring that a cable be used to recharge the controllers.




FIG. 4

17. The Erickson reference is also not prior art to the '848 patent. The product Nyko introduced in January 2007 includes each and every feature of the claimed invention. As such, I am a prior inventor to the subject matter disclosed in Erickson. Further, Erickson worked for Nyko and filed his application shortly after he left the company. His design is very similar to the Wii Charger device that Nyko introduced in January 2007. In any event, Erickson teaches away from the claimed invention because it relies upon magnetic coupling with no electric charging through a DC port whatsoever.

18. There are secondary considerations of nonobviousness as well that

support the validity of my patent. The product covered by the patent has enjoyed tremendous commerical success, and it has received positive reviews for the patented features.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 30 day of May, 2012 in Los Angeles, California.

By ______________________
Amir Navid

# EXHIBIT A



IGN
Prime
Newsfeed
Sign in or Register
Xbox 360 PS3 Wii PC Vita 3DS iPhone Tech Movies TV Comics Reviews Wikis & Cheats Upcoming News Videos
Boards
789
Get Your
FREE 2012 Credit Score NOW
CLICK HERE!
TransUnion.
CES 2007: Nyko Charge Base PS3
Keeps up to 4 PS3 pads fully charged.
by Gerry Block JANUARY 9, 2007
Like Confirm Tweet 0 +1 0
BECOME A FAN OF IGN
Follow @ign 429K followers
Like
Confirm
You like IGN.com. · Admin Page · Insights · Error
You and 733,660 others like this.733660 likes. Sign Up to see what your friends like. · Admin Page · Insights · Error
Nyko is also out to address the hassle associated with keeping SIXAXIS controllers fully charged. The Charge Base seats four PS3 controllers and keeps them charged via a wall outlet and six-foot cord. Suggested retail pricing shall be $39.99.
More From CES
Best of CES 2012 Awards
CES 2012: The Year of the Ultrabook
Best of CES 2012 Award Nominees
05.15.12
by Gerry Block
Like Confirm Tweet 0 +1 0
IGN
Games Newsletter
Latest News
Game Insights
Free Stuff
SIGN UP TODAY
Popular IGN Videos

EXHIBIT A
Page 10

http://www.ign.com/articles/2007/01/10/ces-2007-nyko-charge-base-ps3[5/10/2012 6:26:38 PM]