LINKS: 9, 32

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:** (In Chambers)

**ORDER RE: EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

**I.
INTRODUCTION**

Plaintiff Nyko Technologies, Inc. ("Nyko") and Defendants Energizer Holdings, Inc. and Performance Designed Products LLC (jointly referenced as "PDP") compete in the sale of charging stations for wireless video game controllers used in Sony's Play Station 3 ("PS3") and Microsoft's Xbox 360 video game systems. In December 2011, Walmart notified Nyko that it would no longer purchase Nyko's charging stations, but would continue carrying PDP's charging station for PS3 controllers and would re-start sales of PDP's charging station for Xbox 360 controllers. Then in March 2012, Nyko was awarded a patent on its charging system, which led to this lawsuit and Nyko's claim that PDP's competing systems infringe on Nyko's patented device. (Docket No. 1 [Compl.].) Nyko now applies for a temporary restraining order and an order to show cause why a preliminary injunction should not issue barring PDP from selling its charging system to Walmart and from showing its charging stations at the upcoming Electronic Entertainment Expo ("E3 Expo"), to be held in Los Angeles from June 5–7, 2012. (Docket No. 9 [App.] at i.). According to Nyko, the PDP systems infringe its patent and Walmart's cessation of the sale of Nyko's systems while continuing to sell PDP's infringing products will cause it irreparable harm. Therefore, argues Nyko, the injunction must issue to maintain the status quo while the merits of the lawsuit are being addressed by the Court. PDP opposes the application, contending that there is no evidence supporting the claim of irreparable harm, that the injunction would alter the status quo, that the patent is of dubious validity, and that the balance of equities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

and the public interest favor denial.  (Docket No. 19 [Opp.].)

Having read and considered the moving, opposition, reply and supplemental filings of the parties and having conducted a hearing in the matter, the application for TRO is **DENIED** without prejudice to Plaintiff to move, after further development of the record, for a preliminary injunction.  The evidence presented persuades the Court that:

(1) the requested injunction would alter the status quo which must be viewed as of December 2011 when Walmart announced its substitution of PDP for Nyko as the vendor for Xbox 360 charging systems, and would bar PDP, which has sold its PS3 charging station to Walmart for nearly three years, from selling that product.

(2) the claim of irreparable harm fails for a number of reasons, most notably that Nyko has not and cannot show that Walmart will purchase its product even if PDP is barred from selling the allegedly infringing charging stations.  Moreover, the mere loss of sales and revenues is compensable in damages and cannot, without more, constitute irreparable harm.

(3) the field of invention is extremely crowded and reflects numerous solutions to the need to charge batteries used to operate electronic components and devices.  PDP has raised substantial questions regarding the patent's validity due to obviousness, and Nyko has not shown that the defense lacks substantial merit.  Therefore, Nyko has not shown a likelihood of success on the merits.

(4) Finally, given the foregoing, the balance of hardships tips in favor of PDP, which would lose the ability to do business with Walmart without any assurance that Nyko would benefit in any way from the proposed injunction.  Moreover, the public interest favors competition which places downward pressure on the price of goods offered for sale in the marketplace.  Absent strong evidence that the patent is valid over the claims raised by PDP, enjoining PDP from selling its product runs contrary to the public interest because it would eliminate a vigorous competitor from the relevant product market.

## II.
## BACKGROUND

Both Nyko and PDP have been involved in the design and manufacture of video game accessories and other electronics for years.  (Docket No. 20 [Roberts Decl.] ¶¶ 3, 5, Ex. B.)  These devices include a variety of components used in connection with the products of other

Case 2:12-cv-03001-GAF-VBK   Document 51   Filed 06/01/12   Page 3 of 13   Page ID #:913

LINKS: 9, 32

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

manufacturers – in this case, charging stations that re-charge the batteries in wireless video game controllers used in the Sony PS3 and Microsoft Xbox 360.

Sony announced the present design for its wireless video game controllers in mid-2006. Sony's solution for charging the controllers was long USB cables that connected the controllers to the game console. (Docket No. 22 [Hanle Decl.] ¶ 4, Ex. C.) Immediately, both Nyko and PDP began to work on an alternate design that would charge the controllers in a separate charging station. Nyko introduced the current design for its charge bases in January 2007. In June 2007, PDP first displayed and promoted charge bases incorporating that design at the E3 trade show. (See Docket No. 41 [Suppl. Hanle Decl.] ¶ 3, Ex. A [1/8/07 Nyko Press Release]; Roberts Decl. ¶¶ 6–9, Ex. C.)

Thereafter, Nyko filed a provisional application for a patent for its design, which identified Amir Navid as the inventor, with the U.S. Patent and Trademark Office ("PTO") on October 24, 2007. (Hanle Decl. ¶ 10, Ex. J [Provisional Navid App.].) The PTO twice rejected the application as anticipated by and obvious over prior art. (See Hanle Decl. ¶ 9, Ex. I.) However, with little explanation, in early 2012, the patent examiner issued a Notice of Allowability. (Id.) U.S. Patent No. 8,143,848 (the "'848 Patent"), entitled "Video Game Controller Charging System Having a Docking Structure," issued to Nyko on March 27, 2012. (Docket No. 11 [Navid Decl.] ¶ 4, Ex. A ['848 Patent].) Nyko asserts that PDP's charge bases, which have been offered for sale at Walmart since at least 2009, literally infringe independent Claim 1 of the '848 Patent and dependent claims 2, 5, 7, 8, 10, 11, and 12. (App. at 2.)

Walmart has carried both the Nyko and PDP PS3 charge bases for more than three years, since April of 2009. Walmart carried the PDP Xbox 360 charge base from April of 2009 until the middle of 2010; in May of 2011, it began to sell Nyko's Xbox 360 charge base. (Roberts Decl. ¶ 10; Docket No. 12 [Arbogast Decl.] ¶ 17.)[1] However, in December of 2011, Walmart notified Nyko that it would no longer carry Nyko's charge base products, but would maintain its sale of PDP's PS3 charge base and re-start its sales of the PDP Xbox charge base, beginning in the spring of 2012. (Arbogast Decl. ¶ 12; Docket No. 21 [Otte Decl.] ¶ 3.) Although Nyko has produced evidence that its charge bases currently can be found on the shelves at several Walmart locations in the Los Angeles area, Walmart placed only 15 orders for Nyko's charge base products, compared to 6,882 units last year for the same time period. At the same time, Walmart has increased its orders from PDP. (Arbogast Decl. ¶ 14; Otte Decl. ¶ 3; Docket No. 47 [Herring

---

[1] Defendants make numerous objections to statements made in the Declaration of Chris Arbogast, Director of Marketing at Nyko, as vague, irrelevant, lacking foundation, and reliant on hearsay. (See Docket No. 23.) For the purposes of the present order, the Court **OVERRULES** these objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

Decl.] ¶¶ 2–9, Exs. A–C; Docket No. 46 [Third Arbogast Decl.] ¶ 5.) Nyko has been unsuccessful in its efforts to persuade Walmart to reconsider its decision, although it has notified Walmart of the issuance of the '848 Patent and the filing of this lawsuit, and has delivered an in-person presentation regarding the basis for its infringement claims. (Arbogast Decl. ¶ 12.)

## III.
## DISCUSSION

### A. LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER

The standard for a temporary restraining order is identical to the standard for a preliminary injunction. Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc., 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009) (citing Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)). A plaintiff seeking preliminary relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Doe v. Reed, 586 F.3d 671, 676 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008)). The elements of this test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1049–50 (9th Cir. 2010). Thus, a court may grant temporary relief where a plaintiff demonstrates "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Id. at 1052 (internal quotations omitted).

### B. APPLICATION

#### 1. ALTERATION OF THE STATUS QUO AND IRREPARABLE HARM

An injunction is a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed Cir. 1993). The function of injunctive relief is to "preserve the status quo and prevent irreparable loss of rights before judgment." Qbas Co., Ltd. v. C Walters Intercoastal Corp., No. SACV 10–406 AG (MLGx), 2010 WL 7785955, at *4 (C.D. Cal. Dec. 16, 2010) (citing Sierra On-line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984)). Thus, the party seeking injunctive relief must demonstrate a "probability that it will suffer irreparable harm if an injunction does not issue." Aurora World, Inc. v. Ty Inc., 719 F. Supp. 2d 1115, 1168 (C.D. Cal. 2009). "As its name implies, the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." Clesis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed.

Case 2:12-cv-03001-GAF-VBK   Document 51   Filed 06/01/12   Page 5 of 13   Page ID #:915

LINKS: 9, 32

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

Cir. 2012.) In eBay v. MercExchange, L.L.C., 547 U.S. 388 (2006), the Supreme Court reversed the "general rule, unique to patent disputes, that a permanent injunction will issue once infringement and validity have been adjudged." Id. at 393–94 (international quotation marks and citation omitted); see also Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("eBay jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief").

Nyko argues that an injunction barring PDP from selling to Walmart is necessary to preserve the status quo, in which its charge bases are offered for sale at Walmart. Moreover, unless the injunction issues, Nyko argues, it will lose access to a key customer at the end of this month, which will be nearly impossible to regain. Access to the shelves of brick and mortar stores is particularly important for Nyko, because 90 percent of its sales are made in retail stores, rather than online. (Arbogast Decl. ¶ 7.) Nyko makes nearly 40 percent of its sales of its PS3 charger and nearly 25 percent of its sales of its Xbox charger—Nyko's top-selling product, and the top-selling third party charging station in the market—to Walmart alone. (Arbogast Decl. ¶ 8; Third Arbogast Decl. ¶ 6.) Thus, Nyko states that "[l]osing the ability to sell these products at Walmart stores will be devastating to Nyko's business." (Third Arbogast Decl. ¶ 6.) It predicts a significant loss of visibility and goodwill among consumers, damage to its reputation, a loss of market share, and a permanent erosion of its industry position. (App. at 19–20; Docket No. 25 [Reply][2] at 11–13.) Nyko contends that these harms can be prevented by the issuance of an injunction, because Walmart has a policy of respecting intellectual property rights and would presumably respond to the injunction by refusing to carry PDP's charging stations. (See Arbogast Decl. ¶ 15; Docket No. 27 [Suppl. Carpenter Decl.] ¶ 5, Ex. D [Walmart Standards for Suppliers Manual] ("Suppliers . . . must fully comply with all applicable national and/or local laws and regulations . . . . This standard . . . also extends to intellectual property rights . . . .")

Nyko's contentions of irreparable harm suffer from at least four fatal defects. First, the relief that it seeks would <u>alter</u>, rather than <u>preserve</u>, the status quo. The status quo, which was established with Walmart's December of 2011 decision, involves the continued offer of PDP PS3 charging stations for sale, the phasing out of Nyko charging stations, and the preparation through its supply chain to stock the PDP Xbox 360 charging stations in June 2012. As noted in the Otte Declaration, Walmart made its decision in December 2011 and has commenced placing orders for the Xbox 360 charging stations. (Docket No. 21, Otte Decl., ¶ 3.) Thus, if the Court were to issue the requested TRO, it would, for the first time in more than three years, prevent the

---

[2] Defendants have requested that the Court strike Plaintiff's Reply to its Opposition, as unauthorized by this Court. (Docket No. 32.) The Court **DENIES** this request. Plaintiff's Reply was warranted given that Defendants raised challenges to the validity of the '848 Patent, which are discussed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

sale of PDP's PS3 charge bases from being offered for sale at Walmart, and would essentially render valueless all steps taken by Walmart and PDP to supply Xbox 360 charging stations to the numerous Walmart retail outlets across the country. Thus, the status quo as it now exists would be substantially altered by the issuance of a TRO.

Second, Nyko's contention that it will suffer a devastating and irreversible loss of visibility unless its charge bases remain on Walmart's shelves is belied by the evidentiary record. This record plainly demonstrates that Walmart changes its purchasing practices with some frequency, seriously undermining Nyko's claim that it will almost certainly never regain Walmart as a customer. Indeed, Walmart carried PDP's Xbox charge base for some time in 2009 and 2010, sold Nyko's Xbox charge base from May until December of 2011, and then reversed course again and decided to carry PDP's Xbox charge base beginning this spring. In addition, the evidentiary record shows that Walmart carries numerous other Nyko products both on its web site and in stores, so that Nyko's brand will remain visible to Walmart customers. (See Hanle Decl. ¶ 6, Ex. F (42 Nyko products available on Walmart.com); Docket No. 42 [Salen Decl.] ¶ 9, Exs. AC–AE (showing three other Nyko products for sale at a one Walmart store)).[3]

Third, there is no assurance that an injunction against PDP would cause Walmart to again purchase Nyko's charge bases. Indeed, the evidentiary record before the Court shows that Walmart currently carries several other brands of charge bases, in addition to Nyko's and PDP's. (See Hanle Decl. ¶¶ 7–8. G, H; Salen Decl. ¶¶ 7–8, Exs. AA, AB.) Thus, the injunction could do substantial harm to both Walmart and PDP but without providing any real benefit to Nyko.

Finally, Nyko's allegations of irreparable harm plainly fail under the Federal Circuit's recent decision in Apple, Inc. v. Samsung Electronics Co., Inc., — F.3d ----, 2012 WL 1662048 (Fed. Cir. May 14, 2012). In that case, the Federal Circuit stated that

> To show irreparable harm, it is necessary to show that the infringement caused harm in the first place. Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product. Thus, a likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct.

---

[3] The Court **OVERRULES** Nyko's objections to the Salen exhibits. (See Docket No. 45.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

Id. at *7. The court upheld the district court's finding that Apple had not shown likelihood of irreparable harm, because, although there was some evidence that the patented design had an effect on smartphone sales, it was outweighed by considerable survey evidence showing that the design was not a determinative factor in consumer decisionmaking. Id. at *8–9. Here, Nyko has presented no evidence supporting a finding that Walmart's demand for PDP's charge bases is driven by any patented features that PDP's design incorporates, and not by other considerations. Indeed, because there is no evidence before the Court as to the reasons behind Walmart's decisionmaking, the Court cannot draw any inferences in Nyko's favor on this point.

### 2. LIKELIHOOD OF SUCCESS ON THE MERITS

To demonstrate a likelihood of success on the merits of a patent infringement claim under 35 U.S.C. § 271(a), a patent-holder must show that its patent is likely valid and enforceable, and that it is likely to be infringed. Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc., 429 F.3d 1364, 1372 (Fed. Cir. 2005.)

#### a. *Legal Standard for Patent Validity*

A patent and each of its claims is presumed valid, and the burden of establishing invalidity rests with the party asserting it. 35 U.S.C. § 282. At the preliminary injunction stage, Defendants must come forward with evidence of invalidity, and they have the burden of showing that there is a "substantial issue" that the '848 Patent is invalid. Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997); Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1377 (Fed. Cir. 2009). However, "[w]hile the evidentiary burdens at the preliminary injunction stage track the burdens at trial, importantly the ultimate question before the trial court is different." Titan Tire Corp., 566 F.3d at 1377. At this stage, the Court "does not resolve the validity question, but rather must . . . make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." Id. (internal quotation marks and citation omitted). Thus, "[i]nstead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." Id. Nyko must therefore show that any colorable challenges raised by PDP "lack substantial merit." Sanofi-Synthelabo v. Apotex, Inc., 488 F. Supp. 2d 317, 335–36 (S.D.N.Y. 2006).

PDP raises two challenges to the validity of the '848 Patent. First, PDP argues that Claim 1 and several of its dependent claims are unpatentable under 35 U.S.C. § 102(e) as being

Case 2:12-cv-03001-GAF-VBK Document 51 Filed 06/01/12 Page 8 of 13 Page ID #:918

LINKS: 9, 32

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

anticipated by U.S. Patent No. 7,942,747 to Cole ("Cole"). (Opp. at 14–17; see Hanle Decl. ¶ 11, Ex. K [Cole Patent].) Second, Defendants contend that Claim 1 and other dependent claims are unpatentable as obvious over U.S. Patent No. 8,143,850 to Erickson in combination with other references. (Opp. at 18–20; see Hanle Decl. ¶ 15, Ex. N [Erickson Patent].) The Court confines its analysis to the issue of obviousness, and concludes that PDP has raised a "substantial issue" as to invalidity that has not been rebutted by Nyko. The question of whether Nyko has shown a likelihood of infringement is therefore not reached.

### b. *Application*

Under the Patent Act, "[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). The Supreme Court has stated that a "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR Intern. Co. v. Teleflex Inc., 550 U.S. 398, 416 (2007). Thus, the statutory test "requires factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." Mintz v. Dietz & Watson Inc., Case No. 10-1341, at 5 (Fed. Cir. May 30, 2012) (citing Eli Lilly & Co. v. Teva Pharm. USA, Inc., 619 F.3d 1329, 1336 (Fed. Cir. 2010)), available at (Docket No. 49 [Notice of Decision], Ex. A.) Where, as in this case, the prior art was before the patent examiner, the challenger's burden to show invalidity is more difficult. See Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1990).

Claim 1 of the '848 Patent recites:

> 1. A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:
>
> a base;
>
> at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

    a plurality of DC ports on the base, each of the DC ports configured to couple and to provide DC power to a power input port of a respective one of the plurality of video game controllers,

    wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

    wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces defining a respective docking bay of the plurality of docking [b]ays each of the DC ports being on the base between a respective one of the pairs of surfaces.

('848 Patent at 15:30–52; see Docket No. 29 [Suppl. Martone Decl.] ¶ 3, Ex. A [5/8/12 Certificate of Correction].) Claim 1 was twice rejected by the PTO as being anticipated and obvious. It was first rejected as being anticipated by U.S. Patent Application Publication No. 2006/0202660 to Chang ("Chang"), and Nyko added the fourth limitation above. (See Hanle Decl. ¶ 9, Ex. I [Reply to Office Action of 2/8/11] at 3, 10–11.) After this amendment, Claim 1 was again rejected as obvious over Chang in view of Erickson. The PTO explained that this was because Chang disclosed a video game controller charging system with a base, a structure on the base for providing support to at least one video game controller while it is charged, and at least one DC port on the base configured to couple to and provide DC power to the power input port of the video game controller. Erickson disclosed a plurality of DC ports on the base and a plurality of docking bays open in one direction on the base to receive the video game controllers. (See id. [10/17/11 Office Action] at 2–3.) However, Claim 1 was allowed after Nyko added the fifth and last limitation above, <u>without further explanation by the patent examiner</u>. (Id. [Reply to Office Action of 10/17/11] at 2, 9–10, [Notice of Allowability].)

    Erickson was filed on April 16, 2008 and published on March 19, 2009 as U.S. Patent Publication No. US 2009/0072784; it claims priority over Nyko's provisional application, which was filed on October 24, 2007, from a provisional application filed on September 17, 2007. (See Hanle Decl. ¶ 15, Ex. O [Erickson Provisional Application].) Erickson discloses a charging station for battery operated hand-held remote controls, including those for video game systems. The controllers sit at an angle in a recess set inside a horizontal base, and the charging is accomplished via the alignment of the magnetic battery coupling inductor in each controller with a magnetic coupling inductor on the base, without external charging contact points and without DC power. (See Erickson Patent at 1:54–58, 2:11–20, 4:66–5:4, 6:13–19, Fig. 4A.) Nyko argues that Erickson is not prior art to the '848 Patent, because its provisional application was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

filed months after Nyko introduced its charge base, which includes each and every feature of the '848 Patent, in January 2007; because Erickson "teaches away from the claimed invention because it relies upon magnetic coupling with no electric charging through a DC port whatsoever"; and because the patent examiner considered Erickson and allowed the '848 Patent. (Docket No. 48 [Plaintiff's Suppl. Reply] at 2.) However, Nyko does not provide any authority for these arguments, and, indeed, the patent examiner treated Erickson as prior art.

PDP argues that Erickson combines with U.S. Patent No. 6,018,227 to Kumar ("Kumar"), U.S. Patent No. 5,734,253 to Brake ("Brake"), U.S. Patent No. 3,327,067 to Scholder ("Scholder"), U.S. Patent No. 7,750,599 to Kaji ("Kaji"), and U.S. Patent No. 6,669,513 to Huang ("Huang") to disclose a charging station for video game controllers with a plurality of docking bays formed by opposite surfaces on a base and a DC port on the base between each pair of opposite surfaces forming a docking bay. (Opp. at 19.) Each of these patents is directed toward a different type of charging station or power source and discloses various designs of docking bays formed by opposite surfaces on a base with various types of DC ports on the base positioned inside the docking bays. (See Hanle Decl. ¶¶ 16–20, Ex. P [Kumar Patent], Fig. 1; Ex. Q [Brake Patent], Fig. 4; Ex. R [Scholder Patent], Fig. 2; Ex. S [Kaji Patent], Fig. 7; Ex. T [Huang Patent], Fig. 2.) In addition, Cole discloses a video game controller rack supporting multiple controllers on pairs of cantilever posts, with USB ports positioned between the cantilever posts for coupling with and providing power to the video game controllers. Cole was filed on November 1, 2007, as a continuation-in-part of application No. PCT/US2006/016944, filed on May 3, 2006, and issued on May 17, 2011, as U.S. Patent No. 7,942,747. (Cole Patent.) Notwithstanding Plaintiff's argument to the contrary (see Plaintiff's Suppl. Reply at 2), Cole claims priority to the filing date of its PCT application, because this application provided an adequate disclosure of USB ports located in the controller cradles. (Hanle Decl. ¶ 12, Ex. L [Cole PCT App.] at ¶ [0025] ("A still yet another embodiment, the cradle . . . has a universal serial bus (USB) adapter. The USB adapter connects to the game controller allowing the game controller rack . . . to recharge a wireless game controller.")

The Court concludes that PDP has raised a substantial issue that the prior art in this crowded field rendered Claim 1 of the '848 Patent obvious. As to the scope and content of the prior video game and battery recharging arts, see Mintz, Case No. 10-1341 at 5, the prior video game and battery recharging arts taught each of the Claim 1 elements, namely, a charging system for video game controllers formed by a base (Erickson and Cole), with docking bays, open in one direction, on the base for supporting a plurality of video game controllers while charging (Erickson and Cole), DC ports on the base inside the docking bays for coupling with and providing power to the controllers (Cole, Kumar, Brake, Scholder, Kaji, and Huang), and the use of opposite surfaces to form the docking bays (Kumar, Brake, Scholder, Kaji, and Huang).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

    Nyko argues that Cole did not disclose a direct coupling between the controllers and the DC ports, but appeared to require an additional wire for connecting the controller to the DC port. In addition, Cole positioned the controller in such a way as to require the user to turn it upon removing it from the base in order to continue playing. By contrast, the figures in the '848 Patent show a direct coupling, and the Patent positions the docking bays in such a way that the controller is withdrawn from the base in the playing direction, providing greater convenience to the user by minimizing disruption. (See Reply at 2–5; Cole Patent, Fig. 4; Docket No. 44 [Third Navid Decl.] ¶ 8.) However, neither the direct coupling nor the positioning of the controller are aspects of the Claim 1 limitations. Moreover, direct, wireless coupling between the DC ports on the charging base and the device being charged was disclosed by Kumar, Brake, Scholder, Kaji, and Huang. Nyko also argues that Erickson taught away from the Claim 1 limitation that the docking bays are formed by pairs of opposite surfaces, because, in the Erickson Patent, the charging is accomplish via magnetic inductors without external contact points and without DC power. Thus, opposite surfaces are not required to affix the controller in place. (Reply at 6.) However, the use of opposite surfaces to form docking bays was disclosed in the prior art and this solution was well-suited to the design of the wireless controllers.

    A person of ordinary skill in the video game and battery recharging arts would be familiar with the solutions contained in the Cole, Erickson, Kumar, Brake, Scholder, Kaji, and Huang arts, and would recognize the advantages that these offered in terms of charging the wireless controllers designed by Sony and Microsoft. Indeed, the differences between the '848 Patent and the prior art—particularly the Cole and Erickson Patents—are slight, and consist of elements that are readily apparent from other prior art. There is also little objective evidence of nonobviousness in the current record. Nyko argues that the '848 Patent's claims were not obvious because Sony's charging solution consisted of a long USB cable between the console and the controller, and Microsoft's October 22, 2007 press release announcing the wireless Xbox controllers disclosed no charging solution. (See Hanle Decl. ¶¶ 4–5, Exs. D, E.) Moreover, Navid states that, in his extensive experience in the field, he has never seen or known of a charging device that embodies the Nyko design, but that, after Nyko's product launch, he had seen many copies. (Third Navid Decl. ¶ 5.) Indeed, PDP began with a considerably different charge base design before adopting the design reflected in the PS3 and Xbox 360 charging stations. (See Roberts Decl. ¶ 6, Ex. C (PDP's original design).)

    The Court does not find these arguments persuasive. First, as to Sony and Microsoft, it is not terribly pertinent that they focused their design and marketing efforts on the game console and controllers rather than an enhanced means of recharging the controllers. The two manufacturers provided a cheap, simple solution to the problem and left the development of after-market products to others. That falls short of establishing a "failure" on the part of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

console manufacturers. Moreover, that Nyko's product may have come before PDP's or that it may have involved a desirable solution does not prove that it embodied a non-obvious invention. That issue turns on the questions identified in KSR and its predecessors – what are the elements of the invention, were they known in the art, and were they combined in a way that produced an unpredictable result. Applied to the invention in this case, the Court notes that Nyko's charge base consists of well known elements found in numerous inventions in a crowded field and that those elements were combined in a way to yield predictable results. Moreover, the system was introduced within six months of the release of the PS3 controllers. There was thus no "long-felt need" or "unexpected results," and Nyko has presented no evidence of "failures by others." Mintz, Case No. 10-1341 at 11–12. Moreover, although certain features of PDP's product overlap with Nyko's design, it is far from an exact copy of Nyko's and is markedly different in appearance, undermining Nyko's claims of copying. In particular, the Nyko design consists of a horizontal base, with the docking bays aligned in a row and the handles of the controllers extending vertically from the base. (See '848 Patent, Figs. 11–14, 18.) In the PDP design, the docking bays are positioned on an arced arm that extends vertically from a teardrop-shaped platform. The handles of the controllers extend horizontally from the docking bays. (See Navid Decl. ¶¶ 20–24, Exs. F–J.) Thus, the Court concludes that Nyko has not overcome PDP's preliminary showing of obviousness.

### 3. BALANCE OF HARDSHIPS AND PUBLIC INTEREST

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689–90 (2008)). In determining the balance of hardships, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Id. (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)). Here, the Court easily concludes that the balance of hardships tips in PDP's favor. PDP has raised substantial issues as to the validity of the '848 Patent, and the issuance of an injunction would immediately disrupt PDP's business without any assurance that it would aid Nyko by causing Walmart to begin purchasing its charge bases again. The denial of the injunction is also in the public interest in market competition, particularly because Nyko has not shown a likelihood of success on the merits. See Nano-Second Tech. Co., Ltd. v. Dynaflex Intern., No. CV 10–9176 RSWL (MANx), 2011 WL 4502025, at *5 (C.D. Cal. Sept. 28, 2011).

## IV.
## CONCLUSION

Accordingly, the Court **DENIES** Nyko's application for a temporary restraining order.

**LINKS: 9, 32**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-03001 GAF (VBKx) | Date | June 1, 2012 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

This denial is without prejudice to Nyko's ability to move for a preliminary injunction after further development of the record.

    **IT IS SO ORDERED.**