SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations

DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California  92130-2006
Telephone:     858.720.8900
Facsimile:     858.509.3691

STEVEN M. HANLE, Cal. Bar No. 168876
shanle@sheppardmullin.com
650 Town Center Drive, 4th Fl.
Costa Mesa, CA 92626
Telephone:    714.513.5100
Facsimile:    714.513.5130
Attorneys for Defendants,
Performance Designed Products LLC and
Energizer Holdings, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California Corporation,, <br><br>           Plaintiff, <br><br>     v. <br><br> ENERGIZER HOLDINGS, INC., a Missouri Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company, <br><br>           Defendant. | Case No. CV12-03001 <br><br> **ENERGIZER HOLDINGS, INC. AND PERFORMANCE DESIGNED PRODUCTS LLC'S ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT** <br><br> The Hon. Gary A. Feess <br><br> [Complaint Filed:  April 5, 2012] |

## JURISDICTION

1.    Answering paragraph 1 of the Complaint, Performance Designed Products LLC ("PDP") and Energizer Holdings, Inc. ("Energizer") admit that this is an action for patent infringement pursuant to 35 U.S.C. Section 271.  PDP and Energizer further admit that this Court is authorized by 28 U.S.C. Section 1338(a) to exercise jurisdiction over

"any Act of Congress relating to patents…."  Except as so admitted, PDP and Energizer deny each and every allegation of said paragraph.

2.      Answering paragraph 2 of the Complaint, PDP and Energizer admit the allegations of said paragraph.

## PARTIES

3.      Answering paragraph 3 of the Complaint, PDP and Energizer admit the allegations of said paragraph.

4.      Answering paragraph 4 of the Complaint, PDP and Energizer admit the allegations of said paragraph.

5.      Answering paragraph 5 of the Complaint, PDP and Energizer admit the allegations of said paragraph.

## FACTUAL BACKGROUND

6.      Answering the second paragraph "5" of the Complaint, PDP and Energizer lack knowledge or information sufficient to form a belief about the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

7.      Answering paragraph 6 of the Complaint, PDP and Energizer admit that U.S. Patent No. 8,143,848 ("the '848 Patent" or "Patent-in-suit") is entitled "Video Game Controller Charging System Having a Docking Structure," that the '848 Patent states it was issued on March 27, 2012, and that a copy of the '848 Patent appears to be attached as Exhibit A to the Complaint.  PDP and Energizer lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in said paragraph, and on that basis deny the remaining allegations.

8.      Answering paragraph 7 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

9.      Answering paragraph 8 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

## FIRST CLAIM FOR RELIEF

10.     Answering paragraph 9 of the Complaint, PDP and Energizer hereby incorporate by reference their answers to paragraphs 1 through 8.

11.     Answering paragraph 10 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

12.     Answering paragraph 11 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

13.     Answering paragraph 12 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

14.     Answering paragraph 13 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

15.     Answering paragraph 14 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

16.     Answering paragraph 15 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

17.     Answering paragraph 16 of the Complaint, PDP and Energizer deny each and every allegation of said paragraph.

## PRAYER

18.     With respect to Nyko Technologies, Inc.'s ("Nyko") Prayer for relief, PDP and Energizer deny that Nyko is entitled to any relief whatsoever, including without limitation injunctive relief, reasonable royalties, prejudgment interest, costs, or attorneys' fees.

19.     PDP and Energizer deny each and every allegation of the Complaint not expressly admitted hereinabove.

# ADDITIONAL DEFENSES

As additional defenses to the Complaint, PDP and Energizer allege (without assuming any burden of proof with respect thereto that is not assigned to them by operation of law) as follows:

### First Additional Defense:  Failure to State a Cause of Action

20.     The Complaint fails to state a cause of action upon which relief can be granted.

### Second Additional Defense:  Noninfringement

21.     Neither PDP nor Energizer has ever infringed, either directly or indirectly, by inducement or contributorily, any claim of the Patent-in-suit, either literally or under the doctrine of equivalents.

### Third Additional Defense:  Invalidity

22.     Each of the asserted claims of the Patent-in-suit is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

### Fourth Additional Defense:  Prosecution History Estoppel

23.     Based on statements made by the applicant during prosecution of the Patent-in-suit, Nyko is estopped from asserting that PDP or Energizer infringe the Patent-in-suit.

### Fifth Additional Defense:  Additional Equitable Defenses

24.     Any claim for relief pled by the Complaint is barred by one or more of the equitable doctrines of unclean hands, waiver, and/or estoppel.

*Sixth Additional Defense:  No Immediate or Irreparable Injury*

25.     Nyko is not entitled to injunctive relief because any alleged injury to Nyko is not immediate or irreparable, and Nyko would have an adequate remedy at law.

*Seventh Additional Defense:  Statutory Limitations on Damages*

26.     Nyko is barred from recovering damages for any infringement occurring prior to the date on which it filed its Complaint, by 35 U.S.C. §§ 286, 287, and/or 288.

*Eighth Additional Defense:  Inequitable Conduct*

**Summary of Inequitable Conduct Allegations**

27.     The Patent-in-suit is unenforceable because it was procured through inequitable conduct and fraud on the United States Patent and Trademark Office ("PTO").

28.     In particular, Nyko offered for sale and described in printed publications a game controller charger product in January 2007.

29.     The application for the Patent-in-suit was not filed until more than a year later, on March 7, 2008.

30.     Nyko and the sole listed inventor, Amir Navid ("Navid"), admitted in this litigation that the Nyko product that was offered for sale and described in printed publications incorporated "each and every feature of the claimed invention" as of January 2007.  Thus, the asserted claims are invalid pursuant to the on-sale bar and printed publication provisions of 35 U.S.C. § 102(b).

31.     Mr. Navid was working for Nyko in January 2007 and must have known that his invention was on sale by Nyko and described in printed publications as of that time.  However, he never disclosed this to the PTO.

32.     Nyko asserted in this litigation that the asserted claims of the Patent-in-suit read on the accused PDP products, which Nyko alleges include a charger that is configured to directly connect its DC port to the game controller input port.

ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT

33.     During briefing on Nyko's Ex Parte Application for a Temporary Restraining Order, PDP cited U.S. Patent No. 7,942,747 to Cole ("Cole"), as invalidating prior art.  In response, Nyko argued that Cole and its applications only teach an indirect connection between the game controller input port and the DC port of the charger, such that Cole does not disclose the "configured to couple" claim element of the Patent-in-suit.  Accordingly, by Nyko's argument, teachings of an indirect connection are insufficient to teach the type of direct connection they allege is covered by the claims of the Patent-in-suit.

34.     Though the Patent-in-suit claims priority to an earlier filed provisional patent application, the asserted claims are not entitled to the priority date of that provisional application.  This is because, under Nyko and Mr. Navid's asserted interpretation, the claim phrase "configured to couple" must encompass a direct connection between the DC port on the charging base and the game controller.  The provisional application only discloses an indirect connection.  Specifically, the provisional application requires an adapter to connect the DC port of the charging base to the game controller.  Thus, by Nyko's reasoning, the provisional application does not disclose a direct connection between the DC port of the charging base and the power input of the game controller.

35.     By Nyko's own logic, the Navid provisional application does not provide an effective filing date for the Patent-in-suit.  Therefore, the on-sale status and printed publication of the claimed invention invalidate the Patent-in-suit.  Mr. Navid's intentional failure to disclose these barring events to the PTO constitutes inequitable conduct that renders the Patent-in-suit unenforceable.

## The Patent-in-Suit and Its Prosecution History

36.     The application that issued as the Patent-in-suit, U.S. Application No. 12/044,295 ("the '295 Application"), was filed on March 7, 2008, naming Mr. Navid as the sole alleged inventor.

37.     Nyko is asserting claims 1, 2, 5, 7, 8, and 10-12 of the Patent-in-suit against PDP and Energizer.

38.     During the prosecution of the '295 Application, the PTO twice rejected all pending claims as obvious over the prior art.

39.     At no point did Mr. Navid attempt to antedate any of the prior art by swearing behind it with a 37 C.F.R. 1.131 declaration.

## The Claimed Invention Was On Sale By Nyko and Described in
## Printed Publications At Least as Early as January 2007

40.     During this litigation, Mr. Navid submitted a declaration in which he testified that "[t]he product Nyko introduced in January 2007 includes each and every feature of the claimed invention."  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], ¶ 17.)

41.     At the May 29, 2012 hearing in this case, Nyko itself admitted that the Nyko charger was publicly disclosed in January 2007 and "discloses each and every feature of the patented invention."  (May 29, 2012 Hearing Transcript at 10:18-11:4, 15:21-25, 41:16-25.)

42.     In support of his declaration, Mr. Navid submitted as an exhibit a news article published January 9, 2007, showing the Nyko product and listing a suggested retail price of $39.99.  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], Exhibit A.)

43.     The January 9, 2007 article indicates that Nyko offered its charger product for sale at the Consumer Electronics Show in January 2007.  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], Exhibit A.)

44.     Furthermore, Nyko issued a press release on January 8, 2007, announcing that "[t]he Charge Base for PS3 has a suggested retail price of $39.99."  (Docket No. 41-1

1  [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to
2  Application for TRO], Exhibit A).

3      45.     Nyko published its press release on at least its public website by March 6,
4  2007 at the latest.  (Docket No. 41-2 [Supplemental Declaration of Steven M. Hanle in
5  Support of Defendants' Opposition to Application for TRO], Exhibit B).

6      46.     On information and belief, Nyko published its January 8, 2007 press release
7  on its website on or before January 8, 2007.

8
9      **The On-Sale Status and Printed Publications of the Claimed Invention Were**
10                             **Material**

11     47.     Mr. Navid's statement in his declaration and the supporting exhibit, as well
12  as the Nyko press release, show that a product including "each and every feature of the
13  claimed invention" was on sale in the United States no later than January 9, 2007.

14     48.     The claimed invention was thus on sale more than one year before the filing
15  date of the '295 Application.

16     49.     The on-sale status of the claimed invention was material to the patentability
17  of the subject matter claimed by the Patent-in-suit.

18     50.     The on-sale status of the product embodying the claimed invention
19  constitutes an on-sale bar under 35 U.S.C. § 102(b) that renders the asserted claims
20  unpatentable.

21     51.     Mr. Navid did not disclose to the PTO Examiner that the claimed invention
22  was on sale by at least January 8, 2007.

23     52.     Mr. Navid did not disclose the January 8, 2007 press release to the PTO
24  Examiner.

25     53.     The January 8, 2007 press release was a printed publication that invalidates
26  the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus
27  material to the patentability of the subject matter claimed by the Patent-in-suit.

28     54.     Mr. Navid did not disclose the January 9, 2007 article to the PTO Examiner.

55. The January 9, 2007 article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

56. The on-sale status and printed publications of the product that Mr. Navid believes includes "each and every feature of the claimed invention" shall hereafter be referred to as the "barring events."

57. But for Mr. Navid failing to disclose the barring events, the Patent-in-suit would not have issued with the asserted claims.

58. Regardless of whether Mr. Navid's failure to disclose the barring events was a "but for" cause of the patent issuing, his failure to disclose them constitutes egregious misconduct.

## The Asserted Claims of the Patent-in-Suit Are Not Entitled to the Priority Date of the Provisional Application

59. The '295 Application claims priority to U.S. provisional patent application No. 60/982,364 ("the Navid Provisional Application"), which was filed on October 24, 2007, naming Mr. Navid as the sole alleged inventor.

60. The sole asserted independent claim of the Patent-in-suit – claim 1 – recites:

A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

-9-

wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking hays [*sic*] each of the DC ports being on the base between a respective one of the pairs of surfaces.

61.     The claim thus requires that each of the DC ports are "configured to couple to" a power input port of a respective video game controller.

62.     The Navid Provisional Application only discloses and claims a charging system requiring the use of adapters to make the connection between the DC ports of the base and the input ports of the video game controllers.

63.     The Navid Provisional Application does not disclose or claim a charging system that uses an adapterless or otherwise direct connection between the DC ports of the base and the input ports of the video game controllers.

64.     During the briefing on Nyko's Ex Parte Application for a Temporary Restraining Order ("TRO briefing"), PDP and Energizer cited U.S. Patent No. 7,942,747 to Cole ("Cole"), filed on November 1, 2007, as anticipating and/or rendering obvious the asserted claims of the Patent-in-suit.

65.     Cole claims priority as a continuation-in-part of application No. PCT/US2006/016944, filed on May 3, 2006.

66.     In its TRO briefing, Nyko and Mr. Navid argued that Cole is not prior art.  In particular, Nyko argued that the "Cole PCT does not provide an enabling written description of the feature of 'a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,' as recited in claim 1."  (Docket No. 25 [Reply] at 4.)

67.     Mr. Navid submitted a declaration in which he agreed with and espoused Nyko's position.  (Docket No. 44.)

68.     In particular, Mr. Navid provided testimony that "Cole, U.S. Patent 7,942,747 … is not prior art to my invention as my October 24, 2007 priority date predates

ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT

1   Cole's filing date of November 1, 2007."  (Docket No. 44 [Third Declaration of Amir

2   Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order

3   and (2) Order to Show Case re:  Preliminary Injunction].)

4          69.     Nyko and Mr. Navid contended that the phrase "configured to couple to"

5   requires direct connection.  (May 29, 2012 Hearing Transcript at 40:20-41:1 ("And here

6   the word 'coupled to' is used in the mechanical context, and the – when reading the

7   specification of the Navid patent, it's clear from all of the drawings and everything in this

8   that this is a direct connection to the power input port…."").)

9          70.     Thus, Nyko and Mr. Navid claimed that Cole did not satisfy the "configured

10  to couple to" limitation because Cole only disclosed an indirect connection – a cable

11  connecting the controller power input and the DC port on the charger.  (May 29, 2012

12  Hearing Transcript at 19:12-19, 39:21-40:12.)

13         71.     If Nyko and Mr. Navid's argument were adopted, then the Navid Provisional

14  Application, which discloses only an indirect connection (through an adapter) would not

15  support the asserted claims, which Nyko and Mr. Navid contend require a direct

16  connection.

17         72.     Thus, according to Nyko and Mr. Navid's claim construction position and

18  their argument regarding the teachings of the prior art, the asserted claims are not entitled

19  to the priority date of the Navid Provisional Application.

20         73.     Rather, the priority date for the asserted claims is the filing date of the '295

21  Application – March 7, 2008.

22  
    **<u>Mr. Navid Knew the Barring Events Were Material to Patentability</u>**

23  

24         74.     Mr. Navid claims to be the Vice President of Research and Development for

25  Nyko.

26         75.     Mr. Navid claims to have 15 years of experience in designing and

27  developing video game accessories.

28

76.     Mr. Navid claims that he has designed various controllers and interfaces for every major video game console since 1997.

77.     Mr. Navid also claims that he is a named inventor on several patents directed to gaming accessories.

78.     Mr. Navid is the listed inventor on ten issued United States patents.

79.     Mr. Navid further claims that he has extensive experience in the design, development, and operation of video game accessories.

80.     Mr. Navid is familiar with the Patent-in-suit, including its descriptions of and claims to a charging system for a hand-held video game controller.

81.     On information and belief, Mr. Navid was aware during the prosecution of the '295 Application that the barring events occurred.  This allegation is based on at least the allegations in paragraphs 82 to 90 directly below:

82.     The information alleged in paragraphs 27 through 80.

83.     Mr. Navid admits to holding an executive position at Nyko.

84.     Mr. Navid admits that he has many years of experience in designing and developing video game accessories, and would have been aware of substantial developments in the industry.

85.     Mr. Navid is the sole listed inventor of the Patent-in-suit.

86.     Mr. Navid is admittedly familiar with the Patent-in-suit.

87.     The on-sale status of Nyko's charger was widely publicized, including at trade shows and on Nyko's web site in January 2007.

88.     The Nyko charger was "widely announced" at the January 2007 Consumer Electronics Show.  (May 29, 2012 Hearing Transcript at 10:24-11:4.)

89.     On information and belief, Mr. Navid attended the 2007 Consumer Electronics Show and saw the Nyko charger there.

90.     Upon information and belief, further information evidencing Mr. Navid's awareness of the barring events is within the exclusive possession of Mr. Navid, Nyko, and the law firm of Christie, Parker & Hale, LLP.

91.     On information and belief, Mr. Navid was aware that the barring events were material.  This allegation is based on at least the allegations in paragraphs 92 to 100 directly below.

92.     The information alleged in paragraphs 27 through 90.

93.     Mr. Navid admits to holding an executive position at Nyko.

94.     Mr. Navid admits that he has many years of experience in designing and developing video game accessories.

95.     Mr. Navid is the sole listed inventor of the Patent-in-suit.

96.     Mr. Navid is admittedly familiar with the Patent-in-suit.

97.     Mr. Navid admitted that the Nyko charger offered for sale and published in January 2007 "includes each and every feature of the claimed invention."

98.     Mr. Navid was familiar with the Navid Provisional Application.

99.     Upon information and belief, further information evidencing Mr. Navid's awareness of the materiality of barring events is within the exclusive possession of Mr. Navid, Nyko, and the law firm of Christie, Parker & Hale, LLP.

100.    The information alleged in paragraphs 27 through 73 was not cumulative to information made of record during the prosecution of the '295 Application.

## Mr. Navid Intended to Deceive and Mislead the PTO

101.    Upon information and belief, Mr. Navid failed to disclose the barring events to the PTO with the intent to deceive and mislead the Examiner of the '295 Application. This allegation is based on at least the following allegations in paragraphs 102 to 111 directly below.

102.    The allegations in paragraphs 27 to 100;

103.    The entirety of the claimed invention was admittedly actually offered for sale in the U.S. and otherwise publicized.

104.    Mr. Navid did not attempt to use the on-sale status of the claimed invention to swear behind the prior art made of record during the prosecution of the '295

Application, despite the fact that Nyko claimed during the TRO briefing that Mr. Navid could have.

105.    Mr. Navid was admittedly familiar with the Patent-in-suit.

106.    Mr. Navid was familiar with the Navid Provisional Application.

107.    Mr. Navid admits that he has a high level of experience with the U.S. patent system.

108.    Mr. Navid admits he had a high level of industry experience and anticipated that there would be a number of competitors in the marketplace.

109.    The on-sale status of the claimed invention was highly material.

110.    Other claims of the Patent-in-suit, which are not asserted in this litigation, are directed to the use of adapters to connect the DC ports on the base with the power input ports of the controllers.

111.    Upon information and belief, further information evidencing Mr. Navid's intent to deceive is within the exclusive possession of Mr. Navid, Nyko, and the law firm of Christie, Parker & Hale, LLP.

## COUNTERCLAIMS

PDP and Energizer counterclaim against Nyko as follows:

## PARTIES

112.    PDP is a California Limited Liability Corporation having a principal place of business at 14144 Ventura Boulevard, Suite 200, Sherman Oaks, California 91423.

113.    Energizer is a Missouri Corporation having a principal place of business at 533 Maryville University Drive, St. Louis, Missouri 63141.

114.    On information and belief, Nyko is a California Corporation with a principal place of business at 1990 Westwood Boulevard, Penthouse Suite, Los Angeles, California 90025.

CV12-03001                                          ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT

## JURISDICTION AND VENUE

115.   By this Counterclaim, PDP and Energizer seek declarations pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, of rights and obligations governed by the patent laws of the United States, comprising Title 35 of the United States Code.

116.   This Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, 2202, and 1367.

117.   The claims for relief set forth in this Counterclaim are so related to any claims pleaded by Nyko in its Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

118.   By commencing this action in this Court, Nyko has consented to this Court's exercise of personal jurisdiction over it.

119.   By reason of the commencement of this action, there exists an actual and justiciable controversy between Nyko on the one hand, and PDP and Energizer on the other, relative to the infringement, validity, and enforceability of the Patent-in-suit.

## COUNT I

### (Declaratory Judgment of Noninfringement)

120.   PDP and Energizer restate, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 111 of the Answer as if fully set forth herein.

121.   Neither PDP nor Energizer has infringed, contributed to infringement by others of, or induced infringement by others of any valid and enforceable claim of the Patent-in-suit, either literally or under the doctrine of equivalents.

122.   By reason of the foregoing, PDP and Energizer are entitled to a declaration of this Court, which shall have the force and effect of a final judgment or decree, that they have not infringed and do not infringe the Patent-in-suit.

## COUNT II

### (Declaratory Judgment of Invalidity)

123.    PDP and Energizer restate, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 111 of the Answer as if fully set forth herein.

124.    The Patent-in-suit is invalid for failing to satisfy one or more of the conditions of patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112.

125.    By reason of the foregoing, PDP and Energizer are entitled to a declaration of this Court, which shall have the force and effect of a final judgment or decree, that the claims of the Patent-in-suit are invalid.

## COUNT III

### (Declaratory Judgment of Unenforceability)
### Summary of Inequitable Conduct Allegations

126.    The Patent-in-suit is unenforceable because it was procured through inequitable conduct and fraud on the United States Patent and Trademark Office ("PTO").

127.    In particular, Nyko offered for sale and described in printed publications a game controller charger product in January 2007.

128.    The application for the Patent-in-suit was not filed until more than a year later, on March 7, 2008.

129.    Nyko and the sole listed inventor, Amir Navid ("Navid"), admitted in this litigation that the Nyko product that was offered for sale and described in printed publications incorporated "each and every feature of the claimed invention" as of January 2007.  Thus, the asserted claims are invalid pursuant to the on-sale bar and printed publication provisions of 35 U.S.C. § 102(b).

130.    Mr. Navid was working for Nyko in January 2007 and must have known that his invention was on sale by Nyko and described in printed publications as of that time. However, he never disclosed this to the PTO.

ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT

131.    Nyko asserted in this litigation that the asserted claims of the Patent-in-suit read on the accused PDP products, which Nyko alleges include a charger that is configured to directly connect its DC port to the game controller input port.

132.    During briefing on Nyko's Ex Parte Application for a Temporary Restraining Order, PDP cited U.S. Patent No. 7,942,747 to Cole ("Cole"), as invalidating prior art.  In response, Nyko argued that Cole and its applications only teach an indirect connection between the game controller input port and the DC port of the charger, such that Cole does not disclose the "configured to couple" claim element of the Patent-in-suit.  Accordingly, by Nyko's argument, teachings of an indirect connection are insufficient to teach the type of direct connection they allege is covered by the claims of the Patent-in-suit.

133.    Though the Patent-in-suit claims priority to an earlier filed provisional patent application, the asserted claims are not entitled to the priority date of that provisional application.  This is because, under Nyko and Mr. Navid's asserted interpretation, the claim phrase "configured to couple" must encompass a direct connection between the DC port on the charging base and the game controller.  The provisional application only discloses an indirect coupling.  Specifically, the provisional application requires an adapter to connect the DC port of the charging base to the game controller.  Thus, by Nyko's reasoning, the provisional application does not disclose a direct connection between the DC port of the charging base and the power input of the game controller.

134.    By Nyko's own logic, the Navid provisional application does not provide an effective filing date for the Patent-in-suit.  Therefore, the on-sale status and printed publication of the claimed invention invalidate the Patent-in-suit.  Mr. Navid's intentional failure to disclose these barring events to the PTO constitutes inequitable conduct that renders the Patent-in-suit unenforceable.

### The Patent-in-Suit and Its Prosecution History

135.    The application that issued as the Patent-in-suit, U.S. Application No. 12/044,295 ("the '295 Application"), was filed on March 7, 2008, naming Mr. Navid as

the sole alleged inventor.

136.    Nyko is asserting claims 1, 2, 5, 7, 8, and 10-12 of the Patent-in-suit against PDP and Energizer.

137.    During the prosecution of the '295 Application, the PTO twice rejected all pending claims as obvious over the prior art.

138.    At no point did Mr. Navid attempt to antedate any of the prior art by swearing behind it with a 37 C.F.R. 1.131 declaration.

## The Claimed Invention Was On Sale By Nyko and Described in Printed Publications At Least as Early as January 2007

139.    During this litigation, Mr. Navid submitted a declaration in which he testified that "[t]he product Nyko introduced in January 2007 includes each and every feature of the claimed invention."  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], ¶ 17.)

140.    At the May 29, 2012 hearing in this case, Nyko itself admitted that the Nyko charger was publicly disclosed in January 2007 and "discloses each and every feature of the patented invention."  (May 29, 2012 Hearing Transcript at 10:18-11:4, 15:21-25, 41:16-25.)

141.    In support of his declaration, Mr. Navid submitted as an exhibit a news article published January 9, 2007, showing the Nyko product and listing a suggested retail price of $39.99.  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], Exhibit A.)

142.    The January 9, 2007 article indicates that Nyko offered its charger product for sale at the Consumer Electronics Show in January 2007.  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1)

-18-

1  Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction],
2  Exhibit A.)

3      143.    Furthermore, Nyko issued a press release on January 8, 2007, announcing
4  that "[t]he Charge Base for PS3 has a suggested retail price of $39.99."  (Docket No. 41-1
5  [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to
6  Application for TRO], Exhibit A).

7      144.    Nyko published its press release on at least its public website by March 6,
8  2007 at the latest.  (Docket No. 41-2 [Supplemental Declaration of Steven M. Hanle in
9  Support of Defendants' Opposition to Application for TRO], Exhibit B).

10     145.    On information and belief, Nyko published its January 8, 2007 press release
11 on its website on or before January 8, 2007.

12
13          **The On-Sale Status and Printed Publications of the Claimed**
            **Invention Were Material**
14

15     146.    Mr. Navid's statement in his declaration and the supporting exhibit, as well
16 as the Nyko press release, show that a product including "each and every feature of the
17 claimed invention" was on sale in the United States no later than January 9, 2007.

18     147.    The claimed invention was thus on sale more than one year before the filing
19 date of the '295 Application.

20     148.    The on-sale status of the claimed invention was material to the patentability
21 of the subject matter claimed by the Patent-in-suit.

22     149.    The on-sale status of the product embodying the claimed invention
23 constitutes an on-sale bar under 35 U.S.C. § 102(b) that renders the asserted claims
24 unpatentable.

25     150.    Mr. Navid did not disclose to the PTO Examiner that the claimed invention
26 was on sale by at least January 8, 2007.

27     151.    Mr. Navid did not disclose the January 8, 2007 press release to the PTO
28 Examiner.

152.    The January 8, 2007 press release was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

153.    Mr. Navid did not disclose the January 9, 2007 article to the PTO Examiner.

154.    The January 9, 2007 article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

155.    The on-sale status and printed publications of the product that Mr. Navid believes includes "each and every feature of the claimed invention" shall hereafter be referred to as the "barring events."

156.    But for Mr. Navid failing to disclose the barring events, the Patent-in-suit would not have issued with the asserted claims.

157.    Regardless of whether Mr. Navid's failure to disclose the barring events was a "but for" cause of the patent issuing, his failure to disclose them constitutes egregious misconduct.

## The Asserted Claims of the Patent-in-Suit Are Not Entitled to the Priority Date of the Provisional Application

158.    The '295 Application claims priority to U.S. provisional patent application No. 60/982,364 ("the Navid Provisional Application"), which was filed on October 24, 2007, naming Mr. Navid as the sole alleged inventor.

159.    The sole asserted independent claim of the Patent-in-suit – claim 1 – recites:

> A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:
>
> a base;
>
> at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking hays [*sic*] each of the DC ports being on the base between a respective one of the pairs of surfaces.

160.    The claim thus requires that each of the DC ports are "configured to couple to" a power input port of a respective video game controller.

161.    The Navid Provisional Application only discloses and claims a charging system requiring the use of adapters to make the connection between the DC ports of the base and the input ports of the video game controllers.

162.    The Navid Provisional Application does not disclose or claim a charging system that uses an adapterless or otherwise direct connection between the DC ports of the base and the input ports of the video game controllers.

163.    During the briefing on Nyko's Ex Parte Application for a Temporary Restraining Order ("TRO briefing"), PDP and Energizer cited U.S. Patent No. 7,942,747 to Cole ("Cole"), filed on November 1, 2007, as anticipating and/or rendering obvious the asserted claims of the Patent-in-suit.

164.    Cole claims priority as a continuation-in-part of application No. PCT/US2006/016944, filed on May 3, 2006.

165.    In its TRO briefing, Nyko and Mr. Navid argued that Cole is not prior art. In particular, Nyko argued that the "Cole PCT does not provide an enabling written description of the feature of 'a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of

the plurality of video game controllers,' as recited in claim 1."  (Docket No. 25 [Reply] at 4.)

166.    Mr. Navid submitted a declaration in which he agreed with and espoused Nyko's position.  (Docket No. 44.)

167.    In particular, Mr. Navid provided testimony that "Cole, U.S. Patent 7,942,747 … is not prior art to my invention as my October 24, 2007 priority date predates Cole's filing date of November 1, 2007."  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Case re:  Preliminary Injunction].)

168.    Nyko and Mr. Navid contended that the phrase "configured to couple to" requires direct connection.  (May 29, 2012 Hearing Transcript at 40:20-41:1 ("And here the word 'coupled to' is used in the mechanical context, and the – when reading the specification of the Navid patent, it's clear from all of the drawings and everything in this that this is a direct connection to the power input port….").)

169.    Thus, Nyko and Mr. Navid claimed that Cole did not satisfy the "configured to couple to" limitation because Cole only disclosed an indirect connection – a cable connecting the controller power input and the DC port on the charger.  (May 29, 2012 Hearing Transcript at 19:12-19, 39:21-40:12.)

170.    If Nyko and Mr. Navid's argument were adopted, then the Navid Provisional Application, which discloses only an indirect connection (through an adapter) would not support the asserted claims, which Nyko and Mr. Navid contend require a direct connection.

171.    Thus, according to Nyko and Mr. Navid's claim construction position and their argument regarding the teachings of the prior art, the asserted claims are not entitled to the priority date of the Navid Provisional Application.

172.    Rather, the priority date for the asserted claims is the filing date of the '295 Application – March 7, 2008.

-22-

ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT

## Mr. Navid Knew the Barring Events Were Material to Patentability

173.    Mr. Navid claims to be the Vice President of Research and Development for Nyko.

174.    Mr. Navid claims to have 15 years of experience in designing and developing video game accessories.

175.    Mr. Navid claims that he has designed various controllers and interfaces for every major video game console since 1997.

176.    Mr. Navid also claims that he is a named inventor on several patents directed to gaming accessories.

177.    Mr. Navid is the listed inventor on ten issued United States patents.

178.    Mr. Navid further claims that he has extensive experience in the design, development, and operation of video game accessories.

179.    Mr. Navid is familiar with the Patent-in-suit, including its descriptions of and claims to a charging system for a hand-held video game controller.

180.    On information and belief, Mr. Navid was aware during the prosecution of the '295 Application that the barring events occurred.  This allegation is based on at least the allegations in paragraphs 181 to 189 directly below:

181.    The information alleged in paragraphs 126 through 179.

182.    Mr. Navid admits to holding an executive position at Nyko.

183.    Mr. Navid admits that he has many years of experience in designing and developing video game accessories, and would have been aware of substantial developments in the industry.

184.    Mr. Navid is the sole listed inventor of the Patent-in-suit.

185.    Mr. Navid is admittedly familiar with the Patent-in-suit.

186.    The on-sale status of Nyko's charger was widely publicized, including at trade shows and on Nyko's web site in January 2007.

187.    The Nyko charger was "widely announced" at the January 2007 Consumer Electronics Show.  (May 29, 2012 Hearing Transcript at 10:24-11:4.)

188.    On information and belief, Mr. Navid attended the 2007 Consumer Electronics Show and saw the Nyko charger there.

189.    Upon information and belief, further information evidencing Mr. Navid's awareness of the barring events is within the exclusive possession of Mr. Navid, Nyko, and the law firm of Christie, Parker & Hale, LLP.

190.    On information and belief, Mr. Navid was aware that the barring events were material.  This allegation is based on at least the allegations in paragraphs 191 to 198 directly below.

191.    The information alleged in paragraphs 126 through 189.

192.    Mr. Navid admits to holding an executive position at Nyko.

193.    Mr. Navid admits that he has many years of experience in designing and developing video game accessories.

194.    Mr. Navid is the sole listed inventor of the Patent-in-suit.

195.    Mr. Navid is admittedly familiar with the Patent-in-suit.

196.    Mr. Navid admitted the Nyko charger offered for sale and published in January 2007 "includes each and every feature of the claimed invention."

197.    Mr. Navid was familiar with the Navid Provisional Application.

198.    Upon information and belief, further information evidencing Mr. Navid's awareness of the materiality of barring events is within the exclusive possession of Mr. Navid, Nyko, and the law firm of Christie, Parker & Hale, LLP.

199.    The information alleged in paragraphs 126 through 172 was not cumulative to information made of record during the prosecution of the '295 Application.

**Mr. Navid Intended to Deceive and Mislead the PTO**

200.    Upon information and belief, Mr. Navid failed to disclose the barring events to the PTO with the intent to deceive and mislead the Examiner of the '295 Application. This allegation is based on at least the following allegations in paragraphs 201 to 210 directly below.

ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT

201. The allegations in paragraphs 126 to 199;

202. The entirety of the claimed invention was admittedly actually offered for sale in the U.S. and otherwise publicized.

203. Mr. Navid did not attempt to use the on-sale status of the claimed invention to swear behind the prior art made of record during the prosecution of the '295 Application, despite the fact that Nyko claimed during the TRO briefing that Mr. Navid could have.

204. Mr. Navid was admittedly familiar with the Patent-in-suit.

205. Mr. Navid was familiar with the Navid Provisional Application.

206. Mr. Navid admits that he has a high level of experience with the U.S. patent system.

207. Mr. Navid admits he had a high level of industry experience and anticipated that there would be a number of competitors in the marketplace.

208. The on-sale status of the claimed invention was highly material.

209. Other claims of the Patent-in-suit, which are not asserted in this litigation, are directed to the use of adapters to connect the DC ports on the base with the power input ports of the controllers.

210. Upon information and belief, further information evidencing Mr. Navid's intent to deceive is within the exclusive possession of Mr. Navid, Nyko, and the law firm of Christie, Parker & Hale, LLP.

## PRAYER FOR RELIEF

WHEREFORE, PDP and Energizer pray:

A. That Nyko's Complaint be dismissed with prejudice and that Nyko take nothing by way of its Complaint;

B. For a declaration that they have not infringed and are not infringing the Patent-in-suit;

C.     For a declaration that the claims of the Patent-in-suit are invalid;

D.     For a declaration that the Patent-in-suit is unenforceable;

E.     That this Court enter an order preliminarily and permanently enjoining Nyko, its officers, directors, servants, managers, employees, agents, successors, and assignees, and all persons in active concert or participation with any of them, from directly or indirectly charging PDP or Energizer with infringement of any claim of the Patent-in-suit;

F.     That this be declared an exceptional case pursuant to 35 U.S.C. § 285, and that PDP and Energizer be awarded all of their attorneys' fees, costs, and expenses incurred in this action; and

G.     For such other and future relief as the Court deems just and proper.

## JURY DEMAND

PDP and Energizer demand TRIAL BY JURY of any and all causes and issues, whether pleaded hereinabove, in the Complaint, or elsewhere, that are so triable.

Dated:  June 15, 2012

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/Daniel Y. Yannuzzi

DANIEL Y. YANNUZZI
STEVEN M. HANLE
GRAHAM (GRAY) M. BUCCIGROSS
Attorneys for Defendants,
Performance Designed Products LLC and
Energizer Holdings, Inc.

1
2
## CERTIFICATE OF SERVICE

3       The undersigned hereby certifies that a true and correct copy of the above and

4   foregoing document has been served on June 15, 2012 to all counsel of record who are

5   deemed to have consented to electronic service via the Court's CM/ECF system per Civil

6   Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile

7   and/or overnight delivery.

8
9
10
                                     By   s/ Daniel Yannuzzi
                                          DANIEL N. YANNUZZI
11                                        Attorneys for Defendants,
                                          Performance Designed Products LLC
12                                        and Energizer Holdings, Inc.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i