SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations

DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
MATTHEW M. MUELLER, Cal. Bar No. 268486
mmueller@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California  92130-2006
Telephone:    858.720.8900
Facsimile:     858.509.3691

STEVEN M. HANLE, Cal. Bar No. 168876
shanle@sheppardmullin.com
650 Town Center Drive, 4th Fl.
Costa Mesa, CA 92626
Telephone:    714.513.5100
Facsimile:     714.513.5130
Attorneys for Defendants,
Performance Designed Products LLC,
Eveready Battery Company, Inc., and
Energizer Holdings, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California Corporation,, | Case No. CV12-03001-GAF-VBK |
| Plaintiff, | **ENERGIZER HOLDINGS, INC., EVEREADY BATTERY COMPANY, INC.,  AND PERFORMANCE DESIGNED PRODUCTS LLC'S ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| ENERGIZER HOLDINGS, INC., a Missouri Corporation, EVEREADY BATTERY COMPANY, INC., a Delaware Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company, | The Hon. Gary A. Feess |
| | [Amended Complaint Filed:  December 14, 2012] |
| Defendants. | |

SMRH:407739423.3

## JURISDICTION

1.      Answering paragraph 1 of the Amended Complaint, Performance Designed Products LLC ("PDP"), Eveready Battery Company, Inc. ("EBC"), and Energizer Holdings, Inc. ("Energizer") (collectively, "Defendants") admit that this is an action for patent infringement pursuant to 35 U.S.C. Section 271.  Defendants further admit that this Court is authorized by 28 U.S.C. Section 1338(a) to exercise jurisdiction over "any Act of Congress relating to patents…."  Except as so admitted, Defendants deny each and every allegation of said paragraph.

2.      Answering paragraph 2 of the Amended Complaint, Defendants admit the allegations of said paragraph.

## PARTIES

3.      Answering paragraph 3 of the Amended Complaint, Defendants admit the allegations of said paragraph.

4.      Answering paragraph 4 of the Amended Complaint, Defendants admit the allegations of said paragraph.

5.      Answering paragraph 5 of the Amended Complaint, Defendants admit the allegations of said paragraph.

6.      Answering paragraph 6 of the Amended Complaint, Defendants admit the allegations of said paragraph.

## FACTUAL BACKGROUND

7.      Answering paragraph 7 of the Amended Complaint, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in said paragraph, and on that basis deny each and every allegation contained therein.

8. Answering paragraph 8 of the Amended Complaint, Defendants admit that U.S. Patent No. 8,143,848 ("the '848 Patent" or "Patent-in-suit") is entitled "Video Game Controller Charging System Having a Docking Structure," that the '848 Patent states it was issued on March 27, 2012, and that a copy of the '848 Patent appears to be attached as Exhibit A to the Amended Complaint.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in said paragraph, and on that basis deny the remaining allegations.

9. Answering paragraph 9 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

10. Answering paragraph 10 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

## FIRST CLAIM FOR RELIEF

11. Answering paragraph 11 of the Amended Complaint, Defendants hereby incorporate by reference their answers to paragraphs 1 through 10.

12. Answering paragraph 12 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

13. Answering paragraph 13 of the Amended Complaint, Defendants admit they have knowledge of the '848 Patent.  Defendants deny every other allegation of said paragraph.

14. Answering paragraph 14 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

15. Answering paragraph 15 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

16. Answering paragraph 16 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

17. Answering paragraph 17 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

18.     Answering paragraph 18 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

19.     Answering paragraph 19 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

20.     Answering paragraph 20 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

21.     Answering paragraph 21 of the Amended Complaint, Defendants deny each and every allegation of said paragraph.

## PRAYER

22.     With respect to Nyko Technologies, Inc.'s ("Nyko") Prayer for relief, Defendants deny that Nyko is entitled to any relief whatsoever, including without limitation injunctive relief, reasonable royalties, prejudgment interest, costs, or attorneys' fees.

23.     Defendants deny each and every allegation of the Amended Complaint not expressly admitted hereinabove.

## ADDITIONAL DEFENSES

As additional defenses to the Amended Complaint, Defendants allege (without assuming any burden of proof with respect thereto that is not assigned to them by operation of law) as follows:

### *First Additional Defense:  Failure to State a Cause of Action*

24.     The Amended Complaint fails to state a cause of action upon which relief can be granted.

### Second Additional Defense:  Noninfringement

25.     None of the Defendants have ever infringed, either directly or indirectly, by inducement or contributorily, any claim of the Patent-in-suit, either literally or under the doctrine of equivalents.

### Third Additional Defense:  Invalidity

26.     Each of the asserted claims of the Patent-in-suit is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

### Fourth Additional Defense:  Prosecution History Estoppel

27.     Based on statements made by the applicant during prosecution of the Patent-in-suit, Nyko is estopped from asserting that Defendants infringe the Patent-in-suit.

### Fifth Additional Defense:  Additional Equitable Defenses

28.     Any claim for relief pled by the Amended Complaint is barred by one or more of the equitable doctrines of unclean hands, waiver, and/or estoppel.

### Sixth Additional Defense:  No Immediate or Irreparable Injury

29.     Nyko is not entitled to injunctive relief because any alleged injury to Nyko is not immediate or irreparable, and Nyko would have an adequate remedy at law.

### Seventh Additional Defense:  Statutory Limitations on Damages

30.     Nyko is barred from recovering damages for any infringement occurring prior to the date on which it filed its Complaint, by 35 U.S.C. §§ 286, 287, and/or 288.

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

*Eighth Additional Defense:  Inequitable Conduct*

<u>Summary of Inequitable Conduct Allegations</u>

31.     The Patent-in-suit is unenforceable because it was procured through inequitable conduct and fraud on the United States Patent and Trademark Office ("PTO").

32.     In particular, Nyko offered for sale, publicly used, and described in printed publications a game controller charger product incorporating all of the features of the asserted patent claims in January 2007.  Third parties also publicly used and described the product in printed publications in January 2007.

33.     The application for the Patent-in-suit was not filed until more than a year later, on March 7, 2008.

34.     Nyko and the sole listed inventor, Amir Navid ("Navid"), admitted in this litigation that the Nyko product that was offered for sale, publicly used, and described in printed publications incorporated "each and every feature of the claimed invention" as of January 2007.  Thus, the asserted claims are invalid pursuant to the on-sale, public use, and printed publication barring provisions of 35 U.S.C. § 102(b).

35.     Mr. Navid was working for Nyko in January 2007 and must have known that his invention was on sale by Nyko, in public use, and described in printed publications as of that time.  However, he never disclosed this to the PTO.

36.     Nyko asserted in this litigation that the asserted claims of the Patent-in-suit read on the accused PDP products, which Nyko alleges include a charger that is configured to directly connect its DC port to the game controller input port.

37.     During briefing on Nyko's Ex Parte Application for a Temporary Restraining Order, PDP cited U.S. Patent No. 7,942,747 to Cole ("Cole"), as invalidating prior art.  In response, Nyko argued that Cole and its applications only teach an indirect connection between the game controller input port and the DC port of the charger, such that Cole does not disclose the "configured to couple" claim element of the Patent-in-suit.  Accordingly,

1  by Nyko's argument, teachings of an indirect connection are insufficient to teach the type

2  of direct connection that Nyko alleges is covered by the claims of the Patent-in-suit.

3       38.    Though the Patent-in-suit claims priority to an earlier filed provisional patent

4  application, the asserted claims are not entitled to the priority date of that provisional

5  application.  This is because the provisional application does not disclose a plurality of DC

6  ports on the base, but rather places the DC ports on adapters.  According to the plain

7  meaning of the claim terms and Nyko's own position, the claims of the issued patent are

8  broad enough to cover both a direct and indirect connection between the DC ports of the

9  charging system and the power input ports of the wireless controllers.  Because the

10  provisional application only discloses an indirect connection through an adapter, the

11  broader claims of the issued patent are not entitled to the priority date of the provisional

12  application.

13       39.    Thus, by Nyko's own logic, the Navid provisional application does not

14  provide an effective filing date for the Patent-in-suit.

15       40.    Regardless of Nyko's contentions, the Navid provisional does not provide an

16  effective filing date for asserted claims of the Patent-in-suit because the provisional

17  application requires an adapter to connect the charging base to the game controller.

18       41.    Therefore, the on-sale status, public use status, and printed publications of

19  the claimed invention invalidate the Patent-in-suit.  Mr. Navid's intentional failure to

20  disclose these barring events to the PTO constitutes inequitable conduct that renders the

21  Patent-in-suit unenforceable.

22  **The Patent-in-Suit and Its Prosecution History**

23

24       42.    The application that issued as the Patent-in-suit, U.S. Application No.

25  12/044,295 ("the '295 Application"), was filed on March 7, 2008, naming Mr. Navid as

26  the sole alleged inventor.

27       43.    Nyko is asserting claims 1-5, 7, 8, 10-13, and 15-17 of the Patent-in-suit

28  against PDP, EBC, and Energizer.

44.     During the prosecution of the '295 Application, the PTO twice rejected all pending claims as obvious over the prior art.

45.     At no point did Mr. Navid attempt to antedate any of the prior art by swearing behind it with a 37 C.F.R. 1.131 declaration.

## The Claimed Invention Was On Sale By Nyko, in Public Use, and Described in Printed Publications At Least as Early as January 2007

46.     During this litigation, Mr. Navid submitted a declaration in which he testified that "[t]he product Nyko introduced in January 2007 includes each and every feature of the claimed invention."  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], ¶ 17.)

47.     This product shall hereinafter be referred to as "the charger" or "the Nyko charger."

48.     At the May 29, 2012 hearing in this case, Nyko itself admitted that the Nyko charger was publicly disclosed in January 2007 and "discloses each and every feature of the patented invention."  In fact, Nyko publicly disclosed a charger in January 2007 that embodied all asserted claims of the Patent-in-suit.  (May 29, 2012 Hearing Transcript at 10:18-11:4, 15:21-25, 41:16-25.)

49.     In support of his declaration, Mr. Navid submitted as an exhibit a news article by Gerry Block published January 9, 2007, showing the Nyko charger and listing a suggested retail price of $39.99.  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], Exhibit A.)

50.     The January 9, 2007 article by Gerry Block indicates that Nyko offered its charger for sale in January 2007.  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], Exhibit A.)

51.     During this litigation, Nyko has produced a "Customer Sales Inventory Analysis Report" and other documents showing sales and/or offers for sale of the charger as early as January 8, 2007, and a number of such sales and/or offers for sale prior to March 7, 2007. (Nyko Customer Sales Analysis Report, NT001123-NT001139).

52.     The Customer Sales Inventory Analysis Report shows that Nyko offered its charger for sale in January 2007.  (Nyko Customer Sales Analysis Report, NT001123-NT001139).

53.     The Customer Sales Inventory Analysis Report shows a number of purchase orders and sales invoices for the Nyko charger prior to March 7, 2007, more than one year before the filing date of the '295 application.  (Nyko Customer Sales Analysis Report, NT001123-NT001139).

54.     The Customer Sales Inventory Analysis Report also shows that Nyko later filled at least some of these purchase orders.

55.     In addition, Nyko admitted during this litigation that it showed its charger to third parties in its hotel suite in Las Vegas during the Consumer Electronics Show in January 2007. (Nyko Technologies, Inc.'s Amended Supplemental Response to Performance Designed Products LLC's Interrogatory Nos. 3, 5, and 6.).

56.     Mr. Navid was present at the hotel suite when Nyko showed its charger product to third parties.

57.     This charger product was capable of charging PlayStation 3 wireless video game controllers.

58.     In Nyko's hotel suite in January 2007, the charger was used to charge at least one PlayStation 3 wireless video game controller.

59.     On information and belief, Nyko imposed no obligation of confidentiality on the third parties in its hotel suite when it showed its charger product in January 2007. Indeed, in the few days after demonstrating the charger in the hotel suite, numerous members of the media published descriptions and photographs of the charger.

60.   Nyko disclosed its charger to third parties for the purpose of publicizing its charger.

61.   Among those that Nyko disclosed its charger to in Nyko's hotel suite were members of the press.

62.   For example, in January 2007 at its hotel suite, Nyko disclosed its charger to a representative of IGN.

63.   The representative of IGN was not required to sign a non-disclosure agreement regarding the charger.

64.   In January 2007, IGN published a review of Nyko's charger, which included a picture of Nyko's charger.

65.   In January 2007, Nyko disclosed its charger to Ryan Block of Gdgt.

66.   On information and belief, Nyko disclosed its charger to Ryan Block at Nyko's hotel suite in January 2007.

67.   Nyko did not require Ryan Block to sign a non-disclosure agreement regarding the charger.

68.   Ryan Block was a member of the press in January 2007.

69.   In January 2007, Nyko disclosed its charger to Brian Lam of The Wirecutter.

70.   On information and belief, Nyko disclosed its charger to Brian Lam at Nyko's hotel suite in January 2007.

71.   Nyko did not require Brian Lam to sign a non-disclosure agreement regarding the charger.

72.   Brian Lam was a member of the press in January 2007.

73.   In January 2007, Nyko disclosed its charger to Brian Crecente of Kotaku.

74.   On information and belief, Nyko disclosed its charger to Brian Crecente at Nyko's hotel suite in January 2007.

75.   Nyko did not require Brian Crecente to sign a non-disclosure agreement regarding the charger.

76.   Brian Crecente was a member of the press in January 2007.

77. In January 2007, Nyko disclosed its charger to a representative of X-Intelligence Krew.

78. In January 2007, Nyko disclosed its charger to Christopher Grant of Engadget.

79. On information and belief, Nyko disclosed its charger to Christopher Grant at Nyko's hotel suite in January 2007.

80. Nyko did not require Christopher Grant to sign a non-disclosure agreement regarding the charger.

81. Christopher Grant was a member of the press in January 2007.

82. In January 2007, Nyko disclosed its charger to Chris Kohler of Wired.

83. On information and belief, Nyko disclosed its charger to Chris Kohler of Wired at Nyko's hotel suite in January 2007.

84. Nyko did not require Chris Kohler to sign a non-disclosure agreement regarding the charger.

85. On information and belief, Nyko also allowed Chris Kohler to take a charger sample with him for the purpose of publishing a review.

86. On information and belief, the charger that Chris Kohler took with him embodied at least one asserted claim of the Patent-in-suit.

87. On information and belief, the charger that Chris Kohler took with him embodied all asserted claims of the Patent-in-suit.

88. Chris Kohler was a member of the press in January 2007.

89. In January 2007 Nyko disclosed its charger to a representative of Quickjump Gaming Network (QJ.net).

90. In January 2007 Nyko disclosed its charger to a representative of technabob.com.

91. In January 2007 Nyko disclosed its charger to William Usher of Gaming Blend.

ANSWER TO AMENDED COMPLAINT FOR PATENT
                                                                     INFRINGEMENT

92.     On information and belief, Nyko disclosed its charger to William Usher at Nyko's hotel suite in January 2007.

93.     Nyko did not require William Usher to sign a non-disclosure agreement regarding the charger.

94.     William Usher was a member of the press in January 2007.

95.     Nyko's showing of the charger product in its hotel suite without an obligation of confidentiality constitutes a public use of Nyko's charger at least as early as January 2007.

96.     In addition, Nyko issued a press release on January 8, 2007, announcing that "[t]he Charge Base for PS3 has a suggested retail price of $39.99."  (Docket No. 41-1 [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to Application for TRO], Exhibit A).

97.     Nyko published its press release on at least its public website by March 6, 2007 at the latest.  (Docket No. 41-2 [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to Application for TRO], Exhibit B).

98.     On information and belief, Nyko published its January 8, 2007 press release on its website on or before January 8, 2007.

99.     Furthermore, multiple public online media articles disclosing Nyko's charger product were published as early as January 2007.

100.    Engadget published an article on January 9, 2007, reporting on the features of Nyko's charger.  (Nyko's rechargeable PS3 SIXAXIS and Wiimote docking stations; http://www.engadget.com/2007/01/09/nykos-rechargeable-ps3-sixaxis-and-wiimote-docking-stations/).

101.    Engadget's January 9, 2007 article showed a picture of Nyko's charger. (Nyko's rechargeable PS3 SIXAXIS and Wiimote docking stations; http://www.engadget.com/2007/01/09/nykos-rechargeable-ps3-sixaxis-and-wiimote-docking-stations/).

-12-

1    102.   Mr. Navid was aware of this article during the prosecution of the Patent-in-suit.

2

3    103.   Wired.com published an article on January 9, 2007, reporting on the features

4    of Nyko's charger.  (You'll Get a "Charge" Out of These PS3 Products;

5    http://www.wired.com/gamelife/2007/01/youll_get_a_cha/).

6    104.   Wired.com's January 9, 2007 article showed a picture of Nyko's charger.

7    (You'll Get a "Charge" Out of These PS3 Products;

8    http://www.wired.com/gamelife/2007/01/youll_get_a_cha/).

9    105.   The picture shows Nyko's product charging at least one wireless PlayStation

10   3 video game controller.  (You'll Get a "Charge" Out of These PS3 Products;

11   http://www.wired.com/gamelife/2007/01/youll_get_a_cha/).

12   106.   Mr. Navid was aware of this article during the prosecution of the Patent-in-

13   suit.

14   107.   Technabob published an article on January 10, 2007, reporting on the

15   features of Nyko's charger.  (Nyko Recharge Docks for PS3 and Wii Controllers;

16   http://technabob.com/blog/2007/01/10/nyko-recharge-docks-for-ps3-and-wii-controllers/).

17   108.   The January 10, 2007 Technabob article showed a picture of Nyko's charger.

18   (Nyko Recharge Docks for PS3 and Wii Controllers;

19   http://technabob.com/blog/2007/01/10/nyko-recharge-docks-for-ps3-and-wii-controllers/).

20   109.   Mr. Navid was aware of this article during the prosecution of the Patent-in-

21   suit.

22   110.   QJ.net published an article on January 14, 2007, reporting on the features of

23   Nyko's charger.  (Charge Base PS3: Nyko's 4-port charging dock for SIXAXIS

24   Controllers; http://www.qj.net/qjnet/playstation-3/charge-base-ps3-nykos-4-port-charging-

25   dock-for-sixaxis-controllers.html).

26   111.   The QJ.net January 14, 2007 article shows a picture of Nyko's charger.

27   (Charge Base PS3: Nyko's 4-port charging dock for SIXAXIS Controllers;

28

ANSWER TO AMENDED COMPLAINT FOR PATENT
INFRINGEMENT

1  http://www.qj.net/qjnet/playstation-3/charge-base-ps3-nykos-4-port-charging-dock-for-

2  sixaxis-controllers.html).

3       112.   Mr. Navid was aware of this article during the prosecution of the Patent-in-

4  suit.

5       113.   X-Intelligence Krew published an article on January 15, 2007, reporting on

6  the features of Nyko's charger product.  (PS3 Friends fear no more;  http://thex-

7  xik.blogspot.com/2007/01/ps3-friends-fear-no-more.html).

8       114.   The X-Intelligence Krew January 15, 2007 article showed a picture of

9  Nyko's charger.

10      115.   Mr. Navid was aware of this article during the prosecution of the Patent-in-

11  suit.

12
13  **The On-Sale Status, Public Use Status, and Printed Publications of the Claimed**
**Invention Were Material**
14

15      116.   Mr. Navid's statement in his declaration and the supporting exhibit, Nyko's

16  sales invoice summary, and Nyko's press release show that a product including "each and

17  every feature of the claimed invention" was on sale in the United States no later than

18  January 2007.

19      117.   The claimed invention was thus on sale more than one year before the filing

20  date of the '295 Application.

21      118.   The on-sale status of the claimed invention was material to the patentability

22  of the subject matter claimed by the Patent-in-suit.

23      119.   The on-sale status of the product embodying the claimed invention

24  constitutes an on-sale bar under 35 U.S.C. § 102(b) that renders the asserted claims

25  unpatentable.

26      120.   Mr. Navid did not disclose to the PTO Examiner that the claimed invention

27  was on sale by at least January 2007.

28

121.   Nyko's admission in its interrogatory responses that the Nyko charger was shown in January 2007 to third parties together with the lack of a confidentiality obligation and numerous online reviews shows that the Nyko charger was in public use by at least January 2007.

122.   The claimed invention was thus in public use more than one year before the filing date of the '295 Application.

123.   The public use status of the claimed invention was material to the patentability of the subject matter claimed by the Patent-in-suit.

124.   The public use status of the product embodying the claimed invention constitutes a public use bar under 35 U.S.C. § 102(b) that renders the asserted claims unpatentable.

125.   Mr. Navid did not disclose to the PTO Examiner that the claimed invention was in public use by at least January 2007.

126.   Mr. Navid did not disclose the January 8, 2007 press release to the PTO Examiner.

127.   The January 8, 2007 press release was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

128.   Mr. Navid did not disclose the January 9, 2007 news article by Gerry Block to the PTO Examiner.

129.   The January 9, 2007 news article by Gerry Block was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

130.   Mr. Navid did not disclose the January 9, 2007 Engadget article to the PTO Examiner.

-15-

131.    The January 9, 2007 Engadget article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

132.    Mr. Navid did not disclose the January 9, 2007 Wired.com article to the PTO examiner.

133.    The January 9, 2007 Wired.com article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

134.    Mr. Navid did not disclose Chris Kohler's January 2007 use of the Nyko charger to the PTO Examiner.

135.    Chris Kohler's use of the Nyko charger in January 2007 was a public use that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

136.    Mr. Navid did not disclose the January 10, 2007 Technabob article to the PTO examiner.

137.    The January 10, 2007 Technabob article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

138.    Mr. Navid did not disclose the January 14, 2007 QJ.net article to the PTO examiner.

139.    The January 14, 2007 QJ.net article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

140.    Mr. Navid did not disclose the January 15, 2007 X-Intelligence Krew article to the PTO examiner.

141.    The January 15, 2007 X-Intelligence Krew article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b),

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1  and was thus material to the patentability of the subject matter claimed by the Patent-in-
2  suit.

3      142.    The on-sale status, public use status, and printed publications of the Nyko
4  charger that Mr. Navid believes includes "each and every feature of the claimed invention"
5  shall hereafter be referred to as the "barring events."

6      143.    But for Mr. Navid failing to disclose the barring events, the Patent-in-suit
7  would not have issued with the asserted claims.

8      144.    Regardless of whether Mr. Navid's failure to disclose the barring events was
9  a "but for" cause of the patent issuing, his failure to disclose them constitutes egregious
10  misconduct.

11
12  ### The Asserted Claims of the Patent-in-Suit Are Not Entitled to the
     ### Priority Date of the Provisional Application
13

14      145.    The '295 Application claims priority to U.S. provisional patent application
15  No. 60/982,364 ("the Navid Provisional Application"), which was filed on October 24,
16  2007, naming Mr. Navid as the sole alleged inventor.

17      146.    Independent claim 1 of the Patent-in-suit – recites:

18          A video game controller charging system for charging a plurality of
            video game controllers using externally supplied power, the video
19          game controller charging system comprising:
            a base;
20
            at least one structure on the base for providing physical support to
21          the plurality of video game controllers while the plurality of video
            game controllers are being charged; and
22          a plurality of DC ports on the base, each of the DC ports configured
            to couple to and provide DC power to a power input port of a
23          respective one of the plurality of video game controllers,
            wherein the at least one structure on the base comprises a plurality
24          of docking bays open in a first direction and configured to receive
            respective ones of the plurality of video game controllers from the
25          first direction, and

26          wherein the at least one structure on the base further comprises a
            plurality of pairs of opposite surfaces, each pair of surfaces defining
27          a respective docking bay of the plurality of docking hays [sic] each
            of the DC ports being on the base between a respective one of the
28          pairs of surfaces.

SMRH:407739423.3                    ANSWER TO AMENDED COMPLAINT FOR PATENT
                                    INFRINGEMENT

147. The claim thus requires that each of the DC ports are "configured to couple to" a power input port of a respective video game controller.

148. The Navid Provisional Application only discloses and claims a charging system requiring the use of adapters to make the connection between the DC ports of the base and the input ports of the video game controllers.

149. The Navid Provisional Application does not disclose or claim a charging system that uses an adapterless or otherwise direct connection between the DC ports of the base and the input ports of the video game controllers.

150. During the briefing on Nyko's Ex Parte Application for a Temporary Restraining Order ("TRO briefing"), PDP and Energizer cited U.S. Patent No. 7,942,747 to Cole ("Cole"), filed on November 1, 2007, as anticipating and/or rendering obvious the asserted claims of the Patent-in-suit.

151. Cole claims priority as a continuation-in-part of application No. PCT/US2006/016944, filed on May 3, 2006.

152. In its TRO briefing, Nyko and Mr. Navid argued that Cole is not prior art. In particular, Nyko argued that the "Cole PCT does not provide an enabling written description of the feature of 'a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,' as recited in claim 1." (Docket No. 25 [Reply] at 4.)

153. Mr. Navid submitted a declaration in which he agreed with and espoused Nyko's position. (Docket No. 44.)

154. In particular, Mr. Navid provided testimony that "Cole, U.S. Patent 7,942,747 … is not prior art to my invention as my October 24, 2007 priority date predates Cole's filing date of November 1, 2007." (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Case re: Preliminary Injunction].)

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

155.    Nyko and Mr. Navid contended that the phrase "configured to couple to" requires direct connection.  (May 29, 2012 Hearing Transcript at 40:20-41:1 ("And here the word 'coupled to' is used in the mechanical context, and the – when reading the specification of the Navid patent, it's clear from all of the drawings and everything in this that this is a direct connection to the power input port….").)

156.    Thus, Nyko and Mr. Navid claimed that Cole did not satisfy the "configured to couple to" limitation because Cole only disclosed an indirect connection – a cable connecting the controller power input and the DC port on the charger.  (May 29, 2012 Hearing Transcript at 19:12-19, 39:21-40:12.)

157.    If Nyko and Mr. Navid's argument were adopted, then the Navid Provisional Application, which discloses only an indirect connection (through an adapter) would not support the asserted claims, which Nyko and Mr. Navid contend require a direct connection.

158.    Thus, according to Nyko and Mr. Navid's claim construction position and their argument regarding the teachings of the prior art, the asserted claims are not entitled to the priority date of the Navid Provisional Application.

159.    Regardless of Nyko and Mr. Navid's contentions, the asserted claims are not entitled to the priority date of the Navid Provisional Application because the Navid Provisional Application requires an adapter to connect each wireless video game controller to the charger and does not disclose DC ports on the base of the charger.

160.    Rather, the priority date for the asserted claims is the filing date of the '295 Application – March 7, 2008.

## **Mr. Navid Knew the Barring Events Were Material to Patentability**

161.    Mr. Navid is the Vice President of Research and Development for Nyko.

162.    Mr. Navid has at least 15 years of experience in designing and developing video game accessories.

-19-

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

163.   Mr. Navid has designed various controllers and interfaces for every major video game console since 1997.

164.   Mr. Navid is a named inventor on several patents and applications directed to gaming accessories.

165.   Mr. Navid is the listed inventor on ten issued United States patents.

166.   Mr. Navid further claims that he has extensive experience in the design, development, and operation of video game accessories.

167.   Mr. Navid is familiar with the Patent-in-suit, including its descriptions of and claims to a charging system for a hand-held video game controller.

168.   On information and belief, Mr. Navid was aware during the prosecution of the '295 Application that the barring events occurred.  This allegation is based on at least the allegations in paragraphs 169 to 178 directly below:

169.   The information alleged in paragraphs 31 through 167.

170.   Mr. Navid admits to holding an executive position at Nyko.

171.   Mr. Navid admits that he has many years of experience in designing and developing video game accessories, and would have been aware of substantial developments in the industry.

172.   Mr. Navid is the sole listed inventor of the Patent-in-suit.

173.   Mr. Navid is admittedly familiar with the Patent-in-suit.

174.   The on-sale status of Nyko's charger was widely publicized, including at trade shows and on Nyko's web site in January 2007.

175.   The Nyko charger was "widely announced" at the January 2007 Consumer Electronics Show.  (May 29, 2012 Hearing Transcript at 10:24-11:4.)

176.   On information and belief, Mr. Navid attended the 2007 Consumer Electronics Show and saw the Nyko charger there.

177.   On information and belief, during the timeframe of the 2007 Consumer Electronics Show Mr. Navid showed the Nyko charger to third parties in Nyko's hotel suite.

-20-

178. On information and belief, further information evidencing Mr. Navid's awareness of the barring events is within the possession of Mr. Navid, Nyko, Chris Arbogast, Michael Quiroz, Ali Miller, IGN, Chris Kohler, Wired, Christopher Grant, Joystiq, William Usher, Cinema Blend LLC, QJ.net, X-Intelligence Krew, Technabob, Ryan Block, Gdgt, Engadget, Brian Crecente, Brian Lam, The Wirecutter, Herschel Naghi, and the law firm of Christie, Parker & Hale, LLP.

179. On information and belief, Mr. Navid was aware that the barring events were material. This allegation is based on at least the allegations in paragraphs 180 to 188 directly below.

180. The information alleged in paragraphs 31 through 178.

181. Mr. Navid admits to holding an executive position at Nyko.

182. Mr. Navid admits that he has many years of experience in designing and developing video game accessories.

183. Mr. Navid is the sole listed inventor of the Patent-in-suit.

184. Mr. Navid is admittedly familiar with the Patent-in-suit.

185. Mr. Navid admitted that the Nyko charger offered for sale, in public use, and published in January 2007 "includes each and every feature of the claimed invention."

186. Mr. Navid was familiar with the Navid Provisional Application.

187. Upon information and belief, further information evidencing Mr. Navid's awareness of the materiality of barring events is within the possession of Mr. Navid, Nyko, Chris Arbogast, Michael Quiroz, Ali Miller, IGN, Chris Kohler, Wired, Christopher Grant, Joystiq, William Usher, Cinema Blend LLC, QJ.net, X-Intelligence Krew, Technabob, Ryan Block, Gdgt, Engadget, Brian Crecente, Brian Lam, The Wirecutter, Herschel Naghi, and the law firm of Christie, Parker & Hale, LLP.

188. The information alleged in paragraphs 31 through 160 was not cumulative to information made of record during the prosecution of the '295 Application.

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

## Mr. Navid Intended to Deceive and Mislead the PTO

189. Upon information and belief, Mr. Navid failed to disclose the barring events to the PTO with the intent to deceive and mislead the Examiner of the '295 Application. This allegation is based on at least the following allegations in paragraphs 190 to 202 directly below.

190. The allegations in paragraphs 31 to 188;

191. The entirety of the claimed invention was actually offered for sale in the U.S., in public use in the U.S., and otherwise publicized.

192. Mr. Navid did not attempt to use the device on sale as of January 2007 to swear behind the prior art made of record during the prosecution of the '295 Application, despite the fact that Nyko claimed during the TRO briefing that Mr. Navid could have.

193. Mr. Navid did not attempt to use the device in public use as of January 2007 to swear behind the prior art made of record during the prosecution of the '295 Application.

194. Mr. Navid was admittedly familiar with the Patent-in-suit.

195. Mr. Navid was familiar with the Navid Provisional Application.

196. Mr. Navid admits that he has a high level of experience with the U.S. patent system.

197. Mr. Navid admits he had a high level of industry experience and anticipated that there would be a number of competitors in the marketplace.

198. The on-sale status of the claimed invention was highly material.

199. The public use status of the claimed invention was highly material.

200. The January 2007 printed publications disclosing the claimed invention were highly material.

201. Other claims of the Patent-in-suit, which are not asserted in this litigation, are directed to the use of adapters to connect the DC ports on the base with the power input ports of the controllers.

202.    Upon information and belief, further information evidencing Mr. Navid's intent to deceive is within the possession of Mr. Navid, Nyko, Chris Arbogast, Michael Quiroz, Ali Miller, IGN, Chris Kohler, Wired, Christopher Grant, Joystiq, William Usher, Cinema Blend LLC, QJ.net, X-Intelligence Krew, Technabob, Ryan Block, Gdgt, Engadget, Brian Crecente, Brian Lam, The Wirecutter, Herschel Naghi, and the law firm of Christie, Parker & Hale, LLP.

## COUNTERCLAIMS

PDP, EBC, and Energizer counterclaim against Nyko as follows:

## PARTIES

203.    PDP is a California Limited Liability Corporation having a principal place of business at 14144 Ventura Boulevard, Suite 200, Sherman Oaks, California 91423.

204.    EBC is a Delaware corporation having a principal place of business at 533 Maryville University Drive, St. Louis, Missouri 63141.

205.    Energizer is a Missouri Corporation having a principal place of business at 533 Maryville University Drive, St. Louis, Missouri 63141.

206.    On information and belief, Nyko is a California Corporation with a principal place of business at 1990 Westwood Boulevard, Penthouse Suite, Los Angeles, California 90025.

## JURISDICTION AND VENUE

207.    By this Counterclaim, PDP, EBC, and Energizer seek declarations pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, of rights and obligations governed by the patent laws of the United States, comprising Title 35 of the United States Code.

208.    This Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, 2202, and 1367.

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

209.    The claims for relief set forth in this Counterclaim are so related to any claims pleaded by Nyko in its Amended Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

210.    By commencing this action in this Court, Nyko has consented to this Court's exercise of personal jurisdiction over it.

211.    By reason of the commencement of this action, there exists an actual and justiciable controversy between Nyko on the one hand, and PDP, EBC, and Energizer on the other, relative to the infringement, validity, and enforceability of the Patent-in-suit.

## COUNT I

### (Declaratory Judgment of Noninfringement)

212.    PDP, EBC, and Energizer restate, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 202 of the Answer as if fully set forth herein.

213.    None of the Defendants has infringed, contributed to infringement by others of, or induced infringement by others of any valid and enforceable claim of the Patent-in-suit, either literally or under the doctrine of equivalents.

214.    By reason of the foregoing, PDP, EBC, and Energizer are entitled to a declaration of this Court, which shall have the force and effect of a final judgment or decree, that they have not infringed and do not infringe the Patent-in-suit.

## COUNT II

### (Declaratory Judgment of Invalidity)

215.    PDP, EBC, and Energizer restate, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 202 of the Answer as if fully set forth herein.

216.    The Patent-in-suit is invalid for failing to satisfy one or more of the conditions of patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112.

217.   By reason of the foregoing, PDP, EBC, and Energizer are entitled to a declaration of this Court, which shall have the force and effect of a final judgment or decree, that the claims of the Patent-in-suit are invalid.

## COUNT III

### (Declaratory Judgment of Unenforceability)

### Summary of Inequitable Conduct Allegations

218.   The Patent-in-suit is unenforceable because it was procured through inequitable conduct and fraud on the United States Patent and Trademark Office ("PTO").

219.   In particular, Nyko offered for sale, publicly used, and described in printed publications a game controller charger product incorporating all of the features of the asserted patent claims in January 2007.  Third parties also publicly used and described the product in printed publications in January 2007.

220.   The application for the Patent-in-suit was not filed until more than a year later, on March 7, 2008.

221.   Nyko and the sole listed inventor, Amir Navid ("Navid"), admitted in this litigation that the Nyko product that was offered for sale, publicly used, and described in printed publications incorporated "each and every feature of the claimed invention" as of January 2007.  Thus, the asserted claims are invalid pursuant to the on-sale, public use, and printed publication barring provisions of 35 U.S.C. § 102(b).

222.   Mr. Navid was working for Nyko in January 2007 and must have known that his invention was on sale by Nyko, in public use, and described in printed publications as of that time.  However, he never disclosed this to the PTO.

223.   Nyko asserted in this litigation that the asserted claims of the Patent-in-suit read on the accused PDP products, which Nyko alleges include a charger that is configured to directly connect its DC port to the game controller input port.

ANSWER TO AMENDED COMPLAINT FOR PATENT
                                                              INFRINGEMENT

224.    During briefing on Nyko's Ex Parte Application for a Temporary Restraining Order, PDP cited U.S. Patent No. 7,942,747 to Cole ("Cole"), as invalidating prior art.  In response, Nyko argued that Cole and its applications only teach an indirect connection between the game controller input port and the DC port of the charger, such that Cole does not disclose the "configured to couple" claim element of the Patent-in-suit.  Accordingly, by Nyko's argument, teachings of an indirect connection are insufficient to teach the type of direct connection that Nyko alleges is covered by the claims of the Patent-in-suit.

225.    Though the Patent-in-suit claims priority to an earlier filed provisional patent application, the asserted claims are not entitled to the priority date of that provisional application.  This is because the provisional application does not disclose a plurality of DC ports on the base, but rather places the DC ports on adapters.  According to the plain meaning of the claim terms and Nyko's own position, the claims of the issued patent are broad enough to cover both a direct and indirect connection between the DC ports of the charging system and the power input ports of the wireless controllers.  Because the provisional application only discloses an indirect connection through an adapter, the broader claims of the issued patent are not entitled to the priority date of the provisional application.

226.    Thus, by Nyko's own logic, the Navid provisional application does not provide an effective filing date for the Patent-in-suit.

227.    Regardless of Nyko's contentions, the Navid provisional does not provide an effective filing date for asserted claims of the Patent-in-suit because the provisional application requires an adapter to connect the charging base to the game controller.

228.    Therefore, the on-sale status, public use status, and printed publications of the claimed invention invalidate the Patent-in-suit.  Mr. Navid's intentional failure to disclose these barring events to the PTO constitutes inequitable conduct that renders the Patent-in-suit unenforceable.

## The Patent-in-Suit and Its Prosecution History

229.    The application that issued as the Patent-in-suit, U.S. Application No. 12/044,295 ("the '295 Application"), was filed on March 7, 2008, naming Mr. Navid as the sole alleged inventor.

230.    Nyko is asserting claims 1-5, 7, 8, 10-13, and 15-17 of the Patent-in-suit against PDP, EBC, and Energizer.

231.    During the prosecution of the '295 Application, the PTO twice rejected all pending claims as obvious over the prior art.

232.    At no point did Mr. Navid attempt to antedate any of the prior art by swearing behind it with a 37 C.F.R. 1.131 declaration.

## The Claimed Invention Was On Sale By Nyko, in Public Use, and Described in Printed Publications At Least as Early as January 2007

233.    During this litigation, Mr. Navid submitted a declaration in which he testified that "[t]he product Nyko introduced in January 2007 includes each and every feature of the claimed invention."  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re:  Preliminary Injunction], ¶ 17.)

234.    This product shall hereinafter be referred to as "the charger" or "the Nyko charger."

235.    At the May 29, 2012 hearing in this case, Nyko itself admitted that the Nyko charger was publicly disclosed in January 2007 and "discloses each and every feature of the patented invention."  In fact, Nyko publicly disclosed a charger in January 2007 that embodied all asserted claims of the Patent-in-suit.  (May 29, 2012 Hearing Transcript at 10:18-11:4, 15:21-25, 41:16-25.)

236.    In support of his declaration, Mr. Navid submitted as an exhibit a news article by Gerry Block published January 9, 2007, showing the Nyko charger and listing a

1    suggested retail price of $39.99.  (Docket No. 44 [Third Declaration of Amir Navid in

2    Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2)

3    Order to Show Cause re:  Preliminary Injunction], Exhibit A.)

4         237.    The January 9, 2007 article by Gerry Block indicates that Nyko offered its

5    charger for sale in January 2007.  (Docket No. 44 [Third Declaration of Amir Navid in

6    Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2)

7    Order to Show Cause re:  Preliminary Injunction], Exhibit A.)

8         238.    During this litigation, Nyko has produced a "Customer Sales Inventory

9    Analysis Report" and other documents showing sales and/or offers for sale of the charger

10   as early as January 8, 2007, and a number of such sales and/or offers for sale prior to

11   March 7, 2007. (Nyko Customer Sales Analysis Report, NT001123-NT001139).

12        239.    The Customer Sales Inventory Analysis Report shows that Nyko offered its

13   charger for sale in January 2007.  (Nyko Customer Sales Analysis Report, NT001123-

14   NT001139).

15        240.    The Customer Sales Inventory Analysis Report shows a number of purchase

16   orders and sales invoices for the Nyko charger prior to March 7, 2007, more than one year

17   before the filing date of the '295 application.  (Nyko Customer Sales Analysis Report,

18   NT001123-NT001139).

19        241.    The Customer Sales Inventory Analysis Report also shows that Nyko later

20   filled at least some of these purchase orders.

21        242.    In addition, Nyko admitted during this litigation that it showed its charger to

22   third parties in its hotel suite in Las Vegas during the Consumer Electronics Show in

23   January 2007. (Nyko Technologies, Inc.'s Amended Supplemental Response to

24   Performance Designed Products LLC's Interrogatory Nos. 3, 5, and 6.).

25        243.    Mr. Navid was present at the hotel suite when Nyko showed its charger

26   product to third parties.

27        244.    This charger product was capable of charging PlayStation 3 wireless video

28   game controllers.

-28-

ANSWER TO AMENDED COMPLAINT FOR PATENT
INFRINGEMENT

245.    In Nyko's hotel suite in January 2007, the charger was used to charge at least one PlayStation 3 wireless video game controller.

246.    On information and belief, Nyko imposed no obligation of confidentiality on the third parties in its hotel suite when it showed its charger product in January 2007. Indeed, in the few days after demonstrating the charger in the hotel suite, numerous members of the media published descriptions and photographs of the charger.

247.    Nyko disclosed its charger to third parties for the purpose of publicizing its charger.

248.    Among those that Nyko disclosed its charger to in Nyko's hotel suite were members of the press.

249.    For example, in January 2007 at its hotel suite, Nyko disclosed its charger to a representative of IGN.

250.    The representative of IGN was not required to sign a non-disclosure agreement regarding the charger.

251.    In January 2007, IGN published a review of Nyko's charger, which included a picture of Nyko's charger.

252.    In January 2007, Nyko disclosed its charger to Ryan Block of Gdgt.

253.    On information and belief, Nyko disclosed its charger to Ryan Block at Nyko's hotel suite in January 2007.

254.    Nyko did not require Ryan Block to sign a non-disclosure agreement regarding the charger.

255.    Ryan Block was a member of the press in January 2007.

256.    In January 2007, Nyko disclosed its charger to Brian Lam of The Wirecutter.

257.    On information and belief, Nyko disclosed its charger to Brian Lam at Nyko's hotel suite in January 2007.

258.    Nyko did not require Brian Lam to sign a non-disclosure agreement regarding the charger.

259.    Brian Lam was a member of the press in January 2007.

260. In January 2007, Nyko disclosed its charger to Brian Crecente of Kotaku.

261. On information and belief, Nyko disclosed its charger to Brian Crecente at Nyko's hotel suite in January 2007.

262. Nyko did not require Brian Crecente to sign a non-disclosure agreement regarding the charger.

263. Brian Crecente was a member of the press in January 2007.

264. In January 2007, Nyko disclosed its charger to a representative of X-Intelligence Krew.

265. In January 2007, Nyko disclosed its charger to Christopher Grant of Engadget.

266. On information and belief, Nyko disclosed its charger to Christopher Grant at Nyko's hotel suite in January 2007.

267. Nyko did not require Christopher Grant to sign a non-disclosure agreement regarding the charger.

268. Christopher Grant was a member of the press in January 2007.

269. In January 2007, Nyko disclosed its charger to Chris Kohler of Wired.

270. On information and belief, Nyko disclosed its charger to Chris Kohler of Wired at Nyko's hotel suite in January 2007.

271. Nyko did not require Chris Kohler to sign a non-disclosure agreement regarding the charger.

272. On information and belief, Nyko also allowed Chris Kohler to take a charger sample with him for the purpose of publishing a review.

273. On information and belief, the charger that Chris Kohler took with him embodied at least one asserted claim of the Patent-in-suit.

274. On information and belief, the charger that Chris Kohler took with him embodied all asserted claims of the Patent-in-suit.

275. Chris Kohler was a member of the press in January 2007.

276. In January 2007 Nyko disclosed its charger to a representative of Quickjump Gaming Network (QJ.net).

277. In January 2007 Nyko disclosed its charger to a representative of technabob.com.

278. In January 2007 Nyko disclosed its charger to William Usher of Gaming Blend.

279. On information and belief, Nyko disclosed its charger to William Usher at Nyko's hotel suite in January 2007.

280. Nyko did not require William Usher to sign a non-disclosure agreement regarding the charger.

281. William Usher was a member of the press in January 2007.

282. Nyko's showing of the charger product in its hotel suite without an obligation of confidentiality constitutes a public use of Nyko's charger at least as early as January 2007.

283. In addition, Nyko issued a press release on January 8, 2007, announcing that "[t]he Charge Base for PS3 has a suggested retail price of $39.99." (Docket No. 41-1 [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to Application for TRO], Exhibit A).

284. Nyko published its press release on at least its public website by March 6, 2007 at the latest. (Docket No. 41-2 [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to Application for TRO], Exhibit B).

285. On information and belief, Nyko published its January 8, 2007 press release on its website on or before January 8, 2007.

286. Furthermore, multiple public online media articles disclosing Nyko's charger product were published as early as January 2007.

287. Engadget published an article on January 9, 2007, reporting on the features of Nyko's charger. (Nyko's rechargeable PS3 SIXAXIS and Wiimote docking stations;

ANSWER TO AMENDED COMPLAINT FOR PATENT
INFRINGEMENT

1   http://www.engadget.com/2007/01/09/nykos-rechargeable-ps3-sixaxis-and-wiimote-

2   docking-stations/).

3       288.    Engadget's January 9, 2007 article showed a picture of Nyko's charger.

4   (Nyko's rechargeable PS3 SIXAXIS and Wiimote docking stations;

5   http://www.engadget.com/2007/01/09/nykos-rechargeable-ps3-sixaxis-and-wiimote-

6   docking-stations/).

7       289.    Mr. Navid was aware of this article during the prosecution of the Patent-in-

8   suit.

9       290.    Wired.com published an article on January 9, 2007, reporting on the features

10  of Nyko's charger.  (You'll Get a "Charge" Out of These PS3 Products;

11  http://www.wired.com/gamelife/2007/01/youll_get_a_cha/).

12      291.    Wired.com's January 9, 2007 article showed a picture of Nyko's charger.

13  (You'll Get a "Charge" Out of These PS3 Products;

14  http://www.wired.com/gamelife/2007/01/youll_get_a_cha/).

15      292.    The picture shows Nyko's product charging at least one wireless PlayStation

16  3 video game controller.  (You'll Get a "Charge" Out of These PS3 Products;

17  http://www.wired.com/gamelife/2007/01/youll_get_a_cha/).

18      293.    Mr. Navid was aware of this article during the prosecution of the Patent-in-

19  suit.

20      294.    Technabob published an article on January 10, 2007, reporting on the

21  features of Nyko's charger.  (Nyko Recharge Docks for PS3 and Wii Controllers;

22  http://technabob.com/blog/2007/01/10/nyko-recharge-docks-for-ps3-and-wii-controllers/).

23      295.    The January 10, 2007 Technabob article showed a picture of Nyko's charger.

24  (Nyko Recharge Docks for PS3 and Wii Controllers;

25  http://technabob.com/blog/2007/01/10/nyko-recharge-docks-for-ps3-and-wii-controllers/).

26      296.    Mr. Navid was aware of this article during the prosecution of the Patent-in-

27  suit.

28

297.  QJ.net published an article on January 14, 2007, reporting on the features of Nyko's charger.  (Charge Base PS3: Nyko's 4-port charging dock for SIXAXIS Controllers; http://www.qj.net/qjnet/playstation-3/charge-base-ps3-nykos-4-port-charging-dock-for-sixaxis-controllers.html).

298.  The QJ.net January 14, 2007 article shows a picture of Nyko's charger. (Charge Base PS3: Nyko's 4-port charging dock for SIXAXIS Controllers; http://www.qj.net/qjnet/playstation-3/charge-base-ps3-nykos-4-port-charging-dock-for-sixaxis-controllers.html).

299.  Mr. Navid was aware of this article during the prosecution of the Patent-in-suit.

300.  X-Intelligence Krew published an article on January 15, 2007, reporting on the features of Nyko's charger product.  (PS3 Friends fear no more;  http://thex-xik.blogspot.com/2007/01/ps3-friends-fear-no-more.html).

301.  The X-Intelligence Krew January 15, 2007 article showed a picture of Nyko's charger.

302.  Mr. Navid was aware of this article during the prosecution of the Patent-in-suit.

**The On-Sale Status, Public Use Status, and Printed Publications of the Claimed Invention Were Material**

303.  Mr. Navid's statement in his declaration and the supporting exhibit, Nyko's sales invoice summary, and Nyko's press release show that a product including "each and every feature of the claimed invention" was on sale in the United States no later than January 2007.

304.  The claimed invention was thus on sale more than one year before the filing date of the '295 Application.

305.  The on-sale status of the claimed invention was material to the patentability of the subject matter claimed by the Patent-in-suit.

306.  The on-sale status of the product embodying the claimed invention constitutes an on-sale bar under 35 U.S.C. § 102(b) that renders the asserted claims unpatentable.

307.  Mr. Navid did not disclose to the PTO Examiner that the claimed invention was on sale by at least January 2007.

308.  Nyko's admission in its interrogatory responses that the Nyko charger was shown in January 2007 to third parties together with the lack of a confidentiality obligation and numerous online reviews shows that the Nyko charger was in public use by at least January 2007.

309.  The claimed invention was thus in public use more than one year before the filing date of the '295 Application.

310.  The public use status of the claimed invention was material to the patentability of the subject matter claimed by the Patent-in-suit.

311.  The public use status of the product embodying the claimed invention constitutes a public use bar under 35 U.S.C. § 102(b) that renders the asserted claims unpatentable.

312.  Mr. Navid did not disclose to the PTO Examiner that the claimed invention was in public use by at least January 2007.

313.  Mr. Navid did not disclose the January 8, 2007 press release to the PTO Examiner.

314.  The January 8, 2007 press release was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

315.  Mr. Navid did not disclose the January 9, 2007 news article by Gerry Block to the PTO Examiner.

316.  The January 9, 2007 news article by Gerry Block was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b),

1   and was thus material to the patentability of the subject matter claimed by the Patent-in-
2   suit.

3        317.   Mr. Navid did not disclose the January 9, 2007 Engadget article to the PTO
4   Examiner.

5        318.   The January 9, 2007 Engadget article was a printed publication that
6   invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and
7   was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

8        319.   Mr. Navid did not disclose the January 9, 2007 Wired.com article to the PTO
9   examiner.

10        320.   The January 9, 2007 Wired.com article was a printed publication that
11   invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and
12   was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

13        321.   Mr. Navid did not disclose Chris Kohler's January 2007 use of the Nyko
14   charger to the PTO Examiner.

15        322.   Chris Kohler's use of the Nyko charger in January 2007 was a public use that
16   invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and
17   was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

18        323.   Mr. Navid did not disclose the January 10, 2007 Technabob article to the
19   PTO examiner.

20        324.   The January 10, 2007 Technabob article was a printed publication that
21   invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and
22   was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

23        325.   Mr. Navid did not disclose the January 14, 2007 QJ.net article to the PTO
24   examiner.

25        326.   The January 14, 2007 QJ.net article was a printed publication that invalidates
26   the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus
27   material to the patentability of the subject matter claimed by the Patent-in-suit.

28

SMRH:407739423.3   ANSWER TO AMENDED COMPLAINT FOR PATENT
INFRINGEMENT

327.    Mr. Navid did not disclose the January 15, 2007 X-Intelligence Krew article to the PTO examiner.

328.    The January 15, 2007 X-Intelligence Krew article was a printed publication that invalidates the asserted claims of the Patent-in-suit pursuant to 35 U.S.C. § 102(b), and was thus material to the patentability of the subject matter claimed by the Patent-in-suit.

329.    The on-sale status, public use status, and printed publications of the Nyko charger that Mr. Navid believes includes "each and every feature of the claimed invention" shall hereafter be referred to as the "barring events."

330.    But for Mr. Navid failing to disclose the barring events, the Patent-in-suit would not have issued with the asserted claims.

331.    Regardless of whether Mr. Navid's failure to disclose the barring events was a "but for" cause of the patent issuing, his failure to disclose them constitutes egregious misconduct.

**The Asserted Claims of the Patent-in-Suit Are Not Entitled to the**
**Priority Date of the Provisional Application**

332.    The '295 Application claims priority to U.S. provisional patent application No. 60/982,364 ("the Navid Provisional Application"), which was filed on October 24, 2007, naming Mr. Navid as the sole alleged inventor.

333.    Independent claim 1 of the Patent-in-suit – recites:

> A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:
> a base;
>
> at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and
>
> a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

-36-

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking hays [sic] each of the DC ports being on the base between a respective one of the pairs of surfaces.

334.    The claim thus requires that each of the DC ports are "configured to couple to" a power input port of a respective video game controller.

335.    The Navid Provisional Application only discloses and claims a charging system requiring the use of adapters to make the connection between the DC ports of the base and the input ports of the video game controllers.

336.    The Navid Provisional Application does not disclose or claim a charging system that uses an adapterless or otherwise direct connection between the DC ports of the base and the input ports of the video game controllers.

337.    During the briefing on Nyko's Ex Parte Application for a Temporary Restraining Order ("TRO briefing"), PDP and Energizer cited U.S. Patent No. 7,942,747 to Cole ("Cole"), filed on November 1, 2007, as anticipating and/or rendering obvious the asserted claims of the Patent-in-suit.

338.    Cole claims priority as a continuation-in-part of application No. PCT/US2006/016944, filed on May 3, 2006.

339.    In its TRO briefing, Nyko and Mr. Navid argued that Cole is not prior art.  In particular, Nyko argued that the "Cole PCT does not provide an enabling written description of the feature of 'a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,' as recited in claim 1."  (Docket No. 25 [Reply] at 4.)

340.    Mr. Navid submitted a declaration in which he agreed with and espoused Nyko's position.  (Docket No. 44.)

-37-

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

341.   In particular, Mr. Navid provided testimony that "Cole, U.S. Patent 7,942,747 … is not prior art to my invention as my October 24, 2007 priority date predates Cole's filing date of November 1, 2007."  (Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Case re:  Preliminary Injunction].)

342.   Nyko and Mr. Navid contended that the phrase "configured to couple to" requires direct connection.  (May 29, 2012 Hearing Transcript at 40:20-41:1 ("And here the word 'coupled to' is used in the mechanical context, and the – when reading the specification of the Navid patent, it's clear from all of the drawings and everything in this that this is a direct connection to the power input port…."").)

343.   Thus, Nyko and Mr. Navid claimed that Cole did not satisfy the "configured to couple to" limitation because Cole only disclosed an indirect connection – a cable connecting the controller power input and the DC port on the charger.  (May 29, 2012 Hearing Transcript at 19:12-19, 39:21-40:12.)

344.   If Nyko and Mr. Navid's argument were adopted, then the Navid Provisional Application, which discloses only an indirect connection (through an adapter) would not support the asserted claims, which Nyko and Mr. Navid contend require a direct connection.

345.   Thus, according to Nyko and Mr. Navid's claim construction position and their argument regarding the teachings of the prior art, the asserted claims are not entitled to the priority date of the Navid Provisional Application.

346.   Regardless of Nyko and Mr. Navid's contentions, the asserted claims are not entitled to the priority date of the Navid Provisional Application because the Navid Provisional Application requires an adapter to connect each wireless video game controller to the charger and does not disclose DC ports on the base of the charger.

347.   Rather, the priority date for the asserted claims is the filing date of the '295 Application – March 7, 2008.

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

## **Mr. Navid Knew the Barring Events Were Material to Patentability**

348.  Mr. Navid is the Vice President of Research and Development for Nyko.

349.  Mr. Navid has at least 15 years of experience in designing and developing video game accessories.

350.  Mr. Navid has designed various controllers and interfaces for every major video game console since 1997.

351.  Mr. Navid is a named inventor on several patents and applications directed to gaming accessories.

352.  Mr. Navid is the listed inventor on ten issued United States patents.

353.  Mr. Navid further claims that he has extensive experience in the design, development, and operation of video game accessories.

354.  Mr. Navid is familiar with the Patent-in-suit, including its descriptions of and claims to a charging system for a hand-held video game controller.

355.  On information and belief, Mr. Navid was aware during the prosecution of the '295 Application that the barring events occurred.  This allegation is based on at least the allegations in paragraphs 356 to 365 directly below:

356.  The information alleged in paragraphs 218 through 354.

357.  Mr. Navid admits to holding an executive position at Nyko.

358.  Mr. Navid admits that he has many years of experience in designing and developing video game accessories, and would have been aware of substantial developments in the industry.

359.  Mr. Navid is the sole listed inventor of the Patent-in-suit.

360.  Mr. Navid is admittedly familiar with the Patent-in-suit.

361.  The on-sale status of Nyko's charger was widely publicized, including at trade shows and on Nyko's web site in January 2007.

362.  The Nyko charger was "widely announced" at the January 2007 Consumer Electronics Show.  (May 29, 2012 Hearing Transcript at 10:24-11:4.)

SMRH:407739423.3                                    ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

363.   On information and belief, Mr. Navid attended the 2007 Consumer Electronics Show and saw the Nyko charger there.

364.   On information and belief, during the timeframe of the 2007 Consumer Electronics Show Mr. Navid showed the Nyko charger to third parties in Nyko's hotel suite.

365.   On information and belief, further information evidencing Mr. Navid's awareness of the barring events is within the possession of Mr. Navid, Nyko, Chris Arbogast, Michael Quiroz, Ali Miller, IGN, Chris Kohler, Wired, Christopher Grant, Joystiq, William Usher, Cinema Blend LLC, QJ.net, X-Intelligence Krew, Technabob, Ryan Block, Gdgt, Engadget, Brian Crecente, Brian Lam, The Wirecutter, Herschel Naghi, and the law firm of Christie, Parker & Hale, LLP.

366.   On information and belief, Mr. Navid was aware that the barring events were material.  This allegation is based on at least the allegations in paragraphs 367 to 375 directly below.

367.   The information alleged in paragraphs 218 through 365.

368.   Mr. Navid admits to holding an executive position at Nyko.

369.   Mr. Navid admits that he has many years of experience in designing and developing video game accessories.

370.   Mr. Navid is the sole listed inventor of the Patent-in-suit.

371.   Mr. Navid is admittedly familiar with the Patent-in-suit.

372.   Mr. Navid admitted that the Nyko charger offered for sale, in public use, and published in January 2007 "includes each and every feature of the claimed invention."

373.   Mr. Navid was familiar with the Navid Provisional Application.

374.   Upon information and belief, further information evidencing Mr. Navid's awareness of the materiality of barring events is within the possession of Mr. Navid, Nyko, Chris Arbogast, Michael Quiroz, Ali Miller, IGN, Chris Kohler, Wired, Christopher Grant, Joystiq, William Usher, Cinema Blend LLC, QJ.net, X-Intelligence Krew, Technabob,

ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Ryan Block, Gdgt, Engadget, Brian Crecente, Brian Lam, The Wirecutter, Herschel Naghi, and the law firm of Christie, Parker & Hale, LLP.

375.   The information alleged in paragraphs 218 through 347 was not cumulative to information made of record during the prosecution of the '295 Application.

### Mr. Navid Intended to Deceive and Mislead the PTO

376.   Upon information and belief, Mr. Navid failed to disclose the barring events to the PTO with the intent to deceive and mislead the Examiner of the '295 Application. This allegation is based on at least the following allegations in paragraphs 377 to 389 directly below.

377.   The allegations in paragraphs 218 to 375;

378.   The entirety of the claimed invention was actually offered for sale in the U.S., in public use in the U.S., and otherwise publicized.

379.   Mr. Navid did not attempt to use the device on sale as of January 2007 to swear behind the prior art made of record during the prosecution of the '295 Application, despite the fact that Nyko claimed during the TRO briefing that Mr. Navid could have.

380.   Mr. Navid did not attempt to use the device in public use as of January 2007 to swear behind the prior art made of record during the prosecution of the '295 Application.

381.   Mr. Navid was admittedly familiar with the Patent-in-suit.

382.   Mr. Navid was familiar with the Navid Provisional Application.

383.   Mr. Navid admits that he has a high level of experience with the U.S. patent system.

384.   Mr. Navid admits he had a high level of industry experience and anticipated that there would be a number of competitors in the marketplace.

385.   The on-sale status of the claimed invention was highly material.

386.   The public use status of the claimed invention was highly material.

387.   The January 2007 printed publications disclosing the claimed invention were highly material.

388.   Other claims of the Patent-in-suit, which are not asserted in this litigation, are directed to the use of adapters to connect the DC ports on the base with the power input ports of the controllers.

389.   Upon information and belief, further information evidencing Mr. Navid's intent to deceive is within the possession of Mr. Navid, Nyko, Chris Arbogast, Michael Quiroz, Ali Miller, IGN, Chris Kohler, Wired, Christopher Grant, Joystiq, William Usher, Cinema Blend LLC, QJ.net, X-Intelligence Krew, Technabob, Ryan Block, Gdgt, Engadget, Brian Crecente, Brian Lam, The Wirecutter, Herschel Naghi, and the law firm of Christie, Parker & Hale, LLP.

## PRAYER FOR RELIEF

WHEREFORE, PDP, EBC, and Energizer pray:

A.   That Nyko's Amended Complaint be dismissed with prejudice and that Nyko take nothing by way of its Amended Complaint;

B.   For a declaration that they have not infringed and are not infringing the Patent-in-suit;

C.   For a declaration that the claims of the Patent-in-suit are invalid;

D.   For a declaration that the Patent-in-suit is unenforceable;

E.   That this Court enter an order preliminarily and permanently enjoining Nyko, its officers, directors, servants, managers, employees, agents, successors, and assignees, and all persons in active concert or participation with any of them, from directly or indirectly charging PDP, EBC, or Energizer with infringement of any claim of the Patent-in-suit;

F.      That this be declared an exceptional case pursuant to 35 U.S.C. § 285, and that PDP, EBC, and Energizer be awarded all of their attorneys' fees, costs, and expenses incurred in this action; and

G.      For such other and future relief as the Court deems just and proper.

## JURY DEMAND

PDP, EBC, and Energizer demand TRIAL BY JURY of any and all causes and issues, whether pleaded hereinabove, in the Amended Complaint, or elsewhere, that are so triable.

Dated:  December 28, 2012

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      /s/ Daniel Y. Yannuzzi
DANIEL Y. YANNUZZI
STEVEN M. HANLE
GRAHAM (GRAY) M. BUCCIGROSS
MATTHEW M. MUELLER
Attorneys for Defendants,
Performance Designed Products LLC,
Eveready Battery Company, Inc., and
Energizer Holdings, Inc.

SMRH:407739423.3          ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 28, 2012 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

By   /s/ Daniel Yannuzzi
          DANIEL N. YANNUZZI
          Attorneys for Defendants,
          Performance Designed Products LLC,
          Eveready Battery Company, Inc., and
          and Energizer Holdings, Inc.