1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2      Including Professional Corporations
3  DANIEL N. YANNUZZI, Cal. Bar No. 196612
   dyannuzzi@sheppardmullin.com
4  GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
   gbuccigross@sheppardmullin.com
5  MATTHEW M. MUELLER. Cal. Bar No. 268486
   mmueller@sheppardmullin.com
6  12275 El Camino Real, Suite 200
   San Diego, California  92130-2006
7  Telephone:  858.720.8900
   Facsimile:    858.509.3691
8
9  STEVEN M. HANLE, Cal. Bar No. 168876
   shanle@sheppardmullin.com
10 650 Town Center Drive, 4th Fl.
   Costa Mesa, CA 92626
11 Telephone:  714.513.5100
   Facsimile:    714.513.5130
12
   Attorneys for Defendants,
13 Performance Designed Products LLC,
   Eveready Battery Co, Inc., and Energizer
14 Holdings, Inc.

15                UNITED STATES DISTRICT COURT
16                CENTRAL DISTRICT OF CALIFORNIA

17 NYKO TECHNOLOGIES, INC. a          Case No. CV12-03001-GAF-VBK
   California Corporation,,
18                                     **DEFENDANTS' OPENING CLAIM**
                  Plaintiff,           **CONSTRUCTION BRIEF**
19
          v.                           **[PUBLIC REDACTED VERSION]**
20
   ENERGIZER HOLDINGS, INC. a
21 Missouri Corporation, EVEREADY
   BATTERY CO., INC., a Delaware
22 Corporation, and PERFORMANCE
   DESIGNED PRODUCTS LLC, a
23 California Limited Liability Company,
24                Defendants.
25
26
27
28

SMRH:408207766

1

## TABLE OF CONTENTS

2
Page

3  I.    INTRODUCTION ........................................................................................... 1

4  II.   THE ASSERTED '848 PATENT ................................................................... 2

5  III.  ARGUMENT .................................................................................................. 5

6        A.   Legal Standards ................................................................................... 5

7             1.   Claim Construction ................................................................... 5

8             2.   Indefiniteness ............................................................................ 6

9        B.   Disputed Claim Terms ......................................................................... 7

10            1.   "Base" ........................................................................................ 7

11            2.   "To couple to" ......................................................................... 12

12            3.   "electrically coupled to" ........................................................ 16

13            4.   "Structure"/ "Docking structure" ......................................... 17

14            5.   "At least one structure …" ..................................................... 19

15            6.   "supported by the base" ......................................................... 22

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV12-03001

DEFENDANTS' OPENING CLAIM
CONSTRUCTION BRIEF

SMRH:408207766

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Federal Cases</u>

4

*Ariad Pharms., Inc. v. Eli Lilly and Co.*
   598 F.3d 1336 (Fed. Cir. 2010) (*en banc*).........................................................11

5

6

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*
   73 F.3d 1573 (Fed. Cir. 1996) ...............................................................................24

7

8

*Bell Atlantic Network Servs., Inc. v. Covad Communs. Group, Inc.*
   262 F.3d 1258 (Fed. Cir. 2001) ...............................................................................6

9

10

*Datamize, LLC v. Plumtree Software*
   417 F.3d 1342 (Fed. Cir. 2005) ...............................................................................7

11

12

*E-Pass Techs., Inc. v. 3Com Corp.*
   343 F.3d 1364 (Fed. Cir. 2003) ...............................................................................9

13

14

*Foundry Networks v. Lucent Techs., Inc.*
   No. 2-04-CV-40, 2005 U.S. Dist. LEXIS 46840
   (E.D. Tex. May 24, 2005)........................................................................................13

15

16

*Georgia-Pacific Corp. v. U.S. Gypsum Co.*
   195 F.3d 1322 (Fed. Cir. 1999) .............................................................................12

17

18

*Halliburton Energy Servs. v. M-I LLC*
   514 F.3d 1244 (Fed. Cir. 2008) ................................................................7, 17, 24

19

20

*Hologic, Inc. v. Senorx, Inc.*
   639 F.3d 1329 (Fed. Cir. 2011) .....................................................................6, 8, 23

21

22

*Intergraph Corp. v. Intel Corp.*
   89 Fed. Appx. 218 (Fed. Cir. 2004) ......................................................................13

23

24

*Intergraph Corp. v. Intel Corp.*
   No. 2:01-cv-160, 2002 U.S. Dist. LEXIS 27117 ..................................................13

25

26

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*
   175 F.3d 985 (Fed. Cir. 1999) ..........................................................................13, 23

27

*Kinetic Concepts, Inc. v. Blue Sky Med. Group*
   554 F.3d 1010 (Fed. Cir. 2009) ..................................................................9, 11, 23

28

SMRH:408207766

*Markman v. Westview Instruments, Inc.*
  517 U.S. 370 (1996) ........................................................................................ 5

*Mems Tech. Berhad v. Int'l Trade Comm'n*
  447 Fed. Appx. 142 (Fed. Cir. 2011) ............................................................ 13

*Merck & Co. v. Teva Pharms. USA, Inc.*
  347 F.3d 1367 (Fed. Cir. 2003) ...................................................................... 6

*Microsoft Corp. v. Multi-Tech Sys., Inc.*
  357 F.3d 1340 (Fed. Cir. 2004) .................................................................... 14

*NTP, Inc. v. Research in Motion, Ltd.*
  418 F.3d 1282 (Fed Cir. 2005) ..................................................................... 14

*Pause Tech. LLC v. Tivo Inc.*
  419 F.3d 1326 (Fed. Cir. 2005) .................................................................... 20

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................. 5, 6, 9

*Power-One, Inc. v. Artesyn Techs., Inc.*
  599 F.3d 1343 (Fed. Cir. 2010) .................................................................... 11

*Retractable Techs., Inc. v. Becton, Dickinson and Co.*
  653 F.3d 1296 (Fed. Cir. 2011) ................................................................. 9, 23

*Schindler Elevator Corp. v. Otis Elevator Co.*
  593 F.3d 1275 (Fed. Cir. 2010) .................................................................... 21

*Seachange Int'l, Inc. v. C-COR Inc.*
  413 F.3d 1361 (Fed. Cir. 2005) .................................................................... 15

*Silicon Graphics, Inc. v. Nvidia Corp.*
  58 F. Supp. 2d 331 (D. Del. 1999) ............................................................... 13

*Southwall Techs. Inc. v. Cardinal IG Co.*
  54 F.3d 1570 (Fed. Cir. 1995) ....................................................................... 6

*SRI Int'l v. Matsushita Elec. Corp. of Am.*
  775 F.2d 1107 (Fed. Cir. 1985) .................................................................... 15

*Tehrani v. Hamilton Med., Inc.*
  331 F.3d 1355 (Fed. Cir. 2004) .................................................................... 14

-iii-

*United Carbon Co. v. Binney & Smith Co.*
    317 U.S. 228, 63 S. Ct. 165, 87 L. Ed. 232, 1943
    Dec. Comm'r Pat. 758 (1942) ..................................................................7

*Verizon Servs. Corp. v. Vonage Holdings Corp.*
    503 F.3d 1295 (Fed. Cir. 2007) ............................................................16

Federal: Statutes, Rules, Regulations, Constitutional Provisions

35 U.S.C. § 112 ¶ 2 ..............................................................................6, 17

# I.     INTRODUCTION

The patent asserted in this action is U.S. Patent No. 8,143,848, entitled "Video Game Controller Charging System Having a Docking Structure" (the "'848 patent").  The '848 patent describes a simple product in a field crowded with numerous prior art chargers.  The claims recite simple mechanical devices using non-technical terms.  The claimed charging system must match the existing video game controllers it is intended to charge.  As the inventor, Amir Navid, admitted,

█████████████████████████████████████████████████████████

(Declaration of Graham M. Buccigross In Support of Defendants' Opening Claim Construction Brief ("Buccigross Decl."), Ex. 1 at 56:18-57:12, 93-94.)

Defendants offer straightforward constructions for those disputed claim terms that are amenable to construction (*i.e.*, that are not indefinite).  These constructions reflect commonly understood meanings of the disputed terms, are consistent with the specification and prosecution history, and will clarify the issues for the jury if the case is tried.  Defendants do not see the need for expert testimony for claim construction, as the issues are neither technical nor complicated.

By contrast, Nyko offers constructions that are inconsistent with the specification or other claims, improperly import limitations into the claims, and/or are vague and confusing.  Where claim terms are indefinite, Nyko fails to offer a construction.  Nyko's attempts to broaden claim terms are improper (*e.g.*, "base" and "at least one …"), as are its attempts to import fabricated limitations to narrow claims to avoid prior art (*e.g.*, "to couple to" and "electrically coupled to").  Nyko's proposed constructions only generate confusion and lead to error.

Defendants respectfully request that the Court adopt their proposed constructions, and declare the insolubly ambiguous terms indefinite.

## II.     THE ASSERTED '848 PATENT

Nyko asserts independent claims 1 and 13.  Claim 1 reads as follows (disputed terms indicated in boldface).

A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a **base**;

**at least one structure on the base for providing physical support to the plurality of video game controllers** while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured **to couple to** and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the **at least one structure on the base comprises a plurality of docking bays** open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

wherein the **at least one structure on the base further comprises a plurality of pairs of opposite surfaces**, each pair of surfaces defining a respective docking bay of the plurality of docking bays each of the DC ports being on the base between a respective one of the pairs of surfaces.

Claim 13 reads as follows (disputed terms indicated in boldface):

A charging system for charging a plurality of video game controllers, each having a power input port, the charging system comprising:

a **base**;

a plurality of male mini-USB connectors **supported by the base** and each adapted to provide DC power to a

respective one of the plurality of video game controllers;

**at least one docking structure defining a plurality of docking bays** open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors; and

a power input for connecting to a power supply, the power input **electrically coupled to** the plurality of male mini-USB connectors,

wherein the **at least one docking structure comprises a plurality of pairs of substantially parallel opposite planar surfaces**, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces.

The '848 patent discloses two basic embodiments of the charging system claimed in the independent claims.  In the first embodiment, a game controller plugs directly into a DC port on the base of the charge station.  In the second embodiment, an adapter with a DC port is plugged into the controller.  The controller/adapter assembly fits into a recess on the base and connects with electrical contacts in the recess.  (Col. 12:63-13:14.)  The adapter is separate from the base and is intended to remain on the controller when the controller is in use.  (*Id.*)  In each embodiment, the base is shown as the bottom-most part of the charging system, and is designed to rest on a table (or other surface) or be mounted on a wall.[1]

In the first embodiment (shown in Fig. 11) the base is the bottom-most part of the charging system upon which the partitions 406 and DC ports 408 are mounted.

---

[1] The patent states that the charge station may be rotated such that the video game controllers are received horizontally rather than vertically.  (Col. 10:14-21.)  In other words, the patent contemplates a wall-mounted charging system.

The video game controller **charging system 400** includes **a base 402** and one or more docking bays **404**, wherein each docking bay **404** is configured to receive a video game controller **420**. The charging system **400** also includes one or more partitions **406** separating the docking bays **404**. The charging system **400** further includes a DC port **408** within each of the docking bays **404** that is configured to electrically couple to one of the video game controllers **420** and deliver DC power to the coupled video game controller **420**.

(Col. 9:24-32)



FIG.11

        In the embodiment that requires adapters, the bottom-most part of the charger 524 is again referred to as the "base," and there are partitions 528 and recesses 530 on the base 524.

As shown in FIG. **16**, **the charging station 510** includes **a base 524** with two docking bays **512**, **514**. The docking bays **512**, **514** are each dimensioned to accept a hand-held controller **526** (see FIGS. **20**, **21**). The two docking bays **512**, **514** are separated by a partition **528** positioned between them. Each of the docking bays **512**, **514** includes a recess **530** at the bottom of the docking bay. The recess **530** has four electrical contacts **520** positioned in the recess **530**. … The recesses **530** are dimensioned to receive an adapter **516** into the recess **530**.

(Col. 12:1-14)



As shown, the partitions 406 and 528 form portions of two or more adjacent docking bays 404 and 512/514.  The claim element "structure," on the other hand, is not shown in the figures and is described in the specification primarily by its function, *i.e.*, providing physical support to video game controllers.  (*E.g.*, Abstract, col. 2:1-3.)  With respect to structure, the patent ambiguously states: "Each pair of opposite surfaces, a portion of the base **402**, a corresponding docking bay **404**, and/or the locators **410** may comprise a structure for providing physical support to one of the video game controllers **420** during charging."  (Col. 9:51-55.)

## III.    ARGUMENT

### A.    Legal Standards

#### 1.    Claim Construction

Claim construction is a question of law for the Court.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  Claim terms are normally given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).  In cases where the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to non-experts, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words," and "in such circumstances, general purpose dictionaries may be helpful."  *Id*. at 1314.

The specification "is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  *Id.* at 1315 (citations omitted).  "A fundamental rule of claim construction is that terms ... are construed with the meaning with which they are presented in the patent document.  Thus claims must be construed so as to be consistent with the specification...."  *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1370 (Fed. Cir. 2003) (citations omitted).

The Federal Circuit has repeatedly recognized that it is necessary to construe claims with limitations found in the specification when the specification requires the limitations or defines those limitations.  *E.g.*, *Hologic, Inc. v. Senorx, Inc.*, 639 F.3d 1329, 1334-38 (Fed. Cir. 2011) (construing radiation sources as located asymmetrically about the longitudinal axis where "the specification, including the figures, consistently and exclusively show[ed]" it).  *Bell Atlantic Network Servs., Inc. v. Covad Communs. Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (finding a claim term defined by "implication" where the specification used the term consistently throughout).

The prosecution history of a patent may also be relevant to claim construction.  "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."  *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).  This includes a circumstance when a claim was amended, *i.e.*, narrowed to overcome a prior art rejection.  *Id.*

2.      Indefiniteness

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 ¶ 2.  "Because claims delineate the patentee's

1   right to exclude, the patent statute requires that the scope of the claims be

2   sufficiently definite to inform the public of the bounds of the protected invention,

3   *i.e.*, what subject matter is covered by the exclusive rights of the patent.  Otherwise,

4   competitors cannot avoid infringement, defeating the public notice function of

5   patent claims." *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir.

6   2008).  Indeed, the Supreme Court has stated that "[t]he statutory requirement of

7   particularity and distinctness in claims is met only when [the claims] clearly

8   distinguish what is claimed from what went before in the art and clearly

9   circumscribe what is foreclosed from future enterprise." *United Carbon Co. v.*

10  *Binney & Smith Co.*, 317 U.S. 228, 236, 63 S. Ct. 165, 87 L. Ed. 232, 1943 Dec.

11  Comm'r Pat. 758 (1942).

12      "Thus, the definiteness of claim terms depends on whether those terms

13  can be given any reasonable meaning." *Datamize, LLC v. Plumtree Software*, 417

14  F.3d 1342, 1347 (Fed. Cir. 2005).  "Even if a claim term's definition can be reduced

15  to words, the claim is still indefinite if a person of ordinary skill in the art cannot

16  translate the definition into meaningfully precise claim scope." *Halliburton*, 514

17  F.3d at 1251.

18

19      **B.    Disputed Claim Terms**

20          1.    "Base"

21

| **PATENT TERM** | Defendants' proposed construction | Nyko's Proposed Construction |
|---|---|---|
| **Base** | The bottom part of the charging system that provides physical support for the system against an external adjacent surface | The foundation or support upon which structures rest |

27      The two asserted independent claims both recite "a base."  Defendants

28  propose the Court construe "base" as "the bottom part of the charging system that

provides physical support for the system against an external adjacent surface."

Defendants' proposed construction reflects what a person of skill in the art would have understood the term to mean when read in view of the patent specification.  The commonly understood meaning of the word "base" as applied to a physical object is the bottom of the object that supports the object, *e.g.*, the base of a statue.  The specification repeatedly and consistently describes the bottom part of the charging system in both basic embodiments as the "base," and shows the base providing physical support against an external adjacent surface.  For example, the specification repeatedly and consistently describes the bottom as the base 402 on which partitions 406 are mounted (*e.g.*, Fig. 11) or the base 524 on which partitions 528 are mounted (*e.g.*, Fig. 16).



Where a patent specification consistently and exclusively describes a claim element in only one configuration, the Federal Circuit has limited the claim to that description.  For example, in *Hologic, Inc. v. Senorx, Inc.*, 639 F.3d 1329, 1334-38 (Fed. Cir. 2011), the specification consistently and exclusively showed radiation sources located asymmetrically about the longitudinal axis.  The Federal Circuit,

reversing the district court's construction, held that the claim in question should be construed as limited to radiation sources located asymmetrically about the longitudinal axis.  *See also, e.g.*, *Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1304-05 (Fed. Cir. 2011) (reversing claim construction that "body" could have more than one piece because "each figure that depicts a syringe body shows a one-piece body," and the specification did not show any other embodiments); *Kinetic Concepts, Inc. v. Blue Sky Med. Group*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009) (construing "wounds" to only cover skin wounds because "[a]ll of the examples described in the specification involve skin wounds").

Here, the specification consistently and exclusively uses the term "base" to describe only the bottom part of the charging system; *i.e.*, the part that provides physical support for the system against an external adjacent surface.  Under Federal Circuit precedent, "base" is therefore properly construed as "the bottom part of the charging system that provides physical support for the system against an external adjacent surface."

Dictionary definitions of "base" objectively support Defendants' proposed construction. "[J]udges are free to consult dictionaries and technical treatises [a]t any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322-23 (citation omitted). Merriam Webster's Collegiate Dictionary, a well-known source that many courts have relied on,[2] defines "base" as "the bottom of something considered as its support : foundation."  Merriam-Webster's Collegiate Dictionary, p. 101 Eleventh

---

[2] *See, e.g.*, *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1367 (Fed. Cir. 2003) (citing definitions from Merriam-Webster's Dictionary).

1   Edition (2007), Buccigross Decl., Ex. 2.  The latter part of Defendants' construction,

2   "against an external adjacent surface," clarifies that the base supports the other parts

3   of the charging system.  While the base may or may not support the "structures,"

4   that is not what makes it the base of the charging system.

5

6           By contrast, Nyko's construction is an attempt to improperly broaden

7   the claim to include an entire charging system as a "base."  ████████████████

8   ████████████████████████████████████████████████████████████████████████

9   (Buccigross Decl., Ex. 1 at 93-94, 239:13-240:1.)  Further, when deposing PDP's

10  witnesses, Nyko repeatedly tried to elicit statements that the entirety of the accused

11  products constitutes a base.[3]  Nyko apparently realizes that it would be nonsensical

12  and contrary to the Court's understanding[4] to construe "base" as the entire charging

13  system, so instead proposes an intentionally vague and overly broad construction in

14  order to achieve the same goal.

15

16          Nyko's proposed construction suffers from several fatal flaws.  First, it

17  is not supported by the specification.  Nyko improperly seeks to broaden "base" to

18  include a "support" (*i.e.*, "foundation or a support").   The term "support" is broader

19  than the term "base."  For example, walls may support the roof of a house, but are

20  not considered the base of the house.  Further, the term "support," with respect to

21  the base, has no support in the specification.  Indeed, it is the "structures" that are

22  described as providing support (for the controllers), not the base.  (*See, e.g.*,

_____

[3] (*E.g.*, Buccigross Decl., Ex. 3 at 36:15-16.)

[4] In its Order denying Nyko's ex parte application for a temporary restraining order,
the Court stated:  "In particular, the Nyko design consists of a horizontal base, with
the docking bays aligned in a row and the handles of the controllers extending
vertically from the base. (See '848 Patent, Figs. 11–14, 18.) In the PDP design, the
docking bays are positioned on an arced arm that extends vertically from a teardrop-
shaped platform."  (Dkt. No. 51, p. 12.)

-10-

Abstract, col. 2:1-3.)  It is improper to construe a term in such a way as to expand the scope beyond that which is described in the specification.  *Kinetic*, 554 F.3d at 1019; *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010) (*en banc*) ("requiring a written description of the invention plays a vital role in curtailing claims … that have not been invented, and thus cannot be described").

The portion of Nyko's construction "upon which *structures* rest" is also inconsistent with the plain meaning of "base" and the specification.  According to the plain meaning, as evidenced by the dictionary definition, the base of an object is the part that supports the object itself (*i.e.*, against an adjacent surface such as a table or wall), and may or may not support unspecified "structures."  The "base" is never described in the specification as the support upon which structures rest.[5]  Further, because the term structure is itself indefinite, or at a minimum, insolubly ambiguous (see below), Nyko's construction will add confusion, and not assist the trier of fact. For example, does "structures" include the controllers to be charged?  Adapters? Partitions?  DC ports?  What is a "support"?  What does "rest" — a term not used in the specification or the claims — mean?  Does the structure need to be in direct contact with the base to "rest" "upon" it?  Does the structure need to be on top of the base to "rest" "upon" it?

The Court has an obligation to "ensure that the jury fully understands the court's claim construction rulings …."  *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (quoting *Sulzer Textile A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004).   Nyko's proposed construction will confuse the jury and introduce risk of error, rather than clarify the issues.  In effect, Nyko's construction itself requires construction.  By contrast, Defendants' proposed

---

[5] Indeed, since a portion of the base may comprise a "structure" (col. 9:51-55), Nyko's construction would include a foundation or support on which portions of the base rest. This is non-sensical.

1  construction is consistent with the plain meaning and the specification, and will

2  clarify the issues for the jury.

3           2.      "To couple to"

| PATENT TERM | Defendants' Proposed Construction | Nyko's Proposed Construction |
|---|---|---|
| Each of the DC ports configured **to couple to** and provide DC power to a power input port of a respective one of the plurality of video game controllers | To connect directly or indirectly to | To join, link or connect structures together without the use of external wires or cables |

           The plain and ordinary meaning of "to couple to" is "to connect to,"

and there is nothing in the specification that excludes the use of a wire or cable as

means of coupling. Indeed, the specification repeatedly uses "electrically coupled

to" to refer to connections that must use a wire or cable, such as the coupling

between the power input, the AC to DC converter and the USB connectors, and

between the current detector, the USB connectors and an indicator. (Col. 2:51-63.)

The use of the adverb "electrically" does not imply direct versus indirect

connection,[6] so there is no reason why "couple to" should exclude an indirect

connection. Nyko concedes that "electrically coupled to" includes both direct and

indirect connections in its proposed construction of that term. (*See* Joint Claim

Chart, Dkt. No. 86 p. 4.) Nyko's inconsistency in construing like terms is contrary

to Federal Circuit precedent. *See Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195

F.3d 1322, 1331 (Fed. Cir. 1999) ("a claim term cannot be given a different meaning

in the various claims of the same patent").

[6] For example, Nyko construes the adverb electrically as "for the purpose of energy
transfer." (See Joint Claim Chart, Dkt. No. 86 pp. 4-5.)

SMRH:408207766

The reason for Nyko's inconsistency is manifest.  Nyko attempts to procure the same faulty construction it argued in its application for a temporary restraining order.  There, Nyko attempted to distinguish the Cole prior art reference by arguing that Cole did not disclose a USB adapter "configured to couple directly to the power input port of a video game controller, or that no wires are used."  (Dkt. No. 25 p. 4.)  The Court properly rejected this, finding that "neither the direct coupling nor the positioning of the controller are aspects of the Claim 1 limitations." (Dkt. No. 51 p. 11.)  Defendants' proposed construction acknowledges the Court's ruling.

Defendants' construction is also consistent with Federal Circuit precedent construing the term "coupled."  For example, in *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, the Federal Circuit rejected an argument that the term "coupled" "was limited to a mechanical or physical connection," because passages of the written description implied a direct "relationship between elements of the preferred embodiment."  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999).  The Federal Circuit explained that "[g]eneral descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone."  *Id*. at 989.[7]  Nyko's proposed construction ignores this precedent and seeks to exclude the use of external wires or cables even though such limitations cannot be found in the specification or claims.

_____

[7] *See also Mems Tech. Berhad v. Int'l Trade Comm'n*, 447 Fed. Appx. 142, 151-154 (Fed. Cir. 2011) (unpub.) (construing "electrically coupled" with its plain meaning, which includes a direct or indirect connection); *Silicon Graphics, Inc. v. Nvidia Corp.*, 58 F. Supp. 2d 331, 346 (D. Del. 1999) ("The court notes that the ordinary and accustomed meaning of the term 'couple,' even when used in an electronics context does not solely mean 'directly coupled.'"); *Foundry Networks v. Lucent Techs., Inc.*, No. 2-04-CV-40, 2005 U.S. Dist. LEXIS 46840, at *7 (E.D. Tex. May 24, 2005) (construing "coupled" as "directly or indirectly connected"); *Intergraph Corp. v. Intel Corp.*, No. 2:01-cv-160, 2002 U.S. Dist. LEXIS 27117, at ** 12-13 (E.D. Tex. June 3, 2002) (construing "coupled" as "connected, directly or indirectly"), vacated on other grounds by *Intergraph Corp. v. Intel Corp.*, 89 Fed. Appx. 218 (Fed. Cir. 2004).

1    Defendants' proposed construction is also consistent with the parties'

2  proposed constructions for the related term "electrically coupled to."[8]  The

3  specification uses the terms "couple to" and "electrically couple to"

4  interchangeably.  It uses the terms "couple to" in claim 1, yet describes this same

5  connection as "to electrically couple to" in the written description.  (*See* Col. 9:28-

6  32 ("a DC port 408 within each of the docking bays 404 [] is configured to

7  electrically couple to one of the video game controllers 420"); 10:17-21 ("the video

8  game controllers 420 may be received horizontally into the docking bays 404, and

9  electrically coupled to DC ports 408").)  Terms that are used interchangeably in the

10  specification must be construed to have the same meaning.  *Tehrani v. Hamilton*

11  *Med., Inc.*, 331 F.3d 1355, 1361 (Fed. Cir. 2004).

12

13    Moreover, during this lawsuit, Nyko prosecuted a continuation

application of the '848 patent, which issued as U.S. Patent No. 8,378,630 ("the '630

14  patent;" Buccigross Decl., Ex. 4).[9]  For instance, claim 1 of the '630 patent recites:

15

16    a plurality of male DC ports, each … configured to
    ***directly couple to*** and provide DC power to the power

17    input port of a respective video game controller of the
    plurality of video game controllers ***without the use of an***

18    ***external or retractable cable***, each of the DC ports
    configured to electrically and mechanically couple to and

19    support the respective video game controller within the

20    respective docking bay.

21  One of skill in the art reviewing both the '848 patent and the '630 patent would

22  understand that Nyko knew how to claim direct connections by adding the

23

24  _____

25  [8] Both parties agree that "electrically coupled to" should be construed to include
    direct and indirect connections.

26  [9] The '630 patent and its prosecution history are intrinsic evidence for purposes of
    construing the claim terms of the '848 patent.  *NTP, Inc. v. Research in Motion,*

27  *Ltd.*, 418 F.3d 1282, 1293 (Fed Cir. 2005); *see also Microsoft Corp. v. Multi-Tech*
    *Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004).

28

1   limitations "directly," "without the use of an external or retractable cable," and

2   "mechanically."  One would therefore understand that the stand-alone term "to

3   couple to" must be broader and include direct and indirect connections.  *See SRI*

4   *Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) ("It is

5   settled law that when a patent claim does not contain a certain limitation and another

6   claim does, that limitation cannot be read into the former claim in determining either

7   validity or infringement.")

8
9             Nyko's construction would also lead to jury confusion and error
10  because it includes the term "structures" in a manner that is inconsistent with how
    that term is used in the claims.  Nyko's proposed construction speaks in terms of
11  joining, linking, or connecting "structures."  Claim 1 recites "DC ports configured to
12  couple to and provide DC power to a power input port of a respective one of the
13  plurality of video game controllers."  Nyko's proposed construction analogizes a
14  video game controller to a structure.  But "structure" is a separate claim term that
15  requires construction (if even possible).  As used in Claim 1, "structures" must
16  perform certain functions including supporting video game controllers, comprising
17  docking bays, and comprising a plurality of pairs of opposite surfaces.  Neither the
18  DC port nor the video game controller is a "structure" as that term is used in the
19  '848 patent.
20
21            The Court should accordingly construe "to couple to" to mean "to
22  connect directly or indirectly to."  This construction is true to the ordinary meaning
23  of the term, follows Federal Circuit precedent, is consistent with the intrinsic
24  evidence, and will clarify the issues. The Court should reject Nyko's proposed
25  construction as an attempt to improperly import a fabricated limitation to avoid
26  invalidity.  *See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1377 (Fed. Cir.
27  2005) (declining patentee's "plea for the import of a limitation to help preserve the
28  validity of the asserted claims").

Case No. CV12-03001
DEFENDANTS' OPENING CLAIM
CONSTRUCTION BRIEF

3.    "electrically coupled to"

| PATENT TERM | Defendants' Proposed Construction | Nyko's Proposed Construction |
|---|---|---|
| Electrically coupled to | Directly or indirectly electrically connected to | Directly or indirectly connected to for the purpose of energy transfer |

The term "electrically coupled to" is used in claims 3, 13-16, 18, 19, 24, and 25.  The parties agree that "electrically coupled to" encompasses direct and indirect connections.  However, Nyko additionally proposes that the Court replace the commonly understood, objective term "electrically" with the subjective phrase "for the purpose of energy transfer."  That phrase would require the jury to divine the purpose of the connection.  Yet "electrically" is a commonly understood and widely known term that needs no construction.  *See, e.g., Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1304-05 (Fed. Cir. 2007) (holding district court did not err in refusing to construe the term "destination," and citing ordinary meaning of the term).

The term "energy" carries with it narrower connotations of 'power' (rather than data) that could serve to confuse the jury into thinking the term is limited to electrical power.  With such connotations, "for the purpose of energy transfer," would be inconsistent with the claims and specification.  For example, claim 3 recites "a current detector electrically coupled to the plurality of DC ports; and an indicator electrically coupled to the current detector."  (*See also* col. 2:60-63.) It is inaccurate to say that the current detector is coupled to the DC ports and to the indicator "for the purpose of energy transfer."  Rather, they are electrically coupled so the current detector can detect current, and then send status information to the indicator.  Application of this construction consistently across the claims (as required) would lead to inaccuracies.  The Court should reject Nyko's addition.

4.    "Structure"/ "Docking structure"

| PATENT TERM | Defendants' Position | Nyko's Proposed Construction |
|---|---|---|
| Structure; Docking structure | Indefinite | Plain and ordinary meaning |

The terms "structure" and "docking structure" are indefinite.  Nyko contends they should be given their ordinary meaning.  According to Merriam-Webster, a "structure" is "something (as a building) that is constructed."[10]  In other words, a structure is simply something that is constructed.  This does not satisfy the statutory requirement to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 ¶ 2; *see also Halliburton*, 514 F.3d at 1244 ("the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, *i.e.*, what subject matter is covered by the exclusive rights of the patent").

Neither the intrinsic nor the extrinsic evidence describes with clarity what a "structure" is in the context of these claims.  First, call-outs for a structure or a docking structure are conspicuously absent from any patent figures.  Language in the specification further confuses the issue.  The specification attempts, only once, to define the term "structure,"[11] stating that:  "Each pair of opposite surfaces, a portion of the base **402**, a corresponding docking bay **404**, and/or the locators **410** may comprise a structure for providing physical support to one of the video game controllers **420** during charging."  (Col. 9:51-55.)  The use of "and/or" means that, for example, "a portion of the base" is a possible "structure."  Reading the claim in light of this embodiment yields a nonsensical result: "at least one portion of the base

---

[10] http://www.merriam-webster.com/dictionary/structure (last visited April 3, 2013).

[11] The specification does not attempt to explain what "docking structure" means.

SMRH:408207766

1    on the base …."

2
            Furthermore, the specification leaves unclear what else a "structure"
3
may consist of, because the specification simply states that the pairs of opposite
4
surfaces, portion of the base, docking bay, and/or locators "may comprise" a
5
structure.  Thus, it appears they do not need to comprise a structure.  Rather, a
6
structure may be comprised of entirely different components.  This rises beyond the
7
level of insoluble ambiguity.  It is hopelessly vague.
8
            Furthermore, even the inventor, Mr. Navid, cannot make sense of the
9
specification's vague definition.
10



11
12
13
14
15
16
17
18
19
20
21
22

(Buccigross Decl., Ex. 1 at 243:24-244:12.)
23
24
            The Court should accordingly hold "structure" and "docking structure"
25
indefinite.
26
27
28

5.      "At least one structure …"

| **PATENT TERMS** | Defendants' Proposed Constructions | Nyko's Proposed Constructions |
|---|---|---|
| At least one structure on the base for providing physical support to the plurality of video game controllers [Claim1] | At least one structure (but not necessarily all structures) provides physical support to two or more video game controllers | Nyko contends that the only terms that need construction are:<br><br>"at least one structure" = one or more structures;<br><br>"at least one docking structure" = one or more docking structures |
| At least one structure on the base comprises a plurality of docking bays; [Claim 1]<br><br>At least one docking structure defining a plurality of docking bays [Claim 13] | At least one structure (but not necessarily all structures) comprises a plurality of docking bays;<br><br>At least one docking structure (but not necessarily all structures) defines a plurality of docking bays | |
| At least one structure on the base further comprises a plurality of pairs of opposite surfaces; [Claim1]<br><br>At least one docking structure comprises a plurality of pairs of substantially parallel opposite surfaces [Claim 13] | At least one structure (but not necessarily all structures) comprises two or more pairs of opposite surfaces;<br><br>At least one structure (but not necessarily all structures) comprises two or more pairs of substantially parallel opposite surfaces | |

        The parties disagree as to the terms requiring construction.  Nyko contends that only the terms "at least one structure" and "at least one docking structure" require construction, while defendants contend that the these terms must be construed in context, and the entire phrases set forth above require construction.

-19-

1  *Pause Tech. LLC v. Tivo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) (rejecting

2  patentee's plea to ignore "other language appearing later in the claim," and holding

3  that "proper claim construction . . . demands interpretation of the entire claim in

4  context, not a single element in isolation.")  *Id*.  This Court should likewise interpret

5  the entire claim language in context.

6

7          As an initial matter, the phrase "at least one (docking) structure"

   appears multiple times in claims 1 and 13.  Claim 13 adds the term "docking" uses
8
   "define" instead of "comprise" in one limitation, and requires that the pairs of
9
   opposite surfaces be "substantially parallel."  In both claims, a recitation of what the
10
    structure must do or have always follows the term "at least one (docking) structure."
11
    In particular, the structure must (language from claim 13 in parentheses):
12

13                 • provide physical support to the <u>plurality</u> of video game controllers
                   • comprise (define) a <u>plurality</u> of docking bays; and
14
                   • comprise a <u>plurality</u> of pairs of (substantially parallel) opposite
15                    surfaces.

16          Because these phrases are syntactically similar, we focus on the first

17  use of the phrase in claim 1 to explain the construction — "at least one structure on

18  the base for providing physical support to the plurality of video game controllers."

19  According to the claim, at least one structure must provide physical support to a

20  plurality of (two or more) video game controllers.  Additional structures (*i.e.*, "or

21  more") may provide support as well as long as at least one of them provides support

22  for two or more video game controllers.  In other words, there must be at least one

23  structure on the base that provides support for two or more video game controllers.

24
            This is consistent with the patent specification and Mr. Navid's
25
    testimon y ███████████████████████████████████████  Consider
26
    for example the embodiment illustrated in Figs. 11 & 12, but shortened and
27
    modified to have only one partition 406 (*i.e.*, only one of the structures).  In such an
28

embodiment, the single partition 406, or structure, would support two controllers, one on either side of the partition 406.  In the embodiment as illustrated with three partitions 406, each supports two controllers, one on each side.

The above applies to the syntactically similar phrases.  In particular, there must be at least one structure that comprises/defines a plurality of docking bays.  There must also be at least one structure that comprises a plurality of pairs of (substantially parallel) opposite surfaces.

In addition, Claim 1 requires "a plurality of DC ports… each …configured to couple to and provide power to a power input port of the plurality of video game controllers."   Claim 13 requires "a plurality of mini-USB connectors … to provide DC power… to the plurality of video game controllers." Accordingly, the claimed charging system by its express language must necessarily be capable of accommodating multiple controllers simultaneously.   Therefore, at least one structure (because the claim is broad enough to include an embodiment with just one structure) must provide physical support to a plurality of video game controllers being charged.

Significantly, Nyko amended these limitations during prosecution to overcome prior art rejections.   The Patent Office initially rejected original Claims 1 and 13 (then pending claim 14).  Buccigross Decl., Ex. 5.  In response, Nyko revised claim 1 to read:  "at least one structure on the base for providing physical support to the ~~at least one~~ plurality of video game ~~controller~~ controllers…."  This amendment required the charging system to charge two or more controllers, but allowed only a single "structure" on the base to support these two or more controllers.  Nyko thus disclaimed the broad scope that it now tries to recapture with its proposed constructions.  This is improper.  *See Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) ("an amendment that clearly narrows the

-21-

scope of a claim, such as by the addition of a new claim limitation, constitutes a disclaimer of any claim interpretation that would effectively eliminate the limitation or that would otherwise recapture the claim's original scope").

Nyko also amended claim 1 as follows: "~~at least one DC port~~ a plurality of DC ports on the base, ~~the at least one DC port~~ each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the ~~at least one~~ plurality of video game ~~controller~~ controllers." Thus, where Nyko intended to claim a one-to-one correspondence between claim elements (a plurality of DC ports configured to couple to a plurality of controllers), Nyko clearly knew how to do so. Nyko did not maintain this one-to-one correspondence in the claim phrases proposed for construction.

Nyko could have used different claim language, but chose not to. For instance, it could have used "a plurality of structures." Instead, Nyko chose to retain "at least one," which can include both a single structure and a plurality of structures, to provide support to two or more controllers. The Court should adopt Defendants' proposed constructions because they provide meaning to the "at least one structure" language in the context of the claims. On the other hand, Nyko's construction would render the language—which Nyko added to overcome prior art—superfluous.

6.     "supported by the base"

| PATENT TERM | Defendants' Proposed Construction | Nyko's Proposed Construction |
|---|---|---|
| Supported by the base | On the base | Plain and ordinary meaning |

While claim 1 recites "a plurality of DC ports on the base," claim 13 recites "a plurality of male mini-USB connectors supported by the base." Nyko fails to offer any construction for the term. Either "supported by the base" means "on the

SMRH:408207766

base," or it is indefinite.

The Federal Circuit in *Johnson Worldwide* identified "situations where a sufficient reason exists to require the entry of a definition of a claim term other than its ordinary and accustomed meaning." One of those situations "is where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Johnson Worldwide*, 175 F.3d at 990. Here, the language of the claim lacks clarity, and the specification provides no explanation for what the term "supported by the base" means.

Of the two charging station embodiments shown in the specification, one shows male mini-USB connectors on the base. (*See* '848 patent, Figs. 11-13). This is the embodiment covered by claims 1 and 13. The other embodiment shows male mini-USB connectors on an adapter. That latter embodiment corresponds to claims 18 and 25, which recite the "adapter" described in the specification, not claim 13. Thus, the only disclosed embodiment corresponding to the disputed claim language contains male mini-USB connectors on the base. "Supported by the base" must therefore mean "on the base." *See, e.g., Retractable Techs.*, 653 F.3d at 1304-05 (reversing claim construction that "body" could have more than one piece because the specification did not show anything other than a one piece body); *Hologic*, 639 F.3d at 1334-38 (reversing claim construction and limiting claim to asymmetry about longitudinal axis where the specification, including the figures, consistently and exclusively showed asymmetry about the longitudinal axis); *Kinetic Concepts*, 554 F.3d at 1018-19 (construing "wounds" to only cover skin wounds because "[a]ll of the examples described in the specification involve skin wounds").

Additionally, "[w]hen a claim limitation is defined in purely functional terms, the task of determining whether that limitation is sufficiently definite is a

difficult one that is highly dependent on context (*e.g.*, the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area)." *Halliburton*, 514 F.3d at 1255.  Here, the claim recites "supported by the base" using purely functional terms.  There is no structure in the claim describing a mechanism by which the mini-USB connector is supported by the base.  The only context provided by the patent document shows that the mini-USB connector in the first embodiment is "on the base."

To the extent that the Court finds this term is ambiguous but can still be construed, precedent dictates that the Court construe it narrowly (*i.e.*, as "on the base").  *See Halliburton*, 514 F.3d at 1253 ("We note that where a claim is ambiguous as to its scope we have adopted a narrowing construction when doing so would still serve the notice function of the claims."); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (where there is a choice in construction, and the disclosure indicates that the applicant is at least entitled to the narrower meaning, "we consider the notice function of the claim to be best served by adopting the narrower meaning.")

If "supported by the base" does not mean "on the base," it is indefinite because it is entirely unclear how or when the mini-USB connector is "supported by the base."  Is the connector "supported by the base" if it sits on another component that is on the base?  How many components can be disposed between the connector and the base?

1  DATED:  April 3, 2013          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2

3                                          By      /s/ Daniel Y. Yannuzzi

4                                                     DANIEL Y. YANNUZZI
                                                      STEVEN M. HANLE
5                                                 GRAHAM (GRAY) M. BUCCIGROSS
                                                    MATTHEW M. MUELLER
6                                           Attorneys for Defendants,
7                                           Performance Designed Products LLC,
                                            Eveready Battery Co., Inc.,
8                                           and Energizer Holdings, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV12-03001
DEFENDANTS' OPENING CLAIM
CONSTRUCTION BRIEF