1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations

3  DANIEL N. YANNUZZI, Cal. Bar No. 196612
   dyannuzzi@sheppardmullin.com
4  GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
   gbuccigross@sheppardmullin.com
5  MATTHEW M. MUELLER. Cal. Bar No. 268486
   mmueller@sheppardmullin.com
6  12275 El Camino Real, Suite 200
   San Diego, California  92130-2006
7  Telephone:  858.720.8900
   Facsimile:    858.509.3691
8
9  STEVEN M. HANLE, Cal. Bar No. 168876
   shanle@sheppardmullin.com
10 650 Town Center Drive, 4th Fl.
   Costa Mesa, CA 92626
11 Telephone:  714.513.5100
   Facsimile:    714.513.5130
12
   Attorneys for Defendants,
13 Performance Designed Products LLC,
   Eveready Battery Co, Inc., and Energizer
14 Holdings, Inc.

15            UNITED STATES DISTRICT COURT
16            CENTRAL DISTRICT OF CALIFORNIA

17 NYKO TECHNOLOGIES, INC. a            Case No. CV12-03001-GAF-VBK
   California Corporation,,
18                                       **DEFENDANTS' RESPONSIVE
                  Plaintiff,             CLAIM CONSTRUCTION BRIEF**
19
         v.                              **DATE:    April 29, 2013**
20                                       **TIME:    9:30 A.M.**
   ENERGIZER HOLDINGS, INC. a            **CTRM:    740**
21 Missouri Corporation, EVEREADY
   BATTERY CO., INC., a Delaware         **Hon. Gary Allen Feess**
22 Corporation, and PERFORMANCE
   DESIGNED PRODUCTS LLC, a
23 California Limited Liability Company,
24                Defendants.
25
26
27
28

SMRH:408268375                                      Case No. CV12-03001
                                        DEFENDANTS' RESPONSIVE CLAIM
                                             CONSTRUCTION BRIEF

# I.    INTRODUCTION

Defendants offer claim constructions based on the plain and ordinary meanings of the disputed claim terms as informed by the written description and, where appropriate, the prosecution history.  Nyko's claim constructions, on the other hand, are unabashed attempts to evade the prior art and slant the infringement analysis.  Nyko's constructions include improper attempts to import limitations from the specification into the claim, and rely on inadmissible extrinsic evidence to deviate from the plain and ordinary meaning of claim terms.

Reliance on extrinsic evidence is improper, in part, because the intrinsic evidence is unambiguous as to "base," "to couple to," "electrically coupled," and "at least one," and supports Defendants' constructions.  *See Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper.").  Moreover, Defendants' expert did not even review the prosecution history prior to opining regarding the constructions of these terms, adopted Nyko's attorneys' constructions wholesale (Supplemental Declaration of Graham M. Buccigross ("Supp. Buccigross Decl."), Ex. 6 at 11 and 13), and his report simply parrots counsel's arguments, adding nothing of substance for the Court to consider.  The Court should exclude Nyko's proffered expert testimony and Defendants are filing a separate motion to exclude their expert testimony.  Likewise, the court should disregard the inventor testimony except to the extent it contradicts Nyko's arguments.

Further, Nyko's Opening Claim Construction Brief begins with a significant error.  As discussed more fully below, Nyko includes two doctored versions of Fig. 18 as depicting the invention of the asserted claims (1-5, 7, 8, 10-17).  This is incorrect.  Figures 16-23 depict an entirely different embodiment, not at issue, which includes separate adapters 516 (callouts omitted from Fig. 18 in Nyko's brief) used in connecting the controllers to the base of the charging system.  In this

1   embodiment, the DC ports are on the adapters.  This embodiment is claimed in <u>non-</u>
2   <u>asserted claims</u> 18-27.  The asserted claims, on the other hand, do not claim an
3   adapter, and the DC ports are <u>on the base itself</u>, as shown in Figs. 11-15.  This
4   fundamental error seriously undermines Nyko's claim construction positions.

5   **II.    <u>ARGUMENT</u>**

6       **A.    Disputed Claim Terms**

7           1.    **"Base"**

8       Defendants propose that the Court construe "base" as "the bottom part of the
9   charging system that provides physical support for the system against an external
10  adjacent surface."  This construction reflects the widely accepted meaning of this
11  commonly understood term, which is just how a person of skill in the art at the time
12  would understand it.  The written description and figures repeatedly describe and
13  depict the base as the bottom part of the charging system and not as the entire
14  charging system, as Nyko now argues.

15      Nyko proposed in its Opening Brief that the Court construe "base" as "the
16  foundation or support on which *structures* rest," yet argued that the base was the
17  entire charger body.  Apparently recognizing the indefiniteness of the claim term
18  "structures," which it used in its construction of "base,"[1] Nyko revised its
19  construction to be "the foundation or support upon which the controllers rest.  The
20  foundation/support is the entire body of the charger for supporting the video game
21  controllers in the docking bays."  Nyko now argues that each "structure" (an
22  indefinite term) is part of the base, and not merely on the base.

23      Nyko's constructions are also inconsistent with the commonly understood
24  meaning of "base" as the foundational component of a given object – not necessarily
25  a support for other, external objects.  For example, a table may support other

26  _____

27  [1] (*See* Supp. Buccigross Decl., Ex. 6 at 103 (admitting previous construction was
    flawed because there was "ambiguity in the term 'structures'").)

28

objects, but the base of a table is the bottom part of the table that supports the table. Further, Nyko's new construction is still confusing – for instance, what is the "<u>body of the charger</u>"?[2]  Does it always include "structures?"  Still further, Nyko relies heavily on legally irrelevant extrinsic evidence in its attempt to sweep in PDP's design, which Nyko never contemplated.

### a.     Nyko's Construction is Erroneous Because the "Base" Is Not the Entire Body of the Charging System

Nyko's proposed construction is erroneous because the specification clarifies that the "base" is only one component of the charging system, not the whole system. The specification consistently and exclusively uses the term "base" to describe only the bottom portion of the charging system.

Tellingly, Nyko doctored the intrinsic evidence in an attempt to support its position.  On page 8 of its brief, Nyko includes a substantially altered version of Fig. 18 of the '848 patent (reproduced below on the left).  The correct version of Fig. 18 is reproduced below on the right.



As shown, Nyko omitted numerous callouts for the components of the charging system.  Most significantly, Nyko removed callout 510, which refers to the entire charging station.  ('848 patent col. 11:49-12:12.)  The correct Fig. 18, as well

---

[2] While Nyko's construction refers to the "body" of the charging system, Nyko's expert opines that the "base" is the entire charging system, and did not limit the "base" to the "body."  (Supp. Buccigross Decl., Ex. 6 at 109.)

as Figs. 16-17 and 22, show that the separately identified base 524 is the bottom part of the charging station, and not the entire charge station 510 as Nyko argues. ('848 patent col. 12:1-4; *see* Nyko Opening Brief, at 7-8.) Nyko also removed the callouts for the adapters 516, which are <u>separate components from the base,</u>[3] and even separate from the charging station 510. (*See* Figs. 17 and 22.)

An even more fundamental problem with Nyko's reliance on Figures 18 and 22 is that these figures relate to a completely different embodiment from the one in the asserted claims. As clearly shown in those figures, as well as Figures 16, 17 and 19-21, the DC ports are on the adapters, not on the base. Rather, the base has electrical contacts 520, which mate with electrical leads 522 on the bottom side of the adapters. (Col. 12:9-14.) In the asserted claims, the DC ports are "on the base." (*See, e.g.*, col. 15:39 (independent claim 1).) Figures 11-15 show this embodiment.[4] Those figures, as well as Figures 16-22, show the base as the bottom part of the charging system 524, not as the entire charging system 510, as Nyko argues.

Nyko's attempt to rely on the incorrect embodiment further undermines its construction of "base." Nyko contends that "base" includes a "support upon which the controllers rest." However, as clearly shown in Figures 16-19 and 22, and as described in the specification (col. 12:53-13:21) the controllers rest on adapters, not on the base. Under Nyko's construction, the adapter would be a "base" because it is a support on which controllers rest. However, the written description and figures make clear that the adapters are neither a "base" nor a part of the base. (*See, e.g.*, Fig 22.) In sum, Nyko's reliance on the adapter embodiment of Figures 16-23 and

---

[3] Nyko also removed the callouts for the angled edge 532 of adapters 516 and angled corners 534 of the base, further demonstrating that the adapter and the base are separate components.

[4] In relying on Figs. 16-22, Nyko is attempting to mislead the Court with respect to another issue in the case: whether the asserted claims are entitled to the priority date of a provisional application filed October 24, 2007. They are not, as a matter of law, because that provisional did not disclose the embodiment of the asserted claims, which require DC ports on the base and which do not require an adapter.

1   Nyko's claim construction is incorrect, unsupported, and misleading.

2          The claims also make clear that the "base" is not the entire body of the

3   charging system.  For instance, Claim 1 recites a charging system comprising:  a

4   base, structures on the base, DC ports on the base, etc.  Claim 1 does not recite a

5   base "comprising" DC ports.  Thus, the DC ports must be on the base, but the claims

6   make it clear that they are not part of the base.  Otherwise, the claim would read

7   "part of the base is on the base."

8          Nyko relies on a lone statement in the specification referring to "the charging

9   station (or charger base)" as supporting its position that the element "base" is the

10  entire charging system.  ('848 patent, col. 14:33-36.)  First, this statement refers to

11  the "adapter" embodiment of claims 18-27, not the embodiment of the asserted

12  claims.  Further, throughout the patent, including as explained above, the "base" and

13  the "charging system" or "charging station" are called out and described separately,

14  and the base is called out as only a part of the entire charging system.  In Figures 16-

15  18, the base is called out as 524 whereas the charging system is called out as 510.  In

16  Figures 11-15, the base is called out as 402, whereas the charging system is called

17  out as 400.  Additionally, the section Nyko relies on uses the term "charger base" as

18  a colloquialism and not to refer to specific structure.  The Court should not confuse

19  this colloquialism with the claimed element, "base."[5]

20         Further, the description accompanying the figures repeatedly and consistently

21  describes the base as only a part of the charging station.  *See, e.g.*, Abstract ("A

22  video game controller charging system includes a base…); Abstract ("The base of a

23  charging station …); 9:24-26 ("The video game controller charging system 400

24  includes a base 402 and one or more docking bays 404…).  For example, under

25  Nyko's construction, the first two passages would read:  "a video game controller

26  _____

27  [5] Figs. 15 and 22 show the "charger base" without any callout number, further
    supporting that the term "charger base" is a different term than "base," which is only
    one component of the charging system.

28

base 400 includes a base," or "the base of a base."

Nyko attempts to bolster its position by mischaracterizing Defendants' construction. In particular, Nyko argues that the "base must be a substantive body, not one restricted to a bottom surface." (Nyko Opening Brief, at 7:20-21.) However, Defendants' construction does not restrict the base to a bottom "surface." Rather, Defendants' construction provides that the base is the "bottom <u>part</u> of the charging system." There is nothing in Defendants' construction that precludes the base, *i.e.*, the "bottom part" of the charging station, from housing power inputs or other electrical components of the charging system, as Nyko argues. Thus, contrary to Nyko's contention, Defendants' construction does not read out a preferred embodiment.[6]

Nyko additionally argues that because the base <u>may</u> include two docking bays, LEDs and vertical surfaces, it must be the entire charger body. This does not follow. Docking bays, LEDs, and the vertical surfaces at the ends of the base could be included either on the base, or on another part of the charging system. The fact that an embodiment in the specification includes them on the base does not redefine the plain meaning of "base" to be the entire charger body.

### b.   Nyko Relies on Inadmissible Extrinsic Evidence

Lacking support in the intrinsic evidence, Nyko asks the Court to adopt a special meaning of "base" based on legally irrelevant extrinsic evidence. First, in order to ascribe a special meaning to a claim term, a patentee must "clearly set forth a definition of the disputed claim term" other than its plain and ordinary meaning.

---

[6] Regardless, the fact that some dependent claims recite electrical components housed in the base does not mean that the base always has to house those components. That would violate the doctrine of claim differentiation. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 n.3 (Fed. Cir. 2008) ("Under the doctrine of claim differentiation, 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.' <u>*Phillips v. AWH Corp.*</u>, 415 F.3d 1303, 1315 (Fed. Cir.2005) (en banc).").

1    *Thorner v. Sony Computer Entm't Am.* LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

2    There is no evidence that the patent redefines the common term "base."

3            Further, Nyko relies on extrinsic evidence to argue that the "industry"

4    understands that the term "base," in the context of video game controller chargers,

5    means the entire charging system.  (Supp. Buccigross Decl., Ex. 6 at 108-123.)[7]  Yet

6    when asked to support this contention, neither Nyko nor its expert could cite to a

7    single example from the legally relevant time period, *i.e.*, at the time of the

8    invention.  Such expert testimony, unsupported by underlying facts, not entitled to

9    any weight.  *See, e.g.*, *Sitrick v. Dreamworks*, *LLC*, 516 F.3d 993, 1001 (Fed. Cir.

10   2008); *U.S. v. Various Slot Machines*, 658 F.2d 697, 700 (9th Cir. 1981).  Further, it

11   is black letter law that "the ordinary and customary meaning of a claim term is the

12   meaning that the term would have to a person of ordinary skill in the art in question

13   at the time of the invention, i.e., as of the effective filing date of the patent

14   application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en*

15   *banc*) (emphasis added).  Nyko's attempt to rely on limited industry usage of the

16   colloquial marketing term "charge base" is misplaced, because Nyko's only

17   evidence post-dates the patent application and the time of the alleged invention.

18          Also irrelevant (and misleading) is Nyko's citation to partial quotes of the

19   deposition testimony of Defendant Performance Designed Products LLC's ("PDP")

20   Chief Technical Officer, Thomas Roberts, which ignores his testimony to the

21   contrary.  Nyko specifically asked Mr. Roberts if "the charger as a whole is a base

22   because it is supporting the controllers."  (Supp. Buccigross Decl., Ex. 7 at 41:22-

23   23).  Mr. Roberts disagreed.  (*See* Supp. Buccigross Decl., Ex. 7 at 41:22-42:7.)  In

24   fact, Mr. Roberts testified that he thinks only the bottom part of a charging system is

25

26   ───────────────
     [7] Indeed, Nyko's expert stated in his deposition "that the plain and ordinary meaning
27   of the word base is irrelevant…."  (Supp. Buccigross Decl., Ex. 6 at 95.)  Instead, he
     "contend[s] that base has a specific meaning in the context of these type of video
28   game controller chargers."  (Supp. Buccigross Decl., Ex. 6 at 96-99.)

the base.  (Supp. Buccigross Decl., Ex. 7 at 39:9-13 ("Q.  Okay.  You think that the bottom portion is the base?  A.  Yeah.  That's what I would call it.  Q.  Is any other part the base?  A.  Not to me.").)

In fact, other industry usage instead refers only to the bottom part of the charge system as the base.  For example, an anticipating prior art reference, PCT Application No. WO 2007/078312 to Cole, describes only the bottom part of the charge system as the "base" (callout 10), which to which posts (callout 11) attach. The entirety of the charging system is called out separately as item 15.  (Supp. Buccigross Decl., Ex. 8, Para [0019]) ("Fig. 1 shows a first embodiment of the video game controller rack 10.   A plurality of cantilever posts 11 are affixed in pairs to the video game controller **base** 15 to create a cradle in which to securely store the video game controller.").)

Here, Nyko's unsupported extrinsic evidence contradicts the unambiguous intrinsic evidence; namely, the specification's teachings that the base is only the bottom part of the charging system.  The Court should disregard this extrinsic evidence.  *See, e.g., Vitronics*, 90 F.3d at 1583 ("In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper.")

### c. Nyko's Construction Eviscerates the Requirement that the Base Serve a Foundational Role

Both Defendants and Nyko agree that the "base" must serve a foundational role for the charging system.  Indeed, Nyko argues that "the claim language recites the foundational nature of the 'base' for the docking bays…."  (Nyko Opening Brief, at 6:20-22.)   Nyko also uses the word "foundation" in its proposed construction.

However, Nyko's constructions would not require the "base" to serve a foundational role.  By using the phrase "or support," Nyko allows for the "base" to be any kind of "support," not just a foundational support.  Thus, Nyko's

constructions can mean, *e.g.*, a support that props something else up from the side, or a support from which something is suspended.  The constructions are not limited to supporting something from the bottom, as the terms "foundation" and "base" are.

The term "support" is broader than "foundation" and "base," and because it is recited in the alternative (*i.e.*, "foundation <u>or</u> support), its inclusion subsumes the term "foundation."  Accordingly, Nyko's constructions literally mean:  "the support on which controllers rest."  But the "base" must serve a foundational role for the charging station itself.  As claim 1 recites, it is the "structures" that "provid[e] physical support to the plurality of video game controllers."  There are no grounds in the specification for broadening base to be a generic "support" without a foundational aspect to it.  Tellingly, <u>Nyko fails to address the inclusion of "or support" in its Opening Brief</u>.

Nyko now contends that the base is anything that supports video game controllers.   This eviscerates the foundational requirement that the base serves as the foundation of the charging system itself.

### d.        The Base Is the Bottom Part of the Charging System

As explained above, the specification consistently and exclusively depicts and describes the "base" as the bottom part of the charging system that provides physical support against an external adjacent surface.  Federal Circuit precedent thus mandates that the Court construe "base" accordingly.  *See Hologic, Inc. v. Senorx, Inc.*, 639 F.3d 1329, 1334-38 (Fed. Cir. 2011); *Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1304-05 (Fed. Cir. 2011); *Kinetic Concepts, Inc. v. Blue Sky Med. Group*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009).

Defendants' construction uses the phrase "the bottom part of the charging system" rather than "foundation" to present clearer language to the trier of fact.  "Bottom" is a term used in everyday language – people can generally identify what the bottom of something is.  To the contrary, "foundation" typically refers to the bottom part of a building rather than part of a smaller object like an electronic

product.  It is not as widely understood and clearly defined as "bottom" and has a somewhat vague colloquial usage.  For instance, the "foundation" of a thing does not necessarily equate with the base, but can include other structures, such as foundational beams in a building.

Indeed, the commonly understood meaning of the word "base" as applied to a physical object is the <u>bottom part</u> of the object that supports the object, *e.g.*, the base of a statue.  Merriam-Webster's definition of "base" as the "bottom of something considered as its support: foundation" objectively supports Defendants' proposed construction.  (Buccigross Decl., Ex. 2.)

In short, the specification requires Defendants' construction and soundly refutes Nyko's.  Defendants' construction is also consistent with the commonly understood meaning of "base."  Nyko's lengthy constructions are contradicted by the specification and the commonly understood meaning of "base," and would confuse the trier of fact and lead to error.

2.      **"To couple to"**

The Court should construe "to couple to" as "to connect directly or indirectly to."  The plain and ordinary meaning of "to couple to" is "to connect to," which is not limited to a direct connection.  Nyko's construction is an unabashed attempt to add limitations solely to avoid prior art.  However, the Federal Circuit has held that

> The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.

*Thorner*, 669 F.3d at 1365 (citations omitted).  Here, nothing in the specification specially defines "to couple to" or disavows indirect coupling.  Therefore, it would be improper to deviate from the plain and ordinary meaning.

Moreover, the Court already rejected Nyko's position, finding that "neither the direct coupling nor the positioning of the controller are aspects of the Claim 1 limitations."  (Dkt. No. 51 p. 11.)  Defendants' proposed construction acknowledges the Court's ruling, and the Court should adopt it.

### a. Nyko's Construction is Inconsistent with Federal Circuit Precedent Construing the Term "Coupled"

Nyko's construction is inconsistent with and ignores Federal Circuit precedent construing the term "coupled."  In *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 989-92 (Fed. Cir. 1999), the Federal Circuit held that "coupled to" "is not limited to a mechanical or physical coupling."  *Id.* at 992.[8] Nyko's argument that "coupled to" should be limited to direct connections because the '848 patent also recites "electrically coupled to" fails in light of *Johnson*.  In *Johnson*, the patent claims also used both "coupled to" and "electrically coupled to." *Id.* at 987-88.

Nyko's reliance on *In re Abbott Diabetes Care, Inc.*, 696 F.3d 1142 (Fed. Cir. 2012), is misplaced.  That case construed "electrochemical sensor," finding that it meant "a discrete electrochemical sensor devoid of external connection cables or wires to connect to a sensor control unit."  *Id.* at 1148-51.  The court relied on the fact that the claim itself recited that the sensor had a plurality of "contact pads" "couple[d]" to "conductive contacts."  *Id.* at 1149.  Logically, pads would not be connected to contacts via wires or cables, as pads and contacts are meant to directly connect.  Furthermore, the patent specification "contain[ed] only disparaging remarks with respect of the external cables and wires of the prior-art sensors."  *Id.* at

---

[8] *See also Mems Tech. Berhad v. Int'l Trade Comm'n*, 447 Fed. Appx. 142, 151-154 (Fed. Cir. 2011) (unpub.); *Silicon Graphics, Inc. v. Nvidia Corp.*, 58 F. Supp. 2d 331, 346 (D. Del. 1999); *Foundry Networks v. Lucent Techs., Inc.*, No. 2-04-CV-40, 2005 U.S. Dist. LEXIS 46840, at *7 (E.D. Tex. May 24, 2005); *Intergraph Corp. v. Intel Corp.*, No. 2:01-cv-160, 2002 U.S. Dist. LEXIS 27117, at ** 12-13 (E.D. Tex. June 3, 2002), vacated on other grounds by *Intergraph Corp. v. Intel Corp.*, 89 Fed. Appx. 218 (Fed. Cir. 2004).

1144, 1149.  That is not the case here.  In contrast to *Abbott*, the male and female "ports" of the type recited in the '848 patent are often connected through cables. Indeed, Nyko's own U.S. Patent 6,881,147 ("the '147 patent," Supp. Buccigross Decl., Ex. 9), refers to the very same controller port as being connected via a cable ("[t]he video game controller may be coupled to the game console over a cable….").

### b.    "To Couple to" Is Not Limited to Mechanical Coupling

Nyko's proposed construction is premised on its faulty argument that the patent uses "to couple to" only in the mechanical context.  Nyko relies on the patent's use of "electrically coupled to" when referring to electrical connections. Nyko's argument fails because the specification uses "couple to" and "electrically coupled to" interchangeably.  Claim 1 uses the term "couple to" when referring to the connection between the DC ports and the video game controllers, which Nyko argues must be direct and mechanical.  But the patent describes this very same connection as "electrically coupl[ing]":  "a DC port 408 within each of the docking bays 404 [] is configured to electrically couple to one of the video game controllers 420."  (*See* '848 patent, Col. 9:28-32.)  And again, "the video game controllers 420 may be received horizontally into the docking bays 404, and electrically coupled to DC ports 408."  (*Id*., Col. 10:17-21.).  Nyko therefore cannot argue "to couple to" is limited to a pure mechanical coupling when the specification refers to this element as electrically coupling.

These passages of the specification also highlight that electrical coupling is a species of coupling.  The use of the broader term "to couple to" includes the species of electrical coupling and other species as well.[9]  Nyko's purported expert admitted

---

[9] Nyko's contention that Defendants propose construing "to couple to" and "electrically coupled to" to mean the same thing is just wrong.  Defendants offer different constructions for different terms.  "To couple to" means "to connect directly or indirectly."  "Electrically coupled to" means "directly or indirectly electrically coupled to."  This difference in constructions is precisely commensurate with the difference in claim terms.  Moreover, Nyko's argument defies common sense.  For example, if a patent claimed "shoes" and "blue suede shoes," one would

1   this much when he testified that "it's similar to the concept of rain is precipitation

2   but all precipitation isn't rain."  (Supp. Buccigross Decl., Ex. 6 at 63-64.)  Just

3   because claim 1 recites "provid[ing] DC power to" the power input port of the game

4   controllers does not limit "to couple to" to a direct mechanical connection.  That

5   phrase merely clarifies that in addition to connecting, power is provided, and that

6   the power is DC power.

7         Regardless, even if "to couple to" were used in the purely mechanical context

8   (it is not), there is nothing in the specification that precludes an indirect mechanical

9   connection, such as through cables or wires.

10              **c.**      **Nyko Attempts to Improperly Read Limitations into the Claims**

11        Nyko's attempt to limit "to couple to" to mechanical coupling is nothing more

12  than an attempt to improperly import limitations allegedly found in the specification.

13  It is a "cardinal sin[] of patent law" to "read[] a limitation from the written

14  description into the claims."  *Phillips*, 415 F.3d at 1319-20; *see also Thorner*, 669

15  F.3d at 1365 (claim terms are accorded their ordinary and customary meaning

16  absent special lexicography or a clear disavowal).  Not only is this improper, the

17  specification <u>never</u> even qualifies coupling or uses the term "mechanical."  Nyko

18  does not and cannot point to any special lexicography (explicit or implicit) or

19  disclaimer in this case.  In fact, Nyko's purported expert admitted during his

20  deposition that the patent does not disavow the full scope of the term's meaning or

21  specially define the term "couple."  (Supp. Buccigross Decl., Ex. 6 at 83.)  Having

22  chosen to claim broadly, Nyko should not be given a narrow construction to avoid

23  the prior art.  *See Johnson*, 175 F.3d at 992.

24

25

26

27  not read "shoes" as excluding "blue suede shoes."  Similarly, the use of "coupled to"
    does not exclude "electrically coupled to."

28

### d.      The Dictionary Definitions Support Defendants' Construction

Nyko offers several dictionary definitions.  To the extent they apply, each and every definition supports Defendants' construction and contradicts Nyko's.  Nyko does not point to a single definition of "couple" (or the distinct word "coupling") that requires a direct mechanical connection.

Nyko first offers the definition of "coupling" from the Dictionary of Mechanical Engineering – "a device for connecting together two or more parts of a mechanism."  (Nyko Opening Brief, at 20:3-5.)  First, even this term does not require a direct connection, but rather the "coupling" is an intervening part that connects two others.  According to this definition, two subject devices are connected, not directly to one another, but indirectly through the coupling.  Further, this definition does not apply because it refers to a <u>coupling device</u>, and is taken from a mechanical engineering dictionary.  By contrast, the '848 patent uses the verb "to couple to," and not in the purely mechanical context.

Nyko's other dictionary definitions support Defendants' construction including indirect connections.  Nyko proffers a purely mechanical definition of "couple" as "to connect with a coupling, such as of two belts or two pipes."  But the belts on a car connect indirectly through pulleys, and pipes connect indirectly through fittings or couplings.  Thus, even Nyko's dictionary supports indirect connections and Defendants' construction.   Significantly, this same dictionary also defines "couple" as "[t]o connect two circuits so signals are transferred from one to the other."  This obviously allows for wires and cables, and again supports Defendants' construction.  (Nyko Ex. F.)

Nyko relies on another dictionary, but fails to mention that it defines "couple" as "[t]o connect two circuits so signals are transferred from one to the other."  (Nyko Ex. G.)  This similarly supports Defendants' construction because they include indirect connections through wires and cables, as Nyko's expert conceded.

**e.     Nyko's Extrinsic Evidence is Improper and Contradicts the Plain Meaning of "to Couple to"**

It is improper to consider extrinsic evidence when ordinary meaning is clear. *Northern Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1288 (Fed. Cir. 2000) ("The use of extrinsic evidence to construe the scope of a claim is improper where the ordinary and accustomed meaning of a claim term does not render the scope of the claim unclear and where the patentee has not chosen to be his own lexicographer."). Here, Nyko attempts to support its flawed construction with expert and inventor testimony. The Court should disregard this extrinsic evidence because the ordinary meaning of "to couple to" is clear as explained above, and the testimony contradicts the ordinary meaning. Moreover, Nyko's own '147 patent contradicts Nyko's expert and inventor testimony. It states that "[t]he video game controller may be coupled to the game console over a cable…." ('147 Patent, Abstract.) Claim 14 of the '147 patent recites "each said video game controller being coupled to a corresponding one of the game consoles." Thus, the '147 patent uses "coupled to" to mean an indirect connection, including through cables. Further, the '147 patent repeatedly refers to a monitor being "coupled to" the game console, also via a wire or cable. ('147 patent, col. 5:37-45; Supp. Buccigross Decl., Ex. 6 at 45-46.) Additionally, claim 10 of the '147 patent recites an "expansion module <u>electrically coupled</u> to the video game controller." This refutes Nyko's contention that the recitation of both "electrically coupled" and "coupled to" in the same patent means that "coupled to" is limited to a direct mechanical connection.

**f.     Nyko's Construction Would Confuse the Trier of Fact**

Nyko's construction would also lead to jury confusion and error because it includes the term "structures" in a manner that is inconsistent with how that term is used in the claims. Nyko's proposed construction analogizes DC ports and video game controllers to structures. But "structure" is a separate claim term that requires construction (if even possible). Neither the DC port nor the video game controller is

a "structure" as that term is used in the '848 patent.

### 3.   **"electrically coupled to"**

For the phrase "electrically coupled to," the parties agree that "coupled to" means "directly or indirectly connected to."  The lone point of disagreement is the construction of "electrically."  (See Dkt. No. 98 at 24.)  "Electrically" is a commonly and widely understood term that does not need construction.  *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295, 1304-05 (Fed. Cir. 2007) (the court need not construe widely known terms).

Nyko argues that "electrically" means "for the purposes of energy transfer." Nyko relies on a dictionary definition that defines "electrically couple" as "to connect two circuits so signals are transferred from one to the other."  (Nyko Opening Brief, at 25.)  This does not support Nyko's proposed construction.

Nyko's construction will only confuse the jury because it implies that electrical coupling is limited to the transfer of energy for the purpose of charging the controllers.  The patent's use of the term is not so limited.  For instance, claim 3 recites "a current detector electrically coupled to the plurality of DC ports; and an indicator electrically coupled to the current detector."  The current detector is coupled to detect current and then send status information to the indicator. Additionally, Nyko's construction defines "electrically" according to the subjective intent of the manufacturer (*i.e.*, for the purposes of …).  Nowhere in Nyko's brief is there any support for limiting "electrically" as Nyko desires.

### 4.   **"Structure"/ "Docking structure"**

Nyko fails to offer any construction for these terms, which are indefinite. Indeed, neither Nyko's purported expert nor the inventor can make sense of them. In trying to, they actually conflict with one another and only add to the confusion.

The specification only attempts to define structure once:  "Each pair of opposite surfaces, a portion of the base 402, a corresponding docking bay 404, and/or the locators 410 may comprise a structure for providing physical support to

1  one of the video game controllers 420 during charging." (Col. 9:51-55.) Callouts

2  for a structure are conspicuously absent from the patent figures.

3      Mr. Navid testified at deposition that each partition (called out as 406 in the

4  embodiment of the asserted claims and 528 in the other embodiment) is a separate

5  "structure." (Buccigross Decl., Ex. 1 at 243:24-244:12.) But this makes no sense

6  because the specification does not list partitions among the potential structures.

7      Nyko's expert opined that: "[s]tructures makeup docking bays that hold the

8  video game controllers and structures form a plurality of opposite surfaces that make

9  up the docking bay and have a DC port in the middle."[10] (Supp. Buccigross Decl.,

10  Ex. 6 at 150-151.) In an obvious effort to avoid contradicting the inventor, Mr.

11  Kitchen purported to agree with the inventor that each partition (callout 406) is a

12  separate structure. (Supp. Buccigross Decl., Ex. 6 at 156.) However, Mr. Kitchen

13  ultimately disagreed with the Mr. Navid, saying that in the context of the claims,

14  partitions cannot be structures. (Supp. Buccigross Decl., Ex. 6 at 156-157.)

15      Contrary to Mr. Kitchen's definition, the specification's definition does not

16  limit structures to docking bays. Mr. Kitchen apparently recognized this

17  inconsistency, but could not reconcile it, or offer any consistent definition for that

18  matter. To the contrary, he admitted that the specification's and claims' use of the

19  term "structure" is only confusing:

20          I think the confusion we're having here if you look for
21          example is the at least one docking structure the at least
            one docking structure is made up of structures the at least
22          one docking structure it has the parallel walls it has the
            floor it has these little guys here I forgot what they are
23

24  _____

25  [10] Mr. Kitchen testified for several minutes that "structures on the base" included
    DC ports, before recanting that testimony, because that position is inconsistent with
    the written description and the claim language. (*Id.* at 167: "No, I think I misspoke.
26  The docking bay is the structure. The DC port is between the walls of the docking
    bay but I wouldn't use the term structure for that. I got thrown off because the brief
27  uses the words structure but it's not using it in the same way I believe as the
    patent.")

28

called but in fact the docking bay is a structure and it's
made up of structures.  So I could refer to the docking bay
as one structure but in fact it's made up of structures that
are the side walls the bottom of the base and the plurality
of pairs of parallel planar surfaces.  So I think that's where
we are getting the confusion.

(Supp. Buccigross Decl., Ex. 6 at 170.)

Mr. Kitchen also brought up the possibility that there could be one piece of
the base that forms two docking bays.  But he admitted that "it's certainly not
related to the embodiments that are shown in the patent...." (*Id.* at 177-178.)[11]

If neither the inventor nor Nyko's purported expert can make sense of this
issue, how could one of ordinary skill in the art?  The terms are indefinite.

### 5.   "At least one structure on the base…"[12]

Claim 1 has three limitations reciting "at least one structure on the base:"

[A]t least one **structure on the base** for providing
physical support for a **plurality** of video game
controllers…

wherein **the** at least one **structure on the base** comprises
a **plurality** of docking bays…

wherein **the** at least one **structure on the base** further
comprises a **plurality** of pairs of opposite surfaces…

('848 Patent, Col. 15, ll. 35-48 (emphasis added).)  Taking the first limitation as an
example, according to the plain claim language, at least <u>one</u> structure must provide

---

[11] This would thus lack written description support and be invalid under 35 U.S.C.
Section 112(2).

[12] Nyko accused Defendants of "sandbagging" Nyko by changing their proposed
construction of this term.  This is untrue.  Rather, on March 28, 2013, Defendants
emailed Nyko proposing that the parties exchange any revised constructions.  Nyko
refused.  Defendants subsequently emailed Nyko stating "If Defendants do not
revise their constructions, will Nyko abstain from revising its own constructions?"
Nyko never responded.  (Supp. Buccigross Decl., Ex. 10.)  Furthermore,
Defendants modified their construction in response to Nyko identifying its
forthcoming expert testimony for the first time on March 29, 2012.  (Supp.
Buccigross Decl., Ex. 11.)

1    support to <u>two or more</u> controllers.  In other words, at least one structure must be

2    included to serve the recited "plurality" limitations.  Moreover, Nyko could have

3    used the term "one or more" instead of "at least one" when drafting the claims, but it

4    chose not to.

### a.    Nyko Disclaimed Its Proposed Broad Construction During Prosecution

6           The "at least one structure on the base … plurality" claim language is the

7    result of substantial modifications to the claims during prosecution to avoid the prior

8    art.  Nyko originally claimed a charger that only accommodated one controller,

9    having essentially nothing more than a "base," a "structure," and a "DC port."  (*See*

10   Original App., claim 1.)  The Patent Office rejected Nyko's original Claims 1 and

11   13 (then pending claim 14).  (*See* Buccigross Decl., Ex. 5.)  In response, Nyko

12   revised Claim 1 to read:  "at least one structure on the base for providing physical

13   support to the ~~at least one~~ <u>plurality of</u> video game ~~controller~~ <u>controllers</u>…."  In so

14   doing, Nyko disclaimed a charging system having a one-to-one correspondence

15   between each structure on the base and each controller.  This amendment also

16   requires that the charging system charge two or more controllers by reciting that "<u>at</u>

17   <u>least one</u> structure on the base" provide "physical support to the <u>plurality</u> of video

18   game controllers."[13]

19          Thus, Nyko chose to narrow the "structure" elements so that at least one

20   structure must support a plurality of controllers (although additional structures need

21   not).  Having chosen to so amend the claims, Nyko disclaimed an embodiment in

22   which none of the structures on the base supports two or more controllers.  *See*

23   *Schindler Elevator Corp. v. Otis Elevator Co.,* 593 F.3d 1275, 1285 (Fed. Cir. 2010)

24   ("an amendment that clearly narrows the scope of a claim, such as by the addition of

---

[13] Although directed primarily to the first "at least one structure" limitation of claim 1, the arguments below also apply to the other "at least one structure … plurality" elements of claim 1 and the "at least one docking structure … plurality" elements of claim 13.  These elements were similarly added during prosecution.

1  a new claim limitation, constitutes a disclaimer of any claim interpretation that
2  would effectively eliminate the limitation or that would otherwise recapture the
3  claim's original scope").  Nyko now improperly attempts to recapture the disclaimed
4  scope through its proposed construction.

5        Nyko completely ignores these narrowing claim amendments in its brief and
6  in its claim constructions.  Moreover, Nyko's expert did not review the '848 patent's
7  prosecution history – a key part of the intrinsic evidence – prior to offering opinions
8  in support of Nyko's Opening Brief.

9        Instead, Nyko argues that because the specification states that "at least one
10  DC port comprises a plurality of DC ports" and "at least one video game controller
11  comprises a plurality of video game controllers," Defendants' construction would
12  mean that a single DC port must somehow be a plurality of DC ports, and a single
13  controller must be a plurality of controllers.  Defendants, however, have not argued
14  that each DC port must couple to a plurality of controllers.  Indeed, the claim
15  limitation relating to DC ports recites a one-to-one correspondence between the
16  number of DC ports and the number of controllers:  "a plurality of DC ports on the
17  base, each of the DC ports configured to couple to and provide DC power to a
18  power input port of a respective one of the plurality of video game controllers."  In
19  the claim limitations reciting "at least one structure," there is no such one-to-one
20  correspondence.  Rather, at least one of the structures must provide support to two
21  or more of the controllers.

22        This "mismatch" is not the result of Defendants' construction.  Rather, it is
23  the consequence of Nyko's amendment, after Nyko had originally, broadly claimed
24  a charger that only charged one controller and essentially had nothing more than a
25  "base," a "structure," and a "DC port."

26        **b.**     **Alternatively, This Term Is Indefinite**

27        When confronted with this clear requirement of the amended claim language,
28  Nyko's expert was stumped – he could not reconcile the claim with the written

description, which appears to contemplate a one-to-one correspondence between "structures" and "controllers:" *i.e.*, each structure forms a single docking bay, which supports a single controller.  (*See* '848 patent, col. 9:51-55.)  For example, Nyko's expert testified, amidst numerous extended delays in answering the questions:

- "…a single structure by itself is not going to practice the claims of the patent."  (Supp. Buccigross Decl., Ex. 6 at 157.)

- "I have a difficult time grasping a scenario where you could have one structure because a structure needs to comprise a plurality of opposite surfaces it needs to define a docking bay and it needs to have DC ports.  So I guess I don't understand how one structure could do that."  (*Id.* at 160.)

- "I can't answer the question the way you are asking it because by definition to hold two controllers it must have two DC ports and DC ports are distinct structural elements so it can't be one structure."  (*Id.* at 163-64.)[14]

- "So in fact, there's not a structure that is made up of multiple structures the way the docking bay is made up of multiple structures there's not a structure that you can define which can hold multiple controllers unless it's made up of these discrete structures that make up the physical object."  (*Id.* at 171-72.)

- "…the patent by definition must have multiple structures to hold multiple controllers."  (*Id.* at 173.)

When repeatedly pressed to reconcile that language requiring that at least one of the structures must support two or more controllers, Nyko's expert essentially conceded that Defendants' construction was correct.

---

[14] Here, Mr. Kitchen testified for several minutes that "structures on the base" included DC ports, before recanting that testimony, because that position is inconsistent with the written description and the claim language.  (*Id.* at 167:  "No, I think I misspoke. The docking bay is the structure. The DC port is between the walls of the docking bay but I wouldn't use the term structure for that. I got thrown off because the brief uses the words structure but it's not using it in the same way I believe as the patent.")

Q:  Would you agree, Mr. Kitchen, that when according to
claim 1 when at least one structure on the base is -- is a
single structure, that that single structure must comprise a
plurality of docking bays?

[Objection as to form.  The question is read back.]

A:  Yes, I'll agree to that.

Q:  Okay.  And would you agree when the at least one
structure on the base is single structure that single
structure must provide support to two or more video
controllers.

A:   I can't imagine an embodiment based on the
embodiments in the patent but I suppose it's possible there
is an embodiment that could do it.  So the answer is yes.
(*Id.* at 175.)

In confirming that at least one of the structures on the base must form two or

more docking bays to support two or more controllers, Mr. Kitchen acknowledged

that such an embodiment is "not related to the embodiments that are shown in the

patent."

Q  But to meet it [the limitation] it would be you would
have one piece that would have two bays; correct?

A  One structure would support a multiple of video game
controllers in that scenario.

Q  Other than one piece forming two docking bays can
you think of any other examples that would meet the
limitation where the at least one structure was only one
structure?

A  No, I think one structure means one structure. So I
think it's got to be one piece. I mean it's certainly not
related to the embodiments that are shown in the patent,
but I can't see how it would be more than one piece if it's
only one structure.  (*Id.* at 177-178.)

The testimony of Nyko's expert highlights a conundrum that renders these

terms indefinite.  At a minimum, the plain language of the claim requires that, when

there is only one structure on the base, that structure must support two or more

1   controllers, comprise two or more docking bays, and comprise two or more pairs of

2   opposite surfaces.  Yet, nowhere is such an embodiment described in the

3   specification.  This perhaps explains Nyko's failure to even offer a construction of

4   the "at least one structure …" claim elements in context.  *See PauseTech, LLC v.*

5   *Tivo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) (rejecting patentee's plea to ignore

6   "other language appearing later in the claim," and holding that "proper claim

7   construction . . . demands interpretation of the entire claim in context, not a single

8   element in isolation.").

9        Defendants therefore submit that theirs is the only construction that can be

10   reconciled with the claim language as amended to avoid prior art during

11   prosecution.  Absent such a construction, the claims are indefinite under 35 U.S.C.

12   §112(2).

13            6.    **"supported by the base"**

14        Claim 13 recites "a plurality of male mini-USB connectors supported by the

15   base."  Nyko fails to offer any construction for the term "supported by the base."

16   Instead, Nyko merely contends that the Court should accord the term its "plain and

17   ordinary meaning."  (Joint Claim Construction Statement, Dkt. No. 86.)  But the

18   term lacks clarity.  Indeed, Nyko's own expert could not explain it.  He contended

19   that if there were a cup on top of a book on top of a table that was on top a 20-story

20   building, the cup would be supported by the base of the building.  (Supp. Buccigross

21   Decl., Ex. 6 at 183-184.).  But when asked if it were "true no matter how many

22   intervening elements if you can trace it back down to the base, then whatever item is

23   on top would be supported by the base," he refused to answer.  (*Id.* at 184.)  Even if

24   he had answered in the affirmative, this still leaves open the question of whether

25   something suspended from another component that was linked to the base through

26   intervening components would be viewed by one of ordinary skill in the art as

27   supported by the base.

28        This term requires construction and this construction should be informed by

the specification.  Because the term "supported by the base" lacks clarity, Federal Circuit precedent dictates that the Court construe it according to the teachings of the specification, rather than leave it to "plain and ordinary meaning."  The Federal Circuit has repeatedly held that "where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used," a "reason exists to require the entry of a definition of a claim term other than its ordinary and accustomed meaning."  *See, e.g., Johnson*, 175 F.3d at 990; *Teleflex, Inc. v. Ficosa N.A. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

The only disclosed embodiment corresponding to the disputed claim language contains male mini-USB connectors on the base.  "Supported by the base" must therefore mean "on the base."  *See, e.g., Retractable Techs.*, 653 F.3d at 1304-05 (reversing claim construction that "body" could have more than one piece because the specification did not show anything other than a one piece body); *Hologic*, 639 F.3d at 1334-38 (reversing claim construction and limiting claim to asymmetry about longitudinal axis where the specification, including the figures, consistently and exclusively showed asymmetry about the longitudinal axis); *Kinetic Concepts*, 554 F.3d at 1018-19 (construing "wounds" to only cover skin wounds because "[a]ll of the examples described in the specification involve skin wounds").

Additionally because the "supported by the base" "limitation is defined in purely functional terms," its construction is "highly dependent on context (e.g., the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area)."  *Halliburton*, 514 F.3d at 1255.  The only context provided by the patent document shows that the mini-USB connector in the first embodiment is "on the base."  To the extent that the Court finds this term is ambiguous but construable, precedent dictates that the Court construe it narrowly (i.e., as "on the base").  *See Halliburton*, 514 F.3d at 1253 ("We note that where a claim is ambiguous as to its scope we have adopted a narrowing construction when doing so

would still serve the notice function of the claims."); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (where there is a choice in construction, "we consider the notice function of the claim to be best served by adopting the narrower meaning.").

If "supported by the base" does not mean "on the base," it is indefinite because it is entirely unclear how or when the mini-USB connector is "supported by the base."

### B.   Mr. Navid's Testimony Contradicts the Intrinsic Evidence and Should Be Disregarded

In relying on Mr. Navid's testimony, Nyko violates the very legal authority it cites on page 5 of its Brief.  In particular, Nyko admits that "inventor testimony must not be allowed to alter the meaning of claim terms conferred by the intrinsic evidence.  *Vitronics*, 90 F.3d at 1583."  (Nyko Opening Brief, at 5:19-21.)  As explained above, Mr. Navid's testimony contradicts the intrinsic evidence and the Court should therefore disregard it.  Indeed, the Federal Circuit has repeatedly held that inventor testimony is of little value, and that the inventor's subjective intent, when not expressed in the intrinsic evidence, has no effect.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (*en banc*) ("The subjective intent of the inventor is of little or no probative weight in determining the scope of a claim."); *see also, Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1342 n.2 (Fed. Cir. 2003); *Vitronics*, 90 F.3d at 1584-85; *N. Am. Vaccine, Inc. v. Nat'l Research Council*, 7 F.3d 1571, 1578 (Fed. Cir. 1993).

In short, Mr. Navid's testimony is only informative to the extent that it contradicts Nyko's claim construction positions and underscores the indefiniteness of the terms "structure," "docking structure," and "supported by the base."

1    DATED:  April 15, 2013          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2

3                                    By      /s/ Daniel N. Yannuzzi

4                                              DANIEL N. YANNUZZI
                                                STEVEN M. HANLE
5                                          GRAHAM (GRAY) M. BUCCIGROSS
                                              MATTHEW M. MUELLER
6                                          Attorneys for Defendants,
7                                          Performance Designed Products LLC,
                                           Eveready Battery Co., Inc.,
8                                          and Energizer Holdings, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28