1   **ART HASAN, CA Bar No. 167323**
    art.hasan@cph.com
2   **G. WARREN BLEEKER, CA Bar No. 210834**
    warren.bleeker@cph.com
3   **KATHERINE L. QUIGLEY, CA Bar No. 258212**
    katherine.quigley@cph.com
4   **CHRISTIE, PARKER & HALE, LLP**
    **655 North Central Avenue, Suite 2300**
5   **Glendale, California 91203-1445**
    **Telephone: (626) 795-9900**
6   **Facsimile:  (626) 577-8800**

7   Attorneys for Plaintiff and Counterdefendant,
    NYKO Technologies, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  NYKO TECHNOLOGIES, INC., a          | Case No. CV12-03001 GAF (VBKx)
    California corporation,
13
                    Plaintiff,
14
            vs.                          | **NYKO TECHNOLOGIES, INC.'S**
15                                       | **REBUTTAL CLAIM**
                                         | **CONSTRUCTION BRIEF**
16  ENERGIZER HOLDINGS, INC., a
    Missouri corporation, EVEREADY       | **DATE:    April 29, 2013**
17  BATTERY COMPANY, INC., a             | **TIME:    10:00 AM**
    Delaware corporation, and            | **CTRM:    740**
18  PERFORMANCE DESIGNED
    PRODUCTS LLC, a California limited   | **Hon. Gary Allen Feess**
19  liability company,

20                  Defendants.

21

22

23  AND RELATED COUNTERCLAIM.

24

25          This brief relies upon the evidence presented in the Rebuttal Declaration of

26  Katherine L. Quigley and the Rebuttal Declaration of Garry Kitchen, both filed

27  concurrently herewith.

28

CHRISTIE, PARKER & HALE, LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................... 1

II.   BASE .......................................................................................... 1

     A.    Defendants' Construction of the Term "Base" Is Contradicted by the Intrinsic Evidence ........................................ 2

     B.    Defendants' Criticism of Nyko's Construction is Without Basis ................................................................................. 4

     C.    Defendants' Construction of the Term "Base" Relies Upon Out of Context Lay Definitions While Nyko's Construction Relies On Technical Dictionaries and Expert Testimony .................... 7

III.  "TO COUPLE TO" AND "ELECTRICALLY COUPLED TO" ................. 10

IV.  "AT LEAST ONE" .................................................................. 14

V.    "SUPPORTED BY THE BASE" ................................................. 20

VI.  DEFENDANTS' INDEFINITENESS ARGUMENTS ARE WITHOUT MERIT AND SHOULD BE REJECTED ................................. 22

VII.  CONCLUSION ....................................................................... 25

CHRISTIE, PARKER & HALE, LLP

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371 (Fed. Cir. 2001).........................................................................................22

*ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572 (Fed. Cir. 1984)...........14

*Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.*, 306 Fed. Appx. 553 (Fed. Cir. 2008) .................................................12

*BASF Agro B.V.v.Makhteshim Agan of N. Am., Inc.*, 2013 U.S. App. LEXIS 5442 (Fed. Cir. Mar. 20, 2013) ................................................7

*Bell Atl. Network Servs., Inc. v. Covad Communs. Grp., Inc.*, 262 F.3d 1258 (Fed. Cir. 2001) ..............................................11, 12

*Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352 (Fed. Cir. 2003).................19

*Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008)................22

*Hologic, Inc. v. Senorx, Inc.*, 639 F.3d 1329 (Fed. Cir. 2011)................................11

*In re Abbott Diabetes Care*, 696 F.3d 1142 (Fed. Cir. 2012) .................................12

*Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323 (Fed. Cir. 2001).........................................................................................15

*Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999) .........12

*Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367 (Fed. Cir. 2003) ....2, 3, 11

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).....................................6, 15

*Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296 (Fed. Cir. 2011).........................................................................................11

*Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278 (Fed. Cir. 2005)................18, 19

*Sjolund v. Musland*, 847 F.2d 1573 (Fed. Cir. 1988)..............................................25

*SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005).........................................................................................22

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Texas Instruments Inc. v. United States ITC*, 988 F.2d 1165 (Fed. Cir. 1993) ............................................................................................ 15

*Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311 (Fed. Cir. 2004) ........................................................................ 7

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

35 U.S.C. § 112(b) .................................................................................. 22

**OTHER: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Def. Op. Br. p. 24, ll. 3-4 ........................................................................ 21

**OTHER AUTHORITIES**

American Heritage Dictionary, Quigley Rebuttal Decl., Ex. W. ............. 20

*Dictionary of Scientific and Technical Terms* (McGraw-Hill 2003) ........ 8

Merriam Webster Collegiate Dictionary .................................................. 7

U.S. Patent 6,881,147 .............................................................................. 13

U.S. Patent No. 5,202,835 ................................................................. 12, 13

CHRISTIE, PARKER & HALE, LLP

iii

## I.     **INTRODUCTION**

Defendants apply strained and unsupported constructions to the disputed claim terms.  While paying lip service to the tenet that intrinsic evidence controls the claim construction inquiry, Defendants cite minimally to the intrinsic evidence and rely upon out of context lay definitions and attorney argument. Defendants also fail to offer expert testimony, which undermines their position as claim terms must be construed from the standpoint of one skilled in the art.  Nyko respectfully requests that the Court adopt its proposed constructions, and reject Defendants' constructions.

## II.    **BASE**

Nyko's proposed construction of the term "base" should be adopted.  Nyko has amended its construction to clarify it in light of the subject matter of the '848 patent.   Nyko's amendment is consistent with the arguments it made in its opening brief.   Nyko's amendment was suggested by its expert, Mr. Garry Kitchen, who opined that it would be more helpful for jurors to have a construction that is not only supported by technical dictionaries but also expressly incorporates the subject matter of the patent-in-suit.

| PATENT TERM | Nyko's Proposed Construction (amended)[1] | Defendants' Proposed Construction |
|---|---|---|
| Base | The foundation or support upon which structures rest, i.e., the entire body of the charger upon which the video game controllers rest in the docking bays. | The bottom part of the charging system that provides physical support for the system against an adjacent surface |

---

[1] Nyko gave notice of these changes to Defendants by explicitly disclosing the same prior to the time Defendants' counsel took the deposition of Nyko's expert, and through the arguments Nyko consistently made in its opening brief concerning this construction.

-1-

CHRISTIE, PARKER & HALE, LLP

A.    **Defendants' Construction of the Term "Base" Is Contradicted by the Intrinsic Evidence**

Defendants propose that the term "base" should be restricted to "the bottom part of the charging system that provides physical support for the system against an external adjacent surface."  Defendants cite to only two figures from the patent out of context and without reference to the written description of those figures.  The reason behind this is plain – actually reading the patent demonstrates that limiting "base" to a "bottom part" of the charging system is inconsistent with its use throughout the patent. *See Merck & Co. v. Teva Pharms. USA, Inc*., 347 F.3d 1367, 1371 (Fed. Cir. 2003) ("A fundamental rule of claim construction is that terms in a patent document are construed with the meaning with which they are presented in the patent document.  Thus claims must be construed so as to be consistent with the specification, of which they are a part.")

Defendants' sole citation to intrinsic evidence highlights a reference line in the figures that appears to point to a lower part of the system.  The reference line may have been placed where it is for no other reason than availability of space on the drawing.  The written description makes clear that the reference lines are not meant to restrict the definition of the term "base" to a lower portion.



*Figure 11 of the Patent-in-Suit (highlighting and shading added)*

CHRISTIE, PARKER & HALE, LLP

By way of example, the written description portion of the specification states that there are "two surfaces of the **base** 402, which face the DC ports" ['848 Patent, col. 9, lines 47-49]. These surfaces must be located at the top of the charging system, not at the bottom. Further, these surfaces do not touch any table or wall and therefore do not provide physical support against an external surface. Defendants' restrictive construction must be rejected because it does not account for these exemplary features of the "base" described in the specification.

Other parts of the intrinsic evidence also contradict Defendants' construction. The specification states, for example, that in one embodiment "a portion of the **base** 402 . . . may comprise a structure for providing physical support to one of the video game controllers 420 during charging." ['848 Patent, col. 9, ll. 49-55.] These surfaces, which are adjacent the DC ports, face the video game controllers. They are located on the side of the base *opposite* the bottom surface that bears against the table or wall. [*See Id.*] The surfaces are not at or near the bottom portion of the charging system. Defendants' construction reads out this described feature.

The claim language itself further contradicts Defendants' construction. For example, claim 8 recites an AC-DC converter for converting the externally supplied power to the DC power provided to the DC ports, and claim 9 recites that this AC-DC converter is located "in the base." The specification states the same. ['848 Patent, col. 2, ll. 33-37 and col. 10, ll. 29-36.] The claim and description of the "base" as being something that houses other physical components teaches away from Defendants' construction that limits the "base" to merely a bottom portion.

Other figures in the patent also dispute Defendants' construction. FIGs. 15 and 22, for example, depict the "charger base" with multiple electrical components housed inside of it, including the AC-DC converter recited in the claims:

-3-



*Figure 22 of the Patent-in-Suit (highlighting added)*

In this embodiment, the "base" houses a bulk of the components and therefore makes up a bulk of the charging station, hence the patent specifically states that "charging station" and "charger base" can be used interchangeably.  ['848 Patent, col. 14, ll. 33-36.]   The only difference between "charger base" and the claim term "base" is that the "charger base" includes the electrical components, such as those depicted inside the "charger base" in FIG. 22 above, whereas "base" refers to the housing or support body that is capable of housing the electrical components.   In short, the "charger base" includes the electrical components necessary for *charging* whereas the "base" is the housing into which components go.   Therefore, although the terms "charger base" and "base" may potentially differ in relation to charging components, they both support an understanding of the term "base" as a substantive foundation capable of housing electrical components, not merely the bottom portion.

Based on the foregoing, Defendants' construction of the term "base" should be rejected because it is clearly contradicted by the intrinsic evidence.

### B.    Defendants' Criticism of Nyko's Construction is Without Basis

To assist the jury to understand its construction within the context of the subject matter of the '848 Patent, Nyko's construction takes into account that the

-4-

"base" may include surfaces that are at the top portion of the charging system opposite the bottom portion, that those surfaces do not bear against any external surfaces such as a table or wall, and that the base must be capable of supporting the video game controllers as well as housing other physical components such as an AC-DC converter.  Hence, Nyko's characterization of the base as a body is appropriate because it encompasses the dimensional nature of the base and its surfaces and support features explicitly described in the specification and claims.

FIGs. 14 and 21 show video game controllers supported by the base.



*Figures 14 and 21 of the Patent-in-Suit*

Defendants argue that "base" should not be construed as a support, because there is "no support in the specification" for the term "support" with respect to base. [Def. Op. Br. at pg. 10, ll. 20-21.]  This argument fails because the patent repeatedly refers to the base as a support.  In claim 13, for example, the claim language recites "a plurality of male mini-USB connectors **supported by the base**." ['848 Patent, col. 16, ll. 32-33; *see also* col. 2, ll. 45-48, col. 3, ll. 1-4 (describing structures supported by the "base").]  The specification states that "a portion of the base . . . may comprise a structure for providing physical support to one of the video game controllers." ['848 Patent, col. 9, ll. 51-55.]

Defendants themselves understand "base" as a support: "According to the plain meaning, as evidenced by the dictionary definition, the base of an object is

-5-

the part that **supports** the object itself." [Defendants' Opening Claim Construction Brief ("Def. Op. Br.") at p. 11, ll. 8-10 (Dkt 104).]  Defendants' dictionary definition defines the "base" as a "support" *and* a "foundation." [Def. Op. Br. at p. 9, ll. 23-25; Def. Exh. 2.] Defendants' argument against construing "base" as a support or foundation appears disingenuous.

Defendants make the convoluted argument that a "base" isn't something "upon which structures rest" because a base only supports the object against the adjacent surface and may or may not support "structures."  This argument is without merit because Nyko is not speaking to the term "base" in the context of Defendants' proposed lay dictionary definition, but as the term is used in the '848 Patent.  See *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) ("The main problem with elevating the dictionary to such prominence is that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent.")  "Base" as used in the '848 Patent contemplates a support "upon which structures rest." [*See* '848 Patent, claim 1 (describing structures "on the base"); col. 12, ll. 1-2 ("a base 524 with two docking bays 512,514."); col. 2, ll. 44-53, col. 6, ll. 1-5 and FIGs. 11, 18.]

Defendants also argue that Nyko's construction will add confusion because the word "structures" is ambiguous and the words "support" and "rest" are not defined.  Nyko has remedied any such issue by adding explicit references to the foundation/support being the body of the charger and the structures being the video game controllers.  The words "rest" and "support" have plain and ordinary meanings that are readily understood.[2]

Accordingly, Defendants' arguments against Nyko's proposed claim construction should be rejected.

---

[2] Defendants surely understand these words considering they used them in their opening brief. [See Def. Op. Br. at p. 3 (using "rest"), p. 7 (using "support" in Defendants' construction of "base") and p. 8 (using "support").]

CHRISTIE, PARKER & HALE, LLP

**C.    Defendants' Construction of the Term "Base" Relies Upon Out of Context Lay Definitions While Nyko's Construction Relies On Technical Dictionaries and Expert Testimony**

Faced with intrinsic evidence that contradicts its position, Defendants resort to extrinsic evidence -- exclusively the Merriam Webster Collegiate Dictionary which defines "base" as "the bottom of something considered as its support: foundation."

Defendants' extrinsic evidence should be disregarded.  First, it is improper to rely upon extrinsic evidence where, as here, it is at odds with intrinsic evidence. *BASF Agro B.V.v.Makhteshim Agan of N. Am., Inc.*, 2013 U.S. App. LEXIS 5442, 25 (Fed. Cir. Mar. 20, 2013) (extrinsic evidence cannot "contradict the intrinsic record.")   Second, lay dictionaries must take a back seat to definitions in the art, either from expert testimony or technical dictionaries. *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1321 (Fed. Cir. 2004). In *Vanderlande*, the Federal Circuit stated the problem with allowing lay definitions to control construction of lay terms:

> Vanderlande's reliance on this illustrative example from a general-usage-dictionary definition is unpersuasive, for several reasons. First, Vanderlande misapprehends the proper role of general-usage (as opposed to technical, art-specific) dictionaries in claim construction. Claims are to be construed from the vantage point of a person skilled in the relevant art.  To the extent that this artisan would understand a claim term to have the same meaning in the art as that term has in common, lay usage, a general-usage dictionary can be a helpful aid to claim construction. But where evidence -- such as expert testimony credited by the fact finder, or technical dictionaries -- demonstrates that artisans would attach a special meaning to a claim term, . . . general-usage dictionaries are rendered irrelevant with respect to that term; a general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim term.

*Id*. Defendants' citation to lay dictionaries for the meaning of the term "base"

CHRISTIE, PARKER & HALE, LLP

1  inappropriately departs from the meaning of the term in the context of the patent
2  and the relevant art and should be discounted.

3      In contrast, Nyko cites technical dictionaries used by persons of ordinary
4  skill in the art.  For example, the *Dictionary of Scientific and Technical Terms*
5  (McGraw-Hill 2003) defines "base" as the "[f]oundation or part upon which an
6  object or instrument rests."  [Quigley Decl., Ex. F].  This technical dictionary
7  makes clear that the foundation may be a separate structure from the object or
8  instrument, in this case, the video game controller, that it supports.

9      Further, Nyko's expert has opined based on his experience that the term
10  "base" in the prior art refers to the entire body of the charger for supporting the
11  video game controllers.  [Deposition of Garry Kitchen ("Kitchen Depo."),  p. 102,
12  ll. 19-24, 106, l. 18 - p. 107, l. 3; p. 109, ll. 10-16, attached as Exhibit U to the
13  Declaration of Katherine L. Quigley In Support of Nyko's Rebuttal Claim
14  Construction Brief ("Rebuttal Quigley Decl.,") filed concurrently herewith.]   To
15  enlist a definition of the term "base" as being merely the bottom portion of a
16  single unitary structure, as opposed to one part supporting another, takes the term
17  out of context of its use in the art.  [Kitchen Depo. p. 96, l. 24 - p. 101, l. 25.]
18  Further, to the extent Nyko and others have marketed or used the term "base" to
19  refer to the entire charging body, this comports with what customers of video
20  game accessories would understand.  [Kitchen Depo. p. 105, ll. 13-21; p. 112, l. 7
21  - p. 113, l. 2.]

22      During his deposition, Defendants' counsel challenged Nyko's expert to
23  provide evidence of his understanding that "base" was a term of art.  One need
24  look no further than the primary alleged prior art references *cited by the*
25  *Defendants themselves in this matter*.

26      Erickson, U.S. Patent Pub. 2009/0072784, one of the primary prior art
27  reference cited by Defendants, refers to the entire body of the charger as a "**base**
28  **unit** 14," and synonymously refers to the "**charger base**" using the *same*

-8-

reference numeral 14:



*FIGs. 1A and 5 from the Erickson Publication (highlighting added)*

[Erickson, FIGs. 1A, 4A and 5, Rebuttal Quigley Decl., Exh. S.]  In addition, Erickson shows the base 14 housing physical circuit components and describes "the base unit of the invention includes an AC power adapter, one end of which fits into the AC wall plug and the other end of which leads into the base unit to supply power to the portable device via electromagnetic induction." [Erickson, FIG. 5 & ¶0010.]  This description demonstrates that one skilled in the art would understand the terms "base" and "charger base" to mean the entire body of the charger for supporting the video game controllers.

Cole, U.S. Pat. 7,942,747, also alleged by the Defendants as prior art, refers to the body of the charger as "vertical member or **game controller base** 15" and the "vertical member or **base** 15b" as depicted below.



*Figures 3 and 4 from the Cole Patent (highlighting added)*

[Cole, FIGs. 3 and 4, Rebuttal Quigley Decl., Exh. R.]  What is denoted as the

CHRISTIE, PARKER & HALE, LLP

base in Cole also has a surface that faces the video game controllers, illustrating that the base is not restricted to something that touches a floor or wall. While Nyko disputes that the Cole and Erickson references constitute prior art to the '848 Patent, these references and Defendants' admissions concerning them shed light on the propriety of Nyko's constructions.

Based on the foregoing, Nyko respectfully requests that its proposed construction of the term "base" be adopted.

### III.   "TO COUPLE TO" AND "ELECTRICALLY COUPLED TO"

The parties' proposed constructions for these two terms are as follows:

| PATENT TERM | Nyko's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "To couple to" | To join, link or connect together without the use of external wires or cables | To connect directly or indirectly to |
| "electrically coupled to" | Directly or indirectly connected to for the purpose of energy transfer | Directly or indirectly electrically connected to |

The parties agree that "electrically coupled to" denotes a direct or indirect connection, while the there is disagreement on the proper construction of the term "to couple to." Defendants believe the term should be given the same meaning as the phrase "electrically coupled to" even though the two terms are different while Nyko believes the terms should be given different meanings commensurate with their context and use in specification and claims.[3]

---

[3] Nyko and Defendants differ slightly on the definition of the term "electrically coupled to." Defendants argue that the term should be construed to take data transfer into account. The '848 Patent, however, is not directed to data transfer, and there is no need to account for data transfer in the construction.

CHRISTIE, PARKER & HALE, LLP

As correctly stated by Defendants in their opening brief, the Federal Circuit has repeatedly recognized that where a patent specification consistently and exclusively describes a claim element in only one configuration, the claim is properly limited within the context of that description. For example, in *Hologic, Inc. v. Senorx, Inc.*, 639 F.3d 1329, 1334-38 (Fed. Cir. 2011), the specification consistently and exclusively showed radiation sources located asymmetrically about the longitudinal axis. The Federal Circuit, reversing the district court's construction, held that the claim in question should be construed as limited to radiation sources located asymmetrically about the longitudinal axis. *See also, e.g.*, *Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1304-05 (Fed. Cir. 2011) (reversing claim construction that "body" could have more than one piece because "each figure that depicts a syringe body shows a one-piece body," and the specification did not show any other embodiments); *Bell Atl. Network Servs., Inc. v. Covad Communs. Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (finding a claim term defined by "implication" where the specification used the term consistently throughout).

Here, the phrase "electrically coupled to" has a distinct meaning from the term "to couple to" dependent on electrical and mechanical contexts, the '848 Patent consistently and exclusively denotes this difference, and expert testimony, technical dictionaries and case law recognize that different meanings should be ascribed depending on the context and use in the patent. *Merck & Co. v. Teva Pharms. USA, Inc*., 347 F.3d 1367, 1371 (Fed. Cir. 2003) ("[The] claims must be construed so as to be consistent with the specification, of which they are a part.")]

Consistent with their contextual meanings, the '848 Patent uses the phrase "electrically coupled to" to denote a direct or indirect connection for electrical transmission, and uses the term "to couple to" (without the word "electrically") consistently and exclusively to denote a mechanical connection without wires or cables between the DC port and the female receptacle on the video game

-11-

1   controller.  ['848 Patent, col. 1, l. 66 - col. 2, l.7, col. 2, ll. 19-31 & 44-53, col. 3,

2   ll. 1-8, col. 3, l. 21-28, col. 5, l. 66 - col. 6, l.5, col. 6, ll. 15-18, col. 9, ll.28-32,

3   col. 10, ll. 36-38, claims 1, 5, 7 & 13.]   Where such an exclusive use is ascribed

4   to the term "coupled to" in the mechanical context, the term is properly construed

5   to denote a connection without the use of wires or cables. *See In re Abbott*

6   *Diabetes Care*, 696 F.3d 1142, 1149 (Fed. Cir. 2012).[4]

7         Defendants cite *Johnson Worldwide Assocs*. *v. Zebco Corp*., 175 F.3d 985

8   (Fed. Cir. 1999), for the premise that "coupled" is not a mechanical or physical

9   connection.  [*See* Def. Op. Br. at p. 13, ll.11-21.]  However, *Johnson Worldwide*

10  has been distinguished in situations where a claim term is used consistently

11  throughout the specification. See *Bell Atl. Network Servs.*, 262 F.3d at 1273

12  ("[U]nlike *Johnson Worldwide*, this case does not involve the 'varied use of a

13  disputed term.'  Instead, the patentees defined the term 'mode' by implication,

14  through the term's consistent use throughout the '786 patent specification.")

15  (internal citations omitted); *see also Amazin' Raisins Int'l, Inc. v. Ocean Spray*

16  *Cranberries, Inc.*, 306 Fed. Appx. 553, 557 (Fed. Cir. 2008) (distinguishing

17  *Johnson Worldwide* where the claim term was used consistently throughout the

18  specification).[5]

19         Reviewing the patent at issue in *Johnson Worldwide* is instructive. [U.S.

20

---

21  [4]  Defendants argue that the term electrically coupled to is sometimes used in the

22  specification to denote the connection between the DC port and the receptacle on

23  the controller.  There is nothing inconsistent about this.  There is no dispute that

24  "electrically coupled to" encompasses *either* a direct connection *or* an indirect

25  connection.  The key point is that the term "to couple to" is never used in the patent to encompass an indirect connection.

26  [5] Despite its holding, *Johnson Worldwide* is helpful stating that a mechanical

27  coupling denotes a connection without wires, showing an understanding that "couple to" is a term of art in the field of mechanical arts. *See id.* at 989

28  (discussing the term "coupled" and comparing connecting via wires "rather than mechanically.")

-12-

Patent No. 5,202,835 (" the '835 Patent"), Quigley Decl. Exh. V.]  Unlike in the patent here, in the '835 Patent, the claim term "coupled" is only used once in the Abstract of the patent.  The *Johnson Worldwide* patent contains no support for the meaning of "couple" in the written description; in fact, it is not used at all in the written description, save the single use in the Abstract where the language parrots claim 1. ['835 Patent, Abstract.]  This is different from the patent-in-suit, which clearly and consistently uses the term "to couple to" to denote a connection without wires between two mechanical structures, namely the DC port and the receptacle on the controllers.[6]

Further, in the present case, to allow a construction that includes wires or cables departs from the essence of the invention and renders other claim limitations and important features of the described embodiments superfluous. In the '848 Patent, the DC port that couples to the video game controller receptacle is located within each of the docking bays. The claims require those same docking bays to receive, align and support between the opposite walls between which the DC ports sit.  If a wire or cable were inserted between the two devices, it is apparent from the figures and description that this would conflict with the ability of the docking bays to receive, align and support the controllers.  ['848 Patent, col. 2, ll. 19-25 & 44-53, col. 3, ll. 1-8, col. 9, ll. 44-64, col. 10, ll. 4-7, col. 16, ll. 35-3; FIGs. 11 and 18.][7]

---

[6] Defendants may bring up Nyko's U.S. Patent 6,881,147 directed to a video game controller with a built in camera and microphone in which the term "coupled to" denotes a wireless or wired connection.  Nyko's '147 Patent is a different patent that describes "couple to" in a different context and for a different purpose than the patent-in-suit.  It does not shed light on the current claim construction dispute, nor does it provide context for this dispute.

[7] Defendants raise the issue that in a separate patent related to the present one, one of the claims in the other patent uses the term "directly coupled to."  That addition was made in response to the Court's "first inning" thoughts as to Nyko's application for temporary restraining order.  It was not made to overcome prior

CHRISTIE, PARKER & HALE, LLP

Finally, where a claim term is reasonably susceptible to two different interpretations, the Court should construe the term to preserve the validity of the patent. *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984). (holding that in determining validity, a claim must be construed to uphold its validity if possible.)  Defendants rely on the Cole reference, which uses wires and cables to charge the controller, to invalidate the patent-in-suit.  If the Court were to find that Cole is prior art and that all other elements of the patent-in-suit were disclosed by Cole, the validity of the patent would be called into question. Accordingly, assuming the Court were to agree with Defendants' invalidity argument, the Court should construe claim 1 of the patent-in-suit to exclude wires or cables to uphold the validity of the patent-in-suit.

Based on the foregoing, Nyko respectfully requests that the Court adopt its constructions of the terms "to couple to" and "electrically coupled to."  The terms are not the same in use or context, and should not be given the same meaning.

## IV.    "AT LEAST ONE"

| PATENT TERM | Nyko's Proposed Construction | Defendants' Proposed Construction[8] |
|---|---|---|
| "at least one" | "at least one structure" = one or more structures; | At least one structure (but not necessarily all structures) . . . (Defendants include additional claim language of claim 1 without additional construction) |
| | "at least one docking structure" = one or more docking structures | At least one docking structure (but not necessarily all structures) . . . (Defendants include additional claim language of claim 1 without additional construction) |

art, and there is no authority for the assertion that a claim term used in one patent should control claim construction in another in such a case.

[8] Defendants, without any notice, changed their construction for this term from the one they provided in the December 17, 2012 Joint Claim Construction Statement (Dkt 86), causing Nyko to argue against a significantly different construction in its opening brief.  Most of Nyko's prior arguments, however, also apply here.

-14-

CHRISTIE, PARKER & HALE, LLP

Defendants argue that Nyko is seeking construction of "at least one" out of context; however, Defendants fail to provide contextual support for their claim construction in the written description and only make reference to a **modified** version of FIGs. 11 and 12.  This analysis is wholly inappropriate.  *Phillips*, 415 F.3d at 1315 ("Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term."); *see also id.* at 1313 ("[A] person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

Defendants' new construction defines "at least one" to mean "at least one (but not necessarily all)."  Defendants are construing a term to mean itself plus additional language which has no support in the specification.  In essence, Defendants' are construing "at least one" to "mean exactly one."  For example, in their construction regarding "at least one structure on the base for providing physical support to the plurality of video game controllers," Defendants ask the Court to ignore "at least" and require exactly one structure to provide physical support to multiple video game controllers.

Defendants' additional language of "but not necessarily all structures," which lacks any support in the patent, reads in even more unsupported language and highlights Defendants' desire to have the Court ignore "at least" and limit the claim to one structure.  Defendants are simultaneously (and inappropriately in both cases) reading in and reading out claim elements. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1341 (Fed. Cir. 2001) ("Neither of these proposed limitations is mandated by the claim language itself or the specification . . . these features are not recited in the independent claims and we are not at liberty to read them into the claims."); *Texas Instruments Inc. v. United States ITC*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) ("To construe the claims in the manner suggested by TI would read an express limitation out of the claims.  This, we will

-15-

1    not do because courts can neither broaden nor narrow claims to give the patentee

2    something different than what he has set forth") (internal citations omitted).

3       Defendants' construction of "at least one" would read out every

4    embodiment of the patent. The exemplary embodiments of the patent-in-suit

5    show *multiple* structures that provide physical support for the plurality of video

6    game controllers, make up the docking bays and make up the pairs of opposite

7    surfaces - not just one. For example, referring to each individual docking bay, the

8    specification discloses that "[e]ach pair of opposite surfaces, a portion of the base

9    402, a corresponding docking bay 404, *and/or* the locators 410 may comprise *a*

10    *structure* for providing physical support to one of the video game controllers 420

11    during charging." ['848 Patent, col. 9, ll. 51-55.] The claims themselves require

12    that the structures define at least two docking bays, each with opposite surfaces

13    on either side of the DC port. As each one may comprise a single "structure,"

14    FIGs. 11 and 18, for example, plainly disclose multiple structures, as they each

15    disclose the listed structures multiple times.



**FIG. 11 of the '848 Patent (red highlighting added)**

1    In addition, Defendant's construction renders parts of the specification

2    illogical and unsupported.  The specification states: "[i]n one embodiment, the at

3    least one DC port comprises a plurality of DC ports, [and] the at least one video

4    game controller comprises a plurality of video game controllers." ['848 Patent,

5    col. 2, ll. 26-28.]  Applying Defendants' construction, at least one DC port (but

6    not necessarily all DC ports) would comprise a plurality of DC ports and at least

7    one video game controller (but not necessarily all video game controllers) would

8    comprise a plurality of video game controllers.  At the risk of stating the obvious,

9    one DC port is not multiple DC ports and one video game controller cannot be

10   multiple video game controllers.  The specification only makes sense in light of

11   the well-understood meaning of "at least one" as "*one or more*."

12   In addition, even Defendants own modified example of FIGs. 11 and 12

13   does not support its construction.  Defendants argue that their construction is

14   consistent with the patent specification (and Mr. Navid's testimony that partition

15   406 is a structure that provides support) by imagining a shortened version of

16   FIGs. 11 and 12, modified to have only one partition 406 that would support one

17   controller on each side. [Def. Op. Br. at p. 20, l. 25 - p. 21, l. 8.]  However,

18   Defendants neglect to discuss how one partition 406 provides "a plurality of pairs

19   of opposite surfaces, each pair of surfaces defining a respective docking bay" as

20   required by claim 1.  Defendants also fail to explain how one of the partitions

21   406, as shown in FIG. 11, for example, could be on both sides of the docking bay

22   in order for the opposite surfaces of the partition 406 to define one respective

23   docking bay.

24   The foregoing illustrates how incongruous Defendants' proposed claim

25   construction is with the disclosure of the '848 Patent.  Even Defendants own

26   modified examples don't work with their proposed claim construction.  On the

27   other hand, Nyko's construction is supported by the claims and all embodiments

28   of the '848 Patent.

CHRISTIE, PARKER & HALE, LLP

1    Defendants' attempt to argue that Nyko somehow limited the scope of the

2    claim language "at least one structure" by its amendment during prosecution of

3    the language "at least one plurality of video game controller controllers." [Def.

4    Op. Br. at 21-22.]   During the prosecution of the patent-in-suit, the patent

5    examiner rejected claims 1 and 13 (then claim 14) in view of Pat. Publ. No.

6    2006/0202660 to Chang ("Chang").   Chang disclosed a wireless mouse charger

7    for charging a single computer mouse.   In responding to this rejection, the

8    Applicant stated:

9        Chang appears to disclose a wireless mouse charger including a
10       housing 1 having a **single** mouse cavity 13 for receiving a wireless
         mouse therein (see Chang, paragraphs [0031] and [0032], and Fig.
11       3), but does not appear to teach a plurality of docking bays opening
         a first direction and configured to receive respective ones of a
12       plurality of video game controllers, and recited in Applicant's
13       amended claim 1.

14   ['848 Patent prosecution history Exh. T to Reb. Quigley Decl. at NT000169 and

15   see also NT000232-3]

16       This statement shows that the amendment was made to require a charging

17   station that charges two or more video game controllers as opposed to a charger

18   for a single device.   Applicant made no amendment to the "at least one structure"

19   language and hence there can be no prosecution disclaimer regarding that

20   language.

21       Here, there is no basis here to restrict the scope of the term "at least one"

22   from its plain and ordinary meaning.   Such a restriction is only appropriate where

23   the patentee makes clear and unmistakable prosecution arguments limiting the

24   meaning of a claim term in order to overcome a rejection, in which case the

25   courts limit the relevant claim term to exclude the disclaimed matter. *Sandisk*

26   *Corp. v. Memorex Prods.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005).   "An ambiguous

27   disclaimer, however, does not advance the patent's notice function or justify

28   public reliance, and the court will not use it to limit a claim term's ordinary

CHRISTIE, PARKER & HALE, LLP

meaning.  There is no "clear and unmistakable" disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term. *Sandisk Corp. v. Memorex Prods*., 415 F.3d 1278, 1287 (Fed. Cir. 2005) (internal citations omitted); See also *Cordis Corp. v. Medtronic AVE, Inc*., 339 F.3d 1352, 1359 (Fed. Cir. 2003) (concluding that a statement made during prosecution "is amenable to multiple reasonable interpretations and it therefore does not constitute a clear and unmistakable surrender.")

Defendants also argue that the Applicant's amendment of "at least one DC port a plurality of DC ports on the base, the at least one DC port each of the DC ports configured to couple to and provide power to a power input of a respective one of the at least one plurality of video game controller controllers," shows that Nyko knew how to claim a one-to-one correspondence and should have also done the same for the "at least one" language if that is what they intended.  However, the "at least one" language is not intended to claim a one-to-one correlation, so it was not amended as such.

As Defendants correctly state in their Opening Brief, "Nyko chose to retain "at least one," which can include both a single structure and a plurality of structures, to provide support to two or more controllers." [Def. Op. Br. at 22, ll. 14-16.]  And this is what the "at least one" language of claim 1 does, it allows for both embodiments - a single structure which provides support to two or more controllers and a plurality of structures which provide support to two or more controllers.  This is different than amending claim 1 to recite "at least one DC port a plurality of DC ports on the base," because, as discussed above, claim 1 was amended to require a plurality of video game controllers and those video game controllers must have a plurality of DC ports to plug into in order to charge. Claim 1 was no longer claiming an embodiment with one DC port, unlike the language "at least one structure," which still allows for an embodiment consisting

-19-

of one structure, or more than one structure.

The intrinsic evidence mandates, and the extrinsic evidence supports, Nyko's proposed construction of "at least one" to have its plain and ordinary meaning "*one or more*."  Nyko asks the Court to adopt the same.

## V.    "SUPPORTED BY THE BASE"

| PATENT TERM | Nyko's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "supported by the base" | No need of construction | "on the base" |

Nyko does not offer any construction on the term "supported by the base" because Nyko believes the term needs no construction.  "Supported by the base" has a plain meaning.  [American Heritage Dictionary, Quigley Rebuttal Decl., Ex. W.]   Defendants argue that "supported by the base" means "on the base" because defendants say there is no support for the language "supported by the base" in the specification. [Def. Op. Br. at p. 23, ll. 8-10.]   This is not true, in fact all embodiments of the charging station show "a plurality of male mini-USB connectors **supported by the base**."



FIG.18

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FIG. 18 of the Patent-in-Suit (red highlighting added)

In FIG. 18, the base 524 is depicted under the connectors 542 (which can be "male mini-USB connector[s]") and is providing support to these connectors 542. ['848 Patent, col. 12, ll. 58-62.]  The fact that the connector 542 is on the adapter 516, as pointed out by defendants, does not change the fact that the adapter 516 is on the base 524, and hence the connector on the adapter is also on the base and supported by the base, as shown above.  The same is shown in FIG. 13, for example.

The written description also provides additional support for the language "supported by the base." ['848 Patent, col. 16, ll. 32-33 ("a plurality of male mini-USB connectors supported by the base"); col. 2, ll. 45-48("at least one male mini-USB connectors supported by the base"), col. 3, ll. 1-4 (same).]

Defendants next argue that "the claim recites 'supported by the base' using purely functional terms," citing *Halliburton* for the premise that determining definiteness is a difficult task in these cases. [Def. Op. Br. p. 24, ll.3-4. (*citing Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008)). However, this argument is a misapplication of *Halliburton*.  As Defendants themselves cite, "[w]hen a claim limitation **is defined** in purely function terms, the task of determining whether that limitation is sufficiently definite is a difficult one that is highly dependent on context." *Id.* at 1255 (emphasis added).  As this quote states, the claim language, which is an object or noun, must be defined in functional terms.  For example, in *Halliburton*, the claim language in question was a "fluid" that was defined by its ability to transition to a liquid and its ability to suspend drill cuttings. *Id.* at 1250.  Another example pointed out in *Halliburton* are means-plus-function claims, which include a "means" (i.e. an object) plus functional language to define that means. *Id.*  In this case, "supported by the base" is not an object, thing or noun that is defined in functional language, so this standard is inapplicable.

CHRISTIE, PARKER & HALE, LLP

In sum, the claim language "supported by the base" is clear and unambiguous and requires no further construction.

## VI.   DEFENDANTS' INDEFINITENESS ARGUMENTS ARE WITHOUT MERIT AND SHOULD BE REJECTED

Defendants argue that the language "structure" and "supported by the base" are both indefinite.  The second paragraph of § 112 requires the specification of a patent to "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). "To satisfy this requirement, the claim, read in light of the specification, must apprise those skilled in the art of the scope of the claim." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340 (Fed. Cir. 2005).  Absolute clarity is not required.  As long as "the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, [the Federal Circuit has] held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

It is Defendants' burden to prove "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton*, 514 F.3d at 1249-50.

Defendants argue that the terms "structure" and "docking structure" are indefinite because "[n]either the intrinsic nor the extrinsic evidence describes with clarity what a 'structure' is in the context of the claims." [Def. Op. Br. at p. 17, ll.16-17.]  However, a simple reading of the patent shows that this is not true.

The claims give substantial description of the term "structure."  According to claim 1, for example, the at least structure must:

- be on the base
- provide physical support for a plurality of video game controllers

-22-

- include a plurality of docking bays to receive the plurality of video game controllers
- include a plurality of pairs of opposite surfaces that define the docking bays and have a DC port between the opposite surfaces

[See claims 1 and 13 highlighting limitations relating to the term structure, Exh. X to the Reb. Quigley Decl.]

      This description of "structure" is also disclosed as such, consistent with the elements enumerated above, in the Abstract, the Summary of the Invention and the Written Description. [*see* '848 Patent at Abstract, col. 1, line 66 - col. 2, l. 7, col. 2, ll. 19-25, col. 2, l. 44-53, col. 2, l. 66 - col. 3, l. 8, col. 5, l. 66 - col. 6, l. 5.] The written description goes further to state that "Each pair of opposite surfaces, a portion of the base 402, a corresponding docking bay 404, and/or the locators 410 may comprise a **structure** for providing physical support to one of the video game controllers 420 during charging."

      "Comprising" is a term of art in patent law meaning *including, but not limited to*. *See* Manual of Patent Examining Procedure § 2111.03 ("The transitional term 'comprising,' which is synonymous with 'including,' 'containing,' or 'characterized by,' is inclusive or open-ended and does not exclude additional, unrecited elements or method steps," citing *Mars Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1376, 71 USPQ2d 1837, 1843 (Fed. Cir. 2004)).  With that understanding, this phrase means that any or all (as noted by the words "and/or") of the listed items (each pair of opposite surfaces, a portion of the base, a docking bay, a locator) may be a structure for providing support for the video game controllers. This can be seen in the figures of the patent-in-suit:

CHRISTIE, PARKER & HALE, LLP



FIG.11

In FIG. 11, the patent discloses pairs of opposite surfaces on the partitions 406 that can support the video game controllers when the controllers are on the base. The entire surface of these opposite surfaces may or may not physically support a controller, but at least a structure (a portion of the opposite surfaces) will. The same is also true for a portion of the base. Portions of the surfaces of the base that the locators are on, and well as portions of the top surface of the base, are described in the exemplary embodiment to physically support the video game controllers. In addition, the docking bays, which include the opposite surfaces and the discussed portions of the base, also include the above discussed structures that physically support the controllers.[9] The same is shown in FIG. 18.

Therefore, in this one embodiment, there are multiple clearly defined structures that support the controllers. And while the additional structures

---

[9] Furthermore, the term "docking bay" which the structures define is readily understood by one skilled in the art. [See Katherine Quigley Declaration in Support of Nyko's Opening Brief (Dkt 105), Exh. M, Deposition of Thomas Roberts at 246:22 - 247:14]

CHRISTIE, PARKER & HALE, LLP

disclosed in the specification should not be imported into the claims (*see Sjolund v. Musland*, 847 F.2d 1573, 1581 (Fed. Cir. 1988) ("While . . . claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims . . . ."), they provide clear support and description of the term "structure" as it is used in the claim sufficient to overcome any claim of indefiniteness.  The Rebuttal Expert Report of Garry Kitchen filed concurrently herewith also supports the definiteness of the claim language. [See Para. 59-66].

## VII.   CONCLUSION

Defendants rely upon strained constructions that have no support in the intrinsic evidence, and then cite to inapposite extrinsic evidence and distinguishable case law.  There is one expert here, and that expert supports Nyko's construction.  Defendants chose not to engage an expert, and have no evidence to rely upon as to the understanding of those skilled in the art.  Based on the foregoing, Nyko requests that its proposed claim constructions be adopted.

DATED:  April 15, 2013                    Respectfully submitted,

                                          CHRISTIE, PARKER & HALE, LLP


                                          By   */s/ Katherine L. Quigley*
                                               Katherine L. Quigley

                                          Attorneys for Plaintiff and
                                          Counterdefendant,
                                          NYKO Technologies, Inc.