# EXHIBIT R

US007942747B2

(12) **United States Patent**
Cole

(10) Patent No.: **US 7,942,747 B2**
(45) Date of Patent: **May 17, 2011**

(54) **VIDEO GAME CONTROLLER RACK**

(76) Inventor: **Randall C. Cole**, Chester Springs, PA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 866 days.

(21) Appl. No.: **11/982,061**

(22) Filed: **Nov. 1, 2007**

(65) **Prior Publication Data**

US 2008/0064504 A1     Mar. 13, 2008

**Related U.S. Application Data**

(63) Continuation-in-part of application No. PCT/US2006/016944, filed on May 3, 2006.

(60) Provisional application No. 60/749,932, filed on Dec. 13, 2005.

(51) **Int. Cl.**
*A63F 13/08*     (2006.01)
*A47G 29/08*     (2006.01)

(52) **U.S. Cl.** ......................................... **463/47**; 211/100

(58) **Field of Classification Search** ................. 211/85.7, 211/26, 26.2, 70.6, 75, 85.2, 85.9, 85.85, 211/85.5, 44, 57.1, 59.1, 61, 100, 99, 87.01, 211/193; 463/47; 248/121, 176.1; 273/148 B
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,013,551 | A | 1/1912 | Horton ........................ 248/311.2 |
| 1,490,650 | A | 4/1924 | Wagner ........................ 248/170 |
| 1,679,675 | A | 8/1928 | Lujan ........................... 248/160 |
| 1,783,749 | A | 12/1930 | Roehl ............................ 248/97 |
| 2,007,496 | A | 7/1935 | Hurlbut ....................... 248/27.8 |
| 2,100,421 | A | 11/1937 | Wupper ....................... 273/265 |
| 2,392,024 | A * | 1/1946 | Couri ............................. 446/374 |

| | | | |
|---|---|---|---|
| 2,890,801 | A | 9/1959 | Ladd et al. ................... 211/59.1 |
| 3,140,558 | A | 7/1964 | Cassidy ......................... 248/449 |
| 3,252,678 | A * | 5/1966 | Lasch et al. ............. 248/220.31 |
| 3,897,724 | A | 8/1975 | McDonald ................... 100/34 |
| 3,915,308 | A | 10/1975 | Ratzloff et al. ............. 211/70.6 |
| 4,166,332 | A * | 9/1979 | Donovan ....................... 40/605 |
| 4,223,862 | A | 9/1980 | Doughty ................. 248/222.52 |
| D273,165 | S * | 3/1984 | Sternberg ..................... D6/495 |
| 4,494,754 | A | 1/1985 | Wagner, Jr. ............. 273/148 B |
| 4,501,369 | A | 2/1985 | Fox ........................... 211/133.1 |
| D278,102 | S | 3/1985 | Wagner, Jr. ................. D6/466 |
| D281,657 | S | 12/1985 | Roczey ....................... D14/454 |
| 4,573,682 | A | 3/1986 | Mayon ..................... 273/148 B |
| 4,678,087 | A * | 7/1987 | York .......................... 211/70.5 |
| 4,865,283 | A | 9/1989 | Parker ........................ 248/159 |
| 4,889,304 | A | 12/1989 | Glickman et al. ...... 248/222.13 |
| 4,936,565 | A | 6/1990 | Fredrickson ............. 211/59.1 |
| 4,951,827 | A | 8/1990 | Moransais ................. 211/59.1 |
| 5,031,783 | A | 7/1991 | Goudreau ................. 211/181.1 |
| 5,060,393 | A | 10/1991 | Silverman et al. .......... 33/512 |
| 5,097,966 | A * | 3/1992 | Miller ..................... 211/87.01 |
| 5,145,135 | A * | 9/1992 | Thompson ................. 248/201 |
| 5,207,791 | A | 5/1993 | Scherbarth .............. 273/148 B |
| D337,762 | S * | 7/1993 | Crane ........................ D14/451 |

(Continued)

*Primary Examiner* — Dmitry Suhol
*Assistant Examiner* — Carl V Larsen
(74) *Attorney, Agent, or Firm* — Young & Thompson

(57)     **ABSTRACT**

The present invention is for a storage rack for game controllers and a method of using it. The present invention provides a safe convenient and practical way of storing game controllers when the game controller is not in use by a gamer. The advantage of the present invention is that it organizes the controllers as well as provides a decorative element to a room. The game controller rack includes a vertical member and one or more pairs of cantilever angle members or posts wherein the members have a predetermined lateral spacing and are angled outwardly and upwardly in a predetermined range of angles to provide support for retaining various game controllers.

**17 Claims, 6 Drawing Sheets**



**US 7,942,747 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,346,075 | A | * | 9/1994 | Nichols et al. ............... 211/60.1 |
| 5,490,599 | A | | 2/1996 | Tohidi ............................ 211/171 |
| 5,499,724 | A | * | 3/1996 | Hickman ..................... 211/70.6 |
| 5,669,515 | A | * | 9/1997 | Tisbo et al. .................. 211/70.6 |
| 5,813,549 | A | * | 9/1998 | Sheehan et al. ........... 211/87.01 |
| 5,813,550 | A | * | 9/1998 | Sheehan et al. ........... 211/87.01 |
| 5,820,004 | A | | 10/1998 | Lane ............................. 224/485 |
| 5,833,078 | A | * | 11/1998 | York ............................ 211/70.5 |
| 6,044,772 | A | | 4/2000 | Gaudette et al. .............. 108/43 |
| 6,155,435 | A | * | 12/2000 | Malik ...................... 211/41.12 |
| 6,234,436 | B1 | * | 5/2001 | Kump ..................... 248/220.21 |
| 6,311,946 | B1 | * | 11/2001 | Hoffman ..................... 248/682 |
| 6,398,023 | B1 | * | 6/2002 | Williams ................... 206/308.1 |
| 6,414,652 | B1 | | 7/2002 | Foley .............................. 345/46 |
| 6,568,334 | B1 | | 5/2003 | Gaudette et al. .............. 108/43 |
| 6,575,315 | B2 | | 6/2003 | Zidek ............................ 211/205 |
| 6,722,917 | B2 | * | 4/2004 | Huang .......................... 439/501 |
| 6,789,771 | B1 | * | 9/2004 | Shick et al. .................. 248/121 |
| 6,857,526 | B2 | * | 2/2005 | Vollmer ........................... 211/65 |
| 7,140,584 | B2 | * | 11/2006 | Bourque et al. ........... 248/274.1 |
| 7,140,922 | B2 | * | 11/2006 | Luu et al. ...................... 439/651 |
| 7,198,835 | B2 | * | 4/2007 | Anderson ..................... 428/100 |
| 7,285,021 | B2 | * | 10/2007 | Bell et al. ..................... 439/623 |
| 7,387,224 | B1 | * | 6/2008 | Backus ..................... 224/42.11 |
| 7,669,822 | B2 | * | 3/2010 | Kluge et al. .................. 248/308 |
| 7,757,911 | B2 | * | 7/2010 | Barker .......................... 224/153 |
| 2002/0125391 | A1 | * | 9/2002 | Jackson ..................... 248/309.1 |
| 2003/0142683 | A1 | * | 7/2003 | Lam et al. ..................... 370/401 |
| 2004/0073820 | A1 | * | 4/2004 | Hsu .............................. 713/300 |
| 2006/0000790 | A1 | * | 1/2006 | Smiddy et al. ............ 211/86.01 |
| 2006/0086870 | A1 | * | 4/2006 | Nida ........................... 248/176.1 |
| 2006/0151409 | A1 | * | 7/2006 | Schmoelzer ................. 211/85.9 |
| 2007/0194752 | A1 | * | 8/2007 | McBurney ................... 320/112 |
| 2008/0230987 | A1 | * | 9/2008 | Jackson .................... 273/148 B |
| 2009/0179130 | A1 | * | 7/2009 | Bernard et al. ........... 248/309.1 |
| 2009/0322279 | A1 | * | 12/2009 | McBurney ................... 320/107 |

* cited by examiner

Case 2:12-cv-03001-GAF-VBK   Document 109-1   Filed 04/15/13   Page 4 of 117   Page ID #:2433



FIG.1

FIG.2

EXHIBIT R
Page 5



Base 15

*FIG.3*

10

11

VA

VS

11

11

11

30

11b   22   11b

15b

10b

26

24

*FIG.4*

EXHIBIT R
Page 6



*FIG.4A*

*FIG.5*

*FIG.7*

U.S. Patent          May 17, 2011          Sheet 4 of 6          US 7,942,747 B2



*FIG.6*

*FIG.6A*

EXHIBIT R
Page 8



FIG.6B

FIG.8



*FIG.9*

*FIG.10*

EXHIBIT R
Page 10

US 7,942,747 B2

**1**

## VIDEO GAME CONTROLLER RACK

### CROSS REFERENCE TO RELATED APPLICATION

This application is a continuation-in-part application of PCT Appl. No. PCT/US06/16944 filed May 3, 2006 by the Applicant herein, which claims the benefit of the priority date of Provisional Application No. 06/749,932 filed Dec. 13, 2005. Applicant claims the benefit of the earlier filing dates of the PCT application and the provisional application for so much as is common with this application. The subject matter of the PCT application and provisional application is incorporated herein by reference the same as if set forth at length.

### FIELD OF THE INVENTION

The present invention relates to a game controller rack for storing game controllers. More particularly, the present invention relates to a game controller rack having cantilever angle members mounted to a vertical member with a range of outwardly and upwardly directed angles to provide a wide range of compatibility of the video game controller rack with various game controllers. Further, the present invention is directed to providing several arrangements of the game controller rack including one which would mount over a game console. Charging and communication functions may be provided by the game controller rack.

### BACKGROUND OF THE INVENTION

Home video game consoles, such as Microsoft's X-Box® and X-Box 360®, Sony's PlayStation® consoles and Nintendo's Gamecube® are more popular than ever. Technological advancements now have three or more microprocessors and graphic processors in a single game console allowing phenomenal graphics. A user, often labeled a "gamer", is afforded a surreal gaming experience and has literally hundreds of game titles available to him or her. As the home entertainment and game market expands into literally millions of homes, it is possible in the not-too-distant future that one could envision a home video game system in every home in the world very much the same manner as a television set or personal computer. Even now, there are some homes with two or more game consoles allowing the gamer to play numerous games on various gaming platforms.

Presently, there are at least three major game console manufacturers all using the same style of ergonomic game controller. The style is very conducive to extended game play, all the time protecting the gamer from ill effects, such as carpal tunnel syndrome. A serious gamer probably has at least two game consoles each with at least two game controllers per game console. The gamer would have at least four game controllers connected to its game console via a wire. To eliminate the wild spaghetti effect produced by having wires lying around in front of the display, gamers will purchase wireless game controllers. But, wired or wireless, the storage and the protection of the game controller is paramount to the avid gamer. To avoid an unsightly game room, living room or bedroom, the controller may be stored in a drawer where the wires will eventually become entangled. The wired or wireless game controller may get accidentally damaged if just left lying on the floor or table.

Therefore, what is needed is a game controller storage device that permits the gamer to safely store his or her game controllers. Additionally, the device should be made out of different materials and colors allowing the storage device to become part of the décor.

### SUMMARY OF THE INVENTION

The present invention is for a storage rack for game controllers and a method of using it. The present invention provides a safe convenient and practical way of storing game controllers when the game controller is not in use by a gamer. An advantage of the present invention is that it organizes the controllers as well as provides a decorative element to a room.

Briefly and basically, in accordance with the present invention, a game controller rack for storing at least one game controller is provided which includes a vertical member. At least one pair of cantilever angle members are fixably attached to the vertical member. The pair of cantilever angle members have a first and a second cantilever angle member spaced a predetermined distance laterally of each other and are angled outwardly from a line perpendicular to the vertical member at an angle in the range of approximately 18 degrees to approximately 22 degrees, and preferably at 20 degrees. The cantilever angle members are also angled upwardly from a line perpendicular to the vertical member at an angle in the range of approximately 27 degrees to approximately 33 degrees, and preferably angled at 30 degrees upwardly. The pair of cantilever angle members, and preferably a plurality of pairs of cantilever angle members, attach to the vertical member. Each pair of cantilever angle members creates a cradle for a game controller.

In accordance with a presently preferred embodiment, additional pairs of cantilever angle members may be positioned a predetermined distance below or above and on either side of the pair of cantilever angle members.

In another preferred embodiment, the game controller rack may include two vertical members connected together by a strap which is adapted to go over a game console. Each of the vertical members is provided with fixably attached cantilever angle members, with each pair forming a cradle for a game controller.

In another preferred embodiment of the present invention, the game controller rack, and particularly the vertical member, may be provided with a jack such as a USB port for charging the game controllers while stored on the rack.

In another preferred embodiment of the present invention, the video game controller rack is provided with a network card which enables network communication between the game controllers and a secondary network, a game console, a personal computer or the like.

### BRIEF DESCRIPTION OF THE DRAWINGS

For the purpose of illustrating the invention, there are shown in the drawings forms which are presently preferred; it being understood, however, that this invention is not limited to the precise arrangements and instrumentalities shown.

FIG. **1** is a view in perspective of a presently preferred embodiment of the present invention.

FIG. **2** is a front elevation view of another embodiment of the present invention.

FIG. **3** is a side elevation view of the embodiment of the present invention shown in FIG. **2**.

FIG. **4** is a front elevation view of another preferred embodiment of the present invention illustrating a game controller rack of the present invention provided with USB ports.

FIG. **4**a is a back elevation view of the embodiment shown in FIG. **4**.

EXHIBIT R
Page 11

US 7,942,747 B2

3

FIG. **5** is a top or plan view of the embodiment of the present invention shown in FIG. **2**.

FIG. **6** is a side elevation view of another embodiment of the present invention illustrating two vertical members having cantilever angle members attached thereto mounted over a game console by a strap.

FIG. **6***a* is a partially broken away plan view of FIG. **6** illustrating the strap and its insertion into the vertical members.

FIG. **6***b* is a partially broken away cross sectional view taken along line **6***b*-**6***b* of FIG. **6***a*.

FIG. **7** is a partially broken away view in perspective of the embodiment of the invention illustrated in FIG. **1** showing a cantilever angle member being fixably attached to a vertical member.

FIG. **8** is a front elevation view of another embodiment of the present invention illustrating the two sections of the embodiment of FIG. **6** mounted to a vertical surface.

FIG. **9** is a back elevation view of another embodiment of the present invention provided with a network card.

FIG. **10** is a side elevation view of the embodiment of FIG. **9**.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, wherein like numerals indicate like elements, there is shown in FIGS. **1** and **2** embodiments of the present invention.

FIG. **1** is a presently preferred embodiment of a video game controller rack **10***a* in accordance with the present invention. FIG. **2** illustrates another embodiment of a video game controller rack **10** in accordance with the present invention. The game controller rack of the present invention may be made of any suitable material including plastic, wood, aluminum, other metals and other rigid materials. FIG. **1** is preferably at present molded from plastic. FIG. **2** at present is preferably made from wood. As illustrated in FIGS. **1** and **2**, a plurality of cantilever angle members or posts **11***a* in FIGS. **1** and **11** in FIG. **2** are fixed in pairs to vertical member or video game controller base **15***a* in FIGS. **1** and **15** in FIG. **2** to create a cradle in which to securely store video game controllers.

As illustrated in FIG. **1**, the cradle positions may be provided with indicia **16** such as numerals **1**-**4** indicated therein for indicating the video game controller space.

The vertical member or game controller base **15**/**15***a* is provided with support means for supporting the vertical member **15**/**15***a* in a vertical position. This support means may be screw or other fastener holes **18** and **20** for securing the vertical member **15**/**15***a* to a vertical surface such as a wall or it may be provided with a mounting base to hold vertical member **15**/**15***a* in a vertical position.

In all embodiments, a pair of cantilever angle members in conjunction with a portion of the vertical or base member of the game controller rack creates a cradle for a game controller. Referring specifically to FIG. **1**, the pair of cantilever angle members **11***a* fixably attached to vertical member **15***a* create a cradle for a game controller (not shown in FIG. **1**). A game controller cradle on the upper pair of cantilever vertical members is illustrated in FIG. **4** in dotted outline **30**.

The cantilever angle members of each pair of cantilever angle members are spaced a predetermined distance apart. This distance center to center is illustrated as HS for horizonal spacing in FIG. **2**. This center to center spacing is the same for all embodiments and is preferably approximately 1½ inches center to center. Referring to the side view of FIG. **2** shown in FIG. **3**, there is a vertical spacing indicated as VS between

4

cantilever angle members **11**. This distance is preferably at least approximately 2½ inches to enable sufficient space for the game controller to be positioned in its cradle. FIG. **3** also indicates a vertical angle of cantilever angle members **11** by the angle VA which is an angle formed between the cantilever angle member of post **11** and a perpendicular or normal line to vertical member **15**. This angle is preferably approximately 27 degrees to approximately 33 degrees. In a presently preferred embodiment, the angle is 30 degrees. In the plastic molded embodiments, such as the embodiment of FIG. **1**, this angle would be the angle formed between a perpendicular or normal to vertical member **15***a* and the upper surface of cantilever angle members **11***a*. As illustrated in FIG. **1**, cantilever angle members **11***a* in FIG. **1** may be provided with a taper to provide additional strength and may be provided with recesses to reduce the amount of plastic required in the molding process. Cantilever angle members **11** and **11***a* are also angled outwardly from a line perpendicular or normal to the vertical member **15** as shown in top of plan view of FIG. **2** as illustrated in FIG. **5**. The outward angle of cantilever angle members **11** and **11***a* from a line perpendicular to the vertical member illustrated as LA for lateral angle is between 18 and 22 degrees, in a presently preferred embodiment is 20 degrees. All of the cantilever angle members **11***a* and **11** of the embodiments of FIGS. **1** and **2** are provided with these angles and spacings. Also, the cantilever angle members **11***b*, **11***c*, **11***d* and **11***e* of the other embodiments are arranged with the same spacing and angles to create the cradle for the game controllers. Although the pairs of cantilever angle members are shown in FIGS. **1** and **2** as being spaced vertically, it is understood that they may be spaced laterally on a base member or vertical member to create a pattern of storing game controllers which are side by side rather than vertically one above the other. Such arrangement would have the same angles in spacing as just described.

Referring now to FIGS. **4** and **4***a*, there is shown another embodiment of the present invention wherein universal serial bus (USB) ports are provided, one for each game controller. As described with respect to the previous embodiment, the cantilever angle members or posts **11***b* are mounted to vertical member or base **15***b*. These are provided with USB ports **22**, one for each game controller position. USB ports **22** are provided with power for charging game controllers, such as game controller **30**, from a power supply **24** via jack **26**.

FIG. **4***a* is a rear view or back view of the embodiment of FIG. **4** and illustrates the housing structure **32** of USB ports which are connected via wire or cable **34** to power input jack, the rear thereof which is shown at **36**. FIG. **4***a* also shows ribbing **28** which is provided for rigidity to the vertical member structure such as **15***a*, **15***b*, **15***c*, **15***d* and **15***e*.

Referring now to FIG. **7**, there is shown one of the cantilever angle members or posts **11***a* being inserted into opening into which resilient snap or interlocking retainer mechanism **42** is being inserted to fixably attach cantilever angle member **11***a* to vertical member **15***a*. Resilient snaps or interlocking retainer mechanism **42** are also illustrated in FIG. **4***a* at **42***b*. Holes **18***a* and **20***a* formed in vertical member **15***a* are adapted to receive fasteners, such as screws, for securing the vertical member **15***a* to a structure. Other interlocking retainer means may be utilized to secure cantilever angle members **11***a*, **11***b*, **11***c*, **11***d* and **11***e* to vertical members **15***a*, **15***b*, **15***c*, **15***d* and **15***e*, respectively, including but not limited to friction or an adhesive or other bonding substance.

Referring now to FIGS. **6**, **6***a*, **6***b* and FIG. **8**, there is shown another embodiment of the present invention wherein a second game controller rack is provided or the rack of FIG. **1** is bifurcated into two vertical sections. In other words, a game

EXHIBIT R
Page 12

US 7,942,747 B2

5

controller rack similar to FIG. 1 may be bifurcated into a first
vertical member 15c and a second vertical member 15d. This
is best illustrated in FIG. 8 wherein two sections are shown
wherein they may be connected together by a dovetail which
only goes together in one direction. The dovetail is shown at
50 and 52. As may be seen in FIG. 8, the female section,
dovetail 50, has a tapered side and a matching tapered side on
the male portion of dovetail 52 such that they may be con-
nected together in only one manner. Putting them together,
the two sections may be secured to a vertical surface by
fasteners 60, 62, 64 and 66 with 15c above vertical member
15d to form a structure similar to that shown in FIG. 1.
Alternatively, they may be mounted side by side or in any
other manner as illustrated in FIG. 8.

The embodiment of FIGS. 6, 6a, 6b and FIG. 8 may be
mounted over a console as shown in FIGS. 6, 6a and 6b. The
video game controller racks 10c and 10d may be mounted
over a video console 44 by means of strap 70. Strap 70 fits into
inserts, channels or openings 54 and 56. Strap 70 has holes 72
through which ball headed pins 58 and 68 are pressed to
mount vertical members 15c and 15d to strap 70. Other suit-
able means may be utilized to attach strap 70 to vertical
member 15c and 15d.

Referring now to FIGS. 9 and 10, there is shown another
embodiment of a video game controller rack 10e having a
vertical member 15e and cantilever angle members 11e
spaced and angle as described previously. The embodiment of
FIGS. 9 and 10 contains a network card 80 mounted in the
back of vertical member 15e. Network card 80 is connected
via cables 82 and 84 to USB ports 90, 92, 94 and 96. USB
cables to be connected into ports 90, 92, 94 and 96 an con-
nected to game controllers placed on game controller rack
10e. Network card 80 may receive power via jack 98. Net-
work card 80 may be a wireless network card or it may be a
wire card connected to other devices or networks via the
optional port 100. Network card 80 and its associated USB
ports may be used both for communication and for charging
the game controllers. The game controllers via the network
card may communicate with a secondary network, a personal
computer, a game console or other device.

The video game controller rack 10 can be utilized to
securely store game controllers for Microsoft's X-Box and
X-Box 360 game consoles. In addition, Sony's PlayStation®,
PlayStation 2® and possibly the pending PlayStation 3®
controllers can also be securely stored. The Nintendo
Gamecube® and possibly the anticipated Nintendo Revolu-
tion® controllers can also be securely stored. It is quite pos-
sible that the present invention can be utilized with many
game controllers.

In preferred embodiments the video game controller rack
10, 10a, 10b, 10c, 10d and 10e assembled by a gamer by
affixing an interlocking pair of the plurality of cantilever posts
11, 11a, 11b, 11c, 11d and lie into the video game controller
rack 15, 15a, 15b, 15c, 15d and 15e. The embodiments permit
the present invention to be efficiently shipped as a flat pack
item to save on shipping costs. The savings can be seen when
the present invention is shipped by the manufacturer, whole-
saler or retailer.

In another embodiment, video game controller rack 10 can
be rotated to a horizontal position and the pairs of plurality of
cantilever posts 11 are affixed at a 90 degree angle from the
above embodiments permitting a new game controller mount-
ing pattern.

In yet another embodiment, the weight of the actual game
console would support a first bottom piece which is attached
in a cantilever fashion permitting the video game controller
rack 10 to be suspended over or near the game console.

6

Furthermore, the cantilever arm could be replaced by a plu-
rality of support members which would support the game
controller rack.

In another embodiment the materials used in fabrication of
the video game controller rack 10, 10a, 10b, 10c, 10d and 10e
can be plastic, wood or metal permitting the video game
controller rack 10, 10a, 10b, 10c, 10d and 10e to be suitable
for the gamers' chosen décor. An advantage of plastic is that
it can be easily created by an injection molding system. The
wooden version can be finished in a plethora of stains or
glosses to match other pieces of furniture in the gamers'
gaming room. The metal version can also be made from a
plethora of materials which produces a variety of finishes.
Additionally, the metal version can be anodized or plated to
again produce the variety of finishes.

In another embodiment shown in FIGS. 4 and 4A, the
cradle formed by the plurality of cantilever posts 11b has a
universal serial bus (USB) adapter. The USB adapter con-
nects to the game controller allowing the game controller rack
10b to recharge a wireless game controller. This embodiment
also allows USB communication between a game controller
and the game controller rack 10b. For example, the game
console can extract the status of the battery of the game
controller through the game controller rack 10b as the game
controller rack 10b charges the game controller. In addition,
the game controller rack 10b can be utilized with personal
computers, running Microsoft Windows, Apple O/S (Operat-
ing System), Linux or any personal computer operating sys-
tem.

In another embodiment shown in FIGS. 9 and 10, the
present invention can be utilized as a network hub which
attaches a wireless or wired game controller with a network.
This allows a personal computer or any network machine to
obtain a status of the game controller. The network can also be
utilized as a communication link between the game controller
and the gaming machine.

In yet another embodiment, the above mentioned USB is
replaced with an appropriate power plug which matches the
power plug requirements of the game controller. The appro-
priate power plug may also have a communication system to
be utilized to converse with the game controller and another
machine.

An additional embodiment shown in FIGS. 6, 6A and 6B
has the game controller storage rack of FIG. 1 bifurcated
readily into two distinct sections along the horizontal axis. A
new element, such as a strap is added to join the two sections
to create a "saddle bag" type device. The new element or strap
is placed directly on the game console. The strap can be made
out of a flexible material such as nylon or a hard plastic. The
hard plastic strap can be form shaped to cover a specific game
console.

In accordance with the method of the present invention,
there is provided a method of storing game controllers which
includes the steps of providing a game controller rack 10, 10a,
10b, 10c, 10d or 10e as shown and described and placing at
least one game controller on the game controller rack. In this
manner, the game controller may be stored safely and
securely out of the way and in a safe place. The game con-
troller is cradled between the cantilever angle members and
the vertical member.

Further, in accordance with the method of the present
invention, a game controller stored on the game controller
rack may be connected to a power connector for charging the
game controller and charging the game controller while it is
stored on the game controller rack.

Further, in accordance with the method of the present
invention, the method may include the step of connecting the

EXHIBIT R
Page 13

US 7,942,747 B2

7

game controller to a network connection on the vertical connection of the game controller rack and causing the game controller to communicate with a secondary network.

Further, in accordance with the method of the present invention, the method may include the steps of providing the game controller rack with a network communication device and causing the game controller to communicate via a wireless network transceiver with a secondary network.

It should be understood that the disclosed embodiments of the present invention are not limited in its application to the details of the particular arrangements shown, since the invention is capable of other embodiments. Also, the terminology used herein is for the purpose of description and not of any limitation.

The present invention may be embodied in other specific forms without departing from the spirit or essential attributes thereof and, accordingly, reference should be made to the appended claims, rather than to the foregoing specification as indicating the scope of the invention.

I claim:

**1**. A game controller rack for storing at least one game controller, comprising:

a vertical member;

at least one pair of cantilever angle members fixably attached to said vertical member; and

said pair of cantilever angle members having a first and a second cantilever angle member spaced a predetermined distance laterally of each other and angled outwardly from a line perpendicular to said vertical member, at an angle in the range of approximately 18 degrees to approximately 22 degrees and angled upwardly from a line perpendicular to said vertical member at an angle in the range of approximately 27 degrees to approximately 33 degrees,

wherein said at least one pair of cantilever angle members attaches to said vertical member creating a cradle for at least one game controller, and

the vertical member is provided with a connector for providing power to said game controller, the vertical member provided with at least one network connector adapted to connect to at least one of said game controllers creating a network access point, or the vertical member provided a transceiver for communicating with at least one wireless game controller and a gaming network.

**2**. The game controller rack in accordance with claim **1** including a second pair of cantilever angle members positioned a predetermined vertical distance below said pair of cantilever angle members, said second pair of cantilever angle members having a first and second cantilever angle member spaced a predetermined distance laterally of each other and angled outwardly from a line perpendicular to said vertical member at an angle in the range of approximately 18 degrees to approximately 22 degrees and angled upwardly from a line perpendicular to said vertical member at an angle in the range of approximately 27 degrees to approximately 33 degrees.

**3**. The game controller rack in accordance with claim **2**, wherein said second pair of cantilever angle members is positioned a predetermined distance below said pair of cantilever angle members of at least approximately 2½ inches.

**4**. The game controller rack in accordance with claim **1** having a lateral pair of cantilever angle members positioned laterally of said pair of cantilever angle members, said lateral pair of cantilever angle members having a first and a second cantilever angle member spaced a predetermined distance laterally of each other and angled outwardly from a line

8

perpendicular to said vertical member at an angle in the range of approximately 18 degrees to approximately 22 degrees and angled upwardly from a line perpendicular to said vertical member at an angle in the range of approximately 27 degrees to approximately 33 degrees.

**5**. The game controller rack in accordance with claim **1**, wherein said first and second cantilever angle members are angled outwardly from a line perpendicular to said vertical member at an angle of approximately 20 degrees.

**6**. The game controller rack in accordance with claim **1**, wherein said first and second cantilever angle members are angled upwardly from a line perpendicular to said vertical member at an angle of approximately 30 degrees.

**7**. The game controller rack in accordance with claim **1**, wherein said first and second cantilever angle members have a predetermined distance laterally of each other of approximately 1½ inches center to center.

**8**. The game controller rack in accordance with claim **1**, wherein said vertical member is provided with support means.

**9**. The game controller rack in accordance with claim **8**, wherein said support means includes holes formed in said vertical member adapted to receive fasteners for securing said vertical member to a structure.

**10**. The game controller rack in accordance with claim **1** including a second game controller rack in accordance with claim **1**, wherein said two game controller racks are connected by at least one strap, said strap being adapted to be placed over a game console.

**11**. The game controller rack in accordance with claim **10**, wherein said game controller rack and said second game controller rack are provided with connecting means for connecting together said game controller racks for mounting on a vertical surface.

**12**. The game controller rack in accordance with claim **11**, wherein said connecting means is a one way dovetail structure for connecting together said game controller racks.

**13**. The game controller rack in accordance with claim **1**, wherein said pair of cantilever angle members is fixably attached to said vertical member by insertion of said first and second cantilever angle members into said vertical member by an interlocking retainer means, said interlocking retainer means being a mechanical interlocking mechanism, friction or a bonding substance.

**14**. The game controller rack in accordance with claim **1**, wherein when the vertical member is provided with a connector for providing power to said game controller, said connector for providing power is a an universal bus connector.

**15**. A method of storing game controllers comprising the steps of:

providing a game controller rack comprising:

a vertical member,

at least one pair of cantilever angle members fixably attached to said vertical member, and

said pair of cantilever angle members having a first and a second cantilever angle member spaced a predetermined distance laterally of each other and angled outwardly from a line perpendicular to said vertical member, at an angle in the range of approximately 18 degrees to approximately 22 degrees and angled upwardly from a line perpendicular to said vertical member at an angle in the range of approximately 27 degrees to approximately 33 degrees,

wherein said at least one pair of cantilever angle members attaches to said vertical member creating a cradle for at least one game controller and the vertical member provided is with a connector for providing power

EXHIBIT R
Page 14

US 7,942,747 B2

9

to said game controller, the vertical member is provided with a connector adapted to connect to at least one network connector adapted to connect to at least one of said game controllers creating a network access point, or the vertical member is provided with a transceiver for communicating with at least one wireless game controller and a gaming network;

placing at least one game controller on said game controller rack;

connecting said game controller to said network connection on said vertical member of said game controller rack; and

causing said game controller to communicate with a secondary network.

**16**. The method in accordance with claim **15** including the steps of:

connecting said game controller stored on said game controller rack to a power connector for charging said game controller; and

charging said game controller while it is stored on said game controller rack.

**17**. A method of storing game controllers, comprising the steps of:

providing a game controller rack comprising:

a vertical member,

at least one pair of cantilever angle members fixably attached to said vertical member, and

10

said pair of cantilever angle members having a first and a second cantilever angle member spaced a predetermined distance laterally of each other and angled outwardly from a line perpendicular to said vertical member, at an angle in the range of approximately 18 degrees to approximately 22 degrees and angled upwardly from a line perpendicular to said vertical member at an angle in the range of approximately 27 degrees to approximately 33 degrees,

wherein said at least one pair of cantilever angle members attaches to said vertical member creating a cradle for at least one game controller and the vertical member is provided with a connector for providing power to said game controller, the vertical member is provided with at least one network connector adapted to connect to at least one of said game controllers creating a network access point, or the vertical member is provided with a transceiver for communicating with at least one wireless game controller and a gaming network;

placing at least one game controller on said game controller rack;

providing said game controller rack with a network communication device; and

causing said game controller to communicate via said wireless network transceiver with a secondary network.

\*   \*   \*   \*   \*

# EXHIBIT S

Case 2:12-cv-03001-GAF-VBK   Document 100-1   Filed 04/15/13   Page 6 of 117   Page ID
#:1443



US 20090072784A1

(19) **United States**

(12) **Patent Application Publication**     (10) Pub. No.: **US 2009/0072784 A1**

Erickson                                    (43) Pub. Date:        **Mar. 19, 2009**

(54)   **INDUCTIVE CHARGER BATTERY REPLACEMENT SYSTEM, DEVICE & METHOD**

(75)   Inventor:      **Craig Erickson**, Stevenson Ranch, CA (US)

Correspondence Address:
**Law Office of Richard B. Cates
2629 Manhattan Avenue, PMB-273
Hermosa Beach, CA 90254 (US)**

(73)   Assignee:      **TeknoCreations, Inc.**

(21)   Appl. No.:     **12/148,266**

(22)   Filed:         **Apr. 16, 2008**

**Related U.S. Application Data**

(60)   Provisional application No. 60/994,263, filed on Sep. 17, 2007.

**Publication Classification**

(51)   **Int. Cl.**
       *H02J 7/10*          (2006.01)

(52)   **U.S. Cl.** ........................................................ **320/108**

(57)                **ABSTRACT**

The invention is a device and system for providing power to a portable electronic device. A battery unit includes a rechargeable battery and is configured to be removably secured to a portable electronic device to provide power thereto. A base unit is configured to receive and charge one or more battery units, either alone or with the battery units secured to portable electronic devices. The battery unit includes a battery charge indicator, which can be a visible signal. An optical bath is defined through the base unit to transmit the visible signal of the battery unit to a base unit battery charge display.



**Fig. 1A**



**Fig. 1B**



EXHIBIT S
Page 17

## Fig. 2



## Fig. 3



EXHIBIT S
Page 18



**Fig. 4A**

34b
34a
36a
36b
38a
14
38b
18a
18b
50
19
14 Base unit
42
46
48

**Fig. 4B**

42
44
40a
Base unit 14
40b
18a
18b
19

**Fig. 5**



10

**14** Base unit

Charger Base

52 — AC Adaptor

16

54 — Rectifier

56 — Oscillation Circuit

36 — Primary Coupling Inductor

24 — Rechargeable Battery Pack

58 — Rectifier Regulator

26 — Secondary Coupling Inductor

60 — Charger Protection

30 — Li-ion Polymer Battery

32

12 — Wii Remote

EXHIBIT S
Page 20

**Fig. 6A**



72a   72b   74

70 Base unit

76a

76b

**Fig. 6B**

Base unit

70   78



80   76b   74

82

Case 2:12-cv-03001-GAF-VBK   Document 109-1   Filed 04/15/13   Page 22 of 117   Page ID #:2451

## Fig. 6C



Patent Application Publication   Mar. 19, 2009  Sheet 7 of 7       US 2009/0072784 A1



**Fig. 7A**

86b

86a

74

90

76a

76b

72a

90

90

70 Base unit

**Fig. 7B**

88

**Fig. 7C**

86b

90

74

72a

76a

70 Base unit

76b

88a

72b

90

US 2009/0072784 A1

Mar. 19, 2009

1

### INDUCTIVE CHARGER BATTERY REPLACEMENT SYSTEM, DEVICE & METHOD

#### RELATED PATENT APPLICATIONS

[0001]    The present application claims priority under 35 U.S.C. Section 119(e) from Provisional Patent Application No. 60/994,263, filed Sep. 17, 2007 and entitled "Inductive Charger Battery Replacement System, Device & Method," the disclosure of which is incorporated by reference herein in its entirety.

#### FIELD OF THE INVENTION

[0002]    The present invention relates to a system and method for charging battery-operated remote controls, including the replacement of standard batteries in handheld electronic game controller devices, and also the replacement of rechargeable batteries that have charging contact points for electronic devices. The invention has particular application to recharging hand-held remote devices, such as the Sony PS3™ wireless handheld controllers, Wii™ handheld remote, and the XBox 360™ wireless handheld controllers.

#### BACKGROUND

[0003]    Hand-held and other portable electronic devices have become increasingly widespread and are used daily by many consumers. Examples of such devices include wireless handheld game controllers, cell phones, MP3 players, and many other electronic devices.

[0004]    Portable devices often rely on battery power while operating. The batteries are either disposable or rechargeable. Disposable batteries require replacement when their power is depleted, which is inconvenient and may require the user to maintain a supply of replacement batteries. Rechargeable batteries require periodic recharging, typically using an alternating current (AC) connected wall plug and charging stand with charging contact points. Many portable devices (and hand-held devices in particular) are exposed to materials (such as dirt, sweat, grease, etc.) which can cover the charging contact points, thereby interfering with the conductivity of the charging points and reducing (or in some cases entirely eliminating) the ability of the charging stand to recharge the batteries.

[0005]    There is a need for a recharging system and method that permits portable devices to be easily recharged without the need for replacement batteries or charging contacts. The current invention meets this need.

#### SUMMARY

[0006]    The current invention provides for charging of portable battery-operated devices (including those which normally use disposable batteries or which use rechargeable batteries and an AC adaptor charger) using an inductive recharging base without external charging contact points.

[0007]    The invention comprises a battery unit configured to be installed onto the portable electronic device in place of the portable device's standard battery pack. The battery unit has rechargeable batteries and an inductive interface for the recharging of the rechargeable batteries. In one embodiment, the battery unit includes a rechargeable battery (such as a Lithium Ion polymer battery), a battery coupling inductor, a rectifier regulator, and charger protection (to prevent overcharging of the battery).

[0008]    The invention further comprises a recharging base unit upon which the modified portable device can be placed to recharge the battery replacement unit. The recharging base unit receives power from a power source (such as an AC wall outlet), and comprises a base unit coupling inductor configured to interact with the battery coupling inductor in order to charge the battery in the battery replacement unit. In one embodiment, the recharging base unit comprises an AC adaptor (which can be connected to an AC wall outlet or other power source), a rectifier, an oscillation circuit, and a base unit coupling inductor. When the portable device is placed onto the base unit, the base unit coupling inductor (which is driven by power via the oscillation circuit) interacts with the battery coupling inductor, thereby recharging the replacement battery unit.

[0009]    The invention thus enables the elimination of disposable batteries or, in the case of traditional rechargeable battery packs, of the exposed charging contacts which can easily become dirty and not function properly when exposed to sweating and dirty hands, etc.

[0010]    The base unit of the invention includes an AC power adapter, one end of which fits into the AC wall plug and the other end of which leads into the base unit to supply power to the portable device via electromagnetic induction. (Note that other external power sources could also be used in accordance with the invention.) The base unit includes a reception port configured to receive at least a portion of the portable device. The reception port includes a primary coupling inductor.

[0011]    The battery unit that replaces the batteries within the portable device will be custom designed to fit within a designated battery area and will consist of a cover, an inductive loop, a rectifying and charging circuit, and the rechargeable batteries that will power the device.

[0012]    The recharging base unit upon which the battery replacement unit can be placed to receive its power contains an inductive loop and oscillating circuitry, which can itself be powered by a wall mount AC power adaptor. The adapter draws power from the AC outlet and supplies that power to the base to enable one or more inductive battery replacement units to recharge.

[0013]    In another exemplary embodiment of the present invention, a battery replacement unit is designed specifically for one or more specific portable electronic devices. This is accompanied by a matching charging base unit.

[0014]    The system is configured to permit a user to easily place one or more portable devices onto the base unit for re-charging, with the portable devices positioned on the base unit in an angled position to be easily viewed and removed. The system also includes a charge display permitting the user to easily determine the charge status of the battery unit without having to remove the battery unit and/or portable device from the base unit.

[0015]    In one embodiment of the invention, a system for providing power to at least one portable electronic device has a first battery unit and a base unit. The battery unit has an upper side configured for attachment to a first portable electronic device, and a lower side. The battery unit also has a rechargeable battery configured for charging via a battery coupling inductor positioned on or adjacent the lower side. A battery charge indicator, such as a visible light, is positioned on the lower side (which is generally unseen when the battery unit is positioned on the base unit).

[0016]    The system may also have a base unit with a first recess configured to receive the battery unit lower side while

the battery unit is secured to a portable electronic device, and a first coupling inductor positioned at or adjacent an inner region of the first recess. When the battery unit is placed in the first recess the battery coupling inductor is inductively coupled with the first base unit coupling inductor. The base unit may also have a base unit battery charge display that provides an indication of the charge level of the battery unit. The battery charge indicator may be a visible signal, and the base unit may include a light path configured to define an optical path between the battery charge indicator and the base unit first battery charge display when the first battery unit is placed in the first recess. The light path may be or more reflectors, and/or a light tube. For example, a light tube port may be positioned within the first recess, and a first light tube can define an optical path from the light tube port to the base unit first battery charge display.

[0017]   The system may be configured to charge multiple battery units. For example, the system may include a second battery unit similar to the first battery unit, with a second recess configured to receive the second battery unit lower side while the second battery unit is secured to the second portable electronic device. The base unit can also have a second coupling inductor positioned at or adjacent an inner region of the second recess, wherein when the second battery unit is placed in the second recess the second battery coupling inductor is inductively coupled with the second coupling inductor. A base unit second battery charge display can also be provided, with a second light path configured to define an optical path between the base unit second battery charge display and the second battery unit charge indicator when the second battery unit is placed in the second recess. The system may include third, fourth, etc. rechargeable battery units, with multiple recesses having multiple coupling inductors in the base unit. The first recess and the second recess may be positioned in a front-to-back or side-to-side configuration with respect to the base unit.

[0018]   A system according to the invention for providing power to a portable electronic device may include one or more battery units, with each unit having a first exterior surface portion configured for removable attachment to a portable electronic device, a second exterior surface portion, a battery, a battery coupling inductor positioned adjacent the second exterior surface portion, and a battery charge indicator. The battery charge indicator can be positioned on the second exterior surface portion and be configured to provide a battery charge indicator signal. The system can also include a base unit having a battery coupling surface, such as a recess, configured to receive the second exterior surface portion of the battery unit. The base unit can also include a base unit power input, such as an incoming AC line, as well as a base coupling inductor positioned at or adjacent the battery coupling surface and configured to receive power from the base unit power input. When a battery unit is placed on the battery coupling surface, the base coupling inductor is inductively coupled with the battery coupling inductor. The base unit can also include a battery charge signal receiver configured to receive the battery charge signal, and a battery base unit charge display configured to provide a first battery base unit charge signal corresponding to the first battery charge signal. The battery charge signal receiver can be a first end of a light tube, and the first battery base unit charge display can be a second end of the light tube. The first battery charge signal may be a visible signal, and the first battery base unit charge display may be positioned on a front portion of the base unit. The

battery charge signal receiver may be a first mirror, and the battery base unit charge display may be a second mirror. In another embodiment, a single mirror serves as both the battery charge signal receiver and the battery base unit charge display.

[0019]   A base unit according to an embodiment of the invention may have a first recess configured to receive a battery unit, a first coupling inductor in or adjacent the first recess, a first light port in the first recess, a first visible charge display, and a first light tube defining an optical path from the first light port to the first visible charge display. In a further embodiment, a base unit is configured to charge multiple battery units, and includes multiple recesses configured to receive battery units. Each recess may be configured to receive a battery unit, and may have: a coupling inductor in or adjacent the recess; a light port in the recess; a charge display, such as a light or other visible charge display; and a light tube leading from the light port to the charge display.

[0020]   In one embodiment, there are first and second recess configured to receive first and second battery units. The first recess and second recess may be positioned in side-to-side configuration with respect to the base unit, and the first visible charge display and the second visible charge display also positioned in side-to-side configuration with respect to the base unit. The first recess and second recess may be positioned in front-to-back configuration with respect to the base unit, and the first visible charge display and the second visible charge display also positioned in front-to-back configuration with respect to the base unit.

[0021]   A method of the invention includes providing at least one replacement battery unit configured to be inductively charged and to replace a previously-provided (or stock) battery pack on a portable device; and providing a base unit configured to inductively charge the replacement battery unit. The replacement battery unit may be configured for application to a specific portable device. Instructions (written or otherwise) for replacing the stock battery unit with the replacement battery unit may also be provided. The method can also include removing the stock battery pack and replacing it with the replacement battery unit, and placing the replacement battery unit (with or without the portable device attached thereto) onto the base unit for charging.

BRIEF DESCRIPTION OF THE DRAWINGS

[0022]   FIGS. **1**A and **1**B depict perspective and side views, respectively, of a system according to an embodiment of the invention;

[0023]   FIG. **2** depicts a portable device with battery unit according to an embodiment of the invention;

[0024]   FIG. **3** depicts a battery unit according to an embodiment of the invention;

[0025]   FIGS. **4**A and **4**B depict perspective views (top and bottom, respectively) of a base unit according to an embodiment of the invention;

[0026]   FIG. **5** is a block diagram of a system according to an embodiment of the invention;

[0027]   FIGS. **6**A, **6**B, and **6**C depict perspective, side, and top views, respectively, of a base unit according to an embodiment of the invention;

[0028]   FIG. **7**A depicts a perspective view of a base unit and portable devices according to an embodiment of the invention;

[0029]   FIG. **7**B depicts a perspective view of a battery unit according to an embodiment of the invention; and

3

[0030]   FIG. 7C depicts a perspective view of a base unit, portable device, and battery unit according to an embodiment of the invention.

## DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

[0031]   FIGS. 1A and 1B depict a system 10 according to the invention, comprising portable devices 12a, 12b positioned on a base unit 14. In the particular embodiment depicted, there are two (2) portable devices 12a, 12b which are both game controllers having a generally elongated shape, such as used with the Wii™ device.

[0032]   The base unit 14 is connected to an external power source (such as an AC wall outlet) via a power cord 16. The base unit 14 includes base unit battery charge displays 18a, 18b which indicate the power charge of the corresponding portable devices 12a, 12b respectively. In the particular embodiment depicted, the base unit battery charge displays 18a, 18b are positioned on the front 19 of the base unit 14, which enables the base unit battery charge displays 18a, 18b to be easily viewed by a user without being obstructed by any portion of the portable devices 12a, 12b. To better accommodate portable devices 12a, 12b having holding straps 20a, 20b or other attachments which hang down and obstruct portions of the base unit 14, the charge displays 18a, 18b are offset from the areas directly underneath the holding straps 20a, 20b in order to prevent the base unit battery charge displays 18a, 18b being obstructed by the holding straps 20a, 20b.

[0033]   The base unit 14 is configured to cradle and hold the portable devices 12a, 12b in an angled position for better accessibility and viewing. In the particular embodiment of FIG. 1B, the base unit 14 is seen to hold portable device 12b at an angle 22 of about 20 degrees from the horizontal plane. Many other angles are also within the scope of the invention. For example, angles in the range of 15 to 60 degrees can provide good visibility and accessibility, with angles from 15 to 35 degrees being particularly suitable for many portable devices.

[0034]   FIG. 2 depicts a portable device 12 from the lower (bottom) side. The battery unit 24 is removably secured to and provides power to the portable device 12. The lower side 29 of the battery unit 24 forms a lower exterior surface portion that is visible in the view of FIG. 2, while FIG. 3 shows the upper side 31 of the battery unit 24. The battery unit 24 includes a battery coupling inductor 26 and a battery charge indicator 28. The battery charge indicator 28, which may take the form of a light, indicates when the battery 30 is at a full charge. In the particular embodiment depicted, the battery charge indicator 28 is positioned on the lower side 29 of the battery unit 24. The battery charge indicator 28 can indicate the battery 30 is fully charged via various methods, including a solid light, flashing light, colored light, and/or combinations and/or variations in the color and/or rate of flashing of the light. In one particular embodiment, a solid light indicates charging and a flashing light indicates the charge is completed.

[0035]   FIG. 3 depicts the battery unit 24, separately from the portable device 12 from FIG. 2, with the battery unit 24 viewed from the upper side 31 that is hidden within the portable device 12 when the battery unit 24 is secured thereto. The upper side 31 forms an upper exterior surface portion configured to be removably secured to a lower side of the portable device 12. The particular battery unit 24 depicted includes a rechargeable battery 30 configured to provided power to the portable device 12 (when attached thereto) via

battery contacts 32. The battery unit 24 includes the battery inductive loop interface, rectifier/regulating circuitry, charging and battery (Li-ion) protective circuitry, and batteries all as one unit with a custom cover configured for attachment to a portable device in lieu of a standard battery pack.

[0036]   The battery 30 can be of various rechargeable types, such as a Li-Ion Polymer battery. The battery unit is designed so that the existing internal battery contacts will be supplied with DC power, as if the original batteries were still installed.

[0037]   FIGS. 4A and 4B depict the base unit 14. The base unit 14 includes two recesses 34a, 34b which are each configured to receive battery units secured to portable devices (such as the battery units 24 and portable devices 12a, 12b depicted in FIGS. 1A, 1B, 2, 3). In the particular embodiment depicted, the recesses 34a, 34b are configured to receive the lower side of a battery unit secured to a portable electronic device, such as that depicted in FIGS. 2 and 3. The recesses 34a, 34b may receive and retain the battery units and portable devices via gravity alone, i.e., without the use of any clip, lock, or similar device to physically lock the portable device in place. In other embodiments, however, the invention could include locks, clips, sliders, etc. to provide improved retention of the portable devices onto the base unit 14.

[0038]   The base unit 14 includes base coupling inductors 36a, 36b, which are configured to align and inductively couple with the battery coupling inductors (26 in FIG. 2) of a battery pack when a portable device is positioned on the base unit 14. In the particular embodiment depicted, the base coupling inductors are positioned in the recesses 34a, 34b under the base unit shell 42.

[0039]   The base unit 14 includes battery charge signal receivers in the form of light tube ports 38a, 38b, which open to light tubes 40a, 40b leading to base unit battery charge displays 18a, 18b. The light tube ports 38a, 38b are positioned in the recesses 34a, 34b so that the battery charge indicators (e.g., element 28 on the battery unit 24 in FIG. 2) of the respective portable devices will align with the light tube ports 38a, 38b when the portable devices are positioned on the base unit 14. The light tubes 40a, 40b each form an optical path between the battery charge indicator of a battery unit (e.g., element 28 on the battery unit 24 of FIG. 2) and the base unit charge displays 18a, 18b. Accordingly, a visual indication (e.g., a colored and/or flashing light) provided by the battery charge indicator (e.g., element 28 on the battery unit 24 of FIG. 2) will be transmitted through a light tube port (38a or 38b) into a light tube (40a or 40b) and then out of the base unit battery charge displays (18a or 18b).

[0040]   Note that other devices and methods for transmitting a battery charge signal from the battery charge indicator to the base unit battery charge display are also within the scope of the invention. For example, one or more optically-aligned mirrors could define an optical path from the battery charge indicator to the base unit battery charge display.

[0041]   In the depiction of FIG. 4B, the internal electronics of the base unit 14 have been removed to better depict the shell 42 of base unit 14, the light tubes 40a, 40b, etc. The shell 42 supports the controllers and keeps the respective inductive areas (i.e., base coupling inductor and battery coupling inductor) well aligned to each other. Within the shell 42 itself will be the rectifier circuitry, the oscillation circuitry, and the primary inductive loop interface (not depicted in FIG. 4B). The base unit 14 also includes a power port opening 44 through which power is provided to the base unit 14 via an

4

external power cord (element **16** in FIGS. **1**A, **1**B), which may provide power via an AC adaptor connected to an AC wall outlet.

[0042]  The base unit **14** can have various dimensions, depending on the particular application (including such aspects as the particular portable device or devices to be charged, etc.). In the particular embodiment of FIGS. **4**A-**4**B, the base unit **14** has a height **46** of 62 mm, a length **48** of 119 mm, and a width of 103 mm.

[0043]  In the particular embodiment of FIGS. **4**A-**4**B, the recesses **34***a*, **34***b* are positioned in a side-to-side configuration with respect to the front **19** of the base unit **14**. Two battery units with portable devices attached thereto will thus, when placed in the recesses **34***a*, **34***b*, be positioned in side-to-side configuration, as depicted in FIG. **1**. Other configurations of the recesses are also within the scope of the invention, including a front-to-back configuration such as that depicted in FIGS. **6**A-**6**C, **7**A, **7**B.

[0044]  FIG. **5** depicts a block diagram of aspects of a system **10** according to the invention. External power is provided via an AC adaptor **52**, which provides power to the base unit **14** via, for example, a power line **16**. The base unit **14** includes a rectifier **54** which powers an oscillation circuit **56** to drive the base coupling inductor **58**.

[0045]  With a portable device **24** positioned on the base unit **14**, the base coupling inductor **36** drives the battery coupling inductor **26**, which drives a rectifier regulator **58** to power (via a charger protection circuit **60**) the rechargeable battery **30**. The rechargeable battery **30** provides power to the portable device **12** via, for example, contacts **32**.

[0046]  FIGS. **6**A-**6**C depict various views of a base unit **70** according to a further embodiment of the invention. The base unit **70** includes two recesses **72**, **72***b*, which are positioned one behind the other (as opposed to the side-by-side configuration of the base unit **14** of FIG. **1**A). The base unit **70** can thus be used with portable devices having width or side extensions, etc. that make side-by-side positioning inconvenient and/or impractical. The base unit **70** receives power via a power cord **74**, and includes charger displays **76***a*, **76***b*. The operation and internal workings of the base unit **70** of FIGS. **6**A-**6**C are generally the same as the base unit **14** from FIGS. **1**A, **4**A, **4**B, and **5**.

[0047]  The base unit **70** can have various dimensions, and in the particular embodiment depicted has a maximum height **78** of 50 mm, minimum height **80** of 35 mm, length **82** of 194 mm, and width **84** of 60 mm.

[0048]  FIG. **7**A depicts the base unit **70** of FIGS. **6**A-**6**C, with portable devices **86***a*, **86***b* positioned thereon. The portable devices **86***a*, **86***b* each have a battery unit **88** (depicted in FIG. **7**B). The battery unit **88** is operationally similar to the battery unit **24** from FIGS. **2**, **3**, and **5** (e.g., has a battery coupling inductor, etc.), but is shaped somewhat differently in order to be secured to the different portable devices **86**, **86***b* of FIG. **7**A.

[0049]  The portable devices **86***a*, **86***b* are similar to those provided with the Xbox 360™. They are somewhat wide, and have wing-like extensions **90** on either side thereof. The base unit **70** is configured to receive the portable devices **86***a*, **86***b*, with the batteries (hidden from view in FIG. **7**A, but seen as element **88** in FIG. **7**B) of each portable device sitting in the respective recesses **72***a*, **72***b*, and with the wing-like extensions **90** passing on either side of the base unit **70**.

[0050]  FIG. **7**C depicts one portable device **86***b* positioned on the base unit **70** in the second recess **72***b*, but only a

rechargeable battery unit **88***a* positioned in the first recess **72***a*. In either case (i.e., whether the entire portable device (with battery unit) is positioned on the base unit, or just the battery unit alone), the battery unit will be recharged.

[0051]  The invention has various methods of use. The battery unit may be provided along with the portable device when the portable device is initially sold to a potential user. Alternatively, the battery unit may be provided separately from the portable device. In such an embodiment, the user can remove the original battery pack (not shown) from the portable device, and install the battery unit in place of the original battery pack.

[0052]  The user can recharge the battery unit by placing the portable device (with battery unit attached thereto) onto the base unit. Alternatively, the user could place the battery unit by itself (i.e., separated from the portable device) onto the base unit for recharging. For example, a user could have more than one battery unit for a particular portable device, so that the user can use the portable device with a first battery unit while a second battery unit is being charged/recharged on the base unit.

[0053]  In the embodiments depicted, the base units have battery coupling surfaces in the form of recesses configured to receive the battery units/portable devices. However, other configurations for battery coupling surfaces to receive a battery unit are also within the scope of the invention. For example, instead of (or in addition to) a recess, a base unit may have a battery coupling surface in the form of one or more protrusions configured to engage with a battery unit.

[0054]  It will be appreciated by those with ordinary skill in the art that the invention can be embodied in other specific forms without departing from the spirit or essential character thereof. The embodiments described above should be considered to be illustrative and not restrictive.

What is claimed is:

**1**. A system for providing power to at least one portable electronic device, comprising:

a first battery unit comprising:

a first battery unit upper side configured for attachment to a first portable electronic device;

a first battery unit lower side;

a rechargeable battery,

a first battery coupling inductor positioned on or adjacent the first battery unit lower side; and

a first battery charge indicator positioned on the first battery unit lower side;

and

a base unit comprising:

a first recess configured to receive the first battery unit lower side while the first battery unit is secured to the first portable electronic device;

a first coupling inductor positioned in or adjacent the first recess, wherein when the first battery unit is placed in the first recess the first battery coupling inductor is inductively coupled with the first coupling inductor;

a base unit first battery charge display,

a first light path configured to define an optical path between the base unit first battery charge display and the first battery unit charge indicator when the first battery unit is placed in the first recess.

**2**. The system of claim **1**, wherein the first light path comprises a first reflector.

US 2009/0072784 A1

Mar. 19, 2009

5

**3**. The system of claim **1**, wherein the first light path comprises a first light tube.

**4**. The system of claim **3**, wherein the base unit further comprises:

a first light tube port in optical alignment with the first battery unit charge indicator;

and wherein the first light tube defines an optical path between the first light tube port and the base unit first battery charge display.

**5**. The system of claim **1**, further comprising:

a second battery unit comprising:

a second battery unit upper side configured for attachment to a second portable electronic device;

a second battery unit lower side;

a rechargeable battery;

a second battery coupling inductor positioned on or adjacent the second battery unit lower side; and

a second battery charge indicator positioned on the second battery unit lower side;

wherein the base unit further comprises:

a second recess configured to receive the second battery unit lower side while the second battery unit is secured to the second portable electronic device;

a second coupling inductor positioned at or adjacent an inner region of the second recess, wherein when the second battery unit is placed in the second recess the second battery coupling inductor is inductively coupled with the second coupling inductor;

a base unit second battery charge display,

a second light path configured to define an optical path between the base unit second battery charge display and the second battery unit charge indicator when the second battery unit is placed in the second recess.

**6**. The system of claim **5**, wherein base unit has a front and a back, and the first recess and the second recess are positioned in a front-to-back configuration.

**7**. The system of claim **5**, wherein base unit has a front and a back and opposing sides, and the first recess and the second recess are positioned in a side-to-side configuration.

**8**. The system of claim **1**, further comprising:

a portable electronic device secured to the first battery unit.

**9**. The system of claim **8**, wherein the base unit is configured to hold the first battery unit and portable electronic device such that the portable electronic device is at an angle of about 15 to 35 degrees from the horizontal.

**10**. A system for providing power to a portable electronic device, comprising:

a first battery unit comprising:

a first exterior surface portion, the first exterior surface portion configured for removable attachment to a first portable electronic device;

a second exterior surface portion;

a battery;

a battery coupling inductor positioned adjacent the second exterior surface portion; and

a first battery charge indicator, wherein the first battery charge indicator is positioned on the second exterior surface portion and is configured to provide a first battery charge indicator signal;

and

a base unit comprising:

a first battery coupling surface configured to receive the second exterior surface portion of the first battery unit;

a base unit power input;

a first base coupling inductor, wherein the first base coupling inductor is configured to receive power from the base unit power input, and the first base coupling inductor is positioned adjacent the first battery coupling surface at a position whereby the first base coupling inductor is inductively coupled with the first battery coupling inductor when the first battery unit is positioned on the base unit with the second exterior surface portion of the first battery received by the first battery coupling surface,

a first battery charge signal receiver configured to receive the first battery charge signal,

a first battery base unit charge display configured to provide a first battery base unit charge signal corresponding to the first battery charge signal.

**11**. The system of claim **10**, wherein the first battery coupling surface is a first recess.

**12**. The system of claim **10**, wherein the first battery charge signal receiver is a first end of a light tube, and the first battery base unit charge display is a second end of the light tube.

**13**. The system of claim **12**, wherein the first battery charge signal is a visible signal, and the first battery base unit charge display is positioned on a front portion of the base unit.

**14**. The system of claim **10**, wherein the base unit comprises an optical path passing from the first recess to the first battery base unit charge display, and wherein the optical path comprises a mirror.

**15**. The system of claim **10**, further comprising:

a second battery unit comprising:

a first exterior surface portion, the first exterior surface portion configured for removable attachment to a second portable electronic device;

a second exterior surface portion;

a battery;

a battery coupling inductor positioned adjacent the second exterior surface portion; and

a second battery charge indicator, wherein the second battery charge indicator is positioned on the second exterior surface portion and is configured to provide a second battery charge indicator signal.

**16**. The system of claim **15**, wherein the base unit further comprises:

a second battery coupling surface configured to receive the second exterior surface portion of the second battery unit;

a second base coupling inductor, wherein the second base coupling inductor is configured to receive power from the base unit power input, and the second base coupling inductor is positioned adjacent the second battery coupling surface at a position whereby the second base coupling inductor is inductively coupled with the second battery coupling inductor when the second battery unit is positioned on the base unit with the second exterior surface portion of the second battery received by the second battery coupling surface;

a second battery charge signal receiver configured to receive the second battery charge signal;

a second battery base unit charge display configured to provide a second battery base unit charge signal corresponding to the second battery charge signal.

6

**17**. A base unit for inductively charging one or more battery units, comprising:

a first recess configured to receive a battery unit;

a first coupling inductor in or adjacent the first recess;

a first light port in the first recess;

a first visible charge display; and

a first light tube defining an optical path from the first light port to the first visible charge display.

**18**. The base unit of claim **16**, further comprising:

a second recess configured to receive a battery unit;

a second coupling inductor in or adjacent the first recess;

a second light port in the second recess;

a second visible charge display; and

a second light tube defining an optical path from the second light port to the second visible charge display.

**19**. The base unit of claim **18**, wherein the first recess and second recess are positioned in side-to-side configuration with respect to the base unit, and the first visible charge display and the second visible charge display are positioned in side-to-side configuration with respect to the base unit.

**20**. The base unit of claim **18**, wherein the first recess and second recess are positioned in front-to-back configuration with respect to the base unit, and the first visible charge display and the second visible charge display are positioned in front-to-back configuration with respect to the base unit.

*    *    *    *    *

# EXHIBIT T



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

September 17, 2012

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:

APPLICATION NUMBER: *12/044,295*
FILING DATE: *March 07, 2008*
PATENT NUMBER: *8,143,848*
ISSUE DATE: *March 27, 2012*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

E. BORNETT
Certifying Officer

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/044,295 | 03/07/2008 | Amir Navid | 61070/N220 | 7006 |

23363          7590          02/08/2011
CHRISTIE, PARKER & HALE, LLP
PO BOX 7068
PASADENA, CA 91109-7068

| EXAMINER |
|---|
| WILLIAMS, ARUN C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2858 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/08/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

NT000109

|  | Application No. | Applicant(s) |  |
|---|---|---|---|
| ***Office Action Summary*** | 12/044,295 | NAVID, AMIR |  |
|  | Examiner | Art Unit |  |
|  | ARUN WILLIAMS | 2858 |  |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>12/3/2010</u>.
2a) ☐ This action is **FINAL**.  2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-27</u> is/are pending in the application.
  4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-27</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☒ The drawing(s) filed on <u>3/7/2008</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  a) ☐ All   b) ☐ Some * c) ☐ None of:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
  * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date <u>1/14/2009 & 4/2/2008</u>.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06)   Office Action Summary   Part of Paper No./Mail Date 20110201

Application/Control Number: 12/044,295                                                   Page 2

Art Unit: 2858

## DETAILED ACTION

### *Election/Restrictions*

1.      Applicant's election with traverse of species II in the reply filed on 12/3/2010 is acknowledged.  The traversal is on the ground(s) that the application (see, e.g.,paragraph [0084]) that the DC ports, in one embodiment, are mini-USB connectors but, alternatively, may be any electrical connectors suitable for coupling to a video game controller.  This has been found to be persuasive. The restriction has been withdrawn.

2.      This is a first action on the merits, in response to the claims received 12/19/2007. Claims 1-27 are pending for prosecution below.

### *Specification*

3.      The title of the invention is not descriptive.  A new title is required that is clearly indicative of the invention to which the claims are directed.

### *Information Disclosure Statement*

*4.*      The information disclosure statement (IDS) file on 4/2/2008 & 1/14/2009 has been considered by the examiner. An initialed copy is attached herewith.

### *Claim Rejections - 35 USC § 102*

5.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

**6.      Claims 1,5,6,9,11, and 12 are rejected under 35 U.S.C. 102(b) as being anticipated by Chang, (USNO.2006/0202660).**

NT000111

Application/Control Number: 12/044,295                                               Page 3
Art Unit: 2858

**As for claim 1**, Chang discloses and  shows in Fig. 4 a video game controller

charging system for charging at least one video game controller using externally

supplied power, the video game controller charging system comprising: a base **(1)**; at

least one structure **(12)** on the base for providing physical support to the at least one

video game controller **(19)** while the at least one video game controller is being

charged; and at least one DC port **(31)** on the base, the at least one DC port configured

to couple to and provide DC power to a power input port of the at least one video game

controller **(par.[0032-0034])**.

**As for claim 5**, Chang shows in Fig. 4 at least one structure on the base

comprises at least one docking bay, each configured to receive one of the at least one

video game controller

**As for claim 6**, Chang shows in Fig. 4 each of the at least one structure on the

base comprises opposite surfaces configured to align one of the at least one video

game controller such that the power input port of the one of the at least one video game

controller couples to one of the at least one DC port.

**As for claim 9**, Chang shows in Fig. 4 an AC-to- DC converter **(within power**

**supply adapter which element 93 is coupled to)** adapted to convert the externally

supplied power to the DC power provided to the power input port of the at least one

video game controller.

**As for claim 11**, Chang shows in Fig. 4 the AC-to-DC converter is external to the

base.

NT000112

Application/Control Number: 12/044,295                                    Page 4
Art Unit: 2858

As for claim 12, Chang shows in Fig. 4 the AC-to-DC converter is adapted to convert an AC voltage in the range of 100 V to 240 V corresponding to the externally supplied power into a DC voltage corresponding to the DC power.

### Claim Rejections - 35 USC § 103

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

8.      The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.      Determining the scope and contents of the prior art.
2.      Ascertaining the differences between the prior art and the claims at issue.
3.      Resolving the level of ordinary skill in the pertinent art.
4.      Considering objective evidence present in the application indicating obviousness or nonobviousness.

9.      **Claim 2 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Hsia, (USNO.2007/0278999).**

As for claim 2, Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose at least one DC port comprises at least one male mini-USB connector.

Hsia discloses and shows in Fig. 5 at least one DC port comprises at least one male mini-USB connector **(par.[0023-0025])**.

EXHIBIT T
Page 35

NT000113

Application/Control Number: 12/044,295                                        Page 5
Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one DC port comprises at least one male mini-USB connector for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

10.     **Claims 3 and 4 are rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Nishida, (USNO.2004/0189250)**

As for claims 3 and 4, Chang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a current detector electrically coupled to the at least one DC port; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled to the at least one DC port; and an indicator **(25)** electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using a current detector electrically coupled to the at least one DC port; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system for advantages such as providing necessary accurate information of the charging/discharging state **(par.[0044])**, as taught by Nishida.

NT000114

Application/Control Number: 12/044,295                                    Page 6
Art Unit: 2858

11.    Claim  7 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Chang, (USNO.2006/0202660) in view of Chen, (USPATNO.6,313,604)

       **As for claim 7**, Chang discloses all limitations, but differs from the claimed

invention because he does not explicitly disclose opposite surfaces comprise spring-

loaded locating buttons configured to align a device in a base.

       Chen discloses and shows in Fig. 3 opposite surfaces comprise spring-loaded

locating buttons **(22)** configured to align the device in a base **(col.2, lines 6-20)**.

       Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chen by having

opposite surfaces comprise spring-loaded locating buttons configured to align a device

in a base for advantages such as providing proper clamping within a base **(col.2, line

19)**, as taught by Chen.

12.    **Claims 8 is rejected under 35 U.S.C. 103(a) as being anticipated by Chang**

**and further in view of Odell et al, (USNO.2008/0180060)**

       **As for claim 8,** Chang discloses all limitations, but differs from the claimed

invention because he does not explicitly disclose the at least one video game controller

comprises a plurality of video game controllers; and the plurality of DC ports is

configured to concurrently couple to and provide the DC power to the plurality of video

game controllers.

       Odell discloses and shows in Fig. 7c the at least one video game controller

comprises a plurality of video game controllers **(80 & 10)**; and the plurality of DC ports

NT000115

Application/Control Number: 12/044,295                                         Page 7
Art Unit: 2858

**(43: Fig. 4 & 60:Fig. 9)** is configured to concurrently couple to and provide the DC

power to the plurality of video game controllers **(par.[0037-0041])**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chang by having at

least one video game controller comprises a plurality of video game controllers; and the

plurality of DC ports is configured to concurrently couple to and provide the DC power to

the plurality of video game controllers for advantages such as providing the ability to

power and engage a wireless device **(par.[0006])**, as taught by Odell.

13.      **Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Stephens, (USPATNO.5,734,254)**

**As for claim 10**, Chang discloses all limitations, but differs from the claimed

invention because he does not explicitly disclose the AC-to-DC converter is in the base

Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chang by using the

AC-to-DC converter is in the base for advantages such as providing to convert voltage

into a preferred output **(col.4, lines 15-21)**, as taught by Stephens.

14.      **Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable by**

**Chang, (USNO.2006/0202660) in view of Hsu, (USPATNO.6,842,356)**

**As for claim 13**, Chang discloses all limitations, but differs from the claimed

invention because he does not explicitly disclose the DC voltage is DC5V.

NT000116

Application/Control Number: 12/044,295                                            Page 8
Art Unit: 2858

Hsu discloses and shows in Fig. 3 the DC voltage is DC5V **(via element  64)**.

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chang by having the

DC voltage is DC5V for advantages such as providing stabilized output **(col.3, line 40)**,

as taught by Hsu.

15.     **Claims 14 ,15,16,19, and 20 are rejected under 35 U.S.C. 103(a) as being**

**unpatentable over Chang, (USNO.2006/0202660) in view of Hsia,**

**(USNO.2007/0278999).**

**As for claim 14**, Chang discloses and shows in Fig. 4 charging system for at

least one accessory device having a power input port, the charging system comprising:

a base **(1)**; at least one connector **(31)** supported by the base and adapted to provide

DC power to the at least one accessory device **(19)**; at least one docking structure **(12)**

configured to receive and align the at least one accessory device to couple to the at

least one connector; and a power input for connecting to a power supply, the power

input electrically coupled to the at least one connector **(par.[0032-0034])**.

Chang discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose at least one male mini-USB connector supported by the

base and adapted to provide DC power to the at least one accessory device

Hsia discloses and shows in Fig. 5 at least one male mini-USB connector **(520)**

supported by the base **(exterior of element 500)** and adapted to provide DC power to

the at least one accessory device **(600)(par.[0023-0025])**.

NT000117

Application/Control Number: 12/044,295                                    Page 9
Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention was made to have modified the teachings of Chang by using at
least one male mini-USB connector supported by the base and adapted to provide DC
power to the at least one accessory device for advantages such as providing power to
quickly charge a device **(par.[0011])**, as taught by Hsia.

As for claim **15**, Chang in combination with Hsia discloses and shows an AC-to-
DC converter electrically coupled between the power input and the at least one male
mini- USB connector.

As for claim **16**, Chang in combination with Hsia discloses and shows an
AC-to-DC converter external to the base and electrically coupled to the power input.

As for claim **19**, Chang discloses and shows in Fig. 4 a video game controller
charging system for at least one video game controller having a power input port, the
charging system comprising: a base **(1)**; at least one connector **(31)** supported by the
base and adapted to provide DC power to the power input port of the at least one video
game controller **(19)**; and at least one docking structure**(12)**  having opposite surfaces
configured to receive and align the at least one video game controller to couple the
power input port of the at least one video game controller to the at least one connector
**(par.[0032-0034])**.

Chang discloses all limitations, but differs from the claimed invention because he
does not explicitly disclose at least one male mini-USB connector supported by the
base and adapted to provide DC power to the power input port.

NT000118

Application/Control Number: 12/044,295                                    Page 10
Art Unit: 2858

Hsia discloses and shows in Fig. 5 at least one male mini-USB connector **(520)** supported by the base **(exterior of element 500)** and adapted to provide DC power to the power input port **(620: Fig. 6) (par.[0023-0025])**

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one male mini-USB connector supported by the base and adapted to provide DC power to the power input port for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

**As for claim 20**, Chang in combination with Hsia discloses and shows an AC-to-DC converter adapted to convert an AC power received from an AC power supply to the DC power provided to the power input port of the at least one video game controller.

16. **Claims 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Chang in view of Hsia and further in view of Nishida.**

**As for claims 17 and 18**, Chang in combination with Hsia discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a current detector electrically coupled to the at least one connecter; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled to the at least one connector; and an indicator **(25)** electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

.

NT000119

Application/Control Number: 12/044,295                           Page 11
Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Hsia by using a current detector electrically coupled to the at least one connector; and

an indicator electrically coupled to the current detector, the indicator configured to

indicate a charging status of the charging system for advantages such as providing

necessary accurate information of the charging/discharging state (par.[0044]), as taught

by Nishida.

17.      Claims 21,24, and 25 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Chang, (USNO.2006/0202660) in view of Hagiuda et

al,(Hagiuda), (USPATNO.5,594,314)

As for claim 21, Chang discloses and shows in Fig. 4 a charging system for

charging at least one accessory device having a power input port, the charging system

comprising: a base (1) comprising at least one recess having at least one electrical

contact (31), the base further comprising a power input for connection to a power

supply, the power input being electrically coupled to the at least one electrical contact

(par.[0032-0034]).

Chang discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose at least one external adapter comprising a connector

configured to couple to the power input port of the at least one accessory device, the at

least one external adapter further comprising at least one electrical lead; wherein the at

least one recess is dimensioned to receive the at least one external adapter, the at least

one electrical lead of the at least one external adapter contacting the at least one

NT000120

Application/Control Number: 12/044,295                              Page 12
Art Unit: 2858

electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess.

Haguida discloses and shows in Fig. 1 at least one external adapter **(4)** comprising a connector **(combination of 107 & 105)** configured to couple to the power input port **(106 &104)** of the at least one accessory device **(3)**, the at least one external adapter further comprising at least one electrical lead **(103)**; wherein the at least one recess **(99)** is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact **(102)** of the at least one recess when the at least one external adapter is received by the at least one recess **(col.2, lines 31-57)**

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead; wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess for advantages such as providing the ability to accommodate charging/discharging features **(col.1, lines 51-58)**, as taught by Haguida.

**As for claim 24**, Chang in combination with Haguida discloses and shows at least one external adapter further comprises an angled edge; and the at least one

Application/Control Number: 12/044,295                                    Page 13
Art Unit: 2858

recess comprises an angled corner dimensioned to match the angled edge of the at

least one external adapter and adapted to orient the at least one external adapter with

respect to the at least one recess.

      **As for claim 25**, Chang in combination with Haguida discloses all limitations of

the invention except for at least one recess comprises four electrical contacts and at

least one external adapter comprises four electrical leads. It would have been  an

obvious matter of design choice to make at least one recess comprise four electrical

contacts and at least one external adapter comprise four electrical leads, since

applicant has not disclosed that at least one recess comprising four electrical contacts

and at least one external adapter comprising four electrical leads solves any stated

problem or is for any particular purpose and thus would have been obvious.

18.     **Claims 22 and 23 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Chang in view of Haguida and further in view of Nishida.**

      **As for claims 22 and 23**, Chang in combination with Haguida discloses all

limitations, but differs from the claimed invention because he does not explicitly disclose

a current detector electrically coupled to the at least one electrical contact of at least

one recess; and an indicator electrically coupled to the current detector, the indicator

configured to indicate a charging status of the charging system.

      Nishida discloses and shows in Fig. 6 a current detector (**23**) electrically coupled

to the at least one electrical contact of at least one recess; and an indicator (**25**)

electrically coupled to the current detector, the indicator configured to indicate a

NT000122

Application/Control Number: 12/044,295                                         Page 14
Art Unit: 2858

charging status of the charging system. Furthermore, Nishida discloses the indicator

comprises at least one LED **(par.[0044])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Haguida by using a current detector electrically coupled to the at least one electrical

contact of at least one recess; and an indicator electrically coupled to the current

detector, the indicator configured to indicate a charging status of the charging system

for advantages such as providing necessary accurate information of the

charging/discharging state **(par.[0044])**, as taught by Nishida.

19.    **Claim 26 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang in view of Haguida and further in view of Hsia.**

**As for claim 26**, Chang in combination with Haguida discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose at least one

external adapter comprises a male mini-USB connector.

Hsia discloses and shows in Fig. 5 at least one external adapter comprises a

male mini-USB connector **(520) (par.[0023-0025])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Haguida by using at least one external adapter comprises a male mini-USB connector

for advantages such as providing power to quickly charge a device **(par.[0011])**, as

taught by Hsia.

NT000123

Application/Control Number: 12/044,295                                              Page 15
Art Unit: 2858

20.     **Claim 27 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Stephens, (USPATNO.5,734,254)**

        **As for claim 27**, Chang in combination with Haguida discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose the AC-to-DC

converter is in the base

        Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

        Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings Chang and

Haguida by using the AC-to-DC converter is in the base for advantages such as

providing to convert voltage into a preferred output **(col.4, lines 15-21)**, as taught by

Stephens.

### *Contact Information*

        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Arun Williams whose telephone number is 571-272-

9765.  The examiner can normally be reached on Mon - Thrus,6:30am - 4pm.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Patrick Assouad can be reached on 571-272-2210. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

NT000124

Application/Control Number: 12/044,295                                    Page 16
Art Unit: 2858

      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Arun Williams/                              Arun Williams
Examiner, Art Unit 2858                      Examiner
                                             Art Unit 2858

NT000125

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## PETITION FOR EXTENSION OF TIME
## FROM THE OFFICE ACTION

*I hereby certify that this correspondence is being electronically filed with the United States Patent and Trademark Office on July 8, 2011 at or before 11:59 p.m. Pacific Time under the Rules of 37 CFR § 1.8.*

Stacey Dawson

| | | |
|---|---|---|
| Applicant | : Amir Navid | Confirmation No. 7006 |
| Application No. | : 12/044,295 | |
| Filed | : March 7, 2008 | |
| Title | : VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE (as amended) | |

Grp./Div.       :  2858
Examiner       :  Arun C. Williams

Docket No.     :   61070/N220

Commissioner for Patents                        Post Office Box 7068
P.O. Box 1450                                   Pasadena, CA 91109-7068
Alexandria, VA 22313-1450                       July 8, 2011

Commissioner:

Applicant petitions the Commissioner to extend the time for response to the Office Action dated February 8, 2011 for two month(s) from May 8, 2011 to July 8, 2011.

The fee for extension of time required by 37 CFR § 1.17 is calculated below.

| FEE CALCULATION | | | |
|---|---|---|---|
| LENGTH OF EXTENSION | SMALL ENTITY | LARGE ENTITY | FEE |
| WITHIN FIRST MONTH | $ 65.00 | $ 130.00 | $ |
| WITHIN SECOND MONTH | $ 245.00 | $ 490.00 | $245.00 |
| WITHIN THIRD MONTH | $ 555.00 | $1,110.00 | $ |
| WITHIN FOURTH MONTH | $ 865.00 | $1,730.00 | $ |
| WITHIN FIFTH MONTH | $1,175.00 | $2,350.00 | $ |

Please deduct $245.00 from Deposit Account No. 03-1728 to cover the cost of the extension.

**Petition for Extension of Time**
**Application No. 12/044,295**


The Commissioner is hereby authorized to charge any fees under 37 CFR 1.16 and 1.17 which may be required by this paper to Deposit Account No. 03-1728.  Please show our docket number with any charge or credit to our Deposit Account.

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By _____
Jason C. Martone
Reg. No. 59,469
626/795-9900

JCM/srd

SRD PAS1127317.1-*-07/8/11 11:22 AM

-2-

NT000158

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

## Amendments to the Claims:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## Listing of Claims:

1.      (Currently amended)  A video game controller charging system for charging ~~at least one~~ a plurality of video game ~~controller~~ controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the ~~at least one~~ plurality of video game ~~controller~~ controllers while the ~~at least one~~ plurality of video game ~~controller is~~ controllers are being charged; and

~~at least one DC port~~ a plurality of DC ports on the base, ~~the at least one DC port~~ each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the ~~at least one~~ plurality of video game ~~controller~~ controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction.

2.      (Currently amended)  The video game controller charging system of claim 1, wherein the ~~at least one DC port~~ plurality of DC ports comprises ~~at least one~~ a plurality of male mini-USB ~~connector~~ connectors.

3.      (Currently amended)  The video game controller charging system of claim 1, further comprising:

a current detector electrically coupled to the ~~at least one DC port~~ plurality of DC ports; and

-3-

NT000159

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the video game controller charging system.

4.      (Original)  The video game controller charging system of claim 3, wherein the indicator comprises at least one LED.

5.      (Canceled)

6.      (Currently amended)  The video game controller charging system of claim 1, wherein each of the at least one structure on the base comprises a plurality of pairs of opposite surfaces, the pairs configured to align [[one]] respective ones of the at least one plurality of video game controller controllers such that the power input [[port]] ports of the [[one]] respective ones of the at least one plurality of video game controller couples controllers couple to respective [[one]] ones of the at least one DC port plurality of DC ports.

7.      (Currently amended)  The video game controller charging system of claim 6, wherein the pairs of opposite surfaces comprise spring-loaded locating buttons configured to align the [[one]] respective ones of the at least one plurality of video game controller controllers.

8.      (Currently amended)  The video game controller charging system of claim 1, wherein[[:]]
the at least one DC port comprises a plurality of DC ports;
the at least one video game controller comprises a plurality of video game controllers; and
the plurality of DC ports is configured to concurrently couple to and provide the DC power to the plurality of video game controllers.

-4-

NT000160

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

9.      (Currently amended)  The video game controller charging system of claim 1, further comprising an AC-to-DC converter adapted to convert the externally supplied power to the DC power provided to the power input [[port]] ports of the at least one respective video game controller controllers.

10.     (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is in the base.

11.     (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is external to the base.

12.     (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is adapted to convert an AC voltage in the range of 100 V to 240 V corresponding to the externally supplied power into a DC voltage corresponding to the DC power.

13.     (Original)  The video game controller charging system of claim 12, wherein the DC voltage is DC 5 V.

14.     (Currently amended)  A charging system for at least one charging a plurality of accessory device devices, each having a power input port, the charging system comprising:
        a base;
        at least one a plurality of male mini-USB connector connectors supported by the base and each adapted to provide DC power to a respective one of the at least one plurality of accessory device devices;
        at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the at

-5-

NT000161

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

least one plurality of accessory device devices to couple to respective ones of the at least one plurality of male mini-USB connector connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the at least one plurality of male mini-USB connector connectors.

15.     (Currently amended)  The charging system of claim 14, wherein the charging system further comprises an AC-to-DC converter electrically coupled between the power input and the at least one plurality of male mini-USB connector connectors.

16.     (Original)  The charging system of claim 14, wherein the charging system further comprises an AC-to-DC converter external to the base and electrically coupled to the power input.

17.     (Currently amended)  The charging system of claim 14, further comprising:

a current detector electrically coupled to the at least one plurality of male mini-USB connector connectors; and

an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

18.     (Original)  The charging system of claim 17, wherein the indicator comprises at least one LED.

19-20.  (Canceled)

21.     (Currently amended)  A charging system for charging at least one accessory device having a power input port, the charging system comprising:

-6-

NT000162

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

a base comprising at least one recess having at least one electrical contact, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the at least one electrical contact; and

at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead;

wherein the at least one external adapter is mountable on the at least one accessory device, and

wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess.

22.    (Original)  The charging system of claim 21, further comprising:

a current detector electrically coupled to the at least one electrical contact of the at least one recess; and

an indicator electrically coupled to the current detector, the indicator adapted to indicate a status of the charging system.

23.    (Original)  The charging system of claim 22, wherein the indicator comprises at least one LED.

24.    (Original)  The charging system of claim 21, wherein:

the at least one external adapter further comprises an angled edge; and

the at least one recess comprises an angled corner dimensioned to match the angled edge of the at least one external adapter and adapted to orient the at least one external adapter with respect to the at least one recess.

-7-

EXHIBIT T
Page 54

NT000163

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

25.     (Original)  The charging system of claim 21, wherein:

the at least one electrical contact of the at least one recess comprises four electrical contacts; and

the at least one electrical lead of the at least one external adapter comprises four electrical leads.

26.     (Original)  The charging system of claim 21, wherein the connector of the at least one external adapter comprises a male mini-USB connector.

27.     (Original)  The charging system of claim 21, further comprising an AC/DC converter electrically coupled between the power input of the base and the at least one electrical contact of the at least one recess.

28.     (New)  A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:

a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and

an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,

wherein the adapter is mountable on the video game controller, and

wherein the base further comprises a docking structure configured to receive the video game controller having the adapter mounted thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base.

29.     (New)  The video game controller charging system of claim 28, wherein the plurality of electrical contacts comprises at least one spring biasing the plurality of electrical contacts toward the plurality of electrical leads.

-8-

NT000164

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**


    30.    (New)  The video game controller charging system of claim 28, wherein the connector comprises a male mini-USB connector.

-9-

NT000165

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**

**Amendments to the Specification:**

Please replace the title with the following amended title:

VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE

-2-

NT000166

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*I hereby certify that this correspondence is being electronically filed with the United States Patent and Trademark Office on July 8, 2011 at or before 11:59 p.m. Pacific Time under the Rules of 37 CFR § 1.8.*

Stacey Dawson

| | | |
|---|---|---|
| Appl No. | : 12/044,295 | Confirmation No. 7006 |
| Applicant | : Amir Navid | |
| Filed | : March 7, 2008 | |
| Title | : VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE (as amended) | |
| TC/A.U. | : 2858 | |
| Examiner | : Arun C. Williams | |
| Docket No. | : 61070/N220 | |
| Customer No. | : 23363 | |

## AMENDMENT

**Mail Stop Amendment**

Commissioner for Patents                                   Post Office Box 7068
P.O. Box 1450                                              Pasadena, CA  91109-7068
Alexandria, VA 22313-1450                                        July 8, 2011

Commissioner:

In response to the Office action of February 8, 2011, please amend the above-identified application as follows:

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 3 of this paper.

**Remarks/Arguments** begin on page 10 of this paper.

-1-

NT000167

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

<u>REMARKS/ARGUMENTS</u>

Claims 1-27 were pending in the present application at the time of the Office Action. Claims 1-4, 6-18, and 21-30 are now pending, of which claims 1, 14, 21, and 28 are independent. Claims 1 and 14 have been amended herein to include some of the subject matter of previous claims 5 and 8, and to include some of the matter described in the original specification and drawings (see, e.g., paragraphs [0085], [0088], and [0102], and FIGs. 11, 14, and 21). Claim 21 has been amended to include some of the matter described in the original specification and drawings (see, e.g., paragraph [0100], and FIG. 20). Claims 2, 3, 6-9, 15, and 17 have been amended for reasons of clarity and antecedent basis. Claims 5, 19, and 20 have been canceled without prejudice. Further, new claims 28-30 have been added to include some of the matter described in the original specification and drawings (see, e.g., paragraphs [0099], [0100], and [0103], and FIGs. 16 and 17). No new matter has been added. Applicant respectfully requests reconsideration and allowance of claims 1-4, 6-18, and 21-27, as well as consideration on the merits and allowance of new claims 28-30, in view of the amendments and the following remarks.

I.      <u>Specification</u>

The title of the invention was objected to for allegedly not being descriptive. Applicants have amended the title to VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE in response to the objection. Applicants respectfully request that the amendment to the title be entered and that the objection be withdrawn.

II.     <u>Rejection of Claims 1, 6, 9, 11, and 12 under 35 U.S.C. § 102(b)</u>

Claims 1, 6, 9, 11, and 12 were rejected under § 102(b) as allegedly being anticipated by U.S. Patent Application Publication No. 2006/0202660 to Chang (hereinafter "Chang"). This rejection is respectfully traversed. Further, Applicant has amended independent claim 1 herein.

-10-

NT000168

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

Independent claim 1, as amended, recites:

A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction (emphasis added).

Applicant submits that claim 1, as amended, is not anticipated by Chang under 35 U.S.C. § 102(b). Chang does not appear to disclose "wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction," as recited in Applicant's amended claim 1. Rather, Chang appears to disclose a wireless mouse charger including a housing 1 having a single mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3), but does not appear to teach a plurality of docking bays open in a first direction and configured to receive respective ones of a plurality of video game controllers, as recited in Applicant's amended claim 1.

Further, claim 1 has been amended to include some of the subject matter of previous claim 8, which was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang and further in view of U.S. Patent Application Publication No. 2008/0180060 to Odell et al.

-11-

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

(hereinafter "Odell").   Odell appears to disclose a charging element 12 including a ledge 62 facing a downward direction and having a pair of terminals 60 for electrically contacting terminals 34 on a wireless keyboard (see Odell, paragraph [0033], and Fig. 6).   Further, Odell discloses that the charging element 12 may include a charging platform 52 facing an upward direction and having a pair of terminals 46 and 47 for charging a second wireless device, such as a mouse 80 (see Odell, paragraphs [0037] and [0038], and Figs. 6 and 7A).   However, Odell appears to teach the ledge 62 and the charging platform 52 facing opposite directions for receiving a keyboard and a mouse from the opposite directions, but does not appear to teach or suggest a plurality of docking bays open in a first, or same, direction and configured to receive respective ones of the plurality of video game controllers from the first, or same, direction.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of anticipation has not been established with respect to claim 1, as amended, because Chang does not disclose each and every limitation of the present claim 1.   As such, Applicant respectfully requests that the rejection of claim 1 be withdrawn and that this claim be allowed.

Dependent claims 6, 9, 11, and 12 depend (directly or indirectly) from claim 1.   As such, these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish these claims over Chang.   For at least the reasons set forth above, Applicant submits that these dependent claims are not anticipated by Chang.   Applicant, therefore, respectfully requests that the rejection of claims 6, 9, 11, and 12 be withdrawn and that these claims be allowed.

III.   **Rejection of Claims 2-4, 7, 8, 10, 13-18, and 21-27 under 35 U.S.C. § 103(a)**

Claims 2 and 14-16 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent Application Publication No. 2007/0278999 to Hsia (hereinafter "Hsia").   This rejection is respectfully traversed.   Further, Applicant has amended independent claims 14 and 19 herein.

Dependent claim 2 depends directly from claim 1.   As such, claim 2 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably

-12-

NT000170

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

distinguish claim 2 over the cited references.  Moreover, Hsia does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above.  For at least the above reasons, Applicant submits that claim 2 is not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claim 2 be withdrawn and that this claim be allowed.

Independent claim 14, as amended, recites:

A charging system for charging a plurality of accessory devices, each having a power input port, the charging system comprising:

a base;

a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of accessory devices;

at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors (emphasis added).

Applicant submits that claim 14, as amended, is not unpatentable over Chang in view of Hsia under 35 U.S.C. § 103(a).  Neither Chang nor Hsia, nor the combination thereof, appears to teach or suggest "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors," as recited in Applicant's amended claim 14.  Rather, Chang appears to disclose a wireless mouse charger including a housing 1 having a single mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3), but does not

-13-

NT000171

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

appear to teach or suggest a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of a plurality of accessory devices, as recited in Applicant's amended claim 14. Further, Hsia does not appear to teach or suggest at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors.

Further, claim 14 has been amended to include subject matter similar to that of previous claim 8, which was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang and further in view of Odell. As discussed above with respect to claim 1, Odell appears to disclose a charging element 12 including a ledge 62 facing a downward direction and having a pair of terminals 60 for electrically contacting terminals 34 on a wireless keyboard (see Odell, paragraph [0033], and Fig. 6). Further, Odell appears to disclose that the charging element 12 includes a charging platform 52 facing an upward direction and having a pair of terminals 46 and 47 for charging a mouse 80 (see Odell, paragraphs [0037] and [0038], and Figs. 6 and 7A). However, Odell appears to teach the ledge 62 and the charging platform 52 facing opposite directions for receiving a keyboard and a mouse from the opposite directions, but does not appear to teach or suggest a plurality of docking bays open in a first, or same, direction and configured to receive from the first, or same, direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 14, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 14. As such, Applicant respectfully requests that the rejection of claim 14 be withdrawn and that this claim be allowed.

Dependent claims 15 and 16 depend directly from claim 14. As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references. For at least the reasons set forth above, Applicant submits that these dependent claims are not unpatentable over

-14-

NT000172

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

the cited references.  Applicant, therefore, respectfully requests that the rejection of claims 15 and 16 be withdrawn and that these claims be allowed.

Claims 3 and 4 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent Application Publication No. 2004/0189250 to Nishida (hereinafter "Nishida").  This rejection is respectfully traversed.

Dependent claims 3 and 4 depend (directly or indirectly) from claim 1.  As such, these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above.  For at least the above reasons, Applicant submits that claims 3 and 4 are not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claims 3 and 4 be withdrawn and that these claims be allowed.

Claim 7 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 6,313,604 to Chen (hereinafter "Chen").  This rejection is respectfully traversed.

Dependent claim 7 depends indirectly from claim 1.  As such, claim 7 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 7 over the cited references.  Moreover, Chen does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above.  For at least the above reasons, Applicant submits that claim 7 is not unpatentable over the cited references.  Therefore, Applicant respectfully requests that the rejection of claim 7 be withdrawn and that this claim be allowed.

Claim 8 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang and further in view of Odell.  This rejection is respectfully traversed.

Dependent claim 8 depends directly from claim 1.  As such, claim 8 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 8 over the cited references.  Moreover, Odell does not appear to cure the deficiencies in Chang with respect to claim 1, as discussed above.  For at least the above reasons,

-15-

NT000173

**Appln No. 12/044,295**
**Amdt date July 8, 2011**
**Reply to Office action of February 8, 2011**

Applicant submits that claim 8 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 8 be withdrawn and that this claim be allowed.

Claim 10 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 5,734,254 to Stephens (hereinafter "Stephens"). This rejection is respectfully traversed.

Dependent claim 10 depends indirectly from claim 1. As such, claim 10 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 10 over the cited references. Moreover, Stephens does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above. For at least the above reasons, Applicant submits that claim 10 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 10 be withdrawn and that this claim be allowed.

Claim 13 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 6,842,356 to Hsu (hereinafter "Hsu"). This rejection is respectfully traversed.

Dependent claim 13 depends indirectly from claim 1. As such, claim 13 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 13 over the cited references. Moreover, Hsu does not appear to cure the deficiencies in Chang with respect to claim 1 discussed above. For at least the above reasons, Applicant submits that claim 13 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 13 be withdrawn and that this claim be allowed.

Claims 17 and 18 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hsia, and further in view of Nishida. This rejection is respectfully traversed.

Dependent claims 17 and 18 depend (directly or indirectly) from claim 14. As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references.

-16-

NT000174

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

Moreover, Nishida does not appear to cure the deficiencies in Chang and Hsia with respect to claim 14 discussed above. For at least the above reasons, Applicant submits that claims 17 and 18 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 17 and 18 be withdrawn and that these claims be allowed.

Claims 21, 24, and 25 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 5,594,314 to Hagiuda et al. (hereinafter "Hagiuda"). This rejection is respectfully traversed. Further, Applicant has amended independent claim 21 herein.

Independent claim 21, as amended, recites:

A charging system for charging at least one accessory device having a power input port, the charging system comprising:

a base comprising at least one recess having at least one electrical contact, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the at least one electrical contact; and

at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead;

wherein the at least one external adapter is mountable on the at least one accessory device, and

wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess (emphasis added).

Applicant submits that claim 21, as amended, is not unpatentable over Chang in view of Hagiuda under 35 U.S.C. § 103(a). Neither Chang nor Hagiuda, nor the combination thereof, appears to teach or suggest "wherein the at least one external adapter is mountable on the at least

-17-

NT000175

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

one accessory device," as recited in Applicant's amended claim 21. Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3). However, Chang does not appear to teach or suggest an external adapter that is mountable on the wireless mouse. Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being mountable on an accessory device. Rather, Hagiuda appears to merely teach the battery 3 being inserted into an indentation 97 of the battery discharge adaptor 4 and having terminals 104, 106 which establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1). As such, neither Chang nor Hagiuda, nor the combination thereof appears to teach or suggest at least one external adapter that is mountable on at least one accessory device.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 21, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 21. As such, Applicant respectfully requests that the rejection of claim 21 be withdrawn and that this claim be allowed.

Dependent claims 24 and 25 depend directly from claim 21. As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish these claims over the cited references. For at least the reasons set forth above, Applicant submits that these dependent claims are not unpatentable over the cited references. Applicant, therefore, respectfully requests that the rejection of claims 24 and 25 be withdrawn and that these claims be allowed.

Claims 22 and 23 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda, and further in view of Nishida. This rejection is respectfully traversed.

Dependent claims 22 and 23 depend (directly or indirectly) from claim 21. As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to

-18-

NT000176

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 discussed above. For at least the above reasons, Applicant submits that claims 22 and 23 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 22 and 23 be withdrawn and that these claims be allowed.

Claim 26 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda, and further in view of Hsia. This rejection is respectfully traversed.

Dependent claim 26 depends directly from claim 21. As such, claim 26 incorporates all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish claim 26 over the cited references. Moreover, Hsia does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 discussed above. For at least the above reasons, Applicant submits that claim 26 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 26 be withdrawn and that this claim be allowed.

Claim 27 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda, and further in view of Stephens. This rejection is respectfully traversed.

Dependent claim 27 depends directly from claim 21. As such, claim 27 incorporates all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish claim 27 over the cited references. Moreover, Stephens does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 discussed above. For at least the above reasons, Applicant submits that claim 27 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 27 be withdrawn and that this claim be allowed.

-19-

NT000177

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

IV.   <u>New Claims 28-34</u>

New independent claim 28 recites:

A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:

a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and

an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,

<u>wherein the adapter is mountable on the video game controller</u>, and

wherein the base further comprises a docking structure configured to receive the video game controller having the adapter mounted thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base (emphasis added).

Applicant submits that new claim 28 is patentable over the cited references. None of the cited references or any combination thereof appears to teach or suggest "wherein the adapter is mountable on the video game controller," as recited in Applicant's new claim 28. For example, as discussed above with respect to claim 21, Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3). However, Chang does not appear to teach or suggest an adapter that is mountable on the wireless mouse. Further, Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being mountable on a video game controller. Rather, Hagiuda appears to merely teach the battery 3 being inserted into an indentation 97 of the battery discharge adaptor 4

-20-

Appln No. 12/044,295
Amdt date July 8, 2011
Reply to Office action of February 8, 2011

and having terminals 104, 106 which establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1). Further, none of the remaining cited references or any combination thereof appears to teach or suggest an adapter that is mountable on a video game controller.

At least for the reasons explained above, Applicant submits that the cited references do not teach or suggest each and every limitation of new claim 28, and respectfully requests that new claim 28 be allowed.

New claims 29 and 30 depend directly from new claim 28. As such, these dependent claims incorporate all of the terms and limitations of claim 28 in addition to other limitations, which further patentably distinguish these claims over the cited references. For at least the reasons set forth above, Applicant submits that new claims 29 and 30 are patentable over the cited references and respectfully requests that these claims be allowed.

## V.     Concluding Remarks

In view of the foregoing amendments and remarks, Applicant earnestly solicits timely issuance of a Notice of Allowance allowing claims 1-4, 6-18, and 21-30. If there are any remaining issues that can be addressed over the telephone, the Examiner is encouraged to call Applicant's attorney at the number listed below.

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By _____
Jason C. Martone
Reg. No. 59,469
626/795-9900

JCM/kmg

JCM PAS944525.1-*-07/7/11 6:33 PM

-21-

NT000179

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/044,295 | 03/07/2008 | Amir Navid | 61070/N220 | 7006 |

23363        7590        10/17/2011
CHRISTIE, PARKER & HALE, LLP
PO BOX 7068
PASADENA, CA 91109-7068

| EXAMINER |
|---|
| WILLIAMS, ARUN C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2858 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/17/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

NT000197

| ***Office Action Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 12/044,295 | NAVID, AMIR |
| | Examiner | Art Unit | |
| | ARUN WILLIAMS | 2858 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>08 July 2011</u>.

2a) ☒ This action is **FINAL.**    2b) ☐ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) <u>1-30</u> is/are pending in the application.

    4a) Of the above claim(s) <u>5,19 and 20</u> is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>1-4,6-18 and 21-30</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.

10) ☒ The drawing(s) filed on <u>3/7/2008</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some *  c) ☐ None of:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____.

        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date <u>4/8/2011</u>.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 08-06)    Office Action Summary    Part of Paper No./Mail Date 20111006

Application/Control Number: 12/044,295                                                                    Page 2
Art Unit: 2858

## DETAILED ACTION

### Response to Amendment

1.      This is in response to an amendment/response filed on 7/8/2011

Claims 1-3,6-9,14-15,17,21 have been amended.

Claim 5,19-20 have been cancelled.

Claims 28-30 are newly added.

Hereon, claims 1-4,6-18,21-30 are currently pending; claims 1-4,6-18,21-30 are
rejected.

### Information Disclosure Statement

*2.*      The information disclosure statement (IDS) file on 4/8/2011 has been considered
by the examiner. An initialed copy is attached herewith.

### Claim Rejections - 35 USC § 103

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all
obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

4.      The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148
USPQ 459 (1966), that are applied for establishing a background for determining
obviousness under 35 U.S.C. 103(a) are summarized as follows:

Application/Control Number: 12/044,295                                                    Page 3
Art Unit: 2858

1.   Determining the scope and contents of the prior art.
2.   Ascertaining the differences between the prior art and the claims at issue.
3.   Resolving the level of ordinary skill in the pertinent art.
4.   Considering objective evidence present in the application indicating obviousness or nonobviousness.

**5.   Claims 1,5,9,11, and 12 are rejected under 35 U.S.C. 102(A) as being**

**unpatentable by Chang, (USNO.2006/0202660) in view of Erickson,**

**(USNO.2009/0072784)**

**As for claim 1**, Chang discloses and  shows in Fig. 4 a video game controller

charging system for charging at least one video game controller using externally

supplied power, the video game controller charging system comprising: a base **(1)**; at

least one structure **(12)** on the base for providing physical support to the at least one

video game controller **(19)** while the at least one video game controller is being

charged; and at least one DC port **(31)** on the base, the at least one DC port configured

to couple to and provide DC power to a power input port of the at least one video game

controller **(par.[0032-0034])**.


Chang discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose a plurality of DC ports on the base, each of the DC ports

configured to couple to and provide DC power to a power input port of a

respective one of a plurality of video game controllers, wherein the at least one structure

on the base comprises a plurality of docking bays open in a first direction and

configured to receive respective ones of the plurality of video game controllers from the

first direction.

Application/Control Number: 12/044,295                                      Page 4
Art Unit: 2858

Erickson discloses and shows in Figs. 1 & 4 a plurality of DC ports on the base
**(14)**, each of the DC ports configured to couple to and provide DC power to a power
input port of a respective one of a plurality of video game controllers **(12)**, wherein the at
least one structure on the base comprises a plurality of docking bays open in a first
direction and configured to receive respective ones of the plurality of video game
controllers from the first direction **(par.[0031-0042])**

Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention was made to have modified the teachings of Chang by using a
plurality of DC ports on the base, each of the DC ports configured to couple to and
provide DC power to a power input port of a respective one of the plurality of video
game controllers, wherein the at least one structure on the base comprises a plurality of
docking bays open in a first direction and configured to receive respective ones of a
plurality of video game controllers from the first direction for advantages such as
providing the ability to recharge without replacement of batteries **(par.[0005])**, as taught
by Erickson.

**As for claim 6**, Chang in combination with Erickson discloses and shows
wherein the at least one structure on the base comprises a plurality of pairs of opposite
surfaces, the pairs configured to align respective ones of the plurality of video game
controllers such that the power input ports of the respective ones of the plurality of video
game controllers couple to respective ones of the plurality of DC ports.

EXHIBIT T                                                                    NT000201
Page 75

Application/Control Number: 12/044,295                                    Page 5
Art Unit: 2858

As for claim 9, Chang in combination with Erickson shows an AC-to- DC converter **(within power supply adapter which element 93 is coupled to; Fig. 4 of Chang)** adapted to convert the externally supplied power to the DC power provided to the power input ports of the respective video game controllers.


As for claim 11, Chang shows in Fig. 4 the AC-to-DC converter is external to the base.

As for claim 12, Chang shows in Fig. 4 the AC-to-DC converter is adapted to convert an AC voltage in the range of 100 V to 240 V corresponding to the externally supplied power into a DC voltage corresponding to the DC power.


6.    **Claim 2 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Erickson and further in view of Hsia, (USNO.2007/0278999).**

As for claim 2, Chang in combination with Erickson discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a DC port comprises a male mini-USB connector.

Hsia discloses and shows in Fig. 5 a DC port comprises a male mini-USB connector **(par.[0023-0025])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and

NT000202

Application/Control Number: 12/044,295                                    Page 6
Art Unit: 2858

Erickson by using a DC port comprises a male mini-USB connector for advantages such
as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

Chang in combination with Erickson and Hsia discloses the claimed invention
except for a plurality of DC port comprises a plurality of male mini-USB connector. It
would have been obvious to one having ordinary skill in the art at the time of the
invention was made to have a plurality of DC port comprises a plurality of male mini-
USB connector, since it has been held that mere duplication of the essential working
parts of a device involves only routine skill in the art. St. Regis Paper Co. v. Bemis Co.,
193 USPQ 8.


7.      **Claims 3 and 4 are rejected under 35 U.S.C. 103(a) as being unpatentable**
**over Chang, (USNO.2006/0202660) in view of Erickson and further in view of**
**Nishida, (USNO.2004/0189250)**

**As for claims 3 and 4**, Chang in combination with Erickson discloses all
limitations, but differs from the claimed invention because he does not explicitly disclose
a current detector electrically coupled to the plurality DC port; and an indicator
electrically coupled to the current detector, the indicator configured to indicate a
charging status of the charging system.

Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled
to the plurality of DC port; and an indicator **(25)** electrically coupled to the current
detector, the indicator configured to indicate a charging status of the charging system.
Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

EXHIBIT T
Page 77

NT000203

Application/Control Number: 12/044,295                                    Page 7
Art Unit: 2858

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Erickson by using a current detector electrically coupled to the plurality DC port; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system for advantages such as providing necessary accurate information of the charging/discharging state **(par.[0044])**, as taught by Nishida.

8.     **Claim 7 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Erickson and further in view of Chen, (USPATNO.6,313,604)**

As for claim **7**, Chang in combination with Erickson discloses all limitations, but differs from the claimed invention because he does not explicitly disclose pair of opposite surfaces comprise spring-loaded locating buttons configured to align a device in a base.

Chen discloses and shows in Fig. 3 pair of opposite surfaces comprise spring-loaded locating buttons **(22)** configured to align the device in a base **(col.2, lines 6-20)**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chen and Erickson by having pair of opposite surfaces comprise spring-loaded locating buttons configured to align a device in a base for advantages such as providing proper clamping within a base **(col.2, line 19)**, as taught by Chen.

NT000204

Application/Control Number: 12/044,295                                                    Page 8
Art Unit: 2858

9.      **Claims 8 is rejected under 35 U.S.C. 103(a) as being anticipated by Chang
in view of Erickson and further in view of Odell et al, (USNO.2008/0180060)**

        **As for claim 8,** Chang in combination with Erickson discloses all limitations, but
differs from the claimed invention because he does not explicitly disclose the plurality of
DC ports is configured to concurrently couple to and provide the DC power to the
plurality of video game controllers.

        Odell discloses and shows in Fig. 7c the plurality of DC ports **(43: Fig. 4 &
60:Fig. 9)** is configured to concurrently couple to and provide the DC power to the
plurality of video game controllers **(par.[0037-0041])**

        Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention was made to have modified the combined teachings of Chang and
Erickson by having the plurality of DC ports is configured to concurrently couple to and
provide the DC power to the plurality of video game controllers for advantages such as
providing the ability to power and engage a wireless device **(par.[0006])**, as taught by
Odell.

10.     **Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Chang, (USNO.2006/0202660) in view of Erickson and further in view of Stephens,
(USPATNO.5,734,254)**

        **As for claim 10**, Chang in combination with Erickson discloses all limitations, but
differs from the claimed invention because he does not explicitly disclose the AC-to-DC
converter is in the base.

Application/Control Number: 12/044,295                                    Page 9
Art Unit: 2858

Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Erickson by using the AC-to-DC converter is in the base for advantages such as

providing to convert voltage into a preferred output **(col.4, lines 15-21)**, as taught by

Stephens.

11.     **Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable by**

**Chang, (USNO.2006/0202660) in view of Erickson and further in view of Hsu,**

**(USPATNO.6,842,356)**

**As for claim 13**, Chang in combination with Erickson discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose the DC

voltage is DC5V.

Hsu discloses and shows in Fig. 3 the DC voltage is DC5V **(via element  64)**.

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Erickson by having the DC voltage is DC5V for advantages such as providing stabilized

output **(col.3, line 40)**, as taught by Hsu.

12.     **Claims 14 ,15, and 16 are rejected under 35 U.S.C. 103(a) as being**

**unpatentable over Huang, (USNO.2003/0216069) in view of Hsia,**

**(USNO.2007/0278999).**

NT000206

Application/Control Number: 12/044,295                                              Page 10
Art Unit: 2858

**As for claim 14**, Huang discloses and shows in Fig. 2 a charging system for charging a plurality of accessory devices, each having a power input port, the charging system comprising: a base **(1)**; a plurality of USB connectors **(161)** supported by the base and each adapted to provide DC power to a respective one of plurality of accessory devices **(21-25)**; at least one docking structure defining a plurality of docking bays **(16,16')** open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of plurality of USB connector connectors; and a power input **(11: Fig. 3)** for connecting to a power supply **(ref's city power supply)**, the power input electrically coupled to the plurality USB connectors **[par. 0021-0017]**).

Huang discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a male mini-USB connector supported by the base and adapted to provide DC power to the at least one accessory device

Hsia discloses and shows in Fig. 5 at least one male mini-USB connector **(520)** supported by the base **(exterior of element 500)** and adapted to provide DC power to the at least one accessory device **(600)(par.[0023-0025]**).

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Huang by using a male mini-USB connector supported by the base and adapted to provide DC power to the at least one accessory device for advantages such as providing power to quickly charge a device **(par.[0011])**, as taught by Hsia.

Application/Control Number: 12/044,295                                      Page 11
Art Unit: 2858

As for claim 15, Huang in combination with Hsia discloses and shows an AC-to-DC converter electrically coupled between the power input and the plurality of male mini- USB connectors.

As for claim 16, Huang discloses and shows in fig. 4 an AC-to-DC converter external **(obvious to be connected to 202 to receive DC)** to the base and electrically coupled to a power input **(202)**.


13.    **Claims 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Huang in view of Hsia and further in view of Nishida.**

As for claims 17 and 18, Huang in combination with Hsia discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a current detector electrically coupled to the plurality of connecters; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system.

Nishida discloses and shows in Fig. 6 a current detector **(23)** electrically coupled to the plurality of connecters; and an indicator **(25)** electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system. Furthermore, Nishida discloses the indicator comprises at least one LED **(par.[0044])**.

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Huang and Hsia by using a current detector electrically coupled to the plurality of connecters; and an indicator electrically coupled to the current detector, the indicator configured to

NT000208

Application/Control Number: 12/044,295                          Page 12
Art Unit: 2858

indicate a charging status of the charging system for advantages such as providing

necessary accurate information of the charging/discharging state **(par.[0044])**, as taught

by Nishida.

14.    **Claims 21,24, and 25 are rejected under 35 U.S.C. 103(a) as being**

**unpatentable over Chang, (USNO.2006/0202660) in view of Hagiuda et**

**al,(Hagiuda), (USPATNO.5,594,314)**

       **As for claim 21**, Chang discloses and shows in Fig. 4 a charging system for

charging at least one accessory device having a power input port, the charging system

comprising: a base **(1)** comprising at least one recess having at least one electrical

contact **(31)**, the base further comprising a power input for connection to a power

supply, the power input being electrically coupled to the at least one electrical contact

**(par.[0032-0034])**.

       Chang discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose at least one external adapter comprising a connector

configured to couple to the power input port of the at least one accessory device, the at

least one external adapter further comprising at least one electrical lead; wherein the at

least one external adapter is mountable on the at least one accessory device ; wherein

the at least one recess is dimensioned to receive the at least one external adapter, the

at least one electrical lead of the at least one external adapter contacting the at least

one electrical contact of the at least one recess when the at least one external adapter

is received by the at least one recess.

Application/Control Number: 12/044,295                                Page 13
Art Unit: 2858

Haguida discloses and shows in Fig. 1 at least one external adapter **(4)** comprising a connector **(combination of 107 & 105)** configured to couple to the power input port **(106 &104)** of the at least one accessory device **(3)**, the at least one external adapter further comprising at least one electrical lead **(103)**; wherein the at least one external adapter is mountable on the at least one accessory device; wherein the at least one recess **(99)** is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact **(102)** of the at least one recess when the at least one external adapter is received by the at least one recess **(col.2, lines 31-57)**

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the teachings of Chang by using at least one external adapter comprising a connector configured to couple to the power input port of the at least one accessory device, the at least one external adapter further comprising at least one electrical lead; wherein the at least one external adapter is mountable on the at least one accessory device ; wherein the at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess for advantages such as providing the ability to accommodate charging/discharging features **(col.1, lines 51-58)**, as taught by Haguida.

**As for claim 24**, Chang in combination with Haguida discloses and shows at least one external adapter further comprises an angled edge; and the at least one

Application/Control Number: 12/044,295                                         Page 14
Art Unit: 2858

recess comprises an angled corner dimensioned to match the angled edge of the at

least one external adapter and adapted to orient the at least one external adapter with

respect to the at least one recess.

    **As for claim 25**, Chang in combination with Haguida discloses all limitations of

the invention except for at least one recess comprises four electrical contacts and at

least one external adapter comprises four electrical leads. It would have been  an

obvious matter of design choice to make at least one recess comprise four electrical

contacts and at least one external adapter comprise four electrical leads, since

applicant has not disclosed that at least one recess comprising four electrical contacts

and at least one external adapter comprising four electrical leads solves any stated

problem or is for any particular purpose and thus would have been obvious.

**15.     Claims 22 and 23 are rejected under 35 U.S.C. 103(a) as being unpatentable**

**over Chang in view of Haguida and further in view of Nishida.**

    **As for claims 22 and 23**, Chang in combination with Haguida discloses all

limitations, but differs from the claimed invention because he does not explicitly disclose

a current detector electrically coupled to the at least one electrical contact of at least

one recess; and an indicator electrically coupled to the current detector, the indicator

configured to indicate a charging status of the charging system.

    Nishida discloses and shows in Fig. 6 a current detector (**23**) electrically coupled

to the at least one electrical contact of at least one recess; and an indicator (**25**)

electrically coupled to the current detector, the indicator configured to indicate a

NT000211

Application/Control Number: 12/044,295                                        Page 15
Art Unit: 2858

charging status of the charging system. Furthermore, Nishida discloses the indicator

comprises at least one LED **(par.[0044])**.

 Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Haguida by using a current detector electrically coupled to the at least one electrical

contact of at least one recess; and an indicator electrically coupled to the current

detector, the indicator configured to indicate a charging status of the charging system

for advantages such as providing necessary accurate information of the

charging/discharging state **(par.[0044])**, as taught by Nishida.

16.   **Claim 26 is rejected under 35 U.S.C. 103(a) as being unpatentable over
Chang in view of Haguida and further in view of Hsia.**

 **As for claim 26**, Chang in combination with Haguida discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose at least one

external adapter comprises a male mini-USB connector.

 Hsia discloses and shows in Fig. 5 at least one external adapter comprises a

male mini-USB connector **(520) (par.[0023-0025])**.

 Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings of Chang and

Haguida by using at least one external adapter comprises a male mini-USB connector

for advantages such as providing power to quickly charge a device **(par.[0011])**, as

taught by Hsia.

NT000212

Application/Control Number: 12/044,295                                Page 16
Art Unit: 2858

17.     **Claim 27 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Stephens, (USPATNO.5,734,254)**

       **As for claim 27**, Chang in combination with Haguida discloses all limitations, but

differs from the claimed invention because he does not explicitly disclose the AC-to-DC

converter is in the base

       Stephens discloses and shows in Fig. 1 the AC-to-DC converter **(70)** is in the

base **(40)**

       Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the combined teachings Chang and

Haguida by using the AC-to-DC converter is in the base for advantages such as

providing to convert voltage into a preferred output **(col.4, lines 15-21)**, as taught by

Stephens.

18.     **Claim 28 is rejected under 35 U.S.C. 103(a) as being unpatentable over**

**Chang, (USNO.2006/0202660) in view of Hagiuda et al,(Hagiuda),**

**(USPATNO.5,594,314)**

       **As for claim 28**, Chang discloses and shows in Fig. 4 a video game controller

charging system for charging a video game controller **(91)** having a power input port,

the video game controller charging system comprising: a base **(1)** comprising a plurality

of electrical contacts, the base further comprising a power input for connection to a

power supply, the power input being electrically coupled to the plurality of electrical

contacts and wherein the base further comprises a docking structure configured to

Application/Control Number: 12/044,295                                    Page 17
Art Unit: 2858

receive the video game controller having contact the plurality of electrical contacts of the

base **(par.[0032-0034])**

Cheng discloses all limitations, but differs from the claimed invention because he

does not explicitly disclose an adapter comprising a connector configured to couple to

the power input port of a device, the adapter further comprising a plurality of electrical

leads, wherein the adapter is mountable on the device, receive the device having the

adapter mounted thereon such that the plurality of electrical leads of the adapter contact

the plurality of electrical contacts of the base.

Haguida discloses and shows in Fig. 1 an adapter **(4)** comprising a connector

**(combination of 107 & 105)** configured to couple to the power input port **(34:Fig 2)**of a

device **(3)** , the adapter further comprising a plurality of electrical leads **(103 & 101)**,

wherein the adapter is mountable on the device , receive the device having the adapter

mounted thereon such that the plurality of electrical leads of the adapter contact the

plurality of electrical contacts of the base **(1) (col.2, lines 31-57)**

Therefore, it would have been obvious to one of ordinary skill in the art at the

time of the invention was made to have modified the teachings of Chang by using an

adapter comprising a connector configured to couple to the power input port of a device,

the adapter further comprising a plurality of electrical leads, wherein the adapter is

mountable on the device, receive the device having the adapter mounted thereon such

that the plurality of electrical leads of the adapter contact the plurality of electrical

contacts of the base for advantages such as providing the ability to accommodate

charging/discharging features **(col.1, lines 51-58)**, as taught by Haguida.

Application/Control Number: 12/044,295                                          Page 18

Art Unit: 2858

19.     **Claim 29 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Haguida and further in view of Chen, (USPATNO.6,313,604)**

As for claim 29, Chang in combination with Haguida discloses all limitations, but differs from the claimed invention because he does not explicitly disclose wherein the plurality of electrical contacts comprises at least one spring biasing the plurality of electrical contacts toward the plurality of electrical leads.

Chen discloses and shows in Fig. 3 wherein the plurality of electrical contacts comprises at least one spring **(22)** biasing the plurality of electrical contacts toward the plurality of electrical leads **(col.2, lines 6-20)**..

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chen and Haguida by having the plurality of electrical contacts comprises at least one spring biasing the plurality of electrical contacts toward the plurality of electrical leads for advantages such as providing proper clamping within a base **(col.2, line 19)**, as taught by Chen.

20.     **Claim 30 is rejected under 35 U.S.C. 103(a) as being unpatentable over Chang, (USNO.2006/0202660) in view of Haguida and further in view of Hsia, (USNO.2007/0278999).**

Application/Control Number: 12/044,295                                    Page 19
Art Unit: 2858

**As for claim 30**, Chang in combination with Erickson discloses all limitations, but differs from the claimed invention because he does not explicitly disclose a connector comprises a male mini-USB connector.

Hsia discloses and shows in Fig. 5 a connector comprises a male mini-USB connector (**par.[0023-0025]**).

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention was made to have modified the combined teachings of Chang and Haguida by using a connector comprises a male mini-USB connector for advantages such as providing power to quickly charge a device (**par.[0011]**), as taught by Hsia.

### *Response to Arguments*

1.      Applicant's arguments filed 7/8/2011 have been fully considered but they are not persuasive.

2.      In response to applicants' argument that

I.      Chang does not appear to disclose "wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction," as recited in Applicant's amended claim 1

II.      Neither Chang nor Hsia, nor the combination thereof, appears to teach or suggest "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of accessory devices to couple to respective ones of the plurality of male mini-USB connectors,"

III.      Chang nor Hagiuda, nor the combination thereof appears to teach or suggest at least one external adapter that is mountable on at least one accessory device.

NT000216

Application/Control Number: 12/044,295                                              Page 20
Art Unit: 2858

3.       The examiner respectfully disagree and submits,

I.       As in dedicated in the new rejection above, Chang in combination with Erickson

discloses  at least one structure on the base comprises a plurality of docking bays open

in a first direction and configured to receive respective ones of the plurality of video

game controllers from the first direction ,which was necessitated by an amendment.

II.      As in dedicated in the new rejection above, Hang in combination with Hsia

discloses  at least one docking structure defining a plurality of docking bays open in a

first direction and configured to receive from the first direction and align respective ones

of the plurality of accessory devices to couple to respective ones of the plurality of male

mini-USB connectors ,which was necessitated by an amendment.

III.     Chang in combination with Hagiuda discloses at least one external adapter that

is mountable on at least one accessory device (**col.2, lines 55-58**)


### Conclusion

21.      Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

         A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

NT000217

Application/Control Number: 12/044,295                                          Page 21
Art Unit: 2858

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ARUN WILLIAMS whose telephone number is (571)272-

9765.  The examiner can normally be reached on Mon - Thurs, 6:30am - 4pm.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Patrick Assouad can be reached on 571-272-22102210. The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

    Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Arun Williams/               /Edward Tso/
Examiner, Art Unit 2858       Primary Examiner, Art Unit 2858

NT000218

Application/Control Number: 12/044,295                                          Page 22
Art Unit: 2858

NT000219

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*I hereby certify that this correspondence is being electronically filed with the United States Patent and Trademark Office on January 17, 2012 at or before 11:59 p.m. Pacific Time under the Rules of 37 CFR § 1.8.*

Renne M.F. Wyzykowski

| | | |
|---|---|---|
| Appl No. | : 12/044,295 | Confirmation No. 7006 |
| Applicant | : Amir Navid | |
| Filed | : March 7, 2008 | |
| Title | : VIDEO GAME CONTROLLER CHARGING SYSTEM HAVING A DOCKING STRUCTURE | |
| TC/A.U. | : 2858 | |
| Examiner | : Arun C. Williams | |
| Docket No. | : 61070/N220 | |
| Customer No. | : 23363 | |

### AMENDMENT WITH A RCE

**Mail Stop RCE**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Post Office Box 29001
Glendale, CA 91203-1445
January 17, 2012

Commissioner:

In response to the Office action of October 17, 2011, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begin on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

-1-

NT000223

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011


**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1.     (Currently amended)  A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the base between a respective one of the pairs of surfaces.


2.     (Previously presented)  The video game controller charging system of claim 1, wherein the plurality of DC ports comprises a plurality of male mini-USB connectors.


3.     (Previously presented)  The video game controller charging system of claim 1, further comprising:

a current detector electrically coupled to the plurality of DC ports; and

-2-

NT000224

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

     an indicator electrically coupled to the current detector, the indicator configured
to indicate a charging status of the video game controller charging system.

   4.  (Original)  The video game controller charging system of claim 3, wherein the
indicator comprises at least one LED.

   5.  (Canceled)

   6.  (Currently amended)  The video game controller charging system of claim 1,
wherein the ~~at least one structure on the base comprises a plurality of~~ pairs of opposite surfaces~~,~~
~~the pairs~~ <u>are</u> configured to align respective ones of the plurality of video game controllers such
that the power input ports of the respective ones of the plurality of video game controllers couple
to respective ones of the plurality of DC ports.

   7.  (Previously presented)  The video game controller charging system of claim 6,
wherein the pairs of opposite surfaces comprise spring-loaded locating buttons configured to
align the respective ones of the plurality of video game controllers.

   8.  (Previously presented)  The video game controller charging system of claim 1,
wherein the plurality of DC ports is configured to concurrently couple to and provide the DC
power to the plurality of video game controllers.

   9.  (Previously presented)  The video game controller charging system of claim 1,
further comprising an AC-to-DC converter adapted to convert the externally supplied power to
the DC power provided to the power input ports of the respective video game controllers.

   10.  (Original)  The video game controller charging system of claim 9, wherein the
AC-to-DC converter is in the base.

-3-

NT000225

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

11.     (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is external to the base.

12.     (Original)  The video game controller charging system of claim 9, wherein the AC-to-DC converter is adapted to convert an AC voltage in the range of 100 V to 240 V corresponding to the externally supplied power into a DC voltage corresponding to the DC power.

13.     (Original)  The video game controller charging system of claim 12, wherein the DC voltage is DC 5 V.

14.     (Currently amended)  A charging system for charging a plurality of ~~accessory devices~~ video game controllers, each having a power input port, the charging system comprising:

a base;

a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of ~~accessory devices~~ video game controllers;

at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of ~~accessory devices~~ video game controllers to couple to respective ones of the plurality of male mini-USB connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors,

wherein the at least one docking structure comprises a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces.

-4-

NT000226

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

15.    (Previously presented)  The charging system of claim 14, wherein the charging
system further comprises an AC-to-DC converter electrically coupled between the power input
and the plurality of male mini-USB connectors.

16.    (Original)  The charging system of claim 14, wherein the charging system further
comprises an AC-to-DC converter external to the base and electrically coupled to the power
input.

17.    (Previously presented)  The charging system of claim 14, further comprising:
       a current detector electrically coupled to the plurality of male mini-USB
connectors; and
       an indicator electrically coupled to the current detector, the indicator configured
to indicate a charging status of the charging system.

18.    (Original)  The charging system of claim 17, wherein the indicator comprises at
least one LED.

19-20.  (Canceled)

21.    (Currently amended)  A charging system for charging at least one ~~accessory
device~~ video game controller having a power input port, the charging system comprising:
       a base comprising at least one recess having at least one electrical contact, the
base further comprising a power input for connection to a power supply, the power input being
electrically coupled to the at least one electrical contact; and
       at least one external adapter comprising a connector configured to couple to the
power input port of the at least one ~~accessory device~~ video game controller, the at least one
external adapter further comprising at least one electrical lead;

-5-

EXHIBIT T
Page 98

NT000227

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

      wherein the at least one external adapter is ~~mountable~~ removably attachable on the at least one ~~accessory device~~ video game controller and configured to remain attached on the at least one video game controller when the at least one video game controller is in use during operation of a video game, and

      wherein the ~~at least one recess is dimensioned to receive the at least one external adapter, the at least one electrical lead of the at least one external adapter contacting the at least one electrical contact of the at least one recess when the at least one external adapter is received by the at least one recess~~ base further comprises at least one structure defining at least one docking bay open in a first direction and configured to receive from the first direction the at least one video game controller having the at least one external adapter attached thereon such that the at least one electrical lead contacts the at least one electrical contact, the at least one structure comprising at least one pair of substantially parallel opposite planar surfaces defining the at least one docking bay, the at least one docking bay being open on opposite sides between the at least one pair of surfaces.

    22.    (Original)  The charging system of claim 21, further comprising:

      a current detector electrically coupled to the at least one electrical contact of the at least one recess; and

      an indicator electrically coupled to the current detector, the indicator adapted to indicate a status of the charging system.

    23.    (Original)  The charging system of claim 22, wherein the indicator comprises at least one LED.

    24.    (Original)  The charging system of claim 21, wherein:

      the at least one external adapter further comprises an angled edge; and

EXHIBIT T
Page 99

NT000228

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

the at least one recess comprises an angled corner dimensioned to match the angled edge of the at least one external adapter and adapted to orient the at least one external adapter with respect to the at least one recess.

25.    (Original)  The charging system of claim 21, wherein:
the at least one electrical contact of the at least one recess comprises four electrical contacts; and
the at least one electrical lead of the at least one external adapter comprises four electrical leads.

26.    (Original)  The charging system of claim 21, wherein the connector of the at least one external adapter comprises a male mini-USB connector.

27.    (Original)  The charging system of claim 21, further comprising an AC/DC converter electrically coupled between the power input of the base and the at least one electrical contact of the at least one recess.

28.    (Currently amended)  A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:
a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and
an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,
wherein the adapter is ~~mountable~~ removably attachable on the video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game, and

-7-

NT000229

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

       wherein the base further comprises a docking structure configured to receive the video game controller having the adapter ~~mounted~~ <u>attached</u> thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base.

     29.    (Previously presented)  The video game controller charging system of claim 28, wherein the plurality of electrical contacts comprises at least one spring biasing the plurality of electrical contacts toward the plurality of electrical leads.

     30.    (Previously presented)  The video game controller charging system of claim 28, wherein the connector comprises a male mini-USB connector.

-8-

EXHIBIT T
Page 101

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

## REMARKS/ARGUMENTS

Claims 1-4, 6-18, and 21-30 are pending in the present application, of which claims 1, 14, 21, and 28 are independent. Claims 1, 14, 21, and 28 have been amended herein to include some of the matter described in the original specification and drawings (see, e.g., paragraphs [0083], [0085], and [0100], and FIGs. 11, 17, and 21). Claim 6 has been amended for reasons of clarity and antecedent basis. No new matter has been added. Applicant respectfully requests reconsideration and allowance of claims 1-4, 6-18, and 21-30 in view of the amendments and the following remarks.

### Rejection of Claims 1-4, 6-18, and 21-30 under 35 U.S.C. § 103(a)

Claims 1, 6, 9, 11, and 12 were rejected under § 103(a) as allegedly being unpatentable over U.S. Patent Application Publication No. 2006/0202660 to Chang ("Chang") in view of U.S. Patent Application Publication No. 2009/0072784 to Erickson ("Erickson"). This rejection is respectfully traversed. Further, Applicant has amended independent claim 1 herein.

Independent claim 1, as amended, recites:

A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:

a base;

at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

-9-

NT000231

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

> wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and
>> wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the base between a respective one of the pairs of surfaces (emphasis added).

Applicant submits that claim 1, as amended, is not unpatentable over the combination of Chang and Erickson under 35 U.S.C. § 103(a). The combination of Chang and Erickson does not appear to teach or suggest "wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the base between a respective one of the pairs of surfaces," as recited in Applicant's amended claim 1. Rather, Chang appears to disclose a wireless mouse charger including a housing 1 having a single mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3), but does not appear to teach a plurality of docking bays open in a first direction and configured to receive respective ones of a plurality of video game controllers, as recited in Applicant's claim 1. Further, Chang appears to disclose first and second inner surfaces 11, 12 defining the mouse cavity 13, and a contact set being located on the first inner surface (see Chang, paragraphs [0032] and [0037], and Fig. 3), but does not appear to teach or suggest a DC port being on a base of the housing 1 between the first and second inner surfaces 11, 12. Erickson disclose a system 10 for charging two portable devices 12a, 12b which are game controllers (see Erickson, paragraph [0031], and Fig. 4A). However, Erickson does not appear to teach or suggest a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the

NT000232

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

base between a respective one of the pairs of surfaces.  Rather, Erickson discloses coupling inductors 36a, 36b in recesses 34a, 34b under a base unit shell 42 (see Erickson, paragraph [0038], and Fig. 4A).  Further, Applicant submits that it would not have been obvious to one of ordinary skill in the art to have modified the teachings of Chang to include a structure on the base comprising a plurality of docking bays because a user of a wireless mouse typically does not use more than one mouse at a time and, therefore, would not typically have a need to simultaneously charge more than one wireless mouse.  Additionally, Chang teaches a wireless mouse charger having a battery cavity 14 for charging a spare rechargeable battery 92 therein so that an inside rechargeable battery of the wireless mouse and the spare rechargeable battery 92 can be charged simultaneously so that use of the wireless mouse is not interrupted due to lack of power (see Chang, paragraphs [0041] and [0045], and Fig. 6).

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 1, as amended, because the combination of Chang and Erickson does not teach or suggest each and every limitation of amended claim 1.  As such, Applicant respectfully requests that the rejection of claim 1 be withdrawn and that this claim be allowed.

Dependent claims 6, 9, 11, and 12 depend (directly or indirectly) from claim 1.  As such, these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish these claims over the cited references.  For at least the reasons set forth above, Applicant submits that these dependent claims are patentable over the cited references.  Applicant, therefore, respectfully requests that the rejection of claims 6, 9, 11, and 12 be withdrawn and that these claims be allowed.

Claim 2 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent Application Publication No. 2007/0278999 to Hsia ("Hsia").  This rejection is respectfully traversed.

Dependent claim 2 depends directly from claim 1.  As such, claim 2 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 2 over the cited references.  Moreover, Hsia does not appear to cure the

EXHIBIT T
Page 104

NT000233

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 2 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 2 be withdrawn and that this claim be allowed.

Claims 3 and 4 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent Application Publication No. 2004/0189250 to Nishida ("Nishida"). This rejection is respectfully traversed.

Dependent claims 3 and 4 depend (directly or indirectly) from claim 1. As such, these dependent claims incorporate all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claims 3 and 4 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 3 and 4 be withdrawn and that these claims be allowed.

Claim 7 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent No. 6,313,604 to Chen ("Chen"). This rejection is respectfully traversed.

Dependent claim 7 depends indirectly from claim 1. As such, claim 7 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 7 over the cited references. Moreover, Chen does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 7 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 7 be withdrawn and that this claim be allowed.

Claim 8 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Erickson and further in view of U.S. Patent Application Publication No. 2008/0180060 to Odell et al. ("Odell"). This rejection is respectfully traversed.

-12-

NT000234

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

Dependent claim 8 depends directly from claim 1. As such, claim 8 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 8 over the cited references. Moreover, Odell does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 8 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 8 be withdrawn and that this claim be allowed.

Claim 10 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent No. 5,734,254 to Stephens ("Stephens"). This rejection is respectfully traversed.

Dependent claim 10 depends indirectly from claim 1. As such, claim 10 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 10 over the cited references. Moreover, Stephens does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 10 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 10 be withdrawn and that this claim be allowed.

Claim 13 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Erickson and further in view of U.S. Patent No. 6,842,356 to Hsu ("Hsu"). This rejection is respectfully traversed.

Dependent claim 13 depends indirectly from claim 1. As such, claim 13 incorporates all of the terms and limitations of claim 1 in addition to other limitations, which further patentably distinguish claim 13 over the cited references. Moreover, Hsu does not appear to cure the deficiencies in Chang and Erickson with respect to claim 1 as discussed above. For at least the above reasons, Applicant submits that claim 13 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 13 be withdrawn and that this claim be allowed.

-13-

NT000235

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

Claims 14-16 were rejected under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent Application Publication No. 2003/0216069 to Huang ("Huang"), in view of Hsia. This rejection is respectfully traversed. Further, Applicant has amended independent claim 14 herein.

Independent claim 14, as amended, recites:

A charging system for charging a plurality of video game controllers, each having a power input port, the charging system comprising:

a base;

a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of video game controllers;

at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors,

wherein the at least one docking structure comprises a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces (emphasis added).

Applicant submits that claim 14, as amended, is not unpatentable over Huang in view of Hsia under 35 U.S.C. § 103(a). Neither Huang nor Hsia, nor the combination thereof, appears to teach or suggest a charging system for charging a plurality of video game controllers and including "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers" or "wherein the at least one docking structure comprises a

-14-

EXHIBIT T
Page 107

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, <u>each of the docking bays being open on opposite sides between the respective pair of surfaces</u>," as recited in Applicant's amended claim 14. Rather, Huang appears to disclose a hub and power adapter main unit 1 having a plurality of upward insertion slots 16, 16', 16" for receiving connection boxes 2 (i.e. USB Ethernet receiving box 21, etc.) therein (see Huang, paragraphs [0014] and [0016], and Fig. 2), but does not appear to teach or suggest a charging system for charging a plurality of video game controllers, as recited in Applicant's amended claim 14. Additionally, Huang does not appear to teach or suggest at least one docking structure comprising a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, <u>each of the docking bays being open on opposite sides between the respective pair of surfaces</u>. Rather, Huang appears to teach the insertion slots 16, 16', 16" being closed on all sides except for a side from which one of the connection boxes 2 is inserted (see Huang, Fig. 2). Further, Hsia does not appear to teach or suggest at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers. Nor does Hsia appear to teach or suggest at least one docking structure comprising a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 14, as amended, because neither Huang nor Hsia, nor the combination thereof, appears to teach or suggest each and every limitation of the present claim 14. As such, Applicant respectfully requests that the rejection of claim 14 be withdrawn and that this claim be allowed.

Dependent claims 15 and 16 depend directly from claim 14. As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references. For at least the

-15-

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

reasons set forth above, Applicant submits that these dependent claims are not unpatentable over the cited references.  Applicant, therefore, respectfully requests that the rejection of claims 15 and 16 be withdrawn and that these claims be allowed.

Claims 17 and 18 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Huang in view of Hsia and further in view of Nishida. This rejection is respectfully traversed.

Dependent claims 17 and 18 depend (directly or indirectly) from claim 14.  As such, these dependent claims incorporate all of the terms and limitations of claim 14 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Huang and Hsia with respect to claim 14 as discussed above.  For at least the above reasons, Applicant submits that claims 17 and 18 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 17 and 18 be withdrawn and that these claims be allowed.

Claims 21, 24, 25, and 28 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of U.S. Patent No. 5,594,314 to Hagiuda et al. (hereinafter "Hagiuda"). This rejection is respectfully traversed.  Further, Applicant has amended independent claims 21 and 28 herein.

Independent claim 21, as amended, recites:

A charging system for charging at least one video game controller having a power input port, the charging system comprising:

a base comprising at least one recess having at least one electrical contact, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the at least one electrical contact; and

at least one external adapter comprising a connector configured to couple to the power input port of the at least one video game controller, the at least one external adapter further comprising at least one electrical lead;

wherein the at least one external adapter is removably attachable on the at least one video game controller and configured to remain attached on the

-16-

NT000238

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

at least one video game controller when the at least one video game controller is in use during operation of a video game, and

wherein the base further comprises at least one structure defining at least one docking bay open in a first direction and configured to receive from the first direction the at least one video game controller having the at least one external adapter attached thereon such that the at least one electrical lead contacts the at least one electrical contact, the at least one structure comprising at least one pair of substantially parallel opposite planar surfaces defining the at least one docking bay, the at least one docking bay being open on opposite sides between the at least one pair of surfaces (emphasis added).

Applicant submits that claim 21, as amended, is not unpatentable over Chang in view of Hagiuda under 35 U.S.C. § 103(a). Neither Chang nor Hagiuda, nor the combination thereof, appears to teach or suggest "wherein the at least one external adapter is removably attachable on the at least one video game controller and configured to remain attached on the at least one video game controller when the at least one video game controller is in use during operation of a video game," as recited in Applicant's amended claim 21. Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3). However, Chang does not appear to teach or suggest an external adapter that is removably attachable on the wireless mouse and configured to remain attached on the wireless mouse when the wireless mouse is in use during operation of a video game. Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being removably attachable on a video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game. Rather, Hagiuda appears to teach the battery discharge adaptor 4 having terminals 105, 107, and the battery 3 being received in an indentation 97 of the battery discharge adaptor 4 and having terminals 104, 106 which

-17-

EXHIBIT T
Page 110

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being attachable on a video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game. As such, neither Chang nor Hagiuda, nor the combination thereof appears to teach or suggest at least one external adapter that is removably attachable on at least one video game controller.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 21, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 21. As such, Applicant respectfully requests that the rejection of claim 21 be withdrawn and that this claim be allowed.

Dependent claims 24 and 25 depend directly from claim 21. As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish these claims over the cited references. For at least the reasons set forth above, Applicant submits that these dependent claims are not unpatentable over the cited references. Applicant, therefore, respectfully requests that the rejection of claims 24 and 25 be withdrawn and that these claims be allowed.

Independent claim 28, as amended, recites:

A video game controller charging system for charging a video game controller having a power input port, the video game controller charging system comprising:

a base comprising a plurality of electrical contacts, the base further comprising a power input for connection to a power supply, the power input being electrically coupled to the plurality of electrical contacts; and

an adapter comprising a connector configured to couple to the power input port of the video game controller, the adapter further comprising a plurality of electrical leads,

-18-

NT000240

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

> wherein the adapter is removably attachable on the video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game, and
>
> wherein the base further comprises a docking structure configured to receive the video game controller having the adapter attached thereon such that the plurality of electrical leads of the adapter contact the plurality of electrical contacts of the base (emphasis added).

Applicant submits that claim 28, as amended, is not unpatentable over Chang in view of Hagiuda under 35 U.S.C. § 103(a). Neither Chang nor Hagiuda, nor the combination thereof, appears to teach or suggest "wherein the adapter is removably attachable on the video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game," as recited in Applicant's amended claim 28. For example, as discussed above with respect to claim 21, Chang discloses a wireless mouse charger including a housing 1 having a mouse cavity 13 for receiving a wireless mouse therein (see Chang, paragraphs [0031] and [0032], and Fig. 3). However, Chang does not appear to teach or suggest an adapter that is removably attachable on the wireless mouse and configured to remain attached on the wireless mouse when the wireless mouse is in use during operation of a video game. Further, Hagiuda discloses a battery discharge adaptor 4 into which a battery 3 can be installed for discharging (see Hagiuda, col. 2, lines 31-35, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being removably attachable on a video game controller and configured to remain attached on the video game controller when the video game controller is in use during operation of a video game. Rather, Hagiuda appears to teach the battery discharge adaptor 4 having terminals 105, 107, and the battery 3 being received in an indentation 97 of the battery discharge adaptor 4 and having terminals 104, 106 which establish an electrical connection with terminals 105, 107 of the battery discharge adaptor 4 (see Hagiuda, col. 2, lines 48-54, and Fig. 1). However, Hagiuda does not appear to teach or suggest the battery discharge adaptor 4 being attachable on a video game controller and configured to

-19-

NT000241

Appln No. 12/044,295
Amdt date January 17, 2012
Reply to Office action of October 17, 2011

remain attached on the video game controller when the video game controller is in use during operation of a video game.

At least for the reasons explained above, Applicant respectfully submits that a *prima facie* case of obviousness has not been established with respect to claim 28, as amended, because the cited references do not teach or suggest each and every limitation of the present claim 28. As such, Applicant respectfully requests that the rejection of claim 28 be withdrawn and that this claim be allowed.

Claims 22 and 23 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda and further in view of Nishida. This rejection is respectfully traversed.

Dependent claims 22 and 23 depend (directly or indirectly) from claim 21. As such, these dependent claims incorporate all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish these claims over the cited references. Moreover, Nishida does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 as discussed above. For at least the above reasons, Applicant submits that claims 22 and 23 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 22 and 23 be withdrawn and that these claims be allowed.

Claims 26 and 30 were rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda and further in view of Hsia. This rejection is respectfully traversed.

Dependent claim 26 depends directly from claim 21. Dependent claim 30 depends directly from claim 26. As such, claims 26 and 30 incorporate all of the terms and limitations of claims 21 and 28, respectively, in addition to other limitations, which further patentably distinguish these dependent claims over the cited references. Moreover, Hsia does not appear to cure the deficiencies in Chang and Hagiuda with respect to claims 21 and 28 as discussed above. For at least the above reasons, Applicant submits that claims 26 and 30 are not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claims 26 and 30 be withdrawn and that these claims be allowed.

-20-

NT000242

**Appln No. 12/044,295**
**Amdt date January 17, 2012**
**Reply to Office action of October 17, 2011**

Claim 27 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang in view of Hagiuda and further in view of Stephens. This rejection is respectfully traversed.

Dependent claim 27 depends directly from claim 21. As such, claim 27 incorporates all of the terms and limitations of claim 21 in addition to other limitations, which further patentably distinguish claim 27 over the cited references. Moreover, Stephens does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 21 as discussed above. For at least the above reasons, Applicant submits that claim 27 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 27 be withdrawn and that this claim be allowed.

Claim 29 was rejected under 35 U.S.C. § 103(a) as being unpatentable over Chang, in view of Hagiuda and further in view of Chen. This rejection is respectfully traversed.

Dependent claim 29 depends directly from claim 28. As such, claim 29 incorporates all of the terms and limitations of claim 28 in addition to other limitations, which further patentably distinguish claim 29 over the cited references. Moreover, Chen does not appear to cure the deficiencies in Chang and Hagiuda with respect to claim 28 as discussed above. For at least the above reasons, Applicant submits that claim 29 is not unpatentable over the cited references. Therefore, Applicant respectfully requests that the rejection of claim 29 be withdrawn and that this claim be allowed.

EXHIBIT T
Page 114

**NT000243**

**Appln No. 12/044,295**
**Amdt date January 17, 2012**
**Reply to Office action of October 17, 2011**

**Concluding Remarks**

    In view of the foregoing amendments and remarks, Applicant earnestly solicits timely issuance of a Notice of Allowance allowing claims 1-4, 6-18, and 21-30.   If there are any remaining issues that can be addressed over the telephone, the Examiner is encouraged to call Applicant's attorney at the number listed below.

                        Respectfully submitted,

                        CHRISTIE, PARKER & HALE, LLP

                    By _____

                        Jason C. Martone
                        Reg. No. 59,469
                        626/795-9900

JCM/rmw

RMW PAS1145028.1-*-01/17/12 12:07 PM

-22-

NT000244

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 12/044,295 | NAVID, AMIR |
| | Examiner | Art Unit | |
| | ARUN WILLIAMS | 2858 | |

-- **The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**
All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *response filed 1/17/2012*.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-4,6-18,21-30*.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
       Paper No./Mail Date _____.
    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413),
    Paper No./Mail Date _____ .
7. ☐ Examiner's Amendment/Comment
8. ☐ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

/Arun Williams/
Primary Examiner, Art Unit 2858

U.S. Patent and Trademark Office
PTOL-37 (Rev. 03-11)          **Notice of Allowability**          Part of Paper No./Mail Date 20111010

NT000257