**ART HASAN, CA Bar No. 167323**
art.hasan@cph.com
**G. WARREN BLEEKER, CA Bar No. 210834**
warren.bleeker@cph.com
**KATHERINE L. QUIGLEY, CA Bar No. 258212**
katherine.quigley@cph.com
**CHRISTIE, PARKER & HALE, LLP**
**655 North Central Avenue, Suite 2300**
**Glendale, California 91203-1445**
**Telephone:  (626) 795-9900**
**Facsimile:   (626) 577-8800**

Attorneys for Plaintiff and Counterdefendant,
NYKO Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC., a California corporation, | Case No. CV12-03001 GAF (VBKx) |
| Plaintiff, | |
| vs. | **DECLARATION OF GARRY KITCHEN IN SUPPORT OF PLAINTIFF NYKO TECHNOLOGIES, INC.'S REBUTTAL CLAIM CONSTRUCTION BRIEF** |
| ENERGIZER HOLDINGS, INC., a Missouri corporation, EVEREADY BATTERY COMPANY, INC., a Delaware corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California limited liability company, | |
| Defendants. | **DATE:     April 29, 2013**<br>**TIME:    10:00 a.m.**<br>**CTRM:   740** |
| | **Hon. Gary Allen Fees** |
| AND RELATED COUNTERCLAIM. | |

I, Garry Kitchen, declare as follows:

1. I am President/CEO, of SGK Service, Inc. and I have been retained as an expert for Plaintiff and Counterdefendant NYKO Technologies, Inc. ("NYKO"). I make this declaration based on personal knowledge and could competently testify to the facts stated herein if called upon to do so.

-1-

1    2. Attached hereto as Exhibit B is a true and correct copy of my expert
2    report dated April 15, 2013 and entitled, "Rebuttal Expert Report of Garry
3    Kitchen Re: Claim Construction of U.S. Patent No. 8,153,848."
4        I declare under penalty of perjury under the laws of the United States of
5    America that the foregoing is true and correct and that this declaration was
6    executed on April 15, 2013 in Danville, California.
7
8    DATED:  April 15, 2013
9                                                    Garry Kitchen
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CHRISTIE, PARKER & HALE, LLP

# EXHIBIT B

**REBUTTAL EXPERT REPORT OF GARRY KITCHEN
RE: CLAIM CONSTRUCTION OF U.S. PATENT NO. 8,143,848
APRIL 15, 2013**

## I.      <u>Introduction</u>

1.      I have been retained by the law firm of Christie, Parker & Hale, LLP on behalf of Plaintiff NYKO Technologies, Inc. (the "Plaintiff").  I have been asked by counsel for the Plaintiff to opine on the meaning to one of ordinary skill in the art of certain claim terms found in U.S. Patent No. 8,143,848 ("the '848 patent").  In addition to rebutting certain opinions expressed in the Defendants Opening Claim Construction Brief, this report serves to supplement the opinions given in my initial report.

**Background, Qualifications and Compensation**

2.      My background, qualifications and information on my compensation can be found in my initial Expert Report Re: Claim Construction of U.S. Patent No. 8,143,848, filed on April 3, 2013 in this matter.

**Facts or Data Considered**

3.      I have reviewed the operative First Amended Complaint filed by the Plaintiff against Defendants, the '848 Patent, the parties' Joint Claim Construction Statement, the Defendants Opening Claim Construction Brief and various dictionary definitions of pertinent terms.

## II.      <u>Legal Understandings</u>

4.      I am not an attorney.  Information regarding legal concepts such as the legal standard for construing patent claims have been explained to me by counsel for Plaintiff.

**Indefiniteness**

EXHIBIT B
Page 4

5.     I have been informed that the claims of a patent must particularly point out and distinctly claim the subject matter which the inventor regards as the invention.  To satisfy this requirement, the claim must be read in light of the specification and must apprise those skilled in the art of the scope of the claim.  As long as the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons disagree, a Court should hold that the claim sufficiently clear to avoid invalidity on indefiniteness grounds.

III.     **Summary of Opinions**

6.     Based on my technical and educational background and my in-depth experience in the field of video game hardware, video game accessories, and video game controllers, and having read and analyzed the '848 Patent, the Defendants Opening Claim Construction Brief and other pertinent materials, it is my opinion that one of ordinary skill in art to which the invention of the '848 patent pertains would understand, in the context of the '848 Patent:

a.     The correct meaning of the term "to couple to" is "to join, link or connect structures together without the use of external wires or cables."  I disagree, and it is my opinion that one skilled in the art would disagree, with Defendants' proposed claim construction "to connect directly or indirectly to."  There is no instance in the '848 patent in which the term "to couple to" refers to an "indirect" connection between two objects.  In addition, the claim requirement of the docking bay to align the video game controller in order to couple to the charging

3

station's connector makes it clear that the coupling in question is a direct, mechanical connection, requiring "precise adjustment or correct relative position."

b. The correct meaning of the term "electrically coupled to" is "directly or indirectly connected to for the purpose of energy transfer." The intrinsic evidence supports this conclusion, including the usage in the '848 patent of the phrase "electrically coupled to" to refer to and describe objects which are directly or indirectly connected.

c. The correct meaning of the term "at least one structure" is "one or more structures." Defendants' proposed claim construction for the term "at least one structure…" to mean "at least one structure (but not necessarily all structures)…" is not supported by the intrinsic evidence and teaches against the preferred embodiments as shown in the '848 patent. In addition, I disagree and explain why the single partition 406 does not satisfy the requirements of the claim language utilizing Defendants' proposed construction.

d. The correct meaning of the term "base" is "the foundation or support upon which structures rest". I disagree, and it is my opinion that one skilled in the art would disagree, with Defendants' proposed claim construction for the term "base" as "the bottom part of the charging system that provides physical support for the system against an external adjacent surface (e.g., a table or wall)". Defendants' proposed construction is not

4

supported by the extrinsic or intrinsic evidence, and is not consistent with the commonly understood meaning of the term "base" as it relates to the field of art of the '848 patent.

e. Based on the analysis below, it is my opinion that the '848 patent describes the term "structure" in a manner in which one skilled in the art would be able to discern what is being claimed.

## IV.   Analysis of Claim Terms of U.S. Patent No. 8,143,848 and Rebuttal to Opinions Expressed in the Defendants Opening Claim Construction Brief

7.   The following section from a chart in a joint claim construction filing the parties made with the Court shows Nyko's proposed construction next to Defendants proposed construction for given claim language. Following the chart, and in addition to those opinions expressed in my initial report, I give my reasons why I believe persons skilled in the art would understand Nyko's constructions to be correct. In addition, I will rebut certain opinions offered by Defendants in their Opening Claim Construction Brief in support of their proposed claim constructions.

| Claim Language | NYKO's Proposed Claim Construction | Defendants' Proposed Claim Construction |
|---|---|---|
| "each of the DC ports configured **to couple to** and provide DC power to a power input port of a respective one of the plurality of video game controllers" | "to couple to" means *to join, link or connect structures together without the use of external wires or cables*. | "to couple to" means *to connect directly or indirectly to*. |

5

8.      In addition to my opinions expressed in my initial report, it is instructive to examine the wording of Claim 13 and the specific usage of the term "align":

> "13. A charging system for charging a plurality of video game controllers, each having a power input port, the charging system comprising:
>> a base;
>> a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of video game controllers;
>> at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and **align** respective ones of the plurality of video game controllers **to couple to** respective ones of the plurality of **male mini-USB connectors**; and… (emphasis added)
>
> …

9.      The definition of the word align in the Merriam Webster Online Dictionary[1] is as follows:

> "Definition of ALIGN
> *intransitive verb*
> 2 : to be in or come into precise adjustment or correct relative position.
> Examples of ALIGN:
> He *aligned* the two holes so he could put the screw through them.
> The two parts of the machine are not properly *aligned*."

10.      The wording of the above claim requires that the docking bays "**align** the video game controllers… **to couple to**… the male mini-USB connectors."  Therefore, incorporating the above definition into the claim language, the claim requires that the docking bays precisely adjust the position of the video game controllers in order to couple to the male mini-

---

[1] http://www.merriam-webster.com/dictionary/align

USB connectors.  As anyone skilled in the art would know, it takes precise alignment to couple (mate) two mini-USB connectors together.

11.     Based on the above, since the coupling requires alignment (a mechanical term), then the coupling must be a physical mating of the male and female ports.  If the video game controllers were being "coupled" to the mini-USB connectors indirectly (i.e. by wire or cable) or electrically coupled in some other indirect way, there would be no reason for the claim to require that the docking bays "**align** the video game controllers… **to couple to**… the male mini-USB connectors." (emphasis added)

12.     The claim requirement of the docking bay to align the video game controller in order to couple to the charging station's connector makes it clear that the coupling in question is a direct connection, requiring "precise adjustment or correct relative position."

13.     Similarly, Figure 14 shows an embodiment of the invention in which "the DC ports 408 are connected to power input ports of the video game controllers 420 to be charged", ['848 patent, 9:64-66].  In this pictured embodiment (shown below), "the DC ports 408 are male mini-USB (universal serial bus) connectors adapted to connect to a female mini-USB connector on a video game controller for a video game console, such as the Playstation3®."['848 patent, 9:36-39]

*FIG.14*



14.     The specification goes on to describe the docking of the video game controllers in Figure 14 as follows:

> "The locators 410 aid in **aligning** the video game controller 420 into the docking bay 404 such that the power input port of the video game controller 420 **slides down onto** and connects to the DC port 408." ['848 patent, 10:4-7], emphasis added.

15.     Once again, the use of the term "aligning" makes it clear that the above text is describing the mechanical mating of a male mini-USB connector (DC port 408) to the female mini-USB connector on the video game controller; in other words, a direct connection or mechanical coupling. If this connection was an indirect connection (i.e. one using wires or cables), the specification would not use the mechanical terms "aligning" and "slides down onto"; i.e. "**aligning**… such that the power input port of the video

8

game controller **slides down onto** and connects to the DC port 408." There
would be no need for alignment if the two ports were connected by a wire or
cable. Additionally, the power input port of the video game controller
would not "slide down onto" the DC port if a wire was used for the
connection.

16.    Based on the above analysis and in addition to my prior
analysis in my initial report, I disagree, and it is my opinion that one skilled
in the art would disagree, with Defendants' proposed claim construction of
the term "to couple to" to mean "*to connect directly or indirectly to*."
Therefore, it is my opinion that persons skilled in the art would conclude
that the correct meaning of the term "to couple to" in the context of the '848
patent is "*to join, link or connect structures together without the use of
external wires or cables*."

| **Claim Language** | **NYKO's Proposed Claim Construction** | **Defendants' Proposed Claim Construction** |
|---|---|---|
| At least one structure on the base for providing physical support to the plurality of video game controllers [Claim1] | Nyko contends that the only terms that need construction are:<br><br>"at least one structure" = one or more structures; | At least one structure (but not necessarily all structures) provides physical support to two or more video game controllers |
| At least one structure on the base comprises a plurality of docking bays; [Claim 1]<br><br>At least one docking structure defining a plurality of docking bays | "at least one docking structure" = one or more docking structures | At least one structure (but not necessarily all structures) comprises a plurality of docking bays;<br><br>At least one docking structure (but not |

| [Claim 13] | | necessarily all structures) defines a plurality of docking bays |
|---|---|---|
| At least one structure on the base further comprises a plurality of pairs of opposite surfaces; [Claim1] | | At least one structure (but not necessarily all structures) comprises two or more pairs of opposite surfaces; |
| At least one docking structure comprises a plurality of pairs of substantially parallel opposite surfaces [Claim 13] | | At least one structure (but not necessarily all structures) comprises two or more pairs of substantially parallel opposite surfaces |

17.    I believe persons skilled in the art would conclude that Nyko's proposed construction above for the term "at least one structure" is correct.

18.    Quoting from Defendants Opening Claim Construction Brief, Defendants' proposed claim construction of the term "at least one" requires that at least one structure on the base must satisfy all of the requirements listed below:

   "• provide physical support to the plurality of video game controllers
    • comprise (define) a plurality of docking bays; and
    • comprise a plurality of pairs of (substantially parallel) opposite surfaces."[Defendants Opening Claim Construction Brief, 20:13-15]

19.    This interpretation of the claim language removes the "more" from "one or more" (i.e. the ordinary meaning of the term "at least one). By requiring that at least one of the structures handle the above pluralities,

Defendants are forcing the claim language to require "one", rather than the correct option of "one or more."  There is no foundation for this arbitrary requirement in the claim language or the supporting documentation.

20.    Additionally, I do not believe that this interpretation of the claim language is correct as this requirement would teach against both preferred embodiments shown in the '848 patent, neither of which has a single structure that satisfies all of the requirements listed above.  In fact, the preferred embodiments are made up of "one or more", in fact, a plurality of structures that provide physical support to the plurality of video game controllers, comprising (defining) a plurality of docking bays, and comprising a plurality of pairs of (substantially parallel) opposite surfaces. No single structure in either embodiment accomplishes or contains all of the above.

21.    Defendants claim that the single partition 406, as seen in the embodiment illustrated in Figures 11 & 12, would satisfy their proposed construction of "at least one (but not necessarily all)" claim elements outlined above.  For this to be correct, single partition 406 must provide physical support to two or more video game controllers, single partition 406 must comprise (define) a plurality of docking bays, single partition 406 must comprise (define) two or more pairs of opposite surfaces, and single partition 406 must comprise (define) two or more pairs of substantially parallel opposite surfaces.

22.    To illustrate this claim, Defendants ask us to "Consider for example the embodiment illustrated in Figs. 11 & 12, but shortened and modified to have only one partition 406 (*i.e.*, only one of the structures)",

11

[Defendants Opening Claim Construction Brief, 20:26-28].  To help the court consider this suggestion, I have created modified versions of Figures 11 & 12 below, shortening the device and highlighting the (now) single partition 406.  It is my opinion as a skilled engineer and one of skill in the art that the below figures accurately illustrate what the Defendant's describe in the above excerpt from their Opening Claim Construction Brief.



FIG 11 modified



FIG.12 modified

23.    Referring to the above drawings, with a controller in each of the docking bays to either side of the partition 406, it could be argued that the

12

partition 406 is "supporting two controllers", though in fact the controllers
are supported by the locators 410 on the sides of the partition, as the
partition 406 would not in fact touch the bodies of the supported game
controllers.  However, even if the partition 406 is "supporting two
controllers", there are other conditions that partition 406 must satisfy.

24.     In addition to supporting two controllers, the single partition
406 must comprise (define) two or more pairs of opposite surfaces, and single
partition 406 must comprise (define) two or more pairs of substantially parallel
opposite surfaces.  As single partition 406 only has two relevant surfaces (i.e.
surfaces facing the docking bays), and they are not parallel opposite surfaces, it
cannot in and of itself comprise (define) two or more pairs of substantially
parallel opposite surfaces, for a total of four (4) surfaces.  However, the new
embodiment shown in the modified drawings can and does comprise (define)
two or more pairs of substantially parallel opposite surfaces, using additional
structures beyond the single partition 406.  To do so, the single partition 406
needs the side wall structures of the base that create the second half of the
parallel opposite surfaces.

25.     In addition, according to the claim language in Claim 1, a DC
port must be on the base between the pairs of surfaces.  As the single
partition 406 only has two relevant surfaces and there is no DC port between
them this example of a single structure again fails to meet the claim
language.

26.     Also, according to the claim language in Claim 13, the docking
structure must comprise a plurality of pairs of substantially parallel opposite
planar surfaces, each pair of surfaces defining a respective docking bay of

the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces.  As the single partition 406 only has two relevant surfaces (i.e. surfaces facing the docking bays) that are not parallel opposite surfaces (i.e. they are not facing each other), the surfaces of the single partition 406 do not define a respective docking bay with the docking bay open on opposite sides between the respective pair of surfaces.

27.    Therefore, Defendants are incorrect and single partition 406 in a foreshortened version of the preferred embodiment does not satisfy their proposed Claim Construction.

28.    If fact, as no preferred embodiment from the specification exercises the claims of the '848 patent as defendants construe them, I disagree with Defendant's claim constructions as shown above, as I believe that no inventor would include only embodiments that fail to teach the invention. Consequently, based on the above analysis, it is my opinion that persons skilled in the art would conclude that the correct meaning of the term "at least one structure" is "one or more structures."

| **Claim Language** | **NYKO's Proposed Claim Construction** | **Defendants' Proposed Claim Construction** |
|---|---|---|
| "base" | "base" means *the foundation or support upon which the controllers rest. The foundation/support is the entire body of the charger for supporting the video game controllers in the* | the bottom part of the charging system that provides physical support for the system against an external adjacent surface (e.g., a table or wall) |

14

| | *docking bays*. | |
|---|---|---|

29.     Defendants propose a claim construction for the term "base" as "*the bottom part of the charging system that provides physical support for the system against an external adjacent surface (e.g., a table or wall)*."  I disagree with Defendants' assertion that this construction "reflects what a person of skill in the art would have understood the term to read in view of the patent specification."[Defendants Opening Claim Construction Brief, 8:3-5].  As Defendants have failed to solicit the opinion of a person of skill in the art, I fail to understand what basis Defendants have for knowing what a person of skill in the art would have understood.

**Commonly Understood Meaning of the Word Base within the Field of Art of the '848 Patent**

**Erickson - U.S. Patent Application Publication No. 2009/0072784 A1**

30.     U.S. Patent Application Publication No. 2009/0072784 A1, entitled "Inductive Charger Battery Replacement System, Device & Method" by Craig Erickson, heretofore referred to as "Erickson", discloses a device and system for providing power to a portable electronic device.  Defendants contend that Erickson is valid prior art in reference to the '848 patent.  As I have not analyzed Erickson from the standpoint of prior art to the '848 patent, I have no opinion regarding its validity as prior art.  Given the Defendants' contention and for the purposes of this analysis, I will assume that Erickson is within the field of the '848 patent.  However, I reserve the right to change that assumption once I have analyzed Erickson from the standpoint of prior art to the '848 patent.

EXHIBIT B
Page 17

31.    Figure 1A from the Erickson patent application is shown below:



32.    Quoting from the Erickson Abstract, "A **base** unit is configured to receive and charge one or more battery units, either alone or with the battery units secured to portable electronic devices"[Erickson, abstract], emphasis added.

33.    Referring to the above illustration, "FIGS. 1A and 1B depict a system 10 according to the invention, comprising portable devices 12a, 12b positioned on a **base** unit 14"[Erickson patent application, 3:7-9], emphasis added.

34.    In addition, Figure 5 from Erickson refers to the base unit as the charge base as shown below:

EXHIBIT B
Page 18

**Fig. 5**



35.     Finally, note that Figure 1A above clearly shows the charger base functioning as the "foundation or support upon which the controllers rest".  In addition, as can be clearly seen, "the foundation/support is the entire body of the charger for supporting the video game controller(s), completely consistent with Nyko's proposed claim construction for the term "base".

**Cole - U.S. Patent No. 7,942,747**

36.     U.S. Patent No. 7,942,747, entitled "Video Game Controller Rack" by Randall C. Cole, heretofore referred to as "Cole", discloses a

17

storage rack for game controllers and a method of using it.  Defendants contend that Cole is valid prior art in reference to the '848 patent.  As I have not analyzed Cole from the standpoint of prior art to the '848 patent, I have no opinion regarding its validity as prior art.  Given the Defendants' contention and for the purposes of this analysis, I will assume that Cole is within the field of the '848 patent.  However, I reserve the right to change that assumption once I have analyzed Cole from the standpoint of prior art to the '848 patent.

37.    For reference, Figures 1 and 4 from the Cole patent are shown below:

EXHIBIT B
Page 20



FIG.I

FIG.4

38.   Quoting from the abstract of the Cole patent, "In another preferred embodiment of the present invention, the game controller rack, and particularly the vertical member, may be provided with a jack such as a USB port for charging the game controllers while stored on the rack."

EXHIBIT B
Page 21

39.     Continuing to quote from the Cole patent in reference to Figure 1, "As illustrated in FIGS. 1 and 2, a plurality of cantilever angle members or posts 11a in FIGS. 1 and 11 in FIG. 2 are fixed in pairs to vertical member or video game controller **base** 15a"[Cole patent, 3:38-41], emphasis added.

40.     Continuing to quote from the Cole patent in reference to Figure 4, "As described with respect to the previous embodiment, the cantilever angle members or posts 11b are mounted to vertical member or **base** 15b."[Cole patent, 4:39-41], emphasis added.

41.     Finally, note that Figure 4 above clearly shows the base 15b functioning as the "foundation or support upon which the controllers rest", completely consistent with Nyko's proposed claim construction for the term "base".

**Continuing Use of the Term Base in the Field of the Art of the '848 Patent**

42.     The term "base" continues to be commonly used in the field of video game controller chargers to mean the support/ foundation on which the controllers rest, often making up "the entire charging station".

43.     For example, the commercially available Nyko charging station, released in 2007 and based on one embodiment disclosed in the '848 patent, was shipped under the name "Charge Base" in Nyko's consumer packaging

EXHIBIT B
Page 22

and marketing.  See the image below, showing a marketing webpage from nyko.com in August of 2007[2]:



44.    Nyko continues to use the word "base" in its product line of video game controller charging stations; e.g. Charge Base 2, Charge Base S, Charge Base Pro, etc.

_____

[2] http://web.archive.org/web/20070821102347/http://www.nyko.com/nyko/products/?i=90

45.     In fact, the marketing people who work for Defendants Energizer and PDP also understand the commonly understood meaning of the term "base" when used in the context of video game controller charging stations.  The image below is taken from Energizer's consumer marketing site for the Power & Play® Charging System for Playstation 3[3]:



46.     Note that the second line of the marketing text for the product reads "The charge **base** offers a sleek and unique design that is impressive and functional"(emphasis added).

---

[3] http://www.energizer.com/portable–power/gaming/charging/Pages/energizer–power–play–for–ps3–charging–system.aspx

EXHIBIT B
Page 24

47.     Similarly, the image below is taken from the PDP consumer marketing site for the Power & Play® Charging System for Playstation 3[4]:



48.     Once again, the marketing text for the product reads "The charge **base** offers a sleek and unique design that is impressive and functional"(emphasis added).

49.     Clearly the marketing text is not implying that "the bottom part of the charging system that provides physical support for the system against an external adjacent surface" offers a sleek and unique design that is impressive and functional.  It is my opinion, and would be the opinion of one skilled in the art, that this text (in both cases) is referring to the entire

---

[4] http://www.pdp.com/p-719-energizer-power-play-for-ps3-charging-system.aspx

Power & Play Charging System as shown below (minus the coupled controllers):



**INTRINSIC EVIDENCE**

50.     Based on the Intrinsic Evidence found in the '848 Patent, I believe persons skilled in the art would understand Nyko's proposed construction for the term "base" to be correct.  Defendants' Proposed Claim Construction for the term "base" attempts to limit the term "base" to mean only the bottom part of the charging system that provides physical support for the system against an external adjacent surface, such as a table or a wall.

I find no basis in the '848 patent specification for this restrictive limitation. In fact, I find numerous examples in the '848 patent that teach against the Defendants' Proposed Construction.

51.     Defendants Opening Claim Construction Brief states that "the specification consistently and exclusively uses the term "base" to describe only the bottom part of the charging system; *i.e.*, the part that provides physical support for the system against an external adjacent surface"[Defendants Opening Claim Construction Brief, 9:11-13].  This is incorrect, as shown below through the citing of numerous examples from the patent in which the patent clearly references surfaces on the base that are not on, or even near, "the bottom part of the charging system."

52.     The '848 patent teaches that the surface of the base includes the two vertical surfaces that make up the structure of the two outermost docking bays 404.  The text excerpt below refers to Figure 11, which I have also included, modified to show in three dimensions the two surfaces referred to in the text:

> "There are locators 410 on each of the two surfaces of the partitions 406, **as well as the two surfaces of the base 402**, which face the DC ports 408." ['848 patent, 9:47-49], emphasis added.



FIG.11

53.     In addition, the '848 patent describes a support structure that supplies "physical support to one of the game controllers" as being comprised of:

> "Each pair of opposite surfaces, **a portion of the base 402**, a corresponding docking bay 404, and/or the locators 410 may comprise a structure for providing physical support to one of the video game controllers 420 during charging."['848 patent, 9:51-55], (emphasis added).

54.     Figure 11 shows the four support structures that supply "physical support to (one of) the game controllers", made up of two vertical parallel surfaces, the locators 410 and the horizontal surfaces of the base, on which the DC ports 408 sit.  Figure 14 further clarifies the location of the support structures, showing four game controllers docked in the structures,

EXHIBIT B
Page 28

and coupled to the DC ports 408.  Figure 11 and Figure 14 are shown below, to illustrate the location of the four support structures:



55.     From the above text and imagery, the "portion of the base 402" that provides physical support to the video game controller must be the bottom surface of the docking bay 404 (in other words, the top surface of the base).  This interpretation is consistent with the claim language, which states that "at least one DC port (is) on the base."  To further illustrate the referenced surfaces of the base, I have additionally modified Figure 11 (shown below), adding the surfaces that make up the "portion of the base 402" from the above text, which are also the surfaces of the base that the DC ports 408 are on:



FIG.11

56.    Figure 15 (shown below) indicates that the LED indicators 452 are part of the base.  As the LED indicators 452 are shown on Figure 11 as being located on the top surface of the base, I have again modified Figure 11 to highlight this additional surface, creating a composite of the surfaces of the base referenced by the patent claims and specification:

EXHIBIT B
Page 30



FIG.11

57.    The above figure, highlighting all of the surfaces of the base referenced by the patent claims and specification, clearly shows that the term base as used in the '848 patent cannot be construed to mean only "the bottom part of the charging system that provides physical support for the system against an external adjacent surface, such as a table or a wall."

58.    Given the above analysis outlining the overwhelming extrinsic and intrinsic evidence to the contrary, I disagree, and it is my opinion that one skilled in the art would disagree, with Defendants' proposed claim construction for the term "base" as "the bottom part of the charging system that provides physical support for the system against an external adjacent surface (e.g., a table or wall)".  It is my opinion that persons skilled in the art

29

would conclude that the correct meaning for the term base is "the foundation or support upon which structures rest".

| Claim Language | NYKO's Proposed Claim Construction | Defendants' Proposed Claim Construction |
|---|---|---|
| "structure" | NYKO contends that this claim language is entitled to its plain and ordinary meaning within the context of the specification and claim language. | The term is indefinite. |

59.    Defendants' claim that the term "structure", as used in the claims of the '848 patent, is indefinite.  I have been informed that a claim is considered indefinite if it fails to particularly point out and distinctly claim the subject matter which the inventor regards as his or her invention.  To determine if the term "structure" is indefinite, I have studied the '848 patent to determine if there is enough specificity in the description of the term "structure" to enable one skilled in the art to be able to discern what is being claimed.

60.    The term "structure" appears in independent claims 1 and 13 as follows:

    **1.** A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising:
        a base;
        at least one **structure** on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and

a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,

wherein the at least one **structure** on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and

wherein the at least one **structure** on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking hays each of the DC ports being on the base between a respective one of the pairs of surfaces.

**13.** A charging system for charging a plurality of video game controllers, each having a power input port, the charging system comprising:

a base;

a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of video game controllers;

at least one docking **structure** defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors; and

a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors,

wherein the at least one docking **structure** comprises a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces.

61.    In reviewing the '848 patent, it is clear to me (reading the patent as one skilled in the art) that the term "structure" refers to the physical fabrication that supports a video game controller, made up of a pair of

31

opposite surfaces, the portion of the base 402 that lies between the parallel surfaces, the docking bay 404, and/or locators 410.  This conclusion is supported by the following text excerpts from the '848 patent:

> "Each pair of opposite surfaces, a portion of the base 402, a corresponding docking bay 404, and/or the locators 410 **may comprise a structure** for providing physical support to one of the video game controllers 420 during charging."] ['848 patent, 9:51-55], emphasis added.

> "In one embodiment, the at least one **structure** on the base includes opposite surfaces configured to align one of the at least one video game controller such that the power input port of the video game controller couples to one of the at least one DC port." ['848 patent, 2:19-23], emphasis added.

62.     To further illustrate my understanding of the term "structure", I have included Figures 12 and 13 from the '848 patent specification below, modified to highlight in blue the four structures visible in the drawing, taking into account that a structure is made up of a pair of opposite surfaces, the portion of the base 402 that lies between the parallel surfaces, the docking bay 404, and/or locators 410.



FIG.12

FIG.13

63.     As shown above, the structures "provide physical support to the plurality of video game controllers while the plurality of video game controllers are being charged", as required in Claim 1.

64.     One again referring to the above figures, the structures comprise a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction (from above), as required in Claim 1.

65.     Once again referring to the above figures, the structures comprise a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays each of

33

the DC ports 408 being on the base between a respective one of the pairs of surfaces, as required in Claim 1.

66.     Once again referring to the above figures, the structures define a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors 408, as required in Claim 13.

67.     Once again referring to the above figures, the structures are comprised of a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pair of surfaces, as required in Claim 13.

68.     Based on the above analysis, it is my opinion that the '848 patent describes the term "structure" in a manner in which one skilled in the art would be able to discern what is being claimed.

69.     I understand that that discovery in this matter is ongoing.  Also, I understand that certain documents, testimony and other information produced in this matter has been designated as confidential by Defendants, and as of this date, I have not yet been able, under the terms of the Protective Order entered in this case, to review information designated by Defendants as confidential.  I reserve the right to modify or supplement the opinions expressed herein.

Dated: April 15th, 2013

Garry Kitchen
Danville, California

35