SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations

DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
MATTHEW M. MUELLER. Cal. Bar No. 268486
mmueller@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California  92130-2006
Telephone:   858.720.8900
Facsimile:    858.509.3691

STEVEN M. HANLE, Cal. Bar No. 168876
shanle@sheppardmullin.com
650 Town Center Drive, 4th Fl.
Costa Mesa, CA 92626
Telephone:   714.513.5100
Facsimile:    714.513.5130

Attorneys for Defendants,
Performance Designed Products LLC,
Eveready Battery Co, Inc., and Energizer
Holdings, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California Corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>ENERGIZER HOLDINGS, INC. a Missouri Corporation, EVEREADY BATTERY CO., INC., a Delaware Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company,<br><br>              Defendants. | Case No. CV12-03001-GAF-VBK<br><br>DEFENDANTS' OBJECTIONS TO EXPERT DECLARATIONS OF GARRY KITCHEN (DKT. NOS. 99 AND 110)<br><br>Judge Gary Allen Feess |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................ - 1 -

II.  PROCEDURAL BACKGROUND ......................................................... - 2 -

III.  STANDARD OF LAW ...................................................................... - 4 -

IV.  ARGUMENT ................................................................................... - 6 -

    A.  Mr. Kitchen's Testimony Regarding the Term "Base" is Legally Incorrect and Unsupported by Any Facts ........................................ - 6 -

    B.  Kitchen's Testimony Regarding the Term "Couple To" Is Contrary to the Plain Meaning and Contrary to the Law ................. - 12 -

    C.  Kitchen's Opinions Regarding the "At Least One Structure …" Terms Are Also Unreliable ............................................................ - 14 -

    D.  Kitchen's Opinion Regarding the Term "Structure" Is Not Based on Technical Knowledge and Does Not Assist the Trier of Fact .... - 15 -

V.  CONCLUSION ................................................................................ - 16 -

DEFENDANTS' OBJECTIONS TO KITCHEN DECLARATION

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Bicon, Inc. v. Straumann Co.*
   441 F.3d 945 (Fed. Cir. 2006) ........................................................................ 9

*Club Car, Inc. v. Club Car (Quebec) Import, Inc.*
   362 F.3d 775 (11th Cir. 2004) ...................................................................... 5

*Daubert v. Merrell Dow Pharms., Inc. ("Daubert II")*
   43 F.3d 1311 (9th Cir. 1995) ................................................................... 6, 10

*DSU Med. Corp. v. JMS Co.*
   296 F.Supp.2d 1140 (N.D. Cal. 2003) ...................................................... 1, 5

*Elektra Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*
   214 F.3d 1302 (Fed. Cir. 2000) ..................................................................... 9

*General Elec. Co. v. Joiner*
   522 U.S. 136 (1997) ...................................................................................... 6

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*
   381 F.3d 1111 (Fed. Cir. 2004) ..................................................................... 9

*Markman v. Westview Instruments, Inc.*
   517 U.S. 370 (1996) .................................................................................. 1, 4

*Merck & Co. v. Teva Pharms. USA, Inc.*
   347 F.3d 1367 (Fed. Cir. 2003) ..................................................................... 9

*NTP, Inc. v. Research in Motion, Ltd.*
   418 F.3d 1282 (Fed. Cir. 2005) ................................................................... 14

*Phillips v. AWH Corp.*
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ......................................... 4, 5, 7, 9, 10

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*
   242 F.3d 1337 Fed. Cir. 2001 ..................................................................... 12

*Sitrick v. Dreamworks, LLC*
   516 F.3d 993 (Fed. Cir. 2008) ............................................................... 5, 10

*Thorner v. Sony Computer Entm't Am. LLC*
   669 F.3d 1362 (Fed. Cir. 2012) ........................................................5, 12

*United States v. Various Slot Machines*
   658 F.2d 697 (9th Cir. 1981) ...........................................................5, 10

*United States v. Williams*
   506 F.3d 151 (2nd Cir. 2007) .................................................................6

*Vitronics Corp. v. Conceptronic, Inc.*
   90 F.3d 1576 (Fed. Cir. 1996) ...........................................1, 5, 8, 13

<u>Other Authorities</u>

Fed. R. Civ. Proc. 26.................................................................................4

Fed. R Civ. Proc. 26(a)(2)(B) ...............................................................5, 10

Fed. R. Civ. Proc. 26(a)(2)(D)(ii) .........................................................4, 10

Fed. R. Evid. 702 .............................................................................1, 5, 10

# I.     <u>INTRODUCTION</u>

Plaintiff Nyko has now filed two lengthy expert reports in support of its claim construction positions.  (Dkt. Nos. 99 and 110.)  The first should be excluded because it does nothing more than parrot Nyko's proposed claim constructions and arguments – claim constructions that Nyko proposed months before the expert was contacted to work on the case.  The report offers no "scientific, technical, or other specialized knowledge [that] will assist the trier of fact," and thus fails the fundamental requirement for expert testimony under Rule 702 of the Federal Rules of Evidence.  Indeed, the first report does little more than selectively cite the intrinsic evidence.  But where the intrinsic evidence is clear, as here, reliance on extrinsic expert testimony is improper.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996) ("Only if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should the trial court have resorted to extrinsic evidence, such as expert testimony, in order to construe" the claims).

The second "rebuttal" expert report suffers from the same flaws, but should also be excluded for additional reasons.  First, the opinions in the second report, to the extent they differ from those in the first report, are not true rebuttal and were not timely disclosed.  As a result, Defendants have not had a full and fair opportunity to address them.  Further, certain of the opinions should also be excluded because they are not "based upon sufficient facts or data" or are not based on legally sound methodology.  Fed. R. Evid. 702; *DSU Med. Corp. v. JMS Co.*, 296 F.Supp.2d 1140, 1148 (N.D. Cal. 2003) ("reliable methodology requires that the legal grounds used by an expert … be legally acceptable"); *see Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (claim construction is a question of law for the Court).

In sum, the expert reports are nothing more than an attempt by Nyko to pass off attorney argument in the form of expert testimony, and circumvent the Local

Case No. CV12-03001
DEFENDANTS' OBJECTIONS TO KITCHEN DECLARATION

1   Rules' page limit for briefs.  Accordingly, the Court should exclude the expert

2   reports or assign them no weight, as more fully addressed below.

3   **II.      PROCEDURAL BACKGROUND**

4            Pursuant to the Court's scheduling order, the parties filed a joint claim

5   construction statement on December 17, 2012, setting forth each of their respective

6   constructions of six disputed claim terms:  *base, to couple to, electrically coupled, at*

7   *least one structure …, structure/docking structure,* and *supported by the base*.[1]

8   (Dkt. No. 86.)  Leading up to the claim construction hearing scheduled by the Court

9   to occur on April 29, 2013, the parties agreed to file opening and responsive briefs

10  on April 3 and April 15, 2013, respectively, and to disclose expert testimony they

11  would offer in support of their claim constructions by March 29, 2013.  (Ex. 1.)[2]  On

12  March 29, 2013, Nyko emailed a one-page summary of opinions that its expert

13  would offer in support of claim construction.  (Ex. 2.)  On the same day, Defendants

14  advised Nyko that they would <u>not</u> be relying on expert opinions in support of claim

15  construction, but reserved the right to rely on expert opinion to rebut opinions of

16  Nyko's expert.

17           On April 3, 2013, the parties filed their opening claim construction briefs and

18  supporting documents, including the declaration and report of Garry Kitchen.  (Dkt.

19  No. 99, "First Kitchen Report.")   Mr. Kitchen is a video game *software* developer

20  with a second career as an expert witness in video game intellectual property

21  litigation.  (*Id.* ¶¶ 3-11 and attached CV; Ex. 3 at pp. 12-15.)  He has never

22  developed accessories for the modern video game consoles relevant to this case,

23  such as PlayStation and Xbox.  (*Id.* at pp. 14-15.)  The First Kitchen Report adopts

24  Nyko's claim constructions from the December 2012 joint claim construction

---

25  [1]   There are several claim terms that include the language "at least one structure
26  on the base …."  Defendants' proposed construction of each of those terms is
     based on the same arguments and evidence (*e.g.*, the prosecution history).

27  [2]   All exhibits cited herein are attached to the Declaration of Graham Buccigross
28        in Support of Objections, filed herewith.

statement *verbatim*.  (*Id.* at pp. 18-19.)  Mr. Kitchen was first contacted by Nyko on March 20, 2013 and did not participate in formulating the constructions.  (*Id.* at p. 17.)  Other than simply saying that he agrees with Nyko's proposed constructions, the First Kitchen Report is nothing more than a selective recitation of the specification and attorney arguments that purported limitations from the specification should be read into the claim terms (*e.g.*, "to couple to" as excluding a wired connection).  Significantly, Mr. Kitchen did not even review the prosecution history before submitting the First Kitchen Report  (Ex. 3 at p. 22), which seriously undermines his opinions with respect to the "at least one structure …" limitations.

After Nyko filed the First Kitchen Report, Defendants reconfirmed that they would not be relying on expert testimony in connection with claim construction.  (Ex. 4.)  Defendants then took Mr. Kitchen's deposition, during which he offered a revised construction of "base."  At his deposition, Mr. Kitchen contended that "base" has a purported special meaning in the "video game controller charger industry."  (Ex. 3 at p. 138.)  Yet when asked for any fact or datum to support this naked opinion, he could not provide a single one.  (*Id.* at pp. 138-153.)  He also made clear that his constructions of other terms, *to couple to, electrically coupled, at least one structure …*, were based primarily on his arguments regarding the intrinsic evidence, and not based on any asserted specialized or technical knowledge.  (*Id.* at, *e.g.*, pp. 70-71, 208-210.)

Despite the fact that Defendants did not rely on expert opinions, Nyko submitted a second "Rebuttal" Kitchen Report when it filed its responsive claim construction brief.  (Dkt. No. 110.)  First and foremost, the Rebuttal Kitchen Report should be stricken in its entirety because it is not true rebuttal, *i.e.*, Defendants did not submit expert opinions, so it cannot be intended solely to contradict or rebut

Case No. CV12-03001
DEFENDANTS' OBJECTIONS TO KITCHEN DECLARATION

1  expert evidence on the same subject matter.  *See* Fed. R. Civ. Proc. 26(a)(2)(D)(ii).[3]

2  The rebuttal report is also untimely.  The claim construction positions that the

3  Rebuttal Kitchen Report purports to rebut are positions that have been known to

4  Nyko since December 2012, by virtue of the joint claim construction chart.  (Dkt.

5  No. 86.)  Kitchen's opinions on those terms should have been disclosed in his initial

6  report.  Second, the Rebuttal Kitchen Report introduces purported evidence of

7  industry use of the term *base*, that he failed to disclose at his deposition.  Third, like

8  the First Kitchen Report, it offers no scientific, technical, or other specialized

9  knowledge, and simply argues the facts.  Fourth, it <u>again</u> ignores the substantive

10  amendments to the claims during prosecution (*i.e.*, the intrinsic record) and relies on

11  evidence that is <u>legally irrelevant</u>.

12  **III.   <u>STANDARD OF LAW</u>**

13         Claim construction is a question of law for the Court.  *See Markman v.*

14  *Westview Instruments, Inc.*, 517 U.S. 370 (1996).  When construing the language of

15  a claim the Court first considers the actual language as it is used in the claim, the

16  patent's specification, and the prosecution file history.  This evidence is publically

17  available and found within the patent documents.  As a result it is referred to as the

18  "intrinsic evidence."

19          The words of a claim are generally given their ordinary and customary

20  meaning as understood by a person of ordinary skill in the art when read in the con-

21  text of the specification and prosecution history.  *See Phillips v. AWH Corp.*, 415

22  F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). There are only two exceptions to this

23  general rule:  1) when a patentee sets out a definition and acts as his own

24  lexicographer, or 2) when the patentee disavows the full scope of a claim term either

25

26

27  _____

    [3]      Surprisingly, Kitchen was asked by Nyko's counsel to prepare rebuttal

    opinions, despite the clear violation of Rule 26.  (Ex. 5.)

28

in the specification or during prosecution.  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics*, 90 F.3d at 1580).

"Extrinsic evidence is that evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles."  *Vitronics*, 90 F.3d at 1584.  While a district court may consult extrinsic evidence as part of the claim construction analysis, such evidence is considered less reliable than the intrinsic evidence.  *See, e.g., Phillips*, 415 F.3d at 1317-19 ("[T]he court should keep in mind the flaws inherent in each type of [extrinsic] evidence and assess that evidence accordingly.").  Indeed, where the plain meaning and intrinsic evidence are clear, extrinsic evidence should not be considered at all.  *Vitronics*, 90 F.3d at 1583-84.

Expert testimony must rely on sufficient facts or data and reliable principles and methods.  Fed. R. Evid. 702.  Conclusory expert assertions, unsupported by sufficient facts or data, should be disregarded.  *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008); *United States v. Various Slot Machines*, 658 F.2d 697, 700 (9th Cir. 1981) ("an expert must back up his opinion with specific facts").  Indeed, Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert disclose "the basis and reasons" for his opinions and "the facts or data considered by the witness in forming them."  "Reliable methodology requires that the legal grounds used by an expert … be legally acceptable."  *DSU Med. Corp. v. JMS Co.*, 296 F.Supp.2d 1140, 1148 (N.D. Cal. 2003) (excluding testimony based on unprecedented legal theory); *see also Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 780 (11th Cir. 2004) (excluding testimony based on incorrect legal standard).

Here, Kitchen's testimony is extrinsic evidence and suffers from several flaws.  While Kitchen purports to provide testimony on a question of law, his analysis is frequently contrary to the law on claim construction and therefore unreliable.  Similarly, much of Kitchen's testimony lacks any factual support.

1   Indeed, when Kitchen was examined on his testimony, he frequently fell back on

2   nothing more than his purported experience as an expert.  But an expert's *ipse dixit*

3   assurances, that his methodology and supporting data are reliable, are not sufficient.

4   *See Daubert v. Merrell Dow Pharms., Inc. ("Daubert II")*, 43 F.3d 1311, 1316 (9th

5   Cir. 1995); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (neither *Daubert*

6   nor the Federal Rules of Evidence "requires a district court to admit opinion

7   evidence which is connected to existing data only by the *ipse dixit* of the expert.").

8       As the party proffering Kitchen's testimony, Nyko must show that the

9   testimony is sufficiently reliable and supported by more than the mere *ipse dixit*

10  statements of Kitchen himself.  *See United States v. Williams,* 506 F.3d 151, 160

11  (2nd Cir. 2007).  Nyko cannot meet this burden.  Accordingly, the Court should

12  strike and/or disregard Kitchen's testimony.

13  **IV.   ARGUMENT**

14  **A.   Mr. Kitchen's Testimony Regarding the Term "Base" is Legally**

15        **Incorrect and Unsupported by Any Facts**

16      Mr. Kitchen's testimony regarding the term "base" should be disregarded

17  because it is inconsistent, unhelpful, contrary to the law and facts, and contrary to

18  intrinsic record.  Mr. Kitchen offered two different constructions for the term

19  "base."  In the First Kitchen Report, he merely parrots Nyko's initial, vague

20  construction:  "the foundation or support upon which structures rest."  (Dkt. No. 99

21  p. 9.)  In support of this construction, the First Kitchen Report simply provides non-

22  expert arguments based on a selective reading of the written description.  (*Id.* ¶¶ 48-

23  54.)  Indeed, Mr. Kitchen simply ignores the intrinsic evidence which shows that the

24  base (402 and 524) is the bottom part of the charging system (400 and 510).  This is

25  clearly shown in the figures of the '848 patent.

26

27

28



When asked to explain this at his deposition, Mr. Kitchen refused to acknowledge what the figures clearly show and the specification states.  (Ex. 3 at pp. 155-158.)  An expert cannot just ignore evidence that is contrary to his opinion.

Mr. Kitchen also admittedly disregarded the plain and ordinary meaning of base.  He testified that:  "the plain and ordinary meaning of the word base is irrelevant."  (*Id.* at p. 121.)   However, it is black letter law that "the words of a claim are generally given their ordinary and customary meaning."  *Phillips*, 415 F.3d at 1313.

Mr. Kitchen acknowledged that the ordinary meaning of the term "base" is the bottom part of an object that supports the object.  For example, he agreed that the base of the microphone placed before him at the deposition was the bottom part that rests on the table, as demonstrated in the screenshot below.  (*Id.* at p. 128.)



Kitchen also acknowledged that there is no specialized engineering definition for the term "base." (*Id.* at 122:14-16.) His first opinion regarding base is therefore both devoid of relevant factual support and ignores fundamental law.

Moreover, in an about-face, Kitchen acknowledged at his deposition that Nyko's first proposed construction of "base" is flawed because the phrase "upon which *structures* rest" is ambiguous. In particular*, structures* may refer to the claim term "structures," or to other structures such as controllers. (*Id.* at pp. 130-132.) Kitchen then offered the new opinion that the "base" is the entire charging system upon which the *controllers* rest. (*Id.* at pp. 132-134.)

> Q. Is there another part of the video game controller charging system that is not the base?
> A.    No.

(*Id.* at p. 137:23-25.)

There are two fundamental problems with Kitchen's revised construction. First, it is plainly inconsistent with the clear intrinsic evidence, including the written description and the claims themselves. *See Vitronics*, 90 F.3d at 1583-84 (expert testimony inconsistent with the clear intrinsic evidence is irrelevant). Kitchen's

testimony also directly contradicts the well-established legal principle that claims should be construed so as to give effect to all limitations. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006); *Elektra Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

Claim 1 reads:

> A video game controller charging system … comprising:
>     a base;
>     at least one structure on the base ..
>     a plurality of DC ports on the base …
>     wherein the at least one structure on the base comprises …
>     wherein the at least one structure on the base further
>     comprises…

A *base* clearly refers to a component of the entire charging system. If *base* referred to the entire charging system, then there would be no need to claim it as a separate component, nor to claim a "structure on the base" or "DC ports on the base." Kitchen would have the Court render the term "charging system" duplicative of the term "base." But "all claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004); *see also Bicon,* 441 F.3d at 951.

Kitchen's proposed construction is also contrary to the specification of the '848 patent, which distinguishes the charging system from the base. (*See* Figs. 11-13, 15, Abstract, Col. 9:24-25 ("The video game controller charging system **400** includes a base **402** …").) The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips,* 415 F.3d at 1315 (citations omitted). "A fundamental rule of claim construction is that terms ... are construed with the meaning with which they are presented in the patent document. Thus claims must be construed so as to be consistent with the specification...." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1370 (Fed. Cir. 2003) (citations omitted).

1  Because the specification distinguishes between base and charging system, the two

2  terms may not be construed identically.  Kitchen's analysis finds no basis in the law

3  and therefore should be stricken or disregarded.

4         The second fundamental problem with Kitchen's opinion that the *base* is the

5  entire charging system is that it is utterly devoid of factual support.  Kitchen based

6  his opinion on the naked assertion that the "industry" understands that the *base*, in

7  the context of video game controller charger systems, is the entire charging system.

8  (Ex. 3 at p. 137-138.)  Yet, when asked repeatedly, he could not cite a single

9  example, up to the date of invention (or even two years later), where the "industry"

10  referred to the entire charging system as a *base*.[4]  (*Id.* at pp. 137-153.)  When

11  pressed, he admitted that he had not researched the issue (*Id.* at pp. 141-142) and

12  even became indignant that he was being asked to support his naked opinion:  "How

13  in God's name would I know that?"  (*Id.* at pp. 146-147.)  This is classic *ipse dixit*

14  testimony, and should be excluded.  *See Daubert II*, 43 F.3d at 1316.

15         This complete lack of factual support is fatal to Kitchen's opinion that a *base*

16  has a special meaning in the industry as the entire charging system, which is the sole

17  basis for his opinion in contradicting the plain meaning and the intrinsic evidence.

18  *See* Fed. R. Evid. 702; Fed. R. Civ. Proc. 26(a)(2)(B); *Sitrick*, 516 F.3d at 1001; *U.S.*

19  *v. Various Slot Machines*, 658 F.2d at 700.

20         In the Rebuttal Kitchen Report, he attempts to cure his lack of factual support

21  by citing two patents.  First, the Rebuttal Kitchen Report should be excluded in its

22  entirety because it is not true rebuttal.  *See* Fed. R. Civ. Proc. 26(a)(2)(D)(ii).

23  Second, again, Kitchen offers no scientific or technical knowledge, but merely

24  argues the contents of the patents, albeit incorrectly.  In fact, both of the patents

25

26

27

28

---

[4]    Claim terms are given "the meaning that the term would have to a person of ordinary skill in the art in question **at the time of the invention**." *Phillips*, 415 F.3d at 1312-13 (emphasis added).

show the base as a component of the charging system that supports the charging system against an adjacent surface, and not the whole charging system.





In Cole, the entire "game controller rack 10" includes a "base 15" as well as "cantilever posts 11" that are attached to the base.  (Dkt. No. 109-1 p. 5 of 117, p. 13 of 117, cols. 3 and 4.)  The base is only the part of the game controller rack that provides support against the adjacent wall (or table, as Cole discloses that the rack may be positioned horizontally (*Id.* Col. 5:59-63)).  Further, as shown in the figure below, the controllers rest not on the base, as required by Nyko's amended construction, but on the cantilever posts 11.  (*Id.* at p. 5 of 117.)  Thus, Cole offers no factual support for Kitchen's "special meaning" opinion, and indeed supports Defendants' construction.



1    Similarly, Erickson, to the extent it is relevant to claim construction at all,

2  also refers to the "base unit 14" as a component of the entire charging "system 10,"

3  and shows the base unit as the bottom part that supports the system against an

4  adjacent surface.  (Dkt. No. 109-1 pp. 17 and 26 of 117.)   Moreover, the Erickson

5  application was first published in 2009 (*Id.*at p. 16 of 117), well after the date of

6  invention of the '848 patent, and does not support a special meaning of the word

7  base <u>at the time of invention</u>.  With respect to the other evidence cited by Kitchen in

8  paragraphs 42 through 49 of his rebuttal report, this evidence is legally irrelevant as

9  it does not establish a special meaning of the word base at all, but particularly up

10 until <u>the time of invention</u>, which Nyko claims as October 2007.

11   Accordingly, the First Kitchen Report and Rebuttal Kitchen Report, if not

12 stricken or disregarded in their entirety, should be stricken or disregarded as to the

13 term "base" because the opinions are contrary to law and unsupported by fact.

14 **B.**   <u>**Kitchen's Testimony Regarding the Term "Couple To" Is Contrary to**</u>
<u>**the Plain Meaning and Contrary to the Law**</u>

15

16   Kitchen's opinions on the meaning of *to couple to* are also contrary to the

17 plain meaning of the term and violate the legal mandate against importing

18 limitations into the claim, "one of the cardinal sins of patent law."  *SciMed Life Sys.,*

19 *Inc. v. Advanced Cardiovascular Sys., Inc.* 242 F.3d 1337, 1340 Fed. Cir. 2001).

20 Kitchen acknowledges that the plain and ordinary meaning of *couple* is not limited

21 to a direct or indirect connection.  (Ex. 3 at p. 34, 41-43.)  He acknowledges that the

22 patent does not redefine the term or disavow the full scope of its meaning, yet he

23 argues a limited meaning.  (*Id.* at pp. 88-89, 106); *but see Thorner*, 669 F.3d at

24 1365.[5]

25

26 ─────────────────

[5]   Interestingly, Kitchen served as an expert in the *Thorner* case, and used the
27 plain and ordinary meaning of the disputed claim terms (Ex. 3 at pp. 72-73),
yet refuses to do so here.

28

Kitchen's support for a limited meaning of *to couple to* is simply to argue the intrinsic evidence, without offering any technical knowledge.  (See Dkt. No. 99 ¶¶ 28-33.)  Indeed, he ignores the following definitions of *couple* or *coupling*, that clearly permit an indirect connection.

- To fasten, link or associate together in a pair or pairs
- To join, connect
- To link together, connect
- To link two circuits or current as by magnetic induction
- two electric circuits are said to be coupled so that a current in one causes a voltage in the other
- *coupling* - device for connecting together two or more parts of a mechanism
- to connect two circuits so signals are transferred from one to the other

(*See* Ex. 3 at pp. 28-52.)

None of these definitions, including those from technical dictionaries, support a definition that excludes indirect connections.  Kitchen attempted to justify Nyko's construction excluding an indirect connection by arguing that *to couple to*, as used in the '848 patent, refers only to *mechanical* coupling.[6]  Yet the words *mechanical* or *mechanical coupling* <u>never</u> appear in the '848 patent.  In fact, the '848 patent alternatively describes the connection between the controllers and the DC ports as both "coupled" and "electrically coupled."   (Col. 9:28-32; Col. 10:17-21.) Kitchen's opinion is therefore contrary to the plain meaning, the law and the intrinsic evidence, and may be disregarded.  *See Vitronics*, 90 F.3d at 1583-84.

In the Rebuttal Kitchen Report, he offers new support for his construction. However, this new support also violates legal rules of claim construction.

---

[6] Even the definitions of mechanical coupling, despite Kitchen's evasive and bizarre testimony, include indirect coupling, such as a coupling that joins two pipes and a coupling rod that joins the wheels of a locomotive.  (Ex. 3 at pp. 44-48.)

1  Specifically, Kitchen argues that to couple to must mean direct mechanical coupling

2  because claim 13 recites structures that align controllers in a docking bay.  (Dkt. No.

3  110 ¶¶ 8-12.)  However, claim 1 does not recite such alignment.  Because *to couple*

4  *to* is not limited to direct mechanical coupling for alignment in claim 1, it may not

5  be generally construed as so limited.  Kitchen's opinion to the contrary violates the

6  fundamental rule of claim construction that claim terms must be construed

7  consistently across claims in the same patent.  *See NTP, Inc. v. Research in Motion,*

8  *Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005).  Nor does the written description require

9  such alignment.  Thus, Kitchen's argument also violates the mandate against reading

10  limitations from the specification into the claims.

11        Further, in contrast to his understanding of *to couple to*, Kitchen opined in his

12  declaration that "electrically coupled to" includes direct and indirect connections,

13  including through a wire or cable.  (Dkt. No. 99 p. 14.)  Kitchen bases his testimony

14  on his experience in the field and on dictionary definitions that describe coupling in

15  terms of connecting electrical circuits.  (Ex. 3 at, *e.g.*, pp. 49-51.)  However, Kitchen

16  never explains why one of skill in the art would not understand the grammatical fact

17  that "electrically coupled" is a subset of "coupled," which may include electrical

18  connections and other types of connections.  Indeed, every preferred embodiment

19  that Kitchen cites in support of his construction of "to couple to" involves coupling

20  for the purposes of providing DC (*i.e.*, electrical) power.  (*See* Dkt. No. 99, pp. 12-

21  13.)  Thus, there is no support in the specification for Kitchen's contention that

22  *electrically coupled* is broader (includes direct and indirect connections) than *to*

23  *couple to*.  Accordingly, the Court should strike or disregard Kitchen's testimony

24  regarding the construction of "to couple to" in the '848 Patent.

25  **C.**    **Kitchen's Opinions Regarding the "At Least One Structure …" Terms**
26            **Are Also Unreliable**

27        With respect to the claim limitations regarding "at least one structure …,"

28  both Kitchen reports do nothing more than cite to the patent specification.  They fail

-- 14 --

to offer any technical or specialized knowledge.  (Dkt. No. 99 ¶¶ 39-47; Dkt. No. 110 ¶¶ 17-28.)  Further, despite admitting the relevance of the prosecution history, and admitting that Nyko amended the "at least one structure …" limitations to avoid the prior art (Ex. 3 at pp. 20-25, 230), Kitchen did not address the prosecution history in either of his reports.  Still further, despite extensive questioning at his deposition, Kitchen never went beyond his opinion that "at least one" means "one or more," and never reconciled the anomaly in the claims of the '848 patent whereby at least one of the structures on the base must support a plurality (two or more) of controllers.  (*Id.* at pp. 196-225.)  While the Court may consider Kitchen's deposition testimony where he could not explain this anomaly, the Court should disregard the opinions in his reports as not based on specialized knowledge and not reliable because he failed to address the amendments during prosecution, which are part of the intrinsic record.

**D.**  **Kitchen's Opinion Regarding the Term "Structure" Is Not Based on Technical Knowledge and Does Not Assist the Trier of Fact**

In the First Kitchen Report, he does not address the claim term *structure*.  In the Rebuttal Kitchen Report, he opines that the term *structure* is not indefinite, yet does nothing to reconcile the ambiguities inherent in how that term is used in the written description and in the claims.  For example, he disputes the testimony of inventor Navid that *structure* would include a single partition.  (*See* Dkt. No. 98 at pp. 15-16.)  Further, he testifies that, to comply with claim 1, because at least one structure must support a plurality of controllers, it must form two or more docking bays.  (Ex. 3 at pp. 220-225.)  Yet he acknowledges that such an embodiment is not disclosed in the specification.  (*Id.*)

Further, despite arguing that the term is not indefinite and that it should be given its plain meaning, Kitchen then goes on to offer a rather extensive definition of the term *structure*:

> In reviewing the '848 patent, it is clear to me (reading the patent as one skilled in the art) that the term "structure" refers to the physical fabrication that supports a video game controller, made up of a pair of opposite surfaces, the portion of the base 402 that lies between the parallel surfaces, the docking bay 404, and/or locators 410.  (Dkt. No. 110 ¶ 61.)

This convoluted definition cannot possibly be deemed a "plain meaning," is inconsistent with the inventor's testimony and the written description (*see* Col. 9:51-55) and further supports the conclusion that this term is indefinite.

**V.   CONCLUSION**

For all of the foregoing reasons, the Court should exclude Mr. Kitchen's declarations, or assign them no weight.

Dated:  April 18, 2013

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By   _____/s/ Daniel N. Yannuzzi_____
DANIEL N. YANNUZZI
STEVEN M. HANLE
GRAHAM (GRAY) M. BUCCIGROSS
MATTHEW M. MUELLER

Attorneys for Energizer Holdings, Inc., Eveready Battery Co., Inc., and Performance Designed Products LLC

## CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego; I am over the age of eighteen years and not a party to the within entitled action; my business address is 12275 El Camino Real, Suite 200, San Diego, California 92130.

On April 18, 2013, I electronically filed the following document(s) described as

**1.    DEFENDANTS' OBJECTIONS TO EXPERT DECLARATIONS OF GARRY KITCHEN (DKT. NOS. 99 AND 110); and**

**2.    DECLARATION OF GRAHAM M. BUCCIGROSS IN SUPPORT OF DEFENDANTS' OBJECTIONS TO EXPERT DECLARATIONS OF GARRY KITCHEN (DKT. NOS. 99 AND 110)**

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the interested parties who have consented to electronic service via the CM/ECF system.

S. Art Hasan
G. Warren Bleeker
Katherine Quigley
Christie Parker and Hale LLP
655 North Central Avenue Suite 2300
Glendale CA 91203-1445
Art.hasan@cph.com
Warren.bleeker@cph.com
Katherine.Quigley@cph.com

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on April 18, 2012, at San Diego, California.

/s/ Rex Bautista
Rex Bautista

SMRH:408322012