1                  UNITED STATES DISTRICT COURT

2                 CENTRAL DISTRICT OF CALIFORNIA

3                        WESTERN DIVISION

4          THE HONORABLE GARY ALLEN FEESS, JUDGE PRESIDING

5

6    NYKO TECHNOLOGIES, INC.,        )
                                     )
7                      Plaintiff,    )
                                     )
8                                    )
             vs.                     )   No. CV 12-3001-GAF-VBK
9                                    )
     ENERGIZER HOLDINGS, INC., et al.,   )
10                                   )
                       Defendants.   )
11   _____)

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16

17                    Los Angeles, California

18              Thursday, May 9, 2013, 9:31 A.M.

19                 Claims Construction Hearing

20

21                              PAT CUNEO CSR 1600, CRR-CM
                                Official Reporter
22                              Roybal Federal Building
                                Room 181-E
23                              255 East Temple Street
                                Los Angeles, California 90012
24                              213-290-1817
                                patcuneo1600@gmail.com
25                              www.patcuneo.com

```
1    APPEARANCES OF COUNSEL:

2    FOR THE PLAINTIFF:    CHRISTIE PARKER HALE LLP
                           BY:  KATHERINE L. QUIGLEY, ATTORNEY AT LAW
3                          655 N. Central Avenue
                           Suite 2300
4                          Glendale, California  91203-1445
                           626-795-9900
5                          katherine.quigley@cph.com
                                     -and-
6                          CHRISTIE PARKER HALE LLP
                           BY:  SYED A. "ART" HASAN, ATTORNEY AT LAW
7                          350 W. Colorado Boulevard
                           Suite 500
8                          Pasadena, California  91105
                           626-795-9900
9                          sah@cph.com


10
     FOR THE DEFENDANTS:   SHEPPARD MULLIN RICHTER & HAMPTON LLP
11                         BY:  STEVE HANLE, ATTORNEY AT LAW
                           650 Town Center Drive
12                         4th Floor
                           Costa Mesa, California  92626-1993
13                         714-513-5100
                           shanle@sheppardmullin.com
14                                   -and-
                           SHEPPARD MULLIN RICHTER & HAMPTON LLP
15                         BY:  DANIEL YANNUZZI, ATTORNEY AT LAW
                           and  GRAHAM M. BUCCIGROSS, ATTORNEY AT LAW
16                         12275 El Camino Real
                           Suite 200
17                         San Diego, California  92130-2006
                           858-720-8900
18                         dyannuzzi@sheppardmullin.com
                           gbuccigross@sheppardmullin.com

19

20

21

22

23

24

25
```

1    LOS ANGELES, CALIFORNIA; THURSDAY, MAY 9, 2013; 9:31 A.M.

2                              -oOo-

3               THE CLERK:  Please remain seated and come to

4    order.   This United States District Court is now in session,

5    the Honorable Gary Allen Feess, Judge, presiding.

6               THE COURT:  All right.  Call the case, please.

7               THE CLERK:  Calling Item No. 1, CV 12-3001, NYKO

8    Technologies, Inc., vs. Energizer Holdings, Inc., et al.

9               Counsel, state your appearances, please.

10              MR. HASAN:  Your Honor, Art Hasan, Christie,

11   Parker & Hale, for NYKO Technologies, Inc.  I'm here with

12   Katherine Quigley.

13              THE COURT:  Good morning.

14              MR. HASAN:  Good morning.

15              MS. QUIGLEY:  Good morning.

16              MR. HANLE:  Good morning, Your Honor.

17   Steve Hanle of Sheppard, Mullin, Richter & Hampton for the

18   defendants; and with me is Gray Buccigross and Dan Yannuzzi.

19              THE COURT:  Good morning.

20              All right.  We're on today for a hearing on the

21   *Markman* in this case.  Let me make a couple of preliminary

22   comments and then I'll hear from the parties.

23              First of all, let me be clear that I don't really

24   need anybody to argue about the general principles in the

25   case.  I'm certainly aware that there's a strong preference

1    for the use of intrinsic evidence in construing claims and

2    that means focus heavily on claim language, specification,

3    prosecution history and, to some extent which was pertinent

4    in this case, the continuation application leading to the

5    630.

6           The claim language, I understand claim language

7    describes the scope of the patentee's right to exclude.  I

8    understand that we look to the ordinary and customary

9    meaning of the words as they were understood by one skilled

10   in the pertinent art at the time the patent application was

11   filed.

12          I understand that the specification doesn't

13   contain limitations on the scope of the claim.  On the other

14   hand, however, the case law is clear that it's the best

15   source as to the meaning of a disputed term because of the

16   obligation of the inventor to provide a full and exact

17   description of the claimed invention.

18          And I'm aware of the principle of claim

19   differentiation which the cases indicate is a very useful

20   guide except when it isn't.  So.

21          And actually one could say that about all of these

22   principles; that they work except when they don't work; and

23   so we, you know, we just look at all of the information with

24   focus on the intrinsic evidence.

25          Now, I drafted a tentative which contained

1    language, some of which at this point I'm still -- I'm not

2    even all that satisfied with; but I wasn't totally satisfied

3    with the language of the parties.

4            I will say this, make a couple of observations, as

5    I was reading the tentative, reading the parties'

6    construction and the tentative again last night, that in the

7    initial, as to base, I think if I were going to rewrite it,

8    I think I would take "foundational structure" out and just

9    put "body" in instead of "foundational structure."

10           And as to the last couple -- when we start talking

11   about structure, I want to throw something out and hear from

12   you in the course of the argument because I wonder why

13   structure might not just best be construed as, quote, "a

14   partition" because reading the specification together with

15   the claim language, it seems to me that that's what's

16   contemplated.

17           As to docking structure, I think that requires, if

18   we are going to give an nod to claim differentiation, then I

19   think we have to have different language for docking

20   structure although I would like the parties to tell me

21   whether or not they really are different because I have some

22   question about that.

23           But those are a couple of thoughts I had as to the

24   language that I was even including in the tentative.  So

25   with those thoughts and those preliminary remarks, let me

1   proceed by giving plaintiff the floor first and then we'll

2   hear from the defendant and then we'll figure out how much

3   back and forth we're going to have after that.

4           I would remind the parties that I do think that

5   these are, compared to other *Markman's* I've had recently,

6   this one seems fairly simple.  We don't have internet or

7   ethernet switching packets, TCP IP protocols, et cetera,

8   so --

9           MR. HANLE:  Does Your Honor perform prefer to go

10  term by term or --

11          THE COURT:  What I'm hoping is that we're not

12  going to argue about every single thing today; but, you

13  know, like I say, I want -- I would like to hold the

14  argument to about an hour because I have many, many, many

15  other things I have to attend to so if we can try to do it

16  in an hour, if we need a little more than that, we'll take

17  the time but that will be my objective.

18          So I'll start with plaintiff and are there -- let

19  me ask plaintiff what you want to -- do you want to address

20  each and every one of the terms or is there anything that

21  you might actually be satisfied with at this point?

22          MR. HASAN:  Yes, Your Honor.

23          We're satisfied with basically all of the

24  constructions except for the construction on Item No. 7.

25          THE COURT:  Item No. 7 which is?

1          MR. HASAN:  On the tentative.

2          THE COURT:  I'm sorry.  Which one is that?

3          MR. HASAN:  Supported by the base, Your Honor.

4          THE COURT:  Supported by the base.  Okay.

5          All right.  Let me -- okay.  Then let me give you

6  a little bit of my thinking there and then I'll hear from

7  you.

8          It seems to me that "supported by the base"

9  requires some construction because of my view of the base

10  itself.  The base is, as I read the entirety of the patent,

11  is essentially the body of the charging system which

12  provides the structure for the remaining structures, that

13  is, the electrical, the contacts, the partitions, and so

14  forth.

15          And if we look at Claim 1, "on the base" is used I

16  believe in Claim 1 -- and it makes sense -- but if we have

17  "supported by the base," if that's to make some

18  independence, then it seems like it's got to mean something

19  different than "on the base."

20          So law clerk and I were struggling to figure out:

21  Well, what could we say about that, if we want to defer to

22  the notion of claim differentiation, what does it mean?

23          MR. HASAN:  Yes, Your Honor.

24          On the notion of claim differentiation, typically,

25  that occurs between an independent claim such as Claim 1 and

1    a dependent claim on that claim.

2              THE COURT:  Right.

3              MR. HASAN:  Claim 13 is another independent claim.

4    So the doctrine of claim differentiation, we would submit,

5    doesn't apply directly.

6              THE COURT:  No.  But one looks through the patent

7    in its entirety to the use of terms; and the basic

8    underlying concept of the patent jurisprudence is that some

9    difference in the use of words indicates some difference in

10   meaning.

11             So the question is:  What does it mean?  What does

12   it mean it's different?  If I don't construe "supported by

13   the base," how do we know what it means that would be

14   different from "on the base"?

15             MR. HASAN:  Yes, Your Honor.  I believe the term

16   "on" and "support" have overlapping definitions.

17             THE COURT:  Dictionary-wise I think that's

18   probably right.

19             MR. HASAN:  Yes.  And there's no reason to believe

20   in the specification and in this patent that it's used any

21   differently for these terms than the ordinary meaning.

22             By way of example, "support" -- and we have a copy

23   here -- means to bear the weight of, for example.  It's also

24   to hold in position so as to keep from falling or slipping.

25   Sinking or slipping.

1          So that concept of support is a concept of

2    supporting the -- of bearing weight.  So, for example, if I

3    may, if you have this plaintiff's sign over here, this is

4    supported by this lectern here; and if it's on this, it's

5    still supported by the lectern.  It's bearing the weight of

6    it and so therefore --

7          THE COURT:  Okay.  But you're not -- I agree with

8    everything you've said.  I just don't feel very helped by

9    it.

10         If we look at Claim 1 and we talk about the

11   concept of something being on the base, what is it that the

12   patent is accomplishing in some different way that requires

13   the use of the words "supported by the base" in that Claim

14   13?  That's what I'm trying to figure out.

15         MR. HASAN:  Well, Your Honor, typically in, you

16   know, for a good patent prosecutor, they'll use different

17   terms to give different breadth, different meanings.

18         But in this case the meanings are overlapping so,

19   yes, there are some differences if we look at the difference

20   between "on" and "supported by."

21         For example, if you --

22         THE COURT:  Well, you know, the truth is, though,

23   as you -- what you've said essentially suggests what I think

24   which is they aren't different.

25         I mean, that 1 and 13 are essentially -- see.  I

1   look at this language to try to construe it in a way that

2   creates some difference between the two.  But your argument

3   is suggesting to me that maybe there's not.

4          MR. HASAN:  Well, Your Honor, there is a

5   difference because if you look at the definition of "on,"

6   and there's no reason to believe from the patent that it

7   shouldn't be given its ordinary meaning, then you can look

8   and we can compare and I have this.  I brought it for Your

9   Honor, the definitions of "on" and "support" and we can

10  compare those.

11         THE COURT:  I've heard of those words before --

12         MR. HASAN:  Of course.

13         THE COURT:  -- and I've read many dictionary

14  definitions of them.  In fact, I've pulled out a dictionary

15  and looked at -- my dictionary has some different

16  definitions than you've got; but there's a lot of

17  definitions for those words that are commonly understood.

18         I just don't think dictionary definitions -- and,

19  in fact, Judge Rader recently told me when I was talking

20  with him in preparation for a patent program, he said -- you

21  know, he said -- I don't know if I can use the exact

22  language on the record that he used but, essentially, he

23  said:  You know, dictionary definitions aren't really worth

24  very much.

25         So I'll paraphrase what he said.  He said they're

1    not worth very much in claim construction; and so since it's

2    his crew that's going to review this possibly some day and

3    he's the chief of that crew I take that with more than just

4    a grain of salt.

5           MR. HASAN:  Well, I acknowledge, Your Honor,

6    having heard Judge Rader several times that he has many

7    opinions that are very studied and good, you know, and there

8    are differences on the Court.  Having said that -- the Court

9    of Appeals.

10          THE COURT:  That's true.

11          MR. HASAN:  Having said that, Your Honor, you

12    know, the Court doesn't have to construe every word that's

13    asked for.

14          THE COURT:  Believe me, I know that, too, and if I

15    thought I could avoid it, I would but --

16          MR. HASAN:  If we look at the definition or the

17    construction of the issue that we have with a construction

18    of the word "support" that has been put in here is that

19    support is, as stated here, would be okay with us if it

20    interjected that it doesn't necessarily -- it says

21    "physically supported by but not necessarily directly on the

22    base."

23          With that construction, we think it's fine.  I

24    mean, the way that it's written now is that it's forcing

25    into the word "supported by," first of all defining it by

1    the same word, "physically supported by" and then adding

2    another limitation to it.

3              The --

4              THE COURT:  Well, but it doesn't really hurt the

5    patentee because the "on the base" is covered by Claim 1;

6    right?

7              MR. HASAN:  Yes, Your Honor.  It may not hurt us

8    or the patentee at all, but the question here is what is the

9    proper construction and is it proper to read a limitation

10   in?

11             You know, as the Court well knows, the cardinal

12   sin is reading in limitations.  You said that.  We're not,

13   you know.  And where is that limitation coming from?

14             THE COURT:  It's coming from the fact that whoever

15   applied for this patent wrote different words.  That's where

16   it's coming from.

17             The motivation to construe it in a way that is

18   focused on Claim 13 only is -- the motivation to do that

19   comes from the fact that the patentee chose to write it that

20   way.

21             MR. HASAN:  Okay.  But why does that get -- why

22   does the fact that that's the case, Your Honor, get us to

23   this construction?  This construction?

24             I mean, we could take the construction to "bear

25   the weight of."  "Bear the weight of."  That's a

1    construction and that's --

2              THE COURT:  But it doesn't have anything to do

3    with the patent.  I mean, that's true.  But it doesn't

4    really have much to do with what this patent is about, does

5    it?

6              MR. HASAN:  Well, it does, Your Honor.

7              Because if you look at, you know, what it's

8    referring to in Claim 13, if you look at Claim 13, what is

9    being supported by the base, a plurality of male mini-USB

10   connectors supported by the base.

11             So if you look at the figures over here and Your

12   Honor would know the -- would you put the figures up?

13             21, the second embodiment.

14             *(The slide was displayed on the screen.)*

15             MR. HASAN:  Yes.

16             So if you look at this here, Your Honor, on the

17   screen, you can see that these DC ports there are supported

18   by the base and the weight of them is being borne by the

19   base, for example.  It's bearing them.

20             THE COURT:  Okay.  I mean --

21             MR. HASAN:  I'm saying that's how it relates to

22   the patent.  I mean --

23             THE COURT:  All right.

24             MR. HASAN:  You know, it may not hurt at all but

25   just as a matter of claim construction and what we feel is

1   here, when you bring in a limitation from the spec, there

2   has to be a good reason to do it and there are good reasons

3   for other terms.

4           But for this term, you know, if you look at how

5   it's supported by, as used there, it's used in both of these

6   embodiments.  They both refer to supported, they both have a

7   DC port on the base, and they're both supported by the base.

8           And in one sense it's on.  Something can be next

9   to something and on it in a definition.  And something --

10  but that doesn't necessarily mean that it's supported by.

11          THE COURT:  Okay.  I mean, I'll think about it.

12  I hear your argument.  It just seems to me that you've got a

13  claim that deals with DC ports that are on the base and

14  you've got another claim that has them supported by the

15  base.

16          I understand what "supported" means; and it seems

17  to me certainly clear that they don't have to be, when you

18  use "supported by the base," they clearly don't have to be

19  directly on the base; right?  You'd agree with that part?

20          MR. HASAN:  I completely agree with that.

21          THE COURT:  Right.

22          MR. HASAN:  But if they are, they are still

23  supported.  That's the only distinction.

24          THE COURT:  Okay.  I get that point then.

25          All right.  Is there anything else you want to

1  address before I give the defense a chance to speak to the

2  claim?

3          MR. HASAN:  Yes.

4          THE COURT:  And I'm not going to preclude you from

5  talking about what he has to say either.  I'm just asking as

6  an opening shot, are there other things you want to say?

7          MR. HASAN:  Yes, Your Honor.  Thank you.

8          THE COURT:  Go ahead.

9          MR. HASAN:  For one, the base --

10          THE COURT:  Yes.

11          MR. HASAN:  -- in the tentative, we agree with

12  this definition.  We concur with it.

13          THE COURT:  What do you think about -- that

14  "foundational structure" maybe should be removed and "body"

15  substituted for that?

16          MR. HASAN:  I think "foundational structure," Your

17  Honor, is fine.  I mean, you know, "body" could be okay,

18  too.  You know, we talked about the surfaces of the base.

19  It has a top surface, it has side surfaces, it has what the

20  defendants focused on exclusively, the bottom surface.

21  Those are all there.

22          And typically in mechanical engineering terms,

23  many times you would analogize a mechanical object to a

24  human body so there are different parts of it.  So "body" is

25  a term that's known and used in engineering circles and it's

1    part of our definition that we proposed.

2            So we wouldn't have a problem with that; but we

3    think that, as you've construed it here, it's fine as well

4    because there has to be a foundational aspect to it.

5            If you turn to the figure that shows the

6    video-game controllers on it.

7            THE COURT:  You mean is that 13, the one that is

8    based on the illustration with the four slots?

9            MR. HASAN:  Yeah.  It could be 14 or let's look at

10   actually in 21.

11           *(The slide was displayed on the screen.)*

12           MR. HASAN:  Figure 21.  I can show it to you right

13   here, Your Honor.  This figure here on the patent that I'm

14   holding up in my hand here, Your Honor *(indicating)*.

15           *(The slide was displayed on the screen.)*

16           MR. HASAN:  Yeah, that one.  Right there.

17           THE COURT:  Okay.

18           MR. HASAN:  Figure 21, you know, it shows the fact

19   that the base is supporting the controllers, you know.  So

20   the base there is a foundation for the controllers.

21           And this is why we gave the definition from the

22   technical dictionary and this is a technical dictionary.

23   I'm not sure whether Judge Rader was talking about technical

24   dictionaries *per se* but beside the point.

25           The technical dictionary talks about a base being

1    a foundation or support upon which an instrument rests.  So

2    I was thinking of instruments.

3            For example, if you go to the doctor's office, the

4    physician puts the stethoscope on a base to hold up that

5    base.  So in other words, the stethoscope is a separate

6    object from the base; and the foundational aspect captures

7    that and that's why we were -- we don't have an issue with

8    it in your construction that is tentatively proposed, Your

9    Honor.

10           THE COURT:  Well, the reason that I had some

11   second thoughts about it was the inventor himself seems to

12   think that "body" might be a better word, I think, in any

13   event.

14           MR. HASAN:  Yes.

15           THE COURT:  You would -- from your point of view,

16   either one would be acceptable?

17           MR. HASAN:  Yeah.  Either one would be acceptable,

18   we think.

19           The next one that I'd like to move on to, Your

20   Honor, if I may is 5, structure.

21           THE COURT:  Yeah.  Yeah, that was difficult.  That

22   one, I mean, I can't -- I find it difficult to accept the

23   notion that it doesn't require any construction; but I also

24   don't accept the notion that it's indefinite.

25           I think there's case law out there that involves

1    patents that use similar type terminology; and the cases say

2    look to the specification and, you know, see whether or not,

3    in view of the specification, the term has meaning.

4              And so that's why, you know, I tried writing it in

5    a -- by the way, there are too many words because it

6    captures -- it bleeds over into some of the prior language

7    of the claim.

8              But after a second thought, I wondered whether or

9    not the words "a partition" isn't really what's

10   contemplated.

11             MR. HASAN:  Well, Your Honor, if you look at the

12   claim language itself -- and before we get to that, if you

13   look at one of the figures and it's the same thing with the

14   other figures here, but the figure that we have on the

15   screen, Your Honor --

16             THE COURT:  Yeah.

17             MR. HASAN:  -- it describes the structures

18   including either these partitions here or the side of it and

19   then the bottom portion as well that's there so --

20             THE COURT:  Well, that's part of the base.

21             MR. HASAN:  Yes.

22             THE COURT:  Yes.

23             MR. HASAN:  Yes.

24             And if you look at the claim, let's turn to claim,

25   either claim, Claim 1.

1        THE COURT:  I've got it here.  I've got my copy.

2        MR. HASAN:  Claim 1.

3        *(The slide was displayed on the screen.)*

4        THE COURT:  "At least one structure on the base

5    for providing physical support for the plurality of

6    video-game controllers."

7        Is that what you're --

8        MR. HASAN:  Yeah.

9        If you look at the screen, Your Honor, we've

10   underlined what else the structure has.  The structure also

11   has -- comprises a plurality of the docking base.  Okay?

12       And then it says on the third, or the last

13   paragraph of this claim:  "The one structure on the

14   base" -- excuse me -- "at least one structure on the base

15   further comprises a plurality of pairs of opposite

16   surfaces."

17       So if you just limit it to a partition, it seems

18   like it's going to be at odds somewhat with the claim

19   language itself.

20       THE COURT:  Well, I don't necessarily think that's

21   right because essentially what the partitions do is create

22   like an air peninsula.  It's a space of air that's

23   surrounded on three sides by structure and that's where the

24   controllers fit.

25       So whether you have one partition, whether it's

1    short enough that you have one partition and you put two

2    controllers in or more partitions, the rest of the language

3    then works, it seems to me, to describe how those structures

4    fit in and what they do.

5              But you know, I would -- I haven't decided on

6    those words either.  I just want to hear what the parties

7    have to say about it, and I'll look at the point that you're

8    making about whether that works throughout the entirety of

9    the claim.

10             MR. HASAN:  Your Honor, one last point on this.

11             THE COURT:  Yes.

12             MR. HASAN:  And it's on the screen.

13             *(The slide was displayed on the screen.)*

14             MR. HASAN:  In the specification it says that

15   "each pair of opposite surfaces, a portion of the base, a

16   corresponding docking bay and/or the locaters may comprise a

17   structure for providing the physical support to the

18   video-game controllers."

19             So the question there is that, you know, does

20   "partition" read out some of those?

21             This is the first time we've heard of partition

22   here.  Obviously, we --

23             THE COURT:  I understand.  Although it might be

24   the first time you heard it from me --

25             MR. HASAN:  Yes.

```
 1              THE COURT:  -- but the specification, especially

 2   in the 11, 12, and 13 -- I can't remember which one of the

 3   numbers is now.  I can pull it up in a second -- describes,

 4   I think it's 406, specifically calls them out as partitions,

 5   I think, in the specification which was the reason that I

 6   was thinking of it although that is, you know, perhaps more

 7   specific than it ought to be.

 8              This language, by the way, of the -- this is part

 9   of the specification; right?

10              MR. HASAN:  Yes, Your Honor.  It's part of the

11   specification.

12              THE COURT:  Yeah, okay.

13              The structure is the resulting space in that

14   language.  It's the resulting space that the opposite

15   surfaces and that portion of the base create; right?

16              MR. HASAN:  I mean, it could be because it talks

17   about a corresponding docking bay may be a structure.

18              THE COURT:  Yeah, I mean --

19              MR. HASAN:  It could be but it's not necessarily

20   limited to that is what we're saying, Your Honor.  We think

21   that, you know, when you look at this language and you look

22   at the teachings and you look at the testimony from

23   Mr. Kitchen, the expert in this case who testified on behalf

24   of one of ordinary skill in the art, that the structure may

25   include a partition but it certainly can be -- is not, you
```

1   know, can be broader than that; and I know that's not --

2   you're not saying that it's just restricted.

3          THE COURT:  But there's nothing in the record that

4   tells me what it could be.  I mean, I don't -- I don't

5   understand the record.  I mean, I understand that the record

6   includes conclusions or opinions that it could be broader

7   than that but; then I try to imagine what we might be

8   talking about.

9          MR. HASAN:  The claim language grounds us.  The

10  claim language.  If you look at Claim 1 again, Your Honor,

11  that we underlined, the claim language says that the

12  structure, you know, defines or, you know, defines --

13         THE COURT:  But you're going in circles now

14  because we're trying to think of what structure means.  The

15  question is what does structure mean?  And you can't say:

16  Well, it doesn't mean "partition" because it says

17  "structure."

18         MR. HASAN:  Okay.  Okay.

19         THE COURT:  I mean, that doesn't help me at all.

20         MR. HASAN:  Well, you're -- what you have already

21  in Claim -- in No. 5 is fine.  What you had in the

22  tentative.

23         THE COURT:  So you like the words that I've got

24  already.

25         MR. HASAN:  Absolutely, Your Honor, because it

1  captures these different features of what a structure can

2  be, not just one of them; and that's supported by the claim

3  language in the specification, this definition, Your Honor.

4          THE COURT:  All right.

5          Well, I read it last night and I said:  I'm not

6  sure it means anything.  *(Laughing.)*  That's what I said.  I

7  said:  Well, plaintiff doesn't want any construction.

8  Defendant says it's indefinite.  I've got some words and I

9  don't know what my own words mean.

10          So nonetheless, as I say, I certainly don't think

11  it's indefinite in the sense that the defendants are

12  arguing; but I'm struggling to figure out how to articulate

13  it and we'll see what the defendant has to say.

14          MR. HASAN:  We think 5 is fine in the tentative,

15  Your Honor.

16          THE COURT:  Okay.  All right.

17          Mr. Hanle is going to tell me now what he doesn't

18  like which I suspect is most of it.  Right, Mr. Hanle?

19          MR. HANLE:  I wouldn't say that, Your Honor.

20          THE COURT:  *(Laughing.)*  You wouldn't say it but

21  you might think it.

22          MR. HANLE:  I do have hard copies of the

23  PowerPoint if I may bring them up.

24          THE COURT:  You may.

25          MR. HANLE:  Should I give one to your clerk or --

1          THE COURT:  Sure.  He might have something to do
2    with this process later on.
3          MR. HANLE:  So rather than sort of jumping around,
4    I'll keep it roughly in the order of my PowerPoint
5    presentation; but certainly if you want to jump me around,
6    feel free to, Your Honor.
7          Oh, just for the record, it's Steve Hanle for the
8    defendants.
9          Your Honor, already talked about the hierarchy and
10   so we won't get into that.
11          *(The slide was displayed on the screen.)*
12          MR. HANLE:  But I do want to focus on a couple
13   of -- some of the specific language from some of the cases
14   that we think is particularly applicable here about plain
15   language.
16          And the first quote:  The patentee is free to
17   choose a broad term and expect to obtain the full scope of
18   the meaning -- of the plain and ordinary meaning unless the
19   patentee explicitly redefines the term or disavows its full
20   scope.
21          We believe that Your Honor's constructions runs
22   afoul of this with respect to the word "base."
23          THE COURT:  That red light is shining in my eyes.
24          MR. HANLE:  Oh, I apologize, Your Honor.
25          And with respect to the word -- to the

1    construction of the word "couple," we think those are broad

2    terms.   They should be construed broadly because there is no

3    disavowal or redefinition in the specification.

4                A similar concept was expressed --

5                THE COURT:   How is "foundational structure"

6    significantly narrower than "base"?

7                MR. HANLE:   The term "foundational structure" is

8    not.   The rest of your construction is.   And we do have an

9    issue with the word "structure" because it's a claim term

10   and it could be confusing.   But we would be happy with "the

11   foundation of the charging system" but I'll get to that.

12               The second proposition here is that when you have

13   plain and simple words such as here that are used in a

14   non-technical way, which we believe is the case for "base"

15   and "to couple to," that it's just a matter of the judge

16   applying the widely accepted meaning of those words --

17               THE COURT:   Yeah, but you offer me -- you offer me

18   a construction of "base" that I think is patently wrong.

19   "The bottom part of the charging system."   The bottom part.

20   I don't know what "bottom part" means.

21               MR. HANLE:   It means the same as base, Your Honor.

22   That's what a base is.   It's the bottom part that supports

23   the rest of the system.

24               THE COURT:   But that is not consistent with the

25   specification.   I mean, that's the problem.   You're right.

1   I mean, they are broad terms; but you would have me not look

2   at the specification to construe the claim language.

3           MR. HANLE:  I actually disagree with that and I'll

4   get to that.  I don't believe "the bottom part" means --

5   first of all, I think there's sort of a straw-man argument

6   going on.

7           I think the defendant -- excuse me -- the

8   plaintiff would like to argue that "the bottom part" means

9   the bottom surface; and that's not what we're saying at all.

10          We're saying "the bottom part" and that part may

11   be substantial.  It may have other parts but, regardless, a

12   base in the plain and ordinary English language is the

13   bottom part of something that supports the something.

14          Mr. Hasan referenced the base of a stethoscope.

15   I've never heard of that.

16          THE COURT:  No, it wasn't -- don't talk about it.

17   It wasn't a good analogy.

18          MR. HANLE:  Okay.  So I would refer instead to the

19   base of a table.  The base of the table would be the bottom

20   part of the table that supports the table, not the top of

21   the table that might support something else.  So that's

22   where we're coming from.

23          Having said that, I can appreciate Your Honor's

24   concern that "bottom" might be confusing to a jury and might

25   be too limiting.  So we would be, as I said, willing to

1    agree to "the foundation of the charging system"; and let me

2    get to that.

3          So the -- there are basically two exceptions to

4    the rule that you deviate from the plain and ordinary

5    meaning and that's one is when the patentee sets out a

6    definition and acts as its own lexicographer so it

7    specifically defines in the patent or when there's an

8    express disavowal.

9          And we don't think either exists here; and this is

10   the *Thorner* case and it's very specific and this is

11   Judge Rader and says that:  In order to act as your

12   lexicographer, you need to clearly set forth a definition

13   other than its plain and ordinary meaning.

14         Similarly, the language from *Thorner*, it is not

15   enough to disclose a single embodiment and that shouldn't be

16   used to limit the plain and ordinary meaning unless there's

17   a clear -- unless it clearly expresses an intent to redefine

18   the term.

19         And this is essentially NYKO's argument and Your

20   Honor's construction with respect to the word "couple."

21   Because the word "couple" is, I think in all instances where

22   it is used, generally absent some reason to limit it, it

23   includes both the direct and indirect connection; and Your

24   Honor has limited it in Your Honor's construction.

25         So the -- I'll go right to the construction of the

 1   Court's tentative construction and speak to that.

 2          So the Court's construction:  The foundational

 3   structure of the charging system on or in which the

 4   remaining components of the system are incorporated.

 5          As I said, we would agree with that first part,

 6   the foundation of the charging system.  We believe the word

 7   "structure" is problematic, as I said, because "structure"

 8   is another claim term and we think it might be mixed up if

 9   that word appears in the construction of the term "base."

10          THE COURT:  So you'd prefer -- you'd like "body"

11   better?

12          MR. HANLE:  No, I don't.  But I think the body is

13   incorrect because the body of the table is the whole table.

14   The base of the table is the bottom of the table.  That's

15   plain and ordinary meaning, Your Honor.

16          We think the base --

17          THE COURT:  Right.  We all understand it.  It's so

18   clear that's why we're here arguing about it; right?

19          MR. HANLE:  Well, yes.

20          THE COURT:  It's obvious; right?  It's obvious.

21          MR. HANLE:  It's never as clear as we'd like it to

22   be but I would submit that that's why you focus on the plain

23   and ordinary meaning; and when you deviate, it's got to be

24   for one of these express reasons and we don't believe those

25   exist in this particular patent.

1          So the -- and I would say that there's some

2     specific inconsistencies as far as the rest of the

3     construction with the patent in that, for example, there's

4     the patent claims in AC/DC adapter and it expressly provides

5     that that that AC/DC adapter may be either external to the

6     base or may be in the base.

7          And Your Honor's construction, the second half of

8     Your Honor's construction, we would require that component

9     of the system to be on or in the base.

10          THE COURT:  Where are you pointing to on the AC/DC

11    adapter?

12          MR. HANLE:  So my bullet point, it's the third

13    bullet point --

14          THE COURT:  Well, I mean, where in the -- I've got

15    the '848 patent.  Where in the '848 patent should I be

16    looking?

17          MR. HANLE:  So specifically in the patent, let me

18    grab my copy of the patent here.

19          Yes, column -- I believe it is column 3 or --

20    let's see.  One second.

21               *(Pause in the proceedings.)*

22          MR. HANLE:  Okay.

23          THE COURT:  So we're in the specification?

24          MR. HANLE:  Yes, in the specification; and you

25    have column 2.

1            THE COURT:  No, wait.  2.

2                 *(Pause in the proceedings.)*

3            THE COURT:  Okay.  I see down at line 54.

4            MR. HANLE:  Yeah, around down to line 59 where it

5    says, "In one embodiment, the charging system further

6    includes an AC/DC converter external to the base."

7            And similarly you have dependent claims which

8    provides that the AC/DC adapter is external to the base so

9    clearly that component of the system is optional whether the

10   AC/DC converter is in or on the base.

11           And that's why we believe that second half of Your

12   Honor's construction would be inconsistent with the

13   specification.

14           Similarly, there is -- one of the claims calls out

15   an adapter which is external to the base but which is --

16   this is Claim 18 -- which is claimed as -- it's part of the

17   charging system but it is described as external to the base.

18           So our concern here with the second half of the

19   Court's construction is that the written description does

20   not require the remaining components to be on or in the

21   base.

22           So -- and here's, I think, the key point.  To the

23   extent there is other claim language that would put certain

24   components of the charging system on or in the base, that's

25   all well and good.

1      But that doesn't require you -- in fact it

2 counsels against -- construing the base such that those

3 components are required to be a part of the base.

4      And the case we've got here is called

5 *Digital-Vending*; and the first example that it calls out is

6 *Phillips*; and I'm sure Your Honor is familiar with *Phillips*

7 and it dealt with these baffles.

8      And so the example that this case gave from

9 *Phillips* is that when you call out steel -- when you claim

10 steel baffles, then you don't -- you don't import the word

11 "steel" into the construction of baffles.  The word "baffle"

12 stands alone.

13      Similarly in this *Digital-Vending* case, there was

14 a claim limitation that said:  Registration server being

15 further characterized and that it's free of content managed

16 by the architecture.

17      And what the case said is that you don't then take

18 registration server standing alone and import the rest of

19 that limitation from the claim into the construction of the

20 registration server.

21      Similarly, here you have a number of elements

22 where Claim 1 says "a structure on the base"; and so one

23 would not -- one would not read into the construction of

24 base a requirement that it have structures on it because

25 that's already dealt with in other claim language.

1          So that's our biggest concern with the Court's

2    construction is that second half.

3          THE COURT:  Okay.

4          MR. HANLE:  Similarly, I think the Court's

5    construction would be inconsistent with Claim 13; and you

6    may recall, Your Honor, that 13 does not require the docking

7    structures to be on the base.

8          THE COURT:  Let's see.  Hold on a minute.

9                 *(Pause in the proceedings.)*

10         MR. HANLE:  And so you'll see that that claim

11   includes DC ports -- excuse me -- male mini-USB ports

12   supported by the base but the docking structures are not

13   claimed as on the base.

14         And we believe Your Honor's construction of base

15   would require those docking structures to be on the base

16   which is not what is called out in the claim.

17         So we don't think it is either necessary or proper

18   to include in the construction that the remaining components

19   of the system must be incorporated on or in the base.

20         THE COURT:  Okay.

21         MR. HANLE:  And then I mention Claim 18.

22         Similarly, it has this adapter which is external.

23   Your Honor's construction, the second half of it, would

24   require that the adapters be part of the base when, in fact,

25   they are external to the base.

```
 1              So we came up with an analogy.  It wasn't a
 2    particularly good one but --
 3              THE COURT:  Let's hear it.
 4              MR. HANLE:  But the thought is that if the -- if
 5    the claim in all instances claimed an apple, and a banana
 6    and an orange attached to the apple, you don't construe the
 7    apple to include the banana and the orange.
 8              You let the other claim language do what it does
 9    and you leave the apple the apple.  In this case, you leave
10    the base the base.  We got the claim construction late so I
11    apologize we couldn't come up with anything better on the
12    spot but --
13              THE COURT:  (Laughing.)  I'm surprised at you.
14    (Laughing.)  But, no, it makes the point.  I understand your
15    point; and that was part of what I was concerned with a
16    couple of the other things that I had actually written which
17    was to go back and look at and say:  Wait a second.  I've
18    words in here that I don't need because they're already in
19    the claim and it's confusing so. . . .
20                   (The slide was displayed on the screen.)
21              THE COURT:  So I understand that.
22              MR. HANLE:  Yeah, you did allude to that in your
23    opening remarks and I did notice that.
24              THE COURT:  Yeah.
25              MR. HANLE:  So what we're proposing is on this
```

1    slide, Slide 14, which is the foundation of the charging

2    system.  We think that -- we think that accomplishes our

3    belief that it's got to be a part of the charging system

4    that supports the rest of the charging system but it doesn't

5    have the word "structure" in it because we think the

6    structure is confusing and it doesn't have this additional

7    requirement that may or may not be present in the claims for

8    other stuff to be on or in the base.

9              THE COURT:  Okay.  That means I understand.  That

10   doesn't mean -- I said "okay" to him, too and it doesn't

11   mean --

12             MR. HANLE:  Oh, I wasn't interpreting it as you're

13   agreeing.

14             THE COURT:  Yeah.  It's okay.  I got that.

15             MR. HANLE:  I wish it were so --

16             THE COURT:  *(Laughing.)*

17             MR. HANLE:  -- but okay.

18             And, you know, the -- I do want to -- there

19   actually is one more slide and I wasn't going to talk about

20   this but I think, in light of Your Honor's comments about

21   "body," I think I will address this.

22             *(The slide was displayed on the screen.)*

23             MR. HANLE:  Is that a base is the part -- the part

24   of the object that supports the rest of the object.  It's

25   not the entire object; and so --

35

```
 1              THE COURT:  Haven't I seen this before?

 2              MR. HANLE:  You have.

 3              THE COURT:  In the preliminary injunction?

 4              MR. HANLE:  In the TRO preliminary injunction

 5   hearing; and this is actually an example brought up by the

 6   plaintiff -- and we appreciate it -- is that they referred

 7   to the base of the column and pointed out that it includes,

 8   you know, several components.

 9              And that's fine but we can all agree that the base

10   of the column is not the entire column and that's what

11   essentially a construction of the body of the charger would

12   be.  It would take the word "base" and read it right out of

13   the claim and say it's the whole thing.

14              So just because the column supports a building

15   doesn't mean it's the base of the building.  That's -- so I

16   thought that was appropriate to bring that up.

17              THE COURT:  You know each one of those parts has a

18   name?

19              MR. HANLE:  I do.  I don't know them all but --

20              THE COURT:  Neither do I but I was in the British

21   Museum not long ago looking at columns from the Parthenon

22   and they had this whole detailed description of all of the

23   different pieces of the column and I said:  They all have

24   names.

25              MR. HANLE:  I can remember --
```

```
 1              THE COURT:  Yes.
 2              MR. HANLE:  -- Ionic columns and Corinthian
 3    columns; but beyond that, you lose me.
 4              THE COURT:  And Doric.
 5              MR. HANLE:  Doric is the third piece.  There you
 6    go.
 7              THE COURT:  All right.  Now, I think you've gilded
 8    the lily now.
 9              MR. HANLE:  I was just about to move on.
10              THE COURT:  Okay.
11              MR. HANLE:  Could you go to Slide 30, please.
12              (The slide was displayed on the screen.)
13              MR. HANLE:  And we'll talk about the Court's
14    construction of the term "to couple to"; and the Court
15    construed it as to directly connect structures without the
16    use of external wires or cables.
17              I guess I'd first point out that we believe this
18    is inconsistent with your earlier ruling where you said that
19    neither direct coupling nor the positioning of the
20    controllers are aspects of the Claim 1 limitations.
21              THE COURT:  You're talking about the preliminary
22    injunction --
23              MR. HANLE:  That's right.
24              THE COURT:  -- which is not controlling.
25              MR. HANLE:  I agree with that.
```

```
 1              THE COURT:  And I have a much better sense of the
 2   case now than I did then just because of the lapse of time
 3   and the opportunity to study it more carefully.
 4              MR. HANLE:  Understood.
 5              THE COURT:  I'm not sure that it is inconsistent;
 6   but even if it is, hopefully I know a little more now than I
 7   did then.
 8              MR. HANLE:  Understood.
 9              We would submit that this construction is -- it's
10   not only importing a specification -- excuse me -- importing
11   a limitation from the specification but it's importing a
12   limitation that really isn't even in the specification so
13   there is nowhere in the specification that requires coupling
14   to be limited to a direct coupling.
15              It's not there.
16              And so I think one has to strain to find it; and I
17   think coming back to the legal point which is that the
18   patentee is free to choose a broad term and should expect to
19   obtain the full scope of its plain and ordinary meaning
20   unless there's an explicit redefinition or a disavowal.
21              Neither exists here.
22              So it's undisputed that coupling without some sort
23   of limitation that you're considering from the specification
24   is limited to both a direct and indirect connection.
25              THE COURT:  Let me ask you this question --
```

| | |
|---|---|
| 1 | MR. HANLE:  Certainly. |
| 2 | THE COURT:  -- then in response to that point; and |
| 3 | I don't -- the record here is pretty big and I'm not going |
| 4 | to tell you that I am as familiar with it in every specific |
| 5 | detail as I would like to be; but I think I'm reasonably |
| 6 | familiar with it. |
| 7 | And as I understood the patent prosecution history |
| 8 | in this case, which is intrinsic evidence, that one of the |
| 9 | principle objectives of the patent here was the elimination |
| 10 | of wires and cables in the charging process; that -- and I |
| 11 | think that was argued at some length in the preliminary |
| 12 | injunction motion as well; but that the invention was |
| 13 | designed to get away from that aspect of charging and to |
| 14 | allow for this mechanical, you know, we put it in, we keep |
| 15 | from bending and breaking things, we have the guides on the |
| 16 | slots and so forth in the base, and that the whole idea of |
| 17 | the use of wires, external wires and cables, was supposed to |
| 18 | be eliminated by this patent. |
| 19 | Am I wrong on the prosecution history? |
| 20 | MR. HANLE:  Well, couple points and I wouldn't say |
| 21 | you're wrong. |
| 22 | THE COURT:  Well, I mean, if I am, I am and tell |
| 23 | me and point me in the right direction and I'll further |
| 24 | educate myself. |
| 25 | MR. HANLE:  Sure. |

```
 1              THE COURT:  But that's my understanding of the
 2    record.
 3              MR. HANLE:  I would say that the background of the
 4    patent does describe a desire to get away from cables.
 5    There is no prior art that was distinguished on that basis
 6    during the prosecution history.
 7              So -- and to the legal point, for the prosecution
 8    history to be able to limit the broad claim language, there
 9    has to be an express disavowal or an amendment that's
10    specifically to get around prior art with that limitation;
11    and there was none of it.
12              THE COURT:  If we're dealing with prosecution
13    history estoppel, that's certainly true; but it's
14    certainly -- I mean, the case law doesn't say, as I read it,
15    that if a patent is -- if an invention is presented to the
16    USPTO with the purpose of solving an existing problem,
17    whether that problem is identified in prior art or not, if
18    the problem is articulated in the prosecution history, that
19    that information is pertinent and should be taken into
20    consideration by me in determining what this patent means
21    and its scope.
22              Is that not right?
23              MR. HANLE:  You could certainly consider it.
24    However, *Thorner* and many cases are very clear that absent
25    an express disavowal you don't change the construction of a
```

1    broad term.  You don't.

2            That is contrary to many, many Federal Circuit

3    cases including the *Thorner* cases.  But you can look at the

4    prosecution history to guide you; but if you've got a broad

5    term, the patent applicants use broad terms for a reason.

6    They want broad coverage.

7            And to come back now and to say that:  Well, you

8    know, there were some arguments made or some general

9    characterizations made so I'm going to limit that claim term

10   down and possibly save the patent from prior art, you're now

11   saving -- you're changing the applicant's intent.

12           If the applicant came and used the broad plain

13   term, they need to live with the consequences of the use of

14   that broad claim term.

15           THE COURT:  Okay.  All right.  I mean, I think I

16   understand the point you're making; but I'm not sure that

17   you're responding directly to mine which is that you're

18   describing a circumstance where the applicant is trying to

19   patent around prior art and, in the process of patenting

20   around prior art, is disavowing certain things and,

21   therefore, subjecting themselves to the defense of

22   prosecution history estoppel when we come to this process

23   because, as we know, patentees sometimes come back to court

24   and they try to broaden it after they have narrowed it in

25   the patent office and that is the more typical problem.

1        MR. HANLE:  This is the opposite of that.

2        THE COURT:  I understand.  We're in the reverse

3   situation where you're saying:  Well, if they didn't disavow

4   something in the process, then they're stuck with a broad

5   term.

6        What I'm saying to you is:  Language is inherently

7   imprecise and there are limitations on language; and the

8   question is:  When we take a term which may, from a

9   dictionary definition standpoint not have much limitation on

10  it, don't we have to look at what happened, why it happened,

11  in addition to what's in here to figure out what it means in

12  this context?

13       MR. HANLE:  I think we should look at that, but I

14  think what the conclusion is is that the applicant intended

15  to use a broad term "coupled" and that's evidenced by the

16  fact that when the applicant wanted to say "electrically

17  coupled" the applicant said "electrically coupled."

18       So the conclusion then -- to the extent that I'm

19  not sure if the Court was relying on a differentiation-type

20  analysis here, but to the extent the Court was, then the

21  differentiation is not between "electrically coupled" and,

22  therefore, just "coupled" or "to couple to" must mean

23  something different.

24       It's that "to couple to" must mean something

25  broader and it must include all kinds of coupling.  So to

1    the extent there's differentiation, it's not between

2    electrically coupling and mechanically coupling.  It's

3    between electrically coupling or any kind of coupling which

4    is the broad term "to couple to."

5            THE COURT:  The problem I have with that aspect of

6    the argument is that I don't understand what "electrically

7    coupled" means.

8            I mean, it doesn't mean anything to me because

9    things aren't coupled electrically.  They're coupled

10   physically, mechanically; and there's no sort of electrons

11   in the air coupling things together in an electronic sort of

12   way in this patent.

13           MR. HANLE:  Well, this may be one where the

14   dictionary definitions -- I know I heard what you said

15   earlier about Judge Rader and dictionary definitions, but

16   this may be one where dictionary definitions actually help

17   because, in fact, "coupling" very clearly in every single

18   dictionary definition cited by either party can include

19   electrical coupling.

20           THE COURT:  What does that mean?

21           MR. HANLE:  It means exactly what Your Honor said

22   it means.  We, in fact, will submit right here, right now,

23   on the Court's construction of "electrically coupled."  We

24   have no problem with that.

25           THE COURT:  Then why are we talking about it?

1    *(Laughing.)*

2           MR. HANLE:  No, no.  No, no.  So we're talking

3    about the term "to couple to" not the term "electrically

4    coupled to."  So "electrically coupled," we are satisfied

5    with the Court's construction.

6           THE COURT:  Okay.  You're okay with that but I

7    see.  Okay.  I got you.

8           MR. HANLE:  So -- and so -- and that sort of

9    brings us to the point is that the patent -- and, Your

10   Honor, just to remind you that the Court's construction of

11   "electrically coupled" included both direct and indirect

12   connections.

13          THE COURT:  Uh-huh.

14          MR. HANLE:  And so that, to us, that's a key point

15   because why would you limit -- why would you read

16   "electrically coupled" as including -- and that's a narrower

17   term -- as including both indirect and direct and then take

18   the broader term "to couple to" and now all of a sudden

19   import this direct limitation.

20          That, to us, makes no sense; and, furthermore, it

21   doesn't make sense in the context of the patent because the

22   patent uses the term "to couple to" and "electrically

23   coupled to" interchangeably; and we've got an example of

24   this on this slide.

25          *(The slide was displayed on the screen.)*

1          MR. HANLE:  And so Claim 1 there is talking about

2    talking about DC ports configured to couple to and provide

3    DC power to a controller.  Okay?

4          Now, let's look how the written description

5    describes that same connection.  Again, we're talking about

6    DC ports connected to controller; and it describes that very

7    same connection in column 9 as "the charging system further

8    includes DC port 408 within each of the docking bays that is

9    configured to electrically couple to the video-game

10   controller.

11         So Claim 1 uses "to couple to"; the written

12   description uses "electrically coupled to" to talk about the

13   very same connection.

14         Similarly, column 10, the video-game controllers

15   for 20 may be received horizontally into the docking bays

16   and electrically coupled to the DC ports.

17         Again, the same connection is described in the

18   claim as "coupled to" and described in the specification as

19   "electrically coupled to" which shows that those two terms

20   are used interchangeably.

21         By the way -- and I overlooked and I didn't

22   highlight in the first excerpt from the written description

23   from column 9 -- if you look, the last line it says:  And

24   delivered DC power to the coupled video-game controller.

25         It doesn't say "electrically coupled"; it says

1     "coupled"; and so, again, the patent, even in the same

2     sentence of the specification, is using the terms "coupled

3     to" and "electrically coupled to" interchangeably and so

4     there's just --

5              THE COURT:  So is your position that they're

6     really indistinguishable?

7              MR. HANLE:  Yes.  Although, no.  They're not quite

8     indistinguishable because an electrical coupling requires

9     there to be an ability to pass a signal back and forth.

10             So you could have a coupling without it being

11    electrical.  You could have, you know, you could have a

12    physical mechanical coupling that is not electrical.

13             The coupling of two wheels of a locomotive for

14    example.

15             THE COURT:  Yeah, but in this context, again, what

16    would be the -- why would you have anything that was

17    coupled -- why would you have the controller coupled to

18    anything if the purpose wasn't to flow current?

19             I mean, that's the entire object of the invention.

20             MR. HANLE:  We agree.  We agree.  So we don't

21    think it is technically correct to construe them

22    identically, but we would live with that.

23             THE COURT:  Okay.

24             MR. HANLE:  So --

25             THE COURT:  So you would change "to couple to" in

1    what way?

2         MR. HANLE:  It's plain meaning, directly or

3    indirectly connected to.  That's -- and, in fact, you've got

4    a lot of courts that have done just that and including the

5    Federal Circuit; and the *Zebco* case and I've got the slide

6    on the screen now.

7         *(The slide was displayed on the screen.)*

8         MR. HANLE:  And the very word we're talking about:

9    *"Zebco* cannot demonstrate that a limitation to the broad and

10   general term 'coupled' must be read into the claim.

11        "The unmodified term 'coupled' generically

12   describes a connection and does not require a mechanical or

13   physical connection because *Zebco* has not shown a sufficient

14   reason to alter the clear meaning.

15        "We agree with the district court that the term is

16   not limited to mechanical or physical coupling."

17        THE COURT:  Okay.

18        MR. HANLE:  And so we have *Zebco*.  We have a

19   number of other cases that we've cited in our brief which I

20   won't go into.  But all of them construed "to couple to" as

21   directly or indirectly connected to.

22        *(The slide was displayed on the screen.)*

23        MR. HANLE:  The NYKO, the plaintiff in this case,

24   has actually used the word "coupled to" in a contemporaneous

25   patent to refer to a cabled connection in the video-game

1    accessory art.

2         So on Slide 39, you have a patent and you'll see

3    that the assignee of the patent is NYKO and it very clearly

4    talks about a game console is also coupled -- excuse me --

5    let me go to the abstract on the page here.

6         "The video-game controller may be coupled to the

7    game console over a cable."  Okay?  It doesn't say

8    "electrically coupled"; it says "coupled."

9         So clearly coupling can encompass a connection

10   through a cable, and so we think that that is objective

11   evidence of what "coupling" means in the video-game art and

12   it would include an indirect cabled connection.

13        May I ask Your Honor?  Is -- I don't want to

14   necessarily go into my argument unless I understand there's

15   a need to.  What was Your Honor's thinking in requiring a

16   connection that excludes an external wire cable?

17        THE COURT:  Well, partly the prosecution history

18   and what we've been talking about earlier, and the

19   combination of the prosecution history and then the lengthy

20   detailed specification and all of the various varieties of

21   embodiment, none of which reflected cabling.

22        MR. HANLE:  Okay.

23        All right.  Yes.  So I won't go into the point I

24   was going to discuss but I will just to kind of close that

25   point out, absent a disavowal -- and I understand you can

 1    look at the specification and the prosecution history to

 2    understand -- but unless there is a disavowal or a

 3    redefinition of a term, it should not be narrowed.

 4         THE COURT:  All right.  I'm going to go back and

 5    reread that case law and refresh my memory on it and make

 6    sure that I'm clear about it.

 7         So let's --

 8         MR. HANLE:  So I'll move on.

 9         THE COURT:  If we could, let's move on and let's

10    try to expedite.

11         MR. HANLE:  I will.  "Electrically coupled to," we

12    won't go into because I said we agreed to that construction.

13         THE COURT:  Yeah.

14         MR. HANLE:  The next claim term is the --

15         *(The slide was displayed on the screen.)*

16         MR. HANLE:  And Your Honor did not deal with this.

17    There were a number of claim terms which contained the

18    phrase "at least one structure."

19         THE COURT:  "At least one," yeah.

20         MR. HANLE:  And Your Honor, your tentative

21    construed that part of it; but Your Honor did not construe

22    the rest of the claim terms which is that's the -- there's

23    no dispute as to "at least one structure" but the dispute is

24    as to the rest of the claim term and so --

25         THE COURT:  Oh.

1            MR. HANLE:  -- that's our concern there.

2            THE COURT:  Okay.

3            MR. HANLE:  And so on the PowerPoint I can just

4    walk you through it quickly.  But the rest of the claim term

5    is -- includes at least one structure on the base for

6    providing physical support to the plurality of game

7    controllers.  And so -- and then you have a number of

8    similar limitations in Claim 1 and in Claim 13.

9            THE COURT:  Right; right.

10           MR. HANLE:  And the issue here is the mismatch, if

11   you will, between the "at least one structure and the

12   plurality of something else."

13           And that's the part that needs construction

14   because to try and match those two things up, it's a

15   head-scratcher, Your Honor; and we worked long and hard

16   trying to come up with something that reconciled it; and

17   there's a history there.  There's a history in the

18   prosecution history and let's talk about that.

19           So -- and this is the point Your Honor talked

20   about earlier is that an amendment that clearly narrows the

21   scope of a claim -- and this is prosecution history

22   estoppel --

23           (The slide was displayed on the screen.)

24           MR. HANLE:  -- would not allow the applicant to

25   come back and to regain that broader scope after they've

1    amended the claim to get around the prior art.

2              So the point here is that NYKO amended these

3    at-least-one-structure limitations and now is attempting to

4    regain that claim scope and so here --

5              *(The slide was displayed on the screen.)*

6              MR. HANLE:  -- are the original claims.

7              At least one structure on the base for providing

8    physical support to the at least one video-game controller.

9    That's one of the limitations.

10             The other one:  At least one DC port to provide

11   power to at least one video-game controller; and you'll see

12   there that the original claims they match up:  At least one

13   structure goes with at least one video-game controller.  At

14   least one DC port goes with at least one video-game

15   controller.

16             So there's a correspondence between the

17   at-least-ones in the claim language.

18             *(The slide was displayed on the screen.)*

19             MR. HANLE:  So what happened is that the examiner

20   rejected the claims based on prior art that charged a single

21   controller and so the applicant had to amend to get around

22   the prior art that charged a single device and here's how

23   they amended it.

24             So they amended that first limitation to at least

25   one structure on the base for providing physical support to

1   a plurality of video-game controllers; and so here's the

2   mismatch.  At least one now matches up with plurality.  But

3   look at the second limitation.

4           So the second limitation they amended to say:  A

5   plurality of DC ports, each of the DC ports configured to

6   provide power to a plurality of video-game controllers.

7           So in the second limitation, they have matched up

8   the plurality of DC ports, goes with the plurality of

9   controller.  But what they've done with the first part is

10  they've left it alone.

11          They said at least one structure can provide

12  support to a plurality of controllers.  So they've got a

13  mismatch, and the reason they have a mismatch there is

14  because they wanted to leave the claim broad enough so that

15  you could have a single structure which supported a

16  plurality of controllers.

17          They chose to narrow the claim to get around the

18  prior art by changing it to plurality but to leave it broad

19  enough so that they only needed one structure on the base.

20              *(The slide was displayed on the screen.)*

21          MR. HANLE:  And so -- and once you do that, you

22  need a claim construction that accounts for that mismatch.

23  So you need a claim construction that permits one

24  controller -- excuse me -- one structure to support a

25  plurality of controllers.

1           And so that's the constructions that we gave the

2    Court which we believe reconcile that mismatch; and so what

3    we're saying is that the claims should be construed at least

4    one structure but not necessarily all structures provide

5    physical support to two or more video-game controllers.

6           The plaintiff objected to our construction saying

7    that:  Well, no, not every structure has to support multiple

8    controllers; and we agree with that and that's our

9    parenthetical but not necessarily all.

10          So that's our -- we believe that's the only way to

11   sort of make sense of this mismatch between the at least --

12   the at least one structure supporting a plurality of

13   controllers.

14          *(The slide was displayed on the screen.)*

15          MR. HANLE:  So, you know, NYKO wants to ignore the

16   fact that it amended the claims; but having amended the

17   claims to create this mismatch, NYKO can't come back now and

18   try to avoid the consequences of that amendment.

19          *(The slide was displayed on the screen.)*

20          MR. HANLE:  And then absent a construction of at

21   least one which of those elements which reconciles that

22   mismatch, we think the claim is indefinite.

23          And, frankly, NYKO's expert, I think, would -- I

24   mean, if you read his testimony, supports our position

25   because asked to explain that, he was all over the map; and

1   he said a single structure by itself is not going to

2   practice the claims.

3            Well, it has to because at least one -- and

4   defendants concede this -- at least one could only include

5   one; and in the instance when at least one is only one, that

6   single structure has to support a plurality of controllers;

7   and we have a number of quotes from the expert trying to

8   make sense out of that mismatch.

9            *(The slide was displayed on the screen.)*

10           MR. HANLE:  And so as I said, our construction is

11   the one that would reconcile that mismatch.

12           Unless Your Honor has questions, I'll move on to

13   structure.

14           THE COURT:  No, I don't.  Go ahead.

15           *(The slide was displayed on the screen.)*

16           MR. HANLE:  Okay.  So the structure, the Court

17   construed "structure" as one or more physical components

18   attached to the base.  Your Honor proposed a possible

19   additional construction, "partition."

20           We would be comfortable with the construction as

21   partition because, frankly, we were -- we agree with Your

22   Honor that it needs to be construed because otherwise it's a

23   what is it?  No one really knows what it is.

24           And, you know, Your Honor says you struggled with

25   it, we struggled with it, the plaintiff avoided it entirely

1    because I suspect they struggled with it.  So we think that

2    it does require construction.

3            Our proposal that's based somewhat on your

4    construction, Your Honor, would be one or more physical

5    components and leave it at that and not -- we think the

6    second part of Your Honor's construction "attached to the

7    base" is incorrect under that *Digital-Vending* line of

8    authority.

9            THE COURT:  I think that's right.

10           MR. HANLE:  Okay.

11           THE COURT:  I do agree with that.

12           MR. HANLE:  Okay.

13           And, you know, if other elements of the claim want

14   to put it on the base or not, that's fine; but it shouldn't

15   be pulled into the --

16           THE COURT:  Yeah, I agree.

17           MR. HANLE:  -- structure.

18           THE COURT:  I think that's right.

19           MR. HANLE:  And we'll move on to "supported by the

20   base" then.

21           *(The slide was displayed on the screen.)*

22           MR. HANLE:  The "supported by the base," there are

23   three times where that -- and only three times -- where that

24   terminology appears in the patent.  One is in Claim 13, one

25   is in column 2 and it's the same language, and one is in

1    column 3 and, once again, it's the same language.  So those

2    are the only uses of that term in the patent.

3            And in each case, in each case, the DC port is on

4    the base.  So Your Honor's construction, although I

5    understand and appreciate the attempt to differentiate

6    between Claim 1 and Claim 13, Your Honor's construction

7    would read out the preferred embodiment.

8            So we think it cannot be correct and so --

9            THE COURT:  Reads it out of 13.  It doesn't read

10   it out of 1, does it?

11           MR. HANLE:  There's no -- that's correct.  But

12   there's no reason that you should or, frankly, can read it

13   out of 13.  There's nothing -- there's nothing in 13 that

14   permits to you read out the preferred embodiment.

15           So "supported by the base," I mean -- I mean,

16   here's one area of agreement with the plaintiff.  "Supported

17   by the base" has to include "on the base."  It has to.  It's

18   a broader term.  I think to limit it to a narrower term

19   would be incorrect.

20           So then the question is, you know, what does it

21   mean?  And we think that "supported by" is just a -- it's a

22   vague term.

23           *(The slide was displayed on the screen.)*

24           MR. HANLE:  You know, I don't know what it means

25   and, you know, counsel used the example of, you know, this

1    placard here being on a piece of paper.  But let's take it

2    further.

3            Let's put a, you know, let's put a table on the

4    roof of a building.  And then on top of the table is a book

5    and on top of the book is a cup.  Is the cup supported by

6    the base of the building?

7            I think that's pretty attenuated, Your Honor, and

8    so we think that there needs to be a construction that

9    removes that ambiguity.

10           THE COURT:  They're not asking that.  It's a

11   question of physics, I presume, because technically, yes.

12           MR. HANLE:  But here we've got plain language and

13   we've got lay jurors; and so I think that to say that

14   something is, you know, that is -- is this microphone

15   supported by the foundation of the building.

16           In the broadest sense, I suppose it is.  But I

17   don't think that that is the intent.  I don't think one

18   could get that from reading the patent.

19           THE COURT:  Well, if -- I guess here's the point.

20   If it's on, it's supported by but it could be supported by

21   without being directly on.

22           MR. HANLE:  Okay?  So I agree but here's the issue

23   is when you have a claim term that's so broad that you're

24   not really sure how far it goes.  For example, my, you know,

25   my cup-foundation-of-building example, you need to put some

1    limitations on it and then you go to the spec.

2              And when you go to the spec, every example -- and

3    there's only three and there are a number of figures, every

4    single time the DC port is on the base.

5              THE COURT:  But if we -- I understand that.  But

6    I'm concerned about reading something out of the claim in a

7    way that would be inappropriate by reference to the

8    specification as opposed to using specifications just to

9    construe it.

10             But let me ask you this question.  Doesn't

11   plaintiff's counsel's proposal about using the word

12   "necessarily" then circumvent the concern that you have?

13             You said your construction now reads this

14   preferred embodiment out of the claim, out of Claim 13, and

15   you can't do that.  But doesn't the inclusion of the word

16   "necessarily" cure that problem?

17             MR. HANLE:  Well, so then the construction would

18   be physically supported but not --

19             THE COURT:  By but not necessarily directly on the

20   base.

21             MR. HANLE:  So I think you beg the question is --

22   I think that's correct as far as it goes but the issue we

23   have with that is physically supported.  It gets into this

24   attenuation issue is what -- if it's hanging.

25             If it's hanging from the base, if the DC port is

1    on a cable.  I mean, is that supported by the base?

2          THE COURT:  Well, the answer as a matter of

3    physics is no because that would be tension and not

4    compression forces.  Support by the base, I think implies a

5    compression force, not a tensioning force.

6          Well, I won't go into the specifics as to some

7    issues that I've been dealing with on our new building; but

8    I'm very familiar with the hanging versus support.  Support

9    from the bottom versus support from the top.

10          MR. HANLE:  Well, but I think Your Honor just said

11   it.  I think if the words are "compression" and

12   "tensioning," there's a distinction.  But support, I think,

13   is neutral.  Support can --

14          THE COURT:  I think it implies.  I think by

15   implication you're talking about compression forces and not

16   tensioning forces.

17          But, look, let's -- I don't think we have to argue

18   about that to figure out how to deal with this.

19          *(The slide was displayed on the screen.)*

20          MR. HANLE:  Well, let me ask another question.

21   This is the one I struggled with "supported by the base."

22          Would "supported by the base" include when you had

23   a male mini-USB port on the controller?  And you took the

24   male mini-USB port on the controller and you attach it to

25   the base, is that now supported by the base?

| | |
|---|---|
| 1 | THE COURT:  Well, is it on -- I mean, the whole |
| 2 | controller is supported by the base once it's put on it, |
| 3 | right?  It's connected to it and it's supported by the base |
| 4 | at that point; right? |
| 5 | MR. HANLE:  I would submit that to say that -- to |
| 6 | say if the USB port, the male mini-USB is on the controller |
| 7 | and you can take it off and it's still on the controller and |
| 8 | now to have that claim cover that -- the DC port, the male |
| 9 | mini-USB port is supported by the base, I think that's a |
| 10 | stretch to say that. |
| 11 | *(The slide was displayed on the screen.)* |
| 12 | THE COURT:  Well, I mean, the difference between |
| 13 | the male USB mini-port being on the base or, you know, on |
| 14 | the controller.  In one case it's supported by the base and |
| 15 | in one case it's not until the controller is attached to the |
| 16 | base; right? |
| 17 | MR. HANLE:  Well, but -- and that's my point:  Is |
| 18 | the term supported by the base?  I don't know whether it |
| 19 | would include -- I don't think it fulfills a public notice |
| 20 | function to leave it that broad without defining it. |
| 21 | And so we did -- we did look for some additional |
| 22 | constructions that had been made and there are one court at |
| 23 | least we found that had done some additional construction |
| 24 | and support; and the construction was hold in position. |
| 25 | And so that is an alternate construction that we |

1    would -- that we would, you know, we would live with; that

2    male mini-USB port supported by the base could be male

3    mini-USB ports held in position by the base.

4             THE COURT:  I'll think about that.  Okay?

5             MR. HANLE:  Then and just I think I'm about done

6    but I guess the -- just to make sure the point was made, I

7    think -- well, no.  I don't want to cover the point because

8    it was made.

9             So just the last slide here --

10            *(The slide was displayed on the screen.)*

11            MR. HANLE:  -- which is that this sort of

12   summarizes our position on "supported by the base."  We

13   believe it means on the base.  We believe it's too vague on

14   its own and, therefore, you look to the spec.

15            And when you look to the spec, every single

16   embodiment has the DC port -- the male mini-USB port, I

17   should say, on the base.  But as an alternate, we would say

18   held in position by the base.

19            THE COURT:  Okay.  All right.  Got it.  Thank you.

20            MR. HANLE:  Thank you for your time, Your Honor.

21   I know we went over what we had hoped to do.

22            THE COURT:  If I didn't think it was helpful, I

23   wouldn't have let you talk.  *(Laughing.)*  I do have the

24   ability to stop people from talking at least here.  Maybe

25   not at home but, yeah, all right.

1          Mr. Hasan, let's finish up, please.

2          MR. HASAN:  Yes, Your Honor.

3          All of these arguments that were made today are

4    addressed in the papers, Your Honor; and there are a lot --

5    they're all addressed in the papers.  We addressed them in

6    the papers, you know.

7          When counsel stood up and talked about the plain

8    and ordinary meaning, we know that, from the standpoint of

9    one skilled in the art in light of the specification so

10   there is shorthand used over there and we know that.

11         Now, going back to the term "base," Your Honor,

12   and counsel focused on one example of it there.  You know,

13   we would be comfortable with the use of the term "body" in

14   it but "foundational structure" is equally fine.

15         But the fact is that this base --

16         *(The slide was displayed on the screen.)*

17         MR. HASAN:  -- as set forth and described in the

18   specification must be capable of holding other components

19   and it also has components on it, for example, the LED parts

20   and it has surfaces.

21         And so construing this as the Court has in its

22   tentative, we feel is correct because it has to be capable

23   of holding these parts, these other parts, and it shows that

24   in every example in the specification.

25         Further, if you look at the art at about the time

1    of the patent, the *Erickson* reference and the *Cole*

2    reference, these are the two references that the defendants

3    cited in the preliminary injunction opposition.

4                    *(The slide was displayed on the screen.)*

5            MR. HASAN:  The *Erickson* reference talks about the

6    base being the entire body that includes other components.

7    It's consistent with this definition over here *(indicating)*.

8            Finally, when we're looking at one skilled in the

9    art, Your Honor, the testimony of Mr. Kitchen, plaintiff's

10   expert, is the only testimony that we have from one skilled

11   in the art.

12           And that should give weight because the intrinsic

13   evidence must be read in the context of one skilled in the

14   art and his or her understanding.

15           THE COURT:  It is still extrinsic evidence,

16   though; right?

17           MR. HASAN:  It is.  It is, Your Honor.  It sheds

18   light on, one would think, but it's certainly extrinsic

19   evidence.  We're not disputing that.

20           THE COURT:  Okay.

21           MR. HASAN:  Second, when you look at the term "to

22   couple to," we submit again on the tentative; and as the --

23   Your Honor pointed out and as is captured in the tentative

24   here, the -- first of all, it's clear that "to couple to"

25   and "electrically couple to" are used consistently and

1    they're used in different ways.

2         "Electrically coupled to" is used to describe a

3    direct or indirect connection for the purpose of current

4    flow which is exactly what you have here in the tentative,

5    Your Honor.

6         And "to couple to" and provide power to is used to

7    describe a mechanical connection; and that is done

8    consistently throughout the specification and in the claims.

9         If you look at Mr. Kitchen's report that he cited,

10   he goes through every single instance where "to couple to"

11   is used and where "electrically coupled to" is used and it's

12   entirely consistent.

13        Further, if the Court were to construe something

14   to include wires or cables externally, that would go against

15   the essence of the invention.  It would go against the

16   teachings and the background of the patent and in the

17   prosecution history.

18        And so the entire patent is dedicated around an

19   invention that limits, gets rid of -- excuse me -- the

20   external wires and cables; and you can see that in every

21   single drawer, every single figure throughout the

22   specification.

23        We're not giving a new meaning to the word "couple

24   to."  In the mechanical context, it describes a coupling, a

25   connection, a physical joining together.

1          To move on, Your Honor, we agree with
2    "electrically coupled to" in the electrical context.
3    There's a lot of case law on that.  That's Number 3, Your
4    Honor.
5              *(The exhibit was displayed on the screen.)*
6          THE COURT:  Let me just ask you about that
7    particular point because one thing counsel said has given me
8    some pause.  He says:  Look.  He says:  If we look at the
9    two terms and we look at which is the broader of the two and
10   look at the Court's proposed construction, the Court has
11   proposed a broader construction to the narrower of the two
12   terms.
13         And, you know, that doesn't necessarily make sense
14   in context of this patent.  What do you say to that?  What's
15   your response to that?
16         MR. HASAN:  Well, our response to that, Your
17   Honor, is that "coupled to" has a meaning in the mechanical
18   context and it has a meaning in the electrical context; and
19   those terms are used in two different contexts in this
20   patent.
21         Now, in the electrical context, it's used to
22   describe throughout the specification a direct or indirect
23   connection.  In the mechanical context, it's used to
24   describe only a direct connection.
25         If you look at the technical dictionaries that

1    we've provided, it will have a definition and it will say

2    next to it "mechanical," m-e-c-h, and then it will say

3    "electrical" as a different definition.

4                The case law goes into this, Your Honor.   The

5    Federal Circuit has spoken to this.

6                THE COURT:   Let me ask you this, though.   I mean,

7    if I look at your words, I mean, you say to join, link, or

8    connect structures together.   Okay.   So up to that point

9    we're talking just about -- we haven't spoken about direct

10   or indirect.   We haven't talked about the use of external

11   wires or cables and so forth.

12               I've explained why I looked at the language as a

13   basis for -- well, what I looked to to determine why I would

14   say or why I was at least tentatively willing to say without

15   the use of external wires or cable.

16               But counsel has made the argument that the

17   language was left deliberately broad and Federal Circuit

18   case law says that under those circumstances, despite the

19   objective perhaps of the inventor if there wasn't an express

20   disavowal, then I should read that into the claim, into the

21   claim construction.

22               So what do you say to that?

23               MR. HASAN:   Well, Your Honor, here we have a

24   definition of the "couple to" that means to connect together

25   in the mechanical context.

```
 1              In the Abbott Labs case, Your Honor, that we
 2     cited, the Federal Circuit construed "to couple to" to mean
 3     exactly what we have here which is to have a connection
 4     without the use of external wires and cables.
 5              In the other case that was cited by the
 6     defendants, it had the same thing.
 7              THE COURT:  You certainly -- you would agree that
 8     you could mechanically couple two things together with a
 9     cable; right?  You could do that?
10              MR. HASAN:  Not in this context, Your Honor.
11              THE COURT:  Well, I mean, I'm just talking --
12     let's work -- let's work from the broad to the narrow.  I
13     mean, it's physically possible.  I mean, you could couple
14     two things together with the cable.
15              You're saying -- okay.  No, that's not what was
16     intended here.  And I understand from looking at the
17     prosecution history what was -- I think what the objective
18     of the invention was.  Yet the language is quite broad.
19              MR. HASAN:  Your Honor, if you look at this --
20              THE COURT:  Do I narrow it for you now?
21              MR. HASAN:  No, Your Honor.
22              You just provide it within the context of what one
23     with ordinary skill in the art would understand from the
24     specification.  So when you look at this figure that we have
25     up here --
```

```
 1              (The slide was displayed on the screen.)
 2         MR. HASAN:  -- it shows the DC port on the
 3    controller and then it shows -- I'm sorry -- the female port
 4    on the controller and then the male port on the base over
 5    there (indicating).
 6              And if you look at the figures of how this would
 7    work because of the aligning and the other aspects of the
 8    claim, the claim language itself, Your Honor, it talks about
 9    the structures being used to accept the video-game
10    controllers and hold them up.
11              How could you possibly do that if there was a wire
12    cable interjected into it?  The video-game controller would
13    fall over.  It would not be able to be supported.  You can't
14    support something in there with an external wire cable.
15              So if you look at figure 21, for example --
16              (The slide was displayed on the screen.)
17         MR. HASAN:  -- it shows on figure 21, slide --
18    yeah, there -- it shows these video-game controllers on the
19    base; and if there were a wire or cable interjected there,
20    it would not be able to serve its function.
21              Secondly, the background of the invention, as
22    defendants pointed out correctly, it talks negatively and
23    disavows the use of the cables.
24              It says cables are not what we want here; and so
25    you have this prosecution history that states it.  You have
```

1    all the drawings that show it.  You have claim language that

2    requires it because other parts of the claim language would

3    not be able to serve their function if there were wire cable

4    interposed there.

5            And so all of these, Your Honor, bring it in plus

6    the testimony of the only one skilled in the art whose

7    testimony we have here, albeit extrinsic evidence, of what

8    he would understand it to mean.

9            THE COURT:  All right.

10           Any other terms you want to talk about?

11           MR. HASAN:  Yes, Your Honor.

12           On the term -- on the term "partition" that Your

13   Honor brought up for "structure," I wanted to point out

14   something in the claim that talks about how, you know, that

15   might -- so if you turn to one of the claims, please.

16   Claim 1, please.

17           *(The slide was displayed on the screen.)*

18           MR. HASAN:  So if you look at the last clause,

19   Your Honor, "Wherein the at least one structure on the base

20   further comprises a plurality of pairs of opposite surfaces"

21   -- and here's the operative part -- "each pair of surfaces

22   defining a respective docking bay of the plurality of

23   docking bays and then each of the DC ports being on the base

24   between the respective one of the pairs of surfaces."

25           So this defines the structure of the docking bay,

1   Your Honor, which -- as I'm looking, turn to one of the

2   figures with the docking bay, please.

3           *(The slide was displayed on the screen.)*

4           MR. HASAN:  When you look at that, you can see the

5   opposite surfaces that are on two different partitions and

6   then you can see the DC port in between; and those two

7   surfaces define a docking bay.

8           THE COURT:  Yeah.  But I don't think that was

9   counsel's point with respect to this particular term.  I

10  mean, I understand that but that wasn't the point he was

11  making, was it?

12          MR. HASAN:  Well, that was one of the points you

13  brought up, Your Honor, in terms of what you might want to

14  change this definition to.

15          THE COURT:  No.  I mean, I understand and you've

16  articulated some of what I was thinking in the process as I

17  was going through the process.

18          MR. HASAN:  Yeah.

19          THE COURT:  So that's -- I mean, yeah.  Okay.

20          MR. HASAN:  So we would submit to what you said

21  over here.

22          Now, to go to what the -- when you spoke about

23  what counsel were saying, were you talking about what he was

24  saying about the prosecution history and limiting things?

25  Or which point would you like me to address, Your Honor, so

1    I focus?

2              THE COURT:  Well, what he said was:  Look.  If you

3    look to the prosecution history and if you look at the terms

4    in the claim and if there are broad claims in the term,

5    broad terms in the claim that haven't been disavowed in the

6    course of the prosecution history, one must assume that they

7    were intended broadly in the broadest sense and, therefore,

8    the Court should not impose narrowing or limitations.

9              And I thought you had just addressed that just a

10   minute ago.  But that was the point that counsel made with

11   respect to a couple of different claim terms that we're

12   talking about here.

13             MR. HASAN:  Sure.

14             First of all, we have to look at what the

15   understanding is in the proper context as a starting point.

16             So when, you know, counsel says:  Oh, well, they

17   just meant it to be broad, I mean he was speaking of lay

18   definitions, I believe, when he was looking at these.

19             When we speak of base, for example, when we speak

20   of these terms, you know, he spoke of the bottom of a table.

21   That's not -- that's not the context we're talking about

22   over here; and, you know, that column that was put in in the

23   preliminary injunction, you know, that was the first inning,

24   Your Honor, that, you know --

25             THE COURT:  I've already said that's not that

 1   significant to me.

 2            MR. HASAN:  Right.

 3            THE COURT:  So you don't need to talk about it.

 4            MR. HASAN:  So when you look at the table and you

 5   look at the bottom of a table, that's not what this is over

 6   here.  I made the bad analogy to a stethoscope.  But what I

 7   mean was is that you have a base here that's holding a

 8   separate object.

 9            The separate objects are the video-game

10   controllers.  This is not like a base of a table where the

11   base is just holding that part.  It has additional functions

12   as well.

13            And that's why we provided a technical dictionary

14   that talks about it being a foundation or support for other

15   objects.

16            Now, other aspects shed light on that, too.  The

17   *Erickson* and *Cole* reference both talk, especially *Erickson*

18   talk about the base being a body.

19            And if you look at the surfaces that we've pointed

20   out in our papers, we don't go back to that.  There are top

21   surfaces, side surfaces.  So this is a physical body that

22   houses components, not only the AC to DC converter, but also

23   it incorporated on it are the LED lamps.  That's another

24   thing that's put in there.

25            And so this body, this housing has to be a body

1   that's capable of incorporating things in or on it; and we

2   feel that your construction is proper in that regard, Your

3   Honor.

4              As far as structure goes, when you look at, you

5   know, narrowing of that structure, one or more physical

6   components attached to the base, there's nothing wrong with

7   that construction.

8              THE COURT:  Okay.

9              MR. HASAN:  Okay.

10             THE COURT:  All right.  Thank you.

11             MR. HASAN:  Thank you.

12             MR. HANLE:  I just have very few follow-up points,

13   Your Honor.

14             THE COURT:  You shouldn't have any but you get

15   two.

16             MR. HANLE:  Okay.

17             THE COURT:  Make whatever your best two points and

18   then we'll be done.

19             MR. HANLE:  All right.  The two points are --

20             *(The slide was displayed on the screen.)*

21             MR. HANLE:  -- counsel kept referring to putting

22   "couple" in the mechanical context.  Nowhere in the patent

23   does it use the words "mechanical" or otherwise require

24   "couple to," the broad term, to be in the mechanical

25   context.  So that's point number one.

| | |
|---|---|
| 1 | Point number two -- how do I get that on the |
| 2 | particular page I'm looking at? |
| 3 | *(Pause in the proceedings.)* |
| 4 | **(The slide was displayed on the screen.)** |
| 5 | MR. HANLE:  Thank you, Steph. |
| 6 | Okay.  Counsel alluded to *Erickson* and *Cole* as |
| 7 | saying the base is the body.  That's just not true.  The |
| 8 | base on *Cole*, as shown here and, unfortunately, I don't have |
| 9 | a picture here of *Erickson* as well but it's the same point, |
| 10 | the base is 15 which is the supporting part, the foundation, |
| 11 | and the charging rack there is 10. |
| 12 | And so the whole body would be 10, the base which |
| 13 | is the supporting part, the bottom part, the foundation, is |
| 14 | 15.  So there -- so, you know, we would -- and that's |
| 15 | consistent with the definitions. |
| 16 | And counsel referred to the dictionary definition |
| 17 | where a base is defined as something as a foundation that |
| 18 | supports other objects.  That's just not true. |
| 19 | The dictionary definition, even the one that he |
| 20 | referred to, is foundation for the object itself; and those |
| 21 | are my two final points, Your Honor. |
| 22 | Thank you. |
| 23 | THE COURT:  All right.  Thank you. |
| 24 | The matter will be taken under submission and we |
| 25 | will get you a written ruling as soon as reasonably |

74

1   possible.

2           MR. HANLE:  Thank you very much.

3           THE COURT:  And I don't know what that means

4   exactly but other than what I said so okay.  Thank you.

5           MR. HASAN:  Your Honor.

6           THE COURT:  Yes.

7           MR. HASAN:  May we -- the other side gave a copy

8   of their slides.  May we send the slides to the Court?

9           THE COURT:  Sure.

10          MR. HASAN:  Can we e-mail it?

11          THE COURT:  Yes, that's fine.  That's fine.

12          MR. HANLE:  I can deal with counsel.

13          THE COURT:  Yeah.  I mean, you can exchange copies

14  of those slides.  That's fine.  No problem.

15          Okay; thank you.

16          MR. HANLE:  Thank you.

17          MR. HASAN:  Thank you.

18          THE COURT:  All right.

19          *(At 11:06 a.m. proceedings were concluded.)*

20

21                          **-oOo-**

22

23

24

25

1                          **CERTIFICATE**

2

3              **I, PAT CUNEO, CSR 1600, hereby certify that**

4      **pursuant to Section 753, Title 28, United States Code, the**

5      **foregoing is a true and correct transcript of the**

6      **stenographically reported proceedings held in the**

7      **above-entitled matter and that the transcript page format is**

8      **in conformance with the regulations of the Judicial**

9      **Conference of the United States.**

10

11     Date:  May 29\, 2013

12

13

14

15

16                                    **/s/ PAT CUNEO**

17                                    **PAT CUNEO, OFFICIAL REPORTER**
                                       **CSR NO. 1600**
18

19

20

21

22

23

24

25