UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**         (In Chambers)

**ORDER RE: CLAIM CONSTRUCTION**

**I.**
**INTRODUCTION**

Plaintiff NYKO Technologies, Inc. ("NYKO") holds the patent on a wireless game controller charging system that contains multiple docking bays allowing for several game controllers to be charged at the same time. The charging system is described in United States Patent No. 8,143,848 (the "'848 Patent" or the "Patent"), entitled "Video Game Controller Charging System Having a Docking Structure." (Docket No. 105, [First Declaration of Katherine L. Quigley ("First Quigley Decl.")], Ex. A ['848 Patent]; Docket No. 98, [Plaintiff's Opening Brief ("PB")] at 1; Docket Nos. 100, 104, [Defendants' Opening Brief ("DB") at 1.) This case arises out of the alleged infringement of that patent by Energizer Holdings, Inc. ("Energizer"), Eveready Battery Co., Inc. ("Eveready"), and Performance Designed Products, LLC ("PDP") (collectively "Defendants") through the sale of a competing video game controller charging system having a docking structure purportedly covered by the '84 patent. (Docket No. 85, [First Am. Compl. ("FAC")] ¶ 10.)

Of the 27 claims in the '848 patent, Independent Claims 1 and 13, and Dependent Claims 2-5, 7, 8, 10-12, and 14-17 are at issue. The parties dispute the meaning of six terms or phrases found in those claims, although the primary dispute centers prominently on the construction of the term "base" and whether the invention contemplates a wired connection between the DC port and the respective video game controller.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

The Court has considered the written submissions of the parties regarding the disputed terms and conducted a hearing where the parties offered further argument. The following sets forth the Court's resolution of the issues presented.

**II.**
**BACKGROUND**

**A. PROCEDURAL HISTORY**

Plaintiff initiated this action on April 5, 2012, asserting one patent infringement claim based on Defendants Energizer's and PDP's alleged sale of competing "video game controller charging systems having a docking structure". (Docket No. 1, [Compl.] ¶ 8.) Shortly thereafter, Plaintiff filed an ex parte application for a temporary restraining order, which the Court denied on June 1, 2012. (Docket No. 51, [06/01/12 Order].) On December 14, 2012, Plaintiff filed a First Amended Complaint pursuant to a stipulation between the Parties. (FAC.) The FAC asserts one patent infringement claim, expands upon the factual allegations, and adds Defendant Eveready. (Id.) Defendants answered on December 28, 2012, also asserting a counterclaim seeking declaratory judgment as to noninfringement, invalidity, and unenforceability. (Docket Nos. 88, 93 [Answer and Counterclaim].) Plaintiff answered the Counterclaim on January 16, 2013. (Docket No. 96.)

**B. OVERVIEW OF THE PATENT**

The patent described a video game controller charger (the "Charger" or "Charging System") for wirelessly charging video game controllers. ('848 Patent at 1:16-19, 1:66-2:1; PB at 1.)[1] Wireless video game controllers are often used and require periodic recharging. ('848 Patent at 1:46-52.) The controllers and the charging device have matching plugs (a female end

---

[1] While the specification notes that the '848 Patent is not limited to charging video game controllers, i.e. is capable of charging other handheld electronics devices ('848 Patent at 15:12-20), any other potential uses are not at issue here.

Additionally, though the Summary of the Invention frequently uses the phrase "at least one video game controller," the pertinent claims - independent Claims 1 and 13 - were amended during prosecution to substitute the phrase "plurality of video game controllers" so as to confirm that the device was not intended to be structured to charge a single controller. (Docket No. 104-1, [First Declaration of Graham M. Buccigross ("First Buccigross Decl.")], Ex. 5 [Prosecution History] at 159-161.) While practically speaking the charging station could charge a single controller, the charging station must have a plurality of docking bays. This is discussed in detail infra at III.C.4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

and a male end, respectively) that fit together to make a connection in order to charge. (Id. at 1:52-54.)  These plugs are often small and fragile, so the user must use care in forming the connection. (Id. at 1:57-62.)

Plaintiff's '848 Patent is a charging station capable of charging a plurality of video game controllers simultaneously. (Id. at 1:66-2:1, 15:30-31, 16:28-29.)  Though there are multiple embodiments of the Charging System, the claims at issue indicate the relevant embodiment.  The Charging System consists of a number of inter-working parts.  There is a base, on top of which sits at least one structure that provides physical support to the controllers while they are being charged. (Id. at 2:1-3.)  DC ports on the base are configured to couple to and provide DC power to the input ports of the controllers. (Id. at 2:5-8.)  The DC ports may be male mini-USB connectors. (Id. at 2:8-9.)[2]  Additionally, a current detector may be electrically coupled to each DC port and also electrically coupled to an indicator; the indicator indicates the charging status of the Charging System. (Id. at 2:10-15.)   The support structure physically supports the controllers and comprises a plurality of docking bays configured to receive the controller. (Id. at 2:16-18.)  The support structure is configured such that opposite facing surfaces, which may include locating buttons, receive and align the controller so that the controller's power input port couples to the DC port on the base. (Id. at 2:19-23.)  An AC-to-DC converter located either inside or outside the base converts externally supplied power to DC power. (Id. at 2:32-35.)[3]

**III.**
**DISCUSSION**

**A.  LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION**

The construction of a patent is a matter of law for the Court.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  To determine the meaning of a patent claim, the Court primarily considers three sources: (1) the claims; (2) the specification; and (3) the prosecution history.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir.1995) (en banc), aff'd, Markman, 517 U.S. 370.  These sources constitute the "intrinsic" evidence from which the meaning of the patent terms is to be derived.  Vitronics Corp. v. Conceptronic, Inc., 90

---

[2] A mini-USB connector is a type of DC port.

[3] Although not a relevant embodiment in this action, another exemplary embodiment involves an external adapter that couples to the controller and remains on the controller when in use. ('848 Patent at 3:15-29.)  The external adapter has an electrical lead that matches to an electrical contact on the base of the Charger when the controller is being charged. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

F.3d 1576, 1582 (Fed. Cir. 1996).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Accordingly, in construing disputed terms, the Court first looks to the words of the claims. Vitronics Corp., 90 F.3d at 1582. Generally, the Court ascribes the words of a claim their ordinary and customary meaning. Id. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1313.

Other claims of the patent in question can also assist in determining the meaning of a claim term, Vitronics, 90 F.3d at 1582; terms used consistently throughout the claims should be construed consistently. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001). Conversely, use of a term in a different way in another claim may also be useful in determining the particular meaning of the disputed term. Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1538 (Fed. Cir. 1991). The existence of a dependent claim that adds a particular limitation creates a presumption that the limitation in question is not present in the independent claim. Liebel-Flarseim Co. v. Medrad, Inc., 358 F.3d 898, 910 (Fed. Cir. 2004); Tandon Corp. v. U.S. Int'l Trade Comm'n, 831 F.2d 1017, 1023 (Fed. Cir. 1987). "[T]hat presumption can be overcome if the circumstances suggest a different explanation, or if the evidence favoring a different claim construction is strong . . . ." Liebel-Flarseim Co., 358 F.3d at 910. However, "where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest." Id. (citing Sunrace Roots Enter. Co. v. SRAM Corp., 336 F.3d 1298, 1302–03 (Fed.Cir. 2003)). The Federal Circuit has also made clear that this presumption is "especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim . . . ." Sunrace Roots, 336 F.3d at 1302–03. However, an en banc panel of the Federal Circuit recently addressed the claim differentiation doctrine in Retractable Technologies, Inc. v. Becton, Dickinson and Co., reiterating that "[c]laim language must always be read in view of the written description, and any presumption created by the doctrine of claim differentiation 'will be overcome by a contrary construction dictated by the written description or prosecution history.'" 653 F.3d 1296, 1305 (Fed. Cir. 2011) (citing Phillips, 415 F.3d at 1315; Seachange Int'l, Inc. v. C–COR, Inc., 413 F.3d 1361, 1369 (Fed.Cir. 2005)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

 Because the claims are part of a fully integrated written instrument comprised principally of the specification, the Court must next review the specification. Markman, 52 F.3d at 978–79. Because the specification must contain a description of the invention that is clear and complete enough to enable those of ordinary skill in the art to make and use it, the specification is "always highly relevant" to the Court's claim construction analysis. Vitronics, 90 F.3d at 1582. Phillips re-established the primacy of the specification in construing patent claim terms. "Usually, [the specification] is dispositive; *it is the single best guide to the meaning of a disputed term*." Id. (Emphasis added.) "In light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims." Phillips, 415 F.3d at 1316. In some cases, the specification may reveal that the patentee has given a special definition to a claim term that differs from its ordinary meaning. "In such cases, the inventor's lexicography controls." Id. at 1316. The specification also may reveal the patentee's intentional disclaimer or disavowal of claim scope. "In that instance, as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." Id. Thus, the specification can act as a dictionary when it expressly or impliedly defines terms used in the claims. Id. "[A] claim term may be clearly redefined without an explicit statement of redefinition." Bell Atl. Network Servs. v. Covad Communs. Group, 262 F.3d 1258, 1268 (Fed. Cir. 2001).

 Next, in addition to reviewing the specification, the Court should consider the patent's prosecution history, if it is in evidence. Markman, 52 F.3d at 980. The prosecution history is intrinsic evidence and consists of the complete record of the proceedings before the Patent and Trademark Office ("PTO") and includes the prior art cited during the examination of the patent. Phillips, 415 F.3d at 1317. "The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower then it would otherwise be." Phillips, 415 F.3d 1317; see also Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.") (internal quotations omitted).

 In addition to the foregoing intrinsic evidence, the Federal Circuit has also authorized district courts to rely on extrinsic evidence in claim construction, which consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Markman, 52 F.3d at 980. However, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

"Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various field of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention." Phillips, 415 F.3d 1318.  Accordingly, the Court may consider this evidence, if the Court deems it helpful in properly construing the claim terms.  Id.

**B.  DISPUTED CLAIM TERMS**

The parties dispute a number of claim terms:

1.    "base"
2.    "to couple to"
3.    "electrically coupled to"
4.    "at least one . . ."
5.    "structure"; "docking structure"
6.    "supported by the base"

(Docket No. 86, [Joint Claim Construction Chart ("JCC")].)

Claims 1 and 13 of the '848 Patent read as follows:

1.  A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller system comprising:
a base;
at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and
a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,
wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and
wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay the plurality of docking hays [sic] each of the DC ports being on the base between a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

respective one of the pairs of surfaces.

. . .

13.  A charging system for charging a plurality of video game controllers, each
having a power input port, the charging system comprising:
a base;
a plurality of male mini-USB connectors supported by the base and each
adapted to provide DC power to a respective one of the plurality of video game
controllers;
at least one docking structure defining a plurality of docking bays open in a first
direction and configured to receive from the first direction and align respective ones
of the plurality of video game controllers to couple to respective ones of the plurality
of male mini-USB connectors; and
a power input for connecting to a power supply, the power input electrically
coupled to the plurality of male mini-USB connectors,
wherein the at least one docking structure comprises a plurality of pairs of
substantially parallel opposite planar surfaces, each pair of surfaces defining a
respective docking bay of the plurality of docking bays, each of the docking bays
being open on opposite sides between the respective pair of surfaces.

('848 Patent at 15:30-52, 16:28-49) (emphasis added.)

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

## C. CONSTRUCTION

### 1. "BASE"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "base" Claims 1 and 13 of '848 Patent | (in opening brief) the foundation or support upon which structures rest<br><br>(in rebuttal brief) the foundation or support upon which structures rest, i.e. the entire body of the charger upon which the video game controllers rest in the docking bays | the bottom part of the charging system that provides physical support for the system against an external adjacent surface |

The Parties' disagreement over this term stems essentially from how broad the term "base" should be construed:  Plaintiff contends Defendants' construction is overly narrow; Defendants contend Plaintiff's construction is overly broad.  Specifically, Plaintiff asserts that "Defendants' proposed construction of the base . . . is vague as to 'bottom part' and does not capture the full entrée of features and functions that the base, as described in the '848 Patent, can provide."  (PB at 6.)  In contrast, Defendants assert that "Nyko's construction is an attempt to improperly broaden the claim to include an entire charging system as a 'base'."  (DB at 10.)

Defendants' raise valid concerns regarding the breadth of Plaintiff's proposed construction.  For example, the inventor of the '848 Patent, Amir Navid, testified that "[i]n the context of this patent, what a base is, is the entire charging device.  It's the charging system." (Docket No. 104-1, [First Declaration of Graham M. Buccigross ("First Buccigross Decl.")], Ex. 1, [Deposition of Amir Navid ("Navid Depo.")] at 239:24-240:1.)  Additionally, in its opening brief, Plaintiff at various points alludes to the base as "the entire charger body."  (PB at 7-8, 10-11.)  Reading base as the entire charging device would clearly contravene the plain language of the Patent.  The independent claims at issue, Claims 1 and 13, both state that "a charging system compris[es]" of "a base".  ('848 Patent at 15:30-34, 16:28-31.)  Claims 1 and 13 indicate that structures and DC ports are different pieces from the base.  (Id. at 15:35-38; 16:32-33.)  On the other hand, Claim 18, which is not at issue, claims "a base comprising at least one recess . . . , the base further comprising a power input," and "the base further comprises at least one structure defining at least one docking bay . . . ."  (Id. at 17:1-16.)  Accordingly, the Court must give

LINKS: 98, 100, 104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

credence to "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope . . . ." Karlin Tech., Inc. v. Surgical Dynamics, Inc., 177 F.3d 968, 971-72 (Fed. Cir. 1999). Plainly the relevant claims of the Patent envision a Charger System of which the base is simply a part. (See also '848 Patent at Figs. 11-18; id. at 9:44-48, 12:1-2 (indicating that Figs. 11-18 consistently describe "the video game controller charging system 400" and "the base 402", and a "charging station 510 includ[ing] a base 524 . . . .").)[4]

Even though Defendants provide useful criticism of Plaintiff's proposed construction, Defendants' construction also misses the mark. While Defendants argue that "the specification consistently and exclusively uses the term 'base' to describe only the bottom part of the charging system," (DB at 9), the Court is persuaded otherwise. The intrinsic evidence compels a construction of "base" that "takes into account that 'base' may include surfaces that are at the top portion of the charging system opposite the bottom portion, that those surfaces do not bear against any external surfaces . . . , and that the base must be capable of supporting the video game controllers as well as housing other physical components . . . ." (PR at 4-5.) Plaintiff, for example, points to the language of Claim 1 that states: "at least one structure **on the base** for providing physical support to the plurality of video game controllers"; "a plurality of DC ports **on the base** . . . configured to couple to . . ."; "the . . . structure **on the base** further compris[ing] a plurality of docking bays . . . configured to receive . . ."; and "the . . . structure **on the base** further compris[ing] a plurality of pairs of opposite surfaces . . .". (PB at 6-7 quoting '848 Patent at 15:35-48 (alterations and emphasis in brief).) Further, Claim 9 states that "the AC-DC converter is ***in the base***." (PB at 7; '848 Patent at 16:17-18.) (Emphasis added.) Various other parts of the specification also indicate the many functions the base serves. Figure 11 demonstrates that, in that particular embodiment, surfaces separate each bay in which a

---

[4] Prior art cited by the Parties reiterates that the base is not equated with the entire Charger System. Prior art that was cited in the patent is considered intrinsic evidence. See Phillips, 415 F.3d at 1317. Plaintiff cites to United States Patent Application Publication No. 2009/0072784 A1 by Craig Erickson ("Erickson"), which was cited in the '848 Patent. (Docket No. 109, [Second Declaration of Katherine L. Quigley ("Second Quigley Decl.")], Ex. S [Erickson].) Erickson, titled an Inductive Charger Battery Replacement System, Device & Method, refers to the body of the charger as the "base unit". However, the "base unit" is analogous to what in the '848 Patent is referred to as the "Charging System". (Compare Erickson at Claim 1 with '848 Patent at 15:34-52.) In Erickson, the base unit is stated as a "base unit comprising . . .", whereas here the Charging System comprises, among other things, a base. The Parties also address United States Patent No. 7,942,747 by Randall C. Cole ("Cole"). (Second Quigley Decl., Ex. R [Cole].) This was not cited in the '848 Patent and is therefore extrinsic evidence. Cole, titled a Video Game Controller Rack, is comprised of a vertical base and cantilever posts functioning to cradle each controller. (Cole at 3:46-60.) As in the '848 Patent, Cole describes the "base" as a part of the "video game controller rack" - they are not one and the same. (Cole at 3:30-41.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

controller will rest, such that a controller rests between two opposite facing surfaces. ('848 Patent at Fig. 11.) On that figure, the specification clearly indicates that at the far ends of the Charger, the base itself will play the role as one of the surfaces, functioning essentially as bookends at either end of the base. (Id.; id. at 9:47-55.) Furthermore, Figures 11 and 12 depict that the top of the base may also serve to support the controllers while in the docking bays. (Id. at Figs. 11-12.) Figure 15 clearly indicates that the base houses certain internal components. (Id. at Fig. 15.)

In light of the multi-faceted functions that the base undoubtedly serves, Defendants' construction is plainly untenable. Defendants' construction limits the base to providing support against the ground, rather than also functioning as a foundation or housing for other components. At oral argument, Defendants were unable to clarify just what "bottom part" actually meant aside from stating, essentially, bottom part means bottom part. (Docket No. 119, [Transcript] at 25:21-23, 26:10-13.) Nothing in the intrinsic evidence supports such a narrow reading of the term. The specification clearly demonstrates that the base is more that the bottom surface or the bottom part of the invention. Implicitly acknowledging that their construction found little support in the record, Defendants proposed a new construction at oral argument: "the foundation of the charging system." (Id. at 28:5-6.)

Though Defendants' new proposed construction is certainly preferable to its previous one, the Court finds that defining "base" as "foundation", in the context of this invention, merely substitutes one undefined term for another, offering no greater insight into what the "base" means. On the other hand, the term "body" clearly implicates the multifaceted functions of the base in the context of the Patent.[5] Defendants contested the term "body" at oral argument under the impression that "body" encompassed the entire Charging System. However, the Court finds this concern misplaced and grounded in Defendants' effort to analogize the invention to a table and then to argue that "body" is too broad because "the body of the table is the whole table." (Id. at 28:10-15.) The Court is not entirely certain a table has a "body" or a "base" in any sense relevant to this invention, which contains a physical structure that houses a variety of other essential components.

---

[5] The Court is aware that common dictionary definitions essentially state that a "base" is a support or foundation. (PB at 10, DB at 9.) The dictionary definitions, however, are of little import when the claim language and specification evidence the meaning of a term. See ArcelorMittal France v. AK Steel Corp., 700 F.3d 1314, 1320 (Fed. Cir. 2012). A broad dictionary definition, divorced from the specification, may result in a failure "to fully appreciate how the specification implicitly limits that definition . . . ." Phillips, 415 F.3d at 1321.

LINKS: 98, 100, 104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

Defendants' proposed constructions aside, the Court did find convincing Defendants' presentation at oral argument that to expand upon the term "base" by construing it to include the objects that rest upon it, are supported by it, or are included within it, would run contrary to Federal Circuit precedent cautioning against construing terms to render other claim language superfluous. (Id. at 30:22-32:25.) See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc., 672 F.3d 1270, 1275 (Fed. Cir. 2012); Phillips, 415 F.3d at 1314. That line of case law strongly militates in favor of a relatively simple construction of the term "base", given that the surrounding claim language defines what is on, supported by, or inside the base.

In short, while Plaintiff's proposed construction is overbroad, Defendants' proposed construction is untenably narrow and finds no grounding in the Patent. The Patent clearly evidences the multifaceted functions of the base, and therefore the construction must encompass that breadth. The Court therefore adopts the following construction:

**base**: the body of the Charging System.

**2. "TO COUPLE TO"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "to couple to" Claims 1 and 13 of '848 Patent | to join, link or connect structures together without the use of external wires or cables | to connect directly or indirectly to |

The dispute here centers around whether "coupling" in the relevant claims includes indirect coupling - namely coupling by use of an intermediate wire. While apparently acknowledging that the claim language does not so specify, Plaintiff argues that its construction "eliminates confusion by providing a definition for the phrase in the proper context in which it is used; here, the mechanical context." (PB at 16.) The claims in which this phrase appears, Plaintiff argues, "always present the act of coupling the protruding DC port on the base to the corresponding receptacle on the controller in the context of a direct mechanical insertion . . . without the use of wires or cables." (PB at 16-17.) Defendants argue that "there is nothing in the specification that excludes the use of a wire or cable as [sic] means of coupling." (DB at 12.) Defendants believe that because the Parties agree that "electrically coupled to" includes both direct and indirect connections, and because "[t]he use of the adverb 'electrically' does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

imply direct versus indirect connection, . . . there is no reason why 'couple to' should exclude an indirect connection." (DB at 12.)[6]

The Court finds controlling here the line of case law holding that a patentee can act as his own lexicographer, an "explicit definitional format" is not required. Irdeto Access, Inc. v. Echostar Satellite Corp., 383 F.3d 1295, 1300 (Fed. Cir. 2004). Defendants argued at oral argument that there are only two exceptions to the rule that claim language is given its ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012). However, Defendants' assertion that "an explicit redefinition" is required, (Transcript at 37:16-20), is too narrow an interpretation of the rule. This is especially so after the recent en banc ruling in Phillips. Phillips held that:

> [R]equiring that any definition of claim language in the specification be express[] is inconsistent with our rulings that the specification is the single best guide to the meaning of a disputed term, and that the specification acts as a dictionary when it expressly defines terms used in the claims *or when it defines terms by implication*.

415 F.3d at 1320-21 (internal quotations and citation omitted, emphasis added). Phillips openly embraced the notion that "a claim term may be clearly redefined without an explicit statement of redefinition." Bell Atl. Network Servs., 262 F.3d at 1268. It is clear to the Court that the Patent implicitly defines "to couple to" as a direct, mechanical connection.

When taken in conjunction with the specification and figures, Plaintiff argues that all relevant embodiments describe and depict "a direct connection between the DC ports on the base and the power input ports of the video game controllers." (PB at 18.) The Court agrees. The intrinsic evidence clearly demonstrates that the Patent implicitly defines "to couple to" as a direct mechanical connection. The claim language plainly indicates that the docking bays are configured to receive the controllers:

---

[6] Defendants rely initially upon a statement the Court made in its 06/01/12 Order addressing Plaintiff's request for a TRO. There the Court stated that "neither the direct coupling nor the positioning of the controller are aspects of the claim 1 limitations." (06/01/12 Order at 11.) Defendants acknowledged at oral argument that the 06/01/12 Order was not controlling. (Transcript at 36:17-25.) The Court reiterates the preliminary nature of that ruling here.

LINKS: 98, 100, 104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

"wherein the pairs of opposite surfaces are configured to align respective ones of the plurality of video game controllers such that the power input ports of the respective ones of the video game controllers underline couple to the respective ones of the plurality of DC ports." (Id. at 15:66-16:3.)

"at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the male mini-USB connectors . . ." (Id. at 16:35-40.)

Implicit in the docking bays is the notion that the controller must be received by the docking bay and couple directly to the DC port.  Indeed, as Plaintiff argues, "[i]f a wire or cable were inserted between the two devices, it is apparent from the figures and description that this would conflict with the ability of the docking bays to receive, align, and support the controllers."  (PR at 13.) In other words, the presence of a wire would prevent the controller from "coupling to" the docking bay in the manner contemplated by the invention.  The relevant figures depict exactly that, with the controllers resting in the docking bays, directly connected to a DC port.  ('848 Patent at Figs. 14-15.)  Perhaps most instructively, the specification teaches that:

In use, the DC ports are connected to the power input ports of the video game controllers to be charged . . . .  When one or more video game controllers need to be recharged, connecting the video game controllers to the charging system is as easy as inserting each of the video game controllers into one of the docking bays.  As described above, the locators aid in aligning the video game controller into the docking bay **such that the power input port of the video game controller slides down onto and connects to the DC port**.

(Id. at 9:65-10:7 (emphasis added, numbers removed).)

The Court finds persuasive the recent Federal Circuit case In re Abbott Diabetes Care, Inc., 696 F.3d 1142 (Fed. Cir. 2012).  In that case, the relevant claim at issue stated:

A sensor control unit comprising: a housing adapted for placement on skin and adapted to receive a portion of an electrochemical sensor extending out of the skin having a plurality of contact pads; a plurality of conductive contacts disposed on the housing and configured for coupling to the plurality of contact pads on the electrochemical sensor; and an rf transmitter disposed in the housing and coupled to the plurality of conductive contacts for transmitting data obtained using the electrochemical sensor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

Id. at 1144.  The Court took on the issue of "whether the broadest reasonable construction of 'electrochemical sensor' includes external cables and wires connecting the sensor to its control unit." Id. at 1148.  Abbott, the inventor, argued "that all descriptions of the claimed electrochemical sensor in the specification are devoid of any mention of external cables or wires for connecting to the sensor control unit." Id.  The Court noted that "every embodiment disclosed in the specification shows an electrochemical sensor without external cables or wires" and external cables were only mentioned when disparaging prior art. Id. at 1149.  The Court found that a claim term like "coupled" is "entirely consistent with and even support[s] the specification's exclusive depiction of an electromechanical sensor without external cables or wires." Id. at 1149-50.  The Court held that though Abbott did not specifically disclaim external cables or wires, the fact that "nothing suggests or even hints that the claimed electrochemical sensor can include external cables or wires" indicated as much. Id. at 1150.  The Court held that while "[i]t is true that the specification does not contain an explicit statement disclaiming . . . external cables or wires . . . this is not an instance where the specification would necessarily have to disavow an embodiment that would otherwise be covered by the plain language of the claims . . . ." Id. at 1149.  Rather, the specification could implicitly define the term. Id. at 1150.

Additionally, reading "to couple to" as requiring a direct mechanical connection, without wires or cables, is not inconsistent with construing "electrically coupled to" to encompass indirect connections.  Nor does it create an instance wherein the phrase "to couple to" is read more narrowly than the narrower phrase "electrically coupled to".  Turning, for example, to Plaintiffs' expert, Mr. Kitchen notes that "the phrase 'electrically coupled to' is used in cases where the two objects are in the same circuit (i.e. electrically connected) but may or may not be directly connected in a mechanical way." (Docket No. 99, [First Declaration of Garry Kitchen ("First Kitchen Decl.")] at 14.)  To construe "to couple to" as requiring a "direct mechanical connection" is simply to say that in light of the specification and overall purpose of this invention, "to couple to" is only used in a mechanical sense.  Defendants also argue that Plaintiff's continuation application regarding the '848 Patent (United States Patent No. 8,378,630) explicitly used the phrase "directly couple to" to connote a direct connection without an external cable, such that it is clear that where Plaintiff wanted to say a connection was direct, it did so. (DB at 14-15; First Buccigross Decl., Ex. 4 ['630 Patent] at 15:46-56.)[7]  The Court attributes no weight to the language in the '630 Patent.  That Plaintiff later adopted more specific

---

[7] Defendants argue that this is intrinsic evidence, (see DB at 14 n.9), and it appears clear that it is.  The '848 and '630 Patents have a clear familial relationship, and accordingly the Federal Circuit permits using the '630 Patent as intrinsic evidence to construe terms in the '848 Patent. See Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1167-68 (Fed. Cir. 2004); see also Microsoft Corp. v. Multi-Tech Sys., 357 F.3d 1340, 1349 (Fed. Cir. 2004); Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

language does not alter the fact that Plaintiff implicitly, but clearly defined "to couple to" in the '848 Patent.  Furthermore, that Plaintiff adopted more explicit language in a continuation application during the pendency of this litigation is hardly surprising.  Indeed, as Plaintiff states, it rephrased the '630 Patent after the Court's 06/01/12 Order, which explains the more specific claim language.  (PR at 13 n.6.)[8]

The Court also finds persuasive that the clear purpose of the '848 Patent was to steer away from cables and wires and make for a simple connection between fragile parts.  As Defendants acknowledged at oral argument, "the background of the patent does describe a desire to get away from cables."  (Transcript at 39:3-4.)  In this sense the record is like that before the In re Abbot which noted that external cables were mentioned only when "disparaging" prior art.  Moreover, the '848 Patent is addressed, in part, to help avoid breaking or bending DC ports and help "mak[e] a proper connection without damaging the parts."  ('848 Patent at 1:51-62.)  That is done through the use of a docking bay, which, through the elimination of intermediate wire connections, allows for better alignment of the connecting parts in the controller and the charger.

The Court therefore adopts the following construction:

**to couple to:** to connect directly without the use of wires or cables

_____

[8]  Additionally, Defendants' citation to one of Plaintiff's other patents, United States Patent Number 6,881,147, (Docket No. 112, [Defendants' Rebuttal Brief ("DR")] at 15; Docket No. 106-1, [Second Declaration of Graham M. Buccigross ("Second Buccigross Decl.")], Ex. 9), is not well taken.  That patent, while providing that coupling may be through wires, is wholly unrelated to the '848 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

**3. "ELECTRICALLY COUPLED TO"**

| CLAIM TERM | PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|---|
| "electrically coupled to" Claims 1 and 13 of '848 Patent | directly or indirectly connected to for the purpose of energy transfer | directly or indirectly electrically connected to |

The only dispute in regards to this construction is, as Defendants note, Plaintiff's use of the phrase "for the purpose of energy transfer," as opposed to simply omitting any purpose at all. (DB at 16.) Defendants believe the phrase is unnecessarily limiting insofar as "[t]he term 'energy' carries with it narrower connotations of 'power' (rather than data) that could serve to confuse the jury into thinking the term is limited to electrical power." (Id.) More specifically, in Defendants' rebuttal brief they argue that Plaintiff's "construction will only confuse the jury because it implies that electrical coupling is limited to the transfer of energy for the purpose of charging the controllers." (DR at 16.) Plaintiff fails to elucidate in its opening or rebuttal briefs why it felt the additional phrase was warranted, and in fact its briefing indicated that there was no real dispute over the construction. (See PB at 23, PR at 11.)

At oral argument, both Parties submitted on the Court's tentative construction, construing "electrically coupled to" to mean "directly or indirectly connect to permit the flow of electrical current." (Transcript at 6:23-24, 42:22-24.) This construction adequately addresses Defendants' valid concerns and finds support in Federal Circuit precedent. See Mems Tech. Berhad v. ITC, 447 Fed. Appx. 142, 151-52 (Fed. Cir. 2011).

Accordingly, the Court will remain with its tentative and adopt the following construction:

**electrically coupled to:** directly or indirectly connected to permit the flow of electrical current.

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

**4. "AT LEAST ONE . . ."**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "at least one structure on the base for providing physical support to the plurality of video game controllers" Claim 1 of '848 patent | "at least one structure" = one or more structures | (In brief)<br>at least one structure (but not necessarily all structures) provides physical support to two or more video game controllers<br><br>(In chart)<br>one or more structures on the base each for providing physical support to a plurality of video game controllers while they are being charged |
| "at least one structure on the base comprises a plurality of docking bays" Claim 1 of '848 patent<br><br>"at least one docking structure defining a plurality of docking bays" Claim 13 of '848 patent | "at least one structure" = one or more structures<br><br>"at least one docking structure" = one or more docking structures | (In brief)<br>at least one structure (but not necessarily all structures) comprises a plurality of docking bays;<br><br>(In brief)<br>at least one docking structure (but not necessarily all structures) defines a plurality of docking bays<br><br>(In chart)<br>one or more structures on the base each defines a plurality of docking bays<br><br>(In chart)<br>one or more docking structures, each defining a plurality of docking bays |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

| | | |
|---|---|---|
| "at least one structure on the base further comprises a plurality of pairs of opposite surfaces" Claim 1 of '848 patent<br><br>"at least one docking structure comprises a plurality of pairs of substantially parallel opposite surfaces" Claim 13 of '848 patent | "at least one structure" = one or more structures<br><br>"at least one docking structure" = one or more docking structures | (In brief)<br>at least one structure (but not necessarily all structures) comprises two or more pairs of opposite surfaces;<br><br>(In brief)<br>at least one structure (but not necessarily all structures) comprises two or more pairs of substantially parallel opposite surfaces<br><br>(In chart)<br>one or more structures on the base, each has a plurality of pairs of opposite surfaces<br><br>(In chart)<br>one or more docking structures on the base, each having a plurality of pairs of substantially parallel opposite surfaces |

Defendants contend that "these terms must be construed in context, and the entire phrases set forth above require construction." (DB at 19.) Plaintiff disagrees, contending that only "at least one structure" and "at least one docking structure" require construction. (PB at 11.) In context or not, the phrase "at least one" is clear. The Court finds that "at least one" is the only phrase requiring construction, and the complexity Defendants see in the remaining language stems from misreading the claim language.

Defendants' trouble with the phrase "at least one" and the language that follows it arises principally from the prosecution history. The '848 Patent, as originally structured, read, in part, "at least one structure on the base for providing physical support to the at least one video game controller while the at least one video game controller is being charged . . . ." (First Buccigross Decl., Ex. 5 [Prosecution History] at 159.) In other words, the '848 Patent as originally written provided for at least one structure or docking structure supporting at least one controller, or one-

LINKS: 98, 100, 104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

to-one correspondence.  However, the PTO rejected the relevant claims in light of prior art, which "disclose[d] and show[ed] . . . a video game controller charging system for charging at least one video game controller . . . ."  (Id. at 112, 117.)  The patent was amended to circumvent the problem identified in the prior art by requiring that the charging system be capable of charging at a minimum a plurality of controllers.  (Id. at 169, 171.)  The amendment makes clear that the charging system had to be able to charge two or more controllers, but could still have a single "structure" to support the two or more controllers.  (Id.)  After amendment, the charging system would have to have at least one structure supporting no fewer than two controllers.

Defendants contend that, after amendment, "there must be at least one structure on the base that provides support for two or more video game controllers."  (DB at 20.)  More specifically, Defendants believe that no matter how many structures there are, "at least one of them" alone must still "provide[] support for two or more video game controllers."  (Id.)  Defendants state that the phrase in parentheses in their proposed construction is "the only way to sort of make sense of this mismatch between the . . . at least one structure supporting a plurality of controllers."  (Transcript at 52:10-13.)  The Court views this as a misreading of the claim language.  The language in Claim 1 reads: "at least one structure on the base for providing physical support . . . ."  ('848 Patent at 15:35-36.)  The correct reading of this language is, as Plaintiffs state: "the 'at least one' language of claim 1 . . . allows for both embodiments - a single structure which provides support to two or more controllers and a plurality of structures which provide support to two or more controllers."  (PR at 19.)  The claim language ***does not*** require that if there are two structures, one alone must still provide support to two or more controllers.  Further, the remaining relevant claim language reads: "wherein ***the at least one structure*** on the base comprises a plurality of . . . ."  ('848 Patent at 15:43-48.)  The word "the" refers back to "at least one structure on the base for providing physical support," creating a uniformity throughout as to the number of structures practicing the claim elements.  This means that if there is only one structure, that structure alone must practice all the claim elements, but if there are two, those two ***in conjunction*** will practice all the claim elements.  A quick look at the relevant figures confirms this.  Claim 13 reads, and should be treated, similarly.  ('848 Patent at 16:35-36.)

While Plaintiff's phraseology in the '848 Patent is somewhat convoluted, "at least one" is the only phrase that needs construction.  The Court therefore adopts the following construction:

**<u>at least one</u>: one or more than one.**

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

### 5. "STRUCTURE"; "DOCKING STRUCTURE"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "structure" Claim 1 of '848 patent | [requires no construction] | indefinite |
| "docking structure" Claim 13 of '848 patent | [requires no construction] | indefinite |

Defendants aver that these terms are indefinite because "[n]either the intrinsic nor the extrinsic evidence describes with clarity what a 'structure' is in the context of these claims." (DB at 17.)  At oral argument, the Court tentatively construed "structure" as "one or more physical components attached to the base" and "docking structure" as "one or more physical components for receiving and aligning controllers".  At oral argument, Defendants proffered the construction of structure as "one or more physical components," (Transcript at 54:4-5), apparently recognizing that "structure" is not indefinite.[9]  Plaintiff declined to offer any construction in their briefing or at oral argument.  (See id. at 18-23.)  Plaintiff did eventually indicate that it agreed with the Court's tentative constructions.  (Id. at 22:20-21:3.)

"Section 112 paragraph 2 of the Patent Act requires that a patent specification conclude with one or more claims 'particularly pointing out and distinctly claiming subject matter which the applicant regards as his invention.'"  Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112 para. 2.)  It is not enough that the claim is merely difficult to construe, the claim must be "insolubly ambiguous," such that "no narrowing construction can properly be adopted . . . ."  Id.  The Federal Circuit teaches that the first option in claim construction is not to find indefiniteness.  "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."  Id.  Claims are presumed valid.  Id.

---

[9] The proposed construction Defendants offered at oral argument is the Court's tentative construction without the language "attached to the base".  Defendants objected to that phrase under the Digital-Vending line of authority noted above.  As indicated at oral argument, the Court agrees.  (Transcript at 54:3-18.)  Defendants did not propose a construction of "docking structure", but presumably does not take issue with the Court's tentative construction, which did not run afoul of Digital-Vending.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|----------|------------------------|------|---------------|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

An instructive case on this issue is Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306 (Fed. Cir. 2008). In Praxair, the court had before it the following claim:

> An apparatus for controlling the discharge of pressurized fluids from the outlet of a pressurized tank, the apparatus comprising: a port body for communication with the outlet of a pressurized tank defining a fluid discharge path; a valve element fixed in or upstream of the port body and adapted for movement between a sealing position that blocks fluid flow through the fluid discharge path and an open position that permits fluid flow along the fluid discharge path; and a diaphragm defining an interior volume isolated from the pressure condition upstream of the valve element and engaged with the valve element to control the movement of the valve element in a manner that retains the valve element in the sealing position until a pressure differential between the interior volume of the diaphragm and the interior of the port body moves the valve element to the open position.

Id. at 1319. Specifically, the district court construed "port body" as indefinite, stating that "the term 'is not described, labeled, or coherently discussed in the patent,' and its meaning 'is not discernable from the patent.'" Id. at 1319-20. The Circuit, turning to a discussion of the term "port body" in the summary of the invention, disagreed, noting that although the description was not "a model of clarity, the specification adequately explains that the port body is "a structure that connects to the outlet of a pressurized tank and includes a path for the discharge of fluid from the pressurized tank." Id. at 1321.

Defendants place great weight on the argument that Mr. Navid and Mr. Kitchen disagreed in their respective deposition testimonies as to what structure actually meant. (DR at 17-18.) The Court draws little from that dispute. As the Praxair Court noted in a similar circumstance, "such extrinsic evidence would not prove the '895 patent invalid, since indefiniteness is a legal rather than a factual question." Praxair, 543 F.3d at 1321.[10] Defendants further argue that the only language in the specification attempting to define "structure" is hopelessly vague. (DB at 17.) That language from the specification states: "[e]ach pair of opposite surfaces, a portion of the base, a corresponding docking bay, and/or the locators may comprise a structure for providing physical support to one of the video game controllers during charging." ('848 Patent at 9:51-55 (internal numbers omitted).) Defendants aver that the language "and/or" means that

_____

[10] Plaintiff's failure to offer a proposed construction is, however, all the more questionable given that Mr. Navid and Mr. Kitchen seriously struggled at offering a coherent construction in their respective depositions. (See First Buccigross Decl., Ex. 1 [Deposition of Amir Navid ("Navid Depo.")] at 243:5-244:12; Second Buccigross Decl., Ex. 6 [Deposition of Garry Kitchen ("Kitchen Depo.")] at 156-178.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

any one of the aforementioned elements alone may comprise a structure, which Defendants find nonsensical.  (DB at 17-18.)  Defendants also argue that "may comprise" indicates that other unknown components could comprise a structure, and this is insolubly ambiguous.  (Id. at 18.)  The specification language Defendants quote, however, compels a different result.

As the Praxair Court phrased it, the claims and specification are not "a model of clarity" regarding the terms "structure" and "docking structure".  However, despite the Parties' apparent problems deciphering the terms, the claim language is not insolubly ambiguous.  Looking to the language of Claim 1 and the specification language Defendants quoted above, it is evident that the structural components define the space that serves as the docking bay and "provid[e] physical support to the plurality of video game controllers while" they are being charged.  ('848 Patent at 9:51-55, 15:35-38.)  At its most distilled, a structure and a docking structure are the physical components in and against which the controllers rest.  As in Praxair, it seems useful here to adopt a "construction [that] describes the nature of the structure based on its critical structural attributes . . . ."  Praxair, 543 F.3d at 1321.  This eliminates the need to try to define a structure or docking structure by what they may look like or the elements that may comprise them.  While the critical structural attributes of the "structure" and "docking structure" are largely the same, there are some marginal differences, which the Court takes into account.  "In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."  CAE Screenplates v. Heinrich Fiedler Gmbh & Co. Kg, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

Before the Court construes "structure" and "docking structure", it notes briefly the implication of the "at least one" language read in conjunction with "structure" and "docking structure".  The plain claim language provides that there may be one structure, or there may be more than one.  If there is only one structure, then that one structure must independently practice all the elements of Claim 1, namely that the single structure supports a plurality of controllers, comprises a plurality of docking bays, and comprises a plurality of pairs of opposite facing surfaces that define the docking bays.  (Id. at 15:35-52.)  If there are multiple structures, then the structures in conjunction must practice the aforementioned elements.  Accordingly, "structure" must be construed broadly enough to encompass a situation where there is only one, or where there is more than one.  The same holds true for docking structure.  The Court offers no opinion as to what a single structure capable of practicing all the elements of the relevant claims would look like, but acknowledges that the Patent encompasses such a thing.

The Court's tentative constructions were largely accepted by the Parties.  The Court therefore adopts the following constructions:

LINKS: 98, 100, 104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

**structure**: one or more physical components for receiving controllers.

**docking structure**: one or more physical components for receiving and aligning controllers.

### 6. "SUPPORTED BY THE BASE"

| CLAIM TERM | PLAINTIFF'S CONSTRUCTION | DEFENDANT'S CONSTRUCTION |
|---|---|---|
| "supported by the base" Claim 13 of '848 Patent | [requires no construction] | on the base |

The central issue here is that while in Claim 1 the '848 Patent refers repeatedly to "structure on the base" and "DC ports on the base", ('848 Patent at 15:35-39, 15:50-51), Claim 13 refers to "male mini-USB connectors supported by the base". (Id. at 16:32-33.) Defendants argue that Plaintiff "fails to offer any construction for the term," and therefore "'supported by the base' means 'on the base,' or it is indefinite." (DB at 22-23.) More specifically, Defendants take issue with the fact that the only pertinent disclosed embodiments show male mini-USB connectors on the base. (DR at 24.)[11] While Plaintiff believes that the phrase "supported by the base" does not need construction, it is apparent that it does. Plaintiff's alternating uses of "on the base" and "supported by the base" are not self-explanatory.

At oral argument, Plaintiff was satisfied with the Court's tentative construction - "physically supported by but not directly on the base" - if the word "necessarily" was inserted after "not". (Transcript at 11:16-23.) Defendants disputed the Court's tentative construction insofar as the phrase "physically supported" was used. (Id. at 57:21-24.) Defendants' dispute stems from their concern that "support" as used in the phrase "supported by" is neutral as to compression and tension forces, while "physically supported by" is not. (Id. at 57:21-58:13.) Defendants proffered the construction "held in position by the base". (Id. at 60:2-3.)

---

[11] Defendants further argue that "because the 'supported by the base' 'limitation is defined in purely functional terms,' its construction is 'highly dependent on context . . . .'" (DR at 24 (quoting Halliburton Energy Servs. v. M-I LLC, 514 F.3d 1244, 1255 (Fed. Cir. 2008)).) It is clear, however, that the concept Defendants are alluding to in Halliburton is inapplicable here. Halliburton applied that concept to the noun "fluid", and noted that it was defined "by what it does rather than what it is." 514 F.3d at 1255. As Plaintiff correctly points out "'supported by the base' is not an object, thing or noun that is defined in functional language . . . ." (PR at 21.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|---|---|---|---|
| Title | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

The Court finds that Defendants' concern regarding tension and compression forces is without merit. Defendants' concern is that "if the DC port is hanging on a cable . . . is that supported by the base?" (Transcript at 57:21-58:1.) Defendants point to nothing in the Patent that suggests that the DC ports will be hanging from cables. Especially following the Court's construction of "to couple to", the clear import of the Patent is to steer away from the use of wires. The controllers have to ***dock*** in the docking bays, thus vitiating the idea of hanging wires. As the Court noted at oral argument, "supported by the base" as used in the Patent clearly implies compression and not tension forces. (Id. at 58:10-16.) In any event, there is nothing about the phrase "physically supported" that, in and of itself, would contemplate a DC port hanging from a cable.

The phrases "supported by the base" and "on the base" are clearly not synonymous phrases. As noted above, "[i]n the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings." CAE Screenplates, 224 F.3d at 1317 (Fed. Cir. 2000). The intrinsic evidence clearly indicates a difference. "On the base" connotes a direct connection between the object and the base. For example, Figure 11 depicts the DC ports "within each of the docking bays" and directly on the base. ('848 Patent at Fig. 11; id. at 9:29-30.) The phrase "supported by the base" connotes the possibility of an indirect connection between the object and the base. This is the case in Figures 17 and 18, which depict the mini-USB connectors on an adapter, the adapter resting upon connectors attached to the base. (Id. at Figs. 17, 18.)[12] Figure 17 depicts the adapter and base as separate pieces. (Id. at Fig. 17.) In that circumstance, it is the adapter that is on the base, while the mini-USB connector is at least one layer removed from the base. While it is certainly the case that the embodiments corresponding to Claims 1 and 13 depict a DC port "on the base", it is also evident that the '848 Patent contemplates embodiments wherein the mini-USB connector is other than directly on the base, i.e. where there is at least one intervening layer between the mini-USB connector and the base.

Plaintiff's proffered dictionary definitions are also helpful here in delineating the meanings of "on" and "supported". The common dictionary definitions of "on" are "[u]sed to indicate position above and supported by or in contact with," and "[u]sed to indicate contact with . . . ." (Second Quigley Decl., Ex. W.) The common dictionary definition of "support" is "[t]o bear the weight of, especially from below." (Id.) These definitions support the Court's construction, which indicates a rectangle-square relationship between "on" and "supported by." That is to say, "on" connotes direct contact, and therefore all components "on the base" are "supported by it," but not all components "supported by the base" are "on it".

---

[12] These figures, the Court is aware, embody independent Claims 18 and 24, which are not at issue here.

LINKS: 98, 100, 104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3001 GAF (VBKx) | Date | June 12, 2013 |
|----------|------------------------|------|---------------|
| Title    | NYKO Technologies Inc v. Energizer Holdings Inc et al | | |

The Court therefore adopts the following construction:

**supported by the base**: physically supported by but not necessarily directly on the base.

**IV.**
**CONCLUSION**

For the reasons set forth above, the Court adopts the foregoing constructions.

**IT IS SO ORDERED.**