1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations

3  DANIEL N. YANNUZZI, Cal. Bar No. 196612
   dyannuzzi@sheppardmullin.com
4  GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
   gbuccigross@sheppardmullin.com
5  MATTHEW M. MUELLER, Cal. Bar No. 268486
   mmueller@sheppardmullin.com
6  12275 El Camino Real, Suite 200
   San Diego, California 92130-2006
7  Telephone:  858-720-8900
   Facsimile:   858-509-3691
8
   STEVEN M. HANLE, Cal. Bar No. 168876
9  650 Town Center Drive, 4th Floor
   Costa Mesa, California  92626
10 Telephone:  714-513-5100
   Facsimile:   714-513-5130
11
   Attorneys for Defendants, Performance
12 Designed Products LLC, Eveready Battery
   Co, Inc., and Energizer Holdings, Inc.
13

14              UNITED STATES DISTRICT COURT

15       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

16 | NYKO TECHNOLOGIES, INC, a California Corporation, | Case No. CV12-03001 |
|---|---|
17 | | **DECLARATION OF STEPHEN D. BRISTOW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** |
| Plaintiff, | |
18 | v. | |
19 | | |
20 | ENERGIZER HOLDINGS, INC., a Missouri Corporation, EVEREADY BATTERY COMPANY, INC., a Delaware Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company, | Date:  September 23, 2013 Time: 9:30 a.m. |
21 | | |
22 | | Judge Gary Allen Feess |
23 | | Complaint Filed:  April 5, 2012 Discovery Cutoff:   Oct. 14, 2013 Pretrial Conf.:  Dec. 30, 2013 Trial Date:  Jan. 28, 2014 |
24 | Defendants. | |

25

26

27

28

SMRH:409945742.2

I, Stephen D. Bristow, declare as follows:

1.      I have been retained as an expert for Defendants Performance Designed Products LLC, Eveready Battery Co, Inc., and Energizer Holdings, Inc. ("Defendants").  I am being compensated at a rate of $300 per hour.  My compensation does not depend on the outcome of this case.

2.      If called as a witness, I could and would competently testify to all facts within my personal knowledge.

3.      I have over 39 years of experience in consumer game design and video game architecture and technology.

4.      For example, I was the Vice President of Research and Development at Radica Innovations.  Radica was a leading manufacturer of hand held consumer gaming equipment.  I was responsible for implementing RF communications, speech synthesis, LCD display systems and IR 1 and 2 way communications to Radica's product line.  At Radica, I was also responsible for all patent related matters, including patent filings and co-ordination with outside patent counsel.

5.      As another example, I was also a founding member of Atari and was the Vice President of Engineering of the Home Game, Telephone Division (AtariTel).  I participated in designing power components and structures in Atari's coin operated games, making them compatible to a number of power sources around the world.  I also took part in obtaining regulatory approvals from agencies such as Underwriters Laboratory (UL).

6.      I am the named inventor of over 23 United States patents, including a patent related to video game controller design.  A number of my patents focus on video game circuit technology.

7.      Attached to this declaration as Exhibit A is a true and correct copy of my curriculum vitae.

DECLARATION OF S. BRISTOW IN SUPPORT OF DEFENDANTS' MSJ OF INVALIDITY

8.     The pertinent art relating to United States Patent No. 8,143,848 (the "'848 patent") is the mechanical and electrical requirements of charging consumer electronics products with rechargeable batteries.

9.     A person of ordinary skill in the art would have an undergraduate degree in engineering or other technical training in electromechanical product design or equivalent work experience in product development of consumer electronic products with rechargeable batteries and their charging systems.  Such a person would possess at least one year of experience in developing and/or evaluating chargers for consumer electronics products.

10.     It is my understanding that plaintiff Nyko asserts claims 1-5, 7, 8, 10-13, and 15-17 of the '848 patent (Asserted Claims).  I also understand that Nyko contends that the Asserted Claims are entitled to priority date of a provisional application filed October 24, 2007, U.S. Provisional Patent Application No. 60/982,364 (the "Navid Provisional").

11.     It is my understanding, in essence, that the claims of a later-filed application are only entitled the priority date of an earlier application if the earlier application discloses the features of the later-filed claims.  Based on my review of the '848 patent, its prosecution history, and the Navid Provisional, the Navid Provisional does not disclose to a person of ordinary skill in the art one or more features of the Asserted Claims.  The Navid Provisional clearly and unambiguously discloses only a charging system requiring a separate external adapter, where the DC ports are on the adapter rather than on or supported by the base.  As disclosed in the Navid Provisional, the controller attaches directly to the separate external adapter, rather than directly to the base. There are no DC ports on the base.  Rather, the base has recesses with electrical contacts, into which the adapters having the DC ports are placed.

12.     In the "Background" section, the Navid Provisional describes disadvantages of the prior art involving a direct connection between a DC port on

the base of a charging device and an accessory device, and thus teaches away from a DC port on the base:

> [0022] In use, the connector 42 on the adapter 16 is connected to the power input port of the accessory device to be charged, such as the hand-held controller 26 shown in FIGs. 5 and 6. The adapter 16 is a small and light-weight piece that connects snugly to the power input port of the hand-held controller 26. The adapter 16 can remain with the hand-held controller 26 at all times, even when the controller 26 is not being charged in the charging station 10. When the hand-held controller 26 is in use during operation of a video game, when the controller 26 is stored, and when it is charging, the adapter 16 can remain connected to (and physically mounted on) the controller 26. The adapter 16 is small and light weight, so that it does not interfere with operation of the controller 26. When the controller needs to be recharged, connecting it to the charging station 10 is as easy as dropping it into the docking bay 12, 14. The adapter 16 slides easily into the recess 30, and the electrical leads 22 on the bottom of the adapter 16 make an electrical connection with the electrical contacts 20 in the recess 30. The charging station 10 is connected to a power supply through its own power input. The charging station 10 then provides power to the controller 26 to recharge the controller's batteries. This recharging process is fast and easy, as the adapter 16 allows the controller to be simply dropped into place, rather than carefully connected to a fragile port or connector.

Navid Provisional Para. [0020]

13.     Asserted claim 1 of the '848 patent recites a "video game controller charging system comprising: … a plurality of DC ports on the base."  However, in the Navid Provisional, the DC ports are on the adapter rather than on the base.  I understand that Nyko contends the DC ports of the adapter are on the base once the adapter is placed onto the base.  However, in all the figures and written description in the Navid Provisional, the DC ports (connectors 42) are described and depicted as being on the adapters.  Thus, persons of ordinary skill in the art would understand that the DC ports are on the adapter, and not on the base, even when the adapter is placed on the base. This is especially so because the Navid Provisional teaches away from placing the DC port on the base.

-3-

14.     Asserted claim 13 of the '848 patent recites "the charging system comprising: … a plurality of male mini-USB connectors supported by the base." The Court construed "supported by the base" as "physically supported by but not necessarily directly on the base."  The male mini-USB connectors on the adapters, as disclosed in the Navid Provisional, are not "physically supported by the base," as that phrase would be understood by a person of skill in the art.  The physical support for the male mini-USB connectors is provided entirely by the structure of the adapters themselves; connecting the controller/adapter assembly to the base does not provide any further "physical support" for the male mini-USB connectors as that term would be reasonably understood.  Regardless, to the extent the Court's construction allows for the DC ports to be directly on the base, one of skill in the art would not recognize this to be disclosed or supported by the Navid Provisional.

15.     Accordingly, one of ordinary skill in the art would not understand the Navid Provisional to show that Mr. Navid invented a charging system with a DC port on the base of the charging system or a male mini-USB port supported by the base.  Therefore, it is my opinion that the Asserted Claims are not entitled to the priority date of the Navid Provisional.

16.      It is my understanding that Nyko has admitted that its Charge Base product shown its hospitality suite for the 2007 Consumer Electronics Show included all the elements of Asserted Claims 1-5, 7, 8, 11-13, and 16-17.  Based on my review of the video of the demonstration and photographs of the Charge Base shown at the hotel suite, I agree with this admission by Nyko.

17.     Asserted Claims 10 and 15 also claim an AC-to-DC adapter that is external to the base of the charger.  External AC-to-DC adapters were well known in the accessory charging art as of at least 2005, and it would have been obvious as of that time to use an external converter with the Charge Base product.

18.     For example, a prior art publication (Matt Casamassina, Controller Concepts: Charge Cradle, IGN, October 4, 2005) discloses an external AC-DC

adapter external to the base of a video game controller charger, which is electrically coupled to the power input of the controller charger.   Similarly, the Pelican Charge N' Go Advance prior art product also uses an AC-DC converter external to the base of a video game controller charger, where the converter is electrically coupled to the power input of the controller charger.

19.     It would have been obvious to use the external AC-DC converter of Casamassina or the Charge N' Go with the Charge Base because there are only two options – placing the converter internally or externally, both of which yield predictable results.  Reasons for using an external converter would include to reduce size and weight of the charger base and to allow easy replacement of a faulty converter.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 19th day of August, 2013 at Los Altos, California.

Stephen D. Bristow