SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations

DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
MATTHEW M. MUELLER, Cal. Bar No. 268486
mmueller@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone:  858-720-8900
Facsimile:   858-509-3691

STEVEN M. HANLE, Cal. Bar No. 168876
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626
Telephone:  714-513-5100
Facsimile:   714-513-5130

Attorneys for Defendants, Performance
Designed Products LLC, Eveready Battery
Co, Inc., and Energizer Holdings, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NYKO TECHNOLOGIES, INC, a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ENERGIZER HOLDINGS, INC., a Missouri Corporation, EVEREADY BATTERY COMPANY, INC., a Delaware Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company, <br><br> Defendants. | Case No. CV12-03001 <br><br> **DECLARATION OF STEPHEN D. BRISTOW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** <br><br> Date:  September 23, 2013 <br> Time: 9:30 a.m. <br><br> Judge Gary Allen Feess <br><br> Complaint Filed:  April 5, 2012 <br> Discovery Cutoff:   Oct. 14, 2013 <br> Pretrial Conf.:  Dec. 30, 2013 <br> Trial Date: Jan. 28. 2014 |

SMRH:409945742.2

I, Stephen D. Bristow, declare as follows:

1.  I have been retained as an expert for Defendants Performance Designed Products LLC, Eveready Battery Co, Inc., and Energizer Holdings, Inc. ("Defendants"). I am being compensated at a rate of $300 per hour. My compensation does not depend on the outcome of this case.

2.  If called as a witness, I could and would competently testify to all facts within my personal knowledge.

3.  I have over 39 years of experience in consumer game design and video game architecture and technology.

4.  For example, I was the Vice President of Research and Development at Radica Innovations. Radica was a leading manufacturer of hand held consumer gaming equipment. I was responsible for implementing RF communications, speech synthesis, LCD display systems and IR 1 and 2 way communications to Radica's product line. At Radica, I was also responsible for all patent related matters, including patent filings and co-ordination with outside patent counsel.

5.  As another example, I was also a founding member of Atari and was the Vice President of Engineering of the Home Game, Telephone Division (AtariTel). I participated in designing power components and structures in Atari's coin operated games, making them compatible to a number of power sources around the world. I also took part in obtaining regulatory approvals from agencies such as Underwriters Laboratory (UL).

6.  I am the named inventor of over 23 United States patents, including a patent related to video game controller design. A number of my patents focus on video game circuit technology.

7.  Attached to this declaration as Exhibit A is a true and correct copy of my curriculum vitae.

-1-

8.     The pertinent art relating to United States Patent No. 8,143,848 (the "'848 patent") is the mechanical and electrical requirements of charging consumer electronics products with rechargeable batteries.

9.     A person of ordinary skill in the art would have an undergraduate degree in engineering or other technical training in electromechanical product design or equivalent work experience in product development of consumer electronic products with rechargeable batteries and their charging systems.  Such a person would possess at least one year of experience in developing and/or evaluating chargers for consumer electronics products.

10.     It is my understanding that plaintiff Nyko asserts claims 1-5, 7, 8, 10-13, and 15-17 of the '848 patent (Asserted Claims).  I also understand that Nyko contends that the Asserted Claims are entitled to priority date of a provisional application filed October 24, 2007, U.S. Provisional Patent Application No. 60/982,364 (the "Navid Provisional").

11.     It is my understanding, in essence, that the claims of a later-filed application are only entitled the priority date of an earlier application if the earlier application discloses the features of the later-filed claims.  Based on my review of the '848 patent, its prosecution history, and the Navid Provisional, the Navid Provisional does not disclose to a person of ordinary skill in the art one or more features of the Asserted Claims.  The Navid Provisional clearly and unambiguously discloses only a charging system requiring a separate external adapter, where the DC ports are on the adapter rather than on or supported by the base.  As disclosed in the Navid Provisional, the controller attaches directly to the separate external adapter, rather than directly to the base. There are no DC ports on the base.  Rather, the base has recesses with electrical contacts, into which the adapters having the DC ports are placed.

12.     In the "Background" section, the Navid Provisional describes disadvantages of the prior art involving a direct connection between a DC port on

1  the base of a charging device and an accessory device, and thus teaches away from a

2  DC port on the base:

> [0022] In use, the connector 42 on the adapter 16 is connected to the power
> input port of the accessory device to be charged, such as the hand-held
> controller 26 shown in FIGs. 5 and 6. The adapter 16 is a small and light-
> weight piece that connects snugly to the power input port of the hand-held
> controller 26. The adapter 16 can remain with the hand-held controller 26 at
> all times, even when the controller 26 is not being charged in the charging
> station 10. When the hand-held controller 26 is in use during operation of a
> video game, when the controller 26 is stored, and when it is charging, the
> adapter 16 can remain connected to (and physically mounted on) the
> controller 26. The adapter 16 is small and light weight, so that it does not
> interfere with operation of the controller 26. When the controller needs to be
> recharged, connecting it to the charging station 10 is as easy as dropping it
> into the docking bay 12, 14. The adapter 16 slides easily into the recess 30,
> and the electrical leads 22 on the bottom of the adapter 16 make an electrical
> connection with the electrical contacts 20 in the recess 30. The charging
> station 10 is connected to a power supply through its own power input. The
> charging station 10 then provides power to the controller 26 to recharge the
> controller's batteries. This recharging process is fast and easy, as the adapter
> 16 allows the controller to be simply dropped into place, rather than carefully
> connected to a fragile port or connector.

17  Navid Provisional Para. [0020]

18  13.      Asserted claim 1 of the '848 patent recites a "video game controller

19  charging system comprising: … a plurality of DC ports on the base." However, in

20  the Navid Provisional, the DC ports are on the adapter rather than on the base. I

21  understand that Nyko contends the DC ports of the adapter are on the base once the

22  adapter is placed onto the base. However, in all the figures and written description

23  in the Navid Provisional, the DC ports (connectors 42) are described and depicted as

24  being on the adapters. Thus, persons of ordinary skill in the art would understand

25  that the DC ports are on the adapter, and not on the base, even when the adapter is

26  placed on the base. This is especially so because the Navid Provisional teaches away

27  from placing the DC port on the base.

28

14.     Asserted claim 13 of the '848 patent recites "the charging system comprising: … a plurality of male mini-USB connectors supported by the base." The Court construed "supported by the base" as "physically supported by but not necessarily directly on the base." The male mini-USB connectors on the adapters, as disclosed in the Navid Provisional, are not "physically supported by the base," as that phrase would be understood by a person of skill in the art. The physical support for the male mini-USB connectors is provided entirely by the structure of the adapters themselves; connecting the controller/adapter assembly to the base does not provide any further "physical support" for the male mini-USB connectors as that term would be reasonably understood. Regardless, to the extent the Court's construction allows for the DC ports to be directly on the base, one of skill in the art would not recognize this to be disclosed or supported by the Navid Provisional.

15.     Accordingly, one of ordinary skill in the art would not understand the Navid Provisional to show that Mr. Navid invented a charging system with a DC port on the base of the charging system or a male mini-USB port supported by the base. Therefore, it is my opinion that the Asserted Claims are not entitled to the priority date of the Navid Provisional.

16.     It is my understanding that Nyko has admitted that its Charge Base product shown its hospitality suite for the 2007 Consumer Electronics Show included all the elements of Asserted Claims 1-5, 7, 8, 11-13, and 16-17. Based on my review of the video of the demonstration and photographs of the Charge Base shown at the hotel suite, I agree with this admission by Nyko.

17.     Asserted Claims 10 and 15 also claim an AC-to-DC adapter that is external to the base of the charger. External AC-to-DC adapters were well known in the accessory charging art as of at least 2005, and it would have been obvious as of that time to use an external converter with the Charge Base product.

18.     For example, a prior art publication (Matt Casamassina, Controller Concepts: Charge Cradle, IGN, October 4, 2005) discloses an external AC-DC

SMRH:409945742.2

-4-

1  adapter external to the base of a video game controller charger, which is electrically

2  coupled to the power input of the controller charger.   Similarly, the Pelican Charge

3  N' Go Advance prior art product also uses an AC-DC converter external to the base

4  of a video game controller charger, where the converter is electrically coupled to the

5  power input of the controller charger.

6          19.     It would have been obvious to use the external AC-DC converter of

7  Casamassina or the Charge N' Go with the Charge Base because there are only two

8  options – placing the converter internally or externally, both of which yield

9  predictable results.  Reasons for using an external converter would include to reduce

10  size and weight of the charger base and to allow easy replacement of a faulty

11  converter.

12          I declare under the penalty of perjury that the foregoing is true and correct.

13  Executed this 19th day of August, 2013 at Los Altos, California.

14

15

16

17

18

19                                                  Stephen D. Bristow

20

21

22

23

24

25

26

27

28

SMRH:409945742.2                                -5-

DECLARATION OF S. BRISTOW IN
SUPPORT OF DEFENDANTS' MSJ OF
INVALIDITY

**EXHIBIT  A**

**Silicon Valley Expert Witness Group**
**A Thomson Reuters Company**
**Consultant Curriculum Vitae**

# Stephen D. Bristow

## Expertise

- Consumer Communications
- Consumer Electronics
- Consumer Game Design
- Electronic Board Games
- Electronic Toys
- Postal Meter Technology
- Telecommunications
- Video Game Architecture & Technology

## Employment History

From:  03/2009
To:     07/2010
      Position:     Direct Nu Energy

CTO in LED street lighting company,  Street lamps are powered by a   hybrid solar/vertical wind turbine, I managed the selection of vendors, the shipping of products to USA, test and evaluation of the products in real wind situations, made multiple presentations to customers, filed a number of patents.
www.directnuenergy.com

From 03/2009
To:      present     Connexed

CTO in a video surveillance company that uses cloud computing to allow customers to access off site secure storage of  video information, have notification via remotely processed video analytics, and remotely control the operation of security TV cameras.  www.connexed.com

From 07/2009
To:      present     Medivocci

Director of Engineering for a start up company that is placing web and physical tablet based medical charts and informative systems in patient hands. I have prepared and filed patents for them & I have built prototype systems for this start up which is now in trials with VA hospitals and private surgical customers.
www.medivocci.com

### Silicon Valley Expert Witness Group
### A Thomson Reuters Company
### Consultant Curriculum Vitae

From:   03/2004   **Plantronics**
To:     03/2009
        Position:   *Principal Systems Engineer*
        Plantronics is the leading provider of headsets in the world. Their
        headsets went to the moon, are used by call centers, pilots, gamers,
        and computer users worldwide. I am responsible for the interface
        between marketing/sales and engineering. Systems engineering sets
        the overall direction and architecture used in the design of
        Plantronics solutions. Plantronics makes uses of wireless [Bluetooth
        and other] technologies, mechanical and electronic signal
        processing, ASICs, and other digital and analog communications
        methods.

From:   02/2000   **Televoke, Inc.**
To:     03/2004   San Francisco, CA
        Position:   *Director of Hardware Engineering*
        Televoke is a start up ASP. Televoke provides a 2 way RF link
        between peoples things [such as cars, houses, and other assets] and
        them. I was responsible for all hardware interfacing, RF
        communications protocols and development co-ordination with
        Televoke's partners. I created the interface protocols for
        communications between the deployed field units and our systems.

        I was responsible for interfacing with all of the development teams
        and the patent attorneys to capture and prosecute all of the Televoke
        patent activities. I am the primary patent interface.

From:   12/1998   **Radica Innovations**
To:     01/2004   San Rafael, CA
        Position:   *Vice President Research & Development*
        Radica is a leading manufacturer of hand held consumer gaming
        equipment. I set up and ran a 5 person R&D team working on
        adapting new technologies to the Radica product line. The
        technologies included RF communications, speech synthesis, LCD
        display systems, and IR 1 and 2 way communications

        My Radica work has included the selection and technical advice on
        high end processors to use for camera, audio, and other demanding
        applications such as video compression and audio compression.

        I was responsible for all patent filings and prosecutions via the use
        of outside counsel. I was responsible to search out and find
        patentable technology in the company.

# Silicon Valley Expert Witness Group
## A Thomson Reuters Company
## Consultant Curriculum Vitae

From: 05/1998
To: 12/1998
Position:

**Diablo Research**

*Project Manager*
Diablo Research is a diversified contract engineering company whose projects range from wireless telemetry systems, industrial controls, to remote meter reading. I am responsible for assembling a project team and managing it to the fulfillment of the customer's needs. The type of industry ranges from government, trade group, industrial and consumer. My team developed a radio telemetry system for remote monitoring of gas tank levels in the oil and gas industry.

From: 03/1998
To: 05/1998
Position:

**Ampex Corporation**

*Consultant, Patent Department*
As one of two engineers attached to this department I was responsible for reviewing the design of competing products and comparing their operation to Ampex technology and its patent portfolio. This work entailed working closely with the Ampex patent attorneys.

From: 02/1997
To: 03/1998
Position:

**Machina**

*Chief Technical Officer*
Duties included responsibility for all developmental activities and technology acquisition. LCD and LED displays were designed into most all of our products. IR and RF links were developed to be incorporated into the products that Machina licensed to its customers.

I was also the key person for identifying technology, working with staff to collect patent disclosures, and following up with outside patent counsel in the prosecution of these patents.

From: 11/1995
To: 02/1997
Position:

**Brother International**

*Project Manager, Telecommunications Products*
This work included reviewing all competitive patents, and then working with patent counsel to file patents for our unique technology. This effort has resulted in 2 or more patents.

**Silicon Valley Expert Witness Group**
**A Thomson Reuters Company**
**Consultant Curriculum Vitae**

From:  11/1994      **Machina**
To:     11/1995
         Position:    *Electrical Engineering Manager*
                         Responsible for all electrical design and engineering for a consumer
                         electronics company with products in the voice recording, RF
                         communications, IR communications, custom chip development,
                         and contract toy design and electronics learning aids categories.
                         Machina's clients include Tiger Toys, Yes! Entertainment, Fisher
                         Price, Kenner, Playmates and others. . My patent involvement was
                         to identify patentable technology, document it, and work with
                         outside patent counsel for filing and prosecution.

From:  07/1993      **OCTuS, Inc.**
To:     11/1994
         Position:    *Engineering*
                         Managed an engineering group of 20 that developed a Windows
                         based computer controlled telephone and fax system for office use.

From:  Jan 1984     **Wright Technology**
To:     Mar 1994
         Position:    *Founder, General Partner*
                         Developed an IC smart card-based postal meter technology. We
                         raised development funds, produced prototype systems, secured
                         patents and sold the business and technology to Pitney Bowes, the
                         leading worldwide supplier of postal meter systems. The system
                         and has been put it into high volume production worldwide.

From:  03/1991      **Data East, USA, Inc.**
To:     07/1993
         Position:    *Vice President Engineering*
                         Established in house engineering department responsible for the
                         development of redemption games, video games, consumer
                         hardware, liaison with our Tokyo based development staff, and
                         hardware oversight of our Chicago based pinball engineering group.
                         I have hired in technical writing and documentation These games
                         provided electromechanical and video interfaces to the player. The
                         electromechanical games used a variety of discrete and packaged
                         displays.

**Silicon Valley Expert Witness Group**
**A Thomson Reuters Company**
**Consultant Curriculum Vitae**

From: 05/1989      **Verifone, Inc.**
To:     03/1991
            Position:     *Director of Engineering*
            Product areas were coin operated vending magnetic cash card
            systems including cards, readers, audit systems, and dispensers;
            spread spectrum LAN links, optical check readers using neural
            network chips, cellular radio data links, printers, pinpads , and
            credit card terminals.

            This work again involved being the corporate interface with outside
            patent counsel and in the creation and implementation of a patent
            program to extract the most relevant patent disclosures for filing.

From: 01/1989      **Interactive Game Network**
To:     05/1989
            Position:     *Full Time Design Consultant*
            My partner and I designed the hardware, software, and PCB for a
            VBI to IR translator incorporating a novel error correcting system
            for use on VBI transmitted data. The IR link was used to send data
            files to a remote handheld device.

From: 01/1988      **Hasbro Electronics**
To:     01/1989
            Position:     *Full Time Design Consultant*
            I did the design, simulation and testing of the video timing and
            control ASIC for a new video tape based game system that was
            capable of placing 4 channels of video, 16 channels of sound, and
            the game program on standard VHS video tape. The chips were
            completed & the first pass was functional.

From: 01/1984      **Technicom Advanced Design Center**
To:     01/1989
            Position:     *Director*
            We designed small key systems of 6 x 16 and 12 x 32 line/station
            capacity. This work included product definition, electrical design,
            mechanical design, documentation and manuals. LED displays for
            station and line status were part of every product.

From: 06/1973      **Atari, Inc.**
To:     01/1984
            Position:     *Vice President Engineering*
            During this period, my responsibilities included all aspects of game
            design and production. The products included home games,
            electronic board games, pinball machines, home computers, home

# Silicon Valley Expert Witness Group
## A Thomson Reuters Company
### Consultant Curriculum Vitae

computer and home game software, consumer power line carrier and standard phone systems, and coin operated games and pinball machines. The home board game effort used a unique packaging system that stapled LEDs to a cardboard circuit board.

During this time I also set up and ran the Atari patent program which resulted in the granting of over 20 patents, which have delivered over $50mm in royalty payments.

Various titles and responsibilities included:

| | |
|---|---|
| 01/1984 | *Vice President Computer Division and Atari Fellow* |
| 12/1983 | *Vice President, Atari Telephone Division* |
| 03/1982 | *Vice President Advanced Technology* |
| 06/1980 | *Vice President Engineering, Consumer Game Division* |
| 12/1979 | *Vice President Engineering, Consumer and Home Computer Division* |
| 09/1978 | *Vice President and Plant Manager, Pinball Production* |
| 12/1977 | *Vice President Electronic Board Game Division, Coin Operated Games* |
| 11/1976 | *Vice President Coin Operated Games* |
| 11/1974 | *Vice President, Key Games* |
| 10/1974 | *Electrical Engineer* |

From:  Mar 1972    **Nutting Associates**
To:     Sep 1972
           Position:    *Chief Engineer*
Responsible for continued support of the Computer Space game as well as the development of 3 new games for the AMOA trade show in the fall. Computer Space was the world's first coin operated video game.

From:  Mar 1969    **Ampex Videofile Division**
To:     Sep 1971
           Position:    *Junior Engineer*
During college, worked as support staff for a videotape and videodisk based document storage and retrieval system that used tapes, high-resolution cameras, full screen electrostatic video printers, and disks in its operation.

# Silicon Valley Expert Witness Group
## A Thomson Reuters Company
## Consultant Curriculum Vitae

## Litigation Support Experience

Type of Matter:     Criminal Theft of Trade Secrets, Cable TV Set Top
Law Firm:           Tuckers Solicitors, UK
Case Name:          Federation Against Copyright Theft (FACT) v. Crumblehulome & Parr-Moore
Services Provided:  Expert Report

Type of Matter:     Patent Infringement, artificial intelligence for video game
Law Firm:           Jenner & Block, Chicago, IL
Case Name:          Kenneth K. Dickinson v. Electronic Arts, Inc.
Services Provided:  Undisclosed services for Defendant

Type of Matter:     Patent Infringement, video game
Law Firm:           Fenwick & West, Palo Alto, CA
Case Name:          David Sitrick v. Electronic Arts, Inc.
Services Provided:  Undisclosed services for Defendant

Type of Matter:     Video Game System and Sanders Associates
Law Firm:           Nintendo Inside Counsel, Redmond, Washington
Case Name:          Undisclosed
Services Provided:  Deposed

Type of Matter:     Nintendo Video Game System and Magnavox
Law Firm:           Mudge Rose, New York, NY
Case Name:          Undisclosed
Services Provided:  Deposed and testified at trial

Type of Matter:     Insurance claim
Law Firm:           Carlson Messer & Turner LLP, Los Angeles, CA
Case Name:          Indochina v. Stratford, et al
Services Provided:  Testified at jury trial on operation of facsimile

Type of Matter:     Commodore Games and Video Game Scrolling System
Law Firm:           Finnegan & Henderson, Washington, DC
Case Name:          Undisclosed
Services Provided:  Deposed

Type of Matter:     Games and Alpex Computer
Law Firm:           Finnegan & Henderson, Washington, DC
Case Name:          Nintendo v. Alpex Computer
Services Provided:  Deposed

# Silicon Valley Expert Witness Group
## A Thomson Reuters Company
### Consultant Curriculum Vitae

Type of Matter:    IRS and Deductibility of Research
Law Firm:    Atari Inside Counsel
Case Name:    Undisclosed
Services Provided:    Testified at Trial

Type of Matter:    Patent Infringement video music
Law Firm:    Paul Weiss, New York, NY
Case Name:    Undisclosed
Services Provided:    Reviewed and prepared declaration.

Type of Matter:    Patent Infringement video game copying
Law Firm:    Atari Inside Counsel
Case Name:    Undisclosed
Services Provided:    Reviewed and assisted in document preparation

Type of Matter:    Patent Infringement, interactive TV Guide
Law Firm:    Townsend & Townsend, San Francisco, CA
Case Name:    Undisclosed
Services Provided:    Deposed and testified at trial in Tulsa, Oklahoma

Type of Matter:    Patent Infringement, interactive TV Guide
Law Firm:    Townsend & Townsend, San Francisco, CA
Case Name:    Undisclosed
Services Provided:    Deposed and testified at trial at the ITC in Washington, DC

Type of Matter:    Patent Infringement, video encryption and copy guard systems
Law Firm:    Skjerven Morrill LLP, San Jose, CA
Case Name:    Undisclosed
Services Provided:    Review, analysis and prepared expert report

Type of Matter:    Patent Infringement, parental control of video viewing
Law Firm:    McDermott, Menlo Park, CA
Case Name:    Rovi
Services Provided:    Review, analysis, declarations and prepared expert report

Type of Matter:    Patent Prosecution, parental controls regarding access to programming
Law Firm:    Ropes Gray
Case Name:    In process and cannot be disclosed
Services Provided:    Review, analysis, multiple meetings with patent examiner and prepared expert report

# Silicon Valley Expert Witness Group
## A Thomson Reuters Company
## Consultant Curriculum Vitae

Type of Matter:    Patent Infringement, video game controllers
Law Firm:    Gibson, Palo Alto, CA
Case Name:    Undisclosed
Services Provided:    Review, analysis, video deposition and prepared expert report

Type of Matter:    Patent Infringement, video game controllers
Law Firm:    Klarquist, Portland, Oregon
Case Name:    Microsoft
Services Provided:    Review, research, analysis, declaration, prepared expert report

## Patents

| Patent Number | Date Issued | Title |
| --- | --- | --- |
| 6,364,735 | 04/02/2002 | RF identification system for use in toys |
| 5,841,843 | 11/24/1998 | Facsimile Forwarding Method And System Using A Simulated Telephone Line Interface |
| 5,839,054 | 11/17/1998 | Automatic Registration Paging System |
| 5,221,083 | 06/22/1993 | Medal game machine |
| 4,900,904 | 02/13/1990 | Automated Transaction System with Insertable Cards for Downloading Rate or Program Data |
| 4,900,903 | 02/13/1990 | Automated Transaction System with Insertable Cards for Transferring Account Data |
| 4,864,618 | 09/05/1989 | Automated Transaction System with Modular Printhead Having Print Authentification Feature |
| 4,802,218 | 01/31/1989 | Automated Transaction System |
| 4,423,870 | 01/03/1984 | Video Game Collision Detection System |
| 4,192,507 | 03/11/1980 | Light actuated shooting arcade game |
| 4,169,272 | 09/25/1979 | Apparatus For Simulating A Perspective View Of A Video Image And For Storing Such Image With A Minimum Number Of Bits |
| 4,104,625 | 08/01/1978 | Apparatus For Providing Facial Image Animation |
| 4,099,719 | 07/11/1978 | System And Method For Automatic Alignment Of Gun With Video Display |
| 4,099,092 | 07/04/1978 | Television Display Alignment System And Method |
| 4,091,234 | 05/23/1978 | Joystick With Attached Circuit Elements |
| 4,045,789 | 08/30/1977 | Animated Video Image Display System And Method |
| 4,016,362 | 04/05/1977 | Multiple Image Positioning Control System And Method |

# Silicon Valley Expert Witness Group
## A Thomson Reuters Company
## Consultant Curriculum Vitae

## Education

| | | |
|---|---|---|
| 1984 | University of Santa Clara | MSEE |
| 1973 | University of California, Berkeley | BSEE, Highest Honors |

## Professional Associations and Achievements

- Past Member, IEEE
- Past Member, IEEE Administrative Committee of Consumer Electronics
- Member, Society for Information Display (SID)
- Member, SMPTE (Society of Motion Picture and Television Engineers)

---

## Silicon Valley Expert Witness Group, Inc.

| Mountain View, CA | Dallas, TX | Washington, DC |
|---|---|---|
| (650) 917-0700 | (214) 575-4600 | (202) 842-5030 |

E-mail: info@svewg.com

# LITIGATION RELATED EXPERIENCE

Case Name:          Samsung v. Ericsson
Matter:             Patent dispute regarding telecommunications standards
Law Firm:           McKool Smith
Ongoing


Case Name:  Rovi
Services Provided:  Review, analysis, declarations and prepared expert report
Type of Matter:     Patent Prosecution, parental controls regarding access to
                    programming
Law Firm:           Ropes Gray, Richard Feustel of Boston Office
Services Provided:  Review, analysis, multiple meetings with patent examiner and
                    prepared expert report
  Date of work:              2012


Case Name:          Rovi
Services Provided:  Review and analysis of filings in litigation. Deposition, case settled
Law Firm:           McDermot Will and Emory, Menlo Park
Attorney:           Hong Lin
Date of Work:       2012

Case Name :         Risarc
Services Provided:  Equipment inspection, expert report , deposition
Law Firm:           Bark K Rothman Law Firm, LA, Calif.
Attorney            Frederic Brandfon
Date of Work:       2012

Case Name:          Informatics v Shkonikov/Keynetic
Services Provided   document review, advice, expert report, deposition
Law Firm:           Worked through IMS Management Solutions, Pensacola, Fla.
Date of work        2012, case settled before trial

Case Name:          Microsoft Immersion
Services Provided   initial patent review and informal communication
Law Firm:           Hagens Berman Shobol Shapriro, Seattle Wa.
Date of work:       April 2012

Case Name:          DLA Piper Civil Action 11-785-GMS

| | |
|---|---|
| Services Provided | Prior art review re video patents |
| Law Firm: | DLA Piper, through Thompson Reuters Expert Services |
| Date of work: | Sept and October 2012 |

| | |
|---|---|
| Case: | Activision v. Harmonics |
| Matter: | Patent dispute |
| Responsibilities: | Prepared report, analyzed prior art patents and products, 2 days of |
| deposition | |
| Date closed: | 2009, settled before trial |
| Attorney: | Jason Lo, Gibson Dun, Palo Alto |

| | |
|---|---|
| Case: | Microsoft v. Anascape |
| Matter: | Patent dispute |
| Responsibilities: | Prepared reports and analyzed prior art patents and products |
| Date closed: | 2008, settled day before trial |
| Attorney: | Joe Jakubeck of Klarquist in Portland for defendant |

| | |
|---|---|
| Case: | Funai v. Samsung |
| Matter: | Patent dispute |
| Responsibilities: | Prepared reports, testified in trial and was deposed. |
| Date closed: | 2008, won |
| Attorney: | Gary Jex with Morgan Lewis for Funai |

| | |
|---|---|
| Case: | Activision v. Harmonics |
| Matter: | Patent dispute |
| Responsibilities: | Prepared report, analyzed prior art patents and products, 2 days of |
| deposition | |
| Date closed: | 2009, settled before trial |
| Attorney: | Jason Lo, Gibson Dun, Palo Alto |

| | |
|---|---|
| Case: | Microsoft v. Anascape |
| Matter: | Patent dispute |
| Responsibilities: | Prepared reports and analyzed prior art patents and products |
| Date closed: | 2008, settled day before trial |
| Attorney: | Joe Jakubeck of Klarquist in Portland for defendant |

| | |
|---|---|
| Case: | Funai v. Samsung |
| Matter: | Patent dispute |
| Responsibilities: | Prepared reports, testified in trial and was deposed. |
| Date closed: | 2008, won |
| Attorney: | Gary Jex with Morgan Lewis for Funai |

| | |
|---|---|
| Case: | Pitney Bowes v. Wright Technology |
| Matter: | Contract dispute-Arbitration |
| Responsibilities: patents | Prepared a declaration regarding the prosecution of electronic postal meter or this matter and was deposed |
| Date closed: | 2003 |
| Attorney: | Pennie & Edmonds for plaintiff |

| | |
|---|---|
| Case: | Gemstar v. Scientific Atlanta et al |
| Matter: | ITC trial regarding Interactive cable TV Guide |
| Responsibilities: arguments, | Preparation of declarations, assistance in brief and rebuttal brief review of other experts work, depositions, and testimony at trial |
| Date closed: | 2002, won |
| Attorney: | Townsend & Townsend for plaintiff |

| | |
|---|---|
| Case: | JVW v. Interact Accessories |
| Matter: | Patent dispute |
| Responsibilities: | Delivered an expert report and testified at bench trial |
| Date closed: | July 2002, won |
| Attorney: | Gordon Feinblatt for defendant |

| | |
|---|---|
| Case: | Telemac v. US/Intellicom |
| Matter: | Patent dispute |
| Responsibilities: | Prepared a number of reports, was deposed, and testified at trial. |
| Date closed: | 2002, won |
| Attorney: | Townsend and Townsend for the plaintiff |

| | |
|---|---|
| Case: | MGA v. Smart TV |
| Matter: | Patent dispute |
| Responsibilities: | Prepared reports and was deposed |
| Date closed: | 2002, won |
| Attorney: | Mitch Rosenfeld with Capstone Law Group for defendant |

| | |
|---|---|
| Case: | Dickerson v. Electronic Arts |
| Matter: | Patent infringement |
| Responsibilities: | Patent review and conference at pre trial pre settlement |
| Date closed: | 2001, settled |
| Attorney: | Jenner & Block for defendant |

| | |
|---|---|
| Case: | Smart TV v. Koplar |
| Matter: | Patent infringement-Transmission of data over a visible TV signal |

Responsibilities:    Conducted patent and prior art review and was deposed.  Settled in clients
favor.
Date closed:         2000, won
Attorney:            Tatro, Doffino Zeavin and Bloomgarden LLP for defendant

Case:                Indochina v. Stratford, et al.
Matter:              Insurance claim
Responsibilities:    Testified at jury trial on operation of fax machine
Date closed:         2000, lost
Attorney:            Carlson Messer & Turner LLP for defendant

Case:                Pitney Bowes v. E-Stamp
Matter:              Patent infringement venued in New Zealand
Responsibilities:    Postal meters and the E-Stamp Corporation.  Effort included research and
production

                     of an expert report and declaration for a New Zealand patent issue.
Date closed:         2000, don't remember
Attorney:            Inside counsel for Pitney Bowes

Case:                Electronic Arts v. David Sitrick
Matter:              Patent infringement regarding networked gaming systems
Responsibilities:    Prepared a number of reports and declarations.  This matter settled before
trial.
Date closed:         2000, settled
Attorney:            Fenwick and West for defendant

Case:                Trakker, Inc. et al v. Starsight Telecast, Inc.
Matter:              Patent dispute regarding "Electronic TV guide"
Responsibilities:    Deposed and testified at trial.
Date closed:         1999, won
Attorney:            Orrick Herrington for defendant

Case:                StarSight v. United Video
Matter:              Patent dispute regarding Interactive cable TV guide
Responsibilities:    Deposed and testified at trial in 1995-1997 in Federal Court in Tulsa
Oklahoma

                     and in Federal Court in San Jose, Calif.  This work involved the delivery
                        of TV
                     program guide information over both cable and satellite channels.
Date closed:         1999, settled through merger
Attorney:            Townsend & Townsend for plaintiff

Case:                Universal Electronics
Matter:              Contract dispute regarding warranty repair

Responsibilities: expert    Reviewed a warehouse full of damaged remote controls and delivered an report on their cause of failure.
Date closed:    1998, won
Attorney:       Jones Day for defendant

Case:           Nintendo Video Game System v. Magnavox
Matter:         Patent dispute
Responsibilities: Prepared reports was deposed and testified at trial.
Date closed:    1997, won
Attorney:       Bob Gunther with Mudge Rose for defendant

Case:           David Sukonick v. Commodore Games
Matter:         Patent dispute re Video Game Scrolling System
Responsibilities: Prepared reports and was deposed
Date closed:    1997, settled
Attorney:       Dick Smith with Finnegan for defendant

Case:           Atarti v. Nintendo
Matter:         Patent dispute
Responsibilities: Prepared reports and was deposed
Date closed:    1996, won
Attorney:       Spense Lubas for plaintiff

Case:           Alpex Computers v. Commodore Games
Matter:         Patent dispute
Responsibilities: Prepared reports and was deposed.
Date closed:    1996, lost
Attorney:       Dick Smith with Finnegan for defendant