SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
MATTHEW M. MUELLER. Cal. Bar No. 268486
mmueller@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone: 858.720.8900
Facsimile: 858.509.3691

STEVEN M. HANLE, Cal. Bar No. 168876
shanle@sheppardmullin.com
650 Town Center Drive, 4th Fl.
Costa Mesa, CA 92626
Telephone: 714.513.5100
Facsimile: 714.513.5130

Attorneys for Performance Designed Products LLC, Energizer Holdings, Inc., and Eveready Battery Co., Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENERGIZER HOLDINGS, INC. a Missouri Corporation, EVEREADY BATTERY CO., INC, a Delaware Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company,<br><br>Defendants. | Case No. CV12-03001-GAF-VBK<br><br>**STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY**<br><br>Date: September 23, 2013<br>Time: 9:30 a.m.<br><br>Judge Gary Allen Feess<br><br>Complaint Filed: April 5, 2012<br>Discovery Cutoff: Oct. 14, 2013<br>Pretrial Conf.: Dec. 30, 2013<br>Trial Date: Jan. 28, 2014 |

Case No. CV12-03001

SMRH:408209097.11

## I. UNDISPUTED FACTS

All cites to Exhibits ("Ex. __") refer to exhibits to the Buccigross Declaration filed herewith. Each exhibit has been separately numbered. Thus, for example, Ex. 1-1 refers to Exhibit 1, page 1. Citations to deposition transcripts (Exs. 31 and 37) refer to the numbered transcript pages. To the extent any of these facts are deemed conclusions of law, they are supported by the underlying undisputed facts.

| No. | Undisputed Material Fact | Supporting Evidence |
|-----|--------------------------|---------------------|
| 1 | On January 8, 2007, Nyko publicly announced the launch of its Charge Base product. Nyko's press release confirmed that the Charge Base "will debut at this year's Consumer Electronics Show in Las Vegas, Nevada"; announced that "the Charge Base for PS3 has a suggested retail price of $39.99"; and stated "Nyko will offer hands-on demos of all of its PlayStation 3 products at this year's Consumer Electronics Show in Las Vegas, Nevada." | Ex. 14; Ex. 31 (depo pp. 91-93). |
| 2 | Nyko then publicly demonstrated the Charge Base between January 8 and 11, 2007 during Consumer Electronics Show 2007 in a Las Vegas Hilton Hotel suite open to members of the press and retailers of video game accessories. | Exs. 14, 16, 17; Ex. 31 (depo. pp. 40, 54-55, 98-100, 236, 238-239); Ex. 33 at 33-9. |
| 3 | The members of the press and retailers who viewed the Charge Base on or after January 8, 2007 were allowed to videotape and photograph it, and were under no limitation, restriction, or obligation of confidentiality. | Exs. 6, 10, 16, 17, 34, 31 (depo. pp. 42-44, 48-50, 53-55, 82-85, 249-250). |
| 4 | The Charge Base demonstrated in January 2007 included | Ex. 33 at 33-9 to |

| | | | |
|---|---|---|---|
| | | all the elements of claims 1-5, 7, 8, 11-13, and 16-17. | 33-11; Dkt. No. 44 ¶ 17; Bristow Decl. ¶ 16. |
| | 5 | In the week following the press release and the hotel suite demonstration, numerous publications further disclosed the Charge Base, including a video published on an industry review website and on YouTube, photographs of the Charge Base, written descriptions of the Charge Base, and its retail price. | Ex. 5-14, 16, 17, 34; Buccigross Decl. ¶¶ 7-16, 18-21. |
| | 6 | By January 8, 2007, the same day Nyko issued its press release, it placed the Charge Base on sale by communicating at least its price, part number, product name and product description to its customer Amazon so that Amazon could order Charge Base products. | Buccigross Decl. ¶¶ 22, 25-26; Exs. 18-5 to 18-6, 20-3, 21-3 to 21-4, 22-3 to 22-4. |
| | 7 | On the same day, Amazon emailed to Nyko four separate purchase orders for four different Amazon locations for a total of 460 Charge Base units at $22 per unit (a 45% discount off the $39.99 retail price). | Buccigross Decl. ¶¶ 22, 24-27; Exs. 18-5 to 18-6, 20-3, 21-3 to 21-4, 22-3 to 22-4, Ex. 23. |
| | 8 | On the next day, January 9, 2007, Nyko accepted the orders by generating and sending to Amazon "Sales Orders" for each of the Amazon purchase orders. Each of the Sales Orders includes Amazon's corresponding purchase order number, as well as the quantity, part number, product description and the discounted pricing of | Buccigross Decl. ¶¶ 22-26; Exs. 18-3, 20-3, 21-2, 22-2; Ex. 19-2. |

| | | | |
|---|---|---|---|
| 1 | | the Charge Base units ordered. | |
| 2 | 9 | Nyko's documents show that it shipped products pursuant these Amazon purchase orders and Nyko's confirming Sales Order documents (numbered 97145 to 97148) on July 11, 2007. | Buccigross Decl. ¶¶ 23-26; Ex. 19-2. |
| 3 4 5 6 | | | |
| 7 8 9 | 10 | Including the Amazon orders, Nyko accepted at least 19 separate orders for a total of at least 4,665 Charge Base units between January 8, 2007 and March 2, 2007. | Buccigross Decl. ¶¶ 22-29; Exs. 18 to 24. |
| 10 11 12 13 14 15 16 17 | 11 | The following Charge Base units were shipped by Nyko on July 11, 2007 pursuant to orders accepted and confirmed before the March 7, 2007 on-sale bar date: 100 of the 300 Charge Base units ordered by Baker & Taylor Entertainment (NV) on February 6, 2007; 100 of the 600 units ordered by Baker & Taylor Entertainment (IL) on February 6, 2007; the 200 Charge Base units ordered by Eurpac on February 22, 2007. | Buccigross Decl. ¶ 29; Exs. 19 and 24. |
| 18 19 20 21 22 | 12 | Nyko employee Amir Navid filed a provisional patent application on the Charge Base 2 product on October 24, 2007 ("Navid Provisional"). Navid had not previously filed for patent protection on any charge stand for wireless controllers. | Exs. 2, 29, 37 (depo. p. 188.) |
| 23 24 25 26 27 28 | 13 | As described in Nyko's press release, the Charge Base 2 employed "a totally new contact point dongle system" consisting of "two light weight Mini USB charge adaptors that attach to the controller and allow for easy drop and charge functionality through the Charge Base 2's | Ex. 30 |

| | | | |
|---|---|---|---|
| | | specialized charging ports." | |
| | 14 | Unlike the Asserted Claims of the '848 Patent, the Navid Provisional does not disclose DC ports or USB ports of any kind on the base, and <u>only</u> discloses embodiments requiring a separate external adapter. | Compare Ex. 1 at 1-33 (independent claims 1 and 13) with Ex. 2 at 2-18 to 2-22, 2-24 (FIGS. 1-5, 7), 2-7 (¶ 5), 2-8 to 2-11 (¶¶ 16-23). |
| | 15 | In describing the prior art, the Navid Provisional states:<br><br>[0003] Frequent replacement of batteries can be expensive, and as a result many accessory devices utilize rechargeable batteries. The accessory device is connected to a charging station periodically to recharge the batteries. The charging station and the accessory device have matching plugs or ports that fit together to make a connection. If the plug on the charging station or the accessory device is broken or damaged, the accessory device can no longer be connected to the charging station. These plugs can be small and/or fragile, as the accessory device itself is often a small, compact device. These small plugs can be easily bent or broken, rendering the charging station inoperable. The user has to be careful to connect the plugs slowly, gently, and completely, in order to make a proper connection without damaging the parts. | Ex. 2 at 2-6. |
| | 16 | The Navid Provisional describes that the object of the invention is to overcome this problem as follows:<br><br>[0004] Thus, it is desirable to provide an improved charging station that allows for fast, easy, and reliable connection between the accessory device and the charging station. | Ex. 2 at 2-7. |

| | | | |
|---|---|---|---|
| 17 | The invention of the Navid Provisional includes an external adapter 16 with a male USB port to connect to the controller:<br><br>[0022] In use, the connector 42 on the adapter 16 is connected to the power input port of the accessory device to be charged, such as the hand-held controller 26 shown in FIGs. 5 and 6. The adapter 16 is a small and light-weight piece that connects snugly to the power input port of the hand-held controller 26. The adapter 16 can remain with the hand-held controller 26 at all times, even when the controller 26 is not being charged in the charging station 10. When the hand-held controller 26 is in use during operation of a video game, when the controller 26 is stored, and when it is charging, the adapter 16 can remain connected to (and physically mounted on) the controller 26. The adapter 16 is small and light weight, so that it does not interfere with operation of the controller 26. When the controller needs to be recharged, connecting it to the charging station 10 is as easy as dropping it into the docking bay 12, 14. The adapter 16 slides easily into the recess 30, and the electrical leads 22 on the bottom of the adapter 16 make an electrical connection with the electrical contacts 20 in the recess 30. The charging station 10 is connected to a power supply through its own power input. The charging station 10 then provides power to the controller 26 to recharge the controller's batteries. This recharging process is fast and easy, as the adapter 16 allows the controller to be simply dropped into place, rather than carefully connected to a fragile port or connector. | | Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B AND 4C), 2-24 (FIG. 7). |
| 18 | The external adapters 16 including the DC ports (connectors 42) are separate from the charger base. | | Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B |

| | | | |
|---|---|---|---|
| | | | AND 4C), 2-24 (FIG. 7). |
| | 19 | Thus, to achieve the object of the invention of the Navid Provisional, the DC port that plugs into the controller in the invention of Navid Provisional is placed on an external adapter, separate from the base of the charging system. This DC port is supported by the adapter, not by the base. This adapter is plugged into the wireless controller and remains connected to the controller when it is in use (not connected to the charging station), and when the controller/adapter is placed into a docking bay on the base of the charging system (the "Adapter Invention"). | Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B AND 4C), 2-24 (FIG. 7); Bristow Decl. ¶¶ 10-15. |
| | 20 | Contrary to the Asserted Claims, the Navid Provisional does not disclose a charging device with DC ports on the base or supported by the base and is expressly directed to a device that places DC ports on and supported by an external adapter that remains attached to the controller. | Compare Ex. 1 (independent claims 1 and 13, FIGS. 11-15) with Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B AND 4C), 2-24 (FIG. 7); Bristow Decl. ¶¶ 10-15. |
| | 21 | On March 7, 2008, almost five months after the filing of the Navid Provisional (October 24, 2007), Navid filed Application No. 12/044,295 (the '295 Application), which | Ex. 1 at 1-1; Ex. 32 at 32-1. |

| | | | |
|---|---|---|---|
| 1 | | is the application that resulted in the '848 Patent. | |
| 2 | 22 | The '295 Application describes, for the first time in any Navid patent application, a charging system with "at least one DC port on the base," and not requiring a separate external adapter with a DC port to facilitate the connection between the controllers and the charge base. | Ex. 32 at 32-47 to 32-51 (FIGS. 11-13, 15), 32-5 (¶ 0008), 32-13 (lines 6-8), 32-30 (claim 1), 32-36 (Abstract). |
| 3 | 23 | The DC ports 408 on the base depicted in Figs. 11-13 of the '295 application are "male mini-USB connectors." | Ex. 32 at 32-47 to 32-49 (FIGS. 11-13), 32-19 (¶ 83). |
| 4 | 24 | In addition to the new embodiment with the DC ports on the base, the '295 application includes the Adapter Invention described and depicted in the earlier Navid Provisional as an entirely separate embodiment. Specifically, the '295 application discloses "another exemplary embodiment of the invention, shown in FIGS. 16-23" with electrical contacts 520 on the base instead of DC ports. | Ex. 32 at 32-4 to 32-5 (¶ 22), 32-22 to 32-25 (¶¶ 93-99), 32-51 to 31-59 (FIGS. 16-23). |
| 5 | 25 | As in the Navid Provisional, the DC ports (connectors 542) that connect to the controllers are located on external adapters 516, which are separate from the base as clearly shown in FIGS. 17, 19 and 22. On the opposite surface of the adapters from the DC ports are electrical leads 522 that make contact with the electrical contacts 520 on the base to provide an electrical connection to provide power | Ex. 32 at 32-25 (¶ 99), 32-52 (FIG. 17), 32-54 (FIGS. 19A AND 19C) and 32-58 (FIG. 22). |

| | | | |
|---|---|---|---|
| | | to the controllers. | |
| | 26 | Confirming that the new embodiment of the charging system with the DC ports on the base was a different invention than the Adapter Invention of the Navid Provisional, it was claimed separately from the Adapter Invention in both the original claims of the '295 application and in the claims as issued. | Ex. 32 at 32-30 to 32-35 (compare claims 1-20 (DC ports on or supported by the base) with claims 21-27 (DC ports on the adapter); Ex. 1 at 1-33 to 1-34 (compare claims 1-17 (DC ports on or supported by the base) with claims 18-27 (DC ports on the adapter) |
| | 27 | Each of the Asserted Claims of the '848 patent requires "a plurality of DC ports on the base" of the charging system configured to provide power to a power input port of a wireless controller (claims 1-5, 7, 8, and 10-12) or, more specifically, "a plurality of male mini-USB connectors supported by the base" (claims 13, 15-17). | Ex. 1 at 1-33. |
| | 28 | Because Nyko admits that the Charge Base met all the limitations of independent claims 1 and 13 (see Ex. 33 at 33-9 to 33-11), the only limitation of claims 10 and 15 not | Ex. 1 at 1-33 |

| | | |
|---|---|---|
| | present in the Charge Base were an <u>external</u> AC-to-DC converter, i.e., the converter is external to the base of the charger and coupled to a power input on the base. | |
| 29 | External AC-to-DC converters were well known in the accessory charging art as of at least 2005 and it would have been obvious to replace the internal AC-to-DC converter in the Charge Base with an external AC-to-DC converter. | Exs. 4, 38-40; Bristow Decl. ¶¶ 17-19. |

## II.  CONCLUSIONS OF LAW

To the extent any of these conclusions of law are deemed facts, they are undisputed based on the evidence cited herein.

1. The invention of Asserted Claims 1-5, 7, 8, 11-13, and 16-17 were in public use before March 7, 2007.

2. The invention of Asserted Claims 1-5, 7, 8, 11-13, and 16-17 were on sale before March 7, 2007.

3. The Asserted Claims 1-5, 7, 8, 10-13, and 15-17 are not entitled to the effective filing date of the Navid Provisional application.

4. The effective filing date of the Asserted Claims 1-5, 7, 8, 10-13, and 15-17 is March 7, 2008.

5. Asserted Claims 1-5, 7, 8, 11-13, and 16-17 are invalid under 35 USC section 102(b) based on public use and sales more than one year before their effective filing date.

6. Asserted Claims 10 and 15 are invalid as obvious under 35 USC section 103 based on public use and sales of the Charge Base more than one year before their effective filing date, and prior art charging devices disclosing an external AC-to-DC converter.

Dated: August 20, 2013

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     /s/ Steven M. Hanle
DANIEL N. YANNUZZI
STEVEN M. HANLE
GRAHAM (GRAY) M. BUCCIGROSS

Attorneys for Performance Designed Products LLC, Eveready Battery Co., Inc., and Energizer Holdings, Inc.