1   **ART HASAN, CA Bar No. 167323**
    art.hasan@cph.com
2   **G. WARREN BLEEKER, CA Bar No. 210834**
    warren.bleeker@cph.com
3   **KATHERINE L. QUIGLEY, CA Bar No. 258212**
    katherine.quigley@cph.com
4   **CHRISTIE, PARKER & HALE, LLP**
    **655 North Central Avenue, Suite 2300**
5   **Glendale, California 91203-1445**
    **Telephone: (626) 795-9900**
6   **Facsimile:  (626) 577-8800**

7   Attorneys for Plaintiff and Counterdefendant,
    NYKO Technologies, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  NYKO TECHNOLOGIES, INC., a          Case No. CV12-03001 GAF (VBKx)
    California corporation,
13                                       **NYKO TECHNOLOGIES, INC.'S**
                Plaintiff,               **SEPARATE STATEMENT OF**
14                                       **GENUINE DISPUTES OF**
         vs.                             **MATERIAL FACT**
15
    ENERGIZER HOLDINGS, INC., a          **DATE:    September 23, 2013**
16  Missouri corporation, EVEREADY       **TIME:    9:30 a.m.**
    BATTERY COMPANY, INC., a             **CTRM:    740**
17  Delaware corporation, and            **JUDGE:  Gary A. Feess**
    PERFORMANCE DESIGNED                          **Judge Presiding**
18  PRODUCTS LLC, a California limited
    liability company,                   Complaint Filed:   April 5, 2012
19                                        Discovery Cutoff:  Oct. 14, 2013
                Defendants.              Pretrial Conf.:    Dec. 30, 2013
20                                       Trial Date:        Jan. 28, 2014

21

22  ─────────────────────────────
    AND RELATED COUNTERCLAIM.
23

24

25

26

27

28

                              -1-

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| 1 | On January 8, 2007, Nyko publicly announced the launch of its Charge Base product.  Nyko's press release confirmed that the Charge Base "will debut at this year's Consumer Electronics Show in Las Vegas, Nevada"; announced that "the Charge Base for PS3 has a suggested retail price of $39.99"; and stated "Nyko will offer hands-on demos of all of its PlayStation 3 products at this year's Consumer Electronics Show in Las Vegas, Nevada." | UNDISPUTED. |
| 2 | Nyko then publicly demonstrated the Charge Base between January 8 and 11, 2007 during Consumer Electronics Show 2007 in a Law Vegas Hilton Hotel suite open to members of the press and retailers of video game accessories. | DISPUTED.<br>***Defs.' Supporting Evidence:***<br>Ex. 14, 16, 17; Ex. 31 (depo. pp. 40, 54-55, 98-100, 236, 238-239); Ex. 33 at 33-9.<br>***Nyko's Supporting Evidence:***<br>Def. Ex. 33 at 33:9; Plaintiff's Ex. K (depo pp. 40-41, 53-55, 80-81, 93, 232-233, 239-240, Ex. L, M; Ex. N (depo. pp. 115-116). |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| 3 | The members of the press and retailers who viewed the Charge Base on or after January 8, 2007 were allowed to videotape and photograph it, and were under no limitation, restriction, or obligation of confidentiality. | DISPUTED IN PART.  Nyko disputes this statement to the extent "the Charge Base" refers to a product other than the specific prototype shown at the CES 2007 show. ***Defs.' Supporting Evidence:*** Ex. 6, 10, 16, 17, 34, 31 (dep. pp. 42-44, 48-50, 53-55, 82-85, 249-250). ***Nyko's Supporting Evidence:*** Def. Ex. 33 at 33:9; Plaintiff's Ex. K (depo pp. 53-55, 71-75, 239-240); Ex. N (depo. pp. 111-112, 126-127, 301). |
| 4 | The Charge Base demonstrated in January 2007 included all the elements of claims 1-5, 7, 8, 11-13, and 16-17. | DISPUTED. ***Defs.' Supporting Evidence:*** Ex. 33 at 33-9 to 33-11; Dkt. No. 44 ¶ 17; Bristow Decl. ¶ 16. ***Nyko's Supporting Evidence:*** Plaintiff's Ex. K (depo pp. 53-55, 71-75, 80-81, 239-240), Ex. L, M; Dkt. No. 44 ¶17; Ex. N (depo. pp. 111-112, 126-127, 301). |
| 5 | In the week following the press release and the hotel suite demonstration, numerous | DISPUTED. ***Defs.' Supporting Evidence:*** Ex. 5-14, 16, 17, 34; Buccigross |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|-----|---------------------------------------------------|-----------------|
|  | publications further disclosed the Charge Base, including a video published on an industry review website and on YouTube, photographs of the Charge Base, written descriptions of the Charge Base, and its retail price. | Decl. ¶¶ 16, 18-21. *Nyko's Supporting Evidence:* Ex. 5-14, 16, 17, 34. |
| 6 | By January 8, 2007, the same day Nyko issued its press release, it placed the Charge Base on sale by communicating at least its price, part number, product name and product description to its customer Amazon so that Amazon could order Charge Base products. | DISPUTED. *Defs.' Supporting Evidence:* Buccigross Decl. ¶¶ 22, 25-26; Exs. 18-5 to 18-6, 20-3, 21-3 to 21-4, 22-3 to 22-4. *Nyko's Supporting Evidence:* Plaintiff's Ex. K (depo pp. 174, 179-181, 197-211, 217, 219-223, 294); Def. Ex. 18, 20-22. |
| 7 | On the same day Amazon emailed to Nyko four separate purchase orders for four different Amazon locations for a total of 460 Charge Base units at $22 per unit (a 45% discount off the $39.99 retail price). | DISPUTED. *Defs.' Supporting Evidence:* Buccigross Decl. ¶¶ 22, 24-27; Exs. 18-5 to 18-6, 20-3, 21-3 to 21-4, 22-3 to 22-4, Ex. 23. *Nyko's Supporting Evidence:* Plaintiff's Ex. K (depo pp. 174, 179-181, 197-211, 217, 219-223, 294); Def. Ex. 18, 20-22. |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| 8 | On the next day, January 9, 2007, Nyko accepted the orders by generating and sending to Amazon "Sales Orders" for each of the Amazon purchase orders.  Each of the Sales Orders includes Amazon's corresponding purchase order number, as well as the quality, part number, product description and the discounted pricing of the Charge Base units ordered. | DISPUTED.<br>***Defs.' Supporting Evidence:***<br>Buccigross Decl. ¶¶ 22-26, Exs. 18-3, 20-3, 21-2, 22-2; Ex. 19-2.<br>***Nyko's Supporting Evidence:***<br>Plaintiff's Ex. K (depo pp. 174, 179-181, 197-211, 217, 219-223, 294); Def. Ex. 18, 20-22. |
| 9 | Nyko's documents show that it shipped products pursuant these Amazon purchase orders and Nyko's confirming Sales Order documents (numbered 97145 to 97148) on July 11, 2007. | DISPUTED.<br>***Defs.' Supporting Evidence:***<br>Buccigross Decl. ¶¶ 23-26; Ex. 19-2.<br>***Nyko's Supporting Evidence:***<br>Plaintiff's Ex. K (depo pp. 174, 179-181, 197-211, 217, 219-223, 294); Def. Ex. 19. |
| 10 | Including the Amazon orders, Nyko accepted at least 19 separate orders for a total of at least 4,665 Charge Base units between January 8, 2007 and March 2, 2007. | DISPUTED.<br>***Defs.' Supporting Evidence:***<br>Buccigross Decl. ¶¶ 22-29; Exs. 18 to 24.<br>***Nyko's Supporting Evidence:*** |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| | | Plaintiff's Ex. K (depo pp. 174, 179-181, 197-211, 217, 219-223, 294); Def. Ex. 18-24. |
| 11 | The following Charge Base units were shipped by Nyko on July 11, 2007 pursuant to orders accepted and confirmed before the March 7, 2007 on-sale bar date:  100 of the 300 Charge Base units ordered by Baker & Taylor Entertainment (NV) on February 6, 2007; 100 of the 600 units ordered by Baker & Taylor Entertainment (IL) on February 6, 2007; the 200 Charge Base units ordered by Eurpac on February 22, 2007. | DISPUTED. **_Defs.' Supporting Evidence:_** Buccigross Decl. ¶¶ 29; Exs. 19 and 24. **_Nyko's Supporting Evidence:_** Plaintiff's Ex. K (depo pp. 174, 179-181, 197-211, 217, 219-223, 294); Def. Ex. 19 and 24. |
| 12 | Nyko employee Amir Navid filed a provisional patent application on the Charge Base 2 product on October 24, 2007 ("Navid Provisional").  Navid had not previously filed for patent protection on any charge stand for wireless controllers. | DISPUTED IN PART.  Nyko disputes this to the extent that is asserts that the provisional application is only directed to the Charge Base 2. **_Defs.' Supporting Evidence:_** Exs. 2, 29, 27 (depo. p. 188). **_Nyko's Supporting Evidence:_** Ex. A, B and N (depo. pp. 301-303); |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|-----|---------------------------------------------------|-----------------|
|     |                                                   | Kitchen Decl. ¶23-24, 39-72, 80-82, 89-102. |
| 13  | As described in Nyko's press release, the Charge Base 2 employed "a totally new contact point dongle system" consisting of "two light weight Mini USB charge adaptors that attach to the controller and allow for easy drop and charge functionality through the Charge Base 2's specialized charging ports." | UNDISPUTED. |
| 14  | Unlike the Asserted claims of the '848 Patent, the Navid Provisional does not disclose DC ports or USB ports of any kind on the base, and only disclosed embodiments requiring a separate external adapter. | DISPUTED. *Defs.' Supporting Evidence:* Compare Ex. 1 at 1-33 (independent claims 1 and 13) with Ex. 2 at 2-18 to 2-22, 2-24 (FIGS. 1-5, 7), 2-7 (¶ 5), 2-8 to 2-11 (¶¶ 16-23). *Nyko's Supporting Evidence:* Ex. A, at Figs. 3, 5, 6 & ¶0023; Kitchen Decl. ¶23, 39-63, 71, Kitchen Ex. 2. |
| 15  | In describing the prior art, the Navid Provisional states: [0003] Frequent replacement of | DISPUTED. Nyko disputes that this statement is describing the prior art. |

-7-

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| | batteries can be expensive, and as a result many accessory devices utilize rechargeable batteries.  The accessory device is connected to a charging station periodically to recharge the batteries.  The charging station and the accessory device have matching plugs or ports that fit together to make a connection.  If the plug on the charging station or the accessory device is broken or damaged, the accessory device can no longer be connected to the charging station.  These plugs can be small and/or fragile, as the accessory device itself is often a small, compact device.  These small plugs can be easily bent or broken, rendering the charging station inoperable.  The user has to be careful to connect the plugs slowly, gently, and completely, in order | *Defs.' Supporting Evidence:* Ex. 2 at 2-6. *Nyko's Supporting Evidence:* Kitchen Decl. ¶73-88; Ex. A ¶0003. |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|-----|--------------------------------------------------|-----------------|
|     | to make a proper connection without damaging the parts. | |
| 16 | The Navid Provisional describes that the object of the invention is to overcome this problem as follows: [0004] thus, it is desirable to provide an improved charging station that allows for fast, easy, and reliable connection between the accessory device and the charging station. | DISPUTED. Nyko disputes that this statement is describing the "object of the invention." **Defs.' Supporting Evidence:** Ex. 2 at 2-7. **Nyko's Supporting Evidence:** Kitchen Decl. ¶¶ 73-88; Ex. A ¶0004. |
| 17 | The invention of the Navid Provisional includes an external adapter 16 with a male USB port to connect to the controller: [0022] In use, the connector 42 on the adapter 16 is connected to the power input port of the accessory device to be charged, such as the hand-held controller 26 shown in FIGs. 5 and 6.  The adapter 16 is a small and light-weight piece that connects snugly to the power input port | DISPUTED. This passage merely describes "one embodiment," not the "invention" of the Provisional Application. **Defs.' Supporting Evidence:** Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B AND 4C), 2-24 (FIG. 7). **Nyko's Supporting Evidence:** Ex. A ¶0017, 0022; Kitchen Decl. ¶51-55, 89-102. |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|-----|--------------------------------------------------|-----------------|
|     | of the hand-held controller 26. The adapter 16 can remain with the hand-held controller 26 at all times, even when the controller 26 is not being charged in the charging station 10.  When the hand-held controller 26 is in use during operation of a video game, when the controller 26 is stored, and when it is charging, the adapter 16 can remain connected to (and physically mounted on) the controller 26. The adapter 16 is small and light weight, so that it does not interfere with operation of the controller 26.  When the controller needs to be recharged, connecting it to the charging station 10 is as easy as dropping it into the docking bay 12, 14. The adapter 16 slides easily into the recess 30, and the electrical leads 22 on the bottom of the adapter 16 make an electrical | |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| | connection with the electrical contacts 20 in the recess 30. The charging station 10 is connected to a power supply through its own power input. The charging station 10 then provides power to the controller 26 to recharge the controller's batteries.  This recharging process is fast and easy, as the adapter 16 allows the controller to be simply dropped into place, rather than carefully connected to a fragile port or connector. | |
| 18 | The external adapters 16 including the DC ports (connectors 42) are separate from the charger base. | DISPUTED. ***Defs.' Supporting Evidence:*** Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B AND 4C), 2-24 (FIG. 7). ***Nyko's Supporting Evidence:*** Kitchen Decl. ¶51-55, 73-101; Ex. A ¶0023; Ex. C (Bristow Depo. 69:10-14). |
| 19 | Thus, to achieve the object of the invention of the Navid Provisional, | DISPUTED. ***Defs.' Supporting Evidence:*** |

-11-

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|-----|--------------------------------------------------|-----------------|
|     | the DC port that plugs into the controller in the invention of Navid Provisional is placed on an external adapter, separate from the base of the charging system.  This DC port is supported by the adapter, not by the base.  This adapter is plugged into the wireless and remains connected to the controller when it is in use (not connected to the charging station), and when the controller/ adapter is placed into a docking bay on the base of the charging system (the "Adapter Invention"). | Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B AND 4C), 2-24 (FIG. 7); Bristow Decl. ¶¶ 10-15.<br>***Nyko's Supporting Evidence:***<br>Kitchen Decl. ¶24, 64-72, 76-82, 86, 89-102; Ex. A at Fig. 3, 5, 6 & ¶¶ 0017, 0021. |
| 20  | Contrary to the Asserted Claims, the Navid Provisional does not disclose a charging device with DC ports on the base or supported by the base and is expressly directed to a device that places DC ports on and supported by an external adapter that remains attached to the controller. | DISPUTED.<br>***Defs.' Supporting Evidence:***<br>Compare Ex. 1 (independent claims 1 and 13, FIGS. 11-15) with Ex. 2 at 2-10 to 2-11 (¶ 22), 2-19 (FIG. 2), 2-21 (FIGS. 4A, 4B AND 4C), 2-24 (FIG. 7); Bristow Decl. (¶¶ 10-15).<br>***Nyko's Supporting Evidence:***<br>Kitchen Decl. ¶23-25, 39-72, 76-82, 86, 89-102; Ex. A at Fig. 3, 5, 6 & ¶¶ |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| | | 0016, 0017, 0021, 0022, 0028. |
| 21 | On March 7, 2008, almost five months after the filing of the Navid Provisional (October 24, 2007), Navid filed Application No. 12/044,295 (the '295 Application), which is the application that resulted in the '848 Patent. | UNDISPUTED. |
| 22 | The '295 application describes, for the first time in any Navid patent application, a charging system with "at least one DC port on the base," and not requiring a separate external adapter with a DC port to facilitate the connection between the controllers and the charge base. | DISPUTED. **Defs.' Supporting Evidence:** Ex. 32 at 32-47 to 32-51 (FIGS. 11-13, 15), 32-5 (¶ 0008), 32-13 (lines 6-8), 32-30 (claim 1), 32-36 (Abstract). **Nyko's Supporting Evidence:** Kitchen Decl. ¶23, 25, 39-63, 86-91, 94-99, Ex. A. |
| 23 | The DC ports 408 on the base depicted in Figs. 11-13 of the '295 application are "male mini-USB connectors." | UNDISPUTED. |
| 24 | In addition to the new embodiment with the DC ports on the base, the '295 application includes the Adapter Invention described and | DISPUTED. **Defs.' Supporting Evidence:** Ex. 32 at 32-4 to 32-5 (¶22), 32-22 to 32-25  (¶¶ 93-99), 32-51 to 31-59 |

-13-

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| | depicted in the earlier Navid Provisional as an entirely separate embodiment.  Specifically, the '295 application disclosed "another exemplary embodiment of the invention, shown in FIGS. 16-23" with electrical contacts 520 on the base instead of DC ports. | (FIGS. 16-23). ***Nyko's Supporting Evidence:*** Kitchen Decl. ¶39-63,101; Ex. N (Navid depo. pp. 144-145); Ex. A at ¶0017; Ex. B at Figs. 16-23. |
| 25 | As in the Navid Provisional, the DC ports (connectors 542) that connect to the controllers are located on external adapters 16, which are separate from the base as clearly shown in FIGS. 17, 19 and 22.  On the opposite surface of the adapters from the DC ports are electrical leads 522 that make contact with the electrical contacts 520 on the base to provide an electrical connection to provide power to the controllers. | DISPUTED. ***Defs.' Supporting Evidence:*** Ex. 32 at 32-25 (¶ 99), 32-52 (FIG. 17), 32-54 (FIGS. 19A AND 19C) and 32-58 (FIG. 22). ***Nyko's Supporting Evidence:*** Kitchen Decl. ¶39-63, 51, 101; Ex. A Figs. 3, 5, 6, ¶¶ 0016, 0017, 0021, 0022, 0023, 0028; Ex. B at Figs. 16-23. |
| 26 | Confirming that the new embodiment of the charging system with the DC ports on the base was a different invention than the | DISPUTED. ***Defs.' Supporting Evidence:*** Ex. 32 at 32-30 to 32-35 (compare claims 1-20 (DC ports on or |

-14-

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
|  | Adapter Invention of the Navid Provisional, it was claimed separately from the Adapter Invention in both the original claims of the '295 application and in the claims as issued. | supported by the base) with claims 21-27 (DC ports on the adapter); Ex. 1 at 1-33 to 1-34 (compare claims 1-17 (DC ports on or supported by the base) with claims 18-27 (DC ports on the adapter). *Nyko's Supporting Evidence:* Kitchen Decl. ¶100; Ex. A ¶., at Figs. 3, 5, 6, ¶¶ 0016, 0017, 0021, 0022, 0023 0028, Ex. B. |
| 27 | Each of the Asserted Claims of the '848 patent requires "a plurality of DC ports on the base" of the charging system configured to provide power to a power input port of a wireless controller (claims 1-5, 7, 8 and 10-12) or, more specifically, "a plurality of male mini-USB connectors supported by the base" (claims 13, 15-17). | DISPUTED IN PART. Nyko disputes that the requirement of "a plurality of male mini-USB connectors supported by the base" is more specific than "a plurality of DC ports on the base." *Defs.' Supporting Evidence:* Ex. 1 at 1-33. *Nyko's Supporting Evidence:* Ex. A, D-J; Kitchen Decl. ¶39-72. |
| 28 | Because Nyko admits that the Charge Base met all the limitations of independent claims 1 and 13 (see Ex. 33 at 33-9 to 33-11), the only limitation of claims 10 and 15 | DISPUTED IN PART. Nyko disputes this statement to the extent "Charge Base" refers to the prototype of the Charge Base shown at the CES show in 2007. |

CHRISTIE, PARKER & HALE, LLP

| No. | Defendants' Purportedly Undisputed Material Fact | NYKO's Response |
|---|---|---|
| | not present in the Charge Base were an external AC-to-DC converter, i.e., the converter is external to the base of the charger and coupled to a power input on the base. | *Defs.' Supporting Evidence:* Ex. 1 at 1-33. *Nyko's Supporting Evidence:* Def. Ex. 33 at 33:9; Plaintiff's Ex. K (depo pp. 53-55, 71-75, 239-240); Ex. N (depo. pp. 111-112, 126-127, 301). |
| 29 | External AC-to-DC converters were well known in the accessory charging art as of at least 2005 and it would have been obvious to replace the internal AC-to-DC converter in the Charge Base with an external AC-to-DC converter. | UNDISPUTED. |

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| 30 | The Provisional Application discloses each and every feature of claim 1. | Kitchen Decl., Ex. 2. *See* [31] – [37] below |
| 31 | The Provisional Application discloses a video game controller charging system for charging a plurality of video game controllers using externally supplied power | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0001, lines 6-8, 0005, lines 7-14, 0016, lines 15-25, 0017, lines 26-27, 0021, lines 9-11, 0022, lines 14-27, 0024, lines 16-25, 0028, |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|-----------------------------|
| | according to Asserted Claim 1. | lines 3-8, Claim 1 and Figs. 1-8. |
| 32 | The Provisional Application discloses a video game controller charging system including a base and at least one structure on the base for providing physical support to the plurality of video game controllers, while the plurality of video game controllers are being charged, according to Asserted Claim 1. | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0005, lines 7-12, 0017, line 26-27, 0024, line 21, 0025, line 26, Abstract, lines 6-9, Claim 1 and Figs. 1, 2, 3, 5, & 7; [*See e.g.* Prov. App. at docking bays 12, 14 at ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, Figs. 1-3; adapters 16 at ¶¶ 0005, lines 12-15, 0016, lines 20- 25, 0018, lines 8-15, 0019, lines 18-24, 0020, lines 25-7, 0021, lines 8-13, 0022, lines 14-25, 0023, lines 5-15, 0025, lines 26-3, 0028, lines 4-8 and Figs. 2-4C; and partition 28 at ¶¶ 0017, line 3 and Fig. 1 & 3]. |
| 33 | The Provisional Application discloses a plurality of male DC ports on the base, each of which is configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers, according | Kitchen Decl., ¶¶ 39-63 & Ex. 2. *See e.g.* Prov. App. ¶¶ 0003, lines 20-26, 0005, lines 9-14, 0016, lines 22-25, 0021, lines 9-13, 0022, lines 14-17, 0024, lines 18-25, 0028, lines 4-6, 0029, lines 10-13, Abstract 6-12, Claim 1 and Figs. 2, 3, |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | to Asserted Claim 1. | 5 & 6. |
| 34 | For example, the application discloses a base with a recess into which a male DC port bearing structure called an "adapter" is fitted or attached.  The adapter may be placed into the docking bay by a push-fit, press-fit, snap-fit or attachment with prongs.  As the DC port is integrally disposed within the adapter the DC port is on the base when the adapter is placed within the recess.  This is clearly shown in Figure 3: | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶ 0005, line 10 and Abstract, line 7; ¶ 0018, line 10-15;  ¶ 0023, lines 9-15;  ¶ 0022, line 14; FIG. 3. |
| 35 | The Provisional Application discloses at least one structure on the base which includes a plurality of docking bays open in a first direction and each configured to receive a respective one of the plurality of video game controllers from the first direction, according to Asserted Claim 1. | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, 0023, lines 7-10 and Figs. 1-3, 5 & 6. |
| 36 | The Provisional Application discloses a base that includes at | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
|  | least one structure which comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, according to Asserted Claim 1. | lines 26-4, 0018, lines 8-10, 0019, lines 18-24, 0023, lines 7-10 and Figs. 1-3, 5, & 6. |
| 37 | For example, when the adapter with the integral DC port is fitted or attached within the respective docking bay either with or without the controller, the male DC port integrally disposed on the adapter is on the base between a respective one of the pairs of surfaces of the docking bays, according to Asserted Claim 1. | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0023, lines 9-10; ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-15, 0019, lines 18-24, 0022, line 14, 0023, lines 7- 10 and Figs. 1-3, 5 & 6. |
| 38 | The Provisional Application discloses the limitations of Asserted Claim 2, which reads as follows: "The video game controller charging system of claim 1, wherein the plurality of DC ports comprises a plurality of male mini-USB connectors." | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0021, lines 11-14, Claim 6 and Fig. 2, 3, & 4A. |
| 39 | The Provisional Application | Kitchen Decl., Ex. 2. *See e.g.* Prov. |

-19-

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | discloses the limitations of Asserted Claim 3, which reads as follows: "The video game controller charging system of claim 1, further comprising: a current detector electrically coupled to the plurality of DC ports; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the video game controller charging system." | App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27, Claim 2 and Fig. 8. |
| 40 | The Provisional Application discloses the limitations of Asserted Claim 4, which reads as follows: "The video game controller charging system of claim 3, wherein the indeicator comprises at least one LED." | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27, Claim 3 and Fig. 8. |
| 41 | The Provisional Application discloses the limitations of Asserted Claim 5, which reads as follows: "The video game controller charging system of claim 1, wherein the pairs of opposite | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-15, 0019, lines 18-24, 0021, lines 9-11, 0022, line 14-17, 0023, lines 7-10 and Figs. 1-3, 5, & 6. |

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | surfaces are configured to align respective ones of the plurality of video game controllers such that the power input ports of the respective ones of the plurality of video game controllers couple to respective ones of the plurality of DC ports." | |
| 42 | The Provisional Application discloses the limitations of Asserted Claim 7, which reads as follows: "The video game controller charging system of claim 1, wherein the plurality of DC ports is configured to concurrently couple to and provide DC power to the plurality of video game controllers." | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶ 0024, lines 16-25 and Figs. 2, 3, 5 & 6. |
| 43 | The Provisional Application discloses the limitations of Asserted Claim 8, which reads as follows: "The video game controller charging system of claim 1, further comprising an AC-to-DC converter adapted to convert the | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0005, lines 9-14, 0016, lines 19-25, 0022, lines 14-2, 0024, lines 17-25, 0029, lines 9-12, Abstract 7-12 and Fig. 7. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | externally supplied power to the DC power provided to the power input ports of the respective video game controllers." | |
| 44 | The Provisional Application discloses the limitations of Asserted Claim 10, which reads as follows: "The video game controller charging system of claim 1, wherein the AC-to-DC converter that is external to the base." | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0024, lines 17-25, 0029, lines 9-12. |
| 45 | The Provisional Application discloses the limitations of Asserted Claim 11, which reads as follows: "The video game controller charging system of claim 1, wherein the AC-to-DC converter is adapted to convert an AC voltage in the range of 100V to 240V corresponding to the externally supplied power into a DC voltage corresponding to the DC power." | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0028, lines 6-8 and Fig 7. |
| 46 | The Provisional Application discloses the limitations of Asserted Claim 12, which reads as | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0022, lines 9-13 and Figs. 2, 3, 4A, 8. |

-22-

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | follows: "The video game controller charging system of claim 1, wherein the DC voltage is :DC 5 V." | |
| 47 | The Provisional discloses each and every feature of claim 13. | Kitchen Decl., Ex. 2.  *See* [48] – [52] below. |
| 48 | The Provisional Application discloses a charging system for charging a plurality of video game controllers, each having a power input port. | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0001, lines 6-8, 0005, lines 7-14, 0016, lines 15-25, 0017, lines 26-27, 0021, lines 9-11, 0022, lines 14-27, 0024, lines 16-25, 0028, lines 3-8 and Figs. 1-8. |
| 49 | The Provisional Application discloses a video game controller charging system including a base and a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of video game controllers. | Kitchen Decl., ¶¶ 64-72 & Ex. 2.  *See e.g.* Prov. App. ¶¶ 0005, lines 7-12, 0017, line 26-27, 0024, line 21, 0025, line 26, Abstract, lines 6-9 and Figs. 1, 2, 3, 5, & 7.<br>*See e.g.* Prov. App. ¶¶0005, lines 12-14, 0021, lines 9-14, 0022, 14-15, 0024, lines 17-25, 0029, lines 9-12, Abstract 9-11 and Fig. 2, 3, 4A, 5, 6 & 7. |
| 50 | The Provisional Application also discloses the charging system as including at least one docking | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, |

-23-

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors. | lines 18-24, 0021, lines 11- 14, 0023, lines 7-10 and Figs. 1-3, 4A, 5 & 6. |
| 51 | The charging system further includes a power input for connecting to a power supply in which the power input is electrically coupled to the plurality of male mini-USB connectors. | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0021, lines 11-14, 0022, lines 26-27, 0024, lines 17-25, 0029, lines 9-12 and Fig. 2, 3, 4A & 7. |
| 52 | The charging system further includes at least one docking structure that includes a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pairs of surfaces, according to Asserted | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, 0023, lines 7-10 and Figs. 1-3, 5, & 6. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
|  | Claim 13. |  |
| 53 | The Provisional Application discloses the limitations of Asserted Claim 15, which reads as follows: "The video game controller charging system of claim 13, wherein the charging system further comprises an AC-to-DC converter external to the base and electrically coupled to the power input." | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0005, 10-12, 0022, lines 25-26, 0024, lines 17-25, 0029, lines 9-12, and Abstract, lines 7-9. |
| 54 | The Provisional Application discloses the limitations of Asserted Claim 16, which reads as follows: "The video game controller charging system of claim 13, further comprising: a current detector electrically coupled to the plurality of male mini-USB connectors; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system." | Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27 and Fig. 8. |
| 55 | The Provisional Application | Kitchen Decl., Ex. 2. *See e.g.* Prov. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | discloses the limitations of Asserted Claim 17, which reads as follows: "The video game controller charging system of claim 13, wherein the indicator comprises at least one LED." | App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27 and Fig. 8. |
| 56 | The Navid Provisional discloses adapters that are placed in corresponding recesses in the base and are press-fit, push-fit or snap-fit into a corresponding recess in the base.  The purpose of this recess is clearly to allow the adapters with the DC ports to sit within the base and act as a unit that allows the connection to the controller power input port to be made without interference with the purpose of the docking bays, which is to align and receive the controllers. | Kitchen Decl. ¶ 52. |
| 57 | Figure 3 of the Navid Provisional shows the adapters fastened to the base (as discussed above) by a press-fit, push-fit or snap-fit, or | Kitchen Decl. ¶ 53. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | sitting in the recesses of the docking bays by a drop fit. One skilled in the art would understand that the provisional patent describes both configurations, in which the DC ports are attached or removable. | |
| 58 | Figure 6 of the Navid Provisional (shown below) shows two controllers charging in the disclosed invention without specifying the presence or absence of the adapters – "FIG. 6 is a perspective view of a charging station with two video game controllers according to an exemplary embodiment of the invention;" [Navid Provisional, ¶13]. Without this specificity, one skilled in the art would understand that the provisional patent claims both configurations; docked and charging with an adapter or without an adapter (i.e. with a DC port directly connected to the base). | Kitchen Decl. ¶ 54. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| 59 | One of the claims of the Navid Provisional reads: "11. Apparatus as shown and described herein." AsOFIGs. 3 and 6 show the docking bays configured to receive and align the controllers, with opposite parallel sidewalls and DC ports attached to the base, it is clear that the inventor found this to be part of his invention. | Kitchen Decl. ¶ 55. |
| 60 | The Navid Provisional makes it clear through its wording and drawings that the adapter can either remain on the base or <u>optionally</u> attached to the game controller (note the use of the word "can," meaning "has the ability to," rather than "must," as in a requirement):<br><br>The adapter 16 <u>can</u> remain with the hand-held controller 26 at all times, even when the controller 26 is not being charged in the charging station 10. | Kitchen Decl. ¶¶ 56, 79. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
|  | When the hand-held controller 26 is in use during operation of a video game, when the controller 26 is stored, and when it is charging, the adapter 16 <u>can</u> remain connected to (and physically mounted on) the controller 26." [Navid Provisional, ¶22] (Emphasis added). |  |
| 61 | Further confirming that the adapters can function as DC ports on the base, the '848 patent specification discloses two embodiments in which the adapters remain on the base (as shown in Figure 3 of the Navid Provisional), to be coupled with the game controller when it is inserted into the docking bays.   As Figure 3 shows no controllers, it is clear that | Kitchen Decl. ¶ 57. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | the adapters can remain on the base. | |
| 62 | Even in the optional case where the adapters remain with the controllers, the controllers with the DC ports must end up on the base in order for the system to charge the controllers. | Kitchen Decl. ¶ 58. |
| 63 | Figure 3 of the Navid Provisional depicts "male mini-USB connectors supported by the base and adapted to provide DC power" (i.e. the adapters of Claim 13) and docking structures that receive and align the accessory device to couple (or mate) to the male mini-USB connectors.  For the docking structures to receive and align the accessory device to couple (or mate) to the male mini-USB connector, the adapters must be sitting on the base at the time that the user inserts the controllers for charging. | Kitchen Decl. ¶ 59. |
| 64 | The Navid Provisional includes | Kitchen Decl. ¶ 60. |

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
|     | disclosures in which the adapters are on the base, either sitting in the recess of the docking bay or attached directly to the base through the disclosed fastening methods.  In all cases the DC ports must be on the base for the device to function as intended, because the DC ports must be on the base to receive the DC voltage necessary to charge the game controllers.  In fact, there is no scenario in which the invention shown in Figure 3 functions as intended without the DC ports being positioned as shown above; i.e. positioned on the docking bays of the base with the DC ports part of the electrical circuit of the charger. |  |
| 65  | In Figure 3 of the Navid Provisional, the mini-USB connectors are clearly supported physically by the base, or body of the charging system, even though they are not directly on the base.  If | Kitchen Decl. ¶ 70. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | the body of the charging system were not under the mini-USB connectors, the connectors would fall down onto whatever surface is below. | |
| 66 | The external adapter disclosed in the Navid Provisional is not the only feature of the invention disclosed to "achieve the object" of providing an improved charging station that allows for fast, easy, and reliable connection.  In fact, it is the whole of the invention that solves the problems of the prior art to achieve "an improved charging station."  For example, the external adapter would be useless and ineffective without the disclosed docking bays, which align and support the game controller to achieve a reliable connection between the accessory device and the charging station.<br><br>As shown in FIG. 1, the charging station | Kitchen Decl. ¶ 76. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
|  | 10 includes a base 24 with two docking bays 12, 14. The docking bays 12, 14 are each dimensioned to accept a hand-held controller 26 (see FIGs. 5, 6). [Navid Provisional, ¶17] |  |
| 67 | A person of ordinary skill would have understood from the Navid Provisional that the invention could be practiced and could serve its intended purpose without an external adapter, using, for example, the configuration of the docking bays as depicted in the Navid Provisional. | Kitchen Decl. ¶ 77. |
| 68 | Figure 3 of the Navid Provisional shows a configuration in which the DC ports (male mini-USB connectors) are connected to the base and are not connected to controllers. | Kitchen Decl. ¶ 77. |
| 69 | A person of ordinary skill would | Kitchen Decl. ¶ 77. |

-33-

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | have understood from Figure 3 of the Navid Provisional that, even without the assistance of external adapters attached to the controller, the docking bay configuration would have helped align the controllers, would facilitate connection of the controller to the charging station, and would thereby accomplish purposes of the invention. | |
| 70 | The Navid Provisional discloses at least one embodiment in which the adapter(s) are fastened to the base, using a "push-fit, press-fit, or snap-fit, rather than a simple drop-fit." [Navid Provisional, ¶ 23]. Consequently, a person of skill in the art would recognize the use of an external adapter that remains with the controller as one way of practicing the invention of the Navid Provisional (a preferred embodiment), but not the only way of doing so. | Kitchen Decl. ¶ 80. |

-34-

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
| 71 | The Navid Provisional repeatedly uses the terms "exemplary embodiment" and "one embodiment," which states to one of ordinary skill in the art that each of the described embodiments is but an example of the invention, and that the invention is not restricted to a particular embodiment. | Kitchen Decl. ¶ 81. |
| 72 | Figure 7 of the Navid Provisional includes double sided arrows indicating the adapter may remain with the controller or remain with the base. | Kitchen Decl. ¶ 81. |
| 73 | The Navid Provisional does not teach away from the Asserted Claims of the '848 patent. | Kitchen Decl. ¶ 82; *id*. ¶¶ 73-88. |
| 74 | Figure 3 of the Navid Provisional shows the adapters mounted on the base of the charging system, practicing the requirement of Claim 1 of the '848 patent of having "DC ports on the base." | Kitchen Decl. ¶ 82. |
| 75 | Other charging solutions existed at | Kitchen Decl. ¶ 84. |

-35-

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
|     | the time of filing of the provisional application. The Cole patent, for example, discloses a rack in which the controllers sit on finger like posts that are arranged in rows along the base, and use external cables and wires to protect the fragile power input ports on the controller. The space between the adjacent posts in Cole cannot be considered to define a docking bay as described in the Navid Provisional and recited in the Asserted Claims, as it is clear from Cole that the controller on the rack is sitting on top of the uppermost row of posts without any opposite surface for aligning the controller. |                            |
| 76  | The provisional application expressly and inherently discloses multiple solutions. One potential solution is the use of a DC port integrally disposed in an adapter that can remain with the controller. Another potential solution is the | Kitchen Decl. ¶ 86.        |

-36-

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
|  | interplay of the base with structures on the base that define docking bays including parallel opposite surfaces for receiving and aligning the controllers while they are being charged. |  |
| 77 | A person of skill in the art would recognize that the invention disclosed in Figure 11 of the '848 patent and the one disclosed in Figure 3 from the Navid Provisional, both shown below, are the same invention. | Kitchen Decl. ¶ 96 |
| 78 | With the adapters on the base (as shown in Figure 3), the inventions in Figure 3 of the Navid Provisional and Figure 11 of the '848 patent are substantially the same. | Kitchen Decl. ¶ 97. |
| 79 | The adapters must be positioned as shown in Figure 3 (i.e. in exactly the same position as the DC ports pictured in Figure 11), for the invention to function as specified. | Kitchen Decl. ¶ 97. |
| 80 | There is no scenario in which the | Kitchen Decl. ¶ 97. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
|  | invention performs the Asserted Claims of the '848 patent with the adapters removed from the base. |  |
| 81 | In these embodiments, the adapter and base operate as a unitary piece, practicing the disclosed claims of the patent. | Kitchen Decl. ¶ 97. |
| 82 | When the adapter is on the base as pictured in Figure 3 above, whether sitting in the recess on the base or attached to the base as disclosed previously, a person skilled in the art would recognize that the adapter and base functioning as a unitary piece is equivalent to having a DC port mounted on the base. | Kitchen Decl. ¶ 97. |
| 83 | A person skilled in the art would perceive no substantive difference in inventions between the devices shown in Figure 6 of the Navid Provisional and Figure 14 of the '848 patent. | Kitchen Decl. ¶ 98. |
| 84 | One of ordinary skill would have understood that, in any of the | Kitchen Decl. ¶ 99. |

-38-

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
|  | above configurations, the operation of the charging station would be exactly the same whether the DC ports (male mini-USB connectors) on the base were detachable from the base or were permanently attached to it. |  |
| 85 | There is nothing in the Navid Provisional that requires the use of an external adapter. | Kitchen Decl. ¶ 99. |
| 86 | One of ordinary skill in the art would recognize that the removable adapter is a further convenience of the disclosed invention, and not a separate and distinct invention. | Kitchen Decl. ¶ 99. |
| 87 | The '848 Patent in suit claims priority of Provisional Application No. 60/982,364. | Quigley Decl., Ex. B ('848 Patent, Face Page.) |
| 88 | The provisional application was filed on October 24, 2007 – less than a year after the events asserted by Defendants as prior art. | Quigley Decl. ¶ 4 & Ex. A (Provisional Application). |
| 89 | The provisional application fulfilled the statutory requirements of 35 U.S.C. § 111(b), such as a | Quigley Decl. ¶ 5 & Ex. A; *see also* Kitchen Decl. ¶¶ 39-72 (showing that the disclosures of the provisional |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
|     | specification and at least one drawing. | application supported the asserted claims). |
| 90  | The application for the '848 Patent was filed on March 7, 2008 – less than a year after the filing of the provisional application. | Quigley Decl., Ex. B ('848 Patent, Face Page.) |
| 91  | The application for the '848 Patent fulfilled the statutory requirements for claiming priority of the provisional application under 35 U.S.C. § 119(e)(1), such as having at least one common inventor (in this case, the same single inventor) and containing a specific reference to the provisional application. | Quigley Decl. ¶ 6 & Ex. A & B; see also Kitchen Decl. ¶¶ 39-72 (showing that the disclosures of the provisional application supported the asserted claims). |
| 92  | Nyko's expert witness, Garry Kitchen, is an engineer with in-depth experience in the field of video game hardware, video game accessories, and video game controllers. | Kitchen Decl. ¶ 2-19 & Ex. 1. |
| 93  | Mr. Kitchen's analysis applies the Court's construction of "supported by the base" as "Physically supported by but not necessarily | Kitchen Decl. ¶ 65. |

-40-

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | directly on the base." | |
| 94 | It is not true that, as Defendants' expert Stephen Bristow opines, "The physical support for the male mini-USB connectors is provided entirely by the structure of the adapters themselves . . . ." On the contrary, the base (Item 24) of the charging system depicted in Figure 3 of the provisional application underlies and fits around the adapters (Items 16) and thereby physically supports both them and the connectors. | Kitchen Decl. ¶ 64-72. |
| 95 | Cambridge Dictionaries Online, supported by the Cambridge Academic Content Dictionary, presents the default (first) definition of "on" as: <br><br> **on** <br> *preposition, adverb* <br> *[not gradable]* <br> *(SUPPORTED BY)* <br> */ɔn, an/* <br><br> **Definition** <br> *› supported by or resting at the top of* | Kitchen Decl. ¶ 41; Quigley Decl., Ex. H. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|-------------------------------------------|----------------------------|
|     | *another thing:* *There is snow on the ground.* *You put pudding in the pie crust and then put whipped cream on.* The Cambridge Dictionary definition does not require that "on" include "direct contact with." | |
| 96  | Random House Webster's unabridged dictionary (2001) (first) definition of "on" is as follows: *on [on, awn]* *preposition* *1. so as to be or remain supported by or suspended from: Put your package down on the table; Hang your coat on the hook.* *2. so as to be attached to or unified with: Hang the picture on the wall. Paste the label on the package.* The first Random House definition does not require that "on" include "direct contact with."  The secondary definition defines a more | Kitchen Decl. ¶ 42; Quigley Decl., Ex. J. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | specific meaning for the term "on" in which an object must be "attached or unified with" another object, but this requirement is not included in the first definition. | |
| 97 | American Heritage Dictionary (2006). defines "on" as follows:<br><br>    1.a. Used to indicate position above and supported by or in contact with: The vase is on the table. We rested on our hands and knees.<br><br>    b. Used to indicate contact with or extent over (a surface) regardless of position: a picture on the wall; a rash on my back.<br><br>The default/first definition of "on" is absent of any requirement for "direct contact with," recognizing direct contact as an optional component of the meaning. | Kitchen Decl. ¶ 43; Quigley Decl., Ex. I. |
| 98 | The plain and ordinary meaning of | Kitchen Decl. ¶ 44. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
|     | the term "on" as used in day-to-day conversation is: "used to indicate position above and supported by **or** in contact with." | |
| 99  | In ordinary usage, "The food is on the table" even though the food is sitting on a plate, which is on a placemat, which is then physically in contact with the table. This does not change the meaning of the word "on" in this context; i.e. "used to indicate position above and supported by **or** in contact with." | Kitchen Decl. ¶ 45. |
| 100 | In ordinary usage, "The boy is on the sidewalk" (as opposed, say, to on the grass), even if the boy is standing on his skateboard, which is between him and the sidewalk. This does not change the meaning of the word "on" in this context; i.e. "used to indicate position above and supported by **or** in contact with. | Kitchen Decl. ¶ 45. |

-44-

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| 101 | In ordinary usage, "The couple is sitting on the beach" even if they are sitting on a blanket, which is between them and the sand.  This does not change the meaning of the word "on" in this context; i.e. "used to indicate position above and supported by or in contact with." | Kitchen Decl. ¶ 45. |
| 102 | Both sides' experts agree that "on" is not used as a term of art in the '848 Patent. | Kitchen Decl. ¶ 40-47; Quigley Decl., Ex. C at 43:12-44:15. |
| 103 | Under the plain and ordinary meaning of the word "on," Figure 3 of the Navid Provisional shows "DC ports on the base." | Kitchen Decl. ¶¶ 48 - 63. |
| 104 | The plain meaning of "support" is to "hold up." | Quigley Decl., Exs. D-F. |
| 105 | Merriam-Webster defines "support" as  "to hold up or serve as a foundation or prop for" | Quigley Decl., Ex. D. |
| 106 | Dictionary.com defines "support" | Quigley Decl., Ex. E. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
|     | as "to bear or hold up . . ." |  |
| 107 | Macmillan defines "support" as "to hold the weight of someone or of something such as a building or structure so that they do not move or fall" | Quigley Decl., Ex. F. |
| 108 | "Physical" means "having material existence **:** perceptible esp[ecially] through the senses and subject to the laws of nature" or "characterized or produced by the forces and operations of physics." | Quigley Decl., Ex. G. |
| 109 | At his deposition, Defendants' expert, Stephen Bristow, claimed that he had used the Court's construction. | Quigley Decl., Ex. C at 133:7-14. |
| 110 | But Mr. Bristow's testimony showed otherwise. | Quigley Decl., Ex. C at 57:5-12. |
| 111 | Mr. Bristow agreed that, "in [his] definition . . . of physically supported, ***there must be an immediate connection*** between the | Quigley Decl., Ex. C at 57:5-12 (emphasis added). |

-46-

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
|  | two items . . . . [W]hat's holding it is ***the immediate thing it's attached to***." |  |
| 112 | During his deposition, Mr. Bristow at first admitted that he was "physically supported" by his chair and then claimed that, "to be precise, the chair is supporting the slacks which is supporting my thighs, to be precise." | Quigley Decl., Ex. C at 57: 13-24. |
| 113 | During his deposition, Mr. Bristow admitted that in Figure 3 of the Navid Provisional the base is physically supporting the adapter. | Quigley Decl., Ex. C at 143:15-18. |
| 114 | During his deposition, Mr. Bristow admitted that in Figure 3 of the Navid Provisional the connectors are "part of the adapter." | Quigley Decl., Ex. C at 66:8-10; 139:20-24. |
| 115 | During his deposition, Mr. Bristow denied that, in Figure 3 of the Navid Provisional, the base is supporting the male mini-USB connector that is part of the | Quigley Decl., Ex. C at 134:22-135:11. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | adapter. | |
| 116 | During his deposition, Mr. Bristow testified that, if the base were removed from Figure 3 of the Navid Provisional, "the adapter would be floating in air . . . ." | Quigley Decl., Ex. C at 166:13-20. |
| 117 | Later in his deposition, Mr. Bristow testified that, if the base were removed from Figure 3 of the Navid Provisional, the adapter and DC port "would fall to whatever surface was below where the disappeared charging base was . . . ." | Quigley Decl., Ex. C at 170:6-16. |
| 118 | Mr. Bristow's declaration does not say how he would define "on." | Bristow Decl. ¶¶ 8-19. |
| 119 | The preferred embodiments in the specification of the '848 Patent include the same designs with external adapters that were included in the provisional application. | Quigley Decl., Ex. B at Col. 11:49 - 15:11 & Figs. 16-23A. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| 120 | Defendants' attorney agrees that "[t]he court didn't construe the word "on." | Quigley Decl., Ex. C at 146:18. |
| 121 | Stephen Bristow failed to consult any dictionary definitions of "on." | Quigley Decl., Ex. C at 150:3-7. |
| 122 | During his deposition, Mr. Bristow admitted that he was sitting "[o]n a chair" according to common understanding," even though he was wearing slacks between his body and the chair. | Quigley Decl., Ex. C at 14:16-15:1, 15:11-12. |
| 123 | Later in his deposition, Mr. Bristow denied that a can of Coke is "on" a table if there is a napkin between the can and the table. | Quigley Decl., Ex. C at 17:9-20:10 |
| 124 | During his deposition, Mr. Bristow testified that "[a] press-fit is typically a much firmer version of a push-fit.  [I]t's really tight . . . ." | Quigley Decl., Ex. C at 69:10-14. |
| 125 | Mr. Bristow assumes that the "Background" section of the provisional application solely | Quigley Decl., Ex. C at 103:25-104:10. |

-49-

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | describes prior art. | |
| 126 | The Background section of the provisional application never states that it is a description of prior art, and Defendants supply no evidence that it is.  The Background simply states that there is a problem with charging stations with fragile DC ports in that the DC port may become damaged when the connection is made between it and the controller.  It does not describe the configuration of any particular charging stations. | Kictchen Decl. ¶ 83. |
| 127 | During his deposition, Mr. Bristow said that what is shown in Figure 3 of the Navid Provisional is "a bad idea," that "[i]t's not a recommendation," that "it looks similar in concept to the prior art," and that "the patent teaches that's not what you want to do." | Quigley Decl., Ex. C at 99:23-100:22, 113:21-115:8, 155:12-24. |
| 128 | The Navid Provisional expressly identifies Figure 3 as showing "a | Quigley Decl., Ex. A at ¶ 0008. |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | charging station . . . according to an exemplary embodiment of the invention." | |
| 129 | Photographs of the SLA mock-up shown at the January 2007 CES suggest it was not a working version.  All four LED lights are illuminated even though two of the four charger bays are empty. | Quigley Decl., Exs. L-M (color version of photograph) and K (depo. pp. 82:6-10 and 83:3-20) (authenticating photograph of SLA mock-up from CES in Jan. 2007). |
| 130 | NYKO manufactures non-functional prototypes to have the appearance of a fully-working sample.  NYKO illuminates LED lights on prototypes for visual purposes only, even though the SLA mock-up is not functioning. The LED lights are not connected to anything that charges the controllers. | Quigley Decl., Ex. K (depo. pp. 80:9-82:3) |
| 131 | The NYKO suite at the 2007 CES was not public; access to the suite was restricted to invited guests with appointments. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 10); Ex. K (depo. pp. 40:11-13; 49:14-50:5; 232:1-233:11.) |
| 132 | NYKO's Charge Base was a new | Quigley Decl., Ex. O (NYKO's |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|---|---|---|
| | product for NYKO. | Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 204:1-4) |
| 133 | The SLA mock-up of the Charge Base product shown at CES in January 2007 was received by NYKO in or about the last week of December 2006. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) |
| 134 | The SLA mock-up was being tested through January 2007 and into May of 2007. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) |
| 135 | There is no clear and convincing evidence that the mock up itself was a working prototype that worked for its intended purpose. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 70:1-71:21; 239:22-240:6). |
| 136 | A further prototype was received by NYKO in or about January 18, 2007, which was subject to further testing. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 77:22-25). |
| 137 | Additional changes were made to the product between January 18, 2007 and May 2007, when final consumer products were received. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
| 138 | As of March 2007, the design was not finalized, the demand was not ascertained and the cost of the product was not fixed. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) |
| 139 | The price of the product was not fixed by March 2007 and was subject to change per the dealer price sheets. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 208:12-15; 253:20-254:9) |
| 140 | Any requests made by vendors for the product prior to at least April 2007 were in the category of pre-orders that would only be fulfilled in the event NYKO deemed that the design could be finalized and the product could be manufactured in a cost effective manner. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 199:8-200:17; 203:8-13, 19-204:16; 222:9-223:3). |
| 141 | NYKO shipped no Charge Base product for any of the initial requests prior to June 2007, and reinvoiced the requests under new invoices for payment and shipment in June 2007, only after NYKO had finalized the product in terms of pricing and commercial design. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) |

CHRISTIE, PARKER & HALE, LLP

| No. | NYKO's Additional Genuine Material Facts | NYKO's Supporting Evidence |
|-----|------------------------------------------|----------------------------|
| 142 | It is common in the industry for products to be announced.  In cases where the demand for the announced product is weak, or the cost to manufacture the product is too high to support a reasonable manufacturer's suggested retail price, the product is never released. | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) |

DATED:  September 2, 2013          Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP


By /s/ G. Warren Bleeker
  G. Warren Bleeker

  Attorneys for Plaintiff and
  Counterdefendant,
  NYKO Technologies, Inc.

CHRISTIE, PARKER & HALE, LLP