SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
 A Limited Liability Partnership
 Including Professional Corporations
DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM (GRAY) M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
MATTHEW M. MUELLER. Cal. Bar No. 268486
mmueller@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California  92130-2006
Telephone:  858.720.8900
Facsimile:    858.509.3691

STEVEN M. HANLE, Cal. Bar No. 168876
shanle@sheppardmullin.com
650 Town Center Drive, 4th Fl.
Costa Mesa, CA  92626
Telephone:  714.513.5100
Facsimile:    714.513.5130

Attorneys for Performance Designed Products
LLC, Energizer Holdings, Inc., and Eveready
Battery Co., Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California Corporation, | Case No. CV12-03001-GAF-VBK |
| Plaintiff, | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY** |
| v. | |
| ENERGIZER HOLDINGS, INC. a Missouri Corporation, EVEREADY BATTERY CO., INC, a Delaware Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company, | Date:  September 23, 2013 Time: 9:30 a.m. Complaint Filed:  April 5, 2012 Discovery Cutoff:   Oct. 14, 2013 Pretrial Conf.: Dec. 30, 2013 Trial Date: Jan. 28, 2014 |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF REPLY ARGUMENT ................................................................. 1

II.   THE CHARGE BASE WAS IN PUBLIC USE BEFORE THE
      CRITICAL DATE .................................................................................................. 3

III.  THE CHARGE BASE WAS ON SALE BEFORE THE CRITICAL
      DATE ...................................................................................................................... 9

IV.   THE ASSERTED CLAIMS ARE NOT ENTITLED TO THE
      PRIORITY DATE OF THE NAVID PROVISIONAL ................................... 14

      A.    New Matter ................................................................................................ 14

      B.    The Provisional Does Not Disclose DC Ports "On the Base" ............. 16

      C.    The Male Mini-USB Ports of the Provisional Are Fully
            Supported By The Adapters, and Are Not "Supported by the
            Base" ........................................................................................................... 17

V.    NYKO DOES NOT DISPUTE THAT CLAIMS 10 AND 15 WOULD
      HAVE BEEN OBVIOUS BASED ON THE CHARGE BASE
      PUBLICLY USED AND SOLD IN JANUARY 2007 ..................................... 19

VI.   NYKO RELIES ON FACTS THAT NOT MATERIAL AND OR NOT
      SUPPORTED BY THE CITED EVIDENCE ................................................... 19

VII.  CONCLUSION .................................................................................................... 20

1

## TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4    *Adenta GMBH v. Orthoarm, Inc.*
5        501 F.3d 1364 (Fed. Cir. 2007) ........................................................... 8

6    *Agha v. Army*
7        1992 U.S. Dist. LEXIS 18936 (N.D. Cal. 1992) ................................ 13

8    *Anascape, Ltd. v. Nintendo of Am., Inc.*
        601 F.3d 1333 (Fed. Cir. 2010) ......................................................... 17

9    *Beachcombers v. WildeWood Creative Products, Inc.*
10       31 F. 3d 1154 (Fed. Cir. 1994) ........................................................... 8

11   *Carr v. Tatangelo*
12       338 F.3d 1259 (11th Cir. 2003) ......................................................... 14

13   *In re Caveney*
14       761 F.2d, 671 (Fed. Cir. 1985) ......................................................... 10

15   *Chiron v. Genentech*
16       363 F.3d 1247 (Fed. Cir. 2004) .....................................................3, 15

17   *Goodwin v. CSX Transportation, Inc*
         2010 U.S. Dist. LEXIS 81772 (W.D. Ken. 2010).............................. 14
18
     *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*
19       2012 U.S. Dist. LEXIS 97923 (E.D. Va. 2012) .......................8, 13, 16

20   *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*
21       2013 U.S. App. LEXIS 16797 (Fed. Cir. Aug. 14, 2013)................... 12

22   *Invitrogen Corp. v. Biocrest Mfg., L.P.*
23       424 F.3d 1374 (Fed. Cir. 2005) .....................................................4, 5

24   *Linear Tech. Corp. v. Micrel, Inc.*
25       275 F.3d 1040 (Fed. Cir. 2001) ........................................2, 10, 11, 12

26   *Lockwood v. Am. Airlines, Inc.*
27       107 F.3d 1565 (Fed. Cir. 1997) .....................................................3, 17

28

*Manville Sales Corp. v. Paramount Systems, Inc.*
  917 F. 2d 544 (Fed. Cir. 1990) ........................................................................ 5

*Motionless Keyboard Co. v. Microsoft Corp.*
  486 F.3d 1376 (Fed. Cir. 2007) ................................................................... 7, 8

*Owners Ins. Co. v. James*
  295 F.Supp.2d 1354 (N.D. Ga 2003) ............................................................ 14

*Petrolite Corp. v. Baker Hughes Inc.*
  96 F.3d 1423 (Fed. Cir. 1996) ......................................................... 4, 5, 6, 9

*PowerOasis, Inc. v. T-Mobile USA, Inc.*
  522 F.3d 1299 (Fed. Cir. 2008) .................................................................... 14

*STX, LLC v. Brine, Inc.*
  211 F.3d 588 (Fed. Cir. 2000) ...................................................................... 10

<u>Statutes</u>

35 U.S.C. § 102(b) ........................................................................ 4, 8, 12, 13

35 U.S.C. § 112 ............................................................................................ 18

35 U.S.C. § 132 ............................................................................................ 15

UCC ............................................................................................... 10, 13

SMRH:410068454.1

## I.    SUMMARY OF REPLY ARGUMENT

Tellingly, Plaintiff Nyko devotes the large majority of its opposition to a legally doomed effort to argue that the Asserted Claims of the '848 Patent are entitled to priority based on the Navid Provisional application.  Even more telling, Nyko submitted a **103-paragraph** expert declaration trying to convince the Court that what was plainly absent from the 32-paragraph Provisional -- DC ports on or supported by the base -- was implicitly disclosed.  As explained below, the Federal Circuit and district courts have rejected Nyko's arguments.

The reason Nyko spends so much time arguing priority is that the evidence of public use and sales more than a year before the filing of the application for the '848 patent is undisputed.  Nyko's half-hearted arguments to the contrary are incorrect as a matter of law.  With respect to public use, there is no dispute that the display of a Charge Base unit, as well as videos and photographs of the Charge Base unit, disclosed all the elements of the Asserted Claims.  Indeed, this was <u>admitted</u> by Nyko: "[t]he product Nyko introduced in January 2007 includes each and every feature of the claimed invention."  (Dkt. No. 44 ¶ 17.)   As explained below, this public use was not experimental; a public use only requires the extent of operability required by the asserted claims.  The Charge Base demonstrated in January 2007 fully disclosed all the features of the Asserted Claims, e.g., a base, support structures on the base with opposite surfaces to form docking bays for gaming controllers and DC ports on the base.



1    Nor does Nyko's opposition raise a material issue with respect to its pre-
2    critical date sales.  The evidence establishes:  (1) Nyko's communication to its
3    customers of all the information necessary to order Charge Base units, including
4    Nyko's internal part number (83017) and the suggested retail price (before the
5    customer's discount ($39.99); (2) Nyko's receipt of numerous purchase orders based
6    on this information; (3) a purchase contract formed by Nyko's acceptance of the
7    purchase orders, without reservation or qualification; and (4) Nyko's performance of
8    the purchase contract by shipment of the products ordered and confirmed before the
9    critical date at the price specified and confirmed before the critical date.  Under the
10   very authority argued by Nyko, this evidence establishes pre-critical date sales
11   resulting in the on-sale bar.  *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1053
12   (Fed. Cir. 2001) (objective manifestation of assent to purchase order establishes a
13   barring sale).

14   Having essentially conceded public use and sales before March 7, 2007, Nyko
15   is forced to attempt to establish an earlier priority date.  To do so, Nyko must
16   establish that the Provisional disclosed DC ports "on the base" or "supported by the
17   base" when the Provisional clearly and unambiguously disclosed only DC ports on
18   and fully supported by adapters.  Nyko argues that, because the adapters may be
19   connected to the base, the DC ports on the adapters are "on the base."  This
20   argument directly contradicts the Court's previous determination that "on the base"
21   connotes direct contact.  (Dkt. No. 122, p. 24.)  Alternatively, Nyko argues that
22   persons of skill in the art would understand that the DC ports may be placed directly
23   on the base.  This argument fails as a matter of law.  See, e.g., *Lockwood v. Am.*
24   *Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a
25   claimed invention is an obvious variant of that which is disclosed in the
26   specification.")

27   With respect to "supported by the base," it is important to understand that the
28   male mini-USB ports disclosed in the Provisional are embedded in and fully

supported by adapters.  Nyko argues, nevertheless, that the base supports the male mini-USB ports when the adapters are placed on the base as shown in FIG. 3 of the Provisional.  First, an objective reading of the Provisional as a whole demonstrates that FIG. 3 simply illustrates the connection between the adapter and the base, and does not suggest a configuration where the adapter remains connected to the base independently of the controllers.  Indeed, the Provisional teaches away from such a configuration because it would require the repeated plugging and unplugging of USB ports which the invention of the Provisional was designed to avoid.  Second, Nyko's reading of "supported by the base" would lead to absurd results, as the male mini-USB port would be deemed supported by any surface on which the adapter sits or into which the USB port is connected.

In any event, the Court need not resolve the ambiguity of the term "supported by the base" in order to conclude that the Asserted Claims, including claim 13 and its dependent claims, are not entitled to the priority date of the Navid Provisional. That is because the Asserted Claims are unquestionably supported by <u>new matter</u> that was not included in the Provisional.  See *Chiron v. Genentech*, 363 F.3d 1247 (Fed. Cir. 2004) (claim is not entitled to priority of earlier application where it is based, in part, on new matter not present in earlier application).  The Court has already determined that "supported by the base" includes USB ports directly on the base. It is beyond dispute that USB ports <u>directly on the base</u> were not disclosed in the Provisional and were thus new matter in the '295 Application, filed March 7, 2008.

Thus, because of the undisputed evidence of public use and sales before March 7, 2007, the Asserted Claims are invalid as a matter of law.

## II.   THE CHARGE BASE WAS IN PUBLIC USE BEFORE THE CRITICAL DATE

The evidence submitted in support of the motion establishes beyond dispute that the invention of the Asserted Claims was in public use as of January 2007.

(UMF Nos. 1-5.)  Specifically, it was publicly announced, publicly demonstrated and marketed to the world.  Nyko makes two arguments attempting to establish an issue of material fact:  (1) that the Charge Base it demonstrated at the CES trade show hotel suite may not have been a working product, and (2) that the use was not public because the hotel suite was open only by invitation.  Both arguments are incorrect on the law and incorrect on the undisputed facts.

First, there is no requirement that a patented <u>product</u> be fully operable to establish a public use.  Rather, the "proper test for the public use prong of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005).  This is determined as a matter of law based on the totality of circumstances. *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425-26 (Fed. Cir. 1996) (affirming summary judgment of invalidity based on public use). An invention is deemed not to be commercially exploited if the pre-critical date use was experimental. *Id.* <u>Nyko</u> bears the burden to prove that the activity was "substantially for purposes of experiment," rather than for commercial exploitation, by presenting evidence such as the length of the purported test period, whether there was a secrecy agreement, whether progress reports were kept, whether someone other than the inventor conducted the experiments, the overall number of tests. *Id.* at 1426.

Here, the evidence of commercial exploitation is undisputed and overwhelming.  Nyko's January 8, 2007 press release included the following:

> Nyko Technologies®, a premier peripherals manufacturer, unveiled today their line-up of accessories for Sony's PlayStation 3 console that will debut at this year's Consumer Electronics Show in Las Vegas, Nevada. ... The Charge Base for PS3 has a suggested retail price of 39.99. ... "Whether you're looking for charging solutions, high-definition video features, or a way to extend the life of your console, Nyko has the product to meet your needs." (Dkt. No. 133-15.)

1 Nyko followed that press release by demonstrating the Charge Base to its customers

2 and to members of the trade press, who then publicized the Charge Base to the

3 world.  (UMF 5.)[1]  As characterized by Nyko: "Nyko introduced the Charge Base

4 product at the Consumer Electronics Show in Las Vegas to great fanfare in January

5 2007." (Dkt. No. 44, ¶ 15.)  Such "commercial exploitation is a clear indication of

6 public use ..." *Invitrogen*, 424 F.3d at 1380.

7      On the other hand, Nyko submits no evidence that the demonstration of the

8 Charge Base in January 2007 was experimental rather than commercial.  Nyko has

9 submitted no evidence of any experiments, tests, evaluation, secrecy agreements,

10 solicitation of feedback from persons who viewed the Charge Base or any records of

11 such activities. (Dkt. No. 136, UMF 5.)  Instead, Nyko argues that the Charge Base

12 prototype publicly demonstrated in Las Vegas "may not" have been able to actually

13 charge controllers.  This argument distorts the law. The issue of whether the

14 invention was operable for its intended purpose in its intended environment is part

15 of the totality of circumstances inquiry into experimental use.  *Petrolite*,  96 F.3d at

16 1426-27; *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F. 2d 544, 551 (Fed.

17 Cir. 1990).  Moreover, the determination is whether the public use disclosed the

18 features of the claimed <u>invention</u>, not whether it involved a finished <u>product</u>.

19 *Petrolite*, 96 F.3d at 1427.  "Even if the inventors felt that additional field tests were

20 necessary to verify the product's reliability, [Nyko] was satisfied with it to promote

21 and sell it to a number of customers." *Id.*:

22      Petrolite's assertions to the contrary cannot create a genuine issue of
     material fact. "The subjective belief of inventors ... must be weighed

23      against objective evidence which indicates otherwise." ... "[I]f a mere

24      allegation of experimental intent were sufficient, there would rarely if
     ever be room for summary judgment based on a true 'on sale' defense

25

26 _____

[1]    While Nyko purports to dispute this fact, it merely cites the very evidence

27 establishing the considerable commercial publicity generated concerning the launch
of the Charge Base in January 2007. (Dkt. No. 136, UMF 5.)

28

SMRH:410068454.1

under 35 U.S.C. § 102(b)." … "[A]fter-the-fact testimony of an inventor's subjective 'experimental intent' is entitled to minimal weight."

Here, there is no dispute that the Charge Base demonstrated in the Las Vegas hotel suite fully disclosed all the features of the claimed invention.



(Dkt. No. 133-12, p. 4 of 4.)

- A video game controller charging system for charging a plurality of video game controllers using externally supplied power, the video game controller charging system comprising
- a base;
- at least one structure on the base for providing physical support to the plurality of video game controllers while the plurality of video game controllers are being charged; and
- a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers,
- wherein the at least one structure on the base comprises a plurality of docking bays open in a first direction and configured to receive respective ones of the plurality of video game controllers from the first direction, and
- wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays each of the DC ports being on the base.

1    Indeed, the he inventor admitted that "[t]he product Nyko introduced in January

2    2007 includes each and every feature of the claimed invention." (Dkt. No. 44, ¶ 17.)

3          Nyko's argument is essentially that the Charge Base in the hotel suite may not

4    have been in public use because it may not have been actually charging.  However,

5    when asked whether that Charge Base unit powered up, the most knowledgeable

6    Nyko witness testified, "I would imagine that it did".  (Dkt. No. 135-4, p. 80 of

7    102.)  This is further confirmed by the presence of the power cord and the fact the

8    the LED's on the Charge Base were lit.  (See photo above.)  Moreover, the Charge

9    Base need not have been fully operable to disclose all of the elements of the

10   Asserted Claims, which are directed to the physical structure of the charging system,

11   and not to some novel means to supply electricity to charge a gaming controller.

12   The cases relied on by Nyko simply do not apply.  In *Motionless Keyboard Co. v.*

13   *Microsoft Corp.*, 486 F.3d 1376, 1378 (Fed. Cir. 2007), the invention was a mini,

14   handheld keyboard where the user's thumb could actuate the keys with very slight

15   movements.  Specifically, the asserted claims required

16           "a concavity in said housing at said key-actuation position, and a
             thumb-associable cluster of keys forming a keyboard within said
17           concavity, each of the plurality of keys in said cluster being selectively
             actuable via mixed lateral and slight endo, translation of a thumb within
18           said concavity, whereby information is entered into an electronic
             system." *Id.* at 1380 (emphasis added).
19

20

21   The Federal Circuit found no public use because the only public disclosures

22   "only provided a visual view of the new keyboard design without any disclosure of

23   the Cherry Model 5's ability to translate finger movements into actuation of keys to

24   transmit data." *Id.* at 1385.  In other words, there was no disclosure that each of the

25   keys in the cluster "was selectively actuable via mixed lateral and slight endo,

26   translation of a thumb," which was a required element of the asserted claims.[2]  Here,

27   _____

     [2]    The only use that disclosed this element of the claimed invention was a one-
28   time typing test covered by a signed NDA. *Id.*

1   once again, the Charge Base publicly demonstrated by Nyko in January 2007,

2   disclosed every element of the Asserted Claims; there was no requirement that it

3   actually charge controllers because Nyko disclosed to the world that it was "A video

4   game controller charging system for charging a plurality of video game controllers

5   using externally supplied power." The public use determination in *Hamilton Beach*

6   *Brands, Inc. v. Sunbeam Products, Inc.*, 2012 U.S. Dist. LEXIS 97923 (E.D. Va.

7   2012), is also distinguishable. In that case, the alleged public use consisted of "line

8   reviews" presentations of concepts for a slow cooker including "computer

9   presentation slides that included Computer Aided Design (CAD) drawings

10  appearing to depict slow cookers" and written descriptions of the cookers. *Id.* at

11  *39, 54.

12      The Federal Circuit has made clear that the display of a physical product may

13  constitute an invalidating public use. In *Adenta GMBH v. Orthoarm, Inc.*, 501 F.3d

14  1364, 1371-72 (Fed. Cir. 2007), the Federal Circuit affirmed a district court's ruling

15  that the mere display of an orthodontic brace at a trade show before the critical date

16  was a public use and invalidated the asserted patent under Section 102(b), even in

17  the absence of evidence that the orthodontic brace had been used for its intended

18  purpose in its intended environment, i.e., in a patient's mouth. Similarly, in

19  *Beachcombers v. WildeWood Creative Products, Inc.*, 31 F. 3d 1154, 1160 (Fed.

20  Cir. 1994), the Federal Circuit affirmed a district court's ruling that the display of a

21  kaleidoscope invention to the guests at a private party was an invalidating public

22  use.[3]

23      Nyko alternatively argues that the demonstration of the Charge Base in the

24  Las Vegas hotel suite was not public because "access to the suite was restricted to

25  invited guests with appointments." (Opp. p. 24.) This argument is preposterous.

26  _____

27  [3]    In any event, there can be no dispute that the invention of the Asserted Claims
    was obvious in light of the Charge Base demonstrated at the

28

1   Nyko <u>admits</u> that the invited guests included Nyko's customers and members of the

2   trade press who were under no obligation to maintain the confidentiality of the

3   Charge Base. (Dkt. No. 136, UMF No. 3.) Indeed, these guests were free to,

4   encouraged to and, in fact, did publicize the Charge Base to the world, including a

5   video on YouTube. (*Id.*, UMF No. 5.)

6       The policies underlying the public use bar include "prohibiting the inventor

7   from commercially exploiting the invention for a period greater than the statutorily

8   prescribed time" of one year. *Petrolite*, 96 F. 3d at 1425. Here, it is beyond dispute

9   that the use of the Charge Base at the Las Vegas hotel suite was a commercial

10  exploitation of the invention, and not an experimental use to determine whether the

11  invention would function. The undisputed facts thus establish as a matter of law

12  that the Charge Base was in public use as of January 2007. The Asserted Claims are

13  thus invalid as a matter of law based on Nyko's extensive public use of the Charge

14  Base more than one year before the effective filing date of the '848 Patent.

15  **III.   THE CHARGE BASE WAS ON SALE BEFORE THE CRITICAL
           DATE**

16      The evidence of Nyko's commercial offers for sale, and actual sales, of the

17  Charge Base before March 8, 2007 is extensive and undisputed. By January 8,

18  2007, the same day Nyko issued its press release, it placed the Charge Base on sale

19  by communicating at least its price, part number, product name and product

20  description to its customer Amazon so that Amazon could order Charge Base

21  products. (UMF ¶ 6.) On the same day, Amazon emailed to Nyko four separate

22  purchase orders for four different Amazon locations for a total of 460 Charge Base

23  units. (UMF ¶ 7.) The next day, January 9, 2007, Nyko accepted the orders by

24  generating and sending to Amazon a "Sales Order" for each of the Amazon

25  purchase orders, and thus created binding sales contracts and <u>actual sales</u>. (UMF

26  ¶ 8); *see Atlanta Attachment*, 516 F. 3d at 1366, *In re Caveney*, 761 F.2d, 671, 676

27  (Fed. Cir. 1985); *Group One*, 254 F.3d at 1047-48. Nyko's documents show that it

28

-9-

shipped products pursuant to these sales on July 11, 2007. (UMF ¶ 9.)[4]  In total, Nyko offered for sale and accepted 19 orders for approximately 4,665 Charge Base before March 7, 2007. (UMF ¶¶ 10.)

Once again, Nyko's attempted rebuttals fail to create a genuine issue of material fact based on the law and based on the evidence.  First, Nyko relies on a case that, when applied to the facts of this case, establishes an on-sale bar. (See Opp. p. 24, citing *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001).)  In *Linear Tech*, the court held that purchase orders submitted by the patent owner's customers contained sufficiently definite terms to create an enforceable contract upon acceptance under the UCC and general contract principles because they included quantity terms and clearly identified the requested product. *Id.* at 1052.  Accordingly, if the patent owner accepted the orders before the critical date, it entered into a binding contract to sell that invalidated the subject patent. *Id.*  To accept the orders, the owner needed only have "objectively manifested" its assent to the purchase orders. *Id.* at 1053.  Here, it is undisputed that the purchase orders submitted by Amazon, and several other Nyko customers, specified the product, the quantity and the price of the products being ordered. (UMF Nos. 7, 10.)

It is also undisputed that Nyko objectively manifested acceptance of the purchase orders by generating sales orders, provided to the customers, confirming, among other things, the purchase order number, the date of the order, and the product, quantity and price of the products being ordered. (UMF Nos. 8, 10.) Below are the relevant portions of Nyko's January 9, 2007 Sales Order accepting Amazon's purchase order for 140 Charge Base units at $22 per unit. (Dkt. No. 133-19, p. 3 of 8.)  The document shows that it is the "Customer Original" copy.

---

[4]    As set forth above, because the sales took place before the critical date, the "fact that delivery was set for dates after the critical date is irrelevant to the finding of a commercial offer to sell." *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 590 (Fed. Cir. 2000).

**Sales Order   97145**

Customer    AMA812

NYKO Technologies, Inc.
1990 Westwood Blvd.
Penthouse Suite
Los Angeles, CA 90025 USA
Telephone: 310/446-6662

Bill To:

AMAZON.COM
VENDOR NYKOS#
PO BOX 80387
SEATTLE, WA 98108-0387
USA

Ship To:

AMAZON.COM
1600 EAST NEWLANDS  DRIVE
FERNLEY, NV 89408
USA

| Date | Ship Via | | F.O.B. | | Terms | | Terr |
|------|----------|---|--------|---|-------|---|------|
| 01/09/07 | BEST WAY | | ORIGIN | | Net 45 Days | | 55 |
| | Purchase Order Number | | Order Date | Salesperson | | Our Order Number | |
| | L3470035 | | 01/09/07 | 04 | | None | |

| Quantity | | | Item Number | Description | | Tax | Unit Price | . | Amount |
|------|------|------|-------------|-------------|---|-----|-----------|---|--------|
| Req. | Ship | B.O. | | | | | | | |
| 140 | 0 | | 83017 | PS3 Charge Base | | N | 22.00 | | 3080.00 |

(Continued)                              Customer Original                                        Page  1

In *Linear Tech*, the patent owner's confirmations of the purchase orders stated, with respect to the new, unreleased products: "WILL ADVISE," "NEW PRODUCT, NOT RELEASED," "WILL ADVISE WILL ADVISE [sic] ON PART # ORDERED-NOT BOOKED." *Linear Tech*, 275 F.3d at 1053.  Here, Nyko's sales order confirmations contained no such qualification on Nyko's acceptance of Amazon's purchase orders; rather, the sales order confirmations <u>objectively manifest assent</u> to every single term of Amazon's purchase orders.  (Compare, e.g., Dkt. No. 133-19 p. 3 with 133-19 p. 6.)

Nyko also argues that the Amazon purchase orders were merely "requests" or "pre-orders" for purposes of forecasting since the Charge Base was not yet available for shipment.  (See Opp. p. 25.)  However, the Amazon purchase orders also contained offers to buy other parts that had already been released.  That Nyko could -- and did -- accept the customer's offers to buy the released products by shipping and invoicing them demonstrates that the purchase orders were "offers to buy" that

-11-

Case No. CV12-03001
REPLY ISO MOTION FOR SUMMARY JUDGMENT

SMRH:410068454.1

became binding if accepted. *Linear Tech*, 275 F.3d at 1052 n.3; see, e.g., Dkt. No.
133-19 p. 6 (purchase order for 60 DS Pro Point Pen Stylus for $270) and 133-19 p.
1 (invoice for shipment of 60 DS Pro Point Pen Stylus for $270 pursuant to Amazon
purchase order).   Further, Nyko's own witness conceded that he was unaware of a
single document among the 83,000 pages produced by Nyko that characterizes the
Amazon purchase orders as "pre-orders", or anything other than an actual purchase
order.  (Dkt. No. 135-4, pp. 37, 39, 41, 44, 46 of 102.)

A recent Federal Circuit case establishes that, in addition to the purchases by
Nyko's customers, there was yet another Section 102(b) barring event in this case.
Specifically, in *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 2013 U.S.
App. LEXIS 16797 (Fed. Cir. Aug. 14, 2013), after Hamilton Beach sent a purchase
order to its supplier, "the supplier responded that it had received the order and was
ready to fulfill it upon Hamilton Beach's 'release.' The email also listed specific
details of what the order would entail." *Id.* at *15.  The Federal Circuit held that this
email was in fact a 102(b) offer to sell <u>by the supplier</u>, because it could form a
binding contract upon acceptance by Hamilton Beach. *Id.* at *15-16.  The facts here
are remarkably similar.  On December 29, 2006, Nyko's Hong Kong supplier
acknowledged Nyko's purchase orders for 36,000 units of the Charge Base.

133-26 p. 1 of 4.)  The emailed response attached the supplier's "quotation" for
the 36,000 charge base units at $11.80 per unit, stating "Please confirm." (*Id.*)  As
in *Hamilton Beach*, this emailed quotation would form a binding contract upon
confirmation under the UCC because it identified the product, quantity ordered and
price.  The supplier's quotation was thus a barring "offer for sale" under 35 U.S.C. §
102(b).

The evidence submitted by Nyko regarding its sales activity fails to create a
material issue of fact.  In response to each of Defendants' Undisputed Material Facts
(Nos. 6-11), Nyko relies on the same deposition excerpts from Chris Arbogast, a

marketing employee who repeatedly acknowledged that he lacked knowledge of the sales process:

- "my involvement with sales is more pitching product, meeting with retail accounts, not once orders are placed within Nyko." (Dkt. No. 135-4 p. 32.)

- He has no "understanding of what documents are sent to the customer once an order is received" by Nyko. (*Id.* p. 33.)

- "Again, I'm not deeply involved in the accounting and order-keeping process at Nyko." (*Id.* p. 39.)

- He was not involved in accounting and he was looking at the purchase and sale documents <u>for the first time</u>. (*Id.* p. 52.)[5]

Nyko's evidence regarding the sales documents, therefore, is speculative and lacks foundation based on personal knowledge. Accordingly, it is inadmissible and cannot raise a triable issue of fact. Similarly, Nyko's purported Additional Genuine Material Facts regarding its sales activity are based almost entirely on Nyko's own <u>unverified</u> interrogatory responses. (See Dkt. No. 136, Nos. 132-142, relying on NYKO's unverified Responses to EBC's First Set of Interrogatories.) This is self-serving, non-evidentiary hearsay that cannot create a triable issue of fact. *See Agha v. Army*, 1992 U.S. Dist. LEXIS 18936, Nos. C-85-20693, C-88-20471, C-88-20774, at *18 (N.D. Cal, Oct. 19, 1992); *see also Owners Ins. Co. v. James*, 295 F.Supp.2d 1354, 1362 (N.D. Ga 2003); *Goodwin v. CSX Transportation, Inc,*, 2010 U.S. Dist. LEXIS 81772, No. 3:07-CV-00483, at *8 (W.D. Ken. 2010); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). Several of Nyko's Additional Facts also purport to rely on testimony of the same witness who repeatedly admitted a lack of knowledge of the purchase and sale process and documents. (See Additional Fact Nos. 132, 135, 136, 139, 140.) In other words,

---

[5] See also DEFENDANTS' EVIDENTIARY OBJECTIONS TO NYKO'S STATEMENT OF FACTS and Reply Buccigross Decl. Ex. A, filed concurrently herewith.

1   Nyko has not submitted <u>any</u> admissible evidence in support of its Additional Facts

2   regarding its pre-critical date sales.

3           In sum, the undisputed facts and applicable law establish that there were

4   commercial offers for sale, and actual sales, of the Charge Base more than one year

5   before applying for the '848 Patent, and the Asserted Claims are invalid as a matter

6   of law.

7   **IV.    <u>THE ASSERTED CLAIMS ARE NOT ENTITLED TO THE PRIORITY DATE OF THE NAVID PROVISIONAL</u>**

8           Where, as here, there has been no priority determination at the Patent Office,

9   
10  no presumption of validity attaches to priority claims and the burden is on the

11  patentee to come forward with evidence to prove entitlement to claim priority.

12  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008).

13  Nyko has not and cannot meet that burden because:  (1) the Provisional Application

14  does not disclose DC ports "on the base", i.e., DC ports in direct contact with base;

15  (2) the male mini-USB ports disclosed in the Provisional Application are fully

16  surrounded by and supported by the adapters, and while the base may support the

17  adapters, the base does not support the USB ports in any meaningful way; and

18  (3) regardless of (1) and (2), the Asserted Claims are not entitled to priority because

19  they are based in whole or in part on <u>new matter</u> in the non-provisional '295

20  application filed March 8, 2008.  Defendants address the new matter issue first

21  because the Court need not resolve the ambiguity of the term "supported by the

22  base" in order to conclude that the Asserted Claims, including claim 13 and its

23  dependent claims, are not entitled to the priority date of the Navid Provisional.

24  **A.    New Matter**

25          The Court has already determined that "supported by the base" is broad

26  enough to include USB ports directly on the base.  Accordingly, to be afforded the

27  priority of the Provisional, it must contain written description support for the full

28  scope of the claim, i.e., DC ports directly on the base.  Yet it is beyond dispute that

1  USB ports <u>directly on the base</u> were not disclosed in the Provisional (Dkt. No 133-

2  3) and were, therefore, new matter in the '295 Application, filed March 7, 2008.

3  (See, e.g., Dkt. No. 133-33 p. 5 (¶ 8), 133-13 p. 13 (lines 6-7), 133-13 pp. 47-50

4  (FIGS. 11-15).)

5      In *Chiron v. Genentech*, 363 F.3d 1247 (Fed. Cir. 2004), Chiron filed suit

6  against Genentech for infringing its '561 patent for a "monoclonal antibody" that

7  "binds to a human breast cancer antigen." The claimed monoclonal antibody

8  comprised 'chimeric and humanized antibodies.' Chiron argued that the '561 patent

9  drew priority through a chain of patent applications in 1984, 85, and 86.  While the

10 word monoclonal antibody appeared in the 1984 application, it did not have the

11 same definition as it had in the later filed application (chimeric and humanized

12 antibody technology did not exist at the time of filing the 1984 application). The

13 definition was added in later applications to encompass the full scope of the newly

14 claimed technology.  The Court held that claims based on the newer definition were

15 new matter, and could not enjoy the priority of the original application.  The Federal

16 Circuit reasoned that the written description requirement prevents applicants from

17 updating their disclosures (claims or specifications) without losing priority.

18 "Otherwise applicants could add new matter to their disclosures and date them back

19 to their original filing date, thus defeating an accurate accounting of the priority of

20 invention.  See 35 U.S.C. § 132." *Chiron*, 363 F.3d at 1255.

21     The district court decision in the *Hamilton Beach* case further illustrates the

22 principle of precluding priority where new matter is introduced to the later

23 application to support broader claims.  The case involved a "clip" and "catch"

24 mechanism on a slow cooker.  In the earlier application, the clip, consisting of a

25 hook and a lever, was on the sidewall of the cooker and the catch was on the lid of

26 the cooker.  2012 U.S. Dist. LEXIS 97923, *26.  While it may have been obvious to

27 reverse this configuration, the court held that the earlier application did not disclose

28 a clip on the lid and a catch on the sidewall.  *Id.* at *27.  When Sunbeam came out

1  with a product with this "reverse" configuration, Hamilton Beach amended a

2  subsequent application to define the "clip" as including the catch, so as to provide

3  written description support for the claims written to cover Sunbeam's product. *Id.*

4  The court held that, because the later application added the broader definition of the

5  clip to the specification, it was not entitled to the priority of the earlier application.

6  *Id.* at *35.

7        Here, it is beyond dispute that the later '295 Application included DC ports

8  directly on the base, which was new matter not included in the Provisional

9  Application. Because the Asserted Claims are supported, at least in part, by that

10 new matter ("supported by the base" includes DC ports directly on the base), they

11 are not entitled to the priority of the Provisional Application. Significantly, the

12 *Hamilton Beach* court rejected the very argument raised by Nyko here that the

13 added matter was not "new" because the earlier application was not limited to its

14 preferred embodiment. *Id.* at *33-34.   The question was not whether the earlier

15 application was limited to a particular embodiment, but whether it in fact disclosed

16 the allegedly new matter. *Id.*

17       Because all of the Asserted Claims were based in whole or in part on new

18 matter in the '295 Application filed in March 2008, those claims are not entitled to

19 priority based on the Provisional and are invalidated by the public use and sales of

20 the claimed invention before March 7, 2007

21      **B.**    **The Provisional Does Not Disclose DC Ports "On the Base"**

22       While unnecessary in light of the undisputed reliance on new matter, Nyko's

23 attempt to claim priority also fails because the Provisional did not disclose DC ports

24 on the base. Nyko argues that, because the adapters may be connected to the base,

25 the DC ports on the adapters are "on the base." However, this argument directly

26 contradicts the Court's previous determination that "on the base" connotes direct

27 contact. (Dkt. No. 122, p. 24.) Indeed, this determination was based in part on

28 Nyko's claim differentiation argument that "supported by the base" must be broader

than (and include) DC ports "on the base." Again, it is beyond dispute that the Provisional does not disclose DC ports in direct contact with the base. (Dkt. No. 133-3.)

Alternatively, Nyko argues that, since the DC ports are on the adapters and the adapters may be placed on the base, persons of skill in the art would understand that the DC ports may be placed directly on the base. This argument fails as a matter of law. See, e.g., *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.") Regardless of the extensive testimony of Nyko's expert regarding food on plates on tables and boys on skateboards on sidewalks, an objective review of the Provisional establishes that it does not disclose DC ports on the base. See *id.* (finding insufficient disclosure in an earlier application despite expert testimony to the contrary); *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1340 (Fed. Cir. 2010) (same).

### C. The Male Mini-USB Ports of the Provisional Are Fully Supported By The Adapters, and Are Not "Supported by the Base"

Again, because male mini-USB ports "supported by the base" is broad enough to include DC ports "on the base," that claim limitation is supported by new matter, and the Court need not determine whether the Provisional discloses USB ports "supported by the base." Nevertheless, the undisputed content of the Provisional Application establishes that the male mini-USB ports are embedded in and fully supported by the adapters.



-17-



FIG.3

FIG.2

(Dkt. No. 133-3, FIGS. 4A, 4C, 2, 3.)  Both experts agree that the USB ports are fully supported by the adapters.  (Dkt. No. 133-42 ¶ 14; Reply Buccigross Decl. Ex. B p. 74.)

Nyko argues, nevertheless, that the base *also* supports the male mini-USB ports when the adapters are placed on the base as shown in FIG. 3 of the Provisional.  First, an objective reading of the Provisional as a whole demonstrates that FIG. 3 simply illustrates the connection between the adapter and the base, and does not suggest a configuration where the adapter remains connected to and supported by the base independently of the controllers.  (Dkt. No. 133-3 ¶¶ 3, 4, 22, FIGS. 1-8.)  Indeed, the Provisional teaches away from such a configuration because it would require the repeated plugging and unplugging of USB ports which the invention of the Provisional was designed to avoid.  Second, Nyko's reading of "supported by the base" would lead to absurd results, and indefiniteness under 35 U.S.C. § 112, as the male mini-USB port would be deemed supported by any surface on which the adapter sits or into which the USB port is connected.  (See, e.g., Reply Buccigross Decl. Ex. B pp. 74-75.)  Indeed, it would be more consistent with the disclosure of the Provisional to say that the USB ports are supported <u>by the controller</u> since the adapter is intended to remain connected to the controller to avoid repeated plugging and unplugging of fragile plugs and to allow the controller and attached adapter to drop easily into the recess on the base.  Yet, such a strained

interpretation of "supported" would lead to speculation and uncertainty about the scope of the Asserted Claims.

## V. NYKO DOES NOT DISPUTE THAT CLAIMS 10 AND 15 WOULD HAVE BEEN OBVIOUS BASED ON THE CHARGE BASE PUBLICLY USED AND SOLD IN JANUARY 2007

Nyko admitted in its public filings and interrogatory responses that "[t]he product Nyko introduced in January 2007 includes each and every feature of the claimed invention" of claims 1-5, 7, 8, 11-13, and 16-17. (Dkt. No. 44 ¶ 17; Dkt. No. 133-34 pp. 9 to 11.)   Nyko does not dispute that the additional features of claims 10 and 15, "external AC-to-DC converters were well known in the accessory charging art as of at least 2005 and it would have been obvious to replace the internal AC-to-DC converter in the Charge Base with an external AC-to-DC converter." (Dkt. No. 136, UMF No. 29.)  Accordingly, all of the Asserted Claims are invalid based on Nyko's public use and sales of the Charge Base, in combination with external AC-to-DC converters well known in the art.

## VI. NYKO RELIES ON FACTS THAT NOT MATERIAL AND OR NOT SUPPORTED BY THE CITED EVIDENCE

As addressed above, Nyko relies on inadmissible evidence in an effort to establish disputed issues of material fact. In other instances,

- Nyko contends facts are "Disputed" when the evidence does not establish a dispute.  (E.g., UMF Nos. 2-11.)

- Nyko relies on purported facts that are not material, and therefore do not create a triable issue of fact.  (E.g., Additional Fact Nos. 99-101, 108-118, 120-125, 127, 129-130, 132.)

- Nyko relies on purported facts that are not supported by the evidence cited, and therefore do not create a triable issue of material fact. (E.g., Additional Fact Nos. 133-142.)

In sum, Defendants presented evidence that establishes barring public use and sales of the claimed invention before the legal priority date of the Asserted Claims.

1  It was Nyko's burden to come forward with <u>evidence</u> that created material triable

2  issues, not merely to make arguments not supported by the evidence or present facts

3  that are not material.  Having failed to do so, Nyko has not raised issues of material

4  fact that preclude summary judgment.

5  **VII.   <u>CONCLUSION</u>**

6        The evidence of public use and sales of the Charge Base before March 7,

7  2007 is extensive and undisputed.  Nyko's arguments that are unsupported by the

8  evidence, or that are not material, do not raised triable issues.  Nyko admits that the

9  Charge Base includes all elements of the claims 1-5, 7, 8, 11-13, and 16-17.  The

10  remaining Asserted Claims, 10 and 15, are obvious.  Because the Asserted Claims

11  are not entitled to a filing date earlier than March 7, 2008 as a matter of law,

12  Defendants are entitled to summary judgment that the Asserted Claims are invalid

13  pursuant to Sections 102(b) and 103.

14  Dated:  September 10, 2013

15

16                              SHEPPARD, MULLIN, RICHTER & HAMPTON
                                LLP

17

18                              By  _____/s/ Steven M. Hanle_____
19                                       DANIEL N. YANNUZZI
20                                       STEVEN M. HANLE
                                       GRAHAM (GRAY) M. BUCCIGROSS
21

22                              Attorneys for Performance Designed Products
23                              LLC, Eveready Battery Co., Inc., and
                                Energizer Holdings, Inc.
24

25

26

27

28

-20-                                                    Case No. CV12-03001

# CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego; I am over the age of eighteen years and not a party to the within entitled action; my business address is 12275 El Camino Real, Suite 200, San Diego, California 92130.

On September 10, 2013 I electronically filed the following document(s) described as

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY**

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the interested parties who have consented to electronic service via the CM/ECF system.

S. Art Hasan
G. Warren Bleeker
Katherine Quigley
Christie Parker and Hale LLP
655 North Central Avenue Suite 2300
Glendale, CA 91203-1445
Art.hasan@cph.com
Warren.bleeker@cph.com
Katherine.Quigley@cph.com

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on September 10, 2013 at San Diego, California.

/s/ Sarah Lewis
Sarah Lewis