1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   | A Limited Liability Partnership
2 |   Including Professional Corporations

3 | DANIEL N. YANNUZZI, Cal. Bar No. 196612
   | dyannuzzi@sheppardmullin.com
4 | GRAHAM M. BUCCIGROSS, Cal. Bar No. 234558
   | gbuccigross@sheppardmullin.com
5 | MATTHEW M. MUELLER, Cal. Bar No. 268486
   | mmueller@sheppardmullin.com
6 | 12275 El Camino Real, Suite 200
   | San Diego, California  92130-2006
7 | Telephone:  858.720.8900
   | Facsimile:    858.509.3691
8 |
   | STEVEN M. HANLE, Cal. Bar No. 168876
9 | shanle@sheppardmullin.com
   | 650 Town Center Drive, 4th Fl.
10 | Costa Mesa, CA  92626
   | Telephone:  714.513.5100
11 | Facsimile:    714.513.5130

12 | Attorneys for Performance Designed Products
   | LLC and Energizer Holdings, Inc.

13 |

14 | UNITED STATES DISTRICT COURT
15 | CENTRAL DISTRICT OF CALIFORNIA

16 | NYKO TECHNOLOGIES, INC. a           Case No. CV12-03001-GAF-VBK
17 | California Corporation,
                                        **DEFENDANTS' RESPONSES TO**
18 |                 Plaintiff,          **PLAINTIFF'S SEPARATE**
                                        **STATEMENT OF GENUINE**
19 |       v.                            **DISPUTES OF MATERIAL FACT**

20 | ENERGIZER HOLDINGS, INC. a
   | Missouri Corporation, and           Date:  September 23, 2013
21 | PERFORMANCE DESIGNED               Time: 9:30 a.m.
   | PRODUCTS LLC, a California Limited
22 | Liability Company,                  Complaint Filed:  April 5, 2012
                                        Discovery Cutoff:   Oct. 14, 2013
23 |                 Defendants.         Pretrial Conf.:  Dec. 30, 2013
                                        Trial Date:  Jan. 28. 2014
24 |

25 |

26 |

27 |

28 |

SMRH:410037381                          -1-

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|----------------------|
| 30. | The Provisional Application discloses each and every feature of claim 1. Kitchen Decl., Ex. 2. *See* [31] – [37] below | This is UNDISPUTEDLY INCORRECT.[1]  (Provisional Application (Dkt. No. 133-5) (no disclosure of DC ports directly on the base). Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 31. | The Provisional Application discloses a video game controller charging system for charging a plurality of video game controllers using externally supplied power according to Asserted Claim 1. Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0001, lines 6-8, 0005, lines 7-14, 0016, lines 15-25, 0017, lines 26-27, 0021, lines 9-11, 0022, | UNDISPUTED for purposes of the motion.[2] |

---

[1]     Plaintiff includes a number of purported facts that are not in genuine dispute, but are in fact undisputedly <u>incorrect</u> based on the evidence presented by the parties. Plaintiff should not be permitted to create triable issues by asserting facts that are simply contrary to the relevant and admissible evidence.

[2]     By agreeing that the fact is undisputed for purposes of the motion, Defendants do not waive their right to dispute the fact for other purposes, including based on challenged claim constructions.

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | lines 14-27, 0024, lines 16-25, 0028, lines 3-8, Claim 1 and Figs. 1-8. | |
| 32. | The Provisional Application discloses a video game controller charging system including a base and at least one structure on the base for providing physical support to the plurality of video game controllers, while the plurality of video game controllers are being charged, according to Asserted Claim 1. <br><br> Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0005, lines 7-12, 0017, line 26-27, 0024, line 21, 0025, line 26, Abstract, lines 6-9, Claim 1 and Figs. 1, 2, 3, 5, & 7; [*See e.g.* Prov. App. at docking bays 12, 14 at ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, Figs. 1-3; adapters 16 at ¶¶ 0005, lines 12-15, 0016, lines 20- 25, 0018, lines 8- 15, 0019, lines 18-24, 0020, lines | UNDISPUTED for purposes of the motion. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | 25-7, 0021, lines 8-13, 0022, lines 14-25, 0023, lines 5-15, 0025, lines 26-3, 0028, lines 4-8 and Figs. 2-4C; and partition 28 at ¶¶ 0017, line 3 and Fig. 1 & 3]. | |
| 33. | The Provisional Application discloses a plurality of male DC ports on the base, each of which is configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers, according to Asserted Claim 1. Kitchen Decl., ¶¶ 39-63 & Ex. 2. *See e.g.* Prov. App. ¶¶ 0003, lines 20-26, 0005, lines 9-14, 0016, lines 22-25, 0021, lines 9-13, 0022, lines 14-17, 0024, lines 18-25, 0028, lines 4-6, 0029, lines 10-13, Abstract 6-12, Claim 1 and Figs. 2, 3, 5 & 6. | This is UNDISPUTEDLY INCORRECT.  (Provisional Application (Dkt. No. 133-5) (no disclosure of DC ports directly on the base). Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 34. | For example, the application discloses a base with a recess into which a male DC port bearing structure called an "adapter" is | The three separate facts are UNDISPUTEDLY INCORRECT, in part. (a) The Provisional Application |

COLUMN

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
|     | fitted or attached.  The adapter may be placed into the docking bay by a push-fit, press-fit, snap-fit or attachment with prongs.  As the DC port is integrally disposed within the adapter the DC port is on the base when the adapter is placed within the recess.  This is clearly shown in Figure 3: Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶ 0005, line 10 and Abstract, line 7; ¶ 0018, line 10-15; ¶ 0023, lines 9-15;  ¶ 0022, line 14; FIG. 3. | discloses attachment of the adapter while attached to a controller.  (Provisional Application (Dkt. No. 133-5 at ¶¶ 22-23) (b)  DC port on the adapter is not "on the base".  (Provisional Application (Dkt. No. 133-5.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 35. | The Provisional Application discloses at least one structure on the base which includes a plurality of docking bays open in a first direction and each configured to receive a respective one of the plurality of video game controllers from the first direction, according to Asserted Claim 1. Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, | UNDISPUTED for purposes of the motion. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, 0023, lines 7-10 and Figs. 1-3, 5 & 6. | |
| 36. | The Provisional Application discloses a base that includes at least one structure which comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, according to Asserted Claim 1. Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, 0023, lines 7-10 and Figs. 1-3, 5, & 6. | UNDISPUTED for purposes of the motion. |
| 37. | For example, when the adapter with the integral DC port is fitted or attached within the respective docking bay either with or without the controller, the male DC port integrally disposed on the adapter is on the base between a respective one of the pairs of surfaces of the docking bays, according to | This is UNDISPUTEDLY INCORRECT.  (Provisional Application (Dkt. No. 133-5) (no disclosure of DC ports directly on the base). Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Asserted Claim 1. Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0023, lines 9-10; ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-15, 0019, lines 18-24, 0022, line 14, 0023, lines 7- 10 and Figs. 1-3, 5 & 6. | |
| 38. | The Provisional Application discloses the limitations of Asserted Claim 2, which reads as follows: "The video game controller charging system of claim 1, wherein the plurality of DC ports comprises a plurality of male mini-USB connectors." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0021, lines 11-14, Claim 6 and Fig. 2, 3, & 4A. | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 2 is dependent on Claim 1, the Provisional Application does not disclose all the elements of Claim 2 for the reasons stated above with respect to Claim 1. |
| 39. | The Provisional Application discloses the limitations of Asserted Claim 3, which reads as follows: "The video game controller charging system of claim 1, further comprising: a current | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 3 is dependent on Claim 1, the Provisional Application does not disclose all the elements of Claim 3 for the reasons stated above with |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | detector electrically coupled to the plurality of DC ports; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the video game controller charging system." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27, Claim 2 and Fig. 8. | respect to Claim 1. |
| 40. | The Provisional Application discloses the limitations of Asserted Claim 4, which reads as follows: "The video game controller charging system of claim 3, wherein the indicator comprises at least one LED." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27, Claim 3 and Fig. 8. | UNDISPUTEDLY INCORRECT, in part. As Asserted Claim 4 is dependent on Claim 1, the Provisional Application does not disclose all the elements of Claim 4 for the reasons stated above with respect to Claim 1. |
| 41. | The Provisional Application discloses the limitations of Asserted Claim 5, which reads as | UNDISPUTEDLY INCORRECT, in part. As Asserted Claim 5 is dependent on Claim 1, the |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
|  | follows: "The video game controller charging system of claim 1, wherein the pairs of opposite surfaces are configured to align respective ones of the plurality of video game controllers such that the power input ports of the respective ones of the plurality of video game controllers couple to respective ones of the plurality of DC ports." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-15, 0019, lines 18-24, 0021, lines 9-11, 0022, line 14-17, 0023, lines 7-10 and Figs. 1-3, 5, & 6. | Provisional Application does not disclose all the elements of Claim 5 for the reasons stated above with respect to Claim 1.  Also, the Provisional Application fails to disclose the claimed alignment by pairs of opposite surfaces.  (Dkt. No. 133-5.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 42. | The Provisional Application discloses the limitations of Asserted Claim 7, which reads as follows: "The video game controller charging system of claim 1, wherein the plurality of DC ports is configured to concurrently couple to and provide DC power to | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 7 is dependent on Claim 1, the Provisional Application does not disclose all the elements of Claim 7 for the reasons stated above with respect to Claim 1. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | the plurality of video game controllers." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0024, lines 16-25 and Figs. 2, 3, 5 & 6. | |
| 43. | The Provisional Application discloses the limitations of Asserted Claim 8, which reads as follows: "The video game controller charging system of claim 1, further comprising an AC-to-DC converter adapted to convert the externally supplied power to the DC power provided to the power input ports of the respective video game controllers." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0005, lines 9-14, 0016, lines 19-25, 0022, lines 14-2, 0024, lines 17-25, 0029, lines 9-12, Abstract 7-12 and Fig. 7. | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 8 is dependent on Claim 1, the Provisional Application does not disclose all the elements of Claim 8 for the reasons stated above with respect to Claim 1. |
| 44. | The Provisional Application discloses the limitations of Asserted Claim 10, which reads as follows: "The video game | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 10 is dependent on Claim 1, the Provisional Application does not |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|----------------------|
|     | controller charging system of claim 1, wherein the AC-to-DC converter that is external to the base." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0024, lines 17-25, 0029, lines 9-12. | disclose all the elements of Claim 8 for the reasons stated above with respect to Claim 1. |
| 45. | The Provisional Application discloses the limitations of Asserted Claim 11, which reads as follows: "The video game controller charging system of claim 1, wherein the AC-to-DC converter is adapted to convert an AC voltage in the range of 100V to 240V corresponding to the externally supplied power into a DC voltage corresponding to the DC power." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0028, lines 6-8 and Fig 7. | UNDISPUTEDLY INCORRECT, in part. As Asserted Claim 11 is dependent on Claim 1, the Provisional Application does not disclose all the elements of Claim 11 for the reasons stated above with respect to Claim 1. Also, the Provisional Application does not disclose the claimed voltage range. (Dkt. No. 133-5.) Objection to cited portion of the Kitchen Decl. The Provisional Application itself is the Best Evidence of what it disclosed. |
| 46. | The Provisional Application discloses the limitations of Asserted Claim 12, which reads as follows: "The video game controller charging system of claim | UNDISPUTEDLY INCORRECT, in part. As Asserted Claim 12 is dependent on Claim 1, the Provisional Application does not disclose all the elements of Claim 12 |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|----------------------|
|     | 1, wherein the DC voltage is :DC 5 V." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶ 0022, lines 9-13 and Figs. 2, 3, 4A, 8. | for the reasons stated above with respect to Claim 1.  Also, the Provisional Application does not disclose the claimed DC voltage. (Dkt. No. 133-5.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the Best Evidence of what it disclosed. |
| 47. | The Provisional discloses each and every feature of claim 13. Kitchen Decl., Ex. 2. *See* [48] – [52] below. | UNDISPUTEDLY INCORRECT, as the Provisional Application does not disclose male mini-USB ports supported by the base; the disclosed male mini-USB ports are fully supported by the adapters.  (Dkt. No. 133-5, FIGS. 4A, 4C, 2, 3.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the Best Evidence of what it disclosed. |
| 48. | The Provisional Application discloses a charging system for charging a plurality of video game controllers, each having a power input port. | UNDISPUTED for purposes of this motion. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Kitchen Decl., Ex. 2.  *See e.g.* Prov. App. ¶¶ 0001, lines 6-8, 0005, lines 7-14, 0016, lines 15-25, 0017, lines 26-27, 0021, lines 9-11, 0022, lines 14-27, 0024, lines 16-25, 0028, lines 3-8 and Figs. 1-8. | |
| 49. | The Provisional Application discloses a video game controller charging system including a base and a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of the plurality of video game controllers. Kitchen Decl., ¶¶ 64-72 & Ex. 2. *See e.g.* Prov. App. ¶¶ 0005, lines 7-12, 0017, line 26-27, 0024, line 21, 0025, line 26, Abstract, lines 6-9 and Figs. 1, 2, 3, 5, & 7. *See e.g.* Prov. App. ¶¶0005, lines 12-14, 0021, lines 9-14, 0022, 14-15, 0024, lines 17-25, 0029, lines 9-12, Abstract 9-11 and Fig. 2, 3, 4A, 5, 6 & 7. | UNDISPUTEDLY INCORRECT, as the Provisional Application does not disclose male mini-USB ports supported by the base; the disclosed male mini-USB ports are fully supported by the adapters.  (Dkt. No. 133-5, FIGS. 4A, 4C, 2, 3.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the Best Evidence of what it disclosed. |
| 50. | The Provisional Application also | UNDISPUTEDLY INCORRECT, as |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | discloses the charging system as including at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors. Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, 0021, lines 11-14, 0023, lines 7-10 and Figs. 1-3, 4A, 5 & 6. | the Provisional Application fails to disclose the claimed docking bays configured to align video game controllers.  (Dkt. No. 133-5.)  Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 51. | The charging system further includes a power input for connecting to a power supply in which the power input is electrically coupled to the plurality of male mini-USB connectors. Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0021, lines 11-14, 0022, lines 26-27, 0024, lines 17- | UNDISPUTEDLY INCORRECT, as the Provisional Application fails to disclose a power input electrically coupled to the plurality of male mini-USB connectors (which are on the adapters).  (Dkt. No. 133-5, FIGS. 4A, 4C, 2, 3.)  Objection to cited portion of the Kitchen Decl.  The Provisional |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | 25, 0029, lines 9-12 and Fig. 2, 3, 4A & 7. | Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 52. | The charging system further includes at least one docking structure that includes a plurality of pairs of substantially parallel opposite planar surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, each of the docking bays being open on opposite sides between the respective pairs of surfaces, according to Asserted Claim 13. Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0016, lines 18-25, 0017, lines 26-4, 0018, lines 8-10, 0019, lines 18-24, 0023, lines 7-10 and Figs. 1-3, 5, & 6. | DISPUTED, in that the docking bays of the Provisional Application are further defined by recesses for receiving the adapters attached to the controller.  (E.g., Dkt. No. 133-5, FIGS. 2, 3.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 53. | The Provisional Application discloses the limitations of Asserted Claim 15, which reads as follows: "The video game controller charging system of claim 13, wherein the charging system | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 15 is dependent on Claim 13, the Provisional Application does not disclose all the elements of Claim 15 for the reasons stated above with |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | further comprises an AC-to-DC converter external to the base and electrically coupled to the power input." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0005, 10-12, 0022, lines 25- 26, 0024, lines 17-25, 0029, lines 9-12, and Abstract, lines 7-9. | respect to Claim 13. |
| 54. | The Provisional Application discloses the limitations of Asserted Claim 16, which reads as follows: "The video game controller charging system of claim 13, further comprising: a current detector electrically coupled to the plurality of male mini-USB connectors; and an indicator electrically coupled to the current detector, the indicator configured to indicate a charging status of the charging system." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27 and Fig. 8. | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 16 is dependent on Claim 13, the Provisional Application does not disclose all the elements of Claim 16 for the reasons stated above with respect to Claim 13. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| 55. | The Provisional Application discloses the limitations of Asserted Claim 17, which reads as follows: "The video game controller charging system of claim 13, wherein the indicator comprises at least one LED." Kitchen Decl., Ex. 2. *See e.g.* Prov. App. ¶¶ 0026-27, lines 6-26, 00030-31, lines 14-27 and Fig. 8. | UNDISPUTEDLY INCORRECT, in part.  As Asserted Claim 17 is dependent on Claim 13, the Provisional Application does not disclose all the elements of Claim 17 for the reasons stated above with respect to Claim 13. |
| 56. | The Navid Provisional discloses adapters that are placed in corresponding recesses in the base and are press-fit, push-fit or snap-fit into a corresponding recess in the base.  The purpose of this recess is clearly to allow the adapters with the DC ports to sit within the base and act as a unit that allows the connection to the controller power input port to be made without interference with the purpose of the docking bays, which is to align and receive the controllers. | UNDISPUTEDLY INCORRECT, in part.  The Provisional Application discloses attachment of the adapter while attached to a controller such that the controller and adapter act as a unit.  (Provisional Application (Dkt. No. 133-5 at ¶¶ 22-23.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Kitchen Decl. ¶ 52. | |
| 57. | Figure 3 of the Navid Provisional shows the adapters fastened to the base (as discussed above) by a press-fit, push-fit or snap-fit, or sitting in the recesses of the docking bays by a drop fit. One skilled in the art would understand that the provisional patent describes both configurations, in which the DC ports are attached or removable. Kitchen Decl. ¶ 53. | UNDISPUTEDLY INCORRECT. The Provisional Application discloses attachment of the adapter while attached to a controller. (Provisional Application (Dkt. No. 133-5 at ¶¶ 22-23) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 58. | Figure 6 of the Navid Provisional (shown below) shows two controllers charging in the disclosed invention without specifying the presence or absence of the adapters – "FIG. 6 is a perspective view of a charging station with two video game controllers according to an exemplary embodiment of the invention;" [Navid Provisional, ¶13].  Without this specificity, one | UNDISPUTEDLY INCORRECT. The Provisional Application discloses attachment of the adapter while attached to a controller.  The Provisional Application neither claims nor discloses an embodiment without adapters. (Provisional Application (Dkt. No. 133-5 at ¶¶ 22-23) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best</u> |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | skilled in the art would understand that the provisional patent claims both configurations; docked and charging with an adapter or without an adapter (i.e. with a DC port directly connected to the base). Kitchen Decl. ¶ 54. | <u>Evidence</u> of what it disclosed. |
| 59. | One of the claims of the Navid Provisional reads: "11. Apparatus as shown and described herein." As FIGs. 3 and 6 show the docking bays configured to receive and align the controllers, with opposite parallel sidewalls and DC ports attached to the base, it is clear that the inventor found this to be part of his invention. Kitchen Decl. ¶ 55. | UNDISPUTEDLY INCORRECT, in part.  The Provisional Application does not disclose an alignment function of the docking bays and does not use the word align or alignment.  (Provisional Application (Dkt. No. 133-5.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. Objection as to <u>relevance</u> of what "the inventor found to be part of his invention." |
| 60. | The Navid Provisional makes it clear through its wording and drawings that the adapter can either remain on the base or <u>optionally</u> | UNDISPUTEDLY INCORRECT. The Provisional Application does not disclose that attaching the adapter to the game controller is "optional", but |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | attached to the game controller (note the use of the word "can," meaning "has the ability to," rather than "must," as in a requirement): The adapter 16 <u>can</u> remain with the hand-held controller 26 at all times, even when the controller 26 is not being charged in the charging station 10. When the hand-held controller 26 is in use during operation of a video game, when the controller 26 is stored, and when it is charging, the adapter 16 <u>can</u> remain connected to (and physically mounted on) the controller 26." [Navid Provisional, ¶22] (Emphasis added). | rather that the adapter "can" (has the capability to) do so. (Dkt. No. 133-5 ¶ 22.) The Provisional Application does not disclose that the adapter can remain on the base.  (<i>Id.</i> ¶¶ 22-23) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Kitchen Decl. ¶¶ 56, 79. | |
| 61. | Further confirming that the adapters can function as DC ports on the base, the '848 patent specification discloses two embodiments in which the adapters remain on the base (as shown in Figure 3 of the Navid Provisional), to be coupled with the game controller when it is inserted into the docking bays.   As Figure 3 shows no controllers, it is clear that the adapters can remain on the base. Kitchen Decl. ¶ 57. | UNDISPUTEDLY INCORRECT. The Provisional Application does not disclose that the adapters can function as DC ports "on the base" or that the adapters can remain on the base. (Dkt. No. 133-5.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. Objection to the statement "the '848 patent specification discloses two embodiments in which the adapters remain on the base" as <u>irrelevant</u> to priority (or any issue raised by the motion). |
| 62. | Even in the optional case where the adapters remain with the controllers, the controllers with the DC ports must end up on the base in order for the system to charge the controllers. Kitchen Decl. ¶ 58. | OBJECTION that the statement "the controllers with the DC ports must end up on the base in order for the system to charge the controllers" is <u>vague</u>, <u>incomprehensible</u> and <u>irrelevant</u>. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
| 63. | Figure 3 of the Navid Provisional depicts "male mini-USB connectors supported by the base and adapted to provide DC power" (i.e. the adapters of Claim 13) and docking structures that receive and align the accessory device to couple (or mate) to the male mini-USB connectors.  For the docking structures to receive and align the accessory device to couple (or mate) to the male mini-USB connector, the adapters must be sitting on the base at the time that the user inserts the controllers for charging.<br>Kitchen Decl. ¶ 59. | UNDISPUTEDLY INCORRECT, as the Provisional Application does not disclose male mini-USB ports supported by the base; the disclosed male mini-USB ports are fully supported by the adapters.  (Dkt. No. 133-5, FIGS. 4A, 4C, 2, 3.)  Also, the Provisional Application does not disclose alignment by docking structures or use the term align or alignment.  (Dkt. No. 133-5)  Also, the Provisional Application discloses that the adapters are attached to the controllers at the time that the user inserts the controllers for charging.  (Dkt. No. 133-5 ¶¶ 22-23.)  Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 64. | The Navid Provisional includes disclosures in which the adapters are on the base, either sitting in the recess of the docking bay or attached directly to the base | UNDISPUTEDLY INCORRECT, in part.  In all cases disclosed in the Provisional Application, the DC ports are <u>not</u> on the base, but rather on the adapters.  (Dkt. No. 133-5.) |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
|  | through the disclosed fastening methods.  In all cases the DC ports must be on the base for the device to function as intended, because the DC ports must be on the base to receive the DC voltage necessary to charge the game controllers.  In fact, there is no scenario in which the invention shown in Figure 3 functions as intended without the DC ports being positioned as shown above; i.e. positioned on the docking bays of the base with the DC ports part of the electrical circuit of the charger.<br>Kitchen Decl. ¶ 60. | Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 65. | In Figure 3 of the Navid Provisional, the mini-USB connectors are clearly supported physically by the base, or body of the charging system, even though they are not directly on the base.  If the body of the charging system were not under the mini-USB connectors, the connectors would | UNDISPUTEDLY INCORRECT, as the Provisional Application does not disclose male mini-USB ports supported by the base; the disclosed male mini-USB ports are fully supported by the adapters.  (Dkt. No. 133-5, FIGS. 4A, 4C, 2, 3.)   When the adapters are placed on the base (or any other surface, the mini-USB |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | fall down onto whatever surface is below.<br><br>Kitchen Decl. ¶ 70. | connectors remain fully supported by the adapters.  (Dkt. No. 133-42 ¶ 14; Reply Buccigross Decl. Ex. B pp. 74.)<br><br>Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed.  Objection to the statement, "If the body of the charging system were not under the mini-USB connectors…" as an <u>incomplete hypothetical</u> and <u>irrelevant</u>. |
| 66. | The external adapter disclosed in the Navid Provisional is not the only feature of the invention disclosed to "achieve the object" of providing an improved charging station that allows for fast, easy, and reliable connection.  In fact, it is the whole of the invention that solves the problems of the prior art to achieve "an improved charging station."  For example, the external adapter would be useless and | UNDISPUTEDLY INCORRECT, in part.  The Provisional Application does not disclose docking bays that align gaming controllers or use the term align or alignment.  (Dkt. No. 133-5.)  Thus, the Provisional Application does not disclose that a fast, easy, and reliable connection between the controller and charging station may be achieved without the external adapter.  (*Id.*)<br><br>Objection to cited portion of the |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
|  | ineffective without the disclosed docking bays, which align and support the game controller to achieve a reliable connection between the accessory device and the charging station.  As shown in FIG. 1, the charging station 10 includes a base 24 with two docking bays 12, 14.  The docking bays 12, 14 are each dimensioned to accept a hand-held controller 26 (see FIGs. 5, 6). [Navid Provisional, ¶17] Kitchen Decl. ¶ 76. | Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. Objection to the statement that "the adapter would be useless" as <u>lacking foundation</u>, <u>vague</u>, and <u>irrelevant</u>. |
| 67. | A person of ordinary skill would have understood from the Navid Provisional that the invention could be practiced and could serve its intended purpose without an external adapter, using, for example, the configuration of the | UNDISPUTEDLY INCORRECT, in that the invention of the Provisional Application necessarily includes an external adapter, and the docking bays as depicted in the Provisional Application could not connect to the controllers without an external |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | docking bays as depicted in the Navid Provisional. Kitchen Decl. ¶ 77. | adapter.  (Dkt. No. 133-5.) Also IMMATERIAL.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 68. | Figure 3 of the Navid Provisional shows a configuration in which the DC ports (male mini-USB connectors) are connected to the base and are not connected to controllers. Kitchen Decl. ¶ 77. | UNDISPUTEDLY INCORRECT. Figure 3 of the Provisional Application does not show a separate configuration of the invention; it illustrates the connection between the adapter and the charging base that would not be visible when the adapter is connected to the controller as required by the invention.  (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best</u> |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
|  |  | <u>Evidence</u> of what it disclosed. |
| 69. | A person of ordinary skill would have understood from Figure 3 of the Navid Provisional that, even without the assistance of external adapters attached to the controller, the docking bay configuration would have helped align the controllers, would facilitate connection of the controller to the charging station, and would thereby accomplish purposes of the invention.<br>Kitchen Decl. ¶ 77. | UNDISPUTEDLY INCORRECT, in part.  The Provisional Application does not disclose docking bays that align gaming controllers or use the term align or alignment.  (Dkt. No. 133-5.)  Thus, the Provisional Application does not disclose that a fast, easy, and reliable connection between the controller and charging station may be achieved without the external adapter.  (*Id.*)<br>Also IMMATERIAL.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.")  Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 70. | The Navid Provisional discloses at least one embodiment in which the adapter(s) are fastened to the base, | UNDISPUTEDLY INCORRECT, in part.   The Provisional Application does not disclose an embodiment |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
|  | using a "push-fit, press-fit, or snap-fit, rather than a simple drop-fit." [Navid Provisional, ¶ 23]. Consequently, a person of skill in the art would recognize the use of an external adapter that remains with the controller as one way of practicing the invention of the Navid Provisional (a preferred embodiment), but not the only way of doing so. Kitchen Decl. ¶ 80. | whereby the adapter is fastened to the base separately from the controller. (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) Also IMMATERIAL. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 71. | The Navid Provisional repeatedly uses the terms "exemplary embodiment" and "one embodiment," which states to one of ordinary skill in the art that each of the described embodiments is but an example of the invention, and that the invention is not restricted to a particular embodiment. Kitchen Decl. ¶ 81. | UNDISPUTED, but IMMATERIAL. See *Hamilton Beach v. Sunbeam*, 2012 U.S. Dist. LEXIS 97923 at *33-34 (E.D. Va. 2013) (the question is not whether the earlier application was limited to a particular embodiment, but whether it in fact disclosed the matter in the later claims). Objection to cited portion of the Kitchen Decl.  The Provisional |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | | Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 72. | Figure 7 of the Navid Provisional includes double sided arrows indicating the adapter may remain with the controller or remain with the base.<br>Kitchen Decl. ¶ 81. | UNDISPUTEDLY INCORRECT. The Provisional Application, including Figure 7, discloses that the invention calls for the adapter to remain connected to the base while in use; the arrow indicates that the adapter connects to both the controller and the base.  (Dkt. No. 133-5.)<br>Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 73. | The Navid Provisional does not teach away from the Asserted Claims of the '848 patent.<br>Kitchen Decl. ¶ 82; *id*. ¶¶ 73-88. | UNDISPUTEDLY INCORRECT, in part.  The Provisional Application teaches away from DC ports directly on the base and DC ports not fully supported by the adapter.  (Dkt. No. 133-5, including ¶¶ 3, 4, 22, Figs. 1-7.)<br>Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best</u> |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | | Evidence of what it disclosed. |
| 74. | Figure 3 of the Navid Provisional shows the adapters mounted on the base of the charging system, practicing the requirement of Claim 1 of the '848 patent of having "DC ports on the base." Kitchen Decl. ¶ 82. | UNDISPUTEDLY INCORRECT. Figure 3 of the Provisional Application does not show adapters "mounted" on the base of the charging system; it illustrates the connection between the adapter and the charging base that would not be visible when the adapter is connected to the controller as required by the invention.  (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.)  The Provisional Application does not disclose "DC ports on the base."  *Id.* Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the Best Evidence of what it disclosed. |
| 75. | Other charging solutions existed at the time of filing of the provisional application.  The Cole patent, for example, discloses a rack in which the controllers sit on finger like posts that are arranged in rows along the base, and use external | DISPUTED AND IMMATERIAL to the motion. Cole discloses docking bays that align the controllers.  (Dkt. Nos. 22-8; Dkt. No. 22-9; Dkt. No. 22-10.) The Provisional Application does not disclose or use the term alignment. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
|  | cables and wires to protect the fragile power input ports on the controller.  The space between the adjacent posts in Cole cannot be considered to define a docking bay as described in the Navid Provisional and recited in the Asserted Claims, as it is clear from Cole that the controller on the rack is sitting on top of the uppermost row of posts without any opposite surface for aligning the controller. Kitchen Decl. ¶ 84. | (Dkt. No. 133-5.)  Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the Best Evidence of what it disclosed. |
| 76. | The provisional application expressly and inherently discloses multiple solutions.  One potential solution is the use of a DC port integrally disposed in an adapter that can remain with the controller. Another potential solution is the interplay of the base with structures on the base that define docking bays including parallel opposite surfaces for receiving and aligning the controllers while they are being | UNDISPUTEDLY INCORRECT, in part.  The Provisional Application does not disclose or use the terms align, alignment, or alignment by parallel opposite surfaces.  (Dkt. No. 133-5.)  Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the Best Evidence of what it disclosed. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | charged.<br><br>Kitchen Decl. ¶ 86. | |
| 77. | A person of skill in the art would recognize that the invention disclosed in Figure 11 of the '848 patent and the one disclosed in Figure 3 from the Navid Provisional, both shown below, are the same invention.<br><br>Kitchen Decl. ¶ 96 | UNDISPUTEDLY INCORRECT. Figure 3 of the Provisional Application discloses adapters not present in Figure 11 of the '848 patent.  (Compare Dkt. No 133-5, FIG. 3 with 133-4 FIG. 11.)  Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 78. | With the adapters on the base (as shown in Figure 3), the inventions in Figure 3 of the Navid Provisional and Figure 11 of the '848 patent are substantially the same.<br><br>Kitchen Decl. ¶ 97. | UNDISPUTEDLY INCORRECT. The adapters shown in Figure 3 are a substantial component of the invention disclosed in the Provisional Application that is not present in Figure 11 of the '848 patent.  (Compare Dkt. No 133-5 with 133-4 FIG. 11.)  Also IMMATERIAL.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | | disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 79. | The adapters must be positioned as shown in Figure 3 (i.e. in exactly the same position as the DC ports pictured in Figure 11), for the invention to function as specified. Kitchen Decl. ¶ 97. | UNDISPUTEDLY INCORRECT, in part.  The DC ports in Fig. 3 of the Provisional Application are on the adapter, which is not the same position as the DC ports pictured in Figure 11 of the '848 patent (i.e., on the base).  (Compare Dkt. No 133-5 FIG. 3 with 133-4 FIG. 11.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 80. | There is no scenario in which the invention performs the Asserted Claims of the '848 patent with the adapters removed from the base. Kitchen Decl. ¶ 97. | DISPUTED AND IMMATERIAL. The Asserted Claims do not include adapters either on or off the base. (Dkt. No. 133-4.) Immaterial because the claims of the '848 patent are apparatus claims, not method claim, and are not performed. (*Id.*) |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| 81. | In these embodiments, the adapter and base operate as a unitary piece, practicing the disclosed claims of the patent. Kitchen Decl. ¶ 97. | VAGUE AND INCOMPREHENSIBLE, as to the embodiments referred to and the "disclosed claims." UNDISPUTED that the Provisional Application does not disclose the adapter and base operating as a unit and that the Provisional Application does not disclose elements of the Asserted Claims. (Dkt. No. 133-3.) |
| 82. | When the adapter is on the base as pictured in Figure 3 above, whether sitting in the recess on the base or attached to the base as disclosed previously, a person skilled in the art would recognize that the adapter and base functioning as a unitary piece is equivalent to having a DC port mounted on the base. Kitchen Decl. ¶ 97. | UNDISPUTEDLY INCORRECT. The Provisional Application does not disclose an adapter and base functioning as a unitary piece. (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) Because the adapter of the Provisional Application is disclosed as a substantial part of the invention, it is not equivalent to having a DC port mounted on the base. (*Id.*) Also IMMATERIAL. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
| | | disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 83. | A person skilled in the art would perceive no substantive difference in inventions between the devices shown in Figure 6 of the Navid Provisional and Figure 14 of the '848 patent. Kitchen Decl. ¶ 98. | UNDISPUTEDLY INCORRECT. Figure 6 of the Provisional Application depicts a charger with adapters, but the adapters are not visible.  (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.)  Figure 14 does not include adapters.  (Dkt. No. 133-4, e.g. Figs. 11-15.)  The presence of adapters is a substantive difference. (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) Also IMMATERIAL.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best</u> |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|----------------------|
|     |                                          | <u>Evidence</u> of what it disclosed. |
| 84. | One of ordinary skill would have understood that, in any of the above configurations, the operation of the charging station would be exactly the same whether the DC ports (male mini-USB connectors) on the base were detachable from the base or were permanently attached to it. Kitchen Decl. ¶ 99. | UNDISPUTEDLY INCORRECT. The charging station with adapters disclosed in the Provisional Application would operate differently than a charging station with DC ports on the base because the controllers would connect with adapters and not directly with the base.  (Compare Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7 with Dkt. No. 133-4, e.g. Figs. 11-15.) Also IMMATERIAL.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 85. | There is nothing in the Navid Provisional that requires the use of an external adapter. | UNDISPUTEDLY INCORRECT. The invention of the Provisional Application is disclosed to include an |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Kitchen Decl. ¶ 99. | external adapter.  (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.)  Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 86. | One of ordinary skill in the art would recognize that the removable adapter is a further convenience of the disclosed invention, and not a separate and distinct invention. Kitchen Decl. ¶ 99. | UNDISPUTEDLY INCORRECT. The invention of the Provisional Application is disclosed to include an external adapter.  (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.)  Also IMMATERIAL.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 87. | The '848 Patent in suit claims priority of Provisional Application No. 60/982,364. Quigley Decl., Ex. B ('848 Patent, | UNDISPUTED for purposes of the motion. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|----------------------|
| | Face Page.) | |
| 88. | The provisional application was filed on October 24, 2007 – less than a year after the events asserted by Defendants as prior art. Quigley Decl. ¶ 4 & Ex. A (Provisional Application). | UNDISPUTED AND IMMATERIAL, as the asserted claims are not entitled to the filing date of the Provisional Application. |
| 89. | The provisional application fulfilled the statutory requirements of 35 U.S.C. § 111(b), such as a specification and at least one drawing. Quigley Decl. ¶ 5 & Ex. A; *see also* Kitchen Decl. ¶¶ 39-72 (showing that the disclosures of the provisional application supported the asserted claims). | UNDISPUTED for purposes of the motion. |
| 90. | The application for the '848 Patent was filed on March 7, 2008 – less than a year after the filing of the provisional application. Quigley Decl., Ex. B ('848 Patent, Face Page.) | UNDISPUTED AND IMMATERIAL. |
| 91. | The application for the '848 Patent | UNDISPUTEDLY INCORRECT. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
|     | fulfilled the statutory requirements for claiming priority of the provisional application under 35 U.S.C. § 119(e)(1), such as having at least one common inventor (in this case, the same single inventor) and containing a specific reference to the provisional application. Quigley Decl. ¶ 6 & Ex. A & B; *see also* Kitchen Decl. ¶¶ 39-72 (showing that the disclosures of the provisional application supported the asserted claims). | The Asserted Claims do not fulfill the statutory requirements for claiming priority of the provisional application because they rely on new matter in violation of 35 U.S.C. §§ 112, 132. (Compare Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7 with Dkt. No. 133-4, e.g. Figs. 11-15.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 92. | Nyko's expert witness, Garry Kitchen, is an engineer with in-depth experience in the field of video game hardware, video game accessories, and video game controllers. Kitchen Decl. ¶ 2-19 & Ex. 1. | UNDISPUTED for purposes of the motion and IMMATERIAL. |
| 93. | Mr. Kitchen's analysis applies the Court's construction of "supported by the base" as "Physically supported by but not necessarily directly on the base." | DISPUTED AND IMMATERIAL. The male mini-USB ports of the Provisional Application are fully supported by the adapter, which is disclosed as being attached to the |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Kitchen Decl. ¶ 65. | controller.   (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) Also IMMATERIAL.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.") Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 94. | It is not true that, as Defendants' expert Stephen Bristow opines, "The physical support for the male mini-USB connectors is provided entirely by the structure of the adapters themselves . . . ."  On the contrary, the base (Item 24) of the charging system depicted in Figure 3 of the provisional application underlies and fits around the adapters (Items 16) and thereby physically supports both them and the connectors. | UNDISPUTEDLY INCORRECT. The Provisional Application clearly itself clearly shows that the physical support for the male mini-USB connectors is provided entirely by the structure of the adapters themselves. (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Kitchen Decl. ¶ 64-72. | |
| 95. | Cambridge Dictionaries Online, supported by the Cambridge Academic Content Dictionary, presents the default (first) definition of "on" as: <br><br> *on* <br> *preposition, adverb [not gradable] (SUPPORTED BY) /ɔn, an/* <br><br> ***Definition*** <br> *› supported by or resting at the top of another thing:* <br> *There is snow on the ground.* <br> *You put pudding in the pie crust and then put whipped cream on.* <br><br> The Cambridge Dictionary definition does not require that "on" include "direct contact with." <br><br> Kitchen Decl. ¶ 41; Quigley Decl., Ex. H. | DISPUTED AND IMMATERIAL. The dictionary does not state that the first listed definition is a default definition and may require direct contact depending on the context. (Quigley Exs. H, I, J.) In this case, the proper context is the '848 patent. Objection to cited portion of the Kitchen Decl. The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 96. | Random House Webster's unabridged dictionary (2001) (first) | DISPUTED AND IMMATERIAL. The dictionary definitions may require direct contact depending on |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | definition of "on" is as follows:<br><br>**on** *[on, awn]*<br>*preposition*<br>*1. so as to be or remain supported by or suspended from: Put your package down on the table; Hang your coat on the hook.*<br>*2. so as to be attached to or unified with: Hang the picture on the wall. Paste the label on the package.*<br><br>The first Random House definition does not require that "on" include "direct contact with."  The secondary definition defines a more specific meaning for the term "on" in which an object must be "attached or unified with" another object, but this requirement is not included in the first definition.<br><br>Kitchen Decl. ¶ 42; Quigley Decl., Ex. J. | the context.  (Quigley Exs. H, I, J.) In this case, the proper context is the '848 patent.<br>Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 97. | American Heritage Dictionary | DISPUTED AND IMMATERIAL.  The dictionary definitions may |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
|  | (2006). defines "on" as follows: | require direct contact depending on the context.  (Quigley Ex. H, I, J.) In this case, the proper context is the '848 patent. |
|  |    1.a. Used to indicate position above and supported by or in contact with: The vase is on the table.  We rested on our hands and knees. | |
|  |    b. Used to indicate contact with or extent over (a surface) regardless of position: a picture on the wall; a rash on my back. | Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
|  | The default/first definition of "on" is absent of any requirement for "direct contact with," recognizing direct contact as an optional component of the meaning. | |
|  | Kitchen Decl. ¶ 43; Quigley Decl., Ex. I. | |
| 98. | The plain and ordinary meaning of the term "on" as used in day-to-day conversation is: "used to indicate position above and supported by <u>or</u> | DISPUTED AND IMMATERIAL. The meaning of "on" in day-to-day conversation is irrelevant and depends on the context.  (Quigley Exs. H, I, J.) In this case, the proper |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
|  | in contact with."<br><br>Kitchen Decl. ¶ 44. | context is the '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).<br>Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 99. | In ordinary usage, "The food is on the table" even though the food is sitting on a plate, which is on a placemat, which is then physically in contact with the table. This does not change the meaning of the word "on" in this context; i.e. "used to indicate position above and supported by **or** in contact with."<br><br>Kitchen Decl. ¶ 45. | IMMATERIAL.  The informal usage of food on the table does not inform the meaning of "DC ports on the base." *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).<br>Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 100. | In ordinary usage, "The boy is on the sidewalk" (as opposed, say, to on the grass), even if the boy is standing on his skateboard, which is between him and the sidewalk. This does not change the meaning | IMMATERIAL.  The informal usage does not inform the meaning of "DC ports on the base." *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).  The meaning of "on" depends on the context.  For example, the |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
|  | of the word "on" in this context; i.e. "used to indicate position above and supported by **or** in contact with. Kitchen Decl. ¶ 45. | boy's feet are on the skateboard, and would not be said to be on the sidewalk. Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 101. | In ordinary usage, "The couple is sitting on the beach" even if they are sitting on a blanket, which is between them and the sand.  This does not change the meaning of the word "on" in this context; i.e. "used to indicate position above and supported by or in contact with." Kitchen Decl. ¶ 45. | IMMATERIAL.  The informal usage does not inform the meaning of "DC ports on the base." *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).  The meaning of "on" depends on the context.  For example, the couple's hands are on the blanket, not on the sand. Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 102. | Both sides' experts agree that "on" is not used as a term of art in the '848 Patent. Kitchen Decl. ¶ 40-47; Quigley Decl., Ex. C at 43:12-44:15. | UNDISPUTED, however, the meaning of "DC ports on the base" must be determined in the context of the '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005.) |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
|     |                                          | Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 103. | Under the plain and ordinary meaning of the word "on," Figure 3 of the Navid Provisional shows "DC ports on the base." Kitchen Decl. ¶¶ 48 - 63. | UNDISPUTEDLY INCORRECT. The Court previously determined that "on the base," as used in the '848 patent, connotes direct contact.  (Dkt. No. 122, p. 24.)  The DC ports in the Provisional Application are not on or in direct contact with the base.  (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 104. | The plain meaning of "support" is to "hold up." Quigley Decl., Exs. D-F. | DISPUTED AND IMMATERIAL. The plain meaning of "support" depends on the context.  (Quigley Exs. D-F.)  In this case, the proper context is the '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005.) |
| 105. | Merriam-Webster defines | DISPUTED AND IMMATERIAL. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|---------------------|
|     | "support" as "to hold up or serve as a foundation or prop for" Quigley Decl., Ex. D. | The meaning of "support" depends on the context. (Quigley Exs. D-F.) In this case, the proper context is the '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005.) |
| 106. | Dictionary.com defines "support" as "to bear or hold up . . ." Quigley Decl., Ex. E. | DISPUTED AND IMMATERIAL. The meaning of "support" depends on the context. (Quigley Exs. D-F.) In this case, the proper context is the '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005.) |
| 107. | Macmillan defines "support" as "to hold the weight of someone or of something such as a building or structure so that they do not move or fall" Quigley Decl., Ex. F. | DISPUTED AND IMMATERIAL. The meaning of "support" depends on the context. (Quigley Exs. D-F.) In this case, the proper context is the '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005.) |
| 108. | "Physical" means "having material existence : perceptible esp[ecially] through the senses and subject to the laws of nature" or "characterized or produced by the forces and operations of physics." Quigley Decl., Ex. G. | UNDISPUTED AND IMMATERIAL. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| 109. | At his deposition, Defendants' expert, Stephen Bristow, claimed that he had used the Court's construction.<br><br>Quigley Decl., Ex. C at 133:7-14. | UNDISPUTED AND IMMATERIAL. |
| 110. | But Mr. Bristow's testimony showed otherwise.<br>Quigley Decl., Ex. C at 57:5-12. | DISPUTED AND IMMATERIAL. The deposition questions cited related to support for cards and persons sitting on a chair, not "male mini-USB ports supported by the base," the relevant claim language.<br>Quigley Decl., Ex. C at 57:5-12. |
| 111. | Mr. Bristow agreed that, "in [his] definition . . . of physically supported, **there must be an immediate connection** between the two items . . . . [W]hat's holding it is **the immediate thing it's attached to**."<br>Quigley Decl., Ex. C at 57:5-12 (emphasis added). | UNDISPUTED AND IMMATERIAL.  The deposition questions cited related to support for cards and persons sitting on a chair, not "male mini-USB ports supported by the base," the relevant claim language.   Quigley Decl., Ex. C at 57:5-12. |
| 112. | During his deposition, Mr. Bristow at first admitted that he was "physically supported" by his chair | UNDISPUTED AND IMMATERIAL.  The deposition questions cited related to support for |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
|  | and then claimed that, "to be precise, the chair is supporting the slacks which is supporting my thighs, to be precise." Quigley Decl., Ex. C at 57: 13-24. | cards and persons sitting on a chair, not "male mini-USB ports supported by the base," the relevant claim language.   Quigley Decl., Ex. C at 57:5-12. |
| 113. | During his deposition, Mr. Bristow admitted that in Figure 3 of the Navid Provisional the base is physically supporting the adapter. Quigley Decl., Ex. C at 143:15-18. | UNDISPUTED AND IMMATERIAL.  Figure 3 illustrates the connection between the adapter and the charging base that would not be visible when the adapter is connected to the controller as required by the invention.  (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) |
| 114. | During his deposition, Mr. Bristow admitted that in Figure 3 of the Navid Provisional the connectors are "part of the adapter." Quigley Decl., Ex. C at 66:8-10; 139:20-24. | UNDISPUTED. |
| 115. | During his deposition, Mr. Bristow denied that, in Figure 3 of the Navid Provisional, the base is supporting the male mini-USB | UNDISPUTED. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | connector that is part of the adapter. Quigley Decl., Ex. C at 134:22-135:11. | |
| 116. | During his deposition, Mr. Bristow testified that, if the base were removed from Figure 3 of the Navid Provisional, "the adapter would be floating in air . . . ." Quigley Decl., Ex. C at 134:22-135:11. | DISPUTED AND IMMATERIAL. The cited pages do not contain the testimony described or quoted. Quigley Decl., Ex. C at 134:22-135:11. |
| 117. | Later in his deposition, Mr. Bristow testified that, if the base were removed from Figure 3 of the Navid Provisional, the adapter and DC port "would fall to whatever surface was below where the disappeared charging base was . . . ." Quigley Decl., Ex. C at 170:6-16. | UNDISPUTED AND IMMATERIAL.  The DC port would remain fully supported by the adapter.  (Dkt. No. 133-42 ¶ 14; Reply Buccigross Decl. Ex. B pp. 74.) |
| 118. | Mr. Bristow's declaration does not say how he would define "on." Bristow Decl. ¶¶ 8-19. | UNDISPUTED AND IMMATERIAL. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| 119. | The preferred embodiments in the specification of the '848 Patent include the same designs with external adapters that were included in the provisional application.<br>Quigley Decl., Ex. B at Col. 11:49 - 15:11 & Figs. 16-23A. | UNDISPUTED, except as to the term "preferred."  (Dkt. No. 133-4.) |
| 120. | Defendants' attorney agrees that "[t]he court didn't construe the word "on."<br>Quigley Decl., Ex. C at 146:18. | DISPUTED AND IMMATERIAL. The Court stated: ""on' connotes direct contact, and therefore all components 'on the base' are 'supported by it,' but not all components 'supported by the base' are 'on it'."  (Dkt. No. 122, p. 24.) |
| 121. | Stephen Bristow failed to consult any dictionary definitions of "on."<br>Quigley Decl., Ex. C at 150:3-7. | UNDISPUTED AND IMMATERIAL. |
| 122. | During his deposition, Mr. Bristow admitted that he was sitting "[o]n a chair" according to common understanding," even though he was wearing slacks between his body and the chair. | UNDISPUTED AND IMMATERIAL.  The meaning of "on" in day-to-day conversation is irrelevant and depends on the context.  (Quigley Exs. H, I, J.) In this case, the proper context is the |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Quigley Decl., Ex. C at 14:16-15:1, 15:11-12. | '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). |
| 123. | Later in his deposition, Mr. Bristow denied that a can of Coke is "on" a table if there is a napkin between the can and the table. Quigley Decl., Ex. C at 17:9-20:10 | UNDISPUTED AND IMMATERIAL. The meaning of "on" depends on the context. In this case, the proper context is the '848 patent. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). |
| 124. | During his deposition, Mr. Bristow testified that "[a] press-fit is typically a much firmer version of a push-fit. [I]t's really tight . . . ." Quigley Decl., Ex. C at 69:10-14. | UNDISPUTED AND IMMATERIAL. |
| 125. | Mr. Bristow assumes that the "Background" section of the provisional application solely describes prior art. Quigley Decl., Ex. C at 103:25-104:10. | DISPUTED, in part. The testimony states the Mr. Bristow <u>believes</u> the "Background" section describes prior art. Quigley Decl., Ex. C at 103:25-104:10. |
| 126. | The Background section of the provisional application never states that it is a description of prior art, | DISPUTED, in part. The Background section of the provisional describes problems with |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | and Defendants supply no evidence that it is.  The Background simply states that there is a problem with charging stations with fragile DC ports in that the DC port may become damaged when the connection is made between it and the controller.  It does not describe the configuration of any particular charging stations. Kitchen Decl. ¶ 83. | existing technology, whether or not deemed prior art.  (Dkt. No. 133-5 ¶ 3.)  The Provisional Application discloses a solution to the problem by adding an adapter, which avoids a direct connection between the controller and a DC port on the charging station.  (*Id.* ¶¶ 3, 4, 22.) Objection to cited portion of the Kitchen Decl.  The Provisional Application itself is the <u>Best Evidence</u> of what it disclosed. |
| 127. | During his deposition, Mr. Bristow said that what is shown in Figure 3 of the Navid Provisional is "a bad idea," that "[i]t's not a recommendation," that "it looks similar in concept to the prior art," and that "the patent teaches that's not what you want to do." | Quigley Decl., Ex. C at 99:23-100:22, 113:21-115:8, 155:12-24. | UNDISPUTED. |
| 128. | The Navid Provisional expressly identifies Figure 3 as showing "a charging station . . . according to an | UNDISPUTED, except to the extent that the asserted fact suggests that Figure 3 shows a different |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | exemplary embodiment of the invention." Quigley Decl., Ex. A at ¶ 0008. | embodiment than the other figures. Rather, Figure 3 is a view of the same embodiment with the adapters disconnected to show the connection between the adapters and the base. (Dkt. No. 133-5, e.g., ¶¶ 3, 4, 22, FIGS. 1-7.) |
| 129. | Photographs of the SLA mock-up shown at the January 2007 CES suggest it was not a working version.  All four LED lights are illuminated even though two of the four charger bays are empty. Quigley Decl., Exs. L-M (color version of photograph) and K (depo. pp. 82:6-10 and 83:3-20) (authenticating photograph of SLA mock-up from CES in Jan. 2007). | UNDISPUTEDLY INCORRECT, in part and IMMATERIAL.  The witness did not know why the LED lights were lit or whether the Charge Base was a working version. Quigley Decl., Ex. K. IMMATERIAL because the use was not experimental.  (See Reply Brief § II.) |
| 130. | NYKO manufactures non-functional prototypes to have the appearance of a fully-working sample.  NYKO illuminates LED lights on prototypes for visual purposes only, even though the SLA mock-up is not functioning. | UNDISPUTED AND IMMATERIAL.  The witness did not know whether the Charge Base shown in Las Vegas was a working version.  Quigley Decl., Ex. K. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | The LED lights are not connected to anything that charges the controllers.<br><br>Quigley Decl., Ex. K (depo. pp. 80:9-82:3) | |
| 131. | The NYKO suite at the 2007 CES was not public; access to the suite was restricted to invited guests with appointments.<br><br>Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 10); Ex. K (depo. pp. 40:11-13; 49:14-50:5; 232:1-233:11.) | UNDISPUTEDLY INCORRECT. (UMF Nos. 2, 3, 5, and supporting evidence.) |
| 132. | NYKO's Charge Base was a new product for NYKO.<br><br>Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 204:1-4) | UNDISPUTED for purposes of the motion. |
| 133. | The SLA mock-up of the Charge Base product shown at CES in January 2007 was received by NYKO in or about the last week of December 2006. | UNDISPUTED for purposes of the motion. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) | |
| 134. | The SLA mock-up was being tested through January 2007 and into May of 2007. Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) | UNDISPUTEDLY INCORRECT. The Charge Base was in public use for commercial purposes and not in experimental use as of January 2007. (UMF Nos. 2, 3, 5, and supporting evidence; see Reply Brief § II.) Objection that the cited unverified interrogatory responses lack foundation based on personal knowledge and are inadmissible hearsay. |
| 135. | There is no clear and convincing evidence that the mock up itself was a working prototype that worked for its intended purpose. Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 70:1-71:21; 239:22-240:6). | DISPUTED, in part, and IMMATERIAL. The Charge Base was in public use for commercial purposes and not in experimental use as of January 2007. (UMF Nos. 2, 3, 5, and supporting evidence; see Reply Brief § II.) The Charge Base worked for the claimed purpose of attaching controllers to the charging base for charging. (*Id.*) |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | | Objection that the cited unverified interrogatory responses and deposition testimony lack foundation based on personal knowledge and are inadmissible |
| 136. | A further prototype was received by NYKO in or about January 18, 2007, which was subject to further testing. Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 77:22-25). | DISPUTED, in part, and IMMATERIAL.  The Charge Base shown at the Las Vegas hotel suite was in public use for commercial purposes and not in experimental use as of January 2007.  (UMF Nos. 2, 3, 5, and supporting evidence; see Reply Brief § II.) Objection that the cited unverified interrogatory responses and deposition testimony lack foundation based on personal knowledge and are inadmissible |
| 137. | Additional changes were made to the product between January 18, 2007 and May 2007, when final consumer products were received. Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. | DISPUTED, in part, and IMMATERIAL.  The Charge Base shown at the Las Vegas hotel suite was in public use for commercial purposes and not in experimental use as of January 2007.  (UMF Nos. 2, 3, 5, and supporting evidence; see |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|-----|------------------------------------------|----------------------|
|     | 9.) | Reply Brief § II.) Objection that the cited unverified interrogatory responses and deposition testimony lack foundation based on personal knowledge and are inadmissible Objection that the cited evidence is irrelevant as it does not relate to changes to the patented features. |
| 138. | As of March 2007, the design was not finalized, the demand was not ascertained and the cost of the product was not fixed. Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) | DISPUTED, in part, and IMMATERIAL.  The Charge Base shown at the Las Vegas hotel suite was in public use for commercial purposes and not in experimental use as of January 2007.  (UMF Nos. 2, 3, 5, and supporting evidence; see Reply Brief § II.) Objection that the cited unverified interrogatory responses and deposition testimony lack foundation based on personal knowledge and are inadmissible Objection that the cited evidence is irrelevant as it does not relate to changes to the patented features. |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| 139. | The price of the product was not fixed by March 2007 and was subject to change per the dealer price sheets.<br><br>Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 208:12-15; 253:20-254:9) | UNDISPUTEDLY INCORRECT. The suggested retail price was fixed at $39.99 from January 8, 2007 through at least July 2007.  (UMF Nos. 1, 6-11 and supporting evidence.)<br><br>Objection.  The deposition testimony cited is from a Nyko marketing employee who lacks personal knowledge of pricing and sales.  See DEFENDANTS' EVIDENTIARY OBJECTIONS TO NYKO'S STATEMENT OF FACTS and Reply Buccigross Decl. Ex. A, filed concurrently herewith |
| 140. | Any requests made by vendors for the product prior to at least April 2007 were in the category of pre-orders that would only be fulfilled in the event NYKO deemed that the design could be finalized and the product could be manufactured in a cost effective manner.<br><br>Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of | UNDISPUTEDLY INCORRECT. (UMF Nos. 6-11, Buccigross Exs. 18-25.)  The relevant orders are "Purchase Orders" and not a single document references "Sales Orders". (*Id.*)  The deposition testimony cited is from a Nyko marketing employee who lacks personal knowledge of sales processes and documents.  See DEFENDANTS' EVIDENTIARY |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | Interrogatories to NYKO, Rog. No. 9); Ex. K (depo. pp. 199:8-200:17; 203:8-13, 19-204:16; 222:9-223:3). | OBJECTIONS TO NYKO'S STATEMENT OF FACTS and Reply Buccigross Decl. Ex. A, filed concurrently herewith. |
| 141. | NYKO shipped no Charge Base product for any of the initial requests prior to June 2007, and reinvoiced the requests under new invoices for payment and shipment in June 2007, only after NYKO had finalized the product in terms of pricing and commercial design. Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) | DISPUTED, in part, and IMMATERIAL. Because the sales took place before the critical date (see UMF Nos. 6-11), the "fact that delivery was set for dates after the critical date is irrelevant to the finding of a commercial offer to sell." *STX, LLC v. Brine, Inc.,* 211 F.3d 588, 590 (Fed. Cir. 2000). The products were shipped pursuant to the agreements formed before March 7, 2007, when Nyko confirmed purchase orders received from customers. (UMF Nos. 6-11.) The suggested retail price was fixed at $39.99 from January 8, 2007 through at least July 2007. (UMF Nos. 1, 6-11 and supporting evidence.) The cited unverified interrogatory |

| No. | NYKO's Additional Genuine Material Facts | Defendants' Response |
|---|---|---|
| | | response is inadmissible and, in any event, does not claim changes to the <u>invention</u> claimed in the Asserted Claims.  (Quigley Decl., Ex. O.) |
| 142. | It is common in the industry for products to be announced.  In cases where the demand for the announced product is weak, or the cost to manufacture the product is too high to support a reasonable manufacturer's suggested retail price, the product is never released.  Quigley Decl., Ex. O (NYKO's Responses to EBC's First Set of Interrogatories to NYKO, Rog. No. 9.) | DISPUTED, in part, and IMMATERIAL.  The cited unverified interrogatory response is inadmissible and, in any event, does not establish experimental use or that the invention was not ready for patenting.  (Quigley Decl., Ex. O; UMF Nos. 2, 3, 5, and supporting evidence; see Reply Brief § II.) |

1   DATED:  September 10, 2013

2                                    Respectfully submitted,

3                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4

5                          By      /s/Steven M. Hanle

6                                    DANIEL Y. YANNUZZI
                                     STEVEN M. HANLE
7                                    GRAHAM (GRAY) M. BUCCIGROSS

8                                    Attorneys for Defendants,
                                     Performance Designed Products LLC,
9                                    Eveready Battery Co., and Energizer Holdings,
                                     Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:410037381                              -62-