ART HASAN, CA Bar No. 167323
art.hasan@cph.com
G. WARREN BLEEKER, CA Bar No. 210834
warren.bleeker@cph.com
KATHERINE L. QUIGLEY, CA Bar No. 258212
katherine.quigley@cph.com
CHRISTIE, PARKER & HALE, LLP
655 North Central Avenue, Suite 2300
Glendale, California 91203-1445
Telephone: (626) 795-9900
Facsimile:  (626) 577-8800

Attorneys for Plaintiff and Counterdefendant,
NYKO Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ENERGIZER HOLDINGS, INC., a Missouri corporation, EVEREADY BATTERY COMPANY, INC., a Delaware corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California limited liability company,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV12-03001 GAF (VBKx)<br><br>**NYKO'S *EX PARTE* APPLICATION TO STRIKE NEW ARGUMENTS RAISED FOR THE FIRST TIME IN DEFENDANTS' SUMMARY JUDGMENT REPLY BRIEF**<br><br>Summary Judgment Hearing<br>Date: September 23, 2013<br>Time: 9:30 A.M.<br>Courtroom: 740<br><br>Hon. Gary Allen Feess |

## I. INTRODUCTION

Defendants improperly ambushed NYKO by asserting a "new matter" theory in their reply brief, without prior notice. Raising new arguments for the first time in a reply brief is considered "sandbagging." *Wright v. Kaiser Found. Hosps.*, No. C 12-00663 WHA, 2012 U.S. Dist. LEXIS 132459 *6 (N.D. Cal. Sept. 17, 2012). Such new arguments should be "stricken from their reply brief," because the opposing party "has not had an opportunity to respond." *Id.*; *see Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009) (Arguments that are "not specifically and distinctly argued in [the] opening brief" are waived.) (internal citations omitted).

The harm done by this ambush is particularly great because Defendants have misconstrued and mischaracterized the "new matter" decisions cited in their reply. In reality, whether there is "new matter" in the patent is legally irrelevant to Defendants' motion. For the reasons, previously explained in NYKO's opposition papers, the provisional application disclosed the elements of the asserted patent claims. That is all that is required. At the very least, there are clear triable issues of fact concerning the priority of NYKO's asserted patent claims, which requires that the Court deny Defendants' motion.

NYKO therefore requests that Defendants' "new matter" argument be stricken and not be considered by the Court.

## II. DEFENDANTS' PREVIOUSLY-UNDISCLOSED "NEW MATTER" ARGUMENT SHOULD BE STRICKEN AND NOT CONSIDERED.

### A. Sandbagging an Opponent by Making New Arguments in Reply Papers Is Prohibited.

Arguments that are "not specifically and distinctly argued in [the] opening brief" are waived. *Dream Games of Ariz., Inc.*, 561 F.3d at 995 (9th Cir. 2009) (internal citations omitted); *see Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (noting that a court will only review issues that are

CHRISTIE, PARKER & HALE, LLP

specifically and distinctly argued in a party's opening brief). "Such sandbagging is unfair to the other side who were not afforded a meaningful opportunity to respond." *Vargas v. Wells Fargo Bank, N.A.*, No. C12-02008 WHA, 2012 U.S. Dist. LEXIS 165204, *6-7 (N.D. Cal. Nov. 19, 2012). Defendants' "sandbagging should not be tolerated," and their arguments on this issue should be "stricken from their reply brief." *Wright v. Kaiser Found. Hosps.*, 2012 U.S. Dist. LEXIS 132459 at *6 (N.D. Cal. Sept. 17, 2012) (striking new arguments made in reply brief because opposing party "has not had an opportunity to respond.")

### B. Defendants Made a New Argument for the First Time in Their Reply Brief.

Nowhere in Defendants moving papers did Defendants make any argument that NYKO's asserted claims are not entitled to priority of the provisional application because the asserted claims contain "new matter." In fact, nowhere in any of Defendants' prior invalidity contentions, nowhere in Defendants' prior interrogatory responses regarding its invalidity contentions, and nowhere in Defendants' expert report on invalidity, did Defendants ever disclose this purported basis for invalidity. Certainly, Defendants did not rely on that argument in their moving papers. Instead, they raised it for the first time in the reply papers that they filed on September 10. Accordingly, NYKO requests that the Court strike page 14, line 24 through page 16, line 20 of the reply brief.

### C. Nyko Has Been Prejudiced by Lack of Opportunity to Respond.

Having had no notice of the "new matter" argument, NYKO had no reason or opportunity to address the issue in the opposition papers that it filed the previous week. As a result, NYKO has not been able to point out the serious deficiencies in Defendants' new argument.

For example, Defendants misleadingly and selectively describe *Chiron Corp. v. Genentech*, 363 F. 3d 1247 (Fed. Cir. 2004), *cited in* Reply Mem. at 15:5-20. Contrary to Defendants' description, that decision did not turn on a

"newer definition." (*Id.* at 15:14-15). On the contrary, the court never even decided whether there had been a change in definition. *See Chiron*, 363 F.3d at 1257-58 (reaching decision "without reaching this complex claim construction question").

Contrary to the impression Defendants are apparently trying to create, the specification of a patent or application need not provide a disclosure of each and every embodiment to satisfy the written description requirement. *See, e.g., Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003). Far from imposing such a requirement, *Chiron* applied the stricter rules concerning disclosures of "genuses" and "species" that are necessary in highly complex and unpredictable biological arts – technologies unlike those in this case. In *Chiron*, the issue was whether to treat patent applications filed in the 1980s, which disclosed the creation of monoclonal antibodies using the then-current "hybridoma" technology, as also encompassing later and much more sophisticated "chimeric" technologies using "genetic engineering including recombinant DNA techniques." *Chiron* 363 F.3d at 1250-51. The effect of according such a broad scope to the written descriptions in the earlier applications would have been to let Chiron patent a major technological breakthrough effective as of a date before that breakthrough really occurred. *See id.* at 1251, 1255 ("Because **chimeric antibody technology did not even exist** at the time of the 1984 filing, the record conclusively supports that the Chiron scientists did not possess and disclose this technology in the February 1984 filing." (emphasis added)).

Cases wrestling with such cutting-edge issues on the frontiers of unpredictable technology do nothing to change the clear principles that find straightforward application in this case. By disclosing in its provisional application one or more embodiments of devices covered by the asserted claims, NYKO adequately supported those claims and fulfilled the written description

requirement in the context of relatively straightforward technologies like the one involved here.

        The Federal Circuit has repeatedly held that the written description need not describe every possible embodiment to satisfy the written description requirement. *Cordis Corp.*, 339 F.3d at 1365 ("As our case law makes clear . . . '[a]n applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention.'" (*quoting Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001))). "A specification may, within the meaning of 35 U.S.C. § 112 para. 1, contain a written description of a broadly claimed invention without describing all species that [the] claim encompasses." *Utter v. Hiraga*, 845 F.2d 993, 998 (Fed. Cir. 1988). Among other things, this understanding of the written description requirement maintains consistency with other basic rules of patent law. "It is a familiar axiom of patent law . . . that the scope of the claims is not limited to the preferred embodiments described in the specification." *Fuji Photo Film Co., Ltd. v. ITC*, 386 F.3d 1095, 1106 (Fed. Cir. 2004), *cited in Bragel Int'l, Inc. v. Telebrands Corp.*, CV05-01141-MMM-VBKX, 2007 WL 5685084, *14 (C.D. Cal. Jan. 17, 2007). To require that every possible embodiment be included in the specification would not only be impossible as a practical matter but would also limit the claims to the embodiments disclosed in the specification, contrary to established Federal Circuit case law. *Id.* (*see also Rexnord Corp.*, 274 F.3d at 1344 ("[I]f structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment." (*citing SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed.Cir.1985) (en banc))).

        Defendants also misleadingly characterize the other decision they cite, by a Virginia District Court. *See* Reply Mem. at 15:21-16:6 (citing *Hamilton Beach*

*Brands, Inc. v. Sunbeam Prods.*, Inc., 2012 U.S. Dist. LEXIS 97923 (E.D. Va. July 13, 2012), *aff'd on other grounds*, 2013 U.S. App. LEXIS 16797 (Fed. Cir. Aug. 14, 2013)). In reality, *Hamilton Beach* was merely a clear case where an earlier patent had not disclosed *any* embodiment practicing the claims of a later patent. The later patent "claim[ed] a slow cooker with 'an over-the-center clip having a hook and a catch,' where 'one of the hook and catch [is] mounted on one of the lid and side wall of the housing and the other of the hook and catch [is] mounted on the other of the lid and side wall of the housing . . . .'" *Hamilton Beach*, 2012 U.S. Dist. LEXIS 97923 at *31. But the earlier patent did not describe any such over-the-center clip having a hook and a catch. Instead, it did not describe a "catch" at all, and it "only had clips mounted to the housing's side wall." *Id.* at *25. The court commented, "The notion that the '831 patent contemplated 'clips' having a 'catch,' and that it further contemplated that the 'catch' might be mounted to the side wall, then, strains credulity." *Id.* at *32-33. Hamilton Beach's priority claim failed merely because the earlier parent had not disclosed any embodiment fulfilling the claims of the later patent.[1]

      Unlike the highly specialized chimeric antibody claim limitations in *Chiron* or the non-existent affirmatively claimed "clip" in *Hamilton Beach*, here the term "on" has a plain and ordinary meaning that Defendants must restrict to "directly on" to support their arguments. Defendants' position is without merit. A limiting construction is only proper where there is a clear and unambiguous disavowal of claim scope. *Philips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005). "General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone." *Johnson Worldwide v. Zebco*,

---

[1] *Hamilton Beach* unsuccessfully tried to camouflage this deficiency by inserting a new definition of "clip" into the later patent, but this new definition could not retroactively expand the original disclosure. *See id.* at *33-35.

175 F.3d 985, 989 (Fed. Cir. 1999), citing *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 865-66 (Fed. Cir. 1997) (unmodified term "reciprocating" not limited to linear reciprocation); *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 621-22 (Fed. Cir. 1995) (unmodified term "associating" not limited to explicit association); *and Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988) (unmodified term "plasticizer" given full range of ordinary and accustomed meaning). Further, phrases in the Navid Provisional such as "in one embodiment" or "in an exemplary embodiment" are not restrictive, but are meant to convey that the invention can be practiced in various ways. *See Rexnord Corp.*, 274 F.3d at 1345.

*Chiron* and *Hamilton Beach* shed no light on the issues in this case and – properly understood – provides no support for Defendants' summary judgment motion.

### III. *EX PARTE* RELIEF IS WARRANTED.

*Ex parte* relief is justified where the moving party can show (1) that it will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures, and (2) that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

The hearing date on Defendants' summary judgment motion is September 23, 2013. It is not possible for a regularly-scheduled motion to strike to be heard by September 23, 2013. The only fault on that score lies with Defendants. Defendants' sandbagging in their reply brief made it impossible for NYKO to address Defendants' new legal arguments in NYKO's opposition papers. Had Defendants properly included this argument in its opening brief, NYKO could have briefed the issue prior to the hearing. This is a dispositive motion. NYKO would be highly prejudiced if the Court rewards Defendants' gamesmanship by

CHRISTIE, PARKER & HALE, LLP

considering Defendants' new legal positions without affording NYKO any opportunity to brief those issues.

## IV. CONCLUSION

NYKO requests that Defendants' "new matter" argument be stricken and not be considered by the Court.[2]

DATED: September 17, 2013

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By /s/
Katherine L. Quigley

Attorneys for Plaintiff and Counterdefendant,
NYKO Technologies, Inc.

---

[2] Pursuant to L. R. 7-19, the contact information for counsel for the Defendants is as follows:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Daniel N. Yannuzzi (dyannuzzi@sheppardmullin.com)
Gray M. BUCCIGROSS (gbuccigross@sheppardmullin.com)
Matthew M. Mueller (mmueller@sheppard mullin.com)
12275 El Camino Real, Suite 200
San Diego, California 92130-2006

Telephone: 858.720.8900; Facsimile: 858.509.3691

STEVEN M. HANLE (shanle@sheppardmullin.com)
650 Town Center Drive, 4th Fl.
Costa Mesa, CA 92626
Telephone: 714.513.5100; Facsimile: 714.513.5130