**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NYKO TECHNOLOGIES, INC., a )
California Corporation, )
                  )
       Plaintiff, )
                  )
       v. )  NO. CV12-03001-GAF-VBK
                  )
ENERGIZER HOLDINGS, INC. a )
Missouri Corporation, EVEREADY )
BATTERY COMPANY, INC., a )
Delaware Corporation, and )
PERFORMANCE DESIGNED PRODUCTS )
LLC, a California Limited )
Liability Company, )
                  )
       Defendants. )
_____ )

(THIS TRANSCRIPT CONTAINS CONFIDENTIAL MATERIAL.)

DEPOSITION OF AMIR NAVID

January 30, 2013

Shana K. Clifford, CSR No. 10154

⊛ 353104

40 YEARS

BARKLEY
Court Reporters
barkley.com

(310) 207-8000 Los Angeles  (415) 433-5777 San Francisco  (949) 955-0400 Irvine  (858) 455-5444 San Diego
(916) 922-5777 Sacramento  (408) 885-0550 San Jose  (760) 322-2240 Palm Springs  (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills  (212) 808-8500 New York City  (347) 821-4611 Brooklyn  (518) 490-1910 Albany
(516) 277-9494 Garden City  (914) 510-9110 White Plains  (312) 379-5566 Chicago  (702) 366-0500 Las Vegas
+33 1 70 72 65 26 Paris   +971 4 8137744 Dubai   +852 3693 1522 Hong Kong

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4   NYKO TECHNOLOGIES, INC., a        )
    California Corporation,           )
5                                     )
                   Plaintiff,         )
6                                     )
                   v.                 ) NO. CV12-03001-GAF-VBK
7                                     )
    ENERGIZER HOLDINGS, INC. a        )
8   Missouri Corporation, EVEREADY    )
    BATTERY COMPANY, INC., a          )
9   Delaware Corporation, and         )
    PERFORMANCE DESIGNED PRODUCTS     )
10  LLC, a California Limited         )
    Liability Company,                )
11                                    )
                   Defendants.        )
12  _____    )

13

14

15      (THIS TRANSCRIPT CONTAINS CONFIDENTIAL MATERIAL.)

16

17          Videotaped Deposition of AMIR NAVID, taken

18          on behalf of the defendants, at 655 North

19          Central Avenue, Suite 2300, Glendale,

20          California, commencing at 9:19 a.m.,

21          Wednesday, January 30, 2013, before Shana K.

22          Clifford, RPR, Certified Shorthand Reporter

23          No. 10154.

24

25

2

AMIR NAVID

BARKLEY
Court Reporters

```
 1    APPEARANCES OF COUNSEL:

 2    For Plaintiff:

 3            S. ART HASAN, ESQ.
              KATHERINE L. QUIGLEY, ESQ.
 4            CHRISTIE PARKER & HALE LLP
              655 North Central Avenue
 5            Suite 2300
              Glendale, California 91203
 6            626-795-9900
              art.hasan@cph.com
 7            katherine.quigley@cph.com

 8    For Defendants:

 9            STEVEN HANLE, ESQ.
              SHEPPARD MULLIN RICHTER & HAMPTON LLP
10            650 Town Center Drive
              4th Floor
11            Costa Mesa, California 92626
              714-513-5100
12            shanle@sheppardmullin.com

13            GRAY M. BUCCIGROSS, ESQ.
              SHEPPARD MULLIN RICHTER & HAMPTON LLP
14            12275 El Camino Drive
              Suite 200
15            San Diego, California 92130
              858-720-8900
16            gbuccigross@sheppardmullin.com

17    Also Present:

18            JOHN HANK, videographer

19

20

21

22

23

24

25


                        3
```

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-3

09:26  1    president of research and development.  Is -- is

2    there a distinction between product development and

3    research and development?

4         A    No.  I would say it's the same.

09:26  5         Q    Do you have a business card with you?

6         A    I don't, actually.

7         Q    Okay.

8         A    We can provide one to you, though, sure.

9         Q    Thank you.

09:26  10        Do you recall testifying in that Nintendo

11   versus Nyko deposition that sometimes patent get

12   issued -- patents get issued that should not have

13   been issued?

14        MR. HASAN:  Objection as to form.

09:26  15        THE DEPONENT:  I -- I don't recall that.

16        Q    BY MR. HANLE:  Okay.  Is that -- is that a

17   belief that you hold, that sometimes patents get

18   issued that should not have been issued?

19        MR. HASAN:  Objection as to form.

09:27  20        THE DEPONENT:  I'm sure it's possible,

21   but, you know, obviously there's people who have

22   titles and are enabled to do particular jobs.  And

23   there's a reason why they're given that title and

24   that purpose.  So, you know, it's not for me to

09:27  25   judge.  And it would be a generalization to say,

15

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-4

```
09:27    1   "Well, sometimes a patent is valid.  Sometimes it's
         2   invalid or should have been issued or not issued."
         3   That's not my job.  I make products.  It's not my
         4   decision whether or not something is valid or not.
09:27    5   So obviously, there's people who do that for a
         6   living, whose business it is to decide whether or
         7   not something is valid and are appointed to do that
         8   particular job.  So anything that I would think
         9   would be just my own opinion and -- yeah.
09:27   10       Q    BY MR. HANLE:  Well, do you have an
        11   opinion that sometimes patents are issued that
        12   should not have been issued?
        13       A    Depends on the particular case.  I mean,
        14   is there a particular case that you think -- that
09:28   15   you would want me to give my opinion on or --
        16       Q    I'm just asking you if you believe there
        17   are some cases where patents are issued that should
        18   not have been issued.
        19       MR. HASAN:  Objection as to form.
09:28   20       THE DEPONENT:  Yeah.  I mean, truthfully,
        21   I would make -- be making a general comment, so I --
        22   I don't know.  I mean, I wouldn't want to suppose
        23   that someone that's been given the job to issue
        24   patents and to examine inventions -- whether or not,
09:28   25   you know, they're doing their job properly.  I mean,
```

16

09:28  1    it's -- it's on a general basis.  I mean, if you

2    want to talk about a specific patent that you'd like

3    my opinion on, I can mention that.  But I don't want

4    to come out and openly criticize the entire patent

09:28  5    process based on a general comment.

6        Q    BY MR. HANLE:  Do you recall testifying in

7    the Nintendo versus Nyko case that the patent at

8    issue in that case, Nintendo's patent, should not

9    have been issued?

09:29  10       A    May have been.  There was definitely some

11   prior art that we were aware of that we showed

12   during that -- that case.  So in that particular

13   case I believe there was prior art.  There -- you

14   know, we had physical samples of this prior art that

09:29  15   we showed.  So in that particular case, you know,

16   that -- that was my belief because we had this prior

17   art physically, samples of it.  So yes, it's --

18   during that process I may have claimed that on that

19   particular --

09:29  20       Q    And so do you still believe that that

21   patent -- that Nintendo patent that was at issue in

22   that case should not have been issued?

23            MR. HASAN:  Objection as to form.  Asked

24   and answered.

09:29  25            THE DEPONENT:  You know --

17

AMIR NAVID

**BARKLEY**
Court Reporters

Exhibit A
Page A-6

09:29    1       Q    BY MR. HANLE: You can answer yes or no if

2   you can, please.

3       A    Yes or no, do I think it was -- I mean,

4   you know, we've settled that case. And I'm not --

09:29    5       Q    My question --

6       A    -- a lawyer or --

7       Q    My question -- and try and focus on the

8   question --

9       A    Okay.

09:29   10       Q    -- and answer the question.

11       MR. HASAN: Objection: Argumentative.

12       Q    BY MR. HANLE: And so my question is do

13   you still believe that the patent that was issued in

14   that case should not have been issued? Yes or no?

09:30   15       MR. HASAN: Objection as to form.

16       THE DEPONENT: You know, I don't really

17   have an opinion on it. It's something that I put

18   behind me. Whether or not, you know -- I'm not a

19   lawyer. I'm not here to pretend to know whether or

09:30   20   not something was valid or not. You know, we

21   presented our case in that particular case, and, you

22   know, we've moved on from that. And whether or not,

23   you know, I believed it was a valid patent or not --

24   you know, based on some of the information we had, I

09:30   25   had some reluctance to believe that -- that it

18

AMIR NAVID

BARKLEY
Court Reporters

09:30  1   should have been issued, but, you know, I don't

2   really have a set opinion on it at this point.

3        Q    BY MR. HANLE:  And do you recall

4   testifying in that case, then, when a patent is

09:30  5   issued with no merit, it causes a lot of problems

6   and stifles technology and growth?

7             MR. HASAN:  Objection as to form.  And --

8             THE DEPONENT:  You know, do I specifically

9   remember saying that?  I don't recall.

09:31  10       Q    BY MR. HANLE:  Do you have that belief

11  today?  Yes or no?

12            MR. HASAN:  Objection as to form.

13            THE DEPONENT:  That patents can stifle

14  growth?  Well, I believe that patents have a

09:31  15  purpose, because if -- if there was no patents, then

16  we'd have a world of chaos; right?  So, you know, I

17  believe in the importance of innovation and concepts

18  and original thought and ideas.  And I believe that

19  those should be protected.  So I do believe in the

09:31  20  patent process, if that's what you're asking me.

21       Q    BY MR. HANLE:  That's not what I asked.  I

22  can repeat the question.

23       A    Sure.

24       Q    Do you still believe that when patents are

09:31  25  issued with no merit --

19

AMIR NAVID

BARKLEY
Court Reporters

09:31  1          A      Mm-hmm.

2          Q      -- that that causes problems and stifles

3     technology and growth?

4              MR. HASAN:  Objection as to form.  Asked

09:31  5     and answered.

6              THE DEPONENT:  Do I -- can you repeat that

7     again for me, please?

8              MR. HANLE:  You can read it back, please.

9              (The record was read as follows:

09:32 10              "Q    Do you still believe that when

11              patents are issued with no merit -- "

12              ///

13              " -- that that causes problems and

14              stifles technology and growth?")

09:32 15              MR. HASAN:  Same objection.

16              THE DEPONENT:  A patent with no merit.

17     Well, I don't believe a patent that has no merit

18     should be issued.  I mean, that's obvious.  But as

19     far as stifling growth or innovation, you know, if a

09:32 20     patent goes through the process and is approved,

21     obviously someone who is skilled at that has

22     approved it and sees, you know, the novelty and the

23     uniqueness of that design.  And I believe that

24     should --

09:32 25              It's not for me to decide whether or not,

20

AMIR NAVID

**BARKLEY**
Court Reporters

Exhibit A
Page A-9

09:32  1    you know -- what the patent office should do or

2    should not do, you know.  I'm not an expert in

3    issuing patents or approving patent applications.

4           So obviously, if a patent has no merit, it

09:33  5    shouldn't be issued.  But that's just my personal

6    opinion.

7       Q    BY MR. HANLE:  Yeah.  And the question is

8    when it's issued with no merit, do you believe it

9    stifles technology and growth?

09:33  10          MR. HASAN:  Objection:  Argumentative.

11   Asked and answered.

12      Q    BY MR. HANLE:  Yes or no?

13          MR. HASAN:  Same objection.

14          THE DEPONENT:  I don't -- for me --

09:33  15      Q    BY MR. HANLE:  It's a yes-or-no question,

16   just so you understand the question.

17          MR. HASAN:  Argumentative.  Let him answer

18   the question.

19          MR. HANLE:  Here's the --

09:33  20          MR. HASAN:  It's argumentative.

21      Q    BY MR. HANLE:  Here's the issue --

22      A    Mm-hmm.

23      Q    -- is -- is I've got a limited number of

24   hours --

09:33  25      A    Mm-hmm.

21

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-10

09:33   1        Q      -- to take the deposition today.

        2        A      I understand that.

        3        Q      Okay.  It's very clear -- and I think

        4     you're trying to be helpful, and I appreciate that.

09:33   5        A      Uh-huh.

        6        Q      But we really need -- it really needs to

        7     be a question and answer.  So rather than stating

        8     your opinion about things --

        9        A      But this is about my opinion.

09:33  10        Q      -- not related to the question, I'd

       11     like --

       12               (Admonition by the deposition officer to

       13               speak one at a time.)

       14        Q      BY MR. HANLE:  Don't argue with me.

09:33  15               MR. HASAN:  Okay.  You're arguing, sir.

       16        Q      BY MR. HANLE:  Just -- I would like you to

       17     answer the question that's posed.  Otherwise, we're

       18     going to have to go longer than seven hours and --

       19     even if I have to get the judge to --

09:33  20        A      Sir, I'm trying to be helpful here.

       21        Q      Just -- just wait.  It's all good.  It's

       22     all good.

       23               MR. HASAN:  Mr. Hanle --

       24        Q      BY MR. HANLE:  So --

09:33  25               MR. HASAN:  Mr. Hanle, don't argue with

                                    22

BARKLEY
Court Reporters

09:34  1  the witness.  It's unprofessional.  It violates the

2  civility guidelines.

3      Answer the question how you see fit to

4  give your best answer.

09:34  5      Q   BY MR. HANLE:  So the question is when a

6  patent is issued with no merit, do you still believe

7  that it causes problems, stifles technology and

8  growth?

9      MR. HASAN:  Asked and answered.  Objection

09:34  10  as to form.

11      THE DEPONENT:  I believe that -- that a

12  patent that has no grounds shouldn't be issued.  So

13  I just don't believe that question is a valid

14  question.  I don't believe it should be a patent.

09:34  15  If it went through the process and it was approved,

16  it's not my job, right, to come in and say whether

17  or not it does -- and even --

18      You know, I have no idea whether or not

19  what -- what trickle-down effect or what domino

09:34  20  effect it would cause for something.  I mean, that

21  would be speculation, you know, for me to say that

22  if a particular patent is issued and it comes out,

23  it's going to stifle growth.  It may or it may not.

24  I don't think it's a yes-or-no question.  I think a

09:35  25  patent without merit shouldn't be issued.

23

AMIR NAVID

BARKLEY
Court Reporters

09:35  1          Q     BY MR. HANLE:  Do you recall testifying

       2    that the patent office is very busy in the Nintendo

       3    versus Nyko deposition?

       4                MR. HASAN:  Objection as to form.

09:35  5                THE DEPONENT:  I don't recall it, but it's

       6    possible that I may have said that.

       7          Q     BY MR. HANLE:  Do you recall testifying

       8    that the patent office relies on the person

       9    submitting a patent application to do the due

09:35  10   diligence and disclose prior art?

       11         A     I don't recall that, but it's possible.

       12         Q     Is it -- is it your understanding that

       13   the --

       14               (Admonition by the deposition officer to

09:35  15               slow down.)

       16               MR. HANLE:  Sure.

       17         Q     Is it your understanding that the

       18   person -- excuse me -- that the patent office --

       19         A     Mm-hmm.

09:35  20         Q     -- relies on the person submitting a

       21   patent application to do the due diligence and

       22   disclose prior art?

       23               MR. HASAN:  Objection as to form.

       24               THE DEPONENT:  Not necessarily.  I believe

09:35  25   that people are given a position because they have

                                    24

09:35   1   particular experience in that field and should have

2   knowledge of what's come before it, what's -- what's

3   new and what's not new, what's novel and what's not

4   novel.  So for me to -- I -- I really -- I think

09:36   5   I've answered the question.  It's --

6           Q     BY MR. HANLE:  Okay.  So you don't believe

7   the patent office relies on the person submitting a

8   patent application --

9           A     Solely?

09:36   10          Q     -- to do due diligence and --

11                 (Admonition by the deposition officer to

12                 speak one at a time.)

13          Q     BY MR. HANLE:  So it's not your belief

14   that the patent office relies on the person

09:36   15   submitting a patent application to do the due

16   diligence to disclose prior art?

17                 MR. HASAN:  Objection:  Argumentative.

18   Objection as to form.

19                 THE DEPONENT:  So, sir --

09:36   20                 MR. HASAN:  Asked and answered.

21                 THE DEPONENT:  I've answered the question.

22   I believe that a patent officer has particular

23   experience.  I don't know the particulars of --

24   I'm -- this is not my expertise, to determine

09:36   25   whether or not the patent office is solely depending

25

AMIR NAVID

BARKLEY
Court Reporters

09:36    1    on what's been given to them or their knowledge of

         2    the field and why they're in the role that they're

         3    in.  So --

         4         Q    BY MR. HANLE:  Do you have an

09:37    5    understanding that, as a patent applicant, you have

         6    a duty to disclose relative prior art to the patent

         7    office?

         8         A    I would imagine so.  I don't do the

         9    patenting process myself.  Obviously, that's handled

09:37   10    by our legal team.  I make products.

        11         Q    Do you recall testifying in the Nintendo

        12    versus Nyko deposition that a patent can issue by

        13    mistake or deception when the person submitting the

        14    application does not disclose prior art?

09:37   15         A    I don't --

        16              MR. HASAN:  Objection as to form.

        17         Q    BY MR. HANLE:  Go ahead.

        18         A    I don't recall that.

        19         Q    Is that your belief, that a patent can

09:37   20    issue by mistake or deception when the person

        21    submitting the application does not disclose prior

        22    art?

        23              MR. HASAN:  Objection as to form.

        24              THE DEPONENT:  I -- I believe there's

09:37   25    people who are appointed certain roles; and, you

                                    26

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-15

09:37  1    know, it's their job to do their due diligence to

2    make sure that something that's being issued --

3    something as important as that, that, you know --

4    you know, I'm not a patent expert.  So it's not for

09:38  5    me to say, you know -- I don't know the specifics

6    of, you know, what -- what's taken into account.  So

7    I don't want to make a general comment.

8         Q    BY MR. HANLE:  But you're aware that

9    patents can issue by mistake if there's a failure to

09:38  10   disclose prior art?

11             MR. HASAN:  Objection as to form.

12             THE DEPONENT:  No, I don't necessarily

13   know that.  I expect that, you know, the rules of

14   the patent office and the rules of this country are

09:38  15   set there with a purpose to protect people and

16   protect novel innovation and -- you know, it's the

17   patent office's duty to figure out what's right and

18   what's not.  It's not for me to speculate.

19             I make toys.  You know, that's what I do.

09:38  20   I design toys.  I try to make innovative products.

21   And my specialty is not patents.  I don't file the

22   patents myself.  Obviously, we have a legal team

23   that does that.

24        Q    BY MR. HANLE:  Are you aware that patents

09:39  25   can be rendered unenforceable if the person

27

AMIR NAVID

**BARKLEY**
Court Reporters

09:39 1    submitting the application deceives the patent

2    office in connection with the application?

3            MR. HASAN:  Objection as to form.

4            THE DEPONENT:  Again, I'm not a patent

09:39 5    expert.  I'm not a lawyer.  I don't know if, you

6    know -- what happens if a patent is issued

7    improperly or properly or, you know, what the

8    repercussions may be.

9        Q    BY MR. HANLE:  Okay.  Do you -- do you

09:39 10   recall testifying in that deposition that you have a

11   good understanding of the market for video game

12   accessories?

13           MR. HASAN:  Objection as to form.

14           THE DEPONENT:  Again, do I recall that

09:39 15   particular -- testifying that particular statement?

16   I don't, but do I feel that I have information about

17   the gaming industry?  Of course.  I've worked in

18   that business for 16 years, and it's something that

19   I'm involved with, you know, five days a week for --

09:40 20   for that many years.  And yes, I know the ins and

21   outs.

22       Q    BY MR. HANLE:  Do you believe you have a

23   good understanding of what products have been

24   introduced into the market for video game

09:40 25   accessories and what products have not been

28

AMIR NAVID

BARKLEY
Court Reporters

09:47  1    investigation before you filed your application for

2    this patent of what video game charging products

3    were on the market as of March 7, 2007?

4         MR. HASAN:  Objection as to form.

09:47  5         THE DEPONENT:  So as far as me personally,

6    no.  Our legal department handles that.  So when we

7    file for a patent -- if we file for a patent, it's

8    because we believe it's a unique concept and a

9    unique product.  So if we filed for it, I would

09:47 10   have -- I wouldn't necessarily say that I've done

11   research in order to find it.  Obviously, through

12   the popular channels, competitors, major

13   distributors, retailers, it wasn't a product that

14   was available that I knew of.  And that's why we

09:47 15   would have taken the steps to patent it.  But as far

16   as doing the search myself, no, I would not have

17   done a search.

18        Q    BY MR. HANLE:  Do you recall testifying in

19   the Nintendo deposition that if a patent owner knows

09:48 20   that someone is heading down a path towards

21   infringing, the patent owner should warn the

22   potential infringer?

23        A    I don't recall saying that.

24        Q    Is that your brief, that if a -- if a

09:48 25   patent owner knows that someone is heading down a

34

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-18

09:48  1    path towards infringing, that the patent owner

       2    should warn the potential infringer?

       3            MR. HASAN:  Objection as to form.

       4            THE DEPONENT:  Not necessarily.  I don't

09:48  5    believe that.  You know, as far as -- it's -- I

       6    think it's -- you know, I think if someone is

       7    willingly going out there and knowingly infringing

       8    on something, they're aware that they're stealing

       9    somebody else's idea.  So I don't particularly think

09:48  10   it's the inventor's job then to come in and inform

       11   them.  They should know better than to steal

       12   somebody else's idea.

       13       Q    BY MR. HANLE:  When you say "steal

       14   somebody else's idea" --

09:49  15       A    Mm-hmm.

       16       Q    -- what are you referring to?

       17       A    Using a design, a novel design that was

       18   introduced to a market by -- by another party.

       19       Q    Isn't a party free to copy a design that's

09:49  20   on the market as long as it's not patented, based on

       21   your understanding?

       22       A    It really depends.  If there's, you

       23   know -- there's typically things that are said on

       24   the packaging or on the actual product referring to

09:49  25   maybe a patent pending.  So there is some warning

                              35

BARKLEY
Court Reporters

09:49  1    signs out there for people not to infringe.  I

2    personally believe that if -- if, you know, you're

3    going to make something, make something different.

4    Make something that's unique that provides

09:49  5    additional benefits and -- for the end customer.

6         Q    When did -- when did Nyko -- does Nyko

7    mark its charge base products with -- with a patent

8    number?

9         A    Do we -- yes, we do on some occasions,

09:50 10    yes.

11         Q    Do you know when Nyko started marking the

12    charge base products with a reference to a patent

13    pending or patent number?

14         A    I don't recall that right now, no.

09:50 15         Q    Do you have any estimate?

16         A    Typically "patent pending," you know, I

17    would say probably would be on the packaging if we

18    did that, if we remembered to do that.  Would have

19    been, you know, when the product releases.  So if we

09:50 20    do it -- obviously, "patent pending" we would put

21    either on the packaging or on the label that's on

22    the actual product.

23              So, you know, in this particular case do I

24    remember whether or not it was put in there?  I

09:50 25    don't -- I don't really recall.

36

AMIR NAVID

BARKLEY
Court Reporters

12:19   1          MR. HASAN:  Objection as to form.

2          THE DEPONENT:  So -- so in a description,

3     yes, but not in a claim.

4          Q    BY MR. HANLE:  Okay.  Fair enough.

12:19   5          Now, looking at the -- at the -- back at

6     the patent, which is Exhibit 1, I want you to look

7     at figures 11 through 15.

8          A    Figures 11, okay, through 15.

9          Q    And do all those figures depict the charge

12:20  10     base embodiment of your invention as you -- as you

11     identified earlier?

12          MR. HASAN:  Objection as to form.

13          THE DEPONENT:  Yes, they appear to relate

14     to that.

12:20  15          MR. HANLE:  Okay.

16          And, Counsel, we're going to go to 12:30,

17     if that's -- if that's all right.  I said 12:15, but

18     I'm going to starve Gray for another 10 minutes.

19          MR. HASAN:  Whatever Gray wants.

12:20  20          Q    BY MR. HANLE:  Okay.  So now I want you to

21     look at figure 16 in the -- in Exhibit 1.

22          A    Okay.

23          Q    And in this embodiment, you have a base

24     which has -- on the base itself, you have electrical

12:21  25     contacts in the recesses on the base.

138

AMIR NAVID

BARKLEY
Court Reporters

12:21   1          Do you see that?

2      A     Mm-hmm.

3      Q     And those are numbered 520; correct?

4      A     Mm-hmm.

12:21   5      Q     You should answer, "Yes."

6      A     Yes.  I'm sorry.

7      Q     That's okay.

8      A     Sorry.  I just realized that.  Sorry about

9  that.

12:21  10      Q     And so -- so what do you call this

11  embodiment of your invention?

12      A     Really embodiment -- it's the same

13  invention.  There's really -- other than having two

14  ports versus four ports, there's not much

12:21  15  difference.  But this was the charge base 2.

16      Q     Okay.  So this embodiment is called the

17  charge base 2?

18          MR. HASAN:  Objection as to form.

19      Q     BY MR. HANLE:  Is that right?

12:21  20      A     Yes, sir.

21      Q     Okay.  And some differences between the

22  charge base and the charge base 2 are that in the

23  charge base 2, there are electrical contacts on the

24  base rather than DC ports on the base; correct?

12:22  25          MR. HASAN:  Objection as to form.

139

AMIR NAVID

BARKLEY
Court Reporters

12:22   1          THE DEPONENT:  Can I answer?

        2          Okay.  So what I want to be clear about is

        3   that in this picture, it's not showing the complete

        4   base.  So the base actually has parts that are

12:22   5   included with it that have the DC jacks.  So the DC

        6   jacks are there as well.

        7      Q    BY MR. HANLE:  So show me the DC ports in

        8   figure -- figure 16.

        9      A    They're not here.

12:22  10      Q    Okay.

       11      A    Because that -- that photo doesn't --

       12      Q    Go to figure --

       13          MR. HASAN:  Let him finish.  Let him

       14   finish.

12:22  15          Go ahead.

       16          THE DEPONENT:  Like I was mentioning, in

       17   this particular photo they're not shown.

       18      Q    BY MR. HANLE:  Okay.  Go to figure 17.

       19      A    Yes, sir.

12:22  20      Q    Where are the DC ports shown in figure 17?

       21      A    542, labeled 542.

       22      Q    And they're on the adapter; correct?

       23      A    On the adapter.  I mean, that's a part of

       24   the actual base.  Are you talking about an AC

12:23  25   adapter?  An adapter -- I mean, this is a part

                                140

AMIR NAVID

**BARKLEY**
*Court Reporters*

Exhibit A
Page A-23

12:23   1      that's included with that base that's -- it's a part

2      of that base.

3          Q    Okay.  So I'm talking about the adapter,

4      which is denoted by call-out 516.  Do you see

12:23   5      element 516 in figure 17?

6          A    Mm-hmm.

7          Q    And is that an adapter?

8          A    That's a part of the base.

9          Q    Is that an adapter?  Yes or no?

12:23  10          MR. HASAN:  Objection as to form.

11          THE DEPONENT:  Adapter?  An "adapter" is a

12      loose term; okay?  So it can be used for many

13      things.  So in the context of what we're talking

14      about -- this is -- this is a piece that's made and

12:23  15      sold with and is a part of the charge base.

16          Q    BY MR. HANLE:  Is it an adapter?

17          MR. HASAN:  Objection as to form.  Asked

18      and answered.

19          THE DEPONENT:  I think I've answered that

12:23  20      question.

21          Q    BY MR. HANLE:  Answer it again, please.

22          A    This is a part of the base.

23          Q    I don't -- I want to know is it an

24      adapter?

12:24  25          MR. HASAN:  Argumentative.  Objective

141

AMIR NAVID

BARKLEY
Court Reporters

12:24  1    [sic] as to form.

2         Q    BY MR. HANLE:  Can you answer that

3    question yes or no?

4         A    I think I've explained it.  It's a part of

12:24  5    the base.  It's just, you know -- it sits on the

6    base.  It's a part of the base.

7         Q    And can you answer my question?  Focus

8    on -- this question is different from the earlier

9    ones.  Can you answer my question yes or no?

12:24 10         MR. HASAN:  Objection as to form.  Asked

11    and answered.

12         THE DEPONENT:  So I've answered this

13    question, I believe, to the best of my ability,

14    which is this is a part of the base.  It's where the

12:24 15    DC jack is located, and it's -- it's a part of the

16    base.  It's designed to work only and specifically

17    with this base.

18         Q    BY MR. HANLE:  So take a look at

19    column 11.

12:25 20         A    On which document?

21         Q    In the same document you're in.

22         A    Okay.

23         Q    Keep your figure there by that figure

24    because we're going to come back to it.

12:25 25         A    Okay.

142

AMIR NAVID

**BARKLEY**
Court Reporters

12:25   1          Q     And take a look at column 11.

        2          A     Sure.  I don't have column 11.  Oh, sorry.

        3          Q     Okay.  And column 11, line 58 -- actually

        4    starting at 57, says, "The docking bays 512, 514 are

12:25   5    dimensioned to accept adapters 516."

        6                Do you see that?

        7          A     Mm-hmm.

        8          Q     So according to that, 5- -- element 516 in

        9    the figures is an adapter; correct?

12:26  10          A     Mm-hmm.  Well --

       11          Q     Is that a yes?

       12          A     Within the context of that sentence, yes.

       13          Q     Okay.  And does that sentence say that the

       14    adapter is part of the base?

12:26  15                MR. HASAN:  Objection as to form.

       16                THE DEPONENT:  Does it say it's part of

       17    the base?  It -- it is a part -- are dimensioned to

       18    accept these.  Yes.  So I think, yes, it refers to

       19    that.

12:26  20          Q     BY MR. HANLE:  It says they're -- it says

       21    they're dimensioned -- the docking bays are

       22    dimensioned to accept adapters; right?

       23          A     The particular adapter that come with it,

       24    yes.

12:26  25          Q     Okay.

                                   143

12:26  1          A    It's part of the entire product.

2          Q    Okay.  In use, was it your intention that

3     the adapters, as shown in figure 17 and other

4     figures, would remain attached to the controller or

12:27  5     remain attached to the base when the controller was

6     not attached to the base?

7                MR. HASAN:  Objection as to form.

8                THE DEPONENT:  That's really up to the end

9     user.  So you can do it either way.  You can leave

12:27 10     them on the base if you don't want to have that

11     adapter on your actual controller, because it is a

12     piece that's on the controller.  So some people

13     might want to keep it in their base.  It really

14     depends.  You're not forced to have it there.  It

12:27 15     can be on there.

16          Q    BY MR. HANLE:  Okay.  When did you -- when

17     did you come up with the idea for the charge base 2

18     embodiment?

19                MR. HASAN:  Objection as to form.

12:28 20                THE DEPONENT:  The specific design for

21     that one -- I mean, they're related.  So it's not,

22     per se, one design is completely a different

23     concept.  It's the same core invention.  So I would

24     say this is no different -- I would say the same

12:28 25     time.  You know, this is just a further convenience

                              144

AMIR NAVID

BARKLEY
Court Reporters

12:28  1    of being able to have these adapters or pieces of

       2    this charging base on the device or not on the

       3    device.

       4        Q    BY MR. HANLE:  When did you conceive of

12:28  5    the idea to have an adapter interposed between the

       6    controller and the base?

       7             MR. HASAN:  Objection as to form.

       8             THE DEPONENT:  Again, I think this is the

       9    same product -- same -- same concept of having a

12:28  10   controller that attaches directly to -- to a DC

       11   port, which -- so I would say June of 2006, when I

       12   was conceiving the original model.

       13       Q    BY MR. HANLE:  So you conceived of an

       14   adapter in June 2006?

12:29  15       A    Not an adapter.  What I'm talking about is

       16   the underlying invention, which --

       17       Q    And I'm not talking about that.  My

       18   question was the adapter.  I want to know when you

       19   conceived of the adapter interposed between the

12:29  20   controller and the base.

       21            MR. HASAN:  Objection:  Asked and

       22   answered.

       23            THE DEPONENT:  Yeah.  I believe I've

       24   answered that.  It's -- I don't see --

12:29  25       Q    BY MR. HANLE:  You haven't.

                                   145

AMIR NAVID

BARKLEY
Court Reporters

12:29  1          A      -- a difference between charge base 1 and

       2     charge base 2, other than the fact that it has two

       3     ports versus four ports.  It's --

       4          Q      Well, one has an adapter, and one doesn't;

12:29  5     right?

       6                 MR. HASAN:  Objection.

       7                 THE DEPONENT:  An adapter -- are you

       8     talking about an external AC adapter or something to

       9     that effect?  Because this is a piece of the actual

12:29 10     invention.

      11          Q      BY MR. HANLE:  Okay.  Your counsel brought

      12     with him a charge base 2.  Is this -- is this a

      13     charge base 2?

      14          A      That is a charge base, yeah.

12:30 15          Q      And what's that piece right there?

      16          A      This is the part that -- part of this base

      17     that connects directly to the controller.

      18          Q      Okay.  And is that an adapter?

      19                 MR. HASAN:  Objection as to form.

12:30 20                 THE DEPONENT:  An "adapter" is a loose

      21     term.  It can mean a lot of things.  But is it an

      22     adapter?  I believe it's -- it's the same underlying

      23     idea of having a controller without a wire attaching

      24     to a charge base.

12:30 25          Q      BY MR. HANLE:  Why don't you pick that up,

                                    146

BARKLEY
Court Reporters

12:30   1    that adapter.

2         A    Sure.

3         Q    Pick it up.  And so my question is, is

4    that an adapter?  I don't want to know about the

12:30   5    underlying idea.  I want to know whether it's an

6    adapter or not.

7              MR. HASAN:  Objection as to form.

8              THE DEPONENT:  An adapter -- like I've

9    explained, an adapter can mean a lot of different

12:30  10    things.  So is it an adapter?  I mean, there's

11    different -- that's subjective.  It depends.  You

12    could describe a lot of things as an adapter.

13         Q    BY MR. HANLE:  Is it an adapter as used --

14         A    This is a piece of this charge base, yes.

12:30  15         Q    Is it an adapter as that term is used in

16    your '848 patent, referring to element 516 that we

17    just looked at?

18         A    Within the context of that paragraph, yes.

19         Q    So that's an adapter as that term is used

12:31  20    in your patent?

21         A    Within the context of that paragraph,

22    yeah.

23         Q    And so when did you come up with the idea

24    of the adapter?

12:31  25         A    Specific date?  Again, I think it would

147

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-30

12:31  1    have been the same time.  The same -- it's the same

2    design.  It's the same concept.  It's the same

3    underlying invention of a charging bay that mates

4    and couples directly with a controller.  And that's

12:31  5    what it does.

6        Q    Yeah, I'm not looking for the overall

7    design.  I want to know about the adapter.

8            Pick up the adapter, and hold it in your

9    hand again, please.

12:31  10       A    Mm-hmm.

11       Q    Thank you.

12       A    Mm-hmm.

13       Q    When did you come up --

14           Keep it there.  Don't -- don't keep

12:31  15   putting it back in the base.

16       A    Okay.

17       Q    Okay.  I want to know about that adapter,

18   and I want to know when you came up with the idea

19   for that thing that's in your hand, which you called

12:32  20   an adapter.

21           MR. HASAN:  Objection as to form.  Asked

22   and answered.

23           THE DEPONENT:  Actually, you called it an

24   adapter.  But as far as when I came up with the idea

12:32  25   of having a part of the base be removable for added

148

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-31

12:32  1    convenience, I don't know off the top of my head.

2       Q    BY MR. HANLE:  What's your best

3    recollection?  Give me a range, a date range, as

4    best you can.

12:32  5       A   I really don't know.  I'd have to look

6    into my notes.

7       Q   Okay.  Was it after -- was it after August

8    of 2006, when you handed over drawings to -- to Hip

9    Hing?

12:32 10       MR. HASAN:  Objection as to form.

11       THE DEPONENT:  Not necessarily.  I

12    don't -- I don't know that.  I can't answer that

13    question.

14       Q    BY MR. HANLE:  Okay.  Was it -- was it

12:32 15    before or after Consumer Electronics Show 2007?

16       MR. HASAN:  Objection as to form.

17       THE DEPONENT:  Again, I think the

18    underlying design, the same purpose and the utility

19    of the -- of this invention is the same.  So it

12:32 20    would have been June of 2007ish.

21       Q    BY MR. HANLE:  Again, you're going back to

22    the utility, the overall invention.  I just want to

23    talk about the piece in your hand.

24       A   I don't see a separation between the two.

12:33 25    We're talking about the same concept, the same

149

AMIR NAVID

BARKLEY
Court Reporters

12:33  1   invention.  So if you'd like to see it as a

2   different product than what it is or the fact that

3   this is in fact the same thing happening, that's

4   your choice.

12:33  5       Q    No.  I'm just --

6          (Admonition by the deposition officer to

7          speak one at a time.)

8          MR. HASAN:  Don't talk over him.

9       Q    BY MR. HANLE:  One's in your hand.

12:33 10          MR. HASAN:  He's not done.

11       Q    BY MR. HANLE:  One's not in your hand.  I

12   want to know about the one in your hand.

13          MR. HASAN:  He's not done.

14       Q    BY MR. HANLE:  You can put this aside, and

12:33 15   I just want to talk about the one in your hand.

16          MR. HASAN:  Okay.  You know what?  Give

17   this to me.  Give this to me.  Finish your -- finish

18   your answer.  Finish -- finish your answer, buddy.

19          Bring your own exhibits.

12:33 20          Finish your answer.  Finish your answer.

21          MR. HANLE:  Do you really want the video

22   of you taking the adapter away from the witness so

23   he can't testify about the adapter -- is that what

24   you want on the video record?

12:33 25          MR. HASAN:  Do you want to testify?  Want

150

AMIR NAVID

BARKLEY
Court Reporters

12:33  1       me to depose you?

2              MR. HANLE:  Is that -- is that what you

3       want --

4              MR. HASAN:  I don't want to grab pieces of

12:33  5       things and this and that from -- that I brought.  If

6       you have your things, you can do it.  I'm willing to

7       let you use it.

8              MR. HANLE:  May I use that?

9              MR. HASAN:  You may use it, but after he

12:34  10      finishes his answer.

11             MR. HANLE:  Okay.

12             MR. HASAN:  Okay?  After he finishes his

13      answer.  And don't give him just part of it.  Give

14      him the whole thing.

12:34  15             MR. HANLE:  Well, I'm going to give him

16      the adapter when I'm talking about the adapter.

17      Q      So here's the adapter.

18      A      Mm-hmm.

19      Q      Hold that --

12:34  20             (Admonition by the deposition officer to

21             slow down and speak one at a time.)

22             MR. HASAN:  Argumentative.  Objection as

23      to form.

24      Q      BY MR. HANLE:  My question is --

12:34  25             MR. HASAN:  He didn't let him finish his

151

AMIR NAVID

**BARKLEY**
Court Reporters

12:34  1    answer.

2    MR. HANLE:  There's no question pending.

3    Q    The -- the adapter that's on the table

4    right in front of you, when did you come up with the

12:34  5    idea for that adapter, separate from the charge

6    base?

7    MR. HASAN:  Objection as to form.

8    THE DEPONENT:  I've already answered --

9    MR. HASAN:  Asked and answered.

12:34  10    THE DEPONENT:  -- that.  This -- this

11    entire conversation is about a utility patent, not a

12    design patent, not that a part or a portion or a

13    piece that's included with the actual charge base

14    makes any difference whatsoever as far as the

12:34  15    overall purpose and concept behind this design,

16    which is a controller directly connecting to a DC

17    port, which it still does.

18    Q    BY MR. HANLE:  So can you give me a

19    date --

12:35  20    A    I can't --

21    (Admonition by the deposition officer to

22    speak one at a time.)

23    Q    BY MR. HANLE:  Can you give me a date on

24    which you conceived of the adapter that's in front

12:35  25    of you?

152

BARKLEY
Court Reporters

AMIR NAVID

Exhibit A
Page A-35

12:35   1         A    No, I can't.

        2         Q    And --

        3              MR. HASAN:  Objection as to form.

        4         Q    BY MR. HANLE:  So for all you recall, it

12:35   5    could have been in 2005?

        6              MR. HASAN:  Objection as to form.

        7              THE DEPONENT:  What you're asking me makes

        8    no sense.  It's not even a question.  You're saying

        9    could it have been 14th Century?  I mean, it doesn't

12:35  10    matter.  The fact is I don't have a specific date to

       11    give to you, and I don't think there's any

       12    difference between this design and what we're

       13    talking about.  Charge base 1, charge base 2, charge

       14    base 3, they all embody the same core product.

12:35  15         Q    BY MR. HANLE:  Who came up with the idea

       16    for the adapter that's in front of you?

       17              MR. HASAN:  Objection -- objection as to

       18    form.

       19              THE DEPONENT:  I designed the charge base

12:35  20    line.

       21         Q    BY MR. HANLE:  Okay.  Who came up with the

       22    idea for the adapter that's the part --

       23         A    I designed the charge base line.

       24         Q    Including the adapter?

12:36  25         A    All --

                                  153

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-36

12:36  1                 (Admonition by the deposition officer to

       2                 speak one at a time.)

       3                 MR. HASAN:  Objection as to form.

       4                 DEPOSITION OFFICER:  Now answer, please.

12:36  5                 THE DEPONENT:  I designed all parts of the

       6     charge base.

       7          Q     BY MR. HANLE:  When did you design the

       8     particular part in front of you, the adapter?

       9          A     I don't know.

12:36 10          Q     What's your best estimate?

      11          A     My best estimate would be when I conceived

      12     the product idea, the core, which would have been in

      13     June of 2007 when I found out about -- when I

      14     started working on a charge base line.

12:36 15          Q     You may have misspoke.  You said June of

      16     2007 when you started working on the charge base

      17     line?

      18          A     I don't really -- I mean, you guys are

      19     arguing and fighting around me.  I'm trying to

12:36 20     answer the questions as best possible.  You know, I

      21     designed it -- the core concept of what the charge

      22     base is and what it does and the features and

      23     benefits it provides to the end customer were

      24     present from the design that I came up with after

12:37 25     the PS3 controller was introduced.


                              154


                          AMIR NAVID

                                              BARKLEY
                                              Court Reporters

                          Exhibit A
                          Page A-37

12:37  1        Q    Yeah.  And I just want to talk about the

2      adapter.  I don't -- I don't care about any other

3      part for the -- for purpose of these questions.

4      We'll get back to the charge base as a whole.

12:37  5             And so is it your testimony that you came

6      up with the concept for the adapter, such as the one

7      sitting in front of you, in June -- between June and

8      August of 2006?

9        A    I --

12:37  10            MR. HASAN:  Objection as to form.  Asked

11     and answered.

12            Go ahead.

13            THE DEPONENT:  As I've mentioned, I

14     produced the charge base line.  I made all parts and

12:37  15     pieces and -- down to the detail of even the sticker

16     on the back of the devices myself.  So as far as

17     when exactly different beneficial features were

18     added, I don't know the exact date.

19       Q    BY MR. HANLE:  So you don't know when you

12:37  20     came up with the adapter?

21            MR. HASAN:  Objection as to form.  Asked

22     and answered.  Misstates the testimony.

23       Q    BY MR. HANLE:  Is that right?

24       A    I -- I think I've answered that.

12:38  25       Q    Well, you haven't given me a date when you

155

BARKLEY
Court Reporters

AMIR NAVID

| | |
|---|---|
| 12:38 1 | came up with the adapter, so I'm just giving you the |
| 2 | opportunity to do that. |
| 3 | MR. HASAN:  No. |
| 4 | THE DEPONENT:  I -- |
| 12:38 5 | MR. HASAN:  Objection as to form. |
| 6 | Misstates -- |
| 7 | THE DEPONENT:  I -- I've given you the |
| 8 | date that I know of which relates to the invention. |
| 9 | And as far as any additional features or benefits |
| 12:38 10 | that were added of -- with the same core concept and |
| 11 | invention, I don't know exact date. |
| 12 | Q    BY MR. HANLE:  Okay.  Do you recall when |
| 13 | the first drawing existed of the adapter? |
| 14 | A    Not -- |
| 12:38 15 | MR. HASAN:  Objection as to form. |
| 16 | THE DEPONENT:  No, I don't. |
| 17 | Q    BY MR. HANLE:  Can you give me a best |
| 18 | estimate as to the range? |
| 19 | A    Not really, no. |
| 12:38 20 | Q    When did you launch the PlayStation 2 -- |
| 21 | or, excuse me, the charge base 2? |
| 22 | A    I'm sure there's sales teams, or perhaps |
| 23 | our marketing team would be a better source for that |
| 24 | information. |
| 12:38 25 | Q    Are you saying you don't -- you don't |

156

AMIR NAVID

BARKLEY
Court Reporters

12:38  1  recall?

2  A  I really don't recall exactly when it

3  comes -- there's a lot of things that go into play,

4  you know, from the time that I actually make

12:39  5  something to the time that it's actually ordered,

6  comes off tool, and ships to market.  So I -- I

7  don't know off the top of my head.

8  Q  Okay.

9  MR. HASAN:  It's 12:40.  You want to keep

12:39  10  going or --

11  MR. HANLE:  No, we'll go ahead and take a

12  break.  I do want to state one thing for the record,

13  and I'll direct it at you and not to the witness.

14  And that is that if this type of answering continues

12:39  15  where the witness is not answering the question and

16  trying to score points and filling up the record

17  with nonresponsive answers, this deposition will not

18  be concluded after the seven hours.

19  So -- so it could not be more clear,

12:39  20  Counsel, that the witness is evading the question

21  about -- about adapters and wants to talk about the

22  entire charge base.  If you want to take your time

23  to ask him about the whole invention, that's your

24  business.  If I want to ask about the adapter, I'm

12:39  25  entitled to an answer about the adapter and not the

157

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-40

05:16  1    at -- you know, obviously, my bosses would love for

2    it to be available as soon as possible.  That's just

3    not always the case.

4            MR. HANLE:  Okay.  I'll mark as the next

05:16  5    exhibit, 20, a "Declaration and Power of Attorney

6    for Patent Application" referencing docket number

7    61070/N220.

8            (Exhibit 20 was marked for the record.)

9            THE DEPONENT:  Thank you.

05:17  10           MR. HANLE:  And I'll mark as Exhibit 21 a

11   nonprovisional patent application with the same

12   docket number, 61070/N220.

13           (Exhibit 21 was marked for the record.)

14           THE DEPONENT:  Thank you.

05:17  15     Q     BY MR. HANLE:  Okay.  And the -- so the

16   first exhibit, 20, is a declaration and power of

17   attorney.  And on the second page it bears a

18   signature.

19           Is that your signature?

05:17  20     A     Yes, it is.

21     Q     And did you sign this document around

22   March 5th, 2008?

23     A     It appears that way, yes.

24     Q     Okay.  And taking a look at the first page

05:18  25   again, there's a -- looks like the fifth paragraph

295

AMIR NAVID

BARKLEY
Court Reporters

Exhibit A
Page A-41

05:18   1    or so, there's a paragraph that starts, "I

2    acknowledge the duty to disclose...."

3                Do you see that?

4         A     "I acknowledge the duty to disclose...."

05:18   5    Okay.

6         Q     Okay.  Why don't you read that for the

7    record.

8         A     Okay.

9                    "I acknowledge the duty to disclose

05:18  10                information which is material to the

11                patentability as defined in 37 CFR" -- I'm

12                not sure what that symbol is -- "1.56,

13                including for continuation-in-part

14                applications, material information which

05:18  15                become available between the filing date

16                of the prior application and the national

17                or PCT international filing date of the

18                continuation-in-part application."

19         Q     Okay.  So what's your understanding of

05:18  20    that paragraph?

21         A     That I would disclose any information --

22    I -- I mean, there's parts of it I don't understand.

23    "As defined in 37 CFR," I'm not familiar with that.

24                "Including in continuation" -- "for

05:19  25    continuation-in-part applications, material

                                    296

AMIR NAVID

BARKLEY
Court Reporters

05:19  1   information which become available between the

       2   filing date of the prior application and national or

       3   PCT international filing date."  That, I would -- my

       4   take from it is that I would disclose any

05:19  5   information that I would come across during -- I

       6   mean, that's what I take from it.

       7        Q    And -- so do you have an understanding

       8   that if a product is sold -- a product embodying a

       9   patent is sold more than one year before the filing

05:19 10   of the application, that that could invalidate the

      11   patent?

      12        A    Am I aware of that?  Yes, I understand

      13   that it takes -- you have to do it within a year.

      14        Q    Okay.  And so you're aware that it is

05:20 15   material to patentability whether -- if a commercial

      16   embodiment of a claimed invention was sold more than

      17   one year prior to the filing of the application?

      18             MR. HASAN:  Objection as to form.

      19             THE DEPONENT:  I believe so, yes.

05:20 20        Q    BY MR. HANLE:  Okay.  Did you -- when you

      21   submitted this declaration and power of attorney,

      22   Exhibit 21, and your patent -- excuse me,

      23   Exhibit 20 -- and your patent application,

      24   Exhibit 21, did you make any inquiries about when

05:20 25   the "commercial embodiment" claim in your patent

                              297

06:09  1    6:09.

2              MR. HANLE:  Okay.  I'll mark as Exhibit 27

3    a document with Bates Nos. NT77769 through 7772.

4              (Exhibit 27 was marked for the record.)

06:10  5    Q    BY MR. HANLE:  Okay.  This is an email

6    from Hip Hing to Herschel Naghi, and you're cc'd.

7    And it's dated December 29th, 2006.

8              Do you see that?

9    A    I do.

06:10  10   Q    And in this email Hip Hing is confirming a

11   number of orders of product and thanking Herschel

12   for the offers.

13             Do you see that?

14   A    I do.

06:10  15   Q    And among -- among the items for which

16   this is confirming the order is -- is PO number

17   3726, which is 6,000 pieces of the charge base.

18             Do you see that?

19             MR. HASAN:  Objection:  I'm just going to

06:11  20   object that this exhibit looks like it's three or

21   four different pages.  And I've seen -- that look

22   like they're differently dated.  And I note that,

23   that was in some of the other exhibits as well.  So

24   I'll just keep that as a standing objection.  I

06:11  25   don't know if you intended that, Steve, but I'm not

328

AMIR NAVID

**BARKLEY**
Court Reporters

06:11  1    trying to --

2              But anyway, go ahead.

3              THE DEPONENT:  So yes, I see the POs that

4    you're referring to.

06:11  5      Q    BY MR. HANLE:  Okay.  I'm just -- maybe

6    the -- you know, maybe the -- these invoices weren't

7    supposed to be attached to this email, but I can

8    only tell you that the date of email is December 29,

9    2006.

06:12  10             I guess -- so my question is do you recall

11   that Nyko ordered from Hip Hing 6,000 charge base

12   units in December 2006 and then also -- the next PO

13   also references another 30,000 units of the charge

14   base that Nyko was ordering at the time -- at this

06:12  15   time.  Do you recall those orders?

16     A    I don't recall them, but I mean, that's

17   what it says on this document.

18     Q    Okay.  Do you recall that, in -- at about

19   this time when the SLAs were being completed in

06:12  20   December 2006, that Nyko placed two very large

21   orders for charge base units from Hip Hing?

22             MR. HASAN:  Objection as to form.

23             THE DEPONENT:  I don't recall that, no.

24     Q    BY MR. HANLE:  Any reason to believe this

06:12  25   document is incorrect?

329

AMIR NAVID

BARKLEY
Court Reporters