1  **ART HASAN, CA Bar No. 167323**
   art.hasan@cph.com
2  **G. WARREN BLEEKER, CA Bar No. 210834**
   warren.bleeker@cph.com
3  **KATHERINE L. QUIGLEY, CA Bar No. 258212**
   katherine.quigley@cph.com
4  **CHRISTIE, PARKER & HALE, LLP**
   **655 N. Central Avenue, Suite 2300**
5  **Post Office Box 29001**
   **Glendale, California 91209-9001**
6  **Telephone: (626) 795-9900**
   **Facsimile: (626) 577-8800**
7
   Attorneys for Plaintiff,
8  NYKO Technologies, Inc.

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 NYKO TECHNOLOGIES, INC., a California corporation, | Case No. CV 12-3001 GAF (VBKx) |
| 14 | **NYKO TECHNOLOGIES, INC.'S** |
| 15 Plaintiff, | **SUPPLEMENTAL RESPONSES TO CERTAIN OF** |
| 16 vs. | **PERFORMANCE DESIGNED PRODUCTS LLC'S FIRST SET** |
| 17 ENERGIZER HOLDINGS, INC., a Missouri corporation, and | **OF INTERROGATORIES** |
| 18 PERFORMANCE DESIGNED PRODUCTS LLC, a California limited liability company, | |
| 19 | |
| 20 Defendants. | |
| 21 | |
| 22 | **Hon. Gary Allen Feess** |
| 23 AND RELATED COUNTERCLAIM. | |
| 24 | |

25

26       NYKO TECHNOLOGIES, INC. ("NYKO") supplements its responses as

27  follows to certain interrogatories from the First Set of Interrogatories propounded

28  to it by PERFORMANCE DESIGNED PRODUCTS LLC ("PDP"):

-1-

CHRISTIE, PARKER & HALE, LLP

## **GENERAL OBJECTIONS**

1. NYKO objects to PDP's definitions, instructions and interrogatories to the extent that they are inconsistent with or purport to impose a duty of disclosure that is greater than or different from that required under the applicable Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California.

2. NYKO objects to PDP's definitions, instructions and interrogatories to the extent that they purport to require the disclosure of information that is protected by attorney-client privilege, work-product doctrine or other applicable privilege or protection from disclosure.

3. NYKO objects to PDP's definitions, instructions and interrogatories to the extent that they purport to require the disclosure of information that is not relevant to the claim or defense of any party, and to the extent they are not reasonably calculated to lead to the discovery of admissible evidence.

4. NYKO objects specifically to the definitions of "NYKO" as overly broad, harassing and oppressive, and as seeking to invade attorney-client privilege and attorney work product.   NYKO responds to each of the interrogatories for itself alone.

5. NYKO objects to PDP's definitions, instructions and interrogatories to the extent that they purport to require the disclosure of information that constitutes or contains trade secrets or other confidential research, development or commercial information.

6. NYKO objects to PDP's definitions, instructions and interrogatories to the extent that they purport to require the disclosure of information that does not exist or is not in NYKO's possession, custody or control.

7. NYKO objects to PDP's definitions, instructions and interrogatories to the extent that they purport to require the disclosure of information that has been lost, destroyed, deleted or otherwise transferred outside of NYKO's possession,

-2-

custody or control.

8. NYKO objects to PDP's definitions, instructions and interrogatories to the extent that they impose on NYKO an unreasonable burden or expense.

9. NYKO objects to that the interrogatories, including all non-discrete subparts, exceed the 25 written interrogatory limit in violation of Rule 33(a)(1) and are therefore invalid on their face and require no response.

10. NYKO objects that discovery is in its early stages and NYKO reserves the right to assert and seek a Court order that one or more interrogatories need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Subject to and without waiving the foregoing objections, each of which is specifically incorporated into each individual response below, NYKO responds to PDP's First Set of Interrogatories as follows:

<u>**RESPONSES TO INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1**</u>:

Separately for each claim of the Patent-in-Suit, identify and describe the dates, location, circumstances, and corroborating evidence of the conception, any alleged actual reduction to practice, constructive reduction to practice, and any alleged diligence, including identifying all Persons with knowledge thereof and all Documents and Things evidencing or referring to Navid's and any other Person's activities during any alleged period of diligence.

<u>**RESPONSE TO INTERROGATORY NO. 1**</u>:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the term "activities" is not defined and is vague and ambiguous.  NYKO objects that the request seeks

-3-

information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court.

Subject to, and without waiving any objections, NYKO responds as follows:

Amir Navid has knowledge of the described topics.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NYKO will specify documents containing responsive information and/or make the responsive documents available for examination pursuant to the mutually agreeable terms of a protective order entered by the Court.  NYKO reserves its right to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**:

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

Amir Navid is the inventor for all the claims of the patent-in-suit.  He conceived of and reduced the invention to practice at his offices at NYKO. Subject to further investigation and development of evidence, Mr. Navid reduced to practice the claimed invention at least in asserted claims 1-5, 7, 8, and 10-13 and 15-17 at least as early as September 27, 2006 and the claimed invention directed to the additional functionality in the Charge Base 2 at least as early as August 10, 2007.  Mr. Navid then diligently filed a patent application including the underlying concepts in the Provisional Application dated October 24, 2007. Additional information regarding conception and reduction of practice is located in at least Bates Nos. NT001067-NT001122 and in response to Interrogatory No. 4.

-4-

CHRISTIE, PARKER & HALE, LLP

As discovery is still in its early stages, NYKO reserves its right to supplement its response.   Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.

**INTERROGATORY NO. 2**:

Separately for each claim of the Patent-in-Suit, describe in detail all facts and circumstances relating to the first sale or offer for sale, including identifying participating Persons, other knowledgeable Persons, dates, Documents evidencing or referring thereto, and describe in detail what was sold or offered for sale.

**RESPONSE TO INTERROGATORY NO. 2**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   NYKO objects that the request is overbroad because it seeks information regarding patent claims not at issue in this case.  NYKO objects that the request is vague and ambiguous--first sale or offer for sale of what?  PDP fails to identify the subject of the purported sales and offers for sale.  PDP also fails to define sale or offer for sale and these terms are vague and ambiguous.  To the extent PDP is referring to more than one product, the interrogatory is compound and should be treated as multiple interrogatories. NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order

-5-

entered by the Court.

Subject to, and without waiving any objections, NYKO responds as follows:

NYKO is willing to meet and confer with counsel for PDP to reach a common understanding as to the scope of this request so that NYKO can respond to the request.  To the extent NYKO can decipher what exactly PDP is requesting, which is currently unclear, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NYKO will specify documents containing responsive information and/or make the responsive documents available for examination pursuant to the mutually agreeable terms of a protective order entered by the Court.  NYKO reserves its right to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**:

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

For the Charge Base that was announced in January 2007, based on NYKO's investigation to date, NYKO contends that the first sale and offer for sale occurred no earlier than June 20, 2007 as this was the date the product was first released for sale, and was not available for sale prior to that date.  *See* Bates No. NT000861; *Linear Tech. Co. v. Micrel, Inc.*, 275 F.3d 1040, 1052-54 (Fed. Cir. 2001).

For the Charge Base 2, based on NYKO's investigation to date, NYKO contends that the first sale and offer for sale occurred no earlier than December 11, 2007 as this was the date the product was first released for sale, and was not available for sale prior to that date.  *See* Bates No. NT000861; *Linear Tech. Co. v.*

-6-

CHRISTIE, PARKER & HALE, LLP

*Micrel, Inc.*, 275 F.3d 1040, 1052-54 (Fed. Cir. 2001).

For the Charge Base 3, based on NYKO's investigation to date, NYKO contends that the first sale and offer for sale occurred no earlier than October 25, 2011 as this was the date the product was first released for sale, and was not available for sale prior to that date. *See* Bates No. NT000861; *Linear Tech. Co. v. Micrel, Inc.*, 275 F.3d 1040, 1052-54 (Fed. Cir. 2001).

The individuals with knowledge of these facts include Chris Arbogast, Director of Marketing for NYKO.

As discovery is still in its early stages, NYKO reserves its right to supplement its response. Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.

**INTERROGATORY NO. 3**:

Separately for each claim of the Patent-in-Suit, describe in detail all facts and circumstances relating to the first non-public disclosure, public disclosure, presentation, demonstration, and use, including identifying participating Persons, other knowledgeable Persons, dates, Documents evidencing or referring thereto, and describe in detail what was disclosed, demonstrated, and used.

**RESPONSE TO INTERROGATORY NO. 3**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the term "non-public

-7-

disclosure" is not defined and is vague and ambiguous.  NYKO objects that the term "public disclosure" is not defined and is vague and ambiguous.  NYKO objects that the term "presentation" is not defined and is vague and ambiguous. NYKO objects that the term "demonstration" is not defined and is vague and ambiguous.  NYKO objects that the term "use" is not defined and is vague and ambiguous.  NYKO objects that PDP fails to explain what specific product is the subject of this interrogatory.  To the extent PDP is referring to more than one product, the interrogatory is compound and should be treated as multiple interrogatories.   NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court.

Subject to, and without waiving any objections, NYKO responds as follows:

NYKO is willing to meet and confer with counsel for PDP to reach a common understanding as to the scope of this request so that NYKO can respond to the request.  To the extent NYKO can decipher what exactly PDP is requesting, which is currently unclear, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NYKO will specify documents containing responsive information and/or make the responsive documents available for examination pursuant to the mutually agreeable terms of a protective order entered by the Court.   NYKO reserves its right to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**:

NYKO hereby incorporates all of its prior objections.  Subject to, and

-8-

1   without waiving any objections, NYKO responds as follows:

2          The Charge Base announced in January 2007 was NYKO's prototype

3   Charge Base four port charging dock for PlayStation 3.  It was shown privately to

4   select individuals at a private hotel suite in Las Vegas during the timeframe that

5   the Consumer Electronics Show was taking place in January 2007.   NYKO

6   believes this was the first time that NYKO disclosed and presented the prototype

7

8   of this product.

9          After a reasonable search, NYKO has not yet identified the first public

10  "use," "presentation" or "demonstration" of an actual working version of this

11  product.   NYKO does not recall any "non-public disclosure" of this product,

12  which PDP has subsequently defined as a disclosure to a third party with a

13  confidentiality agreement in place, although certain NYKO vendors have an

14

15  obligation of confidentiality.

16         The Charge Base 3 was first released in the latter part of 2011 and was first

17  disclosed well after March 7, 2007.

18         Responsive   documents   include:   NT000925-NT000943,   NT000883-

19  NT000894, NT000861.

20

21         Persons with knowledge of relevant facts include Chris Arbogast.

22         As discovery is still in its early stages, NYKO reserves its right to

23  supplement its response. Further, NYKO's analysis of the documents is

24  continuing and NYKO has not yet determined all the documents which might

25  relate to this request.

26

27

28

CHRISTIE, PARKER & HALE, LLP

-9-

**INTERROGATORY NO. 4**:

Identify each Instrumentality developed at least in part by or on behalf of Nyko or Navid that practices, has ever practiced, or is contemplated for future practice of any of the Patent-in-Suit by name and trade designation, manufacturer, licensees, dates sold or otherwise provided, and places sold or otherwise provided, and specify in claim charts where each element of each claim is allegedly found within each such Instrumentality, and identify Persons with knowledge thereof and all Documents and Things evidencing or referring thereto.

**RESPONSE TO INTERROGATORY NO. 4**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court.

Subject to and without waiving any objections, NYKO responds as follows:

Products developed by NYKO that practice one or more claims of the '848 patent include the NYKO Charge Base (Item No. 83017), the NYKO Charge Base 2 (Item No. 83053) and the NYKO Charge Base 3 (Item No. 83100).

In addition, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NYKO will specify documents containing responsive information and/or make the responsive documents available for examination pursuant to the mutually

-10-

CHRISTIE, PARKER & HALE, LLP

agreeable terms of a protective order entered by the Court.

NYKO reserves its right to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**:

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

To the best of NYKO's information and belief and subject to further investigation and supplementation, the following products developed by NYKO practice one or more claims of the '848 patent: the NYKO Charge Base (Item Nos. 83016-83019), the NYKO Charge Base 2 (Item Nos. 83053-83055) and the NYKO Charge Base 3 (Item Nos. 83100).  Information regarding places and dates sold for each of the NYKO Charge Bases in located in Bates Nos. NT001123-NT001139, NT001140-NT001141.

NYKO Charge Base meets all the claim limitations of at least asserted claims 1-5, 7, 8, 11-13 and 16-17; NYKO Charge Base 2 meets all the claim limitations of at least asserted claims 1-5, 7, 8, 11-13, and 16-17 and NYKO Charge Base 3 meets all the claim limitations of at least asserted claims 1-5, 7, 8, 10-13 and 15-17.

As discovery is still in its early stages, NYKO reserves its right to supplement its response.  Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.

**INTERROGATORY NO. 5**:

Separately for each Instrumentality identified in response to Interrogatory No. 4, state on a monthly, quarterly and annual basis Nyko's United States sales

-11-

1
2
3
4
5

(including, but not limited to, unit sales, gross dollar sales and net dollar sales), gross margin and operating profit (or contribution), and all costs included in calculating gross margin and operating profit, since each Instrumentality was first sold to the present.

6

**RESPONSE TO INTERROGATORY NO. 5**:

7

NYKO incorporates its General Objections.

8
9
10
11
12
13
14

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court.

15
16

Subject to, and without waiving any objections, NYKO responds as follows:

17
18
19
20
21
22

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NYKO will specify documents containing responsive information and/or make the responsive documents available for examination pursuant to the mutually agreeable terms of a protective order entered by the Court.  NYKO reserves its right to supplement its response.

23

**SUPPLMENTAL RESPONSE TO INTERROGATORY NO. 5**:

24
25
26

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

27

See Bates Nos. NT001123-NT001139, NT001140-NT001141.

28

As discovery is still in its early stages, NYKO reserves its right to

-12-

CHRISTIE, PARKER & HALE, LLP

supplement its response.   Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.

**INTERROGATORY NO. 6**:

Describe in detail "[t]he product Nyko introduced in January 2007 [that] includes each and every feature of the claimed invention," as referenced in Docket No. 44 [Third Declaration of Amir Navid in Support of Plaintiffs Ex Parte Application for (1) Temporary Restraining Order and (2) Order to Show Cause re: Preliminary Injunction), ¶ 17. This includes stating when the product was first publicly announced, first offered for sale, first sold (and to whom), the product name and number, the SKU number, who was involved in its design and development and when, all printed publications describing or depicting the product prior to March 8, 2007, and identifying all identify Persons with knowledge thereof and all Documents and Things evidencing or referring thereto.

**RESPONSE TO INTERROGATORY NO. 6**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court.

Subject to, and without waiving any objections, NYKO responds as

-13-

follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NYKO will specify documents containing responsive information and/or make the responsive documents available for examination pursuant to the mutually agreeable terms of a protective order entered by the Court.  NYKO reserves its right to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6**:

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

NYKO's Charge Base was first publicly announced in January 2007.  *See* NT000952-NT000943.   As to the first offer for sale and sale, see NYKO' supplemental response to Interrogatory No. 2.  As to the sales information, see Bates Nos. NT001123-NT001139, NT001140-NT001141.   Amir Navid was involved in the design and development of this product.   As to printed publications describing or depicting the product, see NT000925-NT000943.

As discovery is still in its early stages, NYKO reserves its right to supplement its response.   Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.

**INTERROGATORY NO. 7**:

Describe in detail your contentions regarding why Navid purportedly did not commit inequitable conduct or have unclean hands during the prosecution of the Patent-in-Suit, as alleged in any of Defendants' Answers and Counterclaims,

-14-

CHRISTIE, PARKER & HALE, LLP

including: (a) when Navid became aware of each barring event; (b) whether you contend the on-sale status and publications of the barring events were material or not, and if not, why not; (c) why Navid did not disclose each barring event to the U.S. Patent and Trademark Office; (d) if you contend that Navid did not intend to deceive the U.S. Patent and Trademark Office, why not; and (e) identify all Documents and Things that you and Navid intend to rely on to support your contentions.

**RESPONSE TO INTERROGATORY NO. 7**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court.  NYKO objects that the interrogatory is improper because it purports to require NYKO to respond to PDP's invalidity contentions before PDP has served its invalidity contentions.  NYKO objects that the term "barring event" is not defined and is vague and ambiguous.

Subject to, and without waiving any objections, NYKO responds as follows:

United States Patent No. 8,143,848 is valid and enforceable.  There are no "barring events."  There are no factual or legal bases for any claim of inequitable conduct in view of *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F. 3d 1276,

-15-

1287-88 (Fed. Cir. 2011).  There are no factual or legal bases for any claim of "unclean hands."   NYKO reserves all rights to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7**:

NYKO hereby asserts and incorporates by reference all of its previously asserted objections.  Subject to those objections, NYKO responds that:

NYKO is not required to supplement its response, but voluntarily agreed to supplement its response to respond specifically to the claimed references (many of which are simply hypothetical) that were identified by PDP in its correspondence dated October 9, 2012.  By supplementing its response, NYKO does not agree to provide any further supplements simply because PDP claims to identify any additional actual or hypothetical references in other correspondence or elsewhere.  Given that this case is still in its early stages, neither Defendant has provided its unenforceability contentions, and to date, PDP only identified three actual references and merely provided a general description of several more hypothetical references, NYKO reserves all rights to make additional contentions as to the issue of inequitable conduct for any reason and should not be limited in any way by the contentions asserted in this response.   NYKO has not yet identified which documents it intends to rely upon regarding its contentions.  Given that PDP demanded that NYKO provide its preliminary contentions on seven separate references (real and hypothetical), PDP's Interrogatory No. 7 shall be deemed to count as seven separate interrogatories under Rule 33.

CHRISTIE, PARKER & HALE, LLP

-16-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>PDP's Claimed Reference No. 1</u>: NYKO's purported "public disclosures in January 2007 of a product that 'includes each and every feature of the claimed invention.'"

Under the *Therasense* standard, a party asserting inequitable conduct must prove by clear and convincing evidence that the applicant (1) acted with the specific intent to deceive the PTO, meaning the applicant knew of the reference, knew it was material and made a deliberate decision to withhold it, and (2) that the non-disclosed reference was but-for material.  A failure of proof on any element precludes a finding of inequitable conduct.  Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.  A finding that a misrepresentation or omission amounted to gross negligence or negligence under a "should have known" standard does not satisfy the intent requirement.  To meet the clear and convincing standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.  A Court can no longer infer intent to deceive from the non-disclosure of a reference solely because that reference was known and material.  Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence.  In addition, inequitable conduct should only be applied in instances where the patentee's claimed misconduct resulted in an unfair benefit of receiving an unwarranted claim.  See *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); *1st Media, LLC v. Electronic Arts, Inc.*, ___ F.3d ___, 2012 U.S. App. LEXIS 19250 (Fed. Cir. Sept. 13, 2012) (certified for

CHRISTIE, PARKER & HALE, LLP

-17-

publication).

Mr. Navid does not recall when he first learned of this claimed reference. The claimed reference is not material.  The charge base NYKO introduced in January 2007 was a prototype charge base.  The actual working charge base was not sold until after March 7, 2007.  Dissemination of advertising materials, promotional information and other information about a product is not evidence of an on-sale bar as a matter of law (*Linear Tech. Co. v. Micrel, Inc*., 275 F.3d 1040, 1050-51 (Fed. Cir. 2001), and therefore cannot be material as to patentability. Moreover, this reference is not material because the claims of the patent-in-suit are entitled to the priority of U.S. Provisional Application No. 60/982,364 ("Provisional Application").  One of ordinary skill in the art, including Mr. Navid, recognizes that the claims of the '848 patent are supported by the disclosure of the Provisional Application. *See Tronzo v. Biomet, Inc*., 156 F. 3d 1154, 1159 (Fed. Cir. 1998); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE,* 264 F.3d 1111, 1118-20 (Fed. Cir. 2001).  For the sake of brevity, NYKO hereby incorporates its full response to PDP's Interrogatory No. 13 which demonstrates more fully how and why the claims of the patent-in-suit are entitled to the priority of the Provisional Application.  In addition, there is no evidence that any "public disclosure" in fact disclosed each and every claimed feature of the claimed invention.  There may be additional reasons why the reference is not material and NYKO reserves all rights to assert additional bases for nonmateriality.

As to specific intent, Mr. Navid did not make any deliberate decision to withhold this reference.  There would have been no reason for Mr. Navid to even consider providing this to the PTO because it is not material to patentability.  Mr.

-18-

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Navid did not deceive the PTO, nor did he intend to.  He did not act with any intent to deceive, let alone any specific intent to deceive the PTO.  There is no reasonable inference to be drawn of a specific intent to deceive, nor is there an inference of a specific intent to deceive that would be the single most reasonable inference.  There are no facts to support a claim of specific intent to deceive, let alone clear and convincing evidence.  In addition, the claimed reference is not but-for material.  Mr. Navid does not believe the claimed reference is material in any way.  There are no facts to suggest the claimed reference is material, let alone clear and convincing evidence.  The granting of the '848 Patent did not result in an unfair benefit of receiving an unwarranted claim.

PDP's Claimed Reference No. 2: NYKO's purported "January 8, 2007 press release" which includes the text "[t]he Charge Base for PS3 has a suggested retail price of $39.99," which was printed on May 29, 2012.

Under the *Therasense* standard, a party asserting inequitable conduct must prove by clear and convincing evidence that the applicant (1) acted with the specific intent to deceive the PTO, meaning the applicant knew of the reference, knew it was material and made a deliberate decision to withhold it, and (2) that the non-disclosed reference was but-for material.  A failure of proof on any element precludes a finding of inequitable conduct.  Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.  A finding that a misrepresentation or omission amounted to gross negligence or negligence under

-19-

a "should have known" standard does not satisfy the intent requirement.  To meet the clear and convincing standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.  A Court can no longer infer intent to deceive from the non-disclosure of a reference solely because that reference was known and material.  Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence.  In addition, inequitable conduct should only be applied in instances where the patentee's claimed misconduct resulted in an unfair benefit of receiving an unwarranted claim.  *See Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276 (Fed. Cir. 2011); *1st Media, LLC v. Electronic Arts, Inc.*, ___ F.3d ___, 2012 U.S. App. LEXIS 19250 (Fed. Cir. Sept. 13, 2012) (certified for publication).

The claimed reference is not material.  Although this document is purportedly dated January 8, 2007, it is unclear what date or in what manner this purported reference became a public document.  In addition, as of January 2007, NYKO did not yet have a finished product, only a prototype product.  This document is not evidence of a sale, offer for sale or public use.  Mr. Navid does not recall when he first learned of this claimed reference.  This reference does not disclose the product, does not disclose any photo of the product and certainly does not disclose each and every claimed feature of the product.  Also, dissemination of advertising materials, promotional information and other information about a product is not evidence of an on-sale bar as a matter of law. *Linear Tech. Co. v. Micrel, Inc*., 275 F.3d 1040, 1050-51 (Fed. Cir. 2001).

-20-

CHRISTIE, PARKER & HALE, LLP

Moreover, this reference is not material because the claims of the patent-in-suit are entitled to the priority of U.S. Provisional Application No. 60/982,364 ("Provisional Application").  One of ordinary skill in the art, including Mr. Navid, recognizes that the claims of the '848 patent are supported by the disclosure of the Provisional Application. *See Tronzo v. Biomet, Inc.*, 156 F. 3d 1154, 1159 (Fed. Cir. 1998); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118-20 (Fed. Cir. 2001).  For the sake of brevity, NYKO hereby incorporates its full response to PDP's Interrogatory No. 13 which demonstrates more fully how and why the claims of the patent-in-suit are entitled to the priority of the Provisional Application.  There may be additional reasons why the reference is not material and NYKO reserves all rights to assert additional bases for nonmateriality.

As to specific intent, Mr. Navid did not make any deliberate decision to withhold this reference.  There would have been no reason for Mr. Navid to even consider providing this to the PTO because it is not material to patentability.  Mr. Navid did not deceive the PTO, nor did he intend to.  He did not act with any intent to deceive, let alone any specific intent to deceive the PTO.  There is no reasonable inference to be drawn of a specific intent to deceive, nor is there an inference of a specific intent to deceive that would be the single most reasonable inference.  There are no facts to support a claim of specific intent to deceive, let alone clear and convincing evidence.  In addition, the claimed reference is not but-for material.  Mr. Navid does not believe the claimed reference is material in any way.  There are no facts to suggest the claimed reference is material, let alone clear and convincing evidence.  The granting of the '848 Patent did not result in

-21-

CHRISTIE, PARKER & HALE, LLP

an unfair benefit of receiving an unwarranted claim.

PDP's Claimed Reference No. 3: the purported publication of a press release with a date of January 8, 2007, which PDP claims was on NYKO's website by March 6, 2007, and which was printed on May 26, 2012.

Under the *Therasense* standard, a party asserting inequitable conduct must prove by clear and convincing evidence that the applicant (1) acted with the specific intent to deceive the PTO, meaning the applicant knew of the reference, knew it was material and made a deliberate decision to withhold it, and (2) that the non-disclosed reference was but-for material.   A failure of proof on any element precludes a finding of inequitable conduct.   Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.   A finding that a misrepresentation or omission amounted to gross negligence or negligence under a "should have known" standard does not satisfy the intent requirement.  To meet the clear and convincing standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.   A Court can no longer infer intent to deceive from the non-disclosure of a reference solely because that reference was known and material.   Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence.   In addition, inequitable conduct should only be applied in instances where the patentee's claimed misconduct resulted in an unfair benefit of receiving

-22-

CHRISTIE, PARKER & HALE, LLP

an unwarranted claim.  *See Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276 (Fed. Cir. 2011); *1st Media, LLC v. Electronic Arts, Inc*., ___ F.3d ___, 2012 U.S. App. LEXIS 19250 (Fed. Cir. Sept. 13, 2012) (certified for publication).

The claimed reference is not material.  Although this document is purportedly dated January 8, 2007, it is unclear what date or in what manner this purported reference became a public document.  In addition, as of January 2007, NYKO did not yet have a finished product, only a prototype product.  This document is not evidence of a sale, offer for sale or public use.  Mr. Navid does not recall when he first learned of this claimed reference.  This reference does not disclose the product, does not disclose any complete picture or complete photo of the product and certainly does not disclose each and every claimed feature of the product.  Also, dissemination of advertising materials, promotional information and other information about a product is not evidence of an on-sale bar as a matter of law.  *Linear Tech. Co. v. Micrel, Inc*., 275 F.3d 1040, 1050-51 (Fed. Cir. 2001).  Moreover, this reference is not material because the claims of the patent-in-suit are entitled to the priority of U.S. Provisional Application No. 60/982,364 ("Provisional Application").  One of ordinary skill in the art, including Mr. Navid, recognizes that the claims of the '848 patent are supported by the disclosure of the Provisional Application. *See Tronzo v. Biomet, Inc*., 156 F. 3d 1154, 1159 (Fed. Cir. 1998); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118-20 (Fed. Cir. 2001).  For the sake of brevity, NYKO hereby incorporates its full response to PDP's Interrogatory No. 13 which demonstrates more fully how and why the claims of

-23-

CHRISTIE, PARKER & HALE, LLP

the patent-in-suit are entitled to the priority of the Provisional Application.  There may be additional reasons why the reference is not material and NYKO reserves all rights to assert additional bases for nonmateriality.

As to specific intent, Mr. Navid did not make any deliberate decision to withhold this reference.  There would have been no reason for Mr. Navid to even consider providing this to the PTO because it is not material to patentability.  Mr. Navid did not deceive the PTO, nor did he intend to.  He did not act with any intent to deceive, let alone any specific intent to deceive the PTO.  There is no reasonable inference to be drawn of a specific intent to deceive, nor is there an inference of a specific intent to deceive that would be the single most reasonable inference.  There are no facts to support a claim of specific intent to deceive, let alone clear and convincing evidence.  In addition, the claimed reference is not but-for material.  Mr. Navid does not believe the claimed reference is material in any way.  There are no facts to suggest the claimed reference is material, let alone clear and convincing evidence.  The granting of the '848 Patent did not result in an unfair benefit of receiving an unwarranted claim.

PDP's Claimed Reference No. 4: a review of the NYKO charge base for PS3 with a listed date of January 9, 2007 from www.ign.com which was printed on May 10, 2012.

Under the *Therasense* standard, a party asserting inequitable conduct must prove by clear and convincing evidence that the applicant (1) acted with the specific intent to deceive the PTO, meaning the applicant knew of the reference,

-24-

CHRISTIE, PARKER & HALE, LLP

knew it was material and made a deliberate decision to withhold it, and (2) that the non-disclosed reference was but-for material.  A failure of proof on any element precludes a finding of inequitable conduct.  Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.  A finding that a misrepresentation or omission amounted to gross negligence or negligence under a "should have known" standard does not satisfy the intent requirement.  To meet the clear and convincing standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.  A Court can no longer infer intent to deceive from the non-disclosure of a reference solely because that reference was known and material.  Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence.  In addition, inequitable conduct should only be applied in instances where the patentee's claimed misconduct resulted in an unfair benefit of receiving an unwarranted claim. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); *1st Media, LLC v. Electronic Arts, Inc.*, ___ F.3d ___, 2012 U.S. App. LEXIS 19250 (Fed. Cir. Sept. 13, 2012) (certified for publication).

The claimed reference is not material.  Although this document is purportedly dated January 9, 2007, it is unclear what date or in what manner this purported reference became a public document.  In addition, as of January 2007, NYKO did not yet have a finished product, only a prototype product.  This document is not evidence of a sale, offer for sale or public use.  Mr. Navid does

CHRISTIE, PARKER & HALE, LLP

not recall when he first learned of this claimed reference.  This reference does not disclose the product, does not disclose any complete picture or complete photo of the product and certainly does not disclose each and every claimed feature of the product.  Also, dissemination of advertising materials, promotional information and other information about a product is not evidence of an on-sale bar as a matter of law.  *Linear Tech. Co. v. Micrel, Inc*., 275 F.3d 1040, 1050-51 (Fed. Cir. 2001).  Moreover, this reference is not material because the claims of the patent-in-suit are entitled to the priority of U.S. Provisional Application No. 60/982,364 ("Provisional Application").   One of ordinary skill in the art, including Mr. Navid, recognizes that the claims of the '848 patent are supported by the disclosure of the Provisional Application. *See Tronzo v. Biomet, Inc*., 156 F. 3d 1154, 1159 (Fed. Cir. 1998); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118-20 (Fed. Cir. 2001).  For the sake of brevity, NYKO hereby incorporates its full response to PDP's Interrogatory No. 13 which demonstrates more fully how and why the claims of the patent-in-suit are entitled to the priority of the Provisional Application.  There may be additional reasons why the reference is not material and NYKO reserves all rights to assert additional bases for nonmateriality.

As to specific intent, Mr. Navid did not make any deliberate decision to withhold this reference.  There would have been no reason for Mr. Navid to even consider providing this to the PTO because it is not material to patentability.  Mr. Navid did not deceive the PTO, nor did he intend to.  He did not act with any intent to deceive, let alone any specific intent to deceive the PTO.  There is no reasonable inference to be drawn of a specific intent to deceive, nor is there an

-26-

1
2
3
4
5
6
7
8

inference of a specific intent to deceive that would be the single most reasonable inference.  There are no facts to support a claim of specific intent to deceive, let alone clear and convincing evidence.  In addition, the claimed reference is not but-for material.  Mr. Navid does not believe the claimed reference is material in any way.  There are no facts to suggest the claimed reference is material, let alone clear and convincing evidence.  The granting of the '848 Patent did not result in an unfair benefit of receiving an unwarranted claim.

9
10
11
12
13

PDP's Hypothetical Claimed Reference Nos. 5-6:   NYKO selling or offering for sale, prior to March 7, 2007, any product that "includes each and every feature of the claimed invention."

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Under the *Therasense* standard, a party asserting inequitable conduct must prove by clear and convincing evidence that the applicant (1) acted with the specific intent to deceive the PTO, meaning the applicant knew of the reference, knew it was material and made a deliberate decision to withhold it, and (2) that the non-disclosed reference was but-for material.  A failure of proof on any element precludes a finding of inequitable conduct.  Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.  A finding that a misrepresentation or omission amounted to gross negligence or negligence under a "should have known" standard does not satisfy the intent requirement.  To meet the clear and convincing standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.  A Court can no

CHRISTIE, PARKER & HALE, LLP

longer infer intent to deceive from the non-disclosure of a reference solely because that reference was known and material.  Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence.  In addition, inequitable conduct should only be applied in instances where the patentee's claimed misconduct resulted in an unfair benefit of receiving an unwarranted claim.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); *1st Media, LLC v. Electronic Arts, Inc.*, ___ F.3d ___, 2012 U.S. App. LEXIS 19250 (Fed. Cir. Sept. 13, 2012) (certified for publication).

PDP has offered no evidence that NYKO did sell or offer to sell any product which includes each and every feature of the claimed invention prior to March 7, 2007.  Thus, there is no claimed reference, just a hypothetical event.  NYKO first sold its charge base product it introduced in 2007 in June 2007, and thus there is no on-sale bar as a matter of law.  *Linear Tech. Co. v. Micrel, Inc.*, 275 F.3d 1040, 1052-54 (Fed. Cir. 2001).  Even if PDP could prove by clear and convincing evidence that NYKO had sold or offered for sale this product between January 2007 and March 7, 2007, and even if PDP could prove by clear and convincing evidence that Mr. Navid had knowledge of such an event, that event would not have been material in any way.  The claims of the patent-in-suit are entitled to the priority of U.S. Provisional Application No. 60/982,364 ("Provisional Application").  One of ordinary skill in the art, including Mr. Navid, recognizes that the claims of the '848 patent are supported by the disclosure of the Provisional Application. *See Tronzo v. Biomet, Inc.*, 156 F. 3d 1154, 1159 (Fed.

-28-

Cir. 1998); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118-20 (Fed. Cir. 2001).  For the sake of brevity, NYKO hereby incorporates its full response to PDP's Interrogatory No. 13 which demonstrates more fully how and why the claims of the patent-in-suit are entitled to the priority of the Provisional Application.  There may be additional reasons why the hypothetical reference is not material and NYKO reserves all rights to assert additional bases for nonmateriality.

As to specific intent, it is impossible to respond because there is nothing to respond to.  There are no facts to suggest sales or offers for sale between January 2007 and March 7, 2007.  *Linear Tech. Co. v. Micrel, Inc.*, 275 F.3d 1040, 1052-54 (Fed. Cir. 2001).  Mr. Navid, therefore could not have made any deliberate decision to withhold anything material to patentability, because there is no evidence that any material to patentability was even known to Mr. Navid prior to March 7, 2007.  Mr. Navid could not have deceived the PTO, nor could he have intended to.  He could not have acted with any intent to deceive, let alone any specific intent to deceive the PTO.  There is no reasonable inference to be drawn of a specific intent to deceive, nor is there an inference of a specific intent to deceive that would be the single most reasonable inference.  There are no facts to support a claim of specific intent to deceive, let alone clear and convincing evidence.  In addition, the hypothetical reference, even if it exists, would not be but-for material.  There are no facts to suggest that this hypothetical reference would be material, let alone clear and convincing evidence.  The granting of the '848 Patent did not result in an unfair benefit of receiving an unwarranted claim.

CHRISTIE, PARKER & HALE, LLP

<u>PDP's Hypothetical Claimed Reference No. 7</u>:  any purported publication by or on behalf of NYKO, prior to March 7, 2007, regarding any product that "includes each and every feature of the claimed invention."

Under the *Therasense* standard, a party asserting inequitable conduct must prove by clear and convincing evidence that the applicant (1) acted with the specific intent to deceive the PTO, meaning the applicant knew of the reference, knew it was material and made a deliberate decision to withhold it, and (2) that the non-disclosed reference was but-for material.  A failure of proof on any element precludes a finding of inequitable conduct.  Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.  A finding that a misrepresentation or omission amounted to gross negligence or negligence under a "should have known" standard does not satisfy the intent requirement.  To meet the clear and convincing standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.  A Court can no longer infer intent to deceive from the non-disclosure of a reference solely because that reference was known and material.  Moreover, a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence.  In addition, inequitable conduct should only be applied in instances where the patentee's claimed misconduct resulted in an unfair benefit of receiving an unwarranted claim.  *See Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276 (Fed. Cir. 2011); *1st Media, LLC v. Electronic Arts, Inc*., ___ F.3d ___,

CHRISTIE, PARKER & HALE, LLP

-30-

2012 U.S. App. LEXIS 19250 (Fed. Cir. Sept. 13, 2012) (certified for publication).

PDP has failed to identify any actual reference so it is impossible for NYKO to fully respond and NYKO reserves all rights to specifically respond at the appropriate time should PDP at some point in the future actually identify a reference which meets the description of PDP's hypothetical reference.  Also, dissemination of advertising materials, promotional information and other information about a product is not evidence of an on-sale bar as a matter of law. *Linear Tech. Co. v. Micrel, Inc.*, 275 F.3d 1040, 1050-51 (Fed. Cir. 2001).  No such hypothetical reference would be material, additionally, because the claims of the patent-in-suit are entitled to the priority of U.S. Provisional Application No. 60/982,364 ("Provisional Application").  One of ordinary skill in the art, including Mr. Navid, recognizes that the claims of the '848 patent are supported by the disclosure of the Provisional Application. *See Tronzo v. Biomet, Inc.*, 156 F. 3d 1154, 1159 (Fed. Cir. 1998); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111, 1118-20 (Fed. Cir. 2001).  For the sake of brevity, NYKO hereby incorporates its full response to PDP's Interrogatory No. 13 which demonstrates more fully how and why the claims of the patent-in-suit are entitled to the priority of the Provisional Application.  There may be additional reasons why the hypothetical reference is not material and NYKO reserves all rights to assert additional bases for nonmateriality.

As to specific intent, it is impossible to respond, other than to say at the very least, PDP under no circumstance could prove such a hypothetical reference was material and therefore in no circumstance could Mr. Navid deceive the PTO

-31-

CHRISTIE, PARKER & HALE, LLP

or act with any intent to deceive, let alone, any specific intent to deceive the PTO. Under no circumstance could PDP show a reasonable inference of a specific intent to deceive, nor could it show an inference of a specific intent to deceive that would be the single most reasonable inference.  PDP would never be able to show facts to support a claim of specific intent to deceive, let alone clear and convincing evidence.  The hypothetical reference, even if it exists, would not be but-for material.  The granting of the '848 Patent did not result in an unfair benefit of receiving an unwarranted claim.

As discovery is still in its early stages, NYKO reserves its right to supplement its response.  Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.

**INTERROGATORY NO. 8**:

Describe in detail all of Nyko's efforts to determine whether any PDP Instrumentalities infringe any claim of the '848 Patent and/or read on any claim in the '295 Application, including: identify all PDP Instrumentalities acquired or analyzed; state the dates when Nyko first became aware of the PDP Instrumentalities; identify all Documents analyzed in such determination; describe the investigation of PDP's products and business; state why Nyko decided to conduct or commission the investigation; identify who requested, performed, and learned of any review, investigation or testing; describe when and where such activities took place; describe the results; and state the dates when Nyko first believed that any PDP Instrumentality infringed and/or read on any

-32-

claim.

**RESPONSE TO INTERROGATORY NO. 8**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the request seeks information that is subject to the attorney-client privilege and attorney work product doctrine.  NYKO reserves all rights to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8**:

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

NYKO first learned of Energizer/PDP's partnership and entry in the market on or about July 8th 2008 via an Energizer/PDP Press Release. (http://www.pdp.com/news.aspx?showarticle=11).  NYKO believed at that time that the Energizer/PDP products were very similar to NYKO's Charge Base product and would likely infringe NYKO's patent rights, however at that point in time, NYKO's patent had not yet issued.  After learning of PDP/Energizer's products, NYKO purchased PDP/Energizer sample product charge bases for PS3 and XBOX 360 and provided those product samples to its outside patent counsel Christie, Parker & Hale (CPH) for evaluation and analysis.  CPH performed an infringement analysis.  After the patent issued in 2012, NYKO filed suit against PDP and Energizer.  CPH still has custody of the product samples and they are available for inspection.  All documents regarding CPH's analysis are protected from discovery by the attorney-client privilege and the attorney work product

doctrine.

As discovery is still in its early stages, NYKO reserves its right to supplement its response.   Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.

**INTERROGATORY NO. 10**:

For each item and combination of Prior Art identified by PDP as invalidating any claim of the '848 Patent, describe in detail why each does not anticipate or render obvious any such claim, including: (a) providing a claim chart that describes in detail the differences between each item and combination of Prior Art and each limitation of each asserted claim; (b) describe any alleged "teaching away" by the Prior Art; (c) provide all bases for contentions with respect to secondary considerations of non obviousness, identifying any nexus between the claimed features and any of those considerations; (e) identify all Documents relied on in preparing Your response to this Interrogatory; and (I) identify the Person most knowledgeable regarding the underlying facts.

**RESPONSE TO INTERROGATORY NO. 10**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   NYKO objects that the request seeks information that is subject to the attorney-client privilege and attorney work product doctrine.  NYKO objects that this request is premature because PDP has

-34-

not yet served its invalidity contentions.  NYKO objects that PDP has failed to identify what specifically it contends is "Prior Art" and NYKO therefore cannot respond until PDP identifies what it contends is "Prior Art."  NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court. NYKO reserves all rights to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10**:

Subject to and without waiving any objections, NYKO responds as follows:

PDP has demanded that NYKO provide a response to nine specific PDP contentions outlined in a letter dated September 26, 2012.  NYKO does not believe it is required under the discovery rules to provide a specific response to each invalidity contention raised by PDP and reserves the right to make additional responses and make additional contentions regarding validity.  Because PDP demanded that NYKO respond specifically to nine separate contentions, this interrogatory response shall count as a response to at least nine separate interrogatories.

Defendants have failed to raise a prima facie case of anticipation and obviousness because the claim charts they provided during the TRO briefing and via subsequent correspondence rely upon references in the form of the Cole, U.S. Patent No. 7,942,747 (the Cole '747 patent) and Erickson (U.S. Patent No. 8,143,850) ("Erickson") that are not prior art to the claimed inventions.  Further, in the claim charts produced during the TRO briefing and 9/26/12 letter, Defendants fail to cite to subject matter in the cited references that alone or in combination discloses each and every feature of the claimed inventions.  Where

-35-

CHRISTIE, PARKER & HALE, LLP

combinations are relied upon, Defendants further fail to provide a valid reason as to why the references would have been properly combined at the time the invention was made.

Defendants argue that the claims are anticipated by the Cole '747 patent and are therefore unpatentable under 35 U.S.C. § 102(e).  However, the Cole '747 patent does not provide an unambiguous disclosure of every feature recited in the claims of the '848 patent.  In particular, its discussion of USB ports 22 in the storage rack (the Cole '747 patent, 4:42-48) begs the question of how the ports couple to the corresponding power input ports on hand-held video game controllers.  Indeed, FIG 4 of the Cole '747 patent shows the body of the controller spaced apart from the DC port, suggesting that a wire must be used.

Further, FIG. 4 of the Cole '747 patent shows the controllers sitting in a handle down orientation against the pegs on the rack.  The power input ports on the first party Xbox360 and PS3 wireless controllers are located on the top or forward portion of the controllers opposite the handles.  In the orientation shown in FIG. 4, the power input port of the Xbox or PS3 wireless controller would be disposed in an opposite direction away from the DC port on the rack.  As the Cole '747 patent makes no disclosure as to how the ports are connected, a user would look to the cables available for the first party controllers to provide power from the port on the rack to the port on the controller.  Thus, the Cole '747 patent appears to teach away from the asserted claims of the '848 patent.

Furthermore, the effective date of the Cole '747 patent as Section 102(e) "prior art" in the context of the claims asserted by Nyko, is at best November 1, 2007, the filing date of the Cole '747 patent -- which is *after* the '848 patent's priority date, October 24, 2007." the Cole '747 patent is *not* entitled to be treated as prior art as of May 3, 2006, the date on which Cole's predecessor PCT international application was filed (PCT/US2006/016944, hereafter "Cole PCT"), because the Cole PCT does not include an enabling written description of the

-36-

CHRISTIE, PARKER & HALE, LLP

1   pertinent subject matter.  *See In re Giacomini*, 612 F.3d 1380, 1385 (Fed. Cir.
2   2010) ("Section 102(e) codified the 'history of treating the disclosure of a U.S.
3   patent as prior art as of the filing date of the earliest U.S. application to which the
4   patent is entitled, *provided the disclosure was contained in the substance in the*
5   *said earliest application*.'") (citation omitted, emphasis added).

6        The Cole '747 patent itself acknowledges that "Applicant [only] claims the
7   benefit of the earlier filing dates of the PCT application and the provisional
8   application *for so much as is common with this application*." Cole, 1:10-12
9   (emphasis added).

10       Neither the Cole '747 patent nor the Cole PCT discloses "a plurality of DC
11  ports on the base, each of the DC ports configured to couple to and provide DC
12  power to a power input port of a respective one of the plurality of video game
13  controllers," as recited in combination with the other limitations of claim 1 of the
14  '848 patent.  To the contrary, the Cole PCT merely discloses a storage rack which,
15  in one embodiment, may have a USB adaptor:

16       [T]he cradle formed by the plurality of cantilever posts 11 has a universal
17       serial bus (USB) adapter.  The USB adapter connects to the game
18       controller allowing the game controller rack 10 to recharge a wireless game
19       controller.  This embodiment also allows USB communication between a
20       game controller and the game controller rack 10. Cole PCT, ¶[0025].

21       Contrary to the later-filed Cole '747 patent, the Cole PCT provides no
22  drawing of such a feature (compare Cole PCT, Figs. 1-7, with Cole, Figs. 4 and
23  4a).  Nor does the PCT describe in any detail exactly where or how the USB
24  adapter might be positioned, or that it is configured to couple directly to the
25  power input port of a video game controller, or that no wires are used.   In
26  ¶[0027], the Cole PCT discloses that the USB adapter can be "replaced with an
27  appropriate power plug which matches the power plug requirements of the game
28  controller."  But Cole PCT does not provide a description of how such a feature

-37-

CHRISTIE, PARKER & HALE, LLP

1  might be configured or where it might be placed.  The Cole PCT does not provide
2  an *enabling written description* of the feature of "a plurality of DC ports on the
3  base, each of the DC ports configured to couple to and provide DC power to a
4  power input port of a respective one of the plurality of video game controllers," as
5  recited in claim 1 of the '848 patent and as required under 35 U.S.C. § 112, first
6  paragraph, nor does it clearly and unambiguously disclose the claimed location of
7  the DC port relative to the opposing surfaces.  It is improper to rely on the later
8  filed drawing in the Cole '747 patent to interpret what Cole may have meant in
9  the earlier PCT when the drawing from the patent is nonexistent in the PCT.
10  Therefore, even the deficient disclosure of the Cole '747 patent cannot be treated
11  as prior art effective as of Cole PCT's filing date.  As such, the Cole patent is not
12  "prior art" to Nyko's '848 patent.

13       Subject to and incorporating the foregoing, the '848 Patent is not
14  anticipated by or rendered obvious over U.S. Patent No. 7,942,747 to Cole the
15  Cole '747 patent because the '747 patent is not prior art to the '848 patent.  The
16  '848 Patent is not anticipated by and rendered obvious over the Cole PCT at least
17  because the Cole PCT application does not disclose the claim elements of claim
18  1.  Defendants' previously produced claim charts during the PTO briefing that are
19  incomprehensible and legally and factually deficient in that they define the Cole
20  reference as including three different references, namely the Cole '747 patent, the
21  Cole PCT and the Cole provisional.  Subject to and including the arguments and
22  differences stated above, the Cole PCT fails to disclose "a plurality of DC ports
23  on the base, each of the DC ports configured to couple to and provide DC power
24  to a power input port of a respective one of the plurality of video game
25  controllers" nor does it disclose "wherein the at least one structure on the base
26  further comprises a plurality of pairs of opposite surfaces, each pair of surfaces
27  defining a respective docking bay of the plurality of docking bays each of the DC
28  ports being on the base between a respective one of the pairs of surfaces." The

-38-

1    Cole PCT application does not disclose the claim elements of claim 13, including
2    "a plurality of male mini-USB connectors supported by the base and each adapted
3    to provide DC power to a respective one of a plurality of video game controllers,"
4    "at least one docking structure defining a plurality of docking bays open in a first
5    direction and configured to receive from the first direction and align respective
6    ones of the plurality of video game controllers to couple to respective ones of the
7    plurality of male mini-USB connectors," and "a power input for connecting to a
8    power supply, the power input electrically coupled to the plurality of male mini-
9    USB connectors."  The Cole PCT application further does not disclose at least the
10   additional elements of asserted dependent claims 2-5, 7, 8, 10-12, 13, 15-17.  The
11   '848 Patent is not anticipated by or rendered obvious over the Provisional
12   Application 12/044295 to Cole because it does not appear to disclose any of the
13   claim limitations of the asserted claims 1-5, 7, 8, 10-12, 13, and 15-17.  To the
14   extent that PDP is trying to read teachings into the prior art based upon its
15   examination of the claimed subject matter, this is improper hindsight.

16        Because the Cole '747 patent is not "prior art" to Nyko's '848 patent, there
17   can be no good faith argument by Defendants that the claims are obvious based
18   on the combination of Cole with Brake et al. (U.S. 5,734,253), and that the claims
19   are obvious over the combination of Cole with Kumar et al. (U.S. 6,018,227)  In
20   addition, neither Brake et al. nor Kumar et al. teach or suggest a video game
21   controller charging system for charging a plurality of video game controllers, or a
22   DC port on the base between a respective pair of surfaces and being configured to
23   couple to and provide DC power to a power input port of a respective video game
24   controller.  The references appear to be *cumulative* to the information considered
25   by the Examiner during prosecution of the '848 patent, including the Huang and
26   Shaddle references.  Defendants cannot raise a "substantial question" of invalidity
27   by relying on cumulative references.  *See Tokai Corp. v. Easton Enters., Inc.*, 632
28   F.3d 1358, 1378 (Fed. Cir. 2011), reh'g denied, 2011 U.S. App. Lexis 7625 (Fed.

-39-

1   Cir. Apr. 1, 2011 (finding the newly cited reference to be cumulative to the prior

2   art considered by the PTO, and observing that "'[w]hen an attacker simply goes

3   over the same ground traveled by the PTO, part of the *burden* is to show that the

4   PTO was wrong in its decision to grant the patent.'" (citing *Am. Hoist & Derrick*

5   *Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) (abrogated on

6   other grounds) *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276, 1288

7   (Fed. Cir. 2011)).

8          The '848 Patent is not rendered obvious over Cole in view of Brake (U.S.

9   Patent No. 5,734,253) for all the above reasons regarding the Cole applications

10  and patents.  Additionally, Brake fails to rectify the deficiencies of the respective

11  Cole applications and patents as stated above.  Brake does not appear to disclose

12  at least the following elements of claim 1 which the Cole applications and patents

13  also lack: "a plurality of DC ports on the base, each of the DC ports configured to

14  couple to and provide DC power to a power input port of a respective one of the

15  plurality of video game controllers" and "wherein the at least one structure on the

16  base further comprises a plurality of pairs of opposite surfaces, each pair of

17  surfaces defining a respective docking bay of the plurality of docking bays each

18  of the DC ports being on the base between a respective one of the pairs of

19  surfaces."  Brake also does not appear to disclose at least the following elements

20  of claim 13 which the Cole applications and patents also lack: "a plurality of male

21  mini-USB connectors supported by the base and each adapted to provide DC

22  power to a respective one of a plurality of video game controllers," "at least one

23  docking structure defining a plurality of docking bays open in a first direction and

24  configured to receive from the first direction and align respective ones of the

25  plurality of video game controllers to couple to respective ones of the plurality of

26  male mini-USB connectors," and "a power input for connecting to a power

27  supply, the power input electrically coupled to the plurality of male mini-USB

28  connectors."  Nor does Brake appear to disclose the elements of at least the

-40-

following asserted dependent claims: 2-5, 7, 8, 10, 11, 12, and 15-17.  Further, there are no reasons or motivation to combine the Cole and Brake references.

The '848 Patent would not have been obvious over Cole in view of Kumar (U.S. Patent No. 6,018,227) for all the above reasons regarding the Cole applications and patents.  Additionally, Kumar fails to rectify the deficiencies of the respective Cole applications and patents as stated above.  Kumar does not appear to disclose the following elements of claim 1 which the Cole applications and patents also lack: "a plurality of DC ports on the base, each of the DC ports configured to couple to and provide DC power to a power input port of a respective one of the plurality of video game controllers" and "wherein the at least one structure on the base further comprises a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays each of the DC ports being on the base between a respective one of the pairs of surfaces."  Kumar also does not appear to disclose at least the following elements of claim 13 which the Cole applications and patents also lack: "a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of a plurality of video game controllers," "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors," and "a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors."  Nor does Kumar appear to disclose the elements of at least the following asserted dependent claims: 2-5, 7, 8, 10, and 15-17.  Further, there are no reasons or motivation to combine the Cole and Kumar references.

The '848 Patent is not rendered obvious over Erickson (U.S. Patent No. 8,143,850, U.S. Application No. 60/994,263) at least because Erickson is not prior art due to the fact that the '848 Patent was invented prior to the Erickson

-41-

CHRISTIE, PARKER & HALE, LLP

invention.   Further, Erickson discloses a system 10 for charging two portable devices 12a, 12b which are game controllers (see Erickson, paragraph [0031], and Fig. 4A).   However, Erickson does not appear to teach or suggest a plurality of pairs of opposite surfaces, each pair of surfaces defining a respective docking bay of the plurality of docking bays, and each of the DC ports being on the base between a respective one of the pairs of surfaces.   Rather, Erickson discloses coupling inductors 36a, 36b in recesses 34a, 34b under a base unit shell 42 (see Erickson, paragraph [0038], and Fig. 4A).

The '848 Patent is not anticipated by or rendered obvious over Erickson in view of Cole at least because Erickson is not prior art due to the fact that the '848 Patent was invented prior to the Erickson invention and at least in light of the previous deficiencies of the Cole applications and patents as described above.

Defendants assert that claims of the '848 patent are unpatentable as being obvious over Erickson (U.S. 8,143,850) in combination with numerous references.   Erickson was considered by the patent examiner during prosecution of the '848 patent.  (*See* '848 patent, p. 2 (listing US 2009/0072784 to Erickson). As such, the Defendants' burden on invalidity is particularly heavy.  *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008).

Erickson discloses a system 10 for charging two portable devices 12a, 12b which are game controllers.   Erickson, 4:66 - 5:4, and Fig. 4A.   Erickson discloses coupling inductors 36a, 36b in recesses 34a, 34b under a base unit shell 42. *Id.*,6:13-19, and Fig. 4A)  However, Erickson does not teach or suggest a DC port on the base between a respective opposite pair of surfaces and being configured to couple to and provide DC power to a power input port of a respective video game controller.   Rather, Erickson *teaches away* from any such DC ports on the base by using an inductive (magnetic) recharging base which interacts with a battery coupling inductor to recharge the battery, without external charging contact points and without DC power.  *Id.*, 1:54-58, 2:11-20.

-42-

CHRISTIE, PARKER & HALE, LLP

1    Defendants also cite the Brake et al., Huang, Scholder, Kaji et al., and
2    Kumar et al. references, but leave it to one's imagination to understand how a
3    skilled person would have found Nyko's patent claims to be obvious in view of
4    the cited combination of references.   The Supreme Court has rejected this
5    approach as inadequate.  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 417-18
6    (2007) ("[A] patent composed of several elements is not proved obvious merely
7    by demonstrating that each of its elements was, independently, known in the prior
8    art.").   The claim charts provided Defendants' TRO Opposition and PDP's
9    9/26/12 correspondence fail to provide a "reasoned explanation" to support the
10   combination of references.  Those charts merely identify the discrete disclosures
11   of each of the references; they do not show how or why a skilled person would
12   have purportedly combined the references' respective teachings to arrive at
13   Nyko's claimed invention.

14   The secondary references cited by Defendants are merely cumulative with
15   the art of record, and contain other distinguishing characteristics.   Huang and
16   Shaddle were considered by the examiner during prosecution of the '848 patent.
17   Neither reference teaches or suggests a video game controller charging system for
18   charging a plurality of video game controllers.   Nor do they teach or suggest a DC
19   port on the base between a respective pair of surfaces and being configured to
20   couple to and provide DC power to a power input port of a respective video game
21   controller.   Defendants cannot raise a "substantial question" of invalidity by
22   relying on cumulative references.  *Tokai Corp.*, 632 F.3d at 1378.

23   A review of the totality of Defendants' arguments is telling as to the
24   inadequacy of its obviousness position.  Defendants cannot locate from what it
25   dubs the "crowded" prior art a single prior art reference (including PDP's own
26   prototype design) that discloses each and every limitation of the claimed
27   invention arranged in the manner set forth in the claims. .*See Celsis in Vitro, Inc.*
28   *v. Cellzdirect, Inc.,* 664 F.3d 922, 927–928 (Fed. Cir. 2012) (Claims nonobvious

-43-

1   where large body of prior art literature failed to disclose the claimed invention.)
2   Here, even Sony and Microsoft – two of the world's largest game console
3   manufacturers – failed to disclose or suggest the claimed invention, which is
4   additional evidence of nonobviousness.  PDP's original design with a moving
5   member on a neck that comes down over the controller never materialized but
6   instead later "evolved" into the accused products that embody the features set
7   forth in the '848 patent.   All of this undisputable evidence supports the
8   nonobviousness of the asserted claims.

9       The '848 Patent is not rendered obvious over Cole and/or Erickson in view
10   of Scholder (U.S. Patent No. 5,327,067), Huang (U.S. Patent No. 6,669,513), Kaji
11   (U.S. Patent No. 7,750,599), Kumar (U.S. Patent No. 5,734,253), and/or Brake
12   (U.S. Patent No. 5,734,253) for all the above reasons regarding the Cole
13   applications and patents and the Erickson reference.[1]   Additionally, Scholder,
14   Huang, Kaji, Kumar and Brake fail to rectify the deficiencies of the respective
15   Cole applications and patents and/or Erickson reference as stated above.  Because
16   Erickson is not prior art, it will not be discussed in combination with the other
17   patents further here.  See additional reasons of non-obviousness regarding the
18   Cole applications and patents in combination with Brake and Kumar in the
19   descriptions above.  Scholder, Huang and Kaji do not appear to disclose at least
20   the following elements of claim 1 which the Cole applications and patents also
21   lack: "a plurality of DC ports on the base, each of the DC ports configured to
22   couple to and provide DC power to a power input port of a respective one of the
23   plurality of video game controllers" and "wherein the at least one structure on the
24   base further comprises a plurality of pairs of opposite surfaces, each pair of
25   surfaces defining a respective docking bay of the plurality of docking bays each
26   of the DC ports being on the base between a respective one of the pairs of

27
28   [1] This asserted invalidity contention is, in particular, overly burdensome and oppressive in that it requests NYKO's response to a possibility of over undefined 300 combinations.

-44-

surfaces."   Scholder, Huang and Kaji also do not appear to disclose at least the following elements of claim 13 which the Cole applications and patents also lack: "a plurality of male mini-USB connectors supported by the base and each adapted to provide DC power to a respective one of a plurality of video game controllers," "at least one docking structure defining a plurality of docking bays open in a first direction and configured to receive from the first direction and align respective ones of the plurality of video game controllers to couple to respective ones of the plurality of male mini-USB connectors," and "a power input for connecting to a power supply, the power input electrically coupled to the plurality of male mini-USB connectors."   Scholder, Huang and Kaji were not asserted by PDP regarding any of asserted dependent claims.   Further, there are no reasons or motivation to combine the Cole applications or patents and/or Erickson with the Scholder, Huang, Kumar, Kaji and/or Brake references.

The '848 Patent is not anticipated by "The product Nyko introduced in January 2007 [that] includes each and every feature of the claimed invention," as referenced in Navid's third declaration in support of Nyko's Ex Parte Application for a Temporary Restraining Order because that product is not a barring event to the '848 Patent.  *See also* NYKO's supplemental response to Interrogatory No. 7.

The '848 Patent is not anticipated by or rendered obvious over Nyko's January 8, 2007 press release announcing that "[t]he Charge Base for PS3 has a suggested retail price of $39.99." (Docket No. 41-1 [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to Application for TRO], Exhibit A) because that product is not a barring event to the '848 Patent.  *See also* NYKO's supplemental response to Interrogatory No. 7.

The '848 Patent is not anticipated by or rendered obvious over Nyko's publication of its press release on at least its public website by March 6, 2007 at the latest. (Docket No. 41-2 [Supplemental Declaration of Steven M. Hanle in Support of Defendants' Opposition to Application for TRO], Exhibit B) because

-45-

1   that product is not a barring event to the '848 patent.  *See also* NYKO's

2   supplemental response to Interrogatory No. 7.

3        This response in no way admits that the preceding references are analogous

4   prior art.  Further, NYKO does not believe that there are any reasons to combine

5   any of the preceding asserted prior art combinations under the standard set out in

6   *KSR*.

7        This list shall not be construed as an exhaustive list, and NYKO reserves

8   the right to include additional validity arguments and to take additional or

9   alternative validity positions such defenses become apparent through the course

10  of discovery and this litigation.  In addition, NYKO reserves the right to update

11  its response to this interrogatory in the event that PDP's current contentions

12  change.  Further, NYKO's analysis of the documents is continuing and NYKO

13  has not yet determined all the documents which might relate to this request.

14

15  **INTERROGATORY NO. 11**:

16       Describe in detail the level of ordinary skill in the art pertaining to the

17  subject matter of the '848 Patent that Nyko contends is applicable under 35 U.S.C.

18  §§ 101 *et seq.* (including the date at which Nyko contends the level of ordinary

19  skill in the art is measured), and identify all Documents and all Persons with

20  relevant knowledge relied on in preparing Your response to this Interrogatory.

21

22  **RESPONSE TO INTERROGATORY NO. 11**:

23       NYKO incorporates its General Objections.

24       NYKO objects that this interrogatory is compound.  NYKO objects that the

25  request is overbroad, unduly burdensome and not reasonably calculated to lead to

26  the discovery of admissible evidence.

27       Subject to, and without waiving any objections, NYKO responds as

28

-46-

CHRISTIE, PARKER & HALE, LLP

follows:  The level of ordinary skill in the art pertaining to the subject matter of the '848 Patent is a B.S. in engineering or other technical training in electromechanical product design or equivalent work experience in product development in the video game accessory arts.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11**:

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

Relevant documents include: NT000001-NT000271, U.S. Patent No. 8,143,848 and U.S. Provisional Application No. 60/982,364.   Persons with relevant knowledge include Amir Navid.

As discovery is still in its early stages, NYKO reserves its right to supplement its response. Further, NYKO's analysis of the documents is continuing and NYKO has not yet determined all the documents which might relate to this request.


**INTERROGATORY NO. 14**:

Identity all Persons that Nyko has contacted, been contacted by, or negotiated with in an effort for that Person to obtain a license, covenant not to sue, or other right to the '848 Patent or '295 Application, and describe such contacts or negotiations, including whether that Person obtained a license, covenant not to sue, or other right, and for each such license, covenant not to sue, or other right granted or offered, the identity of the Person or company who entered into or negotiated the agreement with Nyko, the date of such agreement, the terms of such agreement or proposed agreement, the date that negotiations on

-47-

CHRISTIE, PARKER & HALE, LLP

the agreement or proposed agreement began, and the outcome of any negotiations relating to the agreement or proposed agreement.

**RESPONSE TO INTERROGATORY NO. 14**:

NYKO incorporates its General Objections.

NYKO objects that this interrogatory is compound.  NYKO objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  NYKO objects that the request seeks information that is subject to the attorney-client privilege and attorney work product doctrine.  NYKO objects that the request seeks information that is confidential and to the extent NYKO produces or makes available for production any responsive information, it will be produced under a mutually agreeable protective order entered by the Court.

Subject to, and without waiving any objections, NYKO responds as follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, NYKO will specify documents containing responsive information and/or make the responsive documents available for examination pursuant to the mutually agreeable terms of a protective order entered by the Court.  NYKO reserves its right to supplement its response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14**:

NYKO hereby incorporates all of its prior objections.  Subject to, and without waiving any objections, NYKO responds as follows:

*See* NT000813-NT000860.

As discovery is still in its early stages, NYKO reserves its right to

-48-

CHRISTIE, PARKER & HALE, LLP

1  supplement its response. Further, NYKO's analysis of the documents is
2  continuing and NYKO has not yet determined all the documents which might
3  relate to this request.
4
5
6  DATED: October 19, 2012                Respectfully submitted,
7                                          CHRISTIE, PARKER & HALE, LLP
8
9                                          By /s/ G. Warren Bleeker
                                              Art Hasan
10                                             G. Warren Bleeker
                                              Katherine L. Quigley
11
                                           Attorneys for Plaintiff,
12                                         NYKO TECHNOLOGIES, INC.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CHRISTIE, PARKER & HALE, LLP

-49-

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 19, 2012, I have served a true copy of this document via e-mail (per agreement of the parties) to the individuals addressed as follows:

Steven M. Hanle, Esq.
Daniel N. Yannuzzi, Esq.
Gray M. Buccigross, Esq.
Matthew Mueller, Esq.
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626
shanle@sheppardmullin.com
dyannuzzi@sheppardmullin.com
gbuccigross@sheppardmullin.com
mmueller@sheppardmullin.com
Counsel for Defendants

I am a member of the Bar of this Court.

Executed on October 19, 2012 at Glendale, California.

*/s/ G. Warren Bleeker*
G. Warren Bleeker

GWB PAS1197737.2-*-10/19/12 8:58 PM

-50-

CHRISTIE, PARKER & HALE, LLP