1   **ART HASAN, CA Bar No. 167323**
    art.hasan@cph.com
2   **G. WARREN BLEEKER, CA Bar No. 210834**
    warren.bleeker@cph.com
3   **KATHERINE L. QUIGLEY, CA Bar No. 258212**
    katherine.quigley@cph.com
4   **CHRISTIE, PARKER & HALE, LLP**
    **655 North Central Avenue, Suite 2300**
5   **Glendale, California 91203-1445**
    **Telephone: (626) 795-9900**
6   **Facsimile:  (626) 577-8800**

7   Attorneys for Plaintiff and Counterdefendant,
    Nyko Technologies, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12   NYKO TECHNOLOGIES, INC., a          Case No. CV12-03001 GAF (VBKx)
     California corporation,
13
                   Plaintiff,
14                                        **NYKO TECHNOLOGIES, INC.'S**
          vs.                             **MEMORANDUM IN**
15                                        **OPPOSITION TO DEFENDANTS'**
     ENERGIZER HOLDINGS, INC., a          **MOTION FOR ATTORNEYS'**
16   Missouri corporation, EVEREADY       **FEES**
     BATTERY COMPANY, INC., a
17   Delaware corporation, and            Date:  December 16, 2013
     PERFORMANCE DESIGNED                 Time:  9:30 a.m.
18   PRODUCTS LLC, a California limited    Courtroom:  740 Roybal
     liability company,
19
                   Defendants.
20                                        Hon. Gary Allen Feess
21
     AND RELATED COUNTERCLAIM.
22

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  DEFENDANTS HAVE NOT PROPERLY INVOKED RULE 11 ................. 3

III.  THIS IS NOT AN EXCEPTIONAL CASE UNDER 35 U.S.C. § 285. ....................................................................................................................... 3

  A.  This Is Not a Baseless and Vexatious Suit. ........................................... 3

    1.  This Case Is Not Objectively Baseless. ...................................... 4

    2.  The Patent Office Has Allowed Claims Despite the Same Evidence the Defendants Put Forward Here. ................. 10

    3.  There Is No Evidence of Subjective Bad Faith ........................ 12

  B.  Inventor Navid Is Not Guilty of Inequitable Conduct. ........................ 13

  C.  Nyko Did Not Engage in Egregious Litigation Misconduct .............. 21

IV.  AWARDING ATTORNEYS' FEES WOULD NOT BE AN APPROPRIATE EXERCISE OF DISCRETION. ........................................... 25

V.  THE PREVAILING PARTY REMAINS UNCERTAIN PENDING APPEAL. ................................................................................................ 25

VI.  CONCLUSION ................................................................................................ 26

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1st Media, LLC v. Electronic Arts, Inc.,*
  694 F. 3d 1367 (Fed. Cir. 2012) ................................................................. passim

*American Calcar, Inc. v. American Honda Motor Co.,*
  651 F. 3d 1318 (Fed. Cir. 2011) ................................................................. 18, 19

*Ariad Pharmaceuticals, Inc., v. Eli Lilly and Co.,*
  598 F.3d. 1336 (Fed. Cir. 2010) (*en banc*) ............................................................ 5

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.,*
  605 F.3d 1305 (Fed. Cir. 2010) ................................................................. 1, 21

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.,*
  267 F.3d 1370 (Fed. Cir. 2001) ................................................................. 20

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,*
  393 F.3d 1378 (Fed. Cir. 2005) ................................................................. 25

*Consolidated Aluminum Corp. v. Foseco Intern. Ltd.,*
  910 F. 2d 804 (Fed. Cir. 1990) ................................................................. 25

*Digital Control, Inc. v. Charles Mach. Works,*
  437 F.3d 1309 (Fed. Cir. 2006) ................................................................. 20

*iLOR, LLC v. Google, Inc.,*
  631 F.3d 1372 (Fed. Cir. 2011) ............................................................ 3, 4, 5, 12

*Invitrogen Corp. V. Biocrest Mfg., L.P.,*
  424 F.3d 1374 (Fed.Cir. 2005) ................................................................. 8

*KangaROOS U.S.A., Inc. v. Caldor, Inc.,*
  778 F.2d 1571 (Fed. Cir. 1985) ................................................................. 20

*Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.,*
  606 F.3d 1353 (Fed. Cir. 2010) ................................................................. 20

*Linear Tech. Corp. v. Micrel, Inc.,*
  275 F.3d 1040 (Fed. Cir. 2001) ................................................................. 9, 10

CHRISTIE, PARKER & HALE, LLP

*McNeil-PPC, Inc.* v. *L. Perrigo Co.,*
   337 F.3d 1362 (Fed. Cir. 2003) ........................................................................ 12

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH,*
   603 F.3d 943 (Fed. Cir. 2010) ............................................................................ 4

*Motionless Keyboard Co. v. Microsoft Corp.,*
   486 F.3d 1376 (Fed. Cir. 2007) .......................................................................... 8

*New Railhead Mfg., LLC v. Vermeer Mfg. Co.,*
   298 F. 3d 1290 (Fed. Cir. 2002) ........................................................................ 8

*Nyko Technologies, Inc. v. Energizer Holdings, Inc.,*
   CV 13-1935-GAF-VBK, 5:5-12 & 5:23-6:8 (Quigley Decl., Ex. U) ............... 11

*Old Reliable Wholesale, Inc. v. Cornell Corp.,*
   635 F.3d 539 (Fed. Cir. 2011) ................................................................... 10, 12

*Paragon Podiatry Laboratory v. KLM Laboratories,*
   984 F. 2d 1182 (Fed. Cir. 1993) ...................................................................... 20

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,*
   182 F.3d 1356 (Fed. Cir. 1999) ........................................................................ 26

*Synthes USA, LLC v. Spinal Kinetics, Inc.,*
   2013-1047, 2013 WL 5788675 (Fed. Cir. Oct. 29, 2013) ................................. 7

*Therasense, Inc. v. Becton, Dickinson & Co.,*
   649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ................................................ passim

*Utter v. Hiraga,*
   845 F.2d 993 (Fed. Cir. 1988) ............................................................................ 7

STATUTES

35 U.S.C. § 112 para. 1 ............................................................................................ 7

35 U.S.C. § 285 .............................................................................................. passim

OTHER AUTHORITIES

Fed.R.Civ.P. 11(c)(2) ............................................................................................. 3

Fed. R. Civ. P. 54(d)(2)(B) .................................................................................. 26

CHRISTIE, PARKER & HALE, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fed. R. Civ. Proc. 56 ............................................................................................ 20

Rule 11 ................................................................................................................... 3

Rule 26(f) .............................................................................................................. 22

Rule 54(b) ............................................................................................................... 2

CHRISTIE, PARKER & HALE, LLP

## I.  **INTRODUCTION**

The Defendants fall short of showing the "major impropriet[ies]," "gross injustice" and "egregious misconduct" required for an award of attorneys' fees under 35 U.S.C. § 285.  *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1314 (Fed. Cir. 2010).  The Defendants have not met their burden of providing clear and convincing proof of any of the grounds they have asserted. The Defendants have prevailed on a reasonably debatable point of patent law concerning when patents are entitled to the priority of earlier applications.  Even that outcome remains uncertain pending *de novo* review on appeal.

Without showing both objective baselessness and subjective bad faith – which they have not done – the Defendants cannot show "baseless and vexatious litigation."   Nyko's validity positions are supported by competent expert testimony.   The Court adopted claim constructions that are the same as or consistent with almost all of Nyko's proposed constructions.   It was not "objectively baseless" for Nyko to claim priority of a provisional application that disclosed all the features recited in at least some of the claims of the asserted patent – including DC ports "supported by the base" under the Court's construction of that term.  After receiving the same information put before this Court as to invalidity, the U.S. Patent and Trademark Office approved two continuation applications of the patent-in-suit, which supports the objective basis for Nyko's position.  Certainly, Nyko believed in good faith in its claim to priority of the provisional application.

The Defendants have also failed to prove inequitable conduct in prosecuting the patent in suit – especially in view of the strict new requirements adopted in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (*en banc*).  Defendants have no evidence that Nyko made a "deliberate decision" to withhold information from the Patent Office with "specific intent to deceive," as *Therasense* requires.

CHRISTIE, PARKER & HALE, LLP

The Defendants contend that Nyko should have told the Patent Office about marketing and sales activity that occurred in January 2007. But Nyko filed a provisional patent application in October 2007, and Mr. Navid understood that anything that happened less than a year prior to that filing could not be prior art. Therefore, it never even occurred to Mr. Navid that there might be a reason to disclose activities within that one-year period.

From a procedural standpoint, a finding of inequitable conduct is improper. There has been no finding of inequitable conduct and no request by the Defendants to do so, only a judgment of invalidity under Rule 54(b) entered at Defendants' request without delay. It would not be appropriate for the Court to infer deceptive intent from a cold record without a trial including testimony from the inventor and the attorneys who prosecuted Nyko's applications.

Finally, the Defendants are not the victims of egregious litigation misconduct. There are no allegations of falsifying or manipulating evidence, or any other such gross misconduct. Nyko's actions in discovery were reasonable and made in good faith. The Defendants' complaints are inaccurate, misleading and hypocritical, since they did the same things they now attack, and to an even greater extent. In denying Defendants' only motion to compel, Magistrate Judge Kenton noted Nyko's actions to supplement its responses and admonished and threatened to sanction Defendants for their discovery abuses.

The Defendants also misstate the facts about the parties' settlement negotiations, making a false accusation of "extort[ion]" when Nyko has merely sought appropriate royalties for use of its intellectual property. It was the Defendants who abused the settlement process, concealing information about their already developed new generation of products and thereby unsuccessfully trying to mislead Nyko into accepting a low lump-sum settlement. Defendants' failure to turn over this critical evidence at any time during this litigation has materially affected Nyko's infringement theories in this case.

-2-

For all these reasons, the Court should deny the Defendants' motion. Alternatively, the Court should stay the motion pending appellate review of the summary judgment.

## II. DEFENDANTS HAVE NOT PROPERLY INVOKED RULE 11.

The Defendants purport to move under "Federal Rule of Civil Procedure 11." (Mot. at 2:6.) But they have not met the most basic requirements of that rule. First, a motion for sanctions under Rule 11 "must be made separately from any other motion." Fed.R.Civ.P. 11(c)(2). The present motion, however, is based primarily on 35 U.S.C. § 285. In addition, under Rule 11, the party claiming a violation must serve a copy of the motion for sanctions on the allegedly offending party, which motion must specifically describe the conduct that allegedly violates Rule 11, and the alleging party must provide the accused party 21 days to withdraw or correct the issue prior to filing the motion for sanctions with the court. Fed.R.Civ.P. 11(c)(2). The Defendants do not claim to have complied with this procedure either. The Rule 11 Motion should be rejected.

## III. THIS IS NOT AN EXCEPTIONAL CASE UNDER 35 U.S.C. § 285.

Taking a scattershot approach, the Defendants assert every possible ground for an exceptional case: (1) baseless and vexatious litigation, (2) inequitable conduct before the U.S. Patent and Trademark Office, and (3) egregious litigation misconduct. As we will show in turn, none of these assertions is justified.

### A. This Is Not a Baseless and Vexatious Suit.

"[S]anctions may be imposed against a patent plaintiff 'only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.'" *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011) (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). "Under this exacting standard, the plaintiff's case must have no objective foundation, and the plaintiff must actually know this." *iLOR*, 631 F.3d at 1377. "Both the objective and subjective prongs . . . 'must be established by

-3-

clear and convincing evidence.'" *Id.* (quoting *Wedgetail Ltd. v. Huddleston Deluxe, Inc.,* 576 F.3d 1302, 1304 (Fed. Cir. 2009).

The Defendants cannot meet either prong of this standard, let alone both.

### 1.   **This Case Is Not Objectively Baseless.**

"To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits." *iLOR, 631 F.3d at 1378.*  An infringement action "does not become unreasonable in terms of [§ 285] if the infringement can reasonably be disputed." *Id.* at 1377.

### a.   **The Court's Claim Construction Vindicated Nyko's Positions and Refuted Defendants' Main Defenses.**

The Defendants have no reasonable claim – and certainly no clear and convincing evidence – that Nyko's case was objectively baseless.  Nyko's claims of infringement and validity are supported by competent expert testimony from Mr. Garry Kitchen, an expert with over 30 years of experience in the field.  Mr. Kitchen provided detailed analyses concluding that the claims of the '848 Patent were supported by the disclosure of the provisional application, were valid and were infringed by the Defendants.  [Expert Report of Garry L. Kitchen, ECF 135] This expert evidence supports the lack of objective baselessness of Nyko's arguments.  See *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 958-59 (Fed. Cir. 2010) (award of attorney fees not appropriate where patentee presented plausible theory of infringement based in part on expert analysis).

Nyko prevailed on important issues in this suit.  Indeed, the Court adopted constructions similar to Nyko's for virtually all the disputed claim terms and adopted none of Defendants proposals except where agreed to by Nyko.  [*See, e.g.*, Claim Construction Order, ECF 122.][1]  As a result, Defendants lost their

---

[1] At the *Markman* hearing, the Court jokingly remarked that Defendants aren't

CHRISTIE, PARKER & HALE, LLP

main non-infringement and third party prior art defenses, which depended on limiting the term "base" to the bottom portion of the charging station and expanding the term "coupled to" to include connections via wire or cable.  Except for Defendants' success on the on-sale-bar defense, Nyko was well positioned to prevail in this case.  It is improper to find a case exceptional where reasonable claim construction positions were taken by the losing party.  *iLor, LLC,. v. Google, Inc.*, 631 F.3d at 1378-1380, (Fed. Cir. 2013).

### b.   Nyko's Reasonably-Supported Priority Claim Would Have Been Sufficient to Defeat the Asserted On-Sale Bar.

Of course, Defendants' lack of success on their other defenses does not demonstrate that their positions were "objectively baseless."  The same is true of Nyko's lack of success as to the on-sale bar defense.  Nyko had reasonable arguments why that defense should not prevail.  First and foremost, no on-sale bar is possible if the '848 Patent is entitled to the priority of the provisional application.   To qualify as prior art, the asserted demonstrations, offers and sales by Nyko would have to predate the patent's priority date by at least a year, but they all occurred less than a year before Nyko filed its provisional application in October 2007.

A provisional application provides a sufficient "written description" to support priority of a later patent claim if, from the point of view of a person of ordinary skill in the relevant field, the provisional application disclosed the features in that claim. *Ariad Pharmaceuticals, Inc., v. Eli Lilly and Co.*, 598 F.3d. 1336, 1351 (Fed. Cir. 2010) (*en banc*) ("hallmark of written description is disclosure.")  Nyko made a detailed showing that the features of the asserted

---

going to like most of the Court's tentative constructions.  [Claim Construction Hearing Transcript at 23:16-21, Quigley Decl. Ex. P.]

1    claims were disclosed in the provisional application.  The only features that the

2    Defendants challenged were the "male mini-USB connectors supported by the

3    base" in Claim 13 and the "DC ports on the base" in Claim 1.  Nyko had

4    legitimate arguments why both of these features were disclosed in the provisional

5    application.  These arguments were especially strong in the case of Claim 13,

6    since the Court construed "supported by the base" as meaning "physically

7    supported by but not necessarily directly on the base."   (Claim Construction

8    Order at 25 (ECF 122).)  Therefore, there was no reason why the presence of a

9    adapter with a plastic layer between the DC port and the base would prevent the

10   controller from being "supported by the base."

11           Nyko believed it had advanced a successful claim construction position as

12   to these features.  In fact, this meaning of "DC ports supported by the base" was

13   accepted by the Court at the claim construction hearing:

14                   THE COURT: Okay. I mean, I'll think about it.  I hear

15           your argument. It just seems to me that you've got a claim that

16           deals with DC ports that are on the base and you've got another

17           claim that has them supported by the base.

18                   I understand what "supported" means; and it seems to me

19           certainly clear that they don't have to be, when you use

20           "supported by the base," they clearly don't have to be directly

21           on the base; right? You'd agree with that part?

22                   MR. HASAN: I completely agree with that.

23                   THE COURT: Right.

24   [Claim Construction Hearing Transcript, May 9, 2013 at 14:11-21 (Quigley Decl.,

25   Ex. P); *see also id.* at 56:3-11, 57:19-59:16.]  Therefore, there was no reason why

26   the presence of an adapter with an intervening layer between the DC port and the

27   base, as the Court put it, would prevent the DC port from being "supported by the

28

CHRISTIE, PARKER & HALE, LLP

base." [Claim Construction Order, p, 24 (ECF 122)][23]

Nyko has the greatest respect for this Court and has carefully studied the summary judgment order.  Nyko continues to believe that its priority claim to the provisional application not only is a legitimate position but the best interpretation of the admittedly complex law of written description.  As long as the features of an asserted claim were disclosed in the provisional application, the claim was supported.  It was not necessary for all possible ways of implementing those features to be disclosed.  "A specification may, within the meaning of 35 U.S.C. § 112 para. 1, contain a written description of a broadly claimed invention without describing all species that [the] claim encompasses."  *Utter v. Hiraga*, 845 F.2d 993, 998 (Fed. Cir. 1988); *see, also, Synthes USA, LLC v. Spinal Kinetics, Inc.*, 2013-1047, 2013 WL 5788675 (Fed. Cir. Oct. 29, 2013) (stating that only for fields of art that are unpredictable is the disclosure of more species necessary to adequately show possession of the entire genus).  So if the provisional application disclosed one way of supporting a controller on a base – which it did – it was not necessary for it to also disclose doing so without an adapter.

In its summary judgment, the Court did not disagree that the provisional application disclosed a controller "supported by the base."  [*See, e.g.*, Summ. J. Order at 14 (Doc 205).]  Instead, the Court suggested that this argument "misse[d] the point . . . that the '364 Provisional requires an external adapter while the '848

---

[2] The provisional also provides support for a more direct connection, as it discloses that the adapter can be attached to the base (via snap-fit, press-fit, prongs, etc.)  Therefore, it was not objectively baseless for Nyko to argue that the provisional provided priority even if "on the base" and "supported by the base" were limited to a more direct connection.

[3] It is important to note that Nyko's infringement theory is fully supported by an indirect connection, as Defendants' own expert has stated that the DC port is indirectly attached to the base in the accused products.  [Rebuttal Expert Report of Stephen Bristow, p. 7 (Quigley Dec., Ex. V).]

CHRISTIE, PARKER & HALE, LLP

Patent makes no mention of it." [*Id.*]  Respectfully, Nyko believes that the Court got this issue backwards.  The relevant question is not whether the patent describes what the provisional application requires, but whether the provisional application describes what the patent requires – more specifically, whether it provides examples of the limitations in at least one of the asserted claims.  If it did – and we believe it did – then the written description requirement was fulfilled and the claim was entitled to priority of the provisional application.  *See New Railhead Mfg., LLC v. Vermeer Mfg. Co.,* 298 F. 3d 1290, 1294 (Fed. Cir. 2002) ("[F]or the non-provisional utility application to be afforded the priority date of the provisional application, . . . the written description of the provisional must adequately support the claims of the non-provisional application . . . .")

### c.   Nyko Had Other Bases for Questioning the On-Sale Bar.

While the priority claim was sufficient to justify Nyko's opposition to the on-sale-bar defense, it was also not objectively baseless for Nyko to question whether there was sufficiently clear and convincing evidence of actual sales and public use on summary judgment, particularly because both grounds are factually intensive.  See *Invitrogen Corp. V. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1379 (Fed.Cir. 2005).

Regarding public use, Nyko relied on the standard set forth in *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1385 (Fed. Cir. 2007), that the Charge Base shown at the 2007 Consumer Electronics Show (CES) may not have been a functional prototype, in which case it could not trigger the public use bar, because it may not have operated for its intended purpose.  Nyko greatly desired to rely on the actual prototype.  However, because the actual prototype no longer existed, Nyko was forced to rely on the only available direct evidence of the

CHRISTIE, PARKER & HALE, LLP

model shown at the show, namely photographs.[4]  The picture evidence showed that all four lights of the model were lit when only two controllers were on the Charge Base, whereas in a working model the light is on only when a controller is in the bay.  Thus, only two lights should have lit up in a working model.  [Nyko Opp. to Summary Judgment, p. 23:7-17 (ECF 135).]  Nyko's Director of Marketing, Chris Arbogast, explained that Nyko sometimes made non-functional models where the lights turn on in order to use it "as a demo," but the models won't actually charge controllers. [Chris Arbogast Depo. 80:15-81:10 (Quigley Decl., Ex. T).]  It was not frivolous for Nyko to make such an argument based on the only remaining evidence.[5]

Making a prototype into a working product is often harder than the Court might be tempted to assume.  For example, Defendant PDP's manufacturer was unable for several months to get the prototype of the accused products to work to for simultaneously charging two controllers.  Creating a working version became such a challenge that PDP instructed its manufacturer to find the manufacturing source of Nyko's patented product and obtain Nyko's chip for use in PDP's accused product to make it work.  [E-mail communications between PDP and manufacturer, Quigley Decl., Ex. I].  Nyko's arguments reflect real-world experiences and not just theoretical quibbling.

In addition, Nyko relied upon *Linear Tech. Corp. v. Micrel, Inc.,* 275 F.3d

---

[4] Nyko has tried diligently to locate the 2007 SLA prototype itself but simply could not find it, which is not surprising given that such devices made by a 3-D printer are often temporary.

[5] Although the Court in its Order re Summary Judgment relied on Amir Navid's testimony that some prototypes "initially work, [then] they may not work later," Mr. Navid was speaking generally and admitted during his deposition that he did not remember if the Charge Base model shown six years earlier at the CES in 2007 was working or non-working. [Navid Depo. 127:3-20 (Quigley Decl., Ex. S.]  Mr. Arbogast testified similarly. [Arbogast Depo. 53:25-54:8 (Quigley Decl., Ex. T.]

CHRISTIE, PARKER & HALE, LLP

1040 (Fed. Cir. 2001).  In *Linear*, the Federal Circuit found no offer for sale – and no on-sale bar – even though the patent owner had provided customers with preliminary data sheets regarding the patented product and had entered four pre-critical date purchase orders from its international distributors.  *Id*. at 1047, 1050.  Nyko relied upon Federal Circuit authority that held that the communications of a sales representative to potential customers in an effort to establish pricing for its product was not considered an offer.  *Id*. at 1050.  The facts in *Linear* are similar to those here, where the design was not finalized and the price was subject to change.  [Nyko  Opp'n to Summary Judgment, pp. 24-25 (ECF 135).]  Further, the orders were subject to cancellation if the demand for the announced product was weak.  *Id.*  The case law Nyko relied upon provided support for its arguments that the proof did not rise to the level of clear and convincing evidence.

2.     **The Patent Office Has Allowed Claims Despite the Same Evidence the Defendants Put Forward Here.**

Nyko's objective basis for bringing and maintaining this case is confirmed by the actions of the U.S. Patent and Trademark Office.  Over the course of two pending continuation applications based on the patent-in-suit, Nyko disclosed all of the TRO papers, invalidity contentions, invalidity expert reports and summary judgment papers.   Following its review of this material, the Patent Office maintained its allowance of both applications.  [Quigley Decl., Exs. A-C]  The Patent Office's affirmation of patentability is highly probative, if not dispositive, of the Defendants' assertions that Nyko's claims were baseless.  *See Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011)

In *Old Reliable Wholesale*, the Patent Office initially issued a notice of intent to issue an *ex parte* reexamination certification confirming the patentability of patent claims that the courts had invalidated.   *See id.* at 548.  The Federal Circuit reversed an award of attorney fees under 35 U.S.C. § 285, because "the fact that the PTO, after assessing the relevant prior art, confirmed the

-10-

patentability of all claims of the '950 patent undercuts Cornell's contention that Old Reliable had no reasonable basis for its assertion that its patent was not anticipated." *Id*.  The Patent Office's initial confirmation of the claims on reexamination, even though it later reversed itself, "provide[d] probative evidence on the issue of whether Old Reliable had a reasonable basis for its assertion that its patent was not anticipated." *Id.* at 549.

Similarly, the Patent Office has undercut the Defendants' assertions of baselessness by approving the claims of Nyko's '630 patent (a continuation of the '848 patent) and those of a second continuation application.[6]   During the pendency of the '630 patent application, Nyko disclosed, among other items: all of the TRO documents including the Court's Order on TRO; Defendants' 622 page submission of initial invalidity contentions, including their arguments regarding public disclosure and on sale bar; all of the articles written by the members of the press in response to viewing the Nyko Charge Station at the 2007 Consumer Electronic Show (CES); and the Third Declaration of Amir Navid, which includes the statement that "[t]he product Nyko introduced in January 2007 includes each and every feature of the claimed invention," which was relied on by the Court in granting summary judgment of invalidity.  All of these documents were considered by the Examiner.  [*See* '630 Patent face sheet "References Cited;" '630 Patent File History, including multiple Information Disclosure Statements ("IDS") cited by Applicant and Considered by Examiner. Quigley

---

[6] The two continuation applications share identical written descriptions and figures as the '848 Patent, and rely on the same priority. [*See* '630 Patent (Quigley Dec., Ex. A); U.S. Patent Application No. 13/769709 (Quigley Dec., Ex. B).]  Indeed, the Defendants contend that the infringement and validity issues as to the '630 Patent are the same as for the '848 Patent.  [*See* Scheduling Hearing Transcript dated Sept. 30, 2013 in *Nyko Technologies, Inc. v. Energizer Holdings, Inc.*, CV 13-1935-GAF-VBK, 5:5-12 & 5:23-6:8 (Quigley Decl., Ex.  U); April 4, 2013 e-mail communication from Defendants' counsel re '630 Patent, Quigley Decl., Ex. W.]

Decl., Ex. C)] The Examiner did not reject the claims over these references, and the '630 patent application was allowed on January 15, 2013. ['630 Patent (Quigley Decl., Ex. A).]  These facts serve as probative evidence that Nyko had a reasonable basis for its assertion that its patent was not invalid due to the public disclosure or on sale bar.

Although the '630 Patent was issued prior to the filing of the summary judgment motion, and thus those documents could not be disclosed in that application, in addition to all of the references cited in the '630 Patent, <u>Nyko disclosed all of summary judgment motion papers</u> in connection with the '709 application (a second continuation of the patent-in-suit), and the Patent Office has maintained its allowance of that application as well. [*See* '709 Application File History, IDS dated Sept 6, 2013 (disclosing summary judgment motions and exhibits), Notice of Allowance dated Sept. 11, 2013, List of References cited by applicant and considered by examiner dated Oct. 25, 2013 (Quigley Decl., Exs. C, E and F.]  Nyko also recently disclosed this Court's Order re Summary Judgment. [See IDS filed November 20, 2013 (Quigley Decl., Ex. G).]  Even if the USPTO were to reject the application at some point based on the Court's Order, the Patent Office's initial confirmation, as in *Old Reliable*, is probative evidence that Nyko had a reasonable basis for its assertion that its patent was not invalid. See *Id.*

### 3.   <u>There Is No Evidence of Subjective Bad Faith</u>

The Federal Circuit "recognize[s] a 'presumption that the assertion of infringement of a duly granted patent is made in good faith.'"  *iLOR*, 631 F.3d at 1377 (quoting *Brooks Furniture*, 393 F.3d at 1384).  "Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith."  *iLOR*, 631 F.3d at 1377 (quoting *Brooks Furniture*, 393 F.3d at 1384).  There is also a presumption that a patent is valid until proven otherwise.  *See e.g., McNeil-PPC, Inc.* v. *L. Perrigo Co.,* 337 F.3d 1362, 1372 (Fed. Cir. 2003).  Thus, Nyko is presumed to have acted in good

-12-

faith in bringing this lawsuit and in defending its presumptively valid patent.

Defendants' arguments for bad faith are the same as its inequitable conduct arguments below, and are without merit for the same reasons. (*See infra* § III B1) Indeed, the evidence shows that Nyko had a good-faith belief that the patent was valid based on priority of the provisional application.  Nyko continued to have this good-faith belief throughout the litigation and  to this day.  There is no clear and convincing showing of subjective bad faith or objective baselessness.

Based on the foregoing, Defendants' motion should be denied because they have not provided clear and convincing proof of either required element.

## B. Inventor Navid Is Not Guilty of Inequitable Conduct.

### 1. The Facts Do Not Show Inequitable Conduct.

The inventor Amir Navid did even think to disclose Nyko's marketing and sales activities in January 2007 for a simple reason: those activities took place less than a year before Nyko filed its provisional patent application on October 24, 2007.   [Declaration of Amir Navid, ("Navid Decl.") filed concurrently herewith, ¶3-4, 8] Navid's understanding was that no activities within a year of that date could be prior art against Nyko's patent.  [*Id*.]   As a result, the possibility that there might be a reason or need to disclose activities within that one-year period did not even occur to Mr. Navid or Nyko.  [*Id*.]

Good-faith omissions like these have never been considered inequitable conduct, but the Defendants' inequitable-conduct arguments are rendered utterly untenable by the Federal Circuit's groundbreaking *en banc* decision in *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1290 (Fed. Cir. 2011) (*en banc*).  "*Therasense* changed the standard for proving inequitable conduct based on nondisclosure of a reference to the PTO." *1st Media, LLC v. Electronic Arts, Inc.*, 694 F. 3d 1367, 1372 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1290-91).   Under *Therasense*, for the Defendants to establish inequitable conduct, they "must prove by clear and convincing evidence both of

-13-

the 'separate requirements' that: (1) 'the patentee acted with the specific intent to deceive the PTO'; and (2) the non-disclosed reference was but-for material." *1st Media*, 694 F. 3d at 1372 (quoting *Therasense*, 649 F.3d at 1290-91).  Further, "in order to show that the patentee acted with the specific intent to deceive the PTO, a defendant must prove 'that the applicant knew of the reference, knew that it was material, and ***made a deliberate decision to withhold it***.'" *1st Media*, 694 F. 3d at 1372 (quoting *Therasense*, 649 F.3d at 1290) (emphasis added by the court in *1st Media*).  Negligence, even "gross negligence" by the patentee is not enough.  "A failure of proof on any element precludes a finding of inequitable conduct." *1st Media*, 694 F. 3d at 1372 (citing *Therasense*, 649 F.3d at 1290).

Absent a specific, clear and convincing showing of deliberate and specific intent to deceive, there is no need for the patentee to even provide a good faith explanation for its behavior.  *Id.*  But here, Nyko provides a good faith explanation.  Mr. Navid testified at his deposition that he believed that the '848 Patent was entitled to the priority date of the provisional application. [Navid Depo. 188:23-190:1, 297:7-306:13 (Quigley Decl., Ex. S.]   Mr. Navid also testified that he believed the embodiment with the adapter and the embodiment without the adapter were based on the same underlying concept of a charge base, thus he believed that the provisional application was directed to the same invention and entitled to the priority date of the provisional.  [Navid Depo. 188:23-190:1, 302:2-303:7 ("Quigley Decl., Ex. S).]   He also believed that the base corresponded to the entire device and noted the device could not work unless the controller and DC ports were on the base, (Navid Depo. 146; 147:23-148:5; 182;1-17; 224:7-11) and that the core purpose of the invention was to avoid cables.  Because of this belief, he did not ever consider the sales or display at the 2007 CES show to relevant to invalidity because they occurred less than one year of the provisional application.  [Navid Depo.297:7-298:28, 304:5-306:13].

Later – in this litigation – the Defendants took the position that the asserted

-14-

1   claims of the '848 Patent were not entitled to the priority of the provisional
2   application, and this Court has recently accepted that argument.  It is for that
3   reason – and only that reason – that activities in January 2007 could be
4   considered prior art to the '848 Patent.  But when the application for the '848
5   Patent was pending, Mr. Navid was not aware that there was any such priority
6   issue.  When he and Nyko found out about the priority issue, out of an abundance
7   of caution, they disclosed the January 2007 activities as to the patent applications
8   that were pending at that time – and they still obtained allowance of those
9   applications.  [Navid Decl. ¶ 7; Quigley Decl. Exs .B and E.] Not having been
10  aware of the issue at the time of filing, Mr. Navid and Nyko cannot legitimately
11  be accused of inequitable conduct.

12      In their brief, the Defendants cite *Therasense* in passing but mix it together
13  with a hodgepodge of snippets taken out of context from various other decisions,
14  some of which have been superseded by *Therasense*.  The Defendants fail to ever
15  clearly address the new standard that the Federal Circuit created.

### a.    Inventor Navid Did Not Make a Deliberate Decision to Withhold Prior Art.

18      One of several deficiencies in the Defendants' assertions of inequitable
19  conduct is their utter failure to fulfill – or even to acknowledge – *Therasense*'s
20  requirement for a "deliberate decision" to withhold prior art.  In *1st Media*, the
21  Federal Circuit reversed a finding of inequitable conduct after trial "[b]ecause the
22  record contains no evidence of a deliberate decision to withhold those references
23  from the PTO as required under *Therasense* . . . ."  *1st Media*, 694 F. 3d at 1372.
24  The same is true in this case, and a finding of inequitable conduct is therefore
25  equally impermissible.  The Defendants do not even assert that Mr. Navid made a
26  decision to withhold prior art, let alone a deliberate one.   In fact, the
27  uncontroverted fact is that he did not.

28      As Mr. Navid explained at his deposition, "there wasn't a decision [to

-15-

CHRISTIE, PARKER & HALE, LLP

withhold information about the marketing activity] because, again, as I explained earlier, I was under the understanding that it was within a year from the time that we filed for [the patent]."  [Navid Dep. 305:15-18 (Quigley Decl., Ex. S).]  It never occurred to him to disclose the information, because it was not prior art based on his understanding of the patent's priority date.  [Navid Decl. ¶8; Navid Depo. 308:16-310:8  ("[I]t wasn't something that I thought about because we filed within a one-year period. . . .  It's not like there was a conscious decision from -- on the part of the company to hold any information back.")]  There is no evidence he even become aware of an issue as to the patent's entitlement to such priority until after the patent issued and this litigation began.

As the Federal Circuit held in *1st Media*, a finding of inequitable conduct cannot be supported based on such a record.  Knowledge of the undisclosed art – or even of its materiality – is not enough.  "An applicant's knowledge of a reference's materiality, however, cannot by itself prove, let alone clearly and convincingly prove, that any subsequent nondisclosure was based on a deliberate decision."  *1st Media*, 694 F. 3d at 1375.

In *1st Media*, patent attorneys testified that their nondisclosures of prior art were oversights rather than results of deliberate decisions.  One testified to "an oversight that got lost in the cracks at that time and wasn't a conscious decision not to report [it]."  *1st Media*, 694 F. 3d at 1371.  They both testified that "it did not occur to them to disclose" other prior art.  *Id.*  The trial judge who heard the attorneys' testimony "found their explanations not credible."  *Id.*  But still, the Federal Circuit held that the inequitable conduct finding could not be sustained absent clear and convincing proof of a deliberate decision to withhold the prior art.  As the Federal Circuit summed up the case:

Ultimately, for all of the references, the evidence supports only that Lewis and Sawyer (1) knew of the references, (2) may have known they were material (which this court does not reach), and (3)

CHRISTIE, PARKER & HALE, LLP

did not inform the PTO of them. But that is not enough. As *Therasense* made clear, a defendant must prove that an applicant (1) 'knew of the reference,' (2) 'knew it was material,' and (3) 'made a **deliberate decision** to withhold it.' . . . It is the last requirement that is missing from the record developed in this case."

*Id.* at 1377-78 (emphasis in original).

Absent clear and convincing proof of a deliberate decision to withhold prior art, the Court need not even reach the other deficiencies in the Defendants' inequitable conduct accusations.   Their accusations of inequitable conduct collapse at the outset.

### b.   Inventor Navid Did Not Have Specific Intent to Deceive the Patent Office.

More broadly, and even apart from the Defendants' lack of evidence of a deliberate decision to withhold information, they have no evidence that Mr. Navid "acted with the specific intent to deceive the PTO . . . ."   *1st Media*, 694 F. 3d at 1372 (quoting *Therasense*, 649 F.3d at 1290-91).   The Defendants say that Mr. Navid "***neglected*** to disclose . . . material information to the PTO (Defts.' Mem. at 18:14-15 (emphasis added), but "it is not enough to argue carelessness, lack of attention, poor docketing or cross referencing, or anything else that might be considered negligent or even grossly negligent."   *1st Media*, 694 F. 3d at 1374-75.

The Defendants selectively quote from a Pennsylvania District Court decision in an attempt to create the impression that the "material[ity] of prior art, together with "the patentee's lack of good faith explanation" for not disclosing it, is enough to show intent to deceive.   [Defts.' Mem. at 18:3-7 (quoting *Apotex, Inc. v. Cephalon, Inc.*, Case No. 2:06-cv-2768, U.S. Dist. LEXIS 125859, at *81–85 (E.D. Pa. Nov. 7, 2011), *aff'd per curiam*, 500 Fed. Appx. 959 (Fed. Cir. 2013)).]   Not so.   To begin with, "Intent and materiality are ***separate requirements***. . . .   A district court should not use a 'sliding scale,' where a weak

-17-

showing of intent may be found sufficient based on a strong showing of materiality, or vice versa." *American Calcar, Inc. v. American Honda Motor Co.*, 651 F. 3d 1318, 1334 (Fed. Cir. 2011) (emphasis added).  Further, although knowledge of materiality is necessary (*see Therasense*, 649 F.3d at 1290), it is not sufficient to prove deceptive intent.  *See 1st Media*, 694 F. 3d at 1372, 1375. And in fact, Mr. Navid did ***not*** know of the materiality of the undisclosed information.  The uncontradicted evidence is that he believed that the '848 Patent was entitled to the priority of the October 2007 provisional application – indeed, he did not even know that point was subject to dispute – and he therefore did not believe that activities in December 2006-March 2007 could possibly be prior art.

Nor can lack of an explanation for nondisclosure be sufficient to support deceptive intent – although, as explained Mr. Navid ***does*** have a persuasive explanation why he did not believe the marketing information was material.  A "patentee need not offer any good faith explanation unless the accused infringer ***first proves a threshold level of intent to deceive by clear and convincing evidence***."  *Therasense*, 649 F.3d at 1296 (emphasis added).  That the Defendants have not done and cannot do. [Navid Decl. ¶¶ 3-5]

Besides their glaringly insufficient accusations of "neglect[]" to disclose allegedly material information, the Defendants have nothing to offer but a generalized – and weakly supported – personal attack on Mr. Navid as supposedly "lack[ing] any credibility as a witness."  [Defts.' Mem. at 18:24.]  But such an attack – even where justified – cannot substitute for clear and convincing evidence of "the specific intent to deceive the PTO."  *1st Media*, 694 F. 3d at 1372 (quoting *Therasense*, 649 F.3d at 1290-91).  For example, *1st Media*, the Federal Circuit reversed the trial court's finding of inequitable conduct even though the trial judge who had personally observed the patent attorneys' testimony had "found their explanations not credible."  *1st Media*, 694 F. 3d at 1371.  Similarly, in *American Calcar*, the Federal Circuit vacated and remanded

-18-

1  an inequitable conduct finding "[a]lthough the court found [inventor]
2  Obradovich's testimony to be lacking in credibility, [because] that alone is
3  insufficient to find specific intent to deceive under the knowing and deliberate
4  standard." *American Calcar*, 651 F. 3d at 1335.

5  As these precedents make clear, the Defendants' carping about Mr. Navid's
6  deposition testimony falls far short of proving a specific intent to deceive the
7  Patent Office. Indeed, most of their complaints about Mr. Navid's testimony are
8  irrelevant. For example, Defendants complain about a portion of the deposition
9  in which their counsel asked Mr. Navid extensive questions, without context or
10  documentation, about what he had said in a deposition in another case – involving
11  a Nintendo trademark and design patents – in 2008. [*See* Complaint from
12  Nintendo of America, Inc. v. Nyko Technologies, Inc., Case No. CV 08-907
13  (W.D. Wa), Quigley Decl. Ex. H ] They also complain about a semantic tug of
14  war between Mr. Navid and their counsel about whether a piece designed to fit
15  inside the charge base was better described as an external adapter or as part of the
16  charge base. Mr. Navid's testimony on these issues was reasonable but – even
17  more important – it had nothing to do with whether he specifically intended to
18  deceive the Patent Office during prosecution of the '848 Patent.

19         c.      **The Patent Office's Later Actions Show that the**
20            **Asserted Facts Were Not Material.**

21  Arguing that this Court's ruling establishes materiality [Defts.' Mem. at
22  17:14-15], the Defendants ignore the actions of the Patent Office itself, which has
23  repeatedly approved continuation claims despite Nyko's full disclosure of the
24  same information on which the Defendants base their inequitable conduct
25  assertions. (*See supra* § III A 2.) Indeed, the Defendants maintain that the patent
26  claims allowed following these disclosures are substantially the same in scope as
27  the claims at issue in this case. *Id.* The Patent Office's decisions to allow these
28  claims contradict the Defendants' position on materiality because, "in assessing

-19-

the materiality of a withheld reference, the court must determine whether ***the PTO*** would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291 (emphasis added).

## 2.    Proving Deceptive Intent Would Require a Trial.

As still a further point, it would be inappropriate to find inequitable conduct without a trial on the merits of that issue.  Even before raising the requirements for proving inequitable conduct in *Therasense*, the Federal Circuit had repeatedly cautioned trial courts about resolving intent issues about inequitable conduct without a trial.  For example, it has stated that it "rarely affirm[s] a grant of summary judgment of inequitable conduct . . . ." *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1363 (Fed. Cir. 2010).  "Intent to mislead or deceive is a factual issue that, if contested, is not readily determined within the confines of Fed. R. Civ. Proc. 56." *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed. Cir. 1985).  "Generally, the concerns attendant to awards of summary judgment on inequitable conduct relate to the inherently factual nature of the issue of intent." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1317 (Fed. Cir. 2006).

In the two unusual cases cited by the Defendants, the facts were completely different from those here, and the courts applied principles that are no longer permissible following *Therasense*.  For example, in *Paragon Podiatry Laboratory v. KLM Laboratories*, 984 F. 2d 1182, 1191 (Fed. Cir. 1993) (per curium), the patentee and its attorney tricked the patent examiner into believing that "deceptive affidavits" of the patentee's own shareholders were from "disinterested third part[ies]." In *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1375, 1380-81, 1385, (Fed. Cir. 2001), the court applied the "sliding scale" of materiality and intent that has been rejected by the present Federal Circuit, as well as an out-of-date "should have known" standard.  Under the circumstances here and the strict *Therasense* standard requiring specific intent

CHRISTIE, PARKER & HALE, LLP

1  to deceive, the Court cannot properly make such findings without hearing and

2  seeing the inventor accused of inequitable conduct, including the attorneys who

3  prosecuted the applications.

4     **C.**  **Nyko Did Not Engage in Egregious Litigation Misconduct**

5     Because 35 U.S.C. Section 285 creates an exception to the "American rule"

6  against awarding attorney fees, its application is limited to "major

7  impropriet[ies]," creating "circumstances in which the award of fees is necessary

8  'to prevent a gross injustice.'" *Aspex Eyewear Inc.*, 605 F.3d 1305, 1314 (Fed.

9  Cir. 2010) (internal citation omitted). There were no such "major improprieties"

10 or "gross injustice" here, such as fabricating or withholding evidence, and the

11 Defendants present no evidence that there was. Instead, they merely provide a

12 laundry list of seemingly everything that they disagreed with during the litigation,

13 while making no effort to explain the reasons for Nyko's actions or how their

14 own conduct compared to Nyko's. [*See* Defts.' Mem. at 21:24-22:24.] None of

15 these complaints has merit even in isolation, let alone adding up to "major

16 improprieties" and "gross injustice" under Section 285.

17    ***Temporary Restraining Order:***  The Defendants complain that Nyko

18 sought a TRO, but they present no authority indicating that doing so was

19 improper. [*See id.* at 21:25-21:3.] Nyko had every right to seek a TRO because

20 infringing products were in the process of displacing Nyko's patented products on

21 the shelves of Nyko's biggest customers, including Walmart, Target and others.

22 [See Nyko's Motion for TRO, p. i-ii, 3-6 (ECF 9).]  While the TRO was denied,

23 in part based on the asserted Erickson prior art, that reference turned out not to be

24 prior art and was dropped from the case. Drawing a baseball analogy, the Court

25 itself later stated that the TRO represented only the initial "innings" of the case.

26 [October 15, 2012 Rule 26(f) Conf. Transcript, p. 11 ("Quigley Decl. Ex. P.)]

27    ***Not Dismissing the Case:***  Nyko had no obligation to dismiss the case. As

28 explained above, Nyko had a reasonable objective basis for pursuing this case and

believed in good faith that the case was well-founded.

***Responding to Discovery:***  While the Defendants complain about Nyko's discovery conduct, Magistrate Judge Kenton found that it was the Defendants that had filed an improper motion to compel at the "beginning stages of discovery," that the Defendants had "failed to conduct serious meet and confer efforts," and that "this sort of discovery practice [must] not under any circumstances be repeated in this case."  [Declaration of Warren Bleeker ("Bleeker Decl."), filed concurrently herewith, ¶ 3 and Ex. A.]  In contrast, the Defendants' obstruction forced Nyko to initiate well-founded motion-to-compel proceedings three times.  Once, Magistrate Judge Kenton granted Nyko's motion.  [*Id.* ¶ 26 and Ex. J.]  And twice, the Defendants withheld discovery until served with Nyko's portion of a joint statement in support of a motion to compel.  [*Id.* ¶¶ 22-23.]

Both parties provided a rolling production of documents.  [Bleeker Decl. ¶ 17.]  Nyko completed its production before the Defendants completed theirs.  [*See id.* ¶¶ 10, 14-16.]  As a small company without sophisticated recordkeeping systems, Nyko found it difficult to find all the documents requested by the Defendants.   Six employees, including the Chief Operations Officer, had to physically search three separate storage locations and manually sort through and search over 1800 boxes of documents.  Declaration of C.C. Swiney ("Swiney Decl."), filed concurrently herewith,  ¶ 2.)   Ultimately, Nyko located and produced more than 80,000 pages.  [Bleeker Decl. ¶ 15-16.]  Nyko made thorough and diligent efforts to locate and disclose <u>all</u> responsive documents.  [Swiney Decl. ¶ 2]  To the extent small numbers of paper copies were no produced, it was because Nyko could not find them after its search. [Swiney Decl. ¶ 4]

The Defendants complain that Nyko did not produce witnesses for deposition on dates unilaterally selected by the Defendants, omitting to mention that the Defendants failed three times to produce witnesses in accordance with

-22-

deposition notices from Nyko.  [*See* Defts.' Mem. at 10-12; Bleeker Decl. ¶ 11 and Exs. E-G.]   There was routine rescheduling on both sides, for reasons including the availability of the witnesses and the need to complete document production so that depositions would not have to be repeated.  [*See, e.g.*, Bleeker Decl. ¶¶ 5, 11.][7]

It is not credible for the Defendants to suggest that they were prejudiced by delay.  Nyko produced all of its sales information and back-up records and made Mr. Navid available for deposition by January 2013 – almost nine months before the fact discovery cutoff.  [*Id*. ¶ 10.]  Nyko produced its responsive information about the 2007 CES show and made Mr. Arbogast available for deposition by March 2013 – more than six months before the discovery cutoff.  [*Id*. ¶ 13.]  In contrast, the Defendants were still producing documents in late September 2013 – and they have not produced important requested documents to this day.  [*Id*. ¶¶ 18, 22, 23-24.]  Further, far from raring at the bit to file for summary judgment, the Defendants waited eight months after the meet and confer to file it.

Besides complaining about supposed delay, the Defendants complain that Nyko's responses to contention interrogatories were "incomplete, misleading, and just plain false."  [Defts.' Mem. at  22:9-10.]  But in substance, the Defendants merely disagreed with Nyko's contentions.  Nyko had a basis for its positions.

***Amir Navid's Deposition:***  The Defendants unfairly accuse Mr. Navid of being "evasive, misleading, and dishonest" at his deposition, but they fail to substantiate those accusations.  [Defts.' Mem. at 22:17-18.]  Mr. Navid did the best he could in the face of tricky and highly aggressive cross examination about

---

[7] A litany of other discovery abuses by the Defendants that included withholding evidence, hiding witnesses, never producing documents and forcing Nyko to prepare several joint stipulations are set forth in the accompanying Declaration of Warren Bleeker.  It is hypocritical for Defendants to argue that Nyko's actions constitute egregious discovery misconduct.  [Bleeker Decl., ¶¶ 3, 18-31.]

CHRISTIE, PARKER & HALE, LLP

specific details of events years before.  As he explained, he was not in change of Nyko's marketing efforts and is not a patent expert.  [Navid Dep. at 20:16-21; 113:19-25; Quigley Decl., Ex. S.]  Obviously, he could not be expected to have a perfect recollection of activities at a Consumer Electronics Show in 2007, nor about his testimony in the unrelated Nintendo case in 2008.

*Suing Energizer and Eveready:*  The Defendants falsely assert that "Nyko sued two defendants that had nothing to do with its infringement allegations . . . ." [Defts.' Mem. at 22:19-20.]  They provide no evidence of that, and it is not true. Nyko sued Energizer and Eveready because they were actively marketing and selling infringing products on their website.  [*See* Bleeker Decl. ¶ 19, Ex. I.]

*Using Litigation Expenses to "Extort" a Settlement:*  The Defendants' accusation of "extort[ion]" is false and utterly unsubstantiated.  [Defts.' Mem. at 22:21-22; *see also* Yannuzzi Decl. ¶¶ 3-4; ECF 212-37.]  The accusation is not even logical, since the Defendants admit it was they who "engaged Nyko in settlement discussions [and] offered Nyko a cash settlement."  [Yannuzzi Decl. ¶ 3; ECF 212-37.]  Beyond this, the settlement negotiations were never focused on litigation costs, and Nyko's objective was never merely a cash settlement unless Defendants made a noninfringing product.  [Declaration of Art Hasan ("Hasan Decl."), filed concurrently herewith, ¶¶ 6-7.)  In fact, that is precisely why the negotiations broke down.  While Nyko was willing to accept a flat one-time royalty for obsolescent charging bases that were compatible only with older-generation gaming consoles, Nyko insisted on an ongoing royalty for any infringing charging bases for new-generation consoles – or on prohibiting such infringement altogether.  [*Id*. ¶ 4-6 and Exs. A, B.)  It was not Nyko that "reneged" on a proposed settlement.  [*Id*. ¶ 6-7.]  Rather, the Defendants tried to deceive Nyko by withholding discoverable information about their forthcoming new generation of products and by having their counsel deny knowledge of the new products even a week before they went on sale.  [*Id*. Quigley Decl. ¶¶ 11-16,

-24-

Ex. J-O.]

*Opposing Summary Judgment:*   Nyko had legitimate grounds for opposing summary judgment, and it did so appropriately.  As explained above, Nyko had a reasonable basis for claiming priority of the provisional application, which would have defeated the Defendants' motion.  Further, Nyko had a reasonable basis for questioning whether there was sufficient, clear and convincing evidence of all the elements required for an on-sale bar or invalidating public use.  Here as elsewhere, the Defendants have failed to provide clear and convincing proof of any litigation misconduct, much less "major improprieties" that created a "gross injustice."

## IV.   AWARDING ATTORNEYS' FEES WOULD NOT BE AN APPROPRIATE EXERCISE OF DISCRETION.

The Federal Circuit has "repeated[ly] state[d] that not every case deemed 'exceptional' must result in a fee award."  *Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F. 2d 804, 815 (Fed. Cir. 1990).  Even when a court finds a case to be exceptional, it has discretion whether to award attorneys' fees, and must weigh factors such as degree of culpability, closeness of the questions and litigation behavior.  *Brooks Furniture Manufacturing, Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).    Taking these factors into account, awarding fees in this case – even if legally permissible – would not be an appropriate exercise of discretion.[8]

## V.   THE PREVAILING PARTY REMAINS UNCERTAIN PENDING APPEAL.

While the Court has abundant grounds to deny the Defendants' motion, it

---

[8] The amounts requested by Defendants are grossly inflated. See Nyko's Objections to the Declaration of Steven Hanle, filed concurrently herewith.  Nyko respectfully requests the right to contest the amount of the fees requested by Defendants should the Court find the case exceptional.

1   also has discretionary power to stay the issue until such appeals are complete.

2   *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,* 182 F.3d 1356, 1360, n. 2

3   (Fed. Cir. 1999); Fed. R. Civ. P. 54(d)(2)(B) and advisory committee notes ("If an

4   appeal on the merits of the case is taken, the court may rule on the claim for fees,

5   may defer its ruling on the motion, or may deny the motion without prejudice,

6   directing under subdivision (d)(2)(B) a new period for filing after the appeal has

7   been resolved.").   Any award of attorneys' fees may be made only to "the

8   prevailing party." 35 U.S.C. § 285.  The identity of the prevailing party remains

9   uncertain pending appeal.   The Federal Circuit's analysis of the case, in the

10  course of reviewing summary judgment *de novo*, may shed light on the

11  Defendants' assertions of objective baselessness other issues raised by this

12  motion.

13  **VI.    <u>CONCLUSION</u>**

14      For all the reasons explained above, the Court should deny the Defendants'

15  motion for attorney fees.   In the alternative, decision on the motion should be

16  stayed pending appellate review of the summary judgment.

17  DATED:  November 25, 2013         Respectfully submitted,

18                                    CHRISTIE, PARKER & HALE, LLP

19                                    By */s/ Art Hasan*

20                                       Art Hasan

21                                    Attorneys for Plaintiff and
                                      Counterdefendant,
22                                    Nyko Technologies, Inc.

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP