SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DANIEL N. YANNUZZI, Cal. Bar No. 196612
dyannuzzi@sheppardmullin.com
GRAHAM M. BUCCIGROSS, Cal. Bar No. 234558
gbuccigross@sheppardmullin.com
MATTHEW M. MUELLER, Cal. Bar No. 268486
mmueller@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California  92130-2006
Telephone:  858.720.8900
Facsimile:   858.509.3691

STEVEN M. HANLE, Cal. Bar No. 168876
shanle@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626
Telephone:  714.513.5100
Facsimile:   714.513.5130

Attorneys for Performance Designed Products
LLC, Energizer Holdings, Inc., and Eveready
Battery Co., Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYKO TECHNOLOGIES, INC. a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENERGIZER HOLDINGS, INC. a Missouri Corporation, EVEREADY BATTERY CO., INC., a Delaware Corporation, and PERFORMANCE DESIGNED PRODUCTS LLC, a California Limited Liability Company,<br><br>Defendants. | Case No. CV12-03001<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES**<br><br>Date:   December 16, 2013<br>Time:  9:30 a.m.<br><br>The Hon. Gary A. Feess<br><br>[Complaint Filed:  April 5, 2012] |

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF REPLY ARGUMENT ......................................................1

II.   NAVID'S INEQUITABLE CONDUCT JUSTIFIES DECLARING THIS CASE EXCEPTIONAL ........................................................3

    A.    Navid's Latest Declaration Is Unsupported and Fails to Justify His Failure to Disclose ..............................................4

    B.    Subsequent Prosecutions *Confirm* Navid's Inequitable Conduct ...........7

    C.    A Trial On Inequitable Conduct Is Not Required ...............................9

III.  NYKO'S FILING AND MAINTENANCE OF THIS UNJUSTIFIED LITIGATION JUSTIFIES AN AWARD OF ATTORNEY FEES .................9

    A.    This Case Was Filed, Maintained and Litigated In Subjective Bad Faith .............................................................9

    B.    This Case Was Objectively Baseless Because the Asserted Claims Were Invalid Beyond Reasonable Dispute ............................10

IV.   NYKO'S LITIGATION MISCONDUCT JUSTIFIES DECLARING THIS CASE EXCEPTIONAL ......................................................13

V.    NYKO'S CHALLENGES TO THE AMOUNT OF FEES ARE IMPROPER AND UNSUPPORTED ...........................................15

VI.   CONCLUSION...................................................................16

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4    *1st Media, LLC v. Electronic Arts, Inc.*
        694 F.3d 1367 (Fed. Cir. 2012)................................................................. 6

5

6    *Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.*
        267 F.3d 1370 (Fed. Cir. 2001)............................................................... 11

7
     *Brooks Furniture Mfg., Inc., v. Dutailier Int'l, Inc.*
8        393 F.3d 1378 (Fed. Cir. 2005)............................................................. 3, 9

9    *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*
10       120 F.3d 1253 (Fed. Cir. 1997)................................................................. 6

11   *Hughes v. Novi Am. Inc.*
12       724 F.2d 122 (Fed. Cir. 1984)............................................................. 9, 13

13   *iLOR, LLC v. Google, Inc.*
14       631 F.3d 1372 (Fed. Cir. 2011)................................................................. 9

15   *Intellect Wireless, Inc. v. HTC Corp.*
         732 F.3d 1339 (Fed. Cir. 2013)................................................................. 8

16
     *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*
17       958 F.2d 1066 (Fed. Cir. 1992)................................................................. 6

18
     *Linear Tech. Corp. v. Micrel, Inc.*
19       275 F.3d 1040 (Fed. Cir. 2001)............................................................... 12

20   *Molins Plc v. Textron*
21       48 F.3d 1172 (Fed. Cir. 1995)................................................................. 8

22   *Monolithic Power Sys., Inc. v. O2 Micro Int'l*
23       726 F.3d 1359 (Fed. Cir. 2013)............................................................... 16

24   *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*
25       984 F.2d 1182 (Fed. Cir. 1993)................................................................. 4

26   *Rohm & Haas Co. v. Crystal Chem. Co.*
         722 F.2d 1556 (Fed. Cir. 1983)................................................................. 8

27

28

*Superior Indus., LLC v. Thor Global Enters.*
      700 F.3d 1287 (Fed. Cir. 2012)..................................................................... 15

*Therasense, Inc. v. Becton, Dickinson & Co.*
      649 F.3d 1276 (Fed. Cir. 2011).................................................................. 3, 8

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*
      231 F.3d 1339 (Fed. Cir. 2000)................................................................... 16

<u>Statutes</u>

35 U.S.C. Section 285 ......................................................................... 3, 13, 17

# I.    SUMMARY OF REPLY ARGUMENT

Nyko and its employee Amir Navid have engaged in a clear pattern of deception and obstruction in pursuing and attempting to enforce the '848 patent. Their excuses for their failure to disclose invalidating public use and sales to the PTO and for pursuing this litigation even after those sales were exposed ignore the evidence and ignore the law. Nyko's bad faith is confirmed by its egregious obstruction of the relevant facts in discovery and misrepresentation of the facts to the Court. If Nyko truly believed its position was supported by the facts and law, it should have promptly provided the relevant discovery, presented the issues accurately to the Court, and allowed the Court to determine the issue at the outset of the case. Having failed to do so, Nyko should bear the consequences to prevent a gross injustice to Defendants.

First, Navid's bald denial of intent to deceive the PTO is devoid of factual support, and is in fact contradicted by the contemporaneous documents. He offers no explanation or corroboration for his purported belief in priority based on the Provisional Application. To the contrary, the documentary evidence actually shows that Navid believed the adapter embodiment of the Provisional to be an entirely new invention that was patentably distinct from the first version of the Charge Base. Thus, when Navid filed the '848 patent application several months later on an embodiment without an adapter, he knew he was seeking patent protection on a different invention than what was disclosed in the Provisional; an invention that he stated had been launched "to great fanfare" more than a year earlier. Despite this, he still failed to disclose the sales and public use to the PTO.

And far from showing that the PTO disagrees with this Court or that Nyko attempted to rectify the inequitable conduct in the prosecution of subsequent continuation applications, Nyko further deceived the PTO by submitting a false Navid declaration regarding the launch of the Charge Base. Despite having told this Court that Nyko "introduced the Charge Base … to great fanfare in January 2007,"

Navid told the PTO that Nyko introduced the Charge Base "later in the year." (Supp. Buccigross Decl. Ex. Z.)  Similarly, while telling the PTO that the Charge Base shown in Las Vegas in January was operational, *i.e.*, "capable of charging multiple video game controllers simultaneously through a single power cord that could be plugged into a standard AC electrical receptacle" (Supp. Buccigross Decl. Ex. Z ¶ 2), Navid told this Court that the Charge Base shown in Las Vegas was, in essence, an inoperable dummy.  (Dkt. No. 205 pp. 17-18.)   This duplicity shows that Nyko's position in this case was both objectively baseless and asserted in subjective bad faith.

Nyko's attempts to justify its filing and conduct of this litigation are also baseless.  Boiled down, the priority issue is simple:  the "Provisional *requires* an external adapter while the '848 Patent [the asserted claims] makes no mention of it.  One skilled in the art may have been able to conceive of a different invention by studying the '364 [Provisional] application, but that invention, one that did not require an external adapter, plainly was not disclosed in the '364 Provisional."  (Dkt. No. 205 pp. 14-15.)  Given these undisputed facts, clear and abundant Federal Circuit law rules out a good faith assertion of priority for the asserted claims.  Even if Nyko were merely negligent in failing to understand this issue before it filed the case, its continued pursuit of this litigation and litigation misconduct after learning of it were objectively baseless and subjectively corrupt.

- Despite repeated and extensive gathering of evidence in support of its TRO, Nyko shut down when the TRO was denied, refusing to provide any discovery responses for over three months, and continuing to stonewall for months thereafter.

- When it finally did respond, Nyko provided a series of incomplete, misleading, and just plain false interrogatory responses regarding public use and the pre-critical date sales.  When threatened with motions to compel, Nyko continued to stonewall by promising production to avoid the motions, reneging on those promises, then repeating the pattern.

- Nyko delayed producing vital documents for months and still has not produced dozens of documents regarding known pre-critical-date sales.

- Nyko delayed two critical depositions for months and simply failed to appear for noticed depositions on at least three occasions without having arranged alternative dates.

- In his deposition, Navid was evasive, misleading, and openly dishonest in attempting to obscure Nyko's public use, offers for sale, and the facts relating to priority.

- In opposing Defendants' motion for summary judgment, Nyko offered misleading evidence and arguments that conflicted with or were not supported by the documentary evidence.

- Nyko attempted to confuse and misdirect the priority issue, including by contradicting its own claim construction position in arguing that "on the base" means essentially the same thing as "supported by the base."

The combination of inequitable conduct, filing and maintenance of unjustified litigation and misconduct during the litigation make this case exceptional and support an award of attorney fees under 35 U.S.C. § 285. *See Brooks Furniture Mfg., Inc., v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

## II.   NAVID'S INEQUITABLE CONDUCT JUSTIFIES DECLARING THIS CASE EXCEPTIONAL

Contrary to Nyko's arguments, Defendants' motion accurately cites the law of inequitable conduct, including the standard under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011). (*See* Dkt. No. 212 p. 17.) Nyko suggests that, under *Therasense*, a bare denial of intent to deceive precludes a finding of inequitable conduct. Nyko is incorrect. In fact, *Therasense* embraces the long-accepted reality that "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." However, intent to deceive must be, as here, "the single most reasonable inference able to be drawn from the evidence … in light of all the circumstances." *Id.* at 1290.

1    Nor does the Motion rely on the undisputed materiality of Nyko's concealed

2 sales and use activity to establish intent to deceive under the so-called "sliding

3 scale" or the mere lack of a good faith explanation for Navid's failure to disclose.

4 Instead, the Motion relies on Navid's admission that he <u>knew</u> of the materiality of

5 such activity and his inconsistent, bad faith explanations for his failure to disclose.

6    **A.    <u>Navid's Latest Declaration Is Unsupported and Fails to Justify His Failure to Disclose</u>**

7

8    Navid's latest declaration submitted in opposition to the Motion offers

9 nothing more than a bare denial of intent to deceive.  (Dkt. No. 215-3.)  Such a

10 declaration amounts to no more than would a conclusory denial in a pleading, which

11 is insufficient even to prevent summary judgment on any issue.  *Paragon Podiatry*

12 *Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993).  To raise an

13 issue of fact, an "affiant must at least state facts supporting a plausible justification

14 or excuse for the misrepresentation."  *Id.*[11]  Here, Navid offers no facts, and certainly

15 not a plausible justification, regarding the basis for his purported belief that the

16 asserted claims were entitled to priority.  When and how did he form this belief?

17 Who told him and what was he told?  Did he tell his patent attorneys about the sales

18 and public use?  Did they advise him not to disclose?  Navid leaves all these

19 questions, and others, unanswered.

20    Moreover, Navid's *post hoc* rationalization that he thought the later claims

21 were entitled to priority based on the Provisional contradicts the contemporaneous

22 documents.  These documents show that Navid did not conceive of Charge Base 2

23 (with the adapter) until well after the "adapterless" version of Charge Base was in

24 the market.  It was only at this point that Navid decided to seek patent protection on

25 the Charge Base 2.  Navid was involved in the communications with Nyko's

26 _____

27 [11]    While *Paragon* applied the pre-*Therasense* standard for inequitable conduct, this holding of *Paragon* was not altered by *Therasense* and remains the accepted law.  *See Paragon*, 984 F.2d at 1191 (and cases cited therein).

28

manufacturer in October 2007 requesting a block diagram and circuit diagram to be used for a patent application <u>on Charge Base 2</u>.  (Dkt. No. 133-30.)  In that Provisional Application, Navid touted the Charge Base 2 and its adapter as a new invention, "touted as desirable precisely because it does not describe or encompass the system described in the claims that are at issue in this litigation."  (Dkt. No. 205.)  In his most recent declaration, Navid states:  "I was not aware that such [sales and public use] information could be relevant or material to the examination of the application for the '848 Patent because these events were not more than a year prior to the provisional application upon which the '848 patent was based."  (Dkt. No. 215 ¶ 3.)  Yet in 2007, when the events occurred, he argued the opposite – while the adapter version of the Provisional may have been "based on" the earlier "adapterless" version, the adapter version was a whole new invention, and not the basis for the earlier version corresponding with the asserted claims, which had been on the market for over a year by the time Navid filed the '295 Application in March 2008.  Navid's explanation is also contradicted by his disclosure during prosecution of the '295 Application of a patent application published January 25, 2007.  (Supp. Buccigross Decl. Ex. Y.)  If he knew it was appropriate to disclose a printed publication from January 2007, why didn't he disclose the commercial activity from the same time period?

    Nyko also argues that Defendants failed to establish a "deliberate decision" to withhold the information on sales and public use.  Again, Nyko fails to acknowledge that such a deliberate decision is typically inferred, as it should be here.  Further, Navid acknowledges that the decision to withhold was deliberate, but contends that this deliberate decision was based on his purported belief that the '848 patent was entitled to priority.  As addressed above, that purported "belief" is not supported and not believable, particularly in light of the documents from that time period and his subsequent attempts to justify the argument.  Moreover, Navid admitted his awareness that year-old sales and public use were material to patentability.  (First

1   Buccigross Decl., Ex. A p. 297.)  Thus, his naked, unsupported belief in priority

2   does not justify his failure to disclose.  "On the contrary, that makes it all the more

3   necessary that the devices should have been disclosed to the examiner.  Close cases

4   should be resolved by disclosure, not unilaterally by the applicant."  *LaBounty Mfg.,*

5   *Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992).

6   It is axiomatic that "close cases should be resolved by disclosure, not
    unilaterally by applicant."  This sentiment is also repeatedly reflected in
7   the Manual of Patent Examining Procedure (MPEP), which, although it
    does not have the force of law, is well known to those registered to
8   practice in the PTO and reflects the presumptions under which the PTO
    operates.

9

10  *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed.

11  Cir. 1997) (internal citations omitted).  Nevertheless, Navid did not testify that he

12  would have disclosed had he appreciated that priority was an issue.  Instead, he

13  dissembled and obstructed, denying the very existence of the adapter, in an attempt

14  to support his bogus claim to priority. (*See* First Buccigross Decl. Ex. A, pp. 138–

15  157.)

16      Nyko's opposition relies heavily on *1st Media, LLC v. Electronic Arts, Inc.*,

17  694 F. 3d 1367 (Fed. Cir. 2012); however, that case is easily distinguished.

18  Contrary to this case, where Navid admits that he knew the materiality of year-old

19  commercial activity, the applicant <u>and his attorney</u> in *1st Media* testified that they

20  did not appreciate the materiality of two of the undisclosed references and explained

21  the reason – they believed the co-pending application in which the references were

22  cited was technologically distinct from the application at issue.  *Id*. at 1371.  With

23  respect to the third reference, the applicant and his attorney became aware of it only

24  after allowance of the application at issue.  *Id.*  In its pre-*Therasense* ruling, the

25  district court discredited their testimony as to materiality, and inferred intent to

26  deceive under the sliding scale standard, coupled with the <u>*lack* of a *good faith*</u>

27  <u>explanation</u> for the failure to disclose.  In reviewing the district court's decision after

28  *Therasense*, the Federal Circuit determined that it was improper to infer intent based

1    on discredited testimony that the applicant and his attorney did not appreciate

2    materiality in the absence of contrary evidence.

3         Here, unlike in *1st Media*, there is ample evidence contrary to Navid's

4    attempted justification:  (a) he admitted that he was aware of the materiality of sales

5    activity more than one year before the filing of a patent application; and (b) his

6    explanation for his failure to disclose sales is contradicted by the contemporaneous

7    documents, as explained above.  Defendants rely not on the lack of a good-faith

8    explanation, but rather on an unsupported and inherently unbelievable explanation.

9         **B.     Subsequent Prosecutions *Confirm* Navid's Inequitable Conduct**

10        Nyko argues that the PTO's allowance of claims from continuing applications

11   shows that its sales and public use in January 2007 were not material.  That

12   argument is without merit for at least three reasons.  First, Nyko and Navid further

13   deceived the PTO in the prosecution of the '630 patent by submitting a false

14   declaration regarding the launch of the Charge Base.  Specifically, they submitted a

15   Navid declaration dated November 12, 2012, in an effort to establish that the

16   claimed invention was reduced to practice before a prior art reference at issue.

17   (Supp. Buccigross Decl. Ex. Z.)  In that declaration, despite having told this Court

18   that Nyko "introduced the Charge Base … to great fanfare in January 2007," Navid

19   told the PTO that Nyko introduced the Charge Base "later in the year."  (*Id.* ¶ 3.)[2]

20        Secondly, during the prosecution of Nyko's '630 patent, Nyko filed

21   Defendants' invalidity contentions and the parties' TRO filings.  (Quigley Decl. Ex.

22   A.)  These documents alone comprise hundreds of pages, thousands when

23   considering the prior art references cited in these documents.  However, Nyko did

24   _____

25   [2]     Interestingly, this PTO declaration reveals another Nyko misrepresentation, in this case made to this Court.  While telling the PTO that the Charge Base prototype shown in Las Vegas in January 2007 "was capable of charging multiple video game

26   controllers simultaneously through a single power cord that could be plugged into a standard AC electrical receptacle" (Supp. Buccigross Decl. Ex. Z ¶ 2), Navid told

27   this Court that the Charge Base shown in Las Vegas was, in essence, an inoperable dummy.  (Dkt. No. 205 p. 17.)

28

nothing to call the examiner's attention to Nyko's sales activity and public use or the issue of priority.  As recently confirmed by the Federal Circuit, the submission of an affirmative misrepresentation cannot be cured by merely submitting other information to the PTO, without explaining the earlier misrepresentation.  *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1343 (Fed. Cir. 2013); *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983).  Similarly, in the prosecution of the '709 Application, Nyko dumped essentially the entire docket of this litigation on the PTO, again without specifically calling the examiner's attention to its pre-critical date commercial activity or the priority issue.  (Supp. Buccigross Decl., Ex. AA.)  *See Molins Plc v. Textron*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) (burying a particularly material reference can be probative of bad faith).  And again, Nyko and Navid failed to correct the affirmative misrepresentation to the same examiner in the earlier related application, thus infecting the prosecution of the '709 application, as well.

Third, the claims of the '630 patent and '709 application are necessarily different from those at issue in this case.  The issue of whether those claims are invalidated by Nyko's January 2007 commercial activity is not indicative of whether the PTO would have rejected the asserted claims in this case if that activity had been disclosed.[3]  Regardless, in light of the facts, the law and the Court's summary judgment ruling, Nyko cannot contest the materiality of that activity with respect to the asserted claim.  *See Therasense*, 649 F.3d at 1292  ("[I]f a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used

---

[3]     Defendants contend that the claims of the '630 patent are invalid based on a comparison of the claims with the device on sale in January 2007.  There is no evidence that the PTO made such a comparison with respect to either the asserted claims of the '848 patent or those of the '630 patent.

1  in prosecution at the PTO.")

2      In light of the totality of the evidence, the single most reasonable inference

3  under *Therasense* and the facts of this case is that Navid intended to deceive the

4  PTO in concealing sales and public use more than a year before the filing of the

5  '295 application.

6      **C.**    **A Trial On Inequitable Conduct Is Not Required**

7      A trial on inequitable conduct attributable to Nyko is not required for at least

8  two reasons.  First, Nyko's pattern of deception, obstruction and bad faith before

9  and during this litigation supports an award of attorney fees, even in the absence of a

10  formal finding of enforceability based on inequitable conduct.  *See Brooks*

11  *Furniture*, 393 F.3d at 1381.  Second, while summary judgment finding inequitable

12  conduct may be relatively rare, it is permissible under standing Federal Circuit

13  authority.  And this <u>is</u> a rare case, where Navid and Nyko contradicted his own

14  sworn testimony not just once, but multiple times regarding the circumstances of his

15  concealment of invalidating sales and public use.  Further, while Defendants do not

16  believe that an evidentiary hearing is necessary to make an exceptional case finding,

17  they would be prepared to participate in such a hearing if it would assist the Court.

18  **III.**  **NYKO'S FILING AND MAINTENANCE OF THIS UNJUSTIFIED LITIGATION JUSTIFIES AN AWARD OF ATTORNEY FEES**

19
20      **A.**    **This Case Was Filed, Maintained and Litigated In Subjective Bad Faith**

21      As a threshold matter, subjective bad faith in filing a litigation is only

22  required in the absence of other grounds for finding a case exceptional, such as the

23  inequitable conduct and litigation misconduct present here.  *See iLOR, LLC v.*

24  *Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011).  More importantly, subjective

25  bad faith may be established by <u>continuing</u> with litigation after a plaintiff learns, or

26  should have learned, that its claims are objectively baseless, such as where

27  "evidence of sales and advertising which barred the grant of a patent was brought to

28  light seven months prior to trial."  *Hughes v. Novi Am. Inc.*, 724 F.2d 122, 125–26

(Fed. Cir. 1984).  Here, Defendants brought such evidence to light in opposing the TRO, over 15 months before filing their motion for summary judgment.  During that time, Nyko firmly established its subjective bad faith through its discovery abuses and its repeated mischaracterization of the evidence.

In so doing, Nyko rejected a <u>good faith</u> alternative that would have limited the great expenditure of resources by the Court and by Defendants.  Specifically, Nyko could have <u>acknowledged</u> the very public and commercial use of the Charge Base in January 2007; Nyko could have <u>acknowledged</u>, as represented to the PTO, that this Charge Base was operational; Nyko could have <u>produced</u> the January 2007 sales documents when first requested, and not six months later – or never; Nyko could have <u>acknowledged</u>, as the documents ultimately produced clearly show, that the January 2007 sales were not merely pre-orders; Nyko could have <u>produced</u> its witnesses promptly, instead of delaying for months; Nyko could have allowed the Court to <u>decide the issue of priority</u> at outset of the case rather than delaying that decision many months by refusing to produce the relevant evidence.  Once again, having chosen to maintain this case and to make it excessively burdensome and contentious, Nyko <u>chose</u> to make this case exceptional, and should bear the consequences of its choices.

### B.    <u>This Case Was Objectively Baseless Because the Asserted Claims Were Invalid Beyond Reasonable Dispute</u>

Nyko's arguments that this case was not objectively baseless are themselves baseless.  For example, Nyko argues that its claim construction arguments were largely adopted by the Court.  (Opp. pp. 4-5.)  While the Court's claim construction speaks for itself, the fact remains that the extensive and expensive <u>claim construction proceedings were completely unnecessary</u> since one cannot infringe an invalid claim.  No claim construction was necessary to evaluate whether the asserted claims, which Nyko admitted covered chargers without an adapter, were entitled to priority based on a provisional application that <u>required</u> an adapter.

Nyko also argues that, had it been successful in asserting priority for the asserted claims, it would have defeated the on-sale bar. (*Id.* pp. 5-7.) There are several fundamental problems with this argument. First, rather than acknowledging that the validity issue rose and fell depending on its claim to priority, it obstructed and misrepresented the evidence regarding the on-sale bar, vastly multiplying the time and expense to litigate this case. Second, the priority issue was not a close call, which Nyko still refuses to acknowledge. Nyko continues to cite generic written description cases, rather than acknowledging or addressing the cases cited by the Defendants and by the Court that specifically address the priority issue, *e.g.*, *New Railhead*, *Anascape*, etc. As framed under these and other Federal Circuit cases, the priority issue is simple. The asserted claims cover a charger with DC ports on the base; does the Provisional disclose such a charger? The answer is unequivocally "no," notwithstanding Nyko's "high-spun wordplay" regarding whether USB ports on an adapter may be deemed "supported by the base." *See Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001). Moreover, even if "supported by the base" could be construed to include an adapter, the real issue is that the asserted claims, as construct by the Court cover USB ports on the base *without* an adapter. This simply is not disclosed in the Provisional.

Nyko next argues that it had other bases for disputing the public use and on-sale bars. Regarding public use, Nyko still argues that the Charge Base shown in January 2007 may not have been functional. While the evidence already considered by the Court was sufficient to soundly reject this argument, the evidence raised by Nyko in opposing this motion not only disproves Nyko's argument, it proves that Nyko's argument was made in bad faith. (*See* Opp. p. 11, addressing prosecution of the '630 patent.) In that related prosecution, Navid and Nyko specifically represented to the PTO in November 2012 that that the Charge Base shown in Las Vegas in January 2007 "was capable of charging multiple video game controllers simultaneously through a single power cord that could be plugged into a standard

AC electrical receptacle." (Supp. Buccigross Decl. Ex. Z ¶ 2; see also ¶ 4, making clear that the Charge Base referred to in ¶ 2 was the one shown to the press in Las Vegas in January 2007.) Despite this sworn statement to the PTO, Nyko and Navid have argued throughout the case, including in their opposition to this motion, that they are still not sure if this Charge Base worked. (*See* Opp. pp. 8-9.) Nyko and Navid simply cannot keep track of their conflicting statements to the PTO and this Court about when the Charge Base was released and whether it worked. Such callous disregard for the truth is the paradigm of baselessness and bad faith.

Nyko's misrepresentations of its sales activity are just as egregious. Nyko purports to rely on *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001), yet there is not a shred of competent evidence in this case that the pre-critical sales were anything other than just that – sales. The purchase orders, sales order confirmations and invoices are all indicative of actual sales; they contain no references to "pre-orders" and no reservations as to price, quantity or anything else; and they make no mention of a purported right to cancel. Moreover, the products were shipped pursuant to the precise terms of the sales. On the other hand, the only "evidence" Nyko submitted on these issues is just more "high-spun wordplay."

The witnesses Nyko relied on regarding the sales activity, Navid and Chris Arbogast, both specifically disclaimed knowledge of the specific sales and the sales documents. Attempting to overcome this lack of competence, they stated that such pre-orders were typical in the industry. Nyko then attempted to mischaracterize their general statements as evidence that these specific sales were "pre-orders." (Dkt. No. 135, pp. 24-25.) Noticeably absent from Nyko's submissions – until now -- was a declaration from Nyko's director of operations C.C. Swiney, whom Mr. Arbogast repeatedly identified as the Nyko employee who was knowledgeable about the sales and sales documents. Tellingly, Mr. Swiney still offers nothing supporting Nyko's "pre-order" argument, but simply tells the Court that Nyko could not find the documents regarding most of the pre-critical date sales. The questions raised by

1  this testimony are glaring.  Why did Nyko identify Arbogast, and not Swiney, as the

2  person knowledgeable about sales in its interrogatory responses?  If Nyko could not

3  locate the relevant documents, what possible basis did it have in contending that

4  these sales were "pre-orders"?

5       In sum, all of Nyko's primary arguments regarding invalidity were

6  objectively baseless.  There was no reasonable basis to contend that the asserted

7  claims were entitled to priority.  There was no reasonable basis to contend that the

8  Charge Base in public use in January 2007 was not functional.   There was no

9  reasonable basis to contend that Nyko's January 2007 sales were merely preorders.

10 Nyko's continued maintenance of this case and these positions even after its

11 invalidating activity was brought to light establishes subjective bad faith and

12 justifies an award of attorney fees under Section 285.

13 **IV.   NYKO'S LITIGATION MISCONDUCT JUSTIFIES DECLARING**
       **THIS CASE EXCEPTIONAL**
14

15      Nyko's attempts to brush aside its litigation misconduct are belied by the

16 undisputed facts.

17      ***TRO:***  While Defendants contend that Nyko should never have filed this case

18 or its TRO application, that is not the point of Defendants' position.  Rather, the

19 point is that Nyko ambushed Defendants with a TRO rather than a noticed motion,

20 yet still filed three full sets of supporting documents in a matter of days, which

21 severely limited Defendants' opportunity to respond and drastically increased the

22 expense.

23      ***Failure to Dismiss***:  As addressed extensively above, attorney fees are

24 justified when a plaintiff maintains its case after it learns, or should have learned,

25 that its claims are objectively baseless, such as where "evidence of sales and

26 advertising which barred the grant of a patent" are brought to light.  *Hughes*, 724

27 F.2d 122, 125–26 (Fed. Cir. 1984).

28      ***Discovery Abuse***:  Defendants' <u>evidence</u> of discovery abuse submitted with

the Motion speaks for itself.  Judge Kenton's denial of Defendants' motion to compel speaks only to Nyko's artifice in obstructing discovery by continually making promises – forestalling a motion to compel – that it never kept.  As addressed above, Nyko's assertion that it could not locate documents regarding the vast majority of pre-critical date sales, while dubious on its own, underscores Nyko's discovery abuses rather than justifying them.  (*See* Opp. p. 22.)  Again, if Nyko could not locate the documents, what possible basis could it have for contending that these sales were merely "pre-orders."  Nyko's contention that its obstruction of depositions was merely "routine rescheduling" is preposterous.  Again, the evidence to the contrary speaks for itself.  Finally, Nyko's contention that Defendants were not prejudiced by Nyko's delay and obstruction is preposterous.  The issue is not how far in advance of the discovery cutoff Nyko produced the relevant information, but how long Nyko delayed in producing the information after it was requested.  This delay and obstruction itself increased the expense, not to mention the added expense of having to address claim construction, discovery from Nyko and expert discovery during Nyko's delay.

Nyko's complaints about Defendants' discovery conduct are disingenuous.  For example, Defendants did not delay or obstruct depositions.  Rather, Nyko repeatedly noticed depositions in an attempt to intimidate and harass Defendants, and then postponed or canceled them.  (Supp. Buccigross Decl. ¶ 6.)  On December 4, 2012, Nyko noticed the depositions of three of Defendants' witnesses, Thomas Roberts, Gerry Block, and Danielle Kyriakos, for the business day before Christmas Eve, two days after Christmas Day, and briefly after the New Year's holiday, respectively.  (*Id*.)  Defendants notified Nyko that the witnesses were not available on those dates, and asked Nyko to propose alternate dates.  (Id. ¶ 6, Ex. AB.)  After not hearing back from Nyko for more than a month, Defendants began proposing alternate dates in January.  (Id., ¶ 6, Ex. AB.)  Nyko claimed that those dates did not work, and proposed dates in February and March  (*Id*., ¶ 6, Ex. AC.)  Thus, it was

1    Nyko who delayed these depositions, not Defendants.

2        ***Amir Navid's Testimony:***  As with the evidence of other discovery abuses,

3    Navid's deposition testimony speaks for itself.  Defendants do not criticize his

4    inability to remember details of events years before, but rather his inconsistent, self-

5    serving, obstructionist and just plain false testimony at his deposition and in his

6    various declarations.

7        ***Suing Energizer and Eveready:***  The undisputed evidence is that Energizer

8    and Eveready simply license the branding for the accused products.  Yet, Nyko

9    claims that it sued Energizer and Eveready because "they were actively marketing

10   and <u>selling</u> infringing products on their website."  (Opp. p. 24.)  This contention is

11   false.  The website merely promoted the accused products and provided a link to

12   PDP's website – a fact that was called to Nyko's attention early in the case.  This

13   does not constitute infringement.  *See, e.g.*, *Superior Indus., LLC v. Thor Global*

14   *Enters.*, 700 F.3d 1287, 1294 (Fed. Cir. 2012).

15       ***Using Litigation Expenses to Extract a Settlement***:  Nyko cannot reasonably

16   dispute the fundamental point that it drove up litigation expenses and then exploited

17   these expenses in an effort to extract a settlement.  (*See* Supp. Yannuzzi Decl.)

18   Nyko's belated condition that it never intended to license PDP's future charge

19   products, notwithstanding an offer of payment by Defendants and the weakness of

20   Nyko's litigation position, simply underscores the fact that Nyko sought to exploit

21   the expense of litigation.  Once again, Nyko should bear the burden of its generation

22   and exploitation of excessive litigation expense.

23   **V.    NYKO'S CHALLENGES TO THE AMOUNT OF FEES ARE
        IMPROPER AND UNSUPPORTED**

24

25       Nyko filed purported "Objections" to the Hanle Declaration, which was filed

26   to establish the amount of Defendants' attorney fees and non-taxable expenses.  This

27   Objection is simply an additional 7-page memorandum of points and authorities, and

28   should be disregarded because, in combination with Nyko's 26-page opposition, it

exceeds the page limits for memoranda under the Local Rules.  Further, Nyko's arguments are conclusory, and fail to rebut the reasonableness of Defendants' fees.  With respect to hourly rates, the testimony regarding the reasonableness of the rates is amply supported by Mr. Hanle's 20 years of patent litigation experience in Southern California.  With respect to the hours expended, Defendants have offered a detailed accounting.  (*See* Hanle Ex. A.)  Nyko, by contrast, has specifically contested only a single time entry, otherwise offering only conclusory statements that the wrong people performed certain tasks.  Finally, with respect to the survey evidence, Nyko merely cherry picks the data.  For example, Nyko contends, without support, that Los Angeles is a "less expensive market."  If this conclusion were permitted by the limited sample size of the survey, "more expensive markets" would include Minneapolis, Washington D.C., and "Metro Southeast," which is contrary to conventional wisdom.  Defendants submit that the national mean is the most appropriate figure.

In sum, Defendants' evidence establishes the reasonableness of its attorneys' hourly rates, the tasks completed and the hours expended, and that the total fees were well within the range of reason.  Nyko can hardly complain that the fees were excessive when it was responsible for running up the fees.  In the event the Court desires further evidence of the reasonableness of fees upon a determination that this case is exceptional, Defendants can certainly provide it.

## VI.   CONCLUSION

This case involves three independent grounds that each individually justify declaring the case exceptional and awarding Defendants' attorney fees, expert witness fees, and non-taxable costs.  When combined, Navid's inequitable conduct, Nyko's filing and pursuit of an unjustified case, and Nyko's litigation misconduct show an unmistakable pattern and make this case exceptional, fully justifying an award of attorney fees to Defendants.  *See Monolithic Power Sys., Inc. v. O2 Micro Int'l*, 726 F.3d 1359, 1367 (Fed. Cir. 2013) (citing *Yamanouchi Pharm. Co. v.*

1   *Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000) (holding that courts

2   must take into account the "totality of the circumstances" when determining whether

3   to award attorneys' fees)).

4          Contrary to Nyko's argument, the Court need not and should not delay a

5   decision on attorney fees pending appeal.  The totality of the circumstances of this

6   case is now fresh in the parties' and the Court's minds and the identity of the

7   prevailing party under Section 285 is not in reasonable doubt.

8          Accordingly, Defendants respectfully request that the Court determine this

9   case to be exceptional and award attorney fees and non-taxable costs pursuant to 35

10  U.S.C. § 285 and the Court's inherent power.

11

12  Dated:  December 2, 2013            SHEPPARD, MULLIN, RICHTER & HAMPTON

13                                      By      /s/ Steven M. Hanle

14
                                        Attorney for Energizer Holdings, Inc.,
15                                      Eveready Battery Company, Inc., and
                                        Performance Designed Products LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego; I am over the age of eighteen years and not a party to the within entitled action; my business address is 12275 El Camino Real, Suite 200, San Diego, California 92130.

On December 2, 2013 I electronically filed the following document(s) described as

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES**

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the interested parties who have consented to electronic service via the CM/ECF system.

S. Art Hasan
G. Warren Bleeker
Katherine Quigley
Christie Parker and Hale LLP
655 North Central Avenue Suite 2300
Glendale, CA 91203-1445
Art.hasan@cph.com
Warren.bleeker@cph.com
Katherine.Quigley@cph.com

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on December 2, 2013 at San Diego, California.

/s/ James Bond
James Bond